**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SDAHRIE HOWARD, DENISE HOBBS, ELLENOR ALTMAN, TAVI BURROUGHS, DOMINIQUE FREEMAN, KIMBERLY CRAWFORD-ALEXANDER, ESTHER JONES, BALVINA RANNEY, TAWANDA, WILSON, and SUSANA PLASENCIA, on behalf of themselves and all others similarly situated | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| COOK COUNTY SHERIFF'S OFFICE, and COUNTY OF COOK, | )<br>)<br>) |
| | ) |
| Defendants. | ) |

Case No. 17- cv-8146

Judge Matthew F. Kennelly

Mag. Judge Sidney I. Schenkier

**JURY TRIAL DEMANDED**

## THIRD CONSOLIDATED COMPLAINT

Plaintiffs Sdahrie Howard, Denise Hobbs, Ellenor Altman, Tavi Burroughs, Dominique Freeman, Kimberly Crawford-Alexander, Esther Jones, Balvina Ranney, Tawanda Wilson, and Susana Plasencia, on behalf of themselves and all others similarly situated, complain as follows against Defendants the Cook County Sheriff's Office (the "CCSO"), and the County of Cook ("the County"):

## NATURE OF THE CASE

1.     This is a class action complaint brought to remedy sex discrimination in employment at the Cook County Jail ("the Jail") and the George N. Leighton Criminal Courthouse ("the Courthouse")—in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*; the Illinois Civil Rights Act, 740

ILCS 740 ILCS 23/5(a)(1); and the Equal Protection Clause of the United States Constitution.

2.     Plaintiffs seek to certify a class of all women who have been employed by the CCSO at the Jail, or as Court Services deputies at the Leighton Courthouse, or by the County in positions with Cermak Health Services (the provider of daily healthcare for detainees at the Jail), at any time since April 23, 2015, except for women who, during that period, have held the positions identified in Exhibit A to this complaint.

3.     Regardless of the division or department in which they work, all class members endure pervasive sexual harassment as the result of: (a) the exceptionally vulgar, offensive and demeaning sexually disorderly conduct that male detainees direct at them, not because of their individual characteristics but because they are women, and (b) the Defendants' refusals or failures to take adequate steps reasonably calculated to curtail that harassment. This sexual harassment occurs on a daily or nearly daily basis throughout the Jail and in the Courthouse and has been an ongoing and escalating issue since 2013 at least. Detainees expose their penises to class members throughout the Jail and in the Courthouse, including, among other locations, in receiving and holding areas, day rooms, common areas, visiting areas, medical dispensaries, the Cermak medical facility, in the Courthouse "bullpen," in the staging area below the Courthouse known as the "bridge," in connecting tunnels, the law library, classrooms, passageways, and in their cells.

4.     The harassment to which class members are subjected is egregious. Male detainees routinely: (a) expose their genitals to them; (b) engage in exhibitionist masturbation in front of them, including, at times, aiming ejaculations at them; (c) grope and grab them; (d) subject them to a daily barrage of sexualized epithets, insults, comments, and gestures; and (e) threaten and commit sexual violence against them.

5.     By contrast, male correctional officers and civilian personnel are rarely, if ever, subjected to this harassment because of their sex.

6.     The Defendants have tolerated and fostered this harassment, exhibiting deliberate indifference to it.

7.     The Defendants provide less protection to female employees when they are sexually harassed by male detainees than to male employees experiencing other forms of abuse. By providing less protection, the Defendants have created a more dangerous and hostile work environment for women than for men.

8.     The harassment of female employees by male detainees is so frequent, pervasive, unwelcome, and consistently traumatizing that it makes the Jail and the Courthouse an objectively abusive, hostile, oppressive, and dangerous workplace for class members, adversely changing the terms and conditions of their employment compared to men who work in the same job titles.

9.     Perhaps no act can more quickly alter the terms and conditions of employment for women than a group of men openly and brazenly masturbating at

3

them in the workplace. To call the Jail or the Courthouse a "hostile work environment" for women is an understatement.

10.    The Defendants are aware of this harassment. It is open and obvious. They are also aware that it has been intensifying. Plaintiff Susana Plasencia, who has been a Sheriff's Deputy for 22 years, experienced a single incident of indecent exposure during her first 20 years on the job, but in the last two years has been masturbated at more than 20 times, including three times in a span of 10 minutes. Some class members are exposed to masturbating detainees every day or almost every day.

11.    In the period between July 1, 2015, and Jan. 20, 2016, there were more than 200 documented incidents at the Jail of male inmates exposing themselves or masturbating. (Exhibitionist masturbation by detainees is so prevalent that the detainees have a term for it: they call it "clapping.") During 2016, there were more than 350 documented incidents. In the first three months of 2017, there were more than 118 documented incidents. And these figures grossly underplay the pervasiveness of the problem—because they capture only the number of documented incidents, representing but a small fraction of the total number of incidents.

12.    The Cook County Public Defender, Amy Campanelli, has decried her staff's "daily" exposure to inmate masturbation as a "crisis."

**13.** Despite the Defendants' knowledge of the harassment that class members suffer daily at the Jail and the Courthouse, none of them have taken adequate steps reasonably calculated to curtail it.

**14.** By failing to take such steps, the Defendants have enabled the harassment. As a matter of standard operating procedure, they tolerate a workplace in which men regularly expose their genitals to women, engage in exhibitionist masturbation in plain view of women, bombard women with sexually vulgar epithets, gestures, and threats, and commit sexualized assaults and batteries against women. They bear legal responsibility for a workplace in which inmates are rarely disciplined for this harassment and in which women who complain about it are often retaliated against, threatened with discipline, ridiculed, or ignored.

**15.** No woman should have to endure such harassment as a term or condition of employment, and if harassment similarly severe and pervasive were directed at men over such a sustained period, the Defendants would not tolerate it. For example, when detainees throw urine or feces at correctional officers, which happens both to male and female officers, discipline is often swift.

**16.** By contrast, Defendants have consistently been indifferent—or worse—to sexual harassment directed at female personnel.

**17.** This sexual harassment of women working at the Jail and Courthouse *can* be curtailed. Pervasive indecent exposure, open masturbation, and sexual disorderly conduct by male inmates, against female employees, are not the norm at other

5

correctional facilities. They were not the norm at the Cook County Jail or Courthouse before 2013. Well-managed facilities prevent or minimize this type of misconduct. So can the Cook County Jail and the Courthouse.

18.    Addressing this harassment is not optional. The law requires employers to take adequate measures to reduce sexual harassment, and women working in correctional settings are entitled to the same diligent protection against sexual harassment as employees in other workplaces. See *Erickson v. Wisconsin Dept. of Corrections,* 469 F.3d 600 (7th Cir. 2006); *Beckford v. Department of Corrections,* 605 F.3d 951 (11th Cir. 2010); *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006).

19.    The first step toward curtailing sexually abusive and harassing behavior from detainees would be for each of the Defendants to make the decision that the behavior will not be tolerated. The second would be for each of them to take consistent adequate steps to curtail it. The Defendants, however, have taken neither of these steps.

20.    The Sheriff's chief policy director recently demonstrated the CCSO's indifference to the abusive and hostile work environment to which women at the Jail and the Courthouse are exposed, when she explained in a public statement that, in the CCSO's view, sexual assaults of female staff are simply "something that happens in custodial environments, period." https://chicago.suntimes.com/chicago-politics/cook-county-inmates-masturbating-public-defenders/. This same attitude is also reflected in statements made by male supervisors to class members that enduring exhibitionist masturbation and other forms of sexual harassment by male

6

detainees is "just part of the job," "what you signed up for," should be taken as a compliment," and "if you don't like it, leave."

21. Unless this Court awards substantial monetary damages and grants injunctive relief, the Defendants will continue to tolerate sexual harassment of class members at the Cook County Jail and the Courthouse.

## JURISDICTION AND VENUE

22. This Court has jurisdiction over this case under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3).

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). The acts that gave rise to the claims alleged in this Complaint occurred in Illinois and in this District.

## PARTIES

24. Plaintiffs Sdahrie Howard, Ellenor Altman, Denise Hobbs, and Kimberly Crawford-Alexander are female sworn correctional officers at the Jail.

25. Plaintiff Dominique Freeman is a female civilian employee in Inmate Services at the Jail. She works as a correctional rehabilitation worker, providing direct social services to assist detainees.

26. Plaintiff Tavi Burroughs is a civilian female paramedic who works at the Jail providing medical services to detainees. She is jointly employed by the CSSO and the Cook County Health and Hospitals System and/or the County. She works at Cermak Health Services at the Jail.

27. Plaintiffs Esther Jones, Balvina Ranney, Tawanda Wilson, and Susana Plasencia are female sworn deputy sheriffs who work as Court Services deputies in the CCSO's Court Services Department at the Leighton Criminal Courthouse, which is adjacent to the Jail.

28. Defendant County of Cook ("Cook County" or "the County") is a body politic and corporate, organized under Illinois' County Code, 55 ILCS 5/1-1001 *et seq*. The County owns the Jail. Operational responsibilities for the Jail are shared between the County and the CCSO.

29. At all times relevant to this complaint, the County has been an employer, or joint-employer, of all Plaintiffs and all members of the proposed class, including as a signatory (or joint signatory, along with the CCSO) to collective bargaining agreements governing their employment.

30. In addition, the County is a necessary party to this complaint by virtue of its responsibility to indemnify the CCSO for monetary amounts recovered by plaintiffs through this action. *Carver v. Sheriff of La Salle County*, 324 F.3d 947 (7th Cir. 2003).

31. Defendant Cook County Sheriff's Office (the CCSO) is a unit of local government, organized under 55 ILCS 5/3-6001–6036, with responsibility and authority for running both the Jail (the Department of Corrections) and the Court Services Department, which is the unit of the CCSO that is responsible for securing detainees and providing security for courthouse personnel at all County court

8

facilities, including at the George Leighton Criminal Courthouse. At all times relevant to this complaint, the CCSO has been a joint "employer," along with the County, of all plaintiffs and all members of the proposed class.

32.   The CCSO promulgates rules, regulations, policies, and procedures governing both the conduct of detainees and the training and protection of class members employed both at the Jail and at the Leighton Courthouse.

## FACTUAL ALLEGATIONS

33.   Plaintiff Sdharie Howard has worked as a correctional officer at the Cook County Jail since August 25, 2003. She has been assigned to Divisions 2, 9 and 10, to the Residential Treatment Unit ("RTU"), and between April 2013 and September 2015, to the Administrative Relief Team. As part of the Relief Team, she was deployed all over the Jail. She is currently assigned to the Strategic Operations and Information Unit, where she reviews reports and video evidence of detainee misconduct, including indecent exposure and masturbation. She has repeatedly been subjected to severe sexual harassment by male detainees, including indecent exposure; masturbation; sexual propositions, epithets, slurs, and catcalling; and threats of violence. She has been sexually assaulted by an inmate, who grabbed her and rubbed his genitals against her buttocks. She has complained about sexual harassment, including by filing Incident Reports, initiating disciplinary "tickets," and trying to press criminal charges. On February 16, 2016, she filed a class charge of sex discrimination with the EEOC protesting the harassment. Her complaints have been to no avail. Indeed, her efforts to address sexual harassment by male

detainees have been disparaged. After she filed her EEOC charge, a male sergeant in the Sheriff's police, responsible for investigating inmate misconduct, said publicly, and in her presence, that the EEOC charges she and other Plaintiffs had filed were "frivolous" and that the Incident Reports that female personnel have filed about the sexual harassment against them were "little complaints that aren't going anywhere."

34.   Plaintiff Ellenor Altman has worked as a correctional officer at the Cook County Jail since April 16, 2007. She has worked in Divisions 9, 10, and 11, in External Operations, RTU, and at Cermak Health Services. She currently works in Division 10. She has repeatedly been subjected to severe sexual harassment by male detainees, including indecent exposure, masturbation, sexual propositions, catcalling, and lewd gestures and remarks. She has complained about this harassment, including by filing an Incident Report. She filed a class action charge of sex discrimination with the EEOC on February 16, 2016. Her complaints have been to no avail. At an in-service program in the summer of 2016 that she attended, female officers asked investigators to respond to the sexual harassment problem and were told no steps would be taken to correct it because CCSO General Orders did not address it.

35.   Plaintiff Denise Hobbs has worked as a correctional officer at the Cook County Jail since April 16, 2007. She has worked in Divisions 2, 3/8, 4, the RTU, and 10. She is currently assigned to Division 10. She has repeatedly been subjected to sexual harassment by male detainees, including indecent exposure;

masturbation; threats of violence; sexual epithets, slurs, propositions, and catcalling; and lewd gestures. She has complained about this harassment, including by filing Incident Reports and initiating disciplinary "tickets," complaining to her male supervisor, and by filing a class action sex discrimination charge with the EEOC on February 16, 2016. Her complaints have been to no avail.

**36.** Plaintiff Dominique Freeman has held various positions at the Jail since 2007, including as a classroom instructor, classifications specialist, and correctional rehabilitation worker ("CRW"). From June 2013 until July 2016, she worked in the Receiving Classification Diagnostic Center ("RCDC") as a classifications specialist. Since July 2016, she has worked as a CRW. As a CRW, she has been assigned to Divisions 2, 11, 08/RTU, 5, and Division 6 Annex. She has also worked in Divisions 3, 4, 9, 17, the law library, and 8/Cermak. She is currently assigned to Division 6 Annex. As a CRW at the Jail, she carries out inmate social services, working as a liaison between inmates, staff, and external personnel, managing inmate grievances, and aiding in inmate rehabilitation and counseling. She has repeatedly endured sexual harassment by male detainees, including indecent exposure; masturbation; and crude, sexual comments directed at her on a daily basis. In one incident in or around January 2017, while attempting to obtain a detainee's signature on a grievance form, he placed his penis on the form and stroked his penis up and down on it. She has experienced so many crude, sexual comments that she has lost track of how many times these have occurred. On one occasion, a male detainee threatened her when she ignored his sexual comments, saying, "I'm going

to smack the shit out of you." She has complained about the sexual harassment,
including by filing incident reports and asking for criminal charges to be filed
against detainees. Her complaints have been to no avail.

37.    Plaintiff Tavi Burroughs has worked as a correctional medical technician
("CMT") at the Cook County Jail since January 25, 2015. She is employed by the
County and assigned to Cermak Health Services, which provides health care to
detainees at the Jail. She has worked in Divisions 9, 10, 11, 2, and the RCDC. She
currently works in Division 10. She has repeatedly been subjected to sexual
harassment by male detainees, including indecent exposure, masturbation, sexual
propositions and catcalling, lewd gestures, and threats of sexual violence. On a near
daily basis, detainees call her a "cunt," "bitch," "whore," "dumbass bitch" and other
sexually degrading epithets. She has been assaulted by an inmate who grabbed her
buttocks when she entered a room and lunged at by an inmate who asked if she
wanted to "fuck" him. She has been threatened with violence and death. A detainee
said to her, "Bitch, I'll kill your ass. I'm gonna find you when I get out of here. You
and your family." She filed Incident Reports after male detainees exposed
themselves and masturbated in front of her. The Sheriff's Police investigator
assigned to investigate one of those reports asked if she had "provoked" the inmate
and told her that she should have "looked away." She filed a class action charge of
sex discrimination with the EEOC on December 6, 2017. Her complaints have been
to no avail.

**38.** On July 11, 2018, the Department of Justice issued a Notice of Right to Sue in response to the class action charge of sex discrimination filed by Tavi Burroughs.

**39.** Plaintiff Kimberly Crawford-Alexander has worked for the CCSO since 2006. She is currently assigned to "the bridge," which is a staging area in the basement of the Leighton Criminal Courthouse where detainees are held before their cases are called in courtrooms. She has repeatedly been subjected to sexual harassment by male detainees, including indecent exposure, masturbation—nearly every shift, every day for the past two years, often multiple times a day—sexual propositions and catcalling, lewd gestures, and threats of sexual violence. For example, Crawford has been told, "I am going to fuck you," "I wanna fuck you in the ass," and "bend over so I can fuck you," among other things. Recently, she was escorting 8-10 detainees from court to their divisions, along with two male officers. One of the detainees repeatedly pulled his penis out of his pants to masturbate at her. At least twice, she stopped the line and moved the offending detainee to the back of the line, where two male officers were working. The detainee repeatedly advanced back up the line to within less than an arm's distance behind her, still masturbating and told Crawford-Alexander that he would "fuck her" and "nut on her." The male officers she was working with offered no assistance. Eventually, Plaintiff Crawford-Alexander pushed the detainee backwards away from her body. The incident was videotaped. Crawford-Alexander was told by someone who later watched the tape that the detainee had ejaculated at her. After this incident,

13

Crawford-Alexander filed complaints with her supervisors. Instead of addressing the aggressive and violent sexual harassment she faced, the CCSO sent her to re-take a remedial "use of force" training class and cautioned her about putting her hands on a detainee.

40.     Plaintiff Esther Jones has worked for the CCSO since 1994. She currently works in the Court Services Department, where she transports detainees from bullpens to court. She has repeatedly been subjected to sexual harassment by male detainees, including indecent exposure, masturbation, sexual propositions and catcalling, lewd gestures, and threats of sexual violence. Over the past two years, Jones has been subjected to naked penises and/or masturbation directed at her almost every day she attends work. Jones has been subjected to sexually violent language such as "I want to put this dick in you," "I'm going to make you suck it," and other comments. In March 2017, she filed criminal charges against a detainee who spit in her face after she refused to watch him masturbate. No one ever followed up with her about her criminal complaint. She had made numerous prior complaints about sexual harassment. Defendants have failed to reprimand the detainees she has complained about or otherwise address her complaints.

41.     Plaintiff Balvina Ranney has worked for the CCSO since 1996. She is currently assigned to the Court Services Department, in the Leighton Criminal Courthouse, where she transports detainees and provides security in the courtrooms. She has repeatedly been subjected to sexual harassment by male detainees, including indecent exposure, masturbation, sexual propositions and

14

catcalling, lewd gestures, and threats of sexual violence. She has filed numerous complaints and Incident Reports about this sexual harassment and filed criminal charges on two occasions, as well as verbally complaining to her supervisors, substantially to no avail.

42.   Plaintiff Tawanda Wilson has worked for the CCSO since 1992. She is currently assigned to the Court Services Department, in the Leighton Criminal Courthouse, where her desk is located near the bullpens that hold male detainees and her duties sometimes include escorting male detainees from bullpens to courtrooms. She has repeatedly been subjected to sexual harassment by male detainees, including indecent exposure, masturbation, and threats of sexual violence. For example, one detainee aggressively approached Wilson with his penis out and in his hand and stating, "fuck you bitch" and "I'll kick your ass." She is regularly called a "bitch" by detainees. She has filed complaints, Incident Reports and criminal charges regarding this harassment, as well as verbally complained to her supervisors, to no avail. No one ever followed up with her about her criminal complaint.

43.   Plaintiff Susana Plasencia has worked for the CCSO for 22 years. She is currently assigned to the Court Services Department, at the Leighton Criminal Courthouse, where her duties include transporting detainees from the lockup to court and transporting detainees in protective custody from court to the bridge. She has repeatedly been subjected to sexual harassment by male detainees, including indecent exposure, masturbation, and threats of sexual violence. She is exposed to

15

sexual comments and threats regularly, such as "look at that thick ass," "I could slobber all over that," "I could tear that ass up," and "let me take you for a ride." In her first 20 years on the job, she was exposed just once to a detainee's penis. In the last two years, it has happened at least 20 different times. She has filed numerous Incident Reports and criminal complaints—to no avail. Defendants have not reprimanded the detainees or otherwise addressed her complaints. Rather, she has been told repeatedly that the harassment is "part of your job," and her complaints are treated as a joke.

**44.** Class members working in all parts of the Jail (including at Cermak Health Services) and the Courthouse have experienced the same types of harassment as Plaintiffs. Class members work in an environment where, on a daily basis, male detainees:

**a.** Indecently expose themselves, especially their genitals;

**b.** Engage in exhibitionist masturbation;

**c.** Ejaculate semen, aimed at class members;

**d.** Make lewd gestures at class members;

**e.** Physically assault class members, including by rubbing their penises against female officers' and civilian personnel's buttocks and grabbing their breasts;

**f.** Make threats of sexual violence, such as:

- "I'm going to fuck you up, bitch."
- "I'll fuck the shit out of you."
- "I'm going to fuck you in your ass."
- "I'm going to put my dick on you if you come in here."
- One inmate told an officer that he was going to beat her, rape her, and force her to perform fellatio on him, and if she didn't perform fellatio well enough, he would kill her.

16

- "Bitch, you pressed charges on me, I should fuck you up."
- "I'll rape you and your kids."
- "I kill bitches in the world like you."
- "I will make you suck my dick."
- "I will eat your pussy."
- "I want to fuck you now with this big dick."
- "I'm going to fuck you in the ass so hard cum would come out of your ears and nose."
- "Suck my dick."

**g.** Hurl sexual epithets, such as: "cunt," bitch," and "whore."

**h.** Make other vile sexualized comments, such as: "Can you suck my dick? Let me fuck you in the ass," and "You made my dick hard."

**i.** Comment on class members' breasts, buttocks, curves, shape, weight, or size.

45. The following are merely illustrative examples of specific instances of the sexual harassment that class members have been subjected to:

**a.** One female correctional officer walked down a dormitory tier and was confronted by an entire tier of detainees thrusting their penises through the "chuck holes" in their cell doors.

**b.** A female correctional officer went to a cell to dispense medication to a detainee. She found him lying on his bed masturbating. When she stepped away from the doorway in disgust, he rebuked her: "Look at me while I'm taking you!"

**c.** Male detainees have told female correctional officers who ordered them to put their penises back in their pants:

- "Fuck you bitch.
- You gonna see this dick today."
- "When I'm done jacking off to you I will."
- "Come get this dick."
- "This is for you ... Imma take that ass."

**d.** Male detainees have threatened to rape or kill class members for completing Incident Reports or pressing charges against them for sexual misconduct.

  **e.** Detainees formed a gang ("Savage Life") for the purpose of planning and engaging in sexually threatening behavior, directed at class members.

  **f.** Male detainees pass notes ("kites"), threatening to rape or kill class members.

**46.** Defendants' male supervisors, managers, and commanders have routinely deterred, discouraged, or prevented class members from reporting the sexual harassment they are subjected to, including by discouraging or preventing them from filing disciplinary tickets, Incident Reports, or criminal charges.

**47.** Male supervisors have refused to accept Incident Reports made by female correctional officers. Investigators have refused to pursue them.

**48.** A male sergeant assigned to investigations has referred to reports of sexual misconduct by male detainees as "frivolous" and threatened to report officers who complain about it to the Office of Professional Review.

**49.** Male supervisors, Jail administrators, and investigators have told class members —that:

  **a.** Being exposed to detainee sexual misconduct is "part of the job," that "it comes with the job," that "this is what you signed up for," "if you don't like it, leave," or "they're locked up, what do you expect?"

  **b.** You "cannot sign a complaint against a detainee for pulling his dick out because it is part of your job."

  **c.** Not to bother filing charges because nothing will happen.

  **d.** "There is nothing to be done."

  **e.** "This is why you get paid $70,000," "You have seen a penis before."

**f.** "Just ask him is that supposed to be a penis and ignore it," "You have to laugh at them," "Why is she complaining? She works at a fucking jail."

**g.** "If you hadn't been looking, you wouldn't see," "You should have looked away," "Toughen up," "If you're that sensitive, bid out to the female division!"

**h.** "You know how this place is. They aren't going to do anything about it anyway."

**i.** "What's wrong? You never seen a dick before?"

**j.** "Did you see the 'arm' on that one? You should be impressed."

**k.** Sexually harassing conduct is "human nature."

**l.** Sexual comments by a detainee were a "compliment."

**m.** "Until you have a sex change, this is what you have to deal with."

**n.** After detainees made repeated specific threats to rape a female class member, Carlos Quezada-Gomez, the director of mental health at Cermak Health Services, told class members that there was no "confirmation of that" and that "men can be raped too."

**o.** After a male detainee openly masturbated in front of a female CRW and an officer, a male officer told her that no charges could be pursued because it would be her word and the word of the officer against the detainee's, and that the detainee would be acquitted.

**50.** Class members have also been:

**a.** Instructed to sign "COMPLAINT REFUSAL ON VICTIM'S REQUEST" forms, despite wanting to pursue criminal charges.

**b.** Told (by John Vega, a sergeant in the Sheriff's police, responsible for investigating criminal misconduct by detainees) that class members' sexual harassment complaints are "frivolous" and that if women file them, they are going to "send them to OPR and let them fight for their jobs." He has also said that the County "misled" women about the definition of "sexual assault," that masturbation didn't qualify,

and that their "little complaints" about masturbation "aren't going anywhere."

**c.**   Threatened (by John Vega, on another occasion), that women who had filed EEOC charges better have their "shit together" because when a judge rules that any one of them is lying "there goes their jobs."

**d.**   Threatened with adverse employment actions for considering seeking legal assistance or filing a lawsuit.

**e.**   Been reassigned out of a 90-day assignment because the supervisor did not want to continue processing Incident Reports complaining of masturbating detainees.

**f.**   Been reprimanded for defending against sexual harassment by detainees.

**g.**   Advised by supervisors that writing Incident Reports and trying to pursue criminal charges are a waste of time and that nothing will happen.

**h.**   Discouraged from pressing charges on the basis that they would be responsible if the detainee was returned to the Jail and assaulted staff again.

**i.**   Told that they could file suit and "may win a few thousand dollars" but would be "blackballed from promotion."

**j.**   Had their duty hours changed after filing Incident Reports or attempting to pursue charges against detainees.

**k.**   Unjustifiably subjected to remedial "use of force" re-training for putting their hands on detainees who are masturbating at them.

**l.**   Yelled at by a supervisor for publicizing an incident of a masturbating detainee by reporting it over the radio, so that other deputies would be aware.

**51.** During 2017, a class member was walking with her male Superintendent when a detainee walked by them openly masturbating at her and laughing. The Superintendent did nothing.

**52.** Detainees who engage in indecent exposure, masturbation and other sexual harassment of class members frequently escape punishment because: (a) Defendants' supervisors deter class members from filing Incident Reports; (b) Defendants fail to investigate, or fail to adequately investigate, Incident Reports of sexual harassment that are filed; (c) the Disciplinary Hearing Board (the "Hearing Board") fails to hold hearings; (d) if disciplinary hearings are held, the complainant is not permitted to testify; (e) after a hearing, the Hearing Board frequently does not discipline the detainee; (f) in the rare instances in which discipline is imposed, it is often inadequate or the CCSO does not fully enforce it; and (g) Defendants do not consistently refer detainees who commit sexual assaults and batteries against female employees for prosecution.

**53.** Detainees are not the only ones to whom effective discipline is seldom administered in connection with sexual harassment of class members. Defendants also seldom, if ever, discipline supervisors and investigators who ignore, minimize, or fail to pursue class members' complaints and Incident Reports about sexual harassment by male detainees.

**54.** The failure to consistently enforce detainee dress policies also contributes to the lack of discipline and sexual harassment to which class members are subjected. Most detainees do not wear jumpsuits. They wear two-piece uniforms,

like "scrubs," which are often ill-fitting. Often, detainees wear no underpants under their scrubs. Male officers frequently allow them to leave their cells without their shirts on, with their pants pulled down, or with no pants on, in their undergarments. Detainees with a history of exhibitionist masturbation could be but, until the preliminary injunction was entered in this lawsuit, too rarely were placed in "exposure control" jumpsuits, with zippers in the back and no pockets or zippers in the front, to thwart them from reaching or exposing their genitals. Recently, Defendants have violated the preliminary injunction entered in this case by not placing many detainees with histories of exhibitionist masturbation in "exposure control" jumpsuits. The "exposure control" jumpsuits being used are also inadequate. Better jumpsuits would be more effective in preventing exhibitionist masturbation.

**55.** The Defendants are, or should have been, aware of both (a) the severe and pervasive sexual harassment of class members by male detainees and (b) supervisory officers', managers', and policy makers' longstanding failures to prevent or curtail it. They have been made aware because:

    **a.** Female Jail and Courtroom personnel have filed hundreds of Incident Reports documenting the sexual harassment.

    **b.** Hundreds of incidents of this harassment have been recorded on video—by tier, day-room, and taser cameras at the Jail.

    **c.** Class members have repeatedly discussed this sexual harassment with their supervisors during "roll call."

    **d.** The media—print, radio, television and digital—have repeatedly run stories about the sexual harassment of class members by male detainees. See for example: https://chicagodefender.com/2015/11/04/cook-county-jail-alleged-sexual-harassment-and-racial-

22

discrimination/; https://chicago.suntimes.com/news/jail-inmates-target-female-guards-lawyers-with-sexual-abuse/; and http://chicagotonight.wttw.com/ 2016/08/31/new-bizarre-gang-surfaces-cook-county-jail. See also https://teamsterslocal700.com/2016/01/13/local-700-media-release-on-cook-county-jail/; and

**e.** The Cook County Health and Hospitals System has held "town hall meetings" at Cermak Health Services, at which workers have complained about the harassment they endure from male detainees. At one such meeting, female staff expressed fears that they were going to get raped. Carlos Quezada Gomez, Director of Mental Health Services, dismissed their concerns, telling them there was "no confirmation" that would happen, and to stop their "moaning and complaining." Supervisors of the Health Service have also told health workers to wear gowns so that detainees can't see their "female bodies." Cermak Health Services and the County ignore workers' complaints and reports of harassment.

56. In addition, Teamsters Local 700, the collective bargaining agent for correctional officers at the Jail, has complained about the harassment. In June of 2016, frustrated by the Defendants' indifference to the issue, Local 700 filed a notice of safety and health concerns with the Occupational Safety and Health officer of the Illinois Department of Labor. Local 700 complained about how: (a) "On a daily basis in at least Division IX, detainees are sexually harassing female officers by way of explicit verbal sexual propositions, exposing their genitalia, masturbating in close proximity up to and including ejaculation"; and (b) "Union Representatives have presented concerns and express notifications of these issues to administration on multiple occasions and in multiple forums, but have been met with a steadfast refusal to implement any remedial measures for officer safety." Local 700 also stated that:

    **a.**    "Officers are exposed to acts of a physical, sexual and degrading nature on a daily basis from the detainees they monitor."

    **b.**    "[T]he reporting of these incidents is being suppressed. Officers are discouraged from writing incident, officer battery, and/or inmate disciplinary reports on these occurrences. The supervising personnel, after being made aware, deter the officers from writing the reports and/or decline to assess digitally written reports so that the reports remain in the digital system as incomplete."

    **c.**    "In at least one other occasion during last week, an officer approached a supervisor with a report, and she was expressly told that the supervisor would not accept the report."

    **d.**    "Supervisory staff are responding by 'talking' to the inmates and offering them incentives for refraining from the offending conduct …. These responses are incentivizing the offending behavior to such an extent that detainees believe they will be able to garner benefits from misbehaving as described and ceasing the behavior to receive a benefit …. For example, one First Assistant Executive Director and the Chief of Operations at the CCDOC authorized the purchase of outside food—at least pizza and pop—for the offending detainees." And,

    **e.**    "These issues … exist [not only in Division IX but also] in alarming rates in other locations as well, including at least, Division X, Division XI, Division VIII/RTU, and Cermak. The incidents are occurring daily …."

**57.**    The Defendants—while aware of the existence, scale, and severity of open and obvious sexual harassment—have made decisions to continue to expose class members to it rather than take steps reasonably calculated to curtail it.

**58.**    This complaint does not seek to impose strict liability on any Defendant for detainees' harassing conduct. Rather, it seeks to impose liability for each Defendant's perpetuation of a hostile environment saturated with sexual

harassment by failing to take adequate steps reasonably calculated to curtail that harassment of class members.

**59.** The inadequacy of each Defendant's responses to the harassment of its female employees by male detainees has emboldened the detainees to increase the frequency and severity of their harassment.

**60.** The unchecked sexual harassment of class members has also heightened the risk of physical harm to all staff at the Jail and Courthouse, compromising command presence, security, and safety.

**61.** The Defendants could use— or more consistently and effectively use— measures to curtail or mitigate the sexual harassment of class members, rather than acquiescing in it. These measures, many of them used in other facilities, include, but are not limited to:

    **a.** Enforcing consistent, swift and serious discipline against violators, so that harassment has consequences. For example, on February 18, 2018, while Sheriff Dart was touring Division 10 in the Jail, a detainee began to masturbate in Dart's presence. The detainee was immediately apprehended and directly transferred to Division 9 Special Management Unit ("SMU"), where detainees have limited access to phone time, visits, supplies, commissary and time outside their cells. But such swift discipline has been rare. Generally, the disciplinary system is inadequate, and inmates know there are few, if any, consequences for sexually harassing class members;

    **b.** Authorizing the use of appropriate force to restrain detainees engaged in indecent exposure or masturbation. Before this lawsuit was filed, Defendants communicated an express or de facto "hands off" policy to correctional officers, which prevented or deterred them from using force to restrain detainees engaged in indecent exposure and masturbation—and subjected them to disciplinary sanctions if they used force against masturbators;

    **c.**    Providing training to all employees, not only class members, about how to respond effectively to inmate sexual harassment;

    **d.**    Providing counseling to help alleviate the trauma suffered by class members;

    **e.**    Taking proactive steps to encourage, rather than discourage, reporting of incidents;

    **f.**    Enforcing detainee dress policy, so that all detainees are appropriately clothed throughout the Jail and Courthouse. Before this lawsuit was filed, they frequently were not;

    **g.**    Increasing the use of exposure control jumpsuits, without front pants zippers or pockets, designed to thwart indecent exposure and exhibitionist masturbation for violators;

    **h.**    Adopting policies that encourage self-policing by detainees when harassers cannot be identified;

    **i.**    Disciplining or imposing other appropriate sanctions on supervisors, managers, and investigators who obstruct efforts to diminish detainee harassment of class members;

    **j.**    Providing anger management, impulse control, or other programming to detainees who engage in harassing behavior to try to curb the behavior;

    **k.**    Introducing semi-opaque or one-way mirrored coverings on doors and windows, so that detainees cannot see female staff, but staff can see them;

    **l.**    Isolating repeat harassers;

    **m.**    Increasing referrals for prosecution; and

    **n.**    Introducing zero tolerance policies that are communicated to detainees as well as employees.

**62.**    The Defendants have provided inadequate training to their employees about inmate harassment or steps to prevent it.

63.    None of the Plaintiffs in this case has ever received training about how to address sexual harassment by male detainees. The Defendants do not provide their employees with that training. Suitable training would both teach class members how to decrease the opportunities for detainees to engage in this behavior and help reduce its impact on them, as well as instructing all other employees in how to respond to detainee sexual misconduct.

64.    The climate of pervasive sexual harassment that permeates the Jail and the Courthouse impairs the ability of class members to do their jobs.

65.    Because class members are subjected to severe and pervasive sexual harassment, without the support of their employers, they are impaired in their ability to maintain command presence and inmate control. They face significantly increased risks of developing corrections fatigue.

66.    On information and belief, until this Court entered a preliminary injunction in this case on November 28, 2017, the Defendants did not have specific written policies regarding responding to exhibitionist masturbation and other sexually aggressive behavior by male detainees.

67.    The exceptionally vulgar, offensive, and demeaning sexual misconduct that male detainees direct at class members, not because of their individual characteristics but because they are women, has been severe and pervasive since 2013 at least. The Defendants, with knowledge of this harassment, have failed or refused to take adequate steps reasonably calculated to curtail this harassment

27

since 2013 at least. The resulting hostile work environment and the Defendants'
failures to take adequate steps to curtail it are part of a continuing violation that
began in 2013, if not before, and continues today.

## CLASS ALLEGATIONS

**68.** Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of
Civil Procedure on behalf of:

> All women who have been employed by the CCSO at the Jail, or
> as Court Services deputies at the Leighton Courthouse, or by the
> County in positions with Cermak Health Services, at any time
> since April 23, 2015, except women who, during that period,
> have held the positions identified in Exhibit A to this complaint.

**69.** Plaintiffs are members of the class they seek to represent.

**70.** The proposed class definition in paragraph 68, above, is intended to be
subject to revision if facts adduced in discovery suggest desirable or necessary
refinements to it, including but not limited to the addition of subclasses, if
appropriate.

**71.** The members of the class are sufficiently numerous that joinder of all
members is impracticable. Plaintiffs are informed and believe that there are more
than 1,000 class members.

**72.** Questions of fact and law common to the class are both well-suited to
class-wide adjudication and predominate over any questions affecting only
individual class members. These common, predominating questions include:
(a) whether the exhibitionist masturbation and other sexual harassing conduct

engaged in by male detainees creates a sexually hostile work environment for class members, (b) whether Defendants' policymakers have been, or reasonably should have been, aware of the sexually hostile work environment for class members, (c) whether Defendants have taken measures reasonably calculated to curtail that harassment and (d) whether Defendants have failed to put in place safeguards commonly used by other prison and jail systems.

**73.** The named plaintiffs' claims are typical of the claims of other class members in that each of them has experienced exhibitionist masturbation or other sexual harassing conduct that has created a sexually hostile work environment for them, and Defendants have not taken measures reasonably calculated to curtail the harassment that each of them has experienced, including measures commonly used at other correctional facilities.

**74.** Plaintiffs will fairly and adequately represent and protect the interests of the class. They have retained experienced and accomplished counsel who are able and prepared to expend the resources necessary to litigate this case. A class action is superior to other methods for fairly and efficiently adjudicating this controversy. Alternatively, class-wide liability under the theories advanced in this complaint could properly be certified under Rule 23(c)(4).

29

## FIRST CLAIM FOR RELIEF
### Title VII — Hostile Work Environment

**75.** Plaintiffs repeat and re-allege all previous paragraphs of this complaint.

**76.** Because of their sex, both Plaintiffs and all other class members have been subjected to a hostile work environment, which has been so severe and pervasive as to alter the terms and conditions of their employment by the CCSO and/or the County.

**77.** At all relevant times, the Defendants have possessed both actual and constructive knowledge of the hostile work environment to which Plaintiffs and other members of the proposed class have been subjected. Despite that knowledge, the Defendants have failed to take adequate steps reasonably calculated to curtail the harassment that created that hostile work environment.

**78.** The Defendants' acts and omissions constitute a pattern or practice of discrimination against Plaintiffs and other members of the proposed class.

**79.** The hostile work environment has existed since at least 2013 (if not earlier) and the Defendants have failed to take adequate steps reasonably calculated to curtail the harassment since at least 2013 (if not earlier).

**80.** As a direct and proximate result of the Defendants' failures to take adequate steps reasonably calculated to curtail male detainees' sexual harassment directed against them, Plaintiffs and all members of the proposed class have been injured and damaged.

## SECOND CLAIM FOR RELIEF
### Equal Protection — 42 U.S.C. § 1983

**81.**   Plaintiffs repeat and re-allege all previous paragraphs of this complaint.

**82.**   At all times relevant, Defendants have acted under color of law.

**83.**   At all times relevant, Defendants have known that class members were being subjected to indecent exposure, exhibitionist masturbation, threats of sexual violence, groping, assault, and other indecent and sexually disorderly conduct by male detainees.

**84.**   With knowledge of that harassment, Defendants have nevertheless intentionally failed to take measures reasonably calculated to end or mitigate that harassment, and their failure to enforce effective discipline against male detainees, protect class members, and eliminate or curtail the sexual harassment against them has both been so widespread and well-settled as to constitute the *de facto* equivalent of a formal policy of sex discrimination and a proximate cause or moving force behind detainees' ability to continue to sexually harass class members. Alternatively, the Defendants have denied Plaintiffs and all other class members equal protection of the laws by their acquiescence in and deliberate indifference to such open and notorious sexual harassment.

**85.**   As a direct and proximate result of the Defendants' failures to take appropriate corrective steps to protect class members and address male detainees' sexual harassment of them, all Plaintiffs and all members of the proposed class have been injured and damaged.

31

**THIRD CLAIM FOR RELIEF**
**Illinois Civil Rights Act, 740 ILCS 23/5**

86. Plaintiffs repeat and re-allege all previous paragraphs of this complaint.

87. At all times relevant, Defendants have known that class members were being subjected to indecent exposure, exhibitionist masturbation, threats of sexual violence, groping, assault, and other indecent and sexually disorderly conduct by male detainees.

88. With knowledge of that harassment, Defendants have nevertheless intentionally failed to take measures reasonably calculated to end or mitigate it.

89. As a direct and proximate result of Defendants' failures to take appropriate corrective steps to protect class members and address male detainees' sexual harassment of them, all Plaintiffs and all members of the proposed class have been injured and damaged.

**INDEMNIFICATION**
**(against Cook County only)**

90. Plaintiffs repeat and re-allege all previous paragraphs of this complaint.

91. Because the CCSO is funded by the County, Cook County is responsible to indemnify the CCSO against damages, including attorney's fees, recovered from the CCSO by Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and the Class pray that this Court:

**A.**     Certify the claims in this complaint for class-wide adjudication, under Federal Rule of Civil Procedure 23.

**B.**     Appoint Plaintiffs' Counsel as Class counsel pursuant to Rule 23(g)(1);

**C.**     Declare that Defendants have engaged in a policy, custom, or practice that deprives Plaintiffs and other class members of rights protected by Title VII, the Fourteenth Amendment, and the Illinois Civil Rights Act;

**D.**     Order Defendants to adopt and implement policies, procedures, and practices that will curtail the continued harassment of class members by male detainees and eliminate the hostile work environment;

**E.**     Appoint an independent monitor to oversee Defendants' adoption and implementation of the required policies, practices and procedures, and to report to the Court;

**F.**     Award Plaintiffs and the Class compensatory damages;

**G.**     Order Defendants to pay Plaintiffs' reasonable attorney's fees and expenses, including expert costs; and

**H.**     Order all other appropriate relief as the interests of justice may require.

33

## JURY DEMAND

Plaintiffs request a jury trial for all claims that may be tried to a jury.

Dated: November 14, 2018

Respectfully submitted,

/s Marni Willenson
One of the Attorneys for Plaintiffs

Marni Willenson
marni@willensonlaw.com
Samantha Kronk
skronk@willensonlaw.com
WILLENSON LAW, LLC
542 S. Dearborn St.
Suite 610
Chicago, IL 60605
312.508.5380

José J. Behar
jbehar@hsplegal.com
Kate Schwartz
kschwartz@hsplegal.com
HUGHES SOCOL PIERS
  RESNICK & DYM, LTD.
70 W. Madison St.
Suite 4000
Chicago, IL 60602
312.604.2630

Cyrus Mehri
CMehri@findjustice.com
Ellen Eardley
EEardley@findjustice.com
Michael Lieder
MLieder@findjustice.com
MEHRI & SKALET, PLLC
1250 Connecticut Ave., NW
Washington, D.C. 20036
202.822.5100

Attorneys for Plaintiffs

Noelle Brennan
Kristin Carter
NOELLE BRENNAN & ASSOCIATED, LTD.
20 S. Clark Street, Suite 1530
Chicago, IL 60603
312.422-0001

Shelly B. Kulwin
Jeffrey Kulwin
Rachel A. Katz
KULWIN, MASCIOPINTO & KULWIN, LLP
161 N. Clark Street, Suite 2500
Chicago, IL 60601
312.641.0300

34

**Exhibit A**
(Exclusions from the Class)


Women who hold or have held the following positions are excluded from the class:

**Department of Corrections**
 Directors: Executive Director, Deputy Director, and Assistant Deputy
  Director (all divisions)
 Chief Financial Officer
 Chief Operating Officer
 Chief of Staff
 Chief, Deputy Chief, Bureau Chief, and Deputy Bureau Chief (all divisions)
 General Counsel, Assistant General Counsel, Deputy Assistant General Counsel,
  and other legal division employees
 EEO Investigator
 Compliance Officer
 Correctional Commander
 County Police Officer
 Hearing Officer
 Inmate Discipline Director
 Inmate Services Supervisor
 Superintendent

**Bureau of Health – Cermak Health Services**
 Director, Assistant Director, Deputy Assistant Director (all divisions)
 Chief, Deputy Chief, Division Chief (all divisions)
 Chief Operating Officer - Correctional Health Services
 Chairman (all divisions)
 Manager (all divisions)