Exhibit 1

# Group Declaration Exhibit
## 142 Declarations of Putative Class Members Describing Sexual Harassment

### Table of Contents

| Declarant | Page No. |
|---|---|
| Addison, Monshai | Decl. Ex. 1 - 9 |
| Alger, Cara | Decl. Ex. 10 - 15 |
| Allen, Rhonda | Decl. Ex. 16 - 18 |
| Anderson, Latarsha | Decl. Ex. 19 - 22 |
| Anderson, Tamara | Decl. Ex. 23 - 29 |
| Bain-Norris, Kristen | Decl. Ex. 30 - 33 |
| Bertrand, Amanda | Decl. Ex. 34 - 37 |
| Black, Kendra | Decl. Ex. 38 - 47 |
| Bond, Sherri | Decl. Ex. 48 - 53 |
| Bowen, Kimberly | Decl. Ex. 54 - 61 |
| Bowie, Audra | Decl. Ex. 62 - 67 |
| Braxton, Veneisa | Decl. Ex. 68 - 70 |
| Bridgeforth, Victoria | Decl. Ex. 71 - 74 |
| Brown, Carolyn | Decl. Ex. 75 - 82 |
| Brown, Catrina | Decl. Ex. 83 - 91 |
| Brown, Jacqueline (CO) | Decl. Ex. 92 - 99 |
| Brown, Jacqueline (Transportation) | Decl. Ex. 100 - 105 |
| Brown, Monique | Decl. Ex. 106 - 109 |
| Brown, Trina | Decl. Ex. 110 - 112 |
| Brown-Burge, Ayesha | Decl. Ex. 113 - 116 |
| Brown-Conley, Patricia | Decl. Ex. 117 - 126 |
| Bryant, Mara | Decl. Ex. 127 - 130 |
| Calvin, Toni | Decl. Ex. 131 - 141 |
| Champ, Angela | Decl. Ex. 142 - 144 |
| Clay, Sherita | Decl. Ex. 145 - 148 |
| Coleman, Crystal | Decl. Ex. 149 - 152 |
| Collazo, Lisette | Decl. Ex. 153 - 159 |
| Colon, Lena | Decl. Ex. 160 - 163 |
| Condon, Cheryl | Decl. Ex. 164 - 166 |
| Conley, Oneka | Decl. Ex. 167 - 174 |
| Connors, Beth | Decl. Ex. 175 - 178 |
| Correa, Jessica | Decl. Ex. 179 - 185 |
| Cribbs, Tanisha | Decl. Ex. 186 - 195 |
| Crump, Lashon | Decl. Ex. 196 - 200 |
| Daniel Denise | Decl. Ex. 201 - 204 |
| Delegan, Erin | Decl. Ex. 205 - 214 |
| DeMichel, Denise | Decl. Ex. 215 - 217 |
| Derden, Hazel | Decl. Ex. 218 - 222 |
| Dunmars, Quintoria | Decl. Ex. 223 - 228 |
| Ellis, Gloria | Decl. Ex. 229 - 234 |
| Esqueda, Vicki | Decl. Ex. 235 - 242 |
| Esquivel, Catherine | Decl. Ex. 243 - 252 |

**Group Declaration Exhibit**
**142 Declarations of Putative Class Members Describing Sexual Harassment**

**Table of Contents**

| Declarant | Page No. |
|---|---|
| Flowers, Lynette | Decl. Ex. 253 - 258 |
| Garmon, Tracie | Decl. Ex. 259 - 265 |
| Garner, Gracie | Decl. Ex. 266 - 270 |
| Green, Patricia | Decl. Ex. 271 -277 |
| Griggs, Dionne | Decl. Ex. 278 - 284 |
| Groves, Sheleda | Decl. Ex. 285 - 292 |
| Hairston, Toya | Decl. Ex. 293 - 297 |
| Harms, Danielle | Decl. Ex. 298 - 302 |
| Harris, Andrea | Decl. Ex. 303 - 307 |
| Harris, Tiffany | Decl. Ex. 308 - 311 |
| Hatten, Sandra | Decl. Ex. 312 - 314 |
| Healy, Katie | Decl. Ex. 315 - 322 |
| Henderson, Gabriela | Decl. Ex. 323 - 326 |
| Henderson, Tanisha | Decl. Ex. 327 - 335 |
| Herrera, Angelique | Decl. Ex. 336 - 343 |
| Hill-Shumpert, Donita | Decl. Ex. 344 - 350 |
| Houeisson, Karolina | Decl. Ex. 351 - 356 |
| Holmes-Miller, Linda | Decl. Ex. 357 - 364 |
| Hunter, Rosette | Decl. Ex. 365 - 371 |
| Insley, Bridget | Decl. Ex. 372 - 382 |
| Jacobowski, Katie | Decl. Ex. 383 - 388 |
| Jagielski, Patti | Decl. Ex. 389 - 399 |
| Johnson, Alta | Decl. Ex. 400 - 409 |
| Jones, Belinda | Decl. Ex. 410 - 417 |
| Keys, Sybil | Decl. Ex. 418 - 428 |
| Krzyzowski, Cherri | Decl. Ex. 429 - 435 |
| Lanier, Shonnita | Decl. Ex. 436 - 442 |
| Lewis, Ida | Decl. Ex. 443 - 448 |
| Long, Juanita | Decl. Ex. 449 - 451 |
| Lopez, Christina | Decl. Ex. 452 - 462 |
| Macklin, Lakisha | Decl. Ex. 463 - 470 |
| Maniak, Angela | Decl. Ex. 471 - 475 |
| Marquez, Mary | Decl. Ex. 476 - 483 |
| Marszewski, Jennifer | Decl. Ex. 484 - 493 |
| Mazias, Melissa | Decl. Ex. 494 - 497 |
| McBride, Shirley | Decl. Ex. 498 - 507 |
| McClelland, Kimtrina | Decl. Ex. 508 - 513 |
| McCord, Darlene | Decl. Ex. 514 - 520 |
| McCoy, Rita | Decl. Ex. 521 - 524 |
| McHugh, Sharon | Decl. Ex. 525 - 529 |
| Mercherson, Alishia | Decl. Ex. 530 - 537 |
| Merriweather, Terri | Decl. Ex. 538 - 543 |

# Group Declaration Exhibit
## 142 Declarations of Putative Class Members Describing Sexual Harassment

### Table of Contents

| Declarant | Page No. |
| --- | --- |
| Miller, Sandra | Decl. Ex. 544 - 549 |
| Mitchell, Tunesia | Decl. Ex. 550 - 559 |
| Mlinarcik, Laura | Decl. Ex. 560 - 567 |
| Montgomery, Anntionettea | Decl. Ex. 568 - 572 |
| Muhammad, Christina | Decl. Ex. 573 - 579 |
| Muhammad, Daarina | Decl. Ex. 580 - 586 |
| Myart, Donnetta | Decl. Ex. 587 - 594 |
| Nelson, Tracy | Decl. Ex. 595 - 603 |
| Neylon, Vickie | Decl. Ex. 604 - 610 |
| Orr, Juwanna | Decl. Ex. 611 - 616 |
| Parker, Sandra | Decl. Ex. 617 - 622 |
| Perez, Ramonita | Decl. Ex. 623 - 629 |
| Pitts-Doss, Debra | Decl. Ex. 630 - 638 |
| Polo, Kelli | Decl. Ex. 639 - 644 |
| Ponce, Lori | Decl. Ex. 645 - 647 |
| Ray, Desiree | Decl. Ex. 648 - 651 |
| Robinson, Vanessa | Decl. Ex. 652 - 654 |
| Rogers, Carlella | Decl. Ex. 655 - 657 |
| Rowell-Robinson, April | Decl. Ex. 658 - 660 |
| Sanders, Belinda | Decl. Ex. 661 - 665 |
| Sanford, Asian | Decl. Ex. 666 - 671 |
| Sangster, Jan | Decl. Ex. 672 - 679 |
| Scott, Elaine | Decl. Ex. 680 - 684 |
| Scott, Patrice | Decl. Ex. 685 - 691 |
| Shadbar, Wendy | Decl. Ex. 692 - 699 |
| Shelton, Cassandra | Decl. Ex. 700 - 707 |
| Shields, Kelly | Decl. Ex. 708 - 714 |
| Simon, Maxie | Decl. Ex. 715 - 721 |
| Simon-Hall, Paulette | Decl. Ex. 722 - 729 |
| Smith, Katie | Decl. Ex. 730 - 739 |
| Spencer, Lorna | Decl. Ex. 740 - 750 |
| Statham, Latisha | Decl. Ex. 751 - 756 |
| Strickland, Michelle | Decl. Ex. 757 - 763 |
| Sturdivant, Rose | Decl. Ex. 764 - 770 |
| Tapia, Dora | Decl. Ex. 771 - 775 |
| Taylor, Alexis | Decl. Ex. 776 - 782 |
| Taylor, Beverly | Decl. Ex. 783 - 794 |
| Taylor, Sharon | Decl. Ex. 795 - 802 |
| Thomas, Cecelia | Decl. Ex. 803 - 810 |
| Thomas, Danielle | Decl. Ex. 811 - 817 |
| Thomas-Carter, Ricquia | Decl. Ex. 818 - 822 |
| Trejo, Evette | Decl. Ex. 823 - 829 |

**Group Declaration Exhibit**
**142 Declarations of Putative Class Members Describing Sexual Harassment**

**Table of Contents**

| Declarant | Page No. |
|---|---|
| Tucker, Tiana | Decl. Ex. 830 - 838 |
| Tyler, Linette | Decl. Ex. 839 - 841 |
| Unseld, Barbara | Decl. Ex. 842 - 845 |
| Velez, America | Decl. Ex. 846 - 848 |
| Vallarreal, Jamila | Decl. Ex. 849 - 851 |
| Wash, Vicki | Decl. Ex. 852 - 855 |
| Washington-Farr, Hester | Decl. Ex. 856 - 861 |
| Watson, Erin | Decl. Ex. 862 - 865 |
| Webster, Alicia | Decl. Ex. 866 - 871 |
| Westmoreland, Angelique | Decl. Ex. 872 - 877 |
| Williams, Ronica | Decl. Ex. 878 - 886 |
| Wilson, Cynthia | Decl. Ex. 887 - 890 |
| Wilson, Yawfis | Decl. Ex. 891 - 898 |
| Winter, Diane | Decl. Ex. 899 - 906 |
| Wright, Sharon | Decl. Ex. 907 - 913 |
| Yates, Lisa | Decl. Ex. 914 - 920 |

## MONSHAI ADDISON DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Monshai Addison. I am a Correctional Officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately February 12, 2001. I have worked in various parts of the Jail in my role as a Correctional Officer, including: Divisions 2, 3, 4, 8, 10, 11, and pre-release. In all of these assignments, my job has required me to have interactions with male detainees daily, except for 2001 to 2008 when I worked with female detainees. I have worked with only male detainees for the last ten years. I am currently assigned to Division 11 and have been working there for over a year.

2.  As a Correctional Officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my job duties include, but are not limited to: supervising detainees' daily activities, inspecting cells, releasing detainees from their cells into the day room, returning detainees to their cells, escorting detainees to other areas of the Jail, supervising detainees in intake and holding, and performing security functions.

General Description of Harassment

3.  During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I

have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis, including comments about how they want to sexually assault me.

Specific Incidents of Exposure

4.  I most frequently witnessed detainees masturbating with their penises exposed in Division 10. When I worked in Division 10, from approximately 2008 to 2016, detainees exposed their penises or masturbated at me daily, and often more than once a day. The detainees' sexual misconduct seemed to really increase starting around 2014 or 2015.

5.  In approximately February 2016, a detainee, Redacted, pulled out his penis and started masturbating in front of me during lock up on tier 2D. I was watching my partner from the video monitor when I saw Redacted in my peripheral vision. When I turned my head toward him, I saw that he was masturbating. I gave him a direct order to stop and he did not. Over the radio, I requested a sergeant to come to 2B and stated that Redacted was masturbating. In response, the director reprimanded me for describing the detainee's behavior over the radio. When the sergeant came, the detainee retreated to his cell. The sergeant allowed him to stay in his cell and did not remove him from the tier pending a disciplinary hearing.

6.  Also, during the time I was in Division 10, detainees would stand at their cell doors and call my name. When I went to see if everything was alright, they

2

would pull out their penises. For example, detainee Redacted called me to his cell, pretending to need assistance, and instead exposed his penis. I recall a specific instance Redacted exposed his penis to me sometime around 2015. I contacted my sergeant and complained. They did not remove Redacted from the tier for his conduct, and to my knowledge, he was not otherwise disciplined.

7. I have also witnessed detainees masturbating in Division 11, where I currently work. For example, detainees in holding masturbate right in front of me while I am trying to perform my job duties. I recall an incident in 2017 when a detainee was masturbating in the Division 11 holding area. My partner, Officer Lee (male), also witnessed the detainee masturbating, but did not do anything to stop him. I became very upset and wanted to leave work that day because of this incident. I questioned why no one did anything to discipline the detainee or stop him from masturbating at me. I did not write the detainee up because, based on the results of other incidents, I felt that it was pointless; there would be no consequences.

8. Detainees have also exposed their penises while they are in their cells, when they know I am coming around to count them. I announce that a female officer is on the tier and detainees intentionally expose themselves or do not try to cover themselves, despite knowing that I am coming. Detainees also frequently walk around with their hands inside the front of their pants.

3

<u>Witnessing Harassment of Others</u>

9.    I have not personally witnessed detainees exposing their penises or masturbating at other women, but other women have told me that it happened to them. For example, Tanisha Henderson, Patricia Brown-Conley, and Rita Gallion have talked to me about incidents of detainee sexual misconduct that happened to them.

<u>Sexual and Sexually Violent Comments</u>

10.    I hear crude or sexual comments from male detainees directed at me frequently when I work on the tier. For example, detainees have said, "You have some big ass titties," "I'm going to fuck you in the ass," and, "I want to fuck her." Those are just a few examples of the numerous comments I have heard.

<u>Knowledge of Defendants</u>

11.    My supervisors know about the detainees' behavior and their sexual comments towards me and other women. Everyone knows about it. For example, Lt. Lashon Crump, Lt. Craig Johnson, and Sgt. Timothy Doody are supervisors who signed off on my incident reports related to detainees exposing their penises and masturbating.

12.    Supervisors make no effort to discipline detainees or set consequences for the sexual behavior toward women. The Sheriff's Office did not seem to care about this misbehavior until a detainee in Division 10 exposed his penis to Sheriff Dart while he was with a female lieutenant in approximately 2017.

4

After that they began removing masturbators from Division 10 and putting them in Division 9.

Incident Reports and/or Complaints

13.     I have written several incident reports, filed criminal charges, and verbally complained to my supervisor about the sexual conduct directed at me, and there is no outcome.  For example, I wrote an incident report and sought to press charges regarding the incident in February 2016 when ▮Redacted▮ ▮Redacted▮ exposed his penis and masturbated in front of me.  I noticed that ▮Redacted▮ did not go before the hearing board at the next scheduled session. When I asked why ▮Redacted▮ did not go before the hearing board, I was told that they couldn't find my write up in the system. As a result, ▮Redacted▮ was not disciplined.

14.     Shortly after the incident with ▮Redacted▮, I transferred to Pre-release to get away from the continuous sexual harassment in Division 10, which was taking a toll on my mental health. A few months later, a Sheriff's Police officer called and said they had been trying to reach me regarding my charge against ▮Redacted▮ but did not know how to find me. I was confused by that because CCSO keeps track of employees' job assignments and would have known that I transferred out of Division 10. ▮Redacted▮ was charged but received "time served" and was discharged from the jail.

15.     While I was in Division 10, I also filed a criminal complaint regarding ▮Redacted▮. I went to court twice in approximately 2015 for a charge I

5

filed against ▇. The first time I went to court, ▇ was acting out in court and the case was continued. The second time I came to court, ▇ did not show up. They continued the case again, told me that I did not have to come back, and said they would contact me regarding the outcome. No one contacted me about the outcome.

Ineffectiveness of Complaining and Discouragement

16. After writing incident reports, filing charges, and verbally complaining, I felt discouraged from complaining regarding detainee masturbation because nothing was done to stop the detainees' behavior. I felt particularly discouraged because supervisors told me detainees could not be written up for exposing themselves and masturbating while in their cells or in the shower, even though detainees intentionally directed that behavior at me.

17. Incident reports are ineffective because the detainees know that the Cook County Sheriff's Office imposes no real consequences for masturbating at women. Even when detainees are criminally charged, they often receive "time served." That is meaningless; they get no additional consequences.

Ineffectiveness of Steps Taken

18. The few steps that have been taken to address the harassment have been ineffective. For example, although known masturbators are supposed to wear green jumpsuits now, the front is closed with velcro and detainees can easily open them and wear them around their waists. For example, in early February 2018 in Division 11, one detainee, who used to wear a regular

6

brown uniform with a pink ID that identified him as a masturbator, was required to put on a green jumpsuit when he returned from a court call. The detainee did not want to wear the jumpsuit. He immediately undid the velcro and pushed the jumpsuit down around his waist.

## Lack of Training

19.     I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

## Impact on Job Performance

20.     The sexual harassment changed the way I do my job.  For example, I avoid eye contact and do not smile at work. I also always wear a sweater and don't usually wear makeup. I do not want to attract attention. But, it doesn't matter what I wear.  The detainees still harass me.

21.     The behavior by male detainees toward me is unwelcome, offensive, harassing, humiliating, threatening, and caused me to fear for my safety.

22.     During every work day at the Jail, I experience anxiety over potential harassment and exposure.  Even if I am not the direct target of detainees' sexually inappropriate behavior on a given day, my female coworkers and I expect that at least one of us will be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse.  I think it happens to someone every day.  I know I might be sexually harassed or hear about a

7

female coworker being harassed when I walk through the compound to my assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift. This causes constant stress and makes it more difficult for me to focus on my job of keeping everyone at the Jail safe.

Emotional Impact

23. As a result of the sexual harassment, I have suffered severe emotional distress. The harassment and masturbation at the Jail makes working there extremely stressful. It affects my mental and physical health. When I worked in Division 10 (2008-2016), I suffered panic attacks because of the frequency and intensity of the harassment. I am currently seeing a therapist. I also have high blood pressure that has gotten worse because of the stress of work. The sexual harassment also affects my personal life because it makes it difficult to be in relationships with men. I am extremely fed up with the lack of action to deter sexual harassment within the Jail.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/12/2019
_____
Date

DocuSigned by:

M. Ade...

9D58DAF24D3A4A8...
_____
Signature

9

## CARA ALGER DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.    My name is Cara Alger. I am a Court Services Deputy at the Leighton Courthouse ("Courthouse"). I have worked at the Courthouse since approximately July of 2004. My assignments have included the bridge, courtrooms, administrative work, the security team, and the front door. I worked on the security team from around 2012 to 2015. I am currently assigned to the front door.

2.    As a Court Services Deputy at the Courthouse, I am responsible for the safety and security of detainees and civilians within the Courthouse. As a member of the security team, my job duties included responding to incidents in courtrooms, the lockups, and other areas within the Courthouse, as well as its perimeter. My job on the security team required me to interact with male detainees on a daily basis. At the front door, I no longer have to interact with male detainees daily. However, I am occasionally assigned to courtrooms, where interaction with male detainees is required.

<u>General Description of Harassment and Specific Incidents of Exposure</u>

3.    During my employment at the Leighton Courthouse, detainees have sexually harassed me by exposing their penises, masturbating at me, grabbing their penises inside their pants, and making sexual comments on a regular basis.

Decl. Ex. 10

4.     I cannot count the number of times I was called as a member of the security
team to do paperwork about incidents of detainee indecent exposure. I was the
"go to" person for gathering statements about incidents. I responded to
detainee indecent exposure in the lockups of courtrooms on every single floor.
It was going on everywhere. I also personally experienced detainees exposing
their penises or masturbating in the lockup area.

## Witnessing Harassment of Others

5.     I have witnessed or had to respond to detainees exposing their penises or
masturbating at other Court Services Deputies and Public Defenders. For
example, I remember being called by a deputy regarding an incident with a
Public Defender. While she was consulting with a client, a detainee pulled out
his penis. I handled all the paperwork. By the time I finished preparing the
paperwork and took it to the Public Defender's office, the victim had been
convinced by her supervisor not to file charges - they said it was their policy
not to charge their own clients.

## Sexual and Sexually Violent Comments

6.     I have heard crude or sexual comments from male detainees directed at me
routinely. Detainees have told me that they couldn't wait to get out so that they
could find me and described the sexual things they would do to me. When I was
pregnant, detainees would ask whether I wanted them to be the father and
implied to other detainees that they were the father. They constantly made
comments about my "ass" and my body overall. They tried to get my attention

Plaintiffs 002415

when I walked through the lockup so that I would see their exposed penises. It happened so frequently that I had to try to tune out their comments whenever I walked through the lockups.

<u>Knowledge of Defendants, Ineffectiveness of Complaining, and Discouragement</u>

7.    My supervisors know about the detainees' behavior and their sexual comments towards me and other women because my supervisors had to review all of the reports I wrote for other women. When I experienced detainee sexual harassment myself, I would go to my supervisors and be told that there was nothing to be done, no charges would stick, and that it was just something we had to deal with. I was explicitly told that nothing was going to happen from filing complaints. Eventually, I was discouraged from complaining, especially because I saw that nothing happened after other women filed complaints.

8.    Around 2014 or 2015, I recall responding to an incident after a detainee exposed himself to a female Court Services Deputy. When the supervisor arrived, he told us that we "needed to get thicker skin," "there was nothing to charge him with," and that completing the paperwork "would be a waste of time."

9.    I was told that there was no UCR code for detainee sexual harassment, and a UCR code was required to generate a Case Report ("CR") number and proceed with criminal charges. I would use the code for indecent exposure or miscellaneous information, but most of the time the reports never even got to

3

Plaintiffs 002416

the point of being assigned a CR number. I was repeatedly told these cases would go nowhere.

10. I was made to feel that I had to toughen up or I would be labeled as a "cry baby" and difficult to work with. My female coworkers and I are expected to just take sexual abuse. I remember a time earlier in my career when I complained about sexual harassment by a coworker (Deputy Hodge). In response to my complaint, my chief told me, "You don't want to rock the boat, do you? You're a new deputy." Nothing was done about my complaint. This set the tone for the course of my employment.

<u>Lack of Training</u>

11. I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to sexually assault me.

<u>Impact on Job Performance</u>

12. The sexual harassment changed the way I do my job. When I go through a lockup I consider the possibility that detainees will pull out their penises or make disgusting sexual comments. I would try to walk through as quickly as possible and ask a male partner to go with me because of fear of what the detainees would do or say to me. Because of the constant sexual harassment by detainees, eventually, I requested to be assigned to the front door so that I would not have to interact with them as frequently. The behavior by male

4

Plaintiffs 002417

detainees toward me and other female staff is completely disrespectful – they treat us like we are nothing.

<u>Emotional Impact</u>

13.    The sexual harassment has affected me emotionally. Even outside of work, when I see a group of men, I immediately wonder what type of crude, sexual comments they will make. My reaction is automatic because of the sexual harassment by male detainees at work. The Sheriff's Office hasn't adequately addressed this problem and does not seem to care about its employees. They care more about the inmates and how the Sheriff looks in the press than the wellbeing of employees.

5

Plaintiffs 002418

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/30/2019

_____

Date

DocuSigned by:

20FC6DB4EA7048A...

_____

Signature

Decl. Ex. 15

Plaintiffs 002419

# Declaration of Rhonda Allen

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Rhonda Allen. I have been a correctional officer at the Cook County Jail ("Jail") since October 1, 2001.

2. During my employment at the Jail, I have been assigned to Divisions 2, 3, 6, and Cermak. I was assigned to Division 2 from approximately 2007 until November 2017. I was assigned to Division 6 since November 2017 until February 2019. I have been assigned to Division 5 since February 2019. I could be assigned to work other places in the Jail if there was a staff shortage or if I was assigned overtime.

3. The male detainees sexually harass me and other women through verbal harassment and by masturbating at us. One time, an inmate even masturbated to the point of ejaculation (as described in paragraph 6).

4. For example, when I was assigned to work in Division 2, the inmates made comments about my body and about what they would do to me about once a month. In Division 6, I would hear these kinds of sexual comments at least once per week, such as, "Look at her ass," and "I would hit that." They would usually make these comments when they were in a group of inmates so it was hard to tell exactly who said it. I would tell inmates to watch their mouths and they would often ignore me.

5. Sometimes, when I worked in Division 2, I would take days off because I couldn't deal with the harassment anymore. When I worked in Division 2, and the detainees joked and laughed at me after they made sexually threatening comments, I would take a sick day the next day.

6. I have experienced male detainees and masturbating in my direction. For example, on February 2, 2018, in Division 6, an inmate had his hands in his pants and was masturbating and smirking at me until he finished. After he ejaculated, he looked in his pants. I wrote an incident report, notified Sergeant Majoch that I wrote a report, and he viewed the camera footage of the incident. Sergeant Majoch informed a lieutenant on the phone, and I spoke to the lieutenant and told him that I wanted to press charges.

7. Approximately a month later, an investigator came to Division 6 and told me that, according to the applicable statute, the county would not charge the detainee because he did not fully expose himself. I was in disbelief and angry.

Decl. Ex. 16

Plaintiffs 002420

8.  I have observed other women being subjected to the same harassment. For example, one time, in Division 2, an inmate made a comment about my coworker, Officer K. Hill's, lips. He said, "I bet she could do something with those lips."

9.  I have talked to other women who experience sexual harassment and read incident reports about it. I read CCOMS incident reports about every two weeks and there are always reports about sexual harassment happening all over the compound, including inmates in green jumpsuits masturbating at women. When I first started at the Jail, there were very rarely incident reports about masturbation at women.

10. I have not been trained on how to respond to sexual harassment from detainees. The training we receive about sexual harassment is on sexual harassment from coworkers and supervisors.

11. Instead of being trained to stop the harassment, I feel that we are encouraged to simply accept the detainees' behavior. For example, other women have told me that their supervisors have told them that the Jail is where the inmates live and we have to expect them to masturbate. As another example, I couldn't even press charges when the inmate ejaculated at me.

12. No one goes to work for this type of treatment. It really just creates a hostile work environment. I have felt helpless and I don't feel supported by the administration.

13. The sexual harassment has changed my attitude about work. I try to treat people fairly, so I try to treat detainees fair across the board, but when they make sexual comments, it's hard not to treat them differently because their behavior is threatening.

14. Due to the sexual harassment, it took a lot more time to for me to destress from my work days. The Jail is an extremely stressful workplace and it has carried over into my personal life. I started to have trouble sleeping because I was worried about what would happen at work the next day and whether I would be sexually harassed.

15. The sexual harassment has also made me more suspicious of people both in and outside of work. I believe that based on the comments from detainees and lack of disciplinary action, the sexual harassment may lead to a female staff member being raped.

Plaintiffs 002421

_Rhonda Allen_ (signature)

Rhonda Allen

April 30, 2019

Date

3

Plaintiffs 002422

## Declaration of Latarsha Anderson

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Latarsha Anderson. I am a Sergeant at the Cook County Jail. I have worked there since 1999. I became a Sergeant on December 1, 2001.

2. I have been assigned to transportation since approximately September 2016. I have previously worked in Division 11 and worked overtime in Division, 6, 1, 2, 4 and 5.

3. In transportation, I interact with male detainees every day. I also interact with male detainees in green jumpsuits, transporting them to court and other places. I often have to transport HRM (high risk movement) detainees to different counties.

4. I experience sexual harassment from the male detainees daily. I spend a lot of time in Receiving, where I pick up the detainees to take them where they need to go. Because so many detainees come to one place in Receiving, they observe each other getting away with sexual harassment – both verbal harassment and masturbation. Every day, they say things like "Your mouth looks good, I wonder what that do," "You're nice and thick," "Your man ain't taking care of you at home," or "Can I see you out in the world?" (referring to after they get out of the jail). These comments are made with a sexual connotation and the detainees will often be rubbing their penis while saying these things. Often, they will even admit that they are rubbing their penis. It seems like they are constantly trying to get under your skin or throw you off-kilter.

5. I've been there about 20 years, and this is the worst I've ever seen it.

6. At one point, we rolled a gurney full of coats in front of the window of the Division 9 bullpen in Receiving so that we wouldn't have to see detainees masturbating so much. At that point, I was so tired of seeing detainees jacking off in unison in front of us. Eventually, the Division 9 bullpen was moved elsewhere.

7. I wear a lot of sweaters and bigger clothes to be inconspicuous, and the detainees will still make sexual comments about my body or what I'm wearing. They will say things like, "I like your braces," "You've got a nice ass," comment on my lip gloss, say "I like a woman in glasses," or comment on my hair. These comments are said in a sexual tone and/or along with propositions to take me on a date once they get out of the jail.

Decl. Ex. 19

Plaintiffs 001107

8. Male detainees masturbate at women. The masturbation occurs frequently because the Jail has no system to stop it. For example, in approximately 2017, I was loading male detainees into the bus to take them to court. I heard a detainee say, "Hey Sarge, can you come in here for a second?" I walked to bullpen and saw approximately 5-6 detainees standing side-by-side, all with their penises out of their pants and stroking them. One of them actually "bust" [ejaculated] on the window. I gave all of them orders to stop. I didn't write up this incident because the writeups go nowhere – it seems like it's in vain. The time it takes to write them up seems like a waste of ink because I don't think anything will happen.

9. As another example, in approximately late 2017 or early 2018 a detainee in the bullpen ripped his green jumpsuit open and pulled out his penis. He also stood on the toilet and began masturbating while looking at me. I wrote an incident report and an inmate disciplinary report. I indicated that I wanted to press charges. Approximately a few months later, I received a call from the Sheriff's Police investigator and I told him that I wanted to press charges. I never heard anything after that.

10. In approximately 2017, in Receiving, I saw a detainee who I was going to load into the bus was masturbating in his pants while looking at me, smiling. I asked the detainee what he was doing and he said "I'm rubbing on my dick. Why are you looking?" I reported the incident to Lieutenant Grant Martin. I also wrote an incident report.

11. Also in 2017, I was working in the criminal courts building with Lieutenant Martin, supervising a detainee in the hallway behind the courtroom. Lt. Martin stepped out to take a call and the detainee began masturbating at me. I gave the detainee the directive to put his penis away. Fortunately, in this instance, the detainee complied.

12. In approximately 2015, Division 11, a detainee pulled his penis and stuck it out of the chuckhole and said "Come here, Sarge." I reported the incident to my Lieutenant David Lazario and also to Lieutenant Michael Mayweather. I wrote an incident report on the detainee.

13. The sexual harassment has changed the way I do my job. Because the detainees sexually harass me so often, it makes me ignore the detainees if they try to get my attention – because I assume they are just trying to get my attention so they can sexually harass me or so that I can see them masturbate. If I do responds to the detainee, I try to bring a male officer with me to the bullpen every time.

Decl. Ex. 20

Plaintiffs 001108

14. The sexual harassment wasn't as bad when I first started at the Jail, but it has gotten ridiculous now. There needs to be some type of sanctions and not reward them for their bad behavior. For example, at one point in the last few years, the detainees who did wrong started getting rewarded. Detainees were receiving pizza parties for not masturbating. Other detainees realized that if they began masturbating, they could get a pizza party, too.

15. It seems like everyone has a defeatist attitude, starting with upper management. For example, I heard that Undersheriff Zelda Whittler or Cara Smith said something about us getting paid to endure this kind of harassment, which felt discouraging.

16. Knowing that the incident reports often go nowhere makes it feel like there is no point in writing detainees up. When detainees do get written up, someone needs to make sure the discipline actually sticks. Like, for example, they should get no visitation or no commissary or there should be some other consequences.

17. In the past, detainees who were written up and found guilty of a disciplinary violation would get time in "the hole" or receive other discipline. Now, detainees do not get punished as much. It seems like they spend less time in the hole.

18. Since approximately 2017, segregation is now "smart housing," which doesn't work because when all the bad behaving detainees are placed together, where brag about the sexual harassment they conduct and devise more bad ideas together. I have heard detainees from smart housing talking about these things when they were sitting in Receiving. I have heard detainees from smart housing brag about pulling their penises out on state's attorneys.

19. The women have been made to feel like the sexual harassment doesn't matter. The complaints fall on deaf ears. But the male officers don't have to deal with what we do. If they don't have to be subjected to it, why do we have to?

20. Dealing with the ongoing, rampant sexual harassment at work almost feels like you're getting raped. They know there is no reform and no sanctions, and that the Sheriff is soft on them, so they do not care.

21. The sexual harassment affects me both inside and outside of work. There are many times when I don't feel like going to work because I don't want to deal with it. I hope everyday that it's a good day and that the inmates are good. With the sexual harassment, I have to build myself up to go to work.

3

Plaintiffs 001109

Sometimes, I have to take a mental health day. If the sexual harassment is really bad, I have to go home early. I feel burned out from it.

22. At work, detainees pull their penises out every day. It makes you leery about working with the male detainee population. It also affects your self-esteem – it starts to make me feel like I deserve less.

23. Outside of work, it affects my intimate relationship with my significant other. The images of sexual harassment are almost impossible to leave at work. I'll say to my significant other, "I've been looking at dicks all day, I don't want to see yours." My desire for sexual contact lessens and lessens. When you look at penises all day at work, you don't want to see it again. It makes you second guess all men – like all men are dogs. I have had to go to a counselor about the issue of why women have to deal with all of this. I'm sure the sexual harassment has cost many women their relationships.

*Latarsha Anderson*
Latarsha Anderson

January 5, 2019
Date

4

Plaintiffs 001110

# TAMARA ANDERSON DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Tamara Anderson. I am a Correctional Sergeant at the Cook County Jail ("Jail"). I have worked as a correctional officer at the Jail since approximately July 23, 2007. I was promoted to Sergeant in October 2016. I have worked in various parts of the Jail including: Divisions 4 in 2007 for about a year; then I worked in Division 6 for approximately six months; I worked in Receiving for approximately 7 years; and I began working in Division 9, which is maximum security, for approximately three months. I was assigned to RTU (residential treatment unit) in 2018.

2.  As a Sergeant at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my job duties include, but are not limited to, supervising detainees' daily activities to make sure they are compliant, inspecting their cells, releasing them from their cells into the day room of the tier, and putting them back in their cells at my shift. In all of these assignments, my job has required me to have interactions with male detainees daily.

3.  In all the places that I have worked at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c)

Plaintiffs 001261

crude or sexual comments on a daily basis, including regular comments about how they want to sexually assault me.

4.    I frequently witness detainees masturbating with their penises exposed through the chuckholes of the doors to their cells. Once I went on tier in division 9 and the entire deck was masturbating with their penises exposed through the chuckholes. On Division 9, the masturbation occurred every day.

5.    As another example, detainees would call for a sergeant when they knew I was on duty because they wanted to see a woman. When I arrived on the tier the detainees would expose their penises and masturbate at me.

6.    I have observed other women who work in other positions being subjected to the same or similar sexual harassment. For example, sometime in the Spring of 2018, an officer was in the tunnel of Division 4 and an inmate was watching her from the clothing room masturbating. The officer called for a sergeant and I arrived to remove the detainee from the division.

7.    It happens so frequently that I have lost track of how many times I have heard such comments. As an example, on August 6, 2018, a detainee said to other detainees about me "she about to get on that elevator and suck his dick." I have also heard detainees say to me, "come sit on this dick, bitch." As another example a detainee said to me, "I bet you've never seen a dick as big as this," and "your man not hitting it right at home, that's why you always have an attitude."

2

8.    I also heard detainees yell sexual threats at me, such as "I'll fuck the shit out of you."

9.    I have heard detainees make remarks about my appearance, such as "Ms. Anderson, you sexy as hell."

10.    In my experience, most women who have interactions with male detainees working at the jail have experienced the harassment.

11.    I believe the Jail is saturated with this behavior. The masturbation by inmates at women happens in Divisions 9, 6 and Receiving daily. When inmates move through Receiving they see other detainees masturbating at the female employees and then masturbate at women on their tier.

12.    Directors and superintendents know that the detainees make sexual remarks to women and masturbate at women. They have seen it happen. It is everywhere.

13.    Management is also aware of the masturbation problem because I have written multiple incident reports about detainees masturbating openly and they have witnessed it themselves. For example, I was on Division 9 and two inmates exposed themselves and were masturbating at me. A Director saw the incident happen on camera and called down to the Division to tell the Lieutenant on the tier to write up the two inmates that were masturbating at me. The Lieutenant told me to tell the Director to come down and write it up himself, he saw it too. The Lieutenant then said, "there's no point, they're not going to do shit to the detainees anyway."

3

Plaintiffs 001263

14. After writing several incident reports, I felt discouraged from writing incident reports about detainee masturbation because the lieutenants and management have told me it's a waste of my time and their time because nothing is going to happen to the detainees. It is also discouraging when you write a report and the investigators don't show up and do their job.

15. As another example, I have experienced reports not being processed. I wrote an incident report and then couldn't find it in the CCOMS system. I'm not sure what happened to it, but it was never processed.

16. I have been discouraged from writing reports for other forms of verbal sexual harassment. I was told that as long as a detainee doesn't put their hands on you its not a big deal, it's just words.

17. Incident reports are ineffective because the detainees know that the Jail imposes no real consequences for masturbating at women. For example, I wrote an incident report about one detainee masturbating at me and he was not meaningfully disciplined.

18. Supervisors excuse the detainees' behavior rather than try to stop it. For example, management has made comments and other jokes such as "You act like you've never seen a dick before. Stop being so sensitive." "This is a part of your job," it won't do any good," and "that's their house, they can do what they want to do in their house."

4

Plaintiffs 001264

19.   I have never received training regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

20.   The harassment impacted my ability to do my job by altering my work environment. For example, we are required to respond to detainees when they call for assistance.  If I think a detainee is calling me unnecessarily, I won't respond to them in attempt to avoid being flashed or having him expose his penis to me.

21.   I dread going to work and I didn't used to. All the sexual harassment has added up.  I try to work as little as possible and have depleted many of my leave hours because I have reached a breaking point.  It is so difficult to go to work each day and hear sexual threats and be masturbated at.

22.   The behavior by male detainees toward me is unwelcome, offensive, harassing, humiliating, threatening, and caused me to fear for my safety. It also affects my interactions with men outside of the jail. For example, I was approached by a man inside of a store and he told me I was beautiful. After the interaction I went to anther aisle and kept looking over my shoulder to make sure he wasn't following me.

23.   As a result of the constant sexual harassment, I have suffered severe emotional distress. Specifically, I have suffered from depression and headaches.  For example, when I get to the exit close to the jail, I sometimes get an instant pounding headache, this happens at least twice a week. As

Decl. Ex. 27

Plaintiffs 001265

another example, I've had multiple panic attacks at work because of the anxiety, two were so severe that I was sent home.

Decl. Ex. 28

Plaintiffs 001266

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

01/24/2019

_____
Date

_____
Signature

Plaintiffs 001267

# Declaration of Kirsten Bain-Norris

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Kirsten Bain-Norris. I am a correctional medical technician ("CMT") 4 at the Cook County Jail ("Jail"). I have worked at the Jail since June 15, 2015.

2. During my time at the Jail, I was assigned to Division 10 from June 2015 until approximately January 2017. Since January 2017, I have worked on the medication delivery team, so I was assigned to deliver medication to a different division every day until approximately September 2018. Since approximately September 2018, I have been assigned to a different division every month to deliver medication. For example, in February 2019, I was assigned to Division 9. In March 2019, I was assigned to Division 11.

3. I spend about 75% of my time at the Jail with male detainees. I go into the divisions or the dispensary. I hand out medication in the dorm setting, the tier settings, the kitchen, or anywhere else a detainee is.

4. Detainees have exposed their penises and masturbated to me in many places throughout the Jail, including Division 9, Division 10, Division 11, and the tunnels of the Jail.

5. When I first started working at the Jail, there was no real set way to report detainees masturbating at me or other women. We would just tell the officers, but sometimes they would not deal with it. As a medical staff member, I could write an EMERS report, but those reports are not really supposed to be for sexual harassment incidents. I used the EMERS report for sexual harassment reports anyway so that there is record of the incident. I still cannot write an Incident Report in CCOMS because I am not a sworn officer. This means an officer has to write a report in order for the detainee to be disciplined.

6. When I handout medication in Division 9, detainees often expose their penises and masturbate through the chuckholes. This happens almost every time I go onto the tiers of Division 9. In February 2019, I reported detainees masturbating through the chuckholes at least twice. But Division 9 is not the only place that detainees expose their penises to me.

7. For example, one afternoon, I was standing in the bubble talking to a nurse. I looked into the tier through the window and detainee E.S. was masturbating under a towel while looking at the nurse. I notified Sergeant

Plaintiffs 002423

Valez and Sergeant Rocco and they informed me that they wrote an incident report. Approximately a few months later, CIID called me about the incident. The man on the phone said that he read the report and said they couldn't press charges because they couldn't be sure what was happening under the towel. CIID also sent me an email stating the same.

8. In approximately 2015 or 2016, in Division 10, I had to do psych rounds. I was talking to one detainee and out of the corner of my eye, I could see another detainee moving to my line of sight, expose his penis and masturbate at me. I moved out of his line of vision and he moved back so he could see me. I called in the correctional officer on duty and asked him to write an incident report. About six months later, an investigator called me and, at that point, I had forgotten the detainee's name, so he was not charged.

9. In 2017, I was passing out medication in Division 9 with my female partner, Rina Flores. We were walking through the main doorway of one of the tiers and one detainee jumped in my way and pulled out his penis and tried to hit Ms. Flores' hand with his penis. I notified a nearby male correctional officer and the correctional officer told the detainee to step away from us. When the correctional officer turned around again, Ms. Flores and I moved down the hall toward the elevator, and the detainee followed me and Ms. Flores to the elevator area with his penis still exposed. I yelled to get the correctional officers' attention and the correctional officer finally came. When I said I wanted the detainee written up, the correctional officer said, "It's fine" and said the detainee would be moved back to his housing tier. I demanded to see a white shirt or a sergeant but no one called a sergeant. So I approached a sergeant myself and finally a lieutenant wrote an incident report. I do not know the outcome of the incident report or if the detainee was charged. I am not told what happens to the detainees when they masturbate at me or expose their penises to me.

10. After that incident, I was angry that my concerns were dismissed and it made me feel powerless.

11. I have reported around 10 incidents to correctional officers, and asked them to write a disciplinary incident report. I fill out Staff Safety Incident Reports, and I submit reports to EMERS. Despite this, I have never been called to come to court on a detainee and I see no repercussions for the harassment.

12. I still run into detainees that have exposed themselves and masturbated to me in the past, and it is stressful and upsetting.

13. I have never reported any verbal harassment because the majority of officers just stand there and hear it happen without doing anything so it doesn't seem

2

Plaintiffs 002424

like something we can report. When I go on the tier, I am escorted by an officer, but usually the officer doesn't do anything about the verbal harassment. I mostly interact with male correctional officers, and it seems that they do not want to do the paperwork required for a formal Incident Report. For example, once I asked Lieutenant Theilin to write an incident report. He wanted to know my height, weight, address, birthday, and employee number for the report. I refused to provide that information, knowing that it could be seen by the detainee, and I believed that would put me at risk. Lieutenant Theilin said that if my personal information was not included, I couldn't charge the detainee. I ended up signing the charge without my personal information included and the lieutenant marked it "refused to provide information," so the charge did not go through, to my knowledge. I told my supervisor how unsafe it would be for me to provide that kind of personal information on a document that a detainee could potentially see.

14. I felt like this was extremely discouraging. I feel that the reporting process is unsafe if I had to give my address. I don't want my family getting involved and I don't want my personal information available to the detainees.

15. Our supervisors and the Jail management know that detainees are masturbating at women because we report it, we tell them in person, and they see it themselves.

16. Every day I am also constantly subjected to verbal sexual harassment. Every time I go into a tier, including the tiers in Divisions 2, 6, 9, 10, 11, and in the tunnels, I hear whistles and cat calls, an detainee will make a comment about how big my butt is, that I am overweight, and say what they want to do to me sexually. I have been called a "bitch" many times. I have heard detainees in Division 2 and Division 6 say, "I want to fuck you, med tech," and "I love you, med tech."

17. The harassment has impaired my ability to do my job. It makes me uncomfortable and alters the way I have to deliver medication. For example, if I go to Division 9, I usually wait until all the cells are locked and then I run in and pass out medication as quickly as possible. I try to make sure there isn't anyone in the shower or exposing their penis to me. This makes my job extremely stressful. It definitely takes me a lot longer to complete my work. I have to stick up for myself because I don't believe the officers will stand up for me. I also wear oversized shirts to try to avoid comments from detainees, but it doesn't matter what I wear.

18. Sometime at the end of 2018, all the medical staff members received a radio, but they are set to Cermak channel so that I can communicate with other

Plaintiffs 002425

medics or other medical staff throughout the compound. In order to access the DOC channel to speak to an officer, I have to press a few buttons to change the channel. The emergency button on the medical staff's radio is deactivated so that people do not accidentally press the button. However, that leaves us with no emergency button to use if we need it. Before the end of 2018, we did not have a radio at all if we need to call for help.

19. The sexual harassment in the Jail affects me outside of work, too. For example, hearing sexual harassment all day long at work makes it so if someone compliments me outside of work, it makes me feel awkward now. I never felt that way before.

*Kirsten B. Bain-Norris*
_____
Kirsten Bain-Norris

May 1, 2019
_____
Date

Plaintiffs 002426

## Amanda Bertrand (Pryor) declaration

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Amanda Bertrand (previously Pryor). I worked as a Mental Health Specialist III for the Cook County Jail from May 7, 2013 until January 2016.

2. During my employment at the Jail, I have been assigned to Receiving, Division 4, Division 9, and Division 6. However, I could work in any division if I worked overtime or if there was a staff shortage.

3. When I worked in the divisions, I often did crisis intervention services, mental health clinics where detainees visit the medical room of the tier (known as "the dispensary") to seek mental health services. When I worked in Receiving, I did mental health assessments of detainees coming into the jail in small class cubicles, where I would be approximately an arm's-length away from the detainee I was assessing.

4. In all of these assignments, except Division 4, my job required me to have interactions with male detainees on a daily basis. Even when I was assigned to Division 4, I would pass male detainees in the tunnel and in the bullpen in the tunnel, where they would catcall me and make comments about my appearance.

5. During my employment at the Jail, I endured sexual harassment by detainees on at least a weekly basis, if not more often, which the detainees directed at me and other female staff. For example, I experienced: (1) Gender-based name calling, such as calling me a "bitch;" 2) Sexual remarks; (3) Propositions and asking me on dates; and (4) Remarks about my appearance and my body, no matter how much my body was covered. For example, I made sure to wear loose, all-black clothing when doing well-being check rounds on the tiers of Division 9 and Division 6. Regardless, detainees would still comment on my body. One time in Division 9 or 6, I heard a detainee say, "She's wearing all those clothes trying to cover up that ass." Another detainee said, "Well, she ain't got no tits!" I do not recall the date of these comments or which detainees said these comments. This type of sexual harassment has happened all over the jail, including in Receiving, Division 9, and Division 6, as well as walking through the tunnel.

6. I also witnessed indecent exposure. As an example of the indecent exposure, in approximately 2014, in Division 6, I was doing a well-being check. During the round, a detainee exposed his penis to me. I heard him shout to the male

1

Plaintiffs 001352

correctional officer on duty (whose name I do not recall) to "move" so that he could see my "big black ass." The male correctional officer ignored the detainee's lewd comments, so I said to the officer, "You saw what he just did, right?" The officer replied something like, "But he was in his cell." I reported the incident verbally to the superintendent of that unit, a woman whose name I do not recall. I also sent my supervisor, Dr. Rogers, an email detailing the incident. Approximately one week after I reported it, I received a call from a male investigator about my report. The investigator made it sound like I would have to do a lot of work, that it would be a hassle, and nothing would happen as a result of pressing charges. I also know that a lot of my coworkers told me they had a similar experience where they reported sexual misconduct and nothing was done, including no consequences for the detainee. I felt discouraged so I decided not to press charges.

7. As another example, I recall that sometime in 2015, a detainee came into the dispensary in an orange jumpsuit, handcuffed in the front, with the bottom buttons of his jumpsuit unbuttoned, and his penis hanging out of the jumpsuit. I told the detainee and the male officer who was escorting him that I refused to see the detainee unless he was properly dressed and handcuffed from the back.

8. I have also witnessed other women being subjected to this sexual harassment. For example, in approximately 2015, in Division 9, I heard a detainee say to another female mental health specialist, Anita Johnson, that he was going to rape her.

9. As another example, Lauren Cartwright, another mental health specialist, told me that she had been groped by a detainee in Receiving. That was the most frightening – even today, I get chills when I think of that happening to her. I remember this vividly because the thought of that happening really shook me up. The response from management was nothing. It was both frightening and made me feel powerless, like nothing would happen even if an inmate touched or grabbed you. Ms. Cartwright had to just go back to work. Witnessing and hearing these incidents put me on edge and made me worried at work.

10. Shortly after these incidents, sometime in approximately 2015, in the mental health office, I heard Dr. Key suggesting to other mental health specialists that we should wear smocks as a deterrent so that detainees could not see our bodies.

11. This harassment has not been taken seriously by male correctional officers. I have heard male officers blame the female staff for the detainees' behavior. I can't recall specifically who, but I recall hearing male officers making

2

Plaintiffs 001353

comments like, "Well, she had those tight pants on..." or other comments that felt like they were blaming the victims of the sexual harassment. There was a lot of victim blaming. It made me feel like I had to tolerate the sexual treatment and if I said anything about it, my concerns were going to be minimized or dismissed.

12. In addition, meetings with mental health specialists' managers felt very discouraging. In one meeting a meeting with our supervisors in approximately 2014, another mental health specialist, Audra Bowie, expressed concern about the rampant sexual harassment. I recall Dr. Key saying something like, "Well, you work at a jail" and otherwise dismissing her concerns.

13. At another meeting with our supervisors in approximately 2015, Dr. Gomez dismissed female staffs' concerns about the sexual harassment, stating something like, "I've had it happen to me, too. I've worked in Division 10." In the same meeting, Dr. Gomez said, again, in response to us dealing with the sexual harassment, something like, "That's why you get paid how much you get paid to work here."

Working at the Jail made me anxious about work and affected my ability to do my job because I was feeling more fearful during my assessments of detainees. I was less confident to interact with the detainees because of the rampant sexual harassment. Being fearful of a detainee can affect your clinical judgment and your ability to effectively assess a detainee. I was constantly on edge. I was anxious on my way to work and had to prepare for what might happen. In addition, I felt that I was expected to accept the abuse.

14. The constant sexual harassment gave me a lot of anxiety, made me constantly on edge, and led me to have trouble sleeping. It made me less trusting of people and hypersensitive to being in crowds of people.

15. At Cook County, I never received training on how to address sexual harassment by male detainees, how to deescalate dangerous situations, or what to do if a male detainee tried to rape me. However, we were frequently sent to deescalate emergency situations with violent detainees engaging in sexual behavior even though we were never trained on how to deescalate or respond to detainees who were acting out in a sexual way.

16. Furthermore, inside the medical rooms of Division 9 and Division 6, there was no emergency alarm button for medical staff to press in the event of an emergency with a detainee.

Decl. Ex. 36

Plaintiffs 001354

_____

Amanda Bertrand

March 14, 2019
_____

Date

Decl. Ex. 37

Plaintiffs 001355

DocuSign Envelope ID: BFEA6203-24AD-4374-ACDC-D527D116D19E

## KENDRA BLACK DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.　My name is Kendra Black. I was a Correctional Sergeant at the Cook County Jail ("Jail"). I worked at the Jail from approximately February 25, 2002 through May 13, 2018. When I worked as an officer, I mostly worked in Division 10, where I was assigned from approximately 2010 through early 2016. After that, I worked in Division 5 in Administrative reports for about a year and a half. Around late 2016 or early 2017, I was promoted to Sergeant and assigned to Division 10. While I was a Sergeant, I floated to Divisions 8, RTU, and 9. I was assigned to Division 2 for my last 2 months.

2.　As a Sergeant at the Jail, I was responsible for the safety and security of individuals being held at the Jail in pretrial detention, maintaining order at the correctional facility, and supervising the officers on duty. For example, my job duties included assigning lunch and other breaks to the officers on duty, checking in with the staff on the tiers to make sure they had what they needed for the day, occasionally sitting on the tiers to cover for the officers during breaks, responding to incidents, signing off on incident reports, escorting detainees, securing detainees, and responding to detainee complaints or requests. In performing all of these duties, my job required me to have interactions with male detainees daily.

Plaintiffs 002117

<u>General Description of Harassment</u>

3.  During my employment at the Jail, I endured sexual harassment by male

detainees, which they directed at me and at other female employees. I

experienced detainees exposing their penises to me, male detainees

purposefully masturbating at me or in front of me, and crude or sexual

comments on a daily basis, including regular comments about my body, what

they would like to do to me, and how they wanted to sexually assault me.

<u>Specific Incidents of Exposure</u>

4.  I most frequently witnessed detainees masturbating on the bridge when we

took detainees to court.   Detainee masturbation in the holding cells and

bullpens in receiving was constant.

5.  For example, my colleagues and I might be taking a line of 40 detainees over

to Courts.  To get there, we had to walk past hundreds of detainees being

held in bullpens.  As we walked past, they would yell and scream at me, with

penises exposed or their hands in their pants, rubbing themselves.  It was so

loud I could barely make out what they were saying, but it always made me

uncomfortable.  I often couldn't identify which detainee was saying and doing

what because it was so intense and there were so many of them.

6.  As another example, in Division 10, the security office desk used to be right

in front of the bullpens in male holding.  Whoever was in holding would be

cuffed, but still would pull out his penis and start masturbating to the female

officer who was sitting at the security desk.  They clearly did not care about

Decl. Ex. 39

Plaintiffs 002118

getting in trouble because the supervisor's office was right next to the security desk.

7.     I remember another time in late 2017 or early 2018, I was helping Officer Cruz escort some detainees from Division 10 into Division 9 Holding. After he put one detainee in the cell, he jumped back and told me to get out of there because the detainee who was already in the cell started masturbating at me.

8.     While I was a sergeant in Division 10, I was escorting a detainee into a cell on Tier 1A, which was "the hole," or disciplinary segregation. As I walked by the cells, at least 3 detainees in their cells stuck their penises through the chuckholes and started masturbating at me.

9.     Once, when I was an officer in Division 10, Nneka Jones and a bunch of other directors went to see tier 1A and the detainees all masturbated at her. She ran out of there so fast! But nothing changed – it just got worse.

10.     In Division 10, the detainees can see the visitors in the visiting cage if they stand by the window of the tier. Often the detainees stand there and watch the female visitors with their hands in their pants, stroking their penises. We would try covering up the corner of the window by putting paper in it so that they couldn't see, but we'd get in trouble for doing that.

11.     When I worked in Division 2 and made rounds on the tier, the detainees would constantly make comments about my breasts. Division 2 Dorm 4 was the worst; those detainees had their hands in their pants and on their penises constantly.

<div align="center">3</div>

Decl. Ex. 40

Plaintiffs 002119

<u>Witnessing Harassment of Others</u>

12.   I have seen other women who work in the Jail experiencing the same or
      similar sexual harassment.  As a sergeant, I often had to assist other women
      when they were being masturbated at or if they were the victim of sexual
      harassment by detainees.  I know I have signed off on several incident
      reports of masturbation or indecent exposure.

<u>Sexual Comments</u>

13.   I heard crude or sexual comments, including threats of sexual assault, from
      male detainees directed at me on a daily basis. For example, detainees have
      told me, "I want to stick my finger and tongue in your ass," and "I want to
      suck your big titties." Detainees have made these or similar comments too
      many times to count.

<u>Knowledge of Defendants</u>

14.   Supervisors and managers at the Jail know about the detainees' behavior and
      their sexual comments towards me and other women. I know, because I have
      been told by my supervisors, that the only thing I could do or tell my officers
      to do was write the detainees up.

15.   Supervisors didn't assign female officers to supervise Dorm 4 in Division 2
      because they knew the detainees masturbated all the time.   I know there
      were other assignments women didn't get because there were known
      masturbators in that area.

4

16. Supervisors get masturbated at also, like the incident I described where Nneka Jones visited tier 1A.   I also heard that sometime around 2016 or 2017, Commander Harrison, who worked the 3-11 shift in Division 10, was masturbated at.  Director Marilyn Martinez used to be our superintendent in Division 10 when I was an officer.  She definitely stayed away because the detainees would always have something vulgar to say.  We knew she wouldn't come to see us on the tiers.

Ineffectiveness of complaining and writing disciplinary reports

17. I complained to my supervisors, but nothing ever changed.  We would sit in the office and talk about all the penises and masturbation we saw.  It was so commonplace to talk about this that I can't remember who I complained to – I complained to a lot of people.

18. I wrote a number of incident reports about detainee sexual misconduct but nothing ever changed.  I never got any follow up after any incident reports I wrote.  I was also involved in helping other female employees write incident reports, but never saw anything change as a result of those reports.

19. As an officer, if I was assigned to a tier and had written up a detainee for masturbation, he didn't always get moved right away because there was nowhere to move him.  The next day I would come back to work and there he was.  I had to keep working with him, even though he just sexually harassed me.  I hear that other female officers have experienced this also.

5

Plaintiffs 002121

Ineffectiveness of Steps Taken

20.  The green jumpsuits were supposed to be designed to prevent detainees from masturbating, but they didn't work.  Sometimes the detainees would end up back in regular brown uniforms.   The jumpsuits would work if they would be worn properly – buttoned all the way up.  But, the detainees would often wear it with a t-shirt and keep their arms out and the top of the jumpsuit rolled down.  No officer is willing to risk getting a use of force complaint because a detainee's uniform wasn't on right.

21.  The Sheriff has done nothing to address the verbal harassment either.  The Sheriff doesn't even really acknowledge that what they say is offensive.  The only option we had was to write them up, which doesn't stop them.  Sometimes it was hard to know who was saying what – there are 40 detainees on a tier and even more when you are moving them through the tunnel and in receiving.

22.  A lot of times, detainees would say "I don't care if you write me up."  The discipline was nothing to them.  And even if they were sentenced to time in the hole, they didn't often make it to the hole because the hole was full.

23.  I heard there were hundreds of people waiting to go to the hole and no one had a solution. There was a long wait to serve disciplinary sentences in the hole.  Then, as an officer, when you try to take someone to the hole for something that happened 3 months ago, they are going to resist you, and then you have a whole different problem with that detainee.

6

Plaintiffs 002122

24. Also, a lot of times the detainees' disciplinary tickets would expire before they could get any punishment.

Lack of Training

25. I never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tried to rape me. We had an in-service about staff sexual harassment but never about detainee sexual harassment.

Impact on Job Performance

26. The sexual harassment changed the way I do my job. I could have stayed with the Sheriff's office; I was on a track to be promoted more. The constant sexual harassment was the reason I resigned. I didn't get paid enough to deal with this. I can't believe I was treated this way after 16 years of service.

27. Further, I did everything I could to avoid certain areas, like the bridge. I tried to avoid making eye contact with detainees, and tried to diminish myself in hopes that no one would say anything. This made it hard to keep the Jail safe.

28. Furthermore, the harassment changed the way I dressed at work. I wore a sweater 2 sizes too big to cover up my body. It was really hot in there, but I never went on a tier or took detainees to court without a sweater.

7

Plaintiffs 002123

29.     The behavior by male detainees toward me was demeaning and embarrassing, and caused me to feel nervous and anxious.  I was afraid.

Emotional Impact

30.     As a result of the constant sexual harassment, I have suffered severe emotional distress. I have anxiety, body image issues, and lower self esteem. I lived in fear of detainee sexual harassment.  You never know who was going to say what, do what, or act on what they said.  I have never had anyone talk to me the way they talked to me before.  The comments cut so deep and make me feel bad about myself.  It made me timid.

31.     I was afraid of being raped. When I walked by a detainee, it felt like they could have just grabbed me at anytime.  When people tell you constantly what they want to do to you and how they will do it, it really gets under your skin.

32.     When you are out in the world, former inmates will recognize you before you recognize them.  This makes me afraid in the real world.  I am afraid of men and what they could do to me.  One of them could be a former detainee and carry out his sexual threats.

33.     When I started, it wasn't like this.  The masturbation has gotten so out of control in the last 6-7 years. The Sheriff has gone to such extremes to protect the detainees' rights.  The officers have no tools to control the detainees because the detainees will write complaints about almost everything the officers do, and the Sheriff takes their word for it.  The detainees know that

Plaintiffs 002124

the most they will get for misbehaving is a slap on the wrist. The Sheriff's

policies do not keep us safe.

Decl. Ex. 46

Plaintiffs 002125

DocuSign Envelope ID: BFEA6203-24AD-4374-ACDC-D527D116D19E

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/2/2019

_____

Date

DocuSigned by:

*Kendra Black*

7F999DA59D3B495...

Signature

10

Plaintiffs 002126

## <u>SHERRY BOND DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Sherry Bond. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since 2007. I have been assigned to various parts of the Jail in my role as correctional officer, including: RTU (residential treatment unit), Divisions 1, 2, 3, 4, 5 and 9. I am currently assigned to Division 11.  I can be assigned to work in other divisions at any time if there is a staff shortage or if I am working overtime.

2.  As a correctional officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my job duties when I am assigned to the post of tier officer in Division 11 and 9 include, but are not limited to, supervising detainees' daily activities, inspecting their cells, releasing them from their cells into the day room of the tier, and putting them back in their cells at my shift. In all of these assignments, my job has required me to have interactions with male detainees daily.

3.  The male inmates sexually harass me and other women who work at the Jail. They expose their penises to me, purposefully masturbating at me or in front of me, and make awful sexual comments, including what they want to do to me sexually.

Plaintiffs 002127

4.     I have witnessed detainees masturbating at me through the chuckholes of the
doors to their cells. For example, while I was doing count in Division 9 a
detainee stuck his penis through the chuckhole and started masturbating.  I
ordered the detainee to stop, but he disobeyed my order and continued to
masturbate while looking at me.   After I completed my count, I notified my
supervisor of the incident and wrote an incident report.

5.     In addition to detainees exposing themselves to me, I have also experienced
crude and sexual comments. As an example, while on tier in Division 11 a
detainee said to me, "I want to lick your pussy," and "You are going to be my
wife when I get out." They have also made comments about my appearance,
such as "You got a big ass, Ms. Bond."

6.     I also hear detainees yell sexual threats at me, such as "I want to f*ck you in
the ass."

7.     I have observed other women who work in other positions being subjected to
the same or similar sexual harassment. For example, I have seen male
inmates brush up against female officers and other female staff and then the
inmates claim that they were just playing.   As another example, I hear the
cat calls from inmates when a female enters the tier.

8.     My supervisors know about the detainees' behavior because I have written
incident reports about detainees masturbating openly. For example, I wrote a
report for an incident that happened in Division 11. I went to relieve another
officer who was going home early, and no more than 20 minutes after I

Plaintiffs 002128

arrived, an inmate started masturbating at me from his cell. I gave the detainee verbal orders to stop. I notified my direct supervisor and wrote an incident report.

9. I wrote another incident report when a detainee was standing in the window in Division 2, Psych, staring at me while masturbating. I instructed the detainee to stop and he did. I reported the incident and wrote a report.

10. After writing several incident reports, I felt discouraged from writing incident reports about detainee masturbation because it doesn't seem like the inmates are seriously penalized. In addition, you have to stay on top of the lieutenants and other management to move the reporting process along only to be told something like, "we couldn't see it on the camera so it's your word against theirs." Some detainees masturbate in their cell away from the camera on purpose. The detainees are aware that the cameras cannot zoom into their cells, and there will be no video evidence against them.

11. Incident reports are ineffective because the detainees know that the Jail imposes no real consequences for masturbating at women. For example, I wrote an incident report about one detainee masturbating at me and he was not meaningfully disciplined. He only received time served and was placed back on tier. As another example, it seems like if inmates are placed in the hole for masturbation, they are returned either to their previous tier or close by. Inmates don't seem to serve full time in hole because of limited space.

3

Plaintiffs 002129

12. My supervisors know that inmates are masturbating at women because it has repeatedly been discussed and reported. However, it feels like supervisors excuse the detainees' behavior rather than try to stop it. For example, management have stated that "inmates will be inmates" and "that [sexual harassment] goes with the job."

13. In addition, inmates don't take the reporting process for sexual harassment seriously. For example, I have been told "I'll do my time, but I'll be back" and "Ain't shit gonna happen to us.

14. I heard an inmate say "If they [the inmates that masturbate] go down state, they wouldn't be doing any of this shit. You can't even look at a female officer crazy."

15. Cook County Sheriff's Office has not given me training about how to address the masturbation or sexual harassment by male detainees against me or how to stop the behavior. I have to figure it out on my own.

16. I am always having to think about the possibility of being sexually harassed and this has changed my job. For example, correctional officers are required to inspect inmate dorms at scheduled times, but I always wait for my partner. We are often short staffed, so if my partner has cover someone else, walk away to answer the phone or anything, I'm not completing my task until I have back-up and eyes on me.

17. As a result of the constant sexual harassment, I have suffered severe emotional distress. Specifically, I have suffered a loss of sleep, frequent

4

Plaintiffs 002130

crying, and recurring nightmares where detainees attack me, beat me, and then masturbate over me as I lie on the ground, injured.

Plaintiffs 002131

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/16/2019

_____
Date

_____
Signature

Plaintiffs 002132

## KIMBERLY BOWEN DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.   My name is Kimberly Bowen. I am a Correctional Officer at the Cook County Jail ("Jail").  I have worked at the Jail since October 6, 2003.  I have worked in various parts of the Jail, including: Division 1, 2, and 9; Cermak; and Receiving.  I am currently assigned to Receiving and have been in this assignment for approximately four or five years.

2.   As a Correctional Officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention and maintaining order at the correctional facility. For example, my job duties include, but are not limited to: processing new detainees at the Jail, counting detainees, placing them in cells until they are called to court, and taking them to court.  In performing all of these duties, my job has required me to interact with male detainees daily.

General Description of Harassment

3.   During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis, including regular comments about how they want to sexually assault me.

Decl. Ex. 54

Specific Incidents of Exposure

4.    I most frequently witness detainees masturbating while they are waiting in the bullpens to go to court. Detainees masturbate at me while I am trying to perform my job duties. I have witnessed detainees masturbating with their penises exposed over 100 times.

5.    For example, I recall a specific incident when I witnessed a detainee fondling his penis and masturbating in the male holding cell. I instructed him to stop, but he disregarded my instruction. Instead, he continued to masturbate until he ejaculated. I believe this incident happened within the last three years.

6.    Another example is that detainees would call for me and claim there was an emergency, but when I arrived, they would be masturbating. Also, when I went to retrieve a particular detainee and look for him in the bullpen, other detainees would masturbate at me.

Witnessing Harassment of Others

7.    I have seen other women who work in the Jail experiencing the same or similar sexual harassment. For example, when detainees are masturbating in front of me, they are often masturbating at other female correctional officers who are present at the same time. This has happened on a regular basis.

Sexual and Sexually Violent Comments

8.    I hear crude or sexual comments from male detainees directed at me frequently while they are masturbating and at other times. For example, detainees have told me, "I'm gonna fuck the shit out of you," "Look at this

2

Plaintiffs 001042

dick," and, "Just wait and let me cum," among other things. Detainees have made these comments too many times to count.

Knowledge of Defendants

9. My supervisors know about the detainees' behavior and their sexual comments towards me and other women. Everyone knows about it. For example, Sgt. Issac Thomas knows about the detainees' sexual behavior towards me because he has witnessed their behavior. He acknowledges how horrible the situation is, but tells me, "There is nothing to be done." Another reason that supervisors know about the detainees' sexual misconduct is that I have verbally complained over 100 times.

10. Supervisors make no effort to discipline the detainees or set consequences for the sexual behavior toward women. Multiple supervisors have said things like, "There is nothing to be done."

Incident Reports and/or Complaints

11. I have written incident reports about the sexual conduct directed at me approximately five or six times in the old computer system. For example, when I worked in Division 1 (approximately 2010-2013), I wrote an incident report after a detainee intentionally masturbated at me from his bed when I was counting detainees. Additionally, when I worked in Division 9 (approximately 2008-2010), detainees masturbated at me on multiple occasions. I wrote incident reports regarding some of those instances.

3

12.     I do not recall the specifics of incident reports I have written because the
detainees masturbate and expose themselves so frequently. It is impossible to
write up every incident. I have also complained verbally to my supervisors
over 100 times, including during the time I have worked in Receiving in the
last four to five years.

Ineffectiveness of Complaining and Discouragement

13.     After writing several incident reports and verbally complaining multiple
times, I was discouraged from complaining and writing incident reports
regarding detainee masturbation because complaining did not stop the
detainees' behavior. I have been told: "There is nothing to be done," "This is
your job," and, "If you can't handle it, I don't know what you're going to do."
After complaining, I've been retaliated against by being reassigned for a few
days to assignments my supervisor knows I do not like.

14.     Incident reports are ineffective because the detainees know that the Jail
imposes no real consequences for masturbating at women. Detainees have
commented about the lack of discipline and know that nothing will happen to
them. They have said things like, "Nothing going to happen," "All they going
to do is take me back to my cell," and, "I'll be back tomorrow."

15.     Some detainees have told me they don't want to be housed in Division 9
because the masturbation problem is out of control. They acknowledge how
bad it is.

Ineffectiveness of Steps Taken

4

Plaintiffs 001044

16. The few steps that have been taken to address the harassment have been ineffective. For example, although known masturbators wear green jumpsuits now, the front is closed with velcro. Detainees walk around with their jumpsuits open and they can easily access their penises. For example, on February 5, 2018, I was walking to the female clothing room by the security office. As I was opening a door to the hallway, I saw a group of male detainees lined up against the wall waiting to go to male holding. One detainee's jumpsuit was completely open past his long underwear and his penis was sticking out. I kept walking and kept my head down. The officer and the sergeant who were escorting the detainees did not say or do anything to reprimand the detainee.

Lack of Training

17. I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

Impact on Job Performance

18. The sexual harassment changed the way I do my job. The masturbation has completely changed the way I deal with situations. I hesitate to respond if detainees call to me. Even though it is possible the detainees do need assistance, because of my experiences, I am wary that detainees will be masturbating when I go check what they need.  I also do not make eye

5

Plaintiffs 001045

DocuSign Envelope ID: 56C53839-A538-4B2A-AF2C-EFDBD47132A9

contact with detainees and look down when I'm walking by. This impacts my ability to keep the Jail safe and secure.

19. Furthermore, I always wear baggy pants and a sweater to work, even if it is 100 degrees outside, to try to discourage the behavior. I also don't wear makeup. But, it doesn't matter what I wear. The detainees still harass me.

20. The behavior by male detainees toward me is unwelcome, offensive, harassing, humiliating, threatening, intimidating, and causes me to fear for my safety. I am afraid that one day a detainee will grab me and rape me.

21. During every work day at the Jail, I experience anxiety over potential harassment and exposure. Even if I am not the direct target of detainees' sexually inappropriate behavior on a given day, my female coworkers and I expect that at least one of us will be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse. I think it happens to someone every day. I know I might be sexually harassed or hear about a female coworker being harassed when I walk through the compound to my assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift. This causes constant stress and makes it more difficult for me to focus on my job of keeping everyone at the Jail safe.

Emotional Impact

22. As a result of the constant sexual harassment, I have suffered severe emotional distress. The harassment and masturbation at the Jail makes

Plaintiffs 001046

working there extremely stressful. It affects my mental health. I sought assistance from the Employee Assistance Program and spoke to Michael Goldman, Senior EAP Counselor, several times. The stress and emotional toll of the constant sexual harassment has caused me to drink alcohol more heavily. In August 2017, Michael Goldman referred me to Alcoholics Anonymous and Anger Management. I also suffer with depression because of this and sometimes I have trouble getting out of bed and have to force myself to go to work. At times, I have to take a couple of days off because when I am depressed I also have migraine headaches. It has also affected my personal life. Emotionally, I feel really down and don't want to be bothered with anything. I isolate myself from my family in my room when I get home.  I am extremely fed up, angry, and tired regarding the lack of action to deter sexual harassment within the Jail. Unfortunately, quitting my job is not an option because it would put financial strain on me and my family.

7

DocuSign Envelope ID: 56C53839-A538-4B2A-AF2C-EFDBD47132A9

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/15/2019

_____
Date

_____
Signature

8

Plaintiffs 001048

<u>**Declaration of Audra Bowie**</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Audra Bowie. I have worked as a Mental Health Specialist 3 ("MHS") at the Cook County Jail ("Jail") since approximately March or April 2011.

2. I have been assigned to RCDC, Division 8/RTU, Division 9, Division 6, and urgent care in Cermak. I have been assigned to RTU since approximately 2016. On a few occasions, have been mandated to work in Cermak. I could be mandated to work in any division at any time.

3. In all my assignments at the Jail, I have had interactions with male detainees daily. I also work with detainees in Division 11 via the "telehealth" system where I meet with detainees through video chat. I also see male detainees through the tunnels, in elevators, traveling to the officers' cafeteria, and other places around the compound.

4. I experience some form of verbal sexual harassment while traveling through the tunnels, past the holding cells, as well as in RTU, almost every day, which usually takes the form of inappropriate inquiry about me, like, "What's up with you?" asked in a seductive manner. I refer to it as "sexual heckling." If I don't answer, detainees will say something like, "Well, fuck you, then!" or "You don't look that good anyway!" I have also heard remarks about my appearance and my body. For example, I have heard detainees say to me, "You're so thick!" with broad hand gestures outlining the shape of a body, and "Your man must be happy." I also remember a detainee saying, "You look alright, but you need to work on..." followed by an elaborate and detailed critique of my appearance. I've been called a "bald-headed black bitch." Detainees have also threatened me, saying things like, "I'll fuck you up," and "I'll spit in your face." I am constantly aware that I am a woman. I am reminded of it all the time.

5. Detainees also stare inappropriately at female staff. For example, a detainee who had previously been in the news for fondling multiple women on public transportation, would always stare at female staff members and look at us inappropriately, stand too close, or try to get my attention. As another example, on approximately July 5, 2018, I could see that a detainee was staring at me in a sexual way. I asked the male officer that I was working alongside to switch places with me so that the detainee could not see me as easily.

1

Plaintiffs 002133

6. When I worked in Division 9, from approximately 2014 until approximately 2015, I heard verbal sexual harassment every day and witnessed exposure and masturbation every week. The female medical staff who have to work in Division 9 have to experience sexual harassment constantly. When I worked in Division 6 from approximately 2015 until 2016, I heard verbal sexual harassment just as frequently as Division 9, and witnessed detainees exposing themselves and masturbating approximately once every few weeks.

7. I recall one detainee in Division 9 who had numerous rape cases against him. He said to me, "I cannot talk to you, you are one of my victims." He would constantly refer to me as one of his rape victims, to me and to other staff members, and would glare at me menacingly. Because of that, I would avoid this detainee out of fear for my own safety.

8. Also in Division 9, around 2014, I recall two detainees who would constantly pull out their penises when female staff were around and they would laugh about it.

9. On at least two occasions, detainees have used the guise of a psychological evaluation as an excuse to get in close proximity to me and subsequently masturbate in front of me. For example, in approximately 2014 or 2015, a detainee requested a psychological evaluation. In response to his request, I met with him in the mental health clinic office in Division 6. He was wearing a blue box on his hands. As I was meeting with him, I noticed that he was rhythmically moving back and forth in his seat, and I soon realized that he was moving for the purpose of self-pleasure. When I asked him what he was doing, he said "nothing." When I said I knew was he was doing and that I was going to get a correctional officer, he said, "Wait until I finish."

10. I immediately stepped out of the room and shouted for the male correctional officer on duty, who was supposed be within earshot of me and the detainee at the time, but was actually down the hall. When the officer approached me, I said, "He is masturbating," referring to the detainee. The correctional officer said, "Did it happen? I didn't see it. I wasn't there." I reiterated that it did happen. I demanded that the officer write an incident report, so he did. I also told the officer that I wanted to press charges. I feel that many male correctional officers often seem reluctant to write incident reports. I believe they do not want to do the additional paperwork and they do not know what they are supposed to do when they did not see the incident occur.

11. A few weeks later, I received a call from a male Sheriff's Police investigator. I recall him stating something about the detainee having a lot of cases and that the chances of him being charged for masturbating would likely be slim.

2

Plaintiffs 002134

He said things to the effect that he had little faith that anything would come of it because the detainee had so many charges against him. I said that I still wanted to press charges. However, I never heard anything regarding that detainee after that. I do not know where the case went.

12. Fortunately, the detainee did not request to work with me again, but had the detainee requested mental health services, I would not have been allowed to refuse them. There is no plan in place for staff to avoid perpetrators of sexual harassment.

13. In approximately 2016, detainee K.J. came from Division 9 into urgent care claiming that he was suffering emotionally. I met with him in the urgent care in Cermak in order to psychiatrically clear him to go back to Division 9. Even though was wearing a blue box, he somehow managed to pull his penis out of his green jumpsuit while looking at me. I told him, "I'm at work, I don't want to see that!" and I told him he needed to leave. The correctional officer on duty escorted him out.

14. That same day, the correctional officer who escorted the detainee out wrote an incident report. I told the officer that I wanted to press charges, but I did not hear anything after that.

15. In approximately 2017, I saw the same detainee, K.J., as a participant in the special behavioral program called Intensive Management Unit ("IMU"), where I provided clinical services in this program for detainees with mental illness and behavioral problems. Because he was a participant in the program, I was required to have contact with him at least once per week. There was nothing I could do to avoid him.

16. In the program, K.J. would continuously try to discreetly pleasure himself while handcuffed to the table while in the group. He would look at me when he did this. Eventually, he was required to be double handcuffed while in group because of his tendency to masturbate. When I confronted him about the incident in 2016 where he exposed his penis to me, he said he did not recall it and did not accept responsibility for exposing his penis to me. As recently as April 2019, I walked past that detainee again, and he tried to get my attention. His green jumpsuit was wide open and I could see all the way down to his underwear. I refused to talk to him because his jumpsuit was open.

17. As another example, in April 2019, I witnessed Detainee J.H. staring at me with an intense look from inside his cell. I couldn't see his hands because they were below the window on the door, but I could tell by the way he was looking at me that he was masturbating. That same week, J.H. spoke with

3

Plaintiffs 002135

me when I was in the nursing station. Again, I could tell by the way he was moving that he was masturbating. When I confronted him about the masturbation, he stated, "You didn't see my penis." On another occasion within the same week, I saw a detainee run to J.H.'s cell and say to him words to the effect of, "What are you doing? That's not right!" That detainee later told me that he thought J.H. was masturbating while looking at me. I documented these incidents in EMERS.

18. Sometime in the beginning of 2018, a green jumpsuit detainee was masturbating in the main holding cell of RTU 4th floor. He was in the holding cell because he had previously masturbated to a female nurse. The main holding cell has windows all around and he would masturbate brazenly and openly every time a female staff walked by.

19. In approximately 2017, I walked past one of the bullpens in RTU to speak to correctional officers sitting at the desk, out of the corner of my eye, I could see a detainee heading toward the window of the holding cell and I could tell he was masturbating with his penis exposed. Without directly looking at the detainee, I said to the officers, "He has it out right now, doesn't he?" and they confirmed that he did.

20. I reported the incident to a sergeant, who wrote the incident report. I told him that I wanted to press charges. He reviewed the video of the detainee and said to me that the detainee did in fact pull his penis out 4 to 5 times when I or other female staff walked past him.

21. The next day, I received a phone call from a Sheriff's Police investigator. He asked me, "Did you see?" I said words to the effect of, "I'm not going to lie, I did not see it. But I know he did it." The investigator said, "Well, if you didn't see it, charges are not going to stick. The law says you have to see it." Because he discouraged me from pressing charges, I agreed not to press charges.

22. In November 2017, Detainee M.H. made extremely sexualized threats of harm and shouted to other correctional officers that he was going to "fuck" me. I was afraid because it seemed that the correctional officers were just standing there and not stopping him. I reported the detainee's behavior to the Lieutenant on duty. I do not believe the lieutenant wrote an incident report. I wrote an extensive report EMERS about his behavior and the complicit nature of Cook County's response to him. They did nothing and allowed his behavior to continue.

4

Plaintiffs 002136

23. The rampant sexual harassment has made me feel vulnerable, unsafe, and insecure about my interactions with detainees. I have to remind myself of why I am motivated to do my job well at the Jail.

24. I feel that detainees are moved all over without a concrete plan to address the sexual harassment. For example, I heard about a detainee who, in a medical area of RTU, exposed himself to a nurse. The next day, he was moved to a different area of RTU, where other female staff had to be subjected to his behavior. It seemed that the detainee was being moved around but there was no concrete plan to address his ongoing sexual harassment toward female staff.

25. Regardless of how often the sexual harassment happens to me –the fact that the verbal sexual harassment happens constantly, all over the compound, to many different women, affects me. I have to deal with the psychological fatigue of knowing that it happens and could happen anytime, anywhere. I have to adjust myself to prepare to respond to the sexual harassment. It feels like constant sexual combat.

26. However, we have never been trained on how to respond to sexual harassment from detainees or how to report the sexual harassment. We have been trained on how to respond to sexual harassment from peers, but not detainees. I have been told to write an EMERS report, but I don't think EMERS reports are effective. When I submit an EMERS report, it gets sent to approximately 20 people. But I do not receive a copy of the report or receive any follow up or updates, and nothing happens as a result of my report. It feels like we are fighting a fight by ourselves.

27. The sexual harassment has changed the way I dress at the Jail. I always make sure I am covered up with either a medical jacket or a sweater that is long enough to cover my hips and butt. I choose to no longer wear jeans because I have received more harassment from the detainees when I wear jeans.

28. I have read the inmate handbook and I believe that it does not adequately address how detainees should act or that they should respect the staff. I remember seeing that the handbook states their rights as detainees, but it does not adequately state expectations for their behavior.

29. Detainees who come to Cook County from elsewhere in IDOC typically have much better behavior than the detainees at Cook County. I have heard detainees say, in response to the sexual harassment, "This wouldn't happen at IDOC. Charges would be pressed right away."

5

Plaintiffs 002137

30. The sexual harassment has increased my sensitivity to experiences like that. I am more hypervigilant. Being exposed to that much sexual heckling is stressful and puts you in a position to respond, and I don't always know how to respond because it makes me very upset.

_____

Audra Bowie

April 25, 2019
_____

Date

6

Plaintiffs 002138

# Declaration of Veneise Braxton

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Veneise Braxton. I was a correctional officer at the Cook County Jail from approximately November 22, 2010 until May 1, 2017.

2. I was assigned to external operations from March 2011 until October 2012. I was assigned to Division 9 in 2012 until August 2013. Then I was assigned to Division 2 from August 2013 until I resigned on May 1, 2017. When I worked in Division 2, I was also assigned to do security, so I had to do "court walk" every weekday morning, which meant that I had to move detainees from Division 2 to Receiving. During that time period, I also worked overtime in Division 1 (before it closed) and Division 6.

3. In all of my assignments, I had interactions with male detainees on a daily basis, and I was subjected to verbal sexual harassment, like disrespectful sexual comments, being called sexual names, threats of rape, sexual propositions, and sexual remarks about my appearance and my body. When I worked in Division 9, the detainees verbally sexually harassed me almost every day. Also in Division 9, male detainees exposed their penises to me and masturbated at me almost every day. In Division 2, detainees verbally sexually harassed me almost every day, and exposed themselves to me about once per week. I also experienced verbal sexual harassment from other detainees while transporting detainees through the compound.

4. In Division 9, detainees would masturbate at women almost every day. For example, at the beginning of a correctional officers' shift, we had to do rounds to count the detainees. A lot of times, the detainees would be waiting for me to do the rounds, masturbating while in their bed. In the morning time, when the detainees were getting ready for court, they would masturbate in the shower. The showers were designed so that they were in our plain view, so the detainees would often masturbate in the shower while looking directly at the female correctional officers, including me. In Division 9, detainees' cells had a chuckhole on them. Detainees would frequently expose their penises and testicles and masturbate through the chuckhole.

5. I recall writing approximately 4 to 5 incident reports about detainee sexual misconduct when I worked in Division 9. I also recall writing about 4 or 5 reports when I worked in Division 2. In Division 2, the reports were mostly on the verbal sexually harassment. However, I do not recall these incidents specifically or when I wrote the reports, but I do recall that I got the impression that most supervisors felt that the reports were a waste of time,

Plaintiffs 001356

based on how they reacted to my sexual harassment reports compared how to how they reacted to other incidents which they seemed to take more seriously.

6.  During the period that I was assigned to Division 9, I got pregnant. In August 2013, I lost the baby and I feel like the stress caused by the constant sexual harassment was one of the reasons why. It was just too much. So I transferred to Division 2. My assumption was that Division 2 would be better because it was not a cell setting and the detainees are among each other in a dorm setting. I hoped that because the detainees are around each other, that they would be less likely to masturbate openly.  I was wrong. They still masturbated at me in Division 2.

7.  Because Division 2 is a dorm setting, correctional officers were required to walk through the detainees' living space and visually put eyes on all detainees to count them. Detainees would know when the shift would change and when a female correctional officer was about to walk through for the count. About once per week, detainees would choose to take a shower right at that time to make it so the female correctional officers would have to see them naked and masturbating in the shower. It was clearly intentional.

8.  Division 2 was a monster because the verbal harassment got out of control. It was terrifying because it was an open setting, so at any given time, the detainees could reach out and touch me while making sexual threats if they wanted to. Fortunately, they never did. Walking through Division 2, it felt like you were walking the plank. There would be 44 men all gawking, whistling, and yelling at me at the same time. As I walked by, the detainees would say "Look at that ass," "What would you let me do to you?", "You better hope I don't catch you on the street" and many other horrible things that I don't even want to repeat.

9.  One day, when I was working overtime in Division 2, the detainees were acting off the chain with the sexual comments toward me. So I spoke to one of the male correctional officers whose name I cannot recall about the detainee sexual misconduct happening that was happening all around us. Nearby was a chart of the correctional officers' pay rates. The male correctional officer pointed to the chart and said, "Do you not understand that you get paid *sixty three thousand dollars* to get called a bitch and a slut?" He was insinuating that I should be okay with being called those names because my pay rate is $63,000 a year. In that same conversation, the officer said, "the Jail is not for everybody. Not everybody can handle it."

10. I never received training on how to respond specifically if a detainee sexually harassed me or tried to sexually assault me. Other than our radios,

Plaintiffs 001357

correctional officers have no alarm system to use if a detainee tries to sexually assault us. In Division 2, detainees sat out in the open, and they could see where my radio was on me, so if they really wanted to grab my radio so that I couldn't call for help, they could have.

11. Because of the constant sexual harassment, I would sometimes wrap a sweater around my waist. But was a catch-22 for us, because if we always wore a sweater, then if we did not wear it one day, the detainees would make extra comments toward us. They would sexually harass us regardless of what we were wearing. It was so uncomfortable.

12. In the last few years, the sexual harassment became to be too much. Every night, I dreaded coming into work the next day. Even my husband couldn't take it anymore, knowing the sexual harassment I would be exposed to. I had to pick and choose which stories to tell him because I knew how much it upset him. My male coworkers would even say things like, "I could not have my wife work in here."

13. I have a son with muscular dystrophy, so the insurance that Cook County offered was important for me to have. However, the sexual harassment became to be too much. The stress and the anxiety of having to mentally prepare for that every day led to my resignation. Working in a correctional facility is hard enough, but when you add on the constant sexual harassment female correctional officers have to deal with, it makes it 10 times worse.

_____
Veneise Braxton

March 27, 2019
_____
Date

Plaintiffs 001358

# Victoria Bridgeforth Declaration

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Victoria Bridgeforth. I have been a Sheriff at the Cook County Jail "Jail" ("Jail") since about October 17, 2005. I have been assigned to work in various locations, including Division 4 from 2005 to 2009; Division 5 and 6 in 2009; Divisions 3/8 from about 2009 to 2013; and most recently in the Cermak Building from about 2013 to the present. I have worked overtime in Divisions 1, 2, and 17. I can be assigned to work anywhere in the Jail if there is a staff shortage.

2. I interact with the male detainees daily and they sexually harass me. The inmates verbally sexually harass me, threaten me sexually, expose their penises to me, and masturbate at me. I experience the harassment throughout the Jail, but most often in the 3 South tier of Cermak, Clinic, when walking through Receiving, and in the tunnel.

3. In all of these locations, male inmates talk about my body because I am a woman and make sexual comments to me. For example, inmates have said, "suck my penis", called me a "fat b*tch", and said that I was "fat and ugly".

4. When I started working night shifts in April 2018, I didn't see inmates masturbate at me quite as often. Prior to that, they masturbated at me about once every three months in different areas of Cermak, including Physical Therapy and the 3 south tier.

Plaintiffs 002427

5. For example, there was an incident in 3 south tier of the Cermak building in which a detainee asked me to go through every channel on the tv to see what was on, he said something like, "listen bitch, you are going to check all these channels" then called me a "fat bitch" and pulled down his pants to show his penis and told me to "suck my penis" and "I am trying to entertain you because you are fat and ugly." I wrote up the inmate and pressed charges. I don't remember the date that this incident happened. I don't know the outcome of the report. I requested to press charges on the inmate.

6. As another example, I was in the basement of Cermak in the physical therapy room and there was a detainee in the staging area. The detainee was facing me with his legs wide open, he pulled his penis out of his pants and started masturbating at me. I called my supervisor to notify of incident and wrote up the inmate. I don't know the outcome of the report. I requested to press charges on the inmate.

7. When in Clinic inmates will sit on the bench while waiting to see the doctor and put their hands down their pants to touch their penises. I tell them to remove their hand or they will get put out.

8. Nurse Boden has told me about her experiences with detainees masturbating at her. She told me about an incident that happened sometime around 2017 or 2018 where she was walking through staging in the Cermak basement, as she walked past several detainees exposed their penises to her.

Plaintiffs 002428

9. Once, an investigator tried to convince me not to press charges when an inmate masturbated at me, I told him four or five times that I wanted to go through with it. Then, the investigator brought me paperwork that stated I did not want to press charges and tried to get me to sign it. I read the paperwork prior and noticed it was the wrong form, it was a form stating I did not want to press charges. The investigator said he must have the wrong form, he left, and he eventually returned with correct paperwork. It made me feel like I was a burden if I wanted to press charges

10. The Jail has not enforced the dress code for male inmates. I remember that once an officer was escorting a detainee and his jumpsuit was wide open with penis hanging out and the officer did not address it. The inmate walked from his Division to Cermak exposed.

11. The sexual harassment has forced me to try to limit contact with inmates as much as possible. It has also changed how I act. If I see an inmate with his hand in his pants, I'm going to assume they are masturbating, even though I don't want to. I am supposed to protect the safety and security of the detainees, but I don't feel protected by my employer.

12. As another example, the harassment deters my ambition to want to grow at this job, like becoming a lieutenant or sergeant. In a relationship it deters me from wanting to be sexual with me significant other because I'm so disgusted by what I witness at work.

Plaintiffs 002429

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

05/01/2019

_____
Date

*Victoria Bridgeforth*

_____
Signature

Plaintiffs 002430

## <u>CAROLYN BROWN DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.      My name is Carolyn Brown. I worked at the Cook County Jail ("Jail") as a Correctional Officer from approximately April of 2007 to August of 2017. Over the years, I was assigned to a number of different divisions, including, Division 11 and Division 2, where I worked from 2013 to 2016. Before I resigned from the Jail, I worked in Receiving, beginning in March 2017 through my resignation.

2.      As a Correctional Officer, I was responsible for the safety and security of individuals being held at the Jail in pretrial detention and maintaining order at the correctional facility. In Receiving, my duties included processing new detainees into the Jail, securing and monitoring detainees in the bullpen, and discharging detainees from the Jail. In the divisions, my duties included tasks like counting detainees, removing and returning them to their cells, and letting them out for court in the morning. My job required me to interact with male detainees on a daily basis.

<u>General Description of Harassment and Specific Incidents of Exposure</u>

3.      During my time working at the Jail, male detainees constantly sexually harassed me by exposing their penises, masturbating, and making disgusting sexually explicit comments. Detainees pulled out their penises or masturbated

Plaintiffs 002143

at me several times per week. Detainees made sexually explicit comments like, "I'll fuck the shit out you," and comments about my body every single day.

4. When I worked in Division 11, detainees frequently exposed their penises and masturbated at me when I came around to count them. The detainees also put their penises in the chuckhole and masturbated. They thought it was funny. When I complained to my sergeants, they would say that the detainees denied doing it and they would have to review the cameras. I was also told that "this is their house," meaning that the detainees could expose themselves and masturbate in their cells. My complaints went nowhere.

5. In around August 2015, when I was pregnant, a detainee touched me, right in front of my male sergeant. The detainee walked past me and grabbed my hand as he walked by. I told him not to touch me. I complained to my sergeant. My sergeant said, "What you want me to do? They're not going to do anything to him," meaning the detainee would not be disciplined. He said he would just talk to the detainee. I was so upset that I asked to no longer have to work directly with detainees for the rest of my pregnancy. They reassigned me to Master Control (controlling the door locks).

6. Earlier in my career, when I worked in Division 1, from 2010 to 2013, detainees would expose themselves and masturbate constantly and would frequently stare at me while they were in the shower. I suspect they were masturbating, but I did not look closely to confirm that. I was disgusted.

2

Plaintiffs 002144

7. Multiple detainees gave me love letters. The sexual harassment by one of the detainees who wrote me a love letter was overwhelming. In around the summer of 2016, in Division 11, I insisted to my commander that the detainee be removed from my tier. I wrote an incident report and threatened to walk off my shift if he was not moved. The written complaint went nowhere, but he was removed from my tier. When that detainee was released from the Jail, he found me on Instagram, requested to follow me, and sent me a message. I was so afraid that I deleted my Instagram account. My account was not even under my real name and did have pictures posted. It was very scary that he was able to find me.

8. In Receiving, there would be up to 100 detainees in the bullpen and only about three officers. Detainees would expose their penises when they went to the restroom and leave their penises hanging out when they were done. When I complained, my supervisors would just talk to detainees and send them for a Psychiatric evaluation for walking around with their penises hanging out.

9. I know detainees also sexually harassed my female coworkers. I saw other female Correctional Officers come into the security office to turn in paperwork. Some women had just walked off the tier after a detainee exposed their penis or masturbated at them and were upset. I also have heard my female coworkers complain. For example, Officer Denise Hobbs, who was in the same class as me at the Academy, complained numerous times.

3

Plaintiffs 002145

<u>Sexual and Sexually Violent Comments</u>

10. When I worked in Division 2, around the fall of 2016, I worked the midnight shift, and the sexual comments that the detainees made to me every night were really disturbing. Detainees made sexual and sexually violent comments to me and about me. They made sexually threatening comments like, "I'll fuck the shit out of you," "I'll fuck you," repeatedly, on a daily basis. Detainees have also said, "You got a fat ass"; "Them lips look like they'd suck a good dick"; "I'd like to slap that ass." They told me what they would do sexually to me if they met me on the street, such as, "smack your fat ass," or "lean you over." Being on a tier at night with numerous detainees making comments like this was horrible.

<u>Knowledge of Defendants, Complaints, Ineffectiveness of Complaining, and Discouragement</u>

11. My sergeants and shift commanders knew about the detainees' constant verbal sexual harassment, sexual threats, penis exposure, and masturbation because I complained multiple times. I believe I made approximately six written reports, and numerous verbal complaints.

12. When I complained to my male sergeants about the detainees' verbal sexual harassment, they said, "It's just a part of the job. They talk like that to everybody." I replied that detainees never talk to the male officers that way, and that if detainees did, they wouldn't like it either. In response to my complaints about the detainees' sexual misconduct, my male sergeants said, "When you took this job, you knew you were working in a jail." It got to the

4

Plaintiffs 002146

point where I felt at a lose regarding who I was supposed to complain to, since my supervisors did not take my complaints seriously. The supervisors would say things like, "They see women. You're a woman. That's what they like. They in jail." It was as if they were saying that just because the detainees were in jail, they were allowed to act like animals or forget regular rules of human interaction. I was made to feel that it was a part of my job. My supervisors also told me they were reluctant to issue formal discipline because they were "just trying to retire" and worried the detainees would "take their jobs."

13. On several occasions, I asked if certain detainees, who repeatedly sexually harassed me, could be moved to a different tier. My shift commanders just made excuses for why it couldn't be done. For example, my shift commanders told me that the morning, or afternoon shifts would probably move the detainees back to the tier anyway, so there was no point in moving them. They also said that the building was too full to move the detainees to a different tier.

14. When I identified the detainees who sexually harassed me to my supervisors, they would tell me to write a report, but "it ain't gonna go nowhere." They were right. I never heard anything - I did not receive notice of an outcome or resolution to my complaints. I don't know whether detainees received any discipline. I was discouraged from complaining because, despite my complaints, the sexual harassment continued to be severe and to get worse because no meaningful consequences were enforced.

Decl. Ex. 79

Plaintiffs 002147

Lack of Training

15.     I have never received training from the Cook County Sheriff's Office specifically regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

Impact on Job Performance

16.     The detainee sexual harassment really affected my ability to do my job. The work environment caused me terrible anxiety and depression. I had to go on medical leave for several months in late 2016 to early 2017. I took unpaid Family Medical Leave Act time several times because I felt unable to go to work. Sometimes, I would leave work early because of the constant sexual harassment.  The level of anxiety and uneasiness that I felt at the thought of performing some of my job duties, such as going on the tier to count detainees, was extreme. I knew, based on experience, that they would expose their penises or verbally sexually harass me again. I was terrified the detainees would sexually assault me at work. The detainees' behavior was really degrading.

17.     I purposely wore larger clothes at work, such as a long sweater, to hide the shape of my body because the detainees (and some male officers) would comment on my body. It didn't make a difference. I heard comments like, "You can't hide all of that."

6

Plaintiffs 002148

DocuSign Envelope ID: 5280642C-D36E-4E1A-82A5-F5964FC28624

<u>Emotional Impact</u>

18.     The constant sexual harassment by detainees that I experienced working at the Jail caused me severe emotional distress. It was mentally and psychologically draining. At times, I did not want to go work at all and had to take medical leave because of the depression and anxiety work caused. It was overwhelming. The constant stress of working in an environment where detainees continuously verbally sexually harassed me, exposed their penises, and masturbated was unbearable. I had to resign because I was taking it out on my family. I have completely left the law enforcement career path because of this. No matter how much I complained, the Sheriff's Office did not do anything to stop the detainees' constant sexual harassment.

Decl. Ex. 81

Plaintiffs 002149

DocuSign Envelope ID: 5280642C-D36E-4E1A-82A5-F5964FC28624

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/10/2019
_____

Date

DocuSigned by:

*Carolyn Brown*
_____
DD794BFC87EF4D8...

Signature

Decl. Ex. 82

Plaintiffs 002150

## CATRINA BROWN DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Catrina Brown. I am a Correctional Officer at the Cook County Jail ("Jail"). I have worked at the Jail since June 21, 1993. I am currently working in Central Kitchen on the 7:00 AM to 3:00 PM shift, where I have worked for 13 years. Before that, I worked with maximum security male detainees in Division 1. In my job in Central Kitchen, I have to deliver food through the tunnel to all divisions in the complex, except for Division 2 and Division 11, which do not have tunnel access.

2.  As a Correctional Officer in Central Kitchen, I am responsible for the safety and security of civilian and detainee workers who help prepare meals for the detainees. For example, my job duties include supervising detainee workers, providing security in the kitchen area for detainees and civilians, and delivering food to the divisions. When I deliver the food, I am usually by myself. I have the option to bring a detainee worker along to help me, but that is sometimes more difficult because I have to be responsible for him too. When the officers in the divisions accept the food, they also sometimes have detainee workers with them. You never know who you are going to meet on the other side or along the way, or how they will behave. In performing all of these duties, my job has required me to have interactions with male detainees daily.

## General Description of Harassment

3.  During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced detainees exposing their penises to me, male detainees purposefully masturbating at me or in front of me, crude or sexual comments on a daily basis, and a few comments about how they want to rape and sexually assault me.

## Specific Incidents of Exposure

4.  I most frequently witness detainees masturbating when I am walking through the tunnels to deliver food. They expose themselves and masturbate, which they can still do while they are handcuffed in the front. Most of the time they are accompanied by officers, who don't really know how to stop it.

5.  Sometimes when the detainees walk past the kitchen, they will run up to the gate and expose or flash their penises. I also see detainees expose their penises a lot in receiving. I have to pass the holding cells on the way to the Divisions and they will call out to me, while masturbating or exposing their penises.

6.  The detainees also masturbate in the Kitchen at least once a month. The detainee workers in the kitchen mostly come from Division 2, which is minimum security and is not supposed to have anyone with green jumpsuits. We also get a few detainees from Division 6. Nevertheless, detainees who

2

have been disciplined for exposure and masturbation are still allowed to work in the kitchen because some of them wear green jumpsuits.

7. Also, detainees' prior records are not taken into consideration when the Sheriff's Office decides whether that detainee can work in the kitchen. It has happened where a detainee will be in the Jail for a minor offense, but was previously convicted of rape. However, this time he can be housed in the minimum security divisions, where we get our workers, and be allowed to work in the kitchen.

8. Sometime in 2014 or 2015, I had a detainee working in the kitchen named ███Redacted███. When he was released on parole, he started calling me and my female colleagues, including Officer Norman, at work in the kitchen. I have no idea how he got through to the desk in the kitchen. After he called in the fall of 2015, I alerted the security office and Sergeant Kelly, and asked them to make sure he couldn't get through again. About 2 months later, on December 11, 2015, I took a call in the kitchen. It was ███Redacte███ ███Redacted███ who said, "I am your future husband and I want you to call me with your sexy ass." I filed a complaint. He ended up back in the Jail, and despite my complaints, they let him come back to work in the kitchen.

## Witnessing Harassment of Others

9. I have seen other women who work in the Jail experiencing the same or similar sexual harassment. For example, the detainees that work in the kitchen often purposefully touch the civilian women that work there.

3

Plaintiffs 001364_REDACTED

Plaintiffs 001364

10. One civilian who worked for CBM, the contractor that staffs the kitchen, was sexually assaulted by a detainee. He reached out and grabbed her butt while they were working in the "water world" (dishwashing area). She filed criminal charges. I don't know what happened, except I do know he was eventually allowed to come back to work in the kitchen.

## Sexual Comments

11. I hear crude or sexual comments from male detainees directed at me on a daily basis, and I have been threatened a few times with sexual assault. For example, detainees have told me, "I would like to suck on you," or "I know you taste good." I have also heard them say things like, "man, I wish I could be with you," "I can fuck you," "I know you; I'll fuck you all night," and "I want to come in your mouth." Once, a detainee asked me what kind of panties I was wearing. Detainees have made these or similar comments too many times to count.

12. Walking through the tunnel is the worst. The detainees are reckless; they will say anything. When they see women, they just open their mouths and say whatever they want.

## Knowledge of Defendants

13. Supervisors and managers at the jail know about the detainees' behavior and their sexual comments towards me and other women. I have complained and written incident reports that my supervisors have seen. I look at the camera with my supervisors when incidents happen. For example, once I was driving

4

a cart through the tunnel on my way to deliver food to a division and a detainee jumped onto my cart. I had to review that video with my supervisor.

14. Supervisors also know because they have categorized the detainees who are known for masturbating and given them jumpsuits and different IDs.

Ineffectiveness of complaining and writing disciplinary reports

15. I have complained to my supervisors many times about detainee sexual misconduct. All they do is tell me to write them up. When I write them up, I still have to see them at work. This makes me afraid of retaliation. I never know if a detainee can follow me home or have family members who can follow me. They know where I work, what time I get off, and what kind of car I drive.

16. I have written a few incident reports regarding detainee sexual misconduct during my employment at the Jail. Usually, the detainees would get a couple of days in the hole and then be right back where I was working.

17. In the kitchen, when a detainee touches or harasses a civilian worker, I am responsible to separate the detainee from the civilian, handcuff the detainee, notify the supervisor from CBM, and remove the detainee from the kitchen. There is always paperwork to be filled out that includes a "do not return" order for the detainee. If it's in my assigned area, I do the paperwork, but if it's in another area, the officer who is assigned to that area is supposed to write them up.

5

18. However, it doesn't matter if we write them up, because often the detainees are right back in the kitchen the next day. Sometimes the paperwork doesn't get forwarded to the officers on the next shift, so a detainee comes back and is allowed to work. Also, if a detainee is written up on disciplinary charges but the hearing officers find him not guilty, then he's allowed to come back. CBM can also file paperwork to ban a particular detainee but it doesn't get processed very quickly.

19. When I walk past receiving, the detainees will run up to the bars of their holding cells and pull their penis out as you go past them. I don't want to stop and encourage them. All you can do is look the other way and try not to give them attention. It happens so often, I really couldn't write them all up.

20. I can't make them stop. The detainees know there's nothing we can do. If I write them up they will just go to a different part of the jail and do it to someone else.

Ineffectiveness of Steps Taken

21. The green jumpsuits are not effective at all; they allow for easy access to the detainees' penises. They have snaps not buttons so the detainees just pop them open. Also, the detainees wear them open and pulled down to their waists, especially in the tunnel.

22. Sometimes my male coworkers will tell the detainees take their hands out of their pants, but they don't because there are no real consequences for them if they keep doing it.

6

Plaintiffs 001367_REDACTED

Plaintiffs 001367

23. The detainees should get time added to their sentence for masturbation and exposure, but they don't; the Jail discipline doesn't matter to them.

## Lack of Training

24. I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me. We had a training on the computer regarding writing incident reports, but that was it.

## Impact on Job Performance

25. The sexual harassment changed the way I do my job. I have been seeing this sexual misconduct for a very long time. This isn't normal. I am always on guard and don't know what to expect. I am paranoid. I have become numb.

26. Furthermore, the harassment changed the way I dressed at work. In the kitchen, many of the civilian workers and I tie sweaters around our waists, even though it gets really hot in there.

27. The behavior by male detainees toward me is degrading, threatening, humiliating, and causes me to fear for my safety.

## Emotional Impact

28. As a result of the constant sexual harassment, I have suffered emotional distress. When I meet men, I don't know if they are related to detainees, so I am wary and overly cautious. I leave work, and I come straight home. I don't feel safe until I arrive in my driveway. I don't go out often because I am

7

afraid of running into detainees. I feel like I am in hiding because of my career. I don't like going out at night at all. I spend my evenings "hiding out" at home.

29. The detainees never forget you. They even remember about your kids. Once, I ran into a man who had been a detainee when I was pregnant. He recognized me and asked about my baby, several years later. When I see them like this, outside of the Jail, I have no idea what they are going to do. As a result, I try to live my life in seclusion.

30. Everything changed because of Sheriff Dart. The detainees are more valuable to him than we are. I feel unappreciated. I feel like I don't matter. We are the ones who have to "calm down," not them. Officers are getting hurt now by detainees' behavior. The sheriff expects me to take care of the detainees but doesn't care about what I have to go through or what my family has to go through.

DocuSign Envelope ID: 1637002B-B0D8-45C4-ADE8-BAD534E3CA27

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

3/14/2019

Date

Signature

9

# JACQUELINE BROWN

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Jacqueline Brown. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately February 17, 1998. I have worked in various parts of the Jail in my role as correctional officer, including: Division 4 starting in about February 1998 for about two years; then I worked in Divisions 3/8 & Cermak for approximately 6 years; and I have been working in External Operations since 2007. In addition to my assigned posts, I have worked OT in Division 2.

2. As a correctional officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my job duties as external operations officer include, but are not limited to, supervising inmates' daily activities outside of the jail and during their stay in the hospital and transporting inmates to and from facilities outside of the jail. In all of these assignments, my job has required me to have interactions with male inmates daily.

3. During my employment at the Jail, I regularly endure sexual harassment by male inmates, which they direct at me and at other female employees. I have experienced: (a) inmates exposing their penises to me; (b) male inmates purposefully masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis, including regular comments about how they want

Plaintiffs 001122

to sexually assault me. This kind of treatment impacts me each day. It is difficult to go to work at a place where you know that you or other women will be harassed every single day. I shouldn't have to come to work and be exposed to this environment.

4. While working at the Jail, during my 90-day assignment in External Operations, whenever I arrived to or left the external operations office I saw inmates standing in the courtyard watching female employees as they come and go. Almost daily I witnessed inmates masturbating with their penises exposed while they are out in the open.

5. I didn't write incident reports on the inmates who were masturbating from the recreation patio, but if I witnessed it while I was on my way into the Ex Op Office I would call Division 9 security and let them know, but if I was leaving the jail I didn't do anything, I just kept my eyes forward and kept moving. When I notified security, I think that they would call whatever floor I mentioned I saw the inmate on and have an officer go out to the recreation cage patio and try to figure out who was masturbating and remove them from the yard.

6. Another reason I didn't write incident reports is because they were usually masturbating in a group and I wasn't able to identify inmates from where I was standing. You can't write an incident report if you don't know who did it. And, you can't stare too long trying to identify them because I didn't want the

2

Plaintiffs 001123

inmates to think I was interested. Also, it's time consuming. It is an ongoing situation that doesn't get resolved. Nothing ever happens so what's the point.

7. I have also witnessed inmates masturbating at me when I am assigned to be with them in the ER. For example, sometime between February and June 2015, while I was in the ER and I was assigned to watch a detainee, the detainee was lying on the hospital bed and I was sitting in the chair directly in front of him when he pulled out his penis and started masturbating. I gave the detainee verbal orders to stop and made my partner aware of what was happening. The detainee stopped and then started again after my partner looked away. The inmates that masturbate at me while they are being treated in the ER were mainly inmates from Division 9.

8. Another incident occurred while taking a detainee to the clinic at Stroger Hospital. As another example, while I was escorting a detainee, the detainee was walking with his hands in the front of his pants, making hand gestures as if he was masturbating.

9. I have heard that other women who work at the jail have been subjected to the same or similar sexual harassment. For example, I heard another officer say that when she was watching an inmate in the ER he kept jacking off at her. I have also observed inmates masturbate at the nurses in the hospital.

10. I experienced vulgar and sexual comments such as being called a "bitch," and heard comments such as "she has a fat ass" so frequently that I have lost track of how many times I have heard such comments. The vulgar comments

3

are a part of my daily routine.  I try not to think about it, I just keep it moving.  If I wrote an incident report every time the inmates say something sexual or about my body, I would be writing incident reports all day long and wouldn't be able to do my job.

11. I have also heard inmates yell sexual threats at me, such as "Bring your ass in my room. I want to fuck the shit out of you."

12. My supervisors know about the inmates' behavior. Sergeant Herrera  would purposefully assign women to work with the male inmates saying we (women) "could soothe the savage beasts."  For example, if I was assigned to movement Sgt. Herrera would put me on assignment in the ER where inmates masturbate frequently.

13. Management is also aware of the masturbation problem because I have written multiple incident reports about inmates masturbating openly.  Also, some managers have made comments about female officers working with male inmates. For example, in spring of 2017, I was watching inmates while they were in a holding cell.  The way the unit is set up the officer desk is directly across from the holding cells.  Inmates just stand there staring and jerking off from inside their jumpsuits at me and the other females working at the desk. At the time of this incident there were approximately 8-12 inmates in the holding cell.  I could tell they are jerking off because of the motion of their hands inside their jumpsuit.  I notified Sgt. Spearman of the situation and he walked to the cage to tell the inmates to remove their hands

4

Plaintiffs 001125

from inside their jumpsuit and informed them if they continued he would have to write them up.   When Sgt. Spearman returned to the desk he said "that's why I only want male officers sitting at the desk."

14.    I can recall at least four or five times that I know of, where I have been reassigned because a Sergeant or Lieutenant said they wanted male officers at the desk because of the masturbation.

15.    After writing several incident reports, I was discouraged from writing incident reports about detainee masturbation because the lieutenants and other management are busy and processing incident reports takes away from other work that they do.  Sgt. Spearman has told me on a number of occasions not to do a report because he doesn't have the time to complete his part of the incident report, and "nothing is going to happen to these guys anyway."

16.    Incident reports are ineffective because the inmates know that the Jail imposes no real consequences for masturbating at women, and the inmates know that.  For example, I have had inmates tell me "I don't care if you write me up," and others have said "you just wasting your time."

17.    White shirts have told me that I am wasting my time writing reports.  I have heard supervisors say the same thing to other women who work at the Jail.

18.    Supervisors excuse the inmates' behavior rather than try to stop it. For example, Sgt. Howard has said on many occasions "these guys got to do something, they're locked up."  I have also heard him and others say "What

5

Plaintiffs 001126

do you expect? You knew that [inmates masturbate] when you took the job," and "this is what they do."

19. I have never received training regarding how to address the masturbation or sexual harassment by male inmates, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

20. The harassment by the inmates has impacted my ability to do my job by altering the work environment. For example, I try to avoid max inmates and inmates in jumpsuits. I feel like others think I am incompetent when I don't want to be around certain inmates, but it is because of the harassment. It makes me dread going to work every day.

21. As another example, when my department receives the daily medical envelopes I look through them to weed out the known masturbators by looking at their housing placement on the transfer papers, and try to pass them off on a male officer because inmates would frequently masturbate toward me while I monitor them at the hospital. I have heard sergeants and male officers say "you get the same check as we do; it's your job."

22. The behavior by male inmates toward me was unwelcome, offensive, harassing, humiliating, threatening, and caused me to fear for my safety. I get stressed out to the point where I feel depressed and I'm reluctant to go to work. I dread going to work and talk about retiring daily. I'm not close to retirement, and early retirement isn't an option, although I wish it was. I show up to work because I need my paychecks, but I call out a lot. The stress

6

Plaintiffs 001127

of knowing I must go to work and deal with the inmates is to the point that I sometimes wake up with migraines. I shouldn't have to go to work and be exposed to this environment. It makes me uneasy knowing the inmates have more rights than the officers.

23. Also, because of the harassment, I have been experiencing depression, weight gain, hair loss, anxiety and lose of sleep. I don't go out socially anymore, just work and home. My experience at the jail has changed the way I look at men. I don't think men are trustworthy and I find it hard to be in a relationship right now because I'm constantly thinking about their past, background and motives.

Decl. Ex. 98

Plaintiffs 001128

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

_1-14-19_
Date

_[signature]_
Signature

Plaintiffs 001129

# JACQUELINE BROWN DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Jacqueline Brown. I am a correctional officer at the Cook County Jail ("Jail"). I worked at the Jail approximately 15 years from 2003 through January 2016. I have worked in various parts of the Jail in my role as correctional officer, including: Division 3 and 8 starting in July 2003 through December 2003; External Operations until May 2004; Division 4 for about a year; then I worked in Boot Camp from April 2005 through August 2013; and I began working in Transportation until the end of my tenure in January 2016. I was also assigned to work OT in Division 9.

2.  As a correctional officer at the Jail, I was responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my job duties included, but were not limited to, supervising inmates' daily activities; escorting them between different areas of the Jail; the medical center (Cermak Health Services), the Courthouse lockup, and other areas outside the jail. In all of these assignments, my job required me to have interactions with male detainees daily.

3.  During the time I worked at the Jail, I endured sexual harassment by male detainees, including: crude or sexual comments on a daily basis; comments about what they want to do to me sexually; remarks about my appearance;

Plaintiffs 001130

lewd gestures; detainees exposing their penises to me; and male detainees purposefully masturbating at me.

4.     I frequently witnessed detainees masturbating with their penises exposed while they were on the bus being transported. Inmates were blue boxed at their waist (shackled from their feet and chained around their waist), which is supposed to make it hard for the detainee to move; however, they were still able to maneuver their hands to undue their jumpsuits and access their private area.

5.     I also witnessed detainees masturbating at me while I was escorting them from their tier. For example, I was picking up a couple of inmates from Division 9 and taking them to Piatt County.  I was unloading the inmates from the bus one-by-one and noticed one detainee kept moving to the back of the bus, trying to make himself the last individual.  When it was his turn to get off the bus he had his penis in his hand exposed and was masturbating.  I started screaming at the inmate to put it away and called for my partner. The inmate said to me "I couldn't help myself, you're just too fine.

6.     I observed other women who worked in other positions being subjected to the same or similar sexual harassment. For example, whenever we picked up inmates from receiving, the detainees would be at the glass door exposing themselves to the women that were present.

Decl. Ex. 101

Plaintiffs 001131

7.     I experienced crude and sexual comments so frequently that I lost track of how many times I have heard such comments. As an example, during my employment, I heard detainees say to me:

- "Let me put this big black dick in you, Ms. Brown."

- "You're so fine you got my dick all hard, look;" and

- "Girl, come over here so I can put my dick in you."

8.     Managers knew about the detainees' behavior. Everyone knew about it, after a while they began to turn a blind eye like they didn't see it happening.

9.     Management was also aware of the masturbation problem because I have written multiple incident reports about detainees masturbating openly. For example, I wrote a report when a detainee began yelling "CO, CO I'm feeling sick." When I looked in his direction the detainee exposed himself and began stroking his penis in the van, while in transport to the jail. I gave the detainee verbal orders to stop and informed him that I did not tolerate such behavior. I informed the detainee that I was going to write a report and that he was being recorded by the bus camera.

10.    I wrote another incident when a detainee was masturbating while walking towards me in the Sally port. I gave him verbal orders to stop walking towards me or I would spray him with mace and write him up.

11.    After writing several incident reports, I was discouraged from writing incident reports about detainee masturbation because male officers would say things like, "This is what you signed up for," or "This is part of your job." I

3

Plaintiffs 001132

was also told "detainees are going to do what they want, why even write them up? It's not going to make a difference. "

12. Incident reports were ineffective because the detainees know that the Jail imposes no real consequences for masturbating at women. For example, I was told that inmates couldn't be prosecuted unless the harassment was formally reported at least three times.

13. As another example, detainees made comments such as, "I'm in here for a much greater offence, I don't care if you write me up." Detainees have also said "I don't give a shit. Now I get a pizza party."

14. Supervisors excused the detainees' behavior rather than try to stop it. For example, when we would pick up the detainees from receiving, if a white shirt was present they would tell the detainee to put it away, or let them know that they couldn't do that (referring to masturbation). After a while, white shirts wouldn't say anything because they'd act like they didn't see the detainees exposing themselves.

15. I never received training regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

16. The harassment impacted my ability to do my job by altering the work environment. For example, I couldn't always help my partner secure the detainees because I didn't want to get close the inmates when they had their penises exposed.

4

Plaintiffs 001133

17.　As another example, my partner and I used to switch off driving and supervising the detainees, but I chose to the do the long drives myself because I didn't want to be subjected to the harassment from the detainees.

18.　The behavior by male detainees toward me was unwelcome, offensive, harassing, humiliating, threatening, and caused me to fear for my safety.

19.　As a result of the constant sexual harassment, I stopped working overtime unless it was required. This meant that I gave up overtime pay. I asked to not be assigned to male runs, and I avoided certain areas of the jail, specifically Division 9. Every time I knew I was going to Division 9 or receiving I got anxiety trying to figure out how I was going to deal with it that day. I would try to plan my route in advance, trying to decide if I should take the longer route so I could avoid the bull pen.

20.　As another example, trying to avoid the harassment as much as possible made it difficult on my partner as well because we couldn't evenly distribute the workload. It was either me always driving, or him always having to shackle the inmates by himself.

5

Plaintiffs 001134

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

01/15/2019
_____
Date

_____
Signature

Plaintiffs 001135

# **MONIQUE BROWN**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Monique Brown. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail for approximately eight and a half years. During my time at the Jail, I have worked in External Operations, Division 4, and Receiving. I have been working in Receiving for about the past five years where I have daily interaction with male inmates who sexually harass me.

2.  In Receiving, from about 2013 to about July 2018, the male inmates masturbated at me and exposed their penises to me about two or three times a week. Inmates can still masturbate when they are wearing green jumpsuits. They wear their jumpsuits opened in the front and sometimes even when they are cuffed in blue boxes, they can still reach their penises and masturbate. Since about July 2018, the inmates still masturbate at me and expose their penises to me, but it happens about once every two weeks.

3.  Normally when I see male detainees come in before they go into court, they immediately start catcalling at you if you walk past the bullpen. They say things like, "Hey, that's my baby mama," "Can I take you out?", or "When I get out, we gonna fuck." It seems like if you stand there for longer than two minutes, they start jacking off. For example, one time a few years ago inmate M.M. was on the bridge waiting to go to Skokie Courthouse. He took out his penis, masturbated at me, and then tried to touch me. Because M.M. was known to do this, the male officer restrained him before M.M. could reach me.

1

Plaintiffs 001451

4. As another example, in 2016 or 2017, another inmate. came into the area we were doing booking and processing in Receiving. His penis was exposed, and he put it up against the glass and started rubbing it up and down and actually ejaculated. There were female nurses and task workers present. I couldn't believe he had just done that. I am used to see people exposing themselves but never actually ejaculating. I told Sergeant Cintron about this incident and he said he would take care of it, but we didn't write an incident report.

5. I also experienced sexual harassment when I worked in External Operations. The inmates who were outside could see me walking into work and punching in. They screamed disgusting sexual comments off the balcony at female employees and exposed themselves, such as "She got a big booty!" or "Your booty looked better in the jeans from yesterday" or "You're looking tasty today." They made sexual gestures at me and the other female employees, ranging from blowing kisses to taking their penises out and masturbating.

6. The verbal sexual threats and harassment from male inmates happen pretty much every day, all day. I've heard inmates say, "When I get out, Ima tap that," "Ima be your husband," "Come sit with me, can I get a hug," and "you got thicker."

7. My coworkers who are women and I are all going through the same stuff. Inmates do it to female sergeants too. I have never written an incident report for sexual harassment because it takes a lot of time to write the reports but they don't go anywhere. I know this because when other female coworkers wrote reports in the past and I was a witness, the reports reached the Lieutenant, but the inmates were never disciplined. The sexual harassment is so common, and I feel discouraged. Male supervisors have told me and other female employees that "you can write an

2

Plaintiffs 001452

incident report if you want, but it won't go anywhere, you just have to have tough skin."

8. The inmates don't masturbate at officers who are men. If I and other female coworkers in Receiving know when inmates who regularly masturbate will be going to court, we try to put male officers in that area of Receiving so that the inmates don't masturbate at the women.

9. When I first experienced the sexual harassment, I was shell shocked. Now, I go into work and I feel like I have to expect this awful behavior from male inmates. I'm offended and feel disrespected, and I feel unsupported by the administration. Some days I feel unsafe. I think it's a safety issue for the women.

10. I have never received any type of training about how to deal with inmates sexually harassing women at the Jail. It is almost funny that it has never been brought up at all. I think it would be helpful for us if we had a plan in place. If we knew what to do and how to do it, we wouldn't feel so alone, and more people would be willing to report it.

Decl. Ex. 108

Plaintiffs 001453

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

03/25/2019

_____
Date

Monique Brown

_____
Signature

Plaintiffs 001454

# Declaration of Trina Brown

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Trina Brown. I have worked at the Cook County Jail as a correctional officer since February 21, 2000.

2. Since my employment at the Jail, I have been assigned to Division 9, Division 10, Division 5, Division 1 (which is now closed), and Receiving. I have worked in Receiving for approximately 2.5 years.

3. In all of my assignments, I have been required to have interactions with male detainees on a daily basis. Even when I was assigned to the security office (in Division 9 for 2 years in approximately 2014 through 2016), I would have to pass out the legal mail every day to the detainees in their cells or in the dayroom of the tiers in Division 9, depending on where they were at the time

4. At the beginning of my employment, when I was working in Division 5, I only saw a detainee pull his penis out one time. I didn't experience sexual harassment very often until I got to Division 9.

5. In Division 9, I was verbally sexually harassed by inmates every day. They would make sexual comments and gestures. A few days per week, I saw detainees expose their penises to me and masturbate. Detainees would wait for the female correctional officers to come in to do the routine count and they would often expose themselves. I didn't want to look, so I tried to have "tunnel vision" to avoid seeing the inmates exposing themselves. It's a shame that you have to get in a mindset where you have to ignore what they're doing – you know what they're doing, but you don't want to look.

6. As an example, in approximately 2015, I was assigned to sanitation. This required me to take inmates go on tiers to clean. On one particular day in the segregation unit in Division 9, when the inmates were cleaning a cell, another detainee called me over to his cell, so I went to see what he needed. I saw he was standing on the top bunk, masturbating, saying to me "I'm in here by myself. Do you like what you see?" I wrote an incident report and indicated that I wanted to press charges. However, I never received a call from a Sheriff's Police investigator and I never heard anything after that.

7. When I worked in Division 9, I remember that Commander Arce (male) did not want us to write the detainees up. I heard from other correctional officers that they had approached Arce about sexual harassment, and he said

Plaintiffs 001359

something like, "They're in their cells. They're allowed to do that in their living unit."

8.  I do not recall the date, but when I talked to Sergeant Nalepa about sexual harassment, he said to me, something like, "that is what you signed up for," and "if you hadn't been looking, you would not have seen it." Other women told me that Sergeant Nalepa had made similar discouraging comments to them.

9.  In Receiving, detainees make all types of sexual comments and gestures every day when they walk past female correctional officers. They talk about my appearance and my body. One time in about March 2018, an inmate said to me, "I see you've been doing squats," which made it clear that he was looking at my rear end. It is disrespectful.

10. I know that inmates expose themselves and masturbate in the bullpens in Receiving, especially if they are handcuffed in the front. I have seen it myself a few times, but I don't know how frequently it happens because I try not to look.

11. Sometimes, I have to walk through the tunnels of the jail. A few times, I have heard inmates make sexual comments to me or expose themselves to me in the tunnels, as well. The tunnels are small, so when I'm moving through them, I have had to tell inmates to give me some space and not stand too close.

12. I have to wear a sweater 24/7 because the inmates talk about my body. I can't wear perfume to work. I stopped that early on because the inmates would say "you smell so good!" I wear very minimal makeup to work. I don't wear my pants tight. I'll try anything to try avoid comments from the inmates, but they sexually harass me anyway.

13. The sexual harassment has made it a chore to get up every day to come into work. I pray before, during, and after work. I also avoid interactions with inmates. The sexual harassment makes me not want to watch the inmates because I know that they could expose themselves to me.

14. Male correctional officers sometimes look the other way because they don't want to get involved. Based on what I heard from Sergeant Nalepa and Commander Arce, as well as things I've heard from other female correctional officers about other male supervisors, I feel discouraged about the sexual harassment problem. We are made to feel that this is what we signed up for and that we just have to deal with it.

Plaintiffs 001360

15. The constant sexual harassment at the jail has taken a toll on me over the years. It has affected my sleep and has made me feel depressed. I haven't sought help for any of these things, but sometimes it's a struggle to just go to work. Sometimes I just want to be alone, not be bothered, and not deal with people period. It has also affected my outlook on men in general. It makes you less present in your relationship. I don't discuss my job with my family because it's not a positive experience. If someone brings up my job in front of my sister, she will usually tell them that the topic is "off limits." I don't want to talk about it.

Trina Brown

March 23, 2019

Date

Decl. Ex. 112

# Declaration of Ayesha Brown Burge

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Ayesha Brown Burge. I have worked as a correctional officer at the Cook County Jail since 2005. As a correctional officer, my primary job duty is to ensure the safety and security of the Jail.

2. During my time at the Jail, I have been assigned to Division 1 (2005-2007 and 2009-2012), Division 6 (2007-2009), Division 4 (2012-2016), Divisions 3/8 (2012-2016), and External Operations (2016-2018), and I have been assigned to Division 10 since 2018. Even though I am assigned to work in certain areas, I can be asked to work overtime in other areas. I have worked overtime in Divisions 2, 9, and 11.

3. I have interacted with male inmates on a daily basis in all of my job assignments. For example, I search them, handcuff them, count them, and transport them. When I was in Division 4 and Division 3/8 I worked predominantly with women, but I would still see male inmates in the tunnels on daily basis when I was transporting the women to other areas of the Jail.

4. The inmates who are men sexually harass me and other women who work at the Jail. This ranges from saying degrading sexual things about my body, which happens almost every day, to masturbating at me, which happens about once a week. I have also seen inmates stand in the window grabbing their crotch area while looking at women as they walk by.

5. The sexual harassment gradually got worse over the time I worked at the Jail until this lawsuit was

6. The verbal sexual harassment includes sexual threats of what the inmates want to do to me and it can be violent and graphic. Here are some examples of the sexual threats and other verbal attacks on my body:

   - "Somebody need to fuck the shit out of your big booty dyke ass."
   - "If I get a hold of you, I'm going to fuck you in your ass."
   - "I'mma bend you over."
   - "It looks like someone skeeted and nutted all over your forehead."
   - "Hey, look at that big white booty."

7. Inmates masturbate at me about once per week. For example, when I worked in Division 6 on the midnight shift inmates would masturbate at me while sticking their penises through the chuckhole opening to their cells. It was difficult to write an incident report because it was almost always more than one inmate doing this to me at once. All I could do was to turn my back on them, but this made it really hard to do my job.

Plaintiffs 002139

8. In addition to masturbating at me, inmates expose their penises and testicles to me without masturbating about once per month. For example, in Division 10, inmates have purposefully exposed themselves to me while I was counting them. I explain these incidents in the next two paragraphs. As another example, in 2011 in Division 1, an inmate looked at me, stripped naked, and sat in the middle of the day room.

9. In May 2018, in Division 10, I announced that I was doing the count. I have to go to each cell during the count, and the inmates are not supposed to have anything obstructing the view of their cell during the count. I got to a cell and heard the inmate at the toilet so I stood off to the side and waited for the toilet to flush before approaching. The inmate had a towel covering the chuckhole so I removed the towel since it was my job. The inmate was standing there facing me with his penis in his hand and was only wearing underwear. I wrote an incident report, but later I received a call from an investigator trying to convince me not to press charges. Eventually, the investigator came to meet me so I could sign the paperwork to press charges, but he did not have everything he needed, left, and never returned. He also said something about the cell being the inmate's domain and that I had no case.

10. Another example from Division 10 is also from May 2018. I was doing the count and a different inmate acted like he was using the bathroom and when I approached the cell, he turned and purposefully exposed his penis to me.

11. Also on Division 10, the showers are located to the left of where we sit and you can see the inmates in the shower and they know that. They also know when I am working and they purposefully go to the shower area that I have to monitor and masturbate. I wish the showers in Division 10 were more like the showers in the female tiers, which are enclosed so we cannot see them when they are in the shower.

12. Other women who I know who work at the Jail experience the same or similar sexual harassment by the inmates. For example, when I was in Division 4 and would transport women inmates, I saw male inmates in the bull pen in Receiving who would expose themselves to me, other women employees, and the women inmates. As another example, other women officers have told me about experiencing inmates masturbating at them in the dayroom in Division 9 and Division 10.

13. The white shirts who are supervisors know that inmates are sexually harassing women. I have told them about it, and I think they see inmates masturbating on the cameras. They also walk by the bull pens in Receiving and see the masturbation, and sometimes white shirts walk with officers when inmates are being transported so they would witness the sexual harassment then.

14. The Jail has never trained me on how to respond to inmates masturbating or making sexual threats to me. Instead, sergeants and lieutenants have told me that the inmates' sexual behavior toward women comes with the territory. They have said things like, "Well, you should be in the female division, not a male division" and "I'm sure you have seen a penis before." Male supervisors and officers have also

Plaintiffs 002140

insinuated that I am sexually harassed because I wear makeup, which I find offensive. It's not right to blame women.

15. The inmates know that the disciplinary system for responding to sexual harassment does not work. They say things like, "The only thing that's going to happen is they take my commissary and I don't get commissary anyway so…" and "I'mma do it again, and still nothing is gonna happen" and "ain't shit going to happen to me anyway."

16. The Jail also does not enforce the inmate dress code for the men the same way that it does for women, which contributes to the sexual harassment problem. The male officers don't do a good job of making the male inmates wear their uniforms properly and they are sometimes walking around in their boxers. Male inmates have said to me something like, "How come I always have to get dressed when you broads come over here."

17. Even inmates who are assigned to wear the green jumpsuits are not required to wear the jumpsuit properly. The Jail lets them wear it open or tied around their waist. And some inmates have told me that they want a jumpsuit because the Velcro gives them easier access to masturbate.

18. The sexual harassment has changed how I do my job. I am always on the lookout, sometimes I don't even want to go to work because I don't want to be exposed to the harassment. During the day shift, I tell the inmates they are not allowed to have their hands in their pants and they have to have their pants up around their waist because I don't want them to have access to masturbate at me. I also walk close to the wall so no male inmates can walk up behind me and try to stand beside me on one side. Also, to try to limit my interaction with inmates, I try not to go back to a tier if possible so they don't have the opportunity to masturbate at me or say something sexual. I dread when the inmates are moving because I know I will have to interact with the men and it is really stressful because of the sexual harassment, especially when I have to go to Receiving.

19. The sexual harassment is very intimidating and makes me feel like a second-class citizen as a woman. It's like I am not ask important as the men who work at the Jail and as if the inmates do not have to listen to or respect me.

20. Because of the sexual harassment, I try to put on a form of masculinity to try to be tough and I try to wear my clothes really big. This doesn't stop the sexual harassment, but it is something I can control. I constantly have an anxious feeling because I don't know what to expect.

21. Dealing with all this sexual harassment has taken its toll on me and changed me. It has affected my overall attitude and people sometimes say I am hostile and I didn't used to be. I feel extra alert around men outside the Jail, and I don't want to have interaction with men in general. My significant other has said that I am angrier than I used to be. Also, it affects my sleep because I dread going to work.

Decl. Ex. 115

Plaintiffs 002141

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/16/2019

_____
Date

_____
Signature

Plaintiffs 002142

## PATRICIA BROWN-CONLEY DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.     My name is Patricia Brown-Conley. I am a Correctional Officer at the Cook County Jail ("Jail"). I have worked at the Jail since July 23, 2007. I have worked in various parts of the Jail in my role as a Correctional Officer, including: Divisions 2, 3, 5, 6, 8, 9, 10, and 11. I am currently assigned to Division 11 and have been in Division 11 for approximately nine years. Over the years, my assignments in Division 11 have included the Barbershop, the Law Library, and serving as a movement officer. For approximately the last two years, I have been assigned to the Division 11 housing tiers.

2.     As a Correctional Officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention and maintaining order at the correctional facility. For example, my job duties include, but are not limited to: supervising detainees' daily activities, inspecting cells, releasing detainees from their cells into the day room, returning detainees to their cells, conducting pat down searches of detainees, and escorting detainees to other areas of the Jail. In performing all of these duties in Division 11, my job has required me to have interactions with male detainees daily. The duties I performed in Divisions 2, 6, 9 and 10 also required me to interact with male detainees daily.

<u>General Description of Harassment</u>

3.   During my employment at the Jail, I have endured sexual harassment by

male detainees, which they direct at me and at other female employees. I

have experienced: (a) detainees exposing their penises to me; (b) male

detainees purposefully masturbating at me or in front of me; and (c) crude or

sexual comments on a daily basis, including regular comments about how

they want to sexually assault me.

<u>Specific Incidents of Exposure</u>

4.   I most frequently witness detainees exposing themselves or masturbating in

their cells when I come around to count detainees.  In the morning, before I

conduct a head count, I announce to the detainees that a female officer is

present and instruct them that they should cover themselves up if they are

not dressed. Instead of covering up, as I approach their cells to count them,

detainees intentionally stand up and expose their penises to me or lie in their

beds fondling themselves. When I tell them to stop, they frequently make

statements such as, "I'm in my room, ain't nothing ya'll can do to me." This

occurs on a regular basis, ranging from daily to two or three times a week. I

have lost count of the incidents.

5.   For example, in approximately early February 2018, while I was doing a

count, a detainee whose last name is ▇Redacted▇ spread his legs open and began

masturbating at me in his cell.  This particular detainee has frequently

exposed himself or masturbated in front of me and other women Correctional

2

Officers in Division 11. For example, in approximately November 2017, Mitchell called to get my attention, "Look, Mrs. Conley," and exposed his penis.

6. I have also witnessed detainees exposing or touching their penises in the day room. There was a particularly bad stretch of time that occurred sometime within the last three years during which detainees exposed themselves to me in the day room on a daily basis. Now, it is more common that I see detainees touching their penises with their hands inside their pants while they are in the day room. They constantly keep their hands in their pants, rubbing their penises with their pants hanging down past their butts. I instruct the detainees to remove their hands from their pants and wear their pants properly. Sometimes they comply with my order briefly but go right back to doing it.

<u>Witnessing Harassment of Others</u>

7. I have witnessed other women who work in the Jail experience the same or similar sexual harassment throughout the Jail, including other women assigned to work in Division 11. For example, in June 2018, as I was returning detainee Redacted to his cell, Correctional Officer Genise Johnson arrived to relieve me of my post for an hour so that I could take a 14:00 (2:00 pm) lunch. Redacted exposed his penis, began playing with it, and stuck it through the chuck hole at Correctional Officer Johnson and me. Officer Janie

3

McConnell told me that ▉Redacted▉ also masturbated at her in approximately February 2018.

<u>Sexual and Sexually Violent Comments</u>

8.  I hear crude, violent, or sexual comments from male detainees directed at me frequently. For example, in approximately May of 2016, a detainee threatened me, stating, "I kill bitches in the world like you." I wrote him up and sought to press charges, but Commander Garcia did not complete the write up in time for it to be properly processed. Therefore, the detainee received no consequences for his actions.

9.  Additionally, in approximately 2015, after I gave detainee ▉Redacted▉ several direct orders to put his shirt on, he said, "You don't have to be such a bitch, maybe you should get some dick," to me and Officer LeMone Sherman.

<u>Knowledge of Defendants</u>

10. Supervisors know about the detainees' behavior and their sexual comments towards me and other women. Everyone knows about it. For example, I frequently report to my male supervisor, Lt. Siaj, when a detainee exposes himself or masturbates in front of me. When detainees expose themselves and masturbate in their cells, Lt. Siaj says things like, "There's not much we can do because they're in their cells."

11. For years, supervisors made no real effort to discipline detainees or set consequences for the sexual behavior toward women. Lt. Siaj has said, "It

4

comes with the job," "deal with it," and, "you can handle it." He has made statements like that so often that I cannot estimate the number of times.

<u>Incident Reports and/or Complaints</u>

12. I have verbally complained numerous times and have written detainees up on a number of occasions. For example, in November 2017, I complained when ▇Redacted▇ pulled his penis out and said, "Look Mrs. Conley." Also, in May 2016, I complained about the detainee who threatened my life, wrote him up, and sought to press charges.

13. I have wanted to write up ▇Redacted▇ on multiple occasions for exposing himself and masturbating at me in his cell. When I complained about ▇Redacted▇ to Lt. Siaj, he told me that he would "talk to" the detainee instead.

14. Regarding the incident in June 2018 when ▇Redacted▇ exposed himself to Officer Johnson and me, I offered to write an incident report. However, since Officer Johnson was relieving me for my 14:00 lunch, we decided that she would complete the incident report. Lt. Siaj tried to talk Officer Johnson out of writing an incident report. When she insisted, he tried to convince her to wait until the next day. Officer Johnson insisted that the detainee be written up immediately and removed from Division 11. Officer Johnson completed the incident report.

<u>Ineffectiveness of Complaining and Discouragement</u>

15. After complaining multiple times, I felt discouraged from complaining because complaining did not stop the detainees' behavior. Lt. Siaj regularly

5

discouraged me from reporting incidents and said he would "talk to" the detainees instead. "Talking to" the detainees never works. It feels pointless to continue to complain because I am repeatedly told it comes with the job or that nothing can be done if they masturbate in their cells, even though they are intentionally doing it to me during my count.

16. Incident reports have been ineffective because the detainees know that the Cook County Sheriff's Office imposes no real consequences for masturbating at women. I have heard detainees say things like, "I don't care, I'm already locked up. Ain't nothing going to happen."

<u>Non-enforcement of the Dress Code</u>

17. The dress code is not strictly enforced. For example, in 2015, after I gave detainee Redacted several direct orders to put his shirt on coming out of the Barbershop, he said, "You don't have to be such a bitch, maybe you should get some dick." The detainee was not disciplined when I reported the incident. If the dress code was strictly enforced, I think it would be harder for detainees to expose themselves and masturbate.

18. I feel discouraged from reporting dress code violations because they are not taken seriously. For example, in December 2017, I reported to Lt. Siaj that a detainee refused to put a shirt on when I instructed him to. My supervisor told me not to write the detainee up and that he would "handle it." Also, the male Correctional Officers do not enforce the dress code, which makes it more difficult for me to enforce the dress code.

6

Lack of Training

19.  I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

Impact on Job Performance

20.  The sexual harassment changed the way I do my job. I am in constant fear when I am working on the tiers. After being diagnosed with PTSD because of the work environment, I requested to be moved to a job assignment that does not involve detainee interaction. I submitted a letter from my psychologist that stated that I need a break from direct contact with detainees. Nurse Shelley, whose job it was to handle employee medical issues and reasonable accommodations, told me that, "Your job consists of contact with inmates," and denied my request.

21.  Each pod in Division 11 has four Correctional Officers assigned to it. Usually, in my experience, they are all women. Because detainees have been allowed to get away with so much misconduct toward female officers, I feel that our lives are in danger. I am afraid that a detainee will grab and rape one of us or detainees will attack us as a group. On a day to day basis, supervisors are putting us in jeopardy by making these assignments.

22.  In September 2018, I asked Lt. Siaj how he was administering the 90-day assignment roster because I do not understand why I have been assigned to

7

DocuSign Envelope ID: 0DF42370-B644-477B-AE42-69F40CF8A102

the tiers for approximately two years, while other officers with less seniority are given different assignments. I have also been on Administrative Relief for most of that time period, meaning that I am not assigned to a specific tier and instead go wherever help is needed. I feel that not having a regular assignment causes the detainees to question my authority and that means they are more likely to expose themselves to me and ignore my orders to stop.

23. Lt. Siaj refused to answer my question about the 90-day roster. I emailed Superintendent Karin Jones-Hayes about Lt. Siaj's refusal to answer me and expressed my safety concerns. When Lt. Siaj found out, he retaliated against me by checking my tier four times, along with two other supervisors, during that shift. He did not do that to other officers. Then, he wrote me up for not having all the detainees in their cells by 1:30 pm. It is routine for officers not to have all the detainees back in the cells by exactly 1:30 pm. I have not seen other officers written up for that. As a result of this incident, I had a panic attack and had to leave work early. When I returned on my next work day, I was assigned to the visitation lobby, but not permanently.

24. The behavior by male detainees toward me is unwelcome, offensive, harassing, humiliating, threatening, uncomfortable, and causes me to fear for my safety.

25. During every work day at the Jail, I experience anxiety over potential harassment and exposure. Even if I am not the direct target of detainees' sexually inappropriate behavior on a given day, my female coworkers and I

8

expect that at least one of us will be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse. I think it happens to someone every day. I know I might be sexually harassed or hear about a female coworker being harassed when I walk through the compound to my assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift. This causes constant stress and makes it more difficult for me to focus on my job of keeping everyone at the Jail safe.

<u>Emotional Impact</u>

26. As a result of the constant sexual harassment, I have suffered severe emotional distress. The harassment and masturbation at the Jail makes working there extremely stressful. It affects my mental health; I have been diagnosed with PTSD. I suffer panic attacks at work and at home because of the stress. It affects my personal life because I am constantly complaining about it to my husband, which causes tension and arguments at home. I am fed up and disappointed with the lack of action to deter sexual harassment within the Jail. I feel the Sheriff's Office is more concerned with the detainees' wellbeing than with the officers' safety.

DocuSign Envelope ID: 0DF42370-B644-477B-AE42-69F40CF8A102

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/11/2019
_____
Date

DocuSigned by:

_Patricia Chad_
A3FADD39884C4A5...
_____
Signature

10

# Declaration of Mara Bryant

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name Mara Bryant. I have been a correctional officer at the Cook County Jail ("Jail") since January 2011.

2. During my employment at the Jail, I have been assigned to Division 4, RCDC ("Receiving"), and Division 6. From approximately 2011 until approximately 2014, I was assigned to Division 4, which was a female division at the time. However, in that time period, I would also be mandated to work in different divisions every day. For example, I worked in Division 5, Division 6, Division 9, Division 10, Division 11, Receiving, External Operations, and the Central Kitchen. Only every so often would I actually work in Division 4.

3. In approximately early 2014, I was moved to Receiving, and worked there until approximately October 2014, and then again from 2017 until approximately March 2018. In approximately October 2014, I worked in Division 3, which was another female division, and then Division 4 again. I have been assigned to Division 6 since March 2018.

4. While working in Receiving and Division 6, I have had interactions with male detainees every day. And, when I was assigned to other divisions, I frequently saw male detainees in the tunnels. I experience verbal sexual harassment from the male detainees every day in Division 6. I experienced it in Receiving, as well, depending on where I was working that day. If I was working near the bullpens in Receiving, I heard verbal sexual harassment every time I walked past the bullpens. I have heard verbal sexual harassment in Division 5, 9 and 10, and in the tunnels, as well. Male detainees comment on my body parts, the way I smell, and my hair. They say the things they will do to me when they see me "on the outside" which means outside of the Jail, and they ask things like, "If I wasn't in this uniform, would you go out with me?"

5. Sometime this past winter, in approximately 2018 or 2019, it was announced at roll call that a female correctional officer found a "kite," which is a note written by a detainee, in Division 6. The kite stated something to the effect that when the female officer opens up his door, he is going to knock her out and rape her. The kite also stated that if backup officers came in to help her, he would knock them out, too. There was a whole plan written out on how he was going to rape her. I believe the detainee was moved out of Division 6, but I do not know if he was disciplined or where he went. It was reminder that a detainee could assault me or another female officer.

1

Plaintiffs 002431

6. I have seen detainees exposing their penises to me and masturbating at me in Division 6. As an example, the toilets in Division 6 are right by the door, so officers can see detainees using the restroom. I have noticed that when I announce that I'm doing the count, detainees will get up to use the restroom and face their bodies toward me, or they will start changing their clothes while facing the door, and sometimes it seems intentional so that detainees can expose their penises to me. I can tell by their demeanor because it seems like they are standing there for a while, waiting for me to walk by. I announce that detainees have a certain amount of minutes to get dressed and ready for program meetings or whatever is happening that day. One detainee, every time I would go to the door, even though he had approximately 30 minutes of warning to get dressed, he would be undressed. After so many times, I suspected that it was not a coincidence that he was undressed every time I came to his door.

7. As another example, on April 20, 2019, I was sitting at the officer's desk in the tier on Division 6, behind the glass, keeping a watch on the detainees in the dayroom. One of the detainees sat at one of the tables in the dayroom directly in front of the glass, looking directly at me. I could see that he was staring at me for a long time. Another detainee approached me to ask a question, so I opened the door, came out, and spoke to him. While I was answering the detainee's question, I noticed out of my peripheral vision that the detainee at the table had his genitals out in his hand and he was masturbating at me. The detainee I was talking to was upset that the other detainee was masturbating and said something like, "I didn't want to see that!" I called a lieutenant and reported the incident to him – the detainee was still out of his pants when the lieutenant came in and told him to stand up. The detainee stood up, pulled his pants up, and he was escorted out. I wrote an incident report and indicated that I wanted to press charges.

8. One time, in Division 9, I was sitting at the desk in the interlock and I could feel that someone was watching me. I looked up and saw that a detainee who had been in the shower had stepped out of the shower, completely naked, and was standing in front of the interlock, washing himself while looking up at me, instead of washing himself inside the shower. The other officer I was working with ordered him to go back in the shower.

9. Another time, in Division 11, which I worked in a few times in approximately 2011 or 2012, I recall announcing to the tier that I was coming in, that everyone needed to get dressed and ready, and that I would be letting them out of their cells into the dayroom. A male sergeant decided to be the one to let the detainees out instead. When he was letting them out, I could hear the detainees saying, "Where's the other officer? She said she was going to open

2

Plaintiffs 002432

the doors!" because I had announced that I was going to let them out. The sergeant said, "Put your dicks away, she's not coming." That showed that they were prepared to expose themselves to me when I went around to let them out.

10. In Receiving, the hallway near the bullpens under the courthouse is very narrow, so when you walk past the bullpens, you are walking just a few feet away from the bars. Almost every time I walked past there, at least one detainee would be standing there with masturbating with his penis sticking outside of the bars. Sometimes there would be multiple detainees with their penises out. At the end of the bullpens, there is a desk for the officers to sit. At the desk, you can monitor the security cameras in the bullpens. The cameras also show detainees masturbating. So women officers are either going to see it on the camera or when we walk past the bullpens.

11. Male officers can walk down that same hallway and it will not happen to them. I speaking to a male supervisor about the masturbation, whose name I do not recall, and he said I should try to walk to the officer's desk a different way.

12. The same type of masturbation at women occurs in the tunnels. Underneath Division 5, there are more bullpens. When I worked in Division 4, I had to walk the female detainees past these bullpens in order to get them to Cermak. The detainees would sexually harass me and the female detainees. I recall seeing at least 10 detainees with their penises out as the female detainees and I walked past. I would have to warn the female detainees not to look when we went past the bullpens.

13. One time in approximately 2016, I escorted female detainees to Cermak and put them in the waiting area to wait until they saw the doctors. One female detainee asked me, "Do we have to sit here?" When I asked why, she pointed to a male detainee, who was also standing near the door of the Cermak waiting area, openly masturbating with his penis out while staring at us, smiling. The male officer who was standing next to him did not even notice. I had to get the male officer's attention and tell him to stop the detainee and the officer escorted him out. The detainee was smiling the whole time.

14. I have seen my female coworkers very upset about the sexual harassment that they have experienced. I recall specifically in the winter of 2018, one of my female coworkers was ranting about how a detainee kept exposing himself to her, grinning. I understood why she was angry, but I could tell that the male correctional officers didn't understand because they don't experience the same thing.

3

Plaintiffs 002433

15. I have never been trained on how to respond to sexual harassment. We are trained on how to respond if a coworker sexually harasses us, but they never go into the detainee sexual harassment. It's so common they almost act like it's normal. We are also trained on how to write incident reports, but not specifically how to write about detainee sexual harassment.

16. The sexual harassment has changed the way I dress at work. For example, I try to always wear the uniform polo shirts, instead of the buttoned shirts, because we can wear the polos loosely tucked into our pants, which shows less of the shape of our body. The day that we had a uniform check, around the second week of April, I wore the buttoned shirt tucked in for approximately two weeks. During that time, I was verbally sexually harassed by the detainees more frequently.

17. The sexual harassment affects me outside of work, as well. Looking at penises all day makes you feel like an object all day – so it makes you not want to feel that way outside of the Jail. People who don't have this type of job don't really understand it. All day, people are staring at me and whistling at me, so it affects your personal relationships.

_Mara Bryant_
Mara Bryant

01 May 2019

Date

4

Plaintiffs 002434

## TONI CALVIN DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.      My name is Toni Calvin. I am a Lieutenant at the Cook County Jail ("Jail"). I have worked at the Jail since January 8, 1996. Since January 19, 2019, I have been working in Division 6. From 2013 to 2019, I was a Lieutenant in Receiving. I have been assigned to various other parts of the Jail, including Central Kitchen as a Lieutenant and several of the divisions as a Sergeant and officer. As a Lieutenant, I sometimes have to cover for my colleagues in other divisions. During my career I have worked at least once in all areas of the Jail.

2.      As a Lieutenant at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention, maintaining order at the correctional facility, and supervising the officers and sergeants on duty. For example, my job duties include making shift assignments, responding to incidents, signing off on incident reports, escorting detainees, and securing detainees. In performing all of these duties, my job has required me to have interactions with male detainees daily.

General Description of Harassment

3.      During my employment at the Jail, I have endured sexual harassmen  by male detainees, which they direct at me and at other female employees. I have experienced detainees exposing their penises to me, male detainees

purposefully masturbating at me or in front of me, crude or sexual comments on a daily basis, and regular comments about how they want to rape and sexually assault me.

## Specific Incidents of Exposure

4.    I most frequently witness detainees masturbating in the holding cells on both the receiving side and on the court side of the Jail complex and while walking in the tunnel underneath the Jail. Detainees pull out their penises and masturbate openly while they are sitting in the holding cells, waiting to be transported. Some of the detainees in the holding cells remove their uniforms and get completely naked. Since the November 2017 injunction, they have been cuffed in the holding cells, but it doesn't stop them from removing their clothes.

5.    In October of 2017, detainees masturbated at me two days in a row. First, on October 30, 2017, some of the officers and sergeants I supervise were walking some detainees through the tunnel. When they arrived at Post OE in front of Division 5, one detainee stopped and refused to go back to his division. I was called in to try to convince the detainee to move. When I arrived, another detainee, Damien Thomas, pulled out his penis and asked me, "what do you think of this"?

6.    Then, the next day, on October 31, 2017, I was called to the bullpens in male holding to respond to an incident where detainee <span style="background-color:black;color:white">Redacted</span> was exposing himself to Lieutenant Alta Johnson and masturbating. While I was assisting

2

Plaintiffs 001372

Lieutenant Johnson with getting detainee [Redact] under control, Alta told me that detainee [Redact] [Redact] began masturbating also, while looking directly at me. I didn't look at him because I knew if I looked, it would only encourage him. Detainee [Redacted] behavior was also caught on camera while the officers were reviewing the [Redact] incident.

7. In August of 2017, Officer Davis, a female officer who was working in the property room, heard a commotion. She walked into the male intake area on the first floor and heard detainee [Redact] [Redact] refusing to go into his cell and asking to see the Lieutenant. I was her supervising Lieutenant that day, so she called me over. When I arrived, detainee [Redact] pulled out his penis and began to masturbate.

8. As another example, on May 31, 2017, I was escorting detainee [Redacted] [Redact] through the tunnel on the way back from court. While he was in holding waiting for court, he had been masturbating and I asked him to stop. He stopped for a bit but the cameras showed that he masturbated for at least 45 minutes in the holding cell. He was handcuffed in the front and was wearing a green jumpsuit. Nevertheless, he was masturbating the whole time we were walking. I gave him orders to stop, telling him to put his penis away. He did not stop, and instead said, "you turn me on, I want to fuck you." When we got to central kitchen, he made a noise like he was going to ejaculate. I saw lieutenant Hazel Derden, who was working in Central Kitchen that day, and asked her for help. After the detainee finally stopped

3

Plaintiffs 001373

masturbating, Lieutenant Derden walked me back to my post because I was so shaken up.

## Witnessing Harassment of Others

9.    I have seen other women who work in the Jail experiencing the same or similar sexual harassment. As a lieutenant, I am often assigned to be the "clean up" person when other women are being masturbated at.  For example, when Superintendent Erica Queen sees masturbation on camera, she orders me to go over and tell the detainee to stop.  Often, when I arrive, it encourages the detainees to masturbate more. I have to be a professional and do what I can to protect the officers and sergeants under my command, even though often when I arrive, I am sexually harassed too.

10.    One time in Receiving, a detainee who was on his way to an outside court placed his penis on the desk in holding, which is approximately 4 feet off of the ground.  The female officer on duty, who I think was either officer Tejeda or officer Hardy, screamed for help.  She was really upset.  One of the male transportation officers grabbed the detainee and made him put his penis away.  I signed the incident report.

11.    I also get emails and have to review reports about all the incidents of masturbation at the jail on a daily basis.  It is overwhelming.

## Sexual Comments

12.    I hear crude or sexual comments from male detainees directed at me on a daily basis, and sexual threats weekly. For example, detainees have told me,

4

"I'll fuck you in the ass," and "I'll lick your pussy 'till you come." Once, when I was pregnant, a detainee told me, "I'll take that baby out of your pussy and rape it and you." Detainees have made these or similar comments too many times to count.

Knowledge of Defendants

13.  My supervisors know about the detainees' behavior and their sexual comments towards me and other women. When I worked in receiving, I got emails from Superintendent Giunta and Assistant Executive Director Gavin about masturbators on a regular basis. As a Lieutenant, my supervisors routinely send me to assist female officers in writing up incidents of exposure and masturbation.

14.  My supervisors have only allowed me to respond to the exposure, masturbation, and crude comments in one mostly ineffective way. If a detainee exposes his penis, masturbates at females in the Jail, or makes sexually harassing or threatening comments, I am only allowed to write him up and create disciplinary reports. I don't think that's much of a deterrent because a lot of these guys have so much pending discipline it just doesn't matter.

15.  Sometimes my supervisors don't allow the disciplinary reports to go forward. When the detainee almost ejaculated at me outside of central kitchen, Captain Wright wouldn't assess my write-up, even though it was caught on video. For that reason, I try really hard to get detainees to stop masturbating

5

using words before I go to the trouble to write them up; my supervisors are sick of dealing with it.

<u>Ineffectiveness of complaining and writing disciplinary reports</u>

16. I have written approximately 5 to 8 incident reports about masturbation and exposure that was directed at me. In addition, I have assisted female officers and sergeants in writing countless incident reports.

17. Sometimes I feel bad for the female officers I supervise because we just can't write up every incident – there just are not enough hours in our work day to do that. The write-ups just take my time and attention away from keeping the Jail safe and they do not stop the detainees from repeating their behavior.

18. In 2017, I was working overtime in Division 9, and the female sergeant came running off the tier telling me that every detainee had their penis out of the chuckhole. I was shocked. When I walked in to look, they were calling out to us – hey, come here, etc. I had never seen an *entire* tier doing this at once. There was no way I had time to write up every single one of those detainees.

19. I pressed criminal charges of Public Indecency on several of the detainees who exposed themselves and masturbated at me. I don't know the outcome of most of these criminal trials. However, I know that in one of them, I think it was for detainee [Redact] [Redact] who is a repeat offender and known masturbator, the detainee was only given probation for his Public Indecency charge because he was facing other, more serious charges. In other words,

6

DocuSign Envelope ID: F7A16DE9-9B08-4F0C-A396-68591855163D

even after being criminally charged and going through a trial for exposing himself and masturbating at women in the Jail, the detainee received no additional punishment to that he received for the crimes that put him in the Jail in the first place.

20. I think that this result is common, because when I catch detainees masturbating and tell them I will file charges, they say, "I am already locked up, what are you going to do?" or "I don't give a fuck." The extra charges don't seem to matter to them.

21. I have repeatedly verbally complained to my supervisors about the detainees exposing themselves and masturbating, and about how we should be doing more to try to stop it. It hasn't changed anything.

<u>Ineffectiveness of Steps Taken</u>

22. The Sheriff's office has tried putting detainees who masturbate or expose themselves in green jumpsuits to deter their behavior. The green jumpsuits don't work. Sometimes, detainees who are supposed to be wearing them get away with not wearing them. Even when they do wear them, they have holes in the crotch area or the detainees wear them open so they can still access their penises. The jumpsuits should be worn backwards so that the opening is in the back, but the detainees often wear them open in the front and pulled down to their waists. Even worse, a few times I have been called to the bullpen because a detainee took his jumpsuit off and put it in the toilet.

7

Plaintiffs 001377_REDACTED

Plaintiffs 001377

23. Since the injunction, we are always supposed to cuff detainees in green jumpsuits in the back. I think this is still the policy. Sometime around January of 2018, I wrote up a male sergeant for moving a green jumpsuit's cuffs from the back to the front.

24. Nevertheless, handcuffing to the back doesn't really work because the detainees will sit down and put their feet through the cuffs to make them come to the front. Or, they will say they have to go to the bathroom. If we don't respond immediately to remove the cuffs or move the cuffs to the front, we will get in trouble for violating their civil liberties. But then, as soon as we take the cuffs off, they start masturbating.

25. The sheriff has done nothing to address the verbal harassment either. The only option we have is to write them up, which doesn't stop them.

Lack of Training

26. I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me. I remember having training about how to write incident reports at the academy when I was first hired, but I don't think I've had any further training about that since then.

Impact on Job Performance

27. The sexual harassment changed the way I do my job. Every incident changes you. Lately I might be walking towards a certain area to respond to an

8

incident and then all of a sudden I will have to take a different route to avoid masturbation. This makes it take longer to respond to incidents, which affects the safety and security of the facility.

28. Furthermore, the harassment changed the way I dressed at work. I wear loose-fitting pants and a jacket all the time. As a lieutenant, I wear white shirts which are kind of see-through. The inmates will comment on my nipples if it gets cold. If I get too hot, I will go into a private space, remove my jacket, cool down, and then put it back on to go out in public.

29. I also see a lot of officers who wrap their jackets around their waist because otherwise the detainees comment on their butts. But doing that puts them out of uniform, so I have to ask them to stop that. But, it doesn't matter what any of us wear. The detainees still harass every woman they see.

30. The behavior by male detainees toward me is overwhelming, mentally draining, psychologically damaging, offensive, harassing, humiliating, intimidating, and causes me to fear for my safety.

Emotional Impact

31. As a result of the constant sexual harassment, I have suffered severe emotional distress. I don't interact with men the same way I used to. The men I encounter on a daily basis in the Jail are so disrespectful. It has caused me to be more aggressive towards men than I should be. All I can do is rest and try to block the harassment out so that I can function in my life outside of the jail.

9

DocuSign Envelope ID: F7A16DE9-9B08-4F0C-A396-68591855163D

32. I have noticed with the women that work there, you have to have a strong personality. This job takes away your feminity, which carries over into my home life.

33. I am extremely fed up with the action which has been taken to deter sexual harassment within the Jail. All the sheriff has done is allow us to create meaningless write-ups and handcuff them to the back which doesn't stop the behavior. I don't think they have done enough. I feel like I am disregarded and discounted. My well-being doesn't matter – I am just supposed to do my job no matter what happens.

Plaintiffs 001380_REDACTED

Plaintiffs 001380

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

3/17/2019
_____
Date

DocuSigned by:

*Toni Calvin*

413118F803BE425...
_____
Signature

11

Plaintiffs 001381_REDACTED

Plaintiffs 001381

<u>**Declaration of Angela Champ**</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Angela Champ. I was a correctional officer at the Cook County Jail ("Jail") from September 1998 until my resignation on July 21, 2017.

2. During my employment at the Jail, I was assigned to Division 3&8 (female and RTU division), Division 11, and Division 9. I spent approximately 13 years primarily assigned in Division 11. During that time, for a few years, I worked as a movement officer and moved Division 11 inmates through the division to go to medical appointments, the kitchen, the barbershop, or wherever they needed to go. In the last year of my employment, while I was assigned to Division 11, I also worked overtime in Division 9 intermittently for approximately 6 months.

3. In all of my assignments, I had interactions with male inmates on a daily basis. When I was a movement officer, sometimes I would be moving 100 inmates by myself with no backup, and they would verbally sexually harass me, stare at me up and down, and say derogatory things to me. When this occurred, I often called for backup but none would be provided. They called me a "bitch" or a "whore" every day. I was called every name but my own name. While working as a movement officer, I would be assigned to do a perimeter check where I would go around the entire complex to inspect the buildings. Sometimes, I would hear someone screaming my name or yelling what they would do to me sexually. One time, while I was doing a perimeter check, I remember hearing an inmate shout that he would rape me and my daughter.

4. At the Jail, the sexual harassment was very blatant. It was an everyday, common occurrence. Every day, inmates in Division 11 would verbally sexually harass me. Every time I worked in Division 9, inmates would verbally sexually harass me. The inmates would make threats about what they would do to me sexually.

5. Before I would do a count in Division 11, I would announce that a female officer was on the tier. I would hear inmates say, "I hate that bitch" or other derogatory comments. Approximately four out of five days per week, inmates would intentionally expose their penises to me. For example, during the initial count in Division 11, inmates would expose themselves deliberately to me. I also witnessed inmates in the holding cells exposing themselves to other female officers and to the medical staff in the medical area. It felt like I had to deal with it or quit.

1

Plaintiffs 002151

6. I wrote multiple incident reports on inmates who had exposed themselves to me in May and June 2017.

7. In approximately June 2017, I was working in Division 11. I was assigned to the lobby at the time, working overtime. In the visiting cage area, there was an inmate with his penis out masturbating at me. I called the male supervisors over the radio and wrote an incident report on it. I indicated on the report that I wanted to press charges. However, I did not receive a call from a Sheriff's Police investigator on the incident. I do not know if the inmates were disciplined and I continued to see them in Division 11. In fact, one of the inmates later said to me, "That report doesn't mean shit. Nothing is going to happen to me."

8. On the same day, I saw another inmate was masturbating. I called my supervisors over the radio and stated, "I have an inmate that is masturbating, he has ejaculated in the cage." It took a while for the supervisors to show up and it seemed that there was no sense of urgency. I wrote another incident report.

9. Approximately the next day, when I was working the visiting cage in Division 11, I saw an inmate staring at me. I saw that the inmate had masturbated with his penis on the ledge of the visiting cage. I called my supervisors over the radio to inform them of the incident. One of my supervisors stated, "I will do the report," because he did not want me to write the report. I said I would write the report, but he insisted on writing it. I got the feeling that my supervisor was tired of me writing incident reports. I do not recall seeing that incident report.

10. Around the spring or summer of 2017, in Division 9, I heard multiple inmates state that they were going to rape me. I immediately got on my radio and the supervisor that inmates had threatened to rape me. I also notified Lieutenant Alonso Brown of the incident. I may have written an incident report on this incident, but I do not recall.

11. I remember reporting sexual harassment to Lieutenant Rosario. In response, he said something like, "Either you work the job or go home," and "If you don't like the job, you can transfer out."

12. Supervisors know that inmates sexually harass women. I spoke to numerous supervisors over the radio about the sexual harassment, including Sgt. Mayweather, Lt. Rosario, Sgt. James Edwards, Lt. Alonso Brown, Sgt. Tony Gardner, Sgt. Gronke, and Sgt. Rubio. Some of the supervisors seemed to try to hush me or not want me to speak explicitly about what I was seeing.

2

Plaintiffs 002152

13. Inmates in Division 11 were constantly dressed improperly, walking around the dayroom in only a towel or their boxers. I recall numerous supervisors stating that inmates could dress however they wanted because it was their living area.

14. Additionally, the bathrooms and showers in Division 11 were wide open so that we could make sure inmates were not getting beaten, raped, or killed by other inmates in the showers. However, the open bathrooms and showers made it so female correctional officers would see the inmates in the bathroom or shower wide out in the open. Inmates would often masturbate or shower for an extra long time, or make sure that they were facing you, so that the female officer would be forced to see them naked for a long period of time. I even saw inmates walk around with a towel on and intentionally let the towel fall down so that his genitals would be exposed to me.

15. I was never trained on how to respond to sexual harassment from inmates or how to write an incident report on inmate sexual harassment.

16. The only recourse we had in the event of an emergency was an orange button on our radios that can be pressed in an emergency. However, there were a lot of "dead" spots in Division 11 where it was hard to get reception, so the radio would not work.

17. After the multiple exposures to various sexual harassment and the lack of support from supervisory staff, I had enough. I could not live my life predicated on fear. I would not let that place kill me. At some point, it takes a toll. For me, it got to a point where I was so disgusted by the environment that I resigned.

18. It stays with you forever. It impacts your relationships, especially with men. It has had a detrimental impact on me for sure. I got married in 2014 and divorced in 2017. I believe that the sexual harassment affected how I interacted with men.

_Angel C/p_
_____
Angela Champ

April 22, 2019
_____
Date

3

Plaintiffs 002153

# Declaration of Sherita Clay

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Sherita Clay. I have worked as a correctional officer or Deputy Sheriff at the Cook County Jail since 2011. As a correctional officer, my primary job duty is to ensure the safety and security of the Jail.

2. During my time at the Jail, I have been assigned to various locations, including Division 4 (2011-2012), Division 2 (2012-2017), Division 9 (2017), and Division 6 (2018-present) Even though I am assigned to work in certain areas, I can be asked to work overtime in other areas. For example, I have worked overtime in Division 11. Also, in 2012, I was assigned to cover for other officers who are taking annual refresher training and was assigned to Divisions 2, 5, 6, and 11. In all of these assignments, I have had daily interactions with male detainees.

3. Throughout the time I have worked at the Jail, the male inmates have sexually harassed me. The sexual harassment ranges from men making sexual threats, to touching my body, to exposing their penises, to masturbating at me.

4. The inmates talk about my body in a sexual way or make threats frequently. This happened most often when I was assigned to Division 2 between 2012 and 2017. For example, I have heard inmates say to me things like:

   - "If I had the opportunity, I would fuck the shit out of you."
   - "If I catch your ass in the street, I'm going to pull your ass in the alley and rape the shit out of you."
   - "Damn, Ms. Clay, you must have been a stripper before because your ass is big as hell."
   - "Your lips juicy as hell."
   - "You a bald head bitch."
   - "Your lips look like you can suck a mean one."

5. In around 2016, I was escorting male inmates to court movement from Dorm 1 in Division 2 to RTU. One of the inmates I was escorting said something like, "Damn, Officer Clay, your ass got smaller, now how am I gonna fit my big dick in it."

Plaintiffs 002435

6. Another time in 2017, I was in Division 2 where I was covering for someone on a lunch break, I saw an inmate come out of the shower area without a shirt and with soap on his body and he tried to get me to come speak with him. I told him to finish his shower and get dressed. Later, he threatened me. He said to me something like, "Don't sit there and act like I ain't going to take that pussy," and "I paid for the pussy. I can take the pussy." This was threatening sexual harassment. I asked that there be an incident report for this, and I asked to press criminal charges.

7. I try to start the disciplinary process or file incident reports before when an inmate has been verbally disrespectful to me because I'm a woman, like when they call me a bitch or talk about my appearance. Sometimes, I have had a sergeant or lieutenant tell me that I can't write an incident report for this and that inmates won't be moved for this kind of behavior. It can be frustrating.

8. The inmates have also touched me inappropriately. For example, in late 2018, Division 6 in Dorm 2, while giving an inmate his ID an inmate touched my hand slightly. Two days later he caressed my hand again and touched a little bit more of my hand. To me that was sexual advancement. As another example, in Division 2 in around 2016, an inmate rubbed his body up against my body as he was walking by. I thought that this was sexual.

9. Male inmates also expose their penises and testicles to me. This happened the most when I worked in Division 2 and Division 9. The inmates have also masturbated at me. For example, in Division 9, inmates masturbated at me a few times a month, at least once a week, in the shower areas where they know I can see them or in their cells standing by the chuckhole. Also in Division 9, the inmates would call me over to their cells to allegedly ask questions and while I was answering one inmate's question another was jacking off at me.

10. Once in about 2016, when I was working in Division 11, I had to open cells so that they could be cleaned and when I got to one inmate's cell he was looking at me and masturbating. He said something like that he was doing it for me and asked me if I like it. I wrote an incident report, but I don't know what happened to this inmate or if the Jail did anything.

11. I have seen inmates sexually harass other women besides me. For example, I have heard an inmate talk about another officer's chest or breasts. I also remember that an inmate grabbed a social worker's hand in a way that she

Plaintiffs 002436

felt was inappropriate so I wrote an incident report about it. I have heard co-workers at the Jail also talk about inmates masturbating to women in Receiving to the point that you can see semen coming out of their penises.

12. The sexual harassment has changed my job. I am always thinking about what I say and whether it may make an inmate verbally harassment. I have to walk the line of keeping the peace and being too nice so they won't take advantage of me. I feel like I am always on guard in a different way because I'm a woman and you can never underestimate them. The inmates are there for a reason.

13. After the incident where the inmate said to me something like, "If I catch your ass in the street, I'm going to pull your ass in the alley and rape the shit out of you," I was really on edge and had a lot of anxiety for about five months or so. I couldn't sleep well and was very stressed out.

14. Because the inmates sexually harass me, I try to limit the number of questions that I answer from them and try to get back to my assigned area quickly. I also try to avoid shower areas. I dread coming to work and I didn't used to. When I'm not at work and I'm out in public, I watch anybody and everybody. I feel like nobody can be trusted, especially men. When men walk in my direction, I get anxious because I worry that they are used to be an inmate and might try to do something to me. I can't remember all their faces so I put all men in that category.

Plaintiffs 002437

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

05/01/2019
_____
Date

_____
Signature

Plaintiffs 002438

# CRYSTAL COLEMAN DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.   My name is Crystal Coleman. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately February 1, 2010. I have been assigned to various parts of the Jail in my role as correctional officer, including: Division 4 starting in 2010 for about three years; and then I worked in Cermak for about three years. I have been working in Division 6 since 2016.

2.   As a correctional officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my job duties when I am assigned to the post of tier officer in Division 6 include, but are not limited to, supervising detainees' daily activities, inspecting their cells, releasing them from their cells for their daily activities, and putting them back in their cells after my shift.

3.   In all of my assignments, my job has required me to have regular interactions with male detainees.  Now that I work in Division 6, I interact with male detainees every day.

4.   There have been times that male inmates sexually harass me by masturbating at me and making disgusting sexual statements to me and about my body.

Plaintiffs 002154

5.    For example, when I was assigned to a tier in Division 6, and I went to an inmate's cell to tell him to get up and get ready to be moved.  I left, but he knew that I would be coming back to his cell.  When I returned to let the inmate out of his cell, he was standing in the doorway of his cell with his penis exposed and jacking off.

6.    The inmates make sexual comments to me frequently in Division 6.  It happens so often that I have lost track of how many times I have heard such comments. I also experience sexual comments when I'm in Cermak. As an example, detainees frequently call out to me and say things like, "Yo, sexy ass," or "Yo, fine ass."  I have also heard detainees say things like, "Man, Ms. Coleman, if we were out in the world, I would get up with you," and "I could fuck you." These comments about my body and what they want to do to me are threatening and inappropriate.

7.    I have also heard detainees make sexual comments to other female officers, such as, "She's fine as hell," and "I would fuck her."

8.    The Jail has never given me training about how to address the masturbation or how to stop the sexual comments.

9.    The sexual harassment by inmates has impacted the whole work environment for me. For example, we are required to wear our uniforms neat and presentable, however, I never tuck in my shirt because I don't want to outline my figure.  I also wear a sweater all of the time at the jail to try to cover up my body.

10. The sexual harassment by male inmates is upsetting to me and makes me not want to come to work.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/23/2019

_____
Date

_____
Signature

Plaintiffs 002157

# DECLARATION OF LISETTE COLLAZO

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.     My name is Lisette Collazo. I have been a Correctional Officer at Cook County Jail ("Jail") since 2001.  From 2001 to 2018, I was assigned to Division 11. In April 2018, I was assigned to Receiving.  I have been on leave from the Jail since May 2018 because of a knee injury.

2.     As a correctional officer, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my job duties as a correctional officer have included, but have not been limited to supervising inmates in their cells, the day room, the dispensary, the library, and other parts of the Division, and transporting inmates around the Jail and to court. In Receiving, my duties have also included processing inmates in and out of the Jail and cuffing and preparing them to go to court. In all of my job assignments, I have worked daily and directly with male inmates.

3.     During my employment at the Jail, I have frequently and consistently experienced all kinds of sexual harassment by male inmates.  Male inmates have regularly exposed their penises to me and masturbated at me. In Division 11, this happened almost weekly. And even more frequently, male inmates have made harassing sexual remarks to me and about me.

4.     Inmates have masturbated at me so frequently that it's hard to remember specific incidents, especially since I have tried not to think about it because

1

Plaintiffs 002228

it is disturbing. For example, inmates regularly masturbated and exposed themselves to me in the holding area of Division 11, which has several bullpens where inmates wait to be transported in or out of the Division. There, inmates in the bullpens would often masturbate or expose themselves to me as I walked by.

5. From about 2016-2017, I was often assigned to escort inmates to and from the dispensary in Division 11 and guard them while they were waiting for their appointments. Inmates would put their hands down their pants while staring at me, masturbate, and expose themselves to me in the waiting area of the dispensary. Whenever I was assigned to those areas, inmates would masturbate at me at least once a week. I often would respond by telling them to get their hands out of their pants. Sometimes this caused them to stop, but often it did not. In 2017, my supervisor, Lieutenant Wiggins (who is female) instructed me to start handcuffing inmates in the back while they waited for their appointments, which I hoped would prevent them from touching themselves in front of me. Unfortunately, it did not solve the problem because inmates could still reach their hands down their pants and/or touch themselves by jumping through the handcuffs or, if their wrists were small, slipping the cuffs off.

6. The green jumpsuits do not prevent inmates from violating the uniform code, masturbating, or exposing themselves. When I worked in Receiving, I would regularly see inmates returning from court; their green jumpsuits would be opened all the way down to their crotch with their undershirt showing, meaning they could easily move the fabric aside and expose themselves.

Plaintiffs 002229

7.    In 2017, in Division 11, as I was sitting at my desk outside of the door to the tier, I saw through the glass on the door that an inmate was exposing himself out of the chuckhole of his cell, masturbating.  I phoned the master control room, which controls all of the doors and the security cameras in the Division and asked them to zoom in on the cell door so that I would have video evidence of him masturbating. I wrote an incident report and pressed charges, because knowing that I had video evidence made me feel confident that the inmate would be disciplined.

8.    Another incident that stands out to me happened in 2017, after lockup time in Division 11. There was a plumber working on the tier, and I was standing guard in the middle of the day room. I looked in the direction of an inmate's cell and saw that he was masturbating at me through the chuckhole. I told the inmate that I saw what he was doing and that I was going to write him up. He kept masturbating and did not respond. I found the situation particularly humiliating because the plumber was there. I'd become desensitized to the masturbation, but his presence reminded me how degrading it is.  Thankfully the plumber was in a different area, so he did not see or hear anything. I felt extremely upset after this incident and filed an incident report.

9.    I have also frequently endured verbal sexual harassment from male inmates. They regularly made sexual comments about my appearance, such as, "I want to fuck you in your booty," "oh you smell good," "what kind of perfume do you wear," "you look pretty," and much more.  I have heard comments like this multiple times a week while working at the Jail.

3

Plaintiffs 002230

10.     In 2018 in Division 11, I was on a tier and an inmate yelled, "I'm going to knock you out and spit in your booty" from inside his cell at me. I heard the comment loud and clear, but I could not tell which inmate had said it. It frightened me to have to continue to work on that particular tier because I knew that an inmate had threatened me, but I didn't know which one. I was not able to file an incident report since I could not identify the inmate.

11.     I have also observed other women being subjected to verbal sexual harassment. When I have served as backup officer to other female officers, meaning I would accompany them to check in on inmates on the tier, I have often heard male inmates make inappropriate sexual remarks to them.

12.     My female colleagues—including those who work in other divisions—and I have frequently discussed inmate masturbation, exposure, and the sexual harassment we have been subjected to. Based on what I have seen and the conversations I have had with my female colleagues, I think the harassment is widespread and affects women throughout the Jail.

13.     I have felt upset hearing other women talk about the sexual harassment that they, too, have experienced at the Jail and how prevalent it was. These conversations have also left me feeling discouraged about the administration's response.

14.     In or about the end of 2017 or the beginning of 2018, I was cleaning up my desk in Division 11 in preparation for shift change, and I heard another female correctional officer speaking with Lieutenant Siaj, who is male, about an incident

4

Plaintiffs 002231

report she wanted to file on an inmate who had masturbated at her. The inmate was present at the beginning of the conversation, and he was telling the officer and Lieutenant Siaj that "he didn't do it," but the officer said multiple times to Lieutenant Siaj that she was absolutely certain that it was him, and that she wanted to file an incident report. After other officers escorted the inmate away, Lieutenant Siaj appeared to take his side, repeatedly asking my female colleague whether she was "really sure it was him" and if she "really wanted to file an incident report." I suspected that Lieutenant Siaj saying these things because he did not want to deal with her incident report. I found this disheartening and it made me feel like the Jail does not support female employees or take seriously their reports of sexual harassment. Many other female officers have told me that their supervisors told them inmate cells were "living quarters," meaning that male inmates were allowed to masturbate in those areas without consequence, even when they did it purposely in the presence of female officers.

15.     I have found filing incident reports on the Jail's computer system, CCOMS, to be confusing and time consuming. Entering a report requires entering different pieces of specific information in many different fields on the computer. For a simple report of masturbation, filing a report has taken me at least 20-30 minutes, which means that it takes away from the time I am supposed to be supervising inmates. Given how often I have experienced sexual harassment, it would take a significant amount of time to report each individual incident. I received an online training on incident reports but nothing more than that and it was not specific to

5

Plaintiffs 002232

issues of masturbation, indecent exposure or sexual harassment. The online training did not make me feel well-prepared and confident about writing incident reports.

16.  I have never received training regarding how to address sexual harassment by male detainees, decrease the opportunity for detainees to repeat the behavior, or minimize the impact of the behavior.

17.  I don't even remember hearing about inmates masturbating in front of women when I started working at the Jail, and for many years after that. It is significantly more frequent and widespread than it was during my first years on the job.

18.  I feel like I have no options other than to try and tune the sexual harassment out and just do my job. Given that the sexual harassment is so frequent and how time-consuming it is to file an incident report, supervisors have discouraged my colleagues from writing incident reports. It seemed futile to report every incident of sexual harassment.

19.  The sexual harassment has frustrated my ability to do my job. It is a major distraction. In Division 11, I tried to do my work as quickly as possible on the tiers in order to avoid inmates who might sexually harass me (though this was impossible). I also avoided taking large groups of male inmates to the elevators when transporting them to the dispensary, holding area, school, or other activities, because I did not want to get stuck in a confined space alone with them for fear that they might start masturbating. I purposely chose to transport fewer inmates at a time, even if it meant that I had to take multiple trips.

6

Plaintiffs 002233

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct based on my personal knowledge and beliefs.

04/19/2019

_____

Date

_____

Signature

7

Plaintiffs 002234

# LENA COLON DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.    My name is Lena Colon. I am an emergency response technician (ERT) at the Cook County Jail ("Jail"). Prior to becoming an ERT I was a correctional medical technician II (CMT II). I have worked at the Jail since approximately July 2005. I have worked in various parts of the Jail in my role as an ERT, including: Divisions 1, 3, 4, 5, 6, 9, 11, ER, Annex, and Ambulance. I am currently assigned to Receiving.

2.    As an ERT at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my job duties include, but are not limited to, include conducting medical and mental health screenings, responding to emergencies, performing paramedic duties, and transporting detainees to Cermak. In all of these assignments, my job has required me to have interactions with male detainees daily.

3.    The male inmates make sexual comments to me and about my body, expose their penises to me, and masturbate at me.

4.    I have seen detainees masturbating at me while I was responding to an emergency in the tunnel. For example, sometime in early 2018, there were four of us who responded to an emergency call.  When we walked inside the bull pen, I didn't realize there was an inmate standing behind a pole, behind me, masturbating with his penis exposed.  My back was turned to him, so I assumed he was looking at me because my partner told me to step outside the bull while he addressed the inmate.  There were other officers and white shirts who witnessed the incident, but no one addressed the inmate but my partner.

Plaintiffs 002439

5.    As another example, once when I was passing out medication on the tier of Division 9. I was standing in the doorway when I looked up and saw an inmate in his cell looking at me from his cell window and masturbating with his penis out.

6.    I have heard that other women who work at the Jail also experience similar behavior by the inmates. For example, I heard that Nurse Batula was targeted by the same inmate who exposed himself to her several times.

7.    Inmates make offensive sexual comments to me regularly. As an example, I have been called a "bitch" on numerous occasions and told by detainees things like, "You have a fat ass," and they also say, "Suck my dick." This happens to me throughout the Jail, such as in the tunnels when responding to emergencies, in Division 9, and in Receiving.

8.    I have also heard detainees yell sexual threats at me, such as "I'm gonna fuck you."

9.    As another example, approximately 4 years ago I was in Receiving and was conducting an intake on an inmate that was transferred from Kankakee Jail. The inmate became verbally and sexually abusive because he didn't like the questions I was asking and said, "When I get out of here, if I ever see you on the street, I'm gonna grab your little sister and niece and fuck the shit out of them."

10.   How no women officers have been raped in the Jail is beyond me. The frequency of the masturbation and sexual threats have led me to believe that the detainees will rape me or another female correctional officer.

11.   Management is also aware of the masturbation problem because they are sometimes present when incidents happen. For example, a sergeant was present when I responded to a call and was masturbated on by an inmate. I yelled at the sergeant on the scene because he was standing right outside the bull pen close to the inmate that was masturbating, and

2

Plaintiffs 002440

he didn't do anything, his response was something like, "What do you want me to do about it? I didn't see anything."

12. I feel discouraged from reporting incidents about detainee masturbation because it seems to fall on deaf ears. I can't write an incident report myself, but I make note in the EMERS system and it is circulated to several individuals, and nobody responds to them. When I first started working at the Jail, I remember that detainees were cuffed and removed from the tier almost immediately after a complaint, but I don't think that happens now.

13. I also feel discouraged from reporting incidents to lieutenants. For example, a few years ago, after verbally reporting an incident of sexual harassment to a lieutenant, his response was, "he was a 1096." The 1096 code is for mental health detainees. It seems like some people mislabel inmates as having a mental health issue and let inmates get away with masturbation.

14. The CCSO and the County have not given me any training about how to respond if an inmate masturbates at me.

15. Because of the sexual harassment, I try to avoid certain areas of the jail such as Division 9, if possible. It has changed how I act. I swear a lot more and I didn't use to, and I am always on guard. I also wear a smock daily for extra coverage no matter the weather outside or inside of the jail.

16. As a woman, it is offensive and humiliating to be treated this way by the detainees. They think that because they are going to be locked up for a long time, they can treat us without respect.

3

Plaintiffs 002441

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/26/2019

_____

Date

_____

Signature

Plaintiffs 002442

# Declaration of Cheryl Condon

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name Cheryl Condon. I have been a Mental Health Specialist III at the Cook County Jail ("Jail") since March 7, 1994.

2. During my employment at the Jail, I have been assigned to almost all of the divisions. Since 2013, I have been assigned to Division 10 and RTU. For a few months in approximately 2016, I covered staff shortages in Division 9 about 2 days per week. I was assigned to Division 10 from approximately 2015 until December 2017. Then I was assigned to RTU from December 2017 until March 31, 2019. As of April 1, 2019, I am now assigned to Division 10. In the last few years, at least twice per month, I have worked overtime or covered staff shortages in Division 6, Division 9, and Division 10.

3. Detainees verbally sexually harassed me almost every day that I worked in Division 9, Division 10, and RTU. They also do this in the tunnels walking to and from Divisions 9, 10, and Cermak, as well as the Receiving area, where there are many detainees gathered and you will hear verbal sexual harassment all the time. They will say things like, "I've got something for you, it's right here" or "do you want to suck something?" gesturing toward their pants. Detainees call me a "bitch" at least a few times per week. I try not to go through the tunnels and instead try to walk outside in order to avoid the harassment from detainees.

4. I have frequently witnessed detainees masturbating in their pants, and many times they expose their penises to me. When I worked in Division 9, about 3 out of the 5 patients I would see on a given day would be masturbating in their pants while I sat with them in the small meeting rooms in the dispensary. I would always tell the detainees to stop, and if they didn't, I would immediately terminate the interview. I even saw a detainee who was wearing a blue box attempt to pull his jumpsuit open to expose himself. I usually reported this type of behavior to my immediate supervisor in person. I do not know if any correctional officers wrote incident reports when this happened.

5. In Division 10, detainees would masturbate pretty often, as well. For example, one day in approximately 2011 or 2012, I walked out of the MHS office (which is located inside the Division 10 chapel) and I saw the detainees were listening to a female religious speaker. I had to walk through the chapel to get to other areas of Division 10, and as I did, I witnessed a detainee on one of the benches who was masturbating. I went to the nearest correctional

1

Plaintiffs 002443

officer and reported the detainee's behavior. The correctional officer said something to the effect of, "That's what they do." I then went to a sergeant or lieutenant's office on the first floor, whose name I cannot recall, and reported the incident to him. I stated that I wanted to press charges. He said that he would write an incident report on the detainee.

6. I do not know if the detainee was disciplined or if the charges went through. In fact, I frequently saw the detainee walking around Division 10 after that.

7. As another example, I recall a detainee in the segregation unit of RTU exposing his penis and masturbating while I was talking to him. I also witnessed detainees masturbating in their pants numerous times while I was interviewing them, as well as in the group therapy sessions.

8. I almost always report masturbating detainees to a correctional officer on duty. I do not know if the officer writes an incident report, and I doubt that they do. I get the impression that many correctional officers do not want to be bothered with the extra paperwork. I do not usually report the verbal sexual harassment to correctional officers out of fear that I would annoy or bother the officer. I never know where I may have to work with that officer again and I don't want to make enemies.

9. I have witnessed detainees masturbating with their hands in their pants during group therapy in RTU at least six times, and I would tell the detainee to stop or I would call a correctional officer to escort him out of the group therapy session. I remember one time I had to call a correctional officer to escort the detainee out of group therapy because he would not stop masturbating. The detainee called me a "bitch" and other names as he was escorted out. I am almost certain that the correctional officer did not write an incident report on this.

10. In approximately 2016, when I was working in RTU, a detainee spit on my face and called me a "bitch." His spit landed on my arm. I filled out a Staff Safety Incident Report on this incident. The correctional officer on the duty at the time told me that he was writing an incident report, as well.

11. Approximately one week later, I received a call from a Sheriff's Police investigator. I initially stated that I wanted to press charges. He said that they did not have time to pursue my charges, that the detainee was likely going to prison anyway, and made it seem like it was impossible or useless for me to bring charges against the detainee. Thus, I agreed not to press charges.

2

Plaintiffs 002444

12. In fact, I continued to see the detainee after that – neither of us were moved. I made sure not to get too close to him again.

13. Detainees all over the Jail, including Division 6, are improperly dressed and walk around with their hands inside their pants. I have also seen detainees not wearing a shirt or wearing their green jumpsuits open. I always tell a detainee to be properly dressed before I will meet with them.

14. The detainees are not always properly handcuffed, either. Sometimes the male correctional officers do not handcuff the detainees from behind.

15. As a mental health specialist, we have no alarm buttons in the event of an emergency. For example, one day in approximately 2017, in RTU, I was talking to a detainee who was in his cell while other detainees were out in the day room of the tier. When I went to exit the tier, I realized that the male correctional officer on duty was gone and that I had been accidentally locked onto the tier. I rang the door buzzer that is used for entering and exiting the tier, and the correctional officer finally saw me and let me out. The detainees watched me as this happened. I was shaken up and felt very unsafe. I immediately told my supervisor as well as the director of psychiatry to report what happened. I also wrote a written complaint and submitted a report in EMERS.

16. The sexual harassment affects me at work. I'm in the field of counseling and trying to help these patients. I could be in the middle of a conversation where I feel that the patient has started to understand what I'm talking about, and then the sexual harassment makes it all go out the window. You have to act mean or at least have a serious look on your face –even if it's the furthest thing from your personality –to show that you're not going to accept the sexual harassment. It also makes you want to dress so that you won't be perceived as attractive by any stretch of the imagination.

17. I would be remiss to say that the sexual harassment hasn't affected me outside of work, as well. It has noticeably affected my demeanor outside of work. I remember being out with friends and a man complimented me on my appearance, but I couldn't take it that way and reacted with a harsh tone. That's when I realized that I was being affected by the comments from the men at the Jail.

_____
Cheryl Condon

04/28/2019
_____
Date

Decl. Ex. 166

Plaintiffs 002445

DocuSign Envelope ID: 8E2C98BA-A89E-4C5E-8B3A-81540DED082E

# ONEKA CONLEY DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.     My name is Oneka Conley. I am a Correctional Officer at the Cook County Jail ("Jail"). I have worked at the Jail since March 21, 2005. I have worked in various parts of the Jail, including: Receiving (RTC), RTU, and Division 4. Until approximately February 2018, I was assigned to RTC and had been in that assignment for approximately four and a half years. In February, I began working with female detainees in RTU. I also briefly worked with male detainees in approximately April 2018. Then I submitted a hardship to avoid interacting with detainees as frequently. The hardship was granted, and I was assigned to External Operations. The hardship expired in November 2018, and I am currently assigned to RTU.

2.     As a Correctional Officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention and maintaining order at the correctional facility. For example, my job duties in RTC included, but were not limited to: working in the sally port where the detainees exit and return from outlier courts, processing new detainees at the Jail, counting detainees, placing them in cells until they are called to court, and taking them to court. In performing all of these duties in RTC, and at times in other assignments, my job has required me to have interactions with male detainees daily.

Decl. Ex. 167

Plaintiffs 001197

<u>General Description of Harassment</u>

3.    During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis, including regular comments about how they want to sexually assault me.

<u>Specific Incidents of Exposure</u>

4.    I most frequently witness detainees masturbating on the bridge, in the sally port, and in the tunnel. Detainees pull out their penises and masturbate openly. I witnessed detainees exposing their penises or masturbating five days a week, most weeks, during the time I worked in RTC - so often, it felt like the norm.

5.    For example, in approximately March 2017, I witnessed two detainees fondling their penises in front of me while I was working in the sally port. In approximately October 2017, another detainee pulled his penis out and began stroking it in the sally port.

6.    Another example is that, in November 2017, while I was working in the tunnel, two detainees exposed their penises and masturbated in front of me.

7.    Within the last three years, I also remember an incident when a detainee was openly masturbating in front of me when he was in the bullpen on the bridge, and  I was working at a desk right in front of the bullpen.

2

## Witnessing Harassment of Others

8.  I have seen other women who work in the Jail experiencing the same or similar sexual harassment. For example, I recall an incident within the last three years when I witnessed a detainee attempt to expose his penis to me and Officer Barbara Unseld. Officer Unseld and I were standing in the tunnel, where she was posted to monitor detainees going to court. One of the detainees passing by reached for his penis to expose it to us. Officer Unseld instructed him to stop and threatened to spray the detainee with OC spray if he did not comply. The detainee responded by saying, "I'll fuck you." Officer Unseld asked him how he would feel if someone treated his mother the way he was treating her. Fortunately, she was able to deescalate the situation.

## Sexual Comments

9.  I hear crude or sexual comments from male detainees directed at me frequently. For example, detainees have told me, "I'll fuck you," "Baby, you sexy," and have made inappropriate comments about my body. Detainees have made these or similar comments too many times to count. I cannot walk past a bullpen without detainees making such comments.

## Knowledge of Defendants

10. My supervisors know about the detainees' behavior and their sexual comments towards me and other women. Everyone knows about it. For example, I have verbally complained to my supervisors almost every time a detainee exposed himself or masturbated in front of me. For example, I

3

complained to Sgt. McKinney about the incident when the detainee masturbated at me in the bullpen when I was working at the desk.

11.    Supervisors make no effort to discipline the detainees or set consequences for the sexual behavior toward women. My supervisors have done nothing to address the issue when I complained.

Complaints, Ineffectiveness of Complaining, and Discouragement

12.    I have repeatedly verbally complained to my supervisors about the detainees exposing themselves and masturbating. Because my supervisors never did anything when I verbally complained, I felt that writing incident reports would be pointless. I have regularly been told by supervisors that "it's part of the job."

13.    For example, regarding the incident when the detainee masturbated right in front of me when I was working at the desk on the bridge, I tried to get his name so that I could write him up. However, a few minutes after he masturbated in front of me, it was time for him to return to his division. I radioed Sgt. McKinney and asked him to provide me with the detainee's information. He did not give me the information and I was unable to learn the detainee's identity.

14.    I felt discouraged from complaining and writing incident reports regarding detainee masturbation because complaining did not stop the detainees' behavior.

4

15. Incident reports are ineffective because the detainees know that the Jail imposes no real consequences for masturbating at women. Some detainees, usually older men, have commented to me about how bad the masturbation is. They try to discourage detainees from exposing themselves and masturbating at women Correctional Officers and tell them it is disrespectful. The detainees who expose themselves and masturbate at us do not care.

Ineffectiveness of Steps Taken

16. The few steps that have been taken to address the harassment have been ineffective. For example, although known masturbators wear green jumpsuits now, the front is closed with velcro. Detainees walk around with their jumpsuits open and they could easily access their penises.

Lack of Training

17. I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

Impact on Job Performance

18. The sexual harassment changed the way I do my job. I am less hands on and avoid approaching the bullpen because I am afraid that if I get close to the detainees they will expose their penises and masturbate. I look down and

5

Plaintiffs 001201

avoid making eye contact with the detainees. This effects the safety and security of the facility.

19. Furthermore, I always wear a long sweater at work to discourage detainees from looking at me. But, it doesn't matter what I wear. The detainees still harass me.

20. The behavior by male detainees toward me is unwelcome, offensive, harassing, humiliating, threatening, intimidating, and causes me to fear for my safety.

21. During every work day at the Jail, I experience anxiety over potential harassment and exposure. Even if I am not the direct target of detainees' sexually inappropriate behavior on a given day, my female coworkers and I expect that at least one of us will be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse. I think it happens to someone every day. I know I might be sexually harassed or hear about a female coworker being harassed when I walk through the compound to my assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift. This causes constant stress and makes it more difficult for me to focus on my job of keeping everyone at the Jail safe.

Emotional Impact

22. As a result of the constant sexual harassment, I have suffered severe emotional distress. The harassment and masturbation at the Jail makes

6

Plaintiffs 001202

working there extremely stressful. It affects my mental health because it causes me to feel depressed. It has also affected my personal life because I am constantly discussing it with my family, who does not want to hear about me experiencing such vulgar things.  I am extremely fed up with the lack of action to deter sexual harassment within the Jail.

7

Plaintiffs 001203

DocuSign Envelope ID: 8E2C98BA-A89E-4C5E-8B3A-81540DED082E

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/24/2019

Date

DocuSigned by:

*Onexo Conley*

B7F0781E79DB4E0...

Signature

8

Decl. Ex. 174

Plaintiffs 001204

**<u>BETH CONNORS</u>**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Beth Connors. I am an Emergency Response Technician (paramedic) at the Cook County Jail ("Jail"). I have worked at the Jail since February 2013. I was assigned to the med team from when I started until September 2017, and then to Division 11 from September 2017 to present.

2. When I worked on the med team, I passed out medication to inmates in all of the Divisions throughout the Jail. In Division 11, I am based in the dispensary with the rest of the medical staff, where I triage for doctors' visits, draw blood, medically clear inmates who have gotten into fights, and respond to emergencies. In both assignments, I had or have direct contact with inmates on a daily basis.

3. When I was on the med team, I witnessed inmates exposing their penises at me. This happened on a daily basis when I dispensed medication on the tiers in Divisions 9 and 10. It happened so often that no one particular example stands out.

4. Inmates also masturbated at me. This occurred on a daily basis in Divisions 9 and 10. For example, one time in approximately 2016 when I was in the doorway of the Sallyport in Division 9 dispensing medication, I saw six inmates in the Day Room, all masturbating at me at the same time. I asked my supervisor, a correctional medical technician, why female paramedics were medicating tiers that female officers were not allowed to work because the masturbation was so bad. His response made me feel like seeing inmates masturbating was part of the job.

5. Inmates also masturbated at me about once a month when I was on Divisions 1 and 6. Division 1 is shaped like a big U, with cells on the inside of the U, and I would see

1

Plaintiffs 002446

them masturbating at me while I walked the catwalk. In Division 6, the cells were below the stairway, and so when I walked down the stairs, I could see inmates in their cells. They would make sure they were in a convenient location so that I could see them masturbating from the stairs.

6. I wrote reports about the sexual harassment when I first started working at the Jail. I wrote around four different reports, but after I realized that nothing ever happened as a result of the reports, I stopped writing them. I remember I wrote up one inmate after he masturbated at me from his cell in Division 9. I had asked the correctional officer to close his chuckhole so that I wouldn't have to see it, or else I would not dispense medication. The officer went to the inmate's cell and said dismissively, "man, I know you're not doing anything, but she says you have to close the chuckhole." An investigator interviewed me, but he told me that because the inmate was facing hefty charges, "my little charge" didn't mean anything and wasn't worth pursuing.

7. Another time, I wrote an incident report after an inmate in Division 10 was masturbating in his cell early in the morning. I told him that I would not dispense medication because of his behavior, and then he got angry, hit the window, and asked me if I liked to watch him masturbate. I remember that report didn't go anywhere. After that, I stopped writing reports because if I wrote a report every time I witnessed an inmate masturbating at me, I would be writing reports all day long.

8. The sexual harassment was disrespectful, inappropriate, and made me mad. I know other female paramedics felt the same way because whenever we finished dispensing medication, we would all talk about what sexual harassment we had witnessed that day.

2

Plaintiffs 002447

9.     I never received any training about how to handle the inmates who exposed themselves or masturbated at me.  One female correctional officer suggested that I wrap a sweatshirt around my waist or wear something longer, but I didn't take that advice because I was always moving around and I would be too hot with more layers.

Decl. Ex. 177

Plaintiffs 002448

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

05/01/2019

_____
Date

_Elizabeth Connors_

_____
Signature

Plaintiffs 002449

## <u>JESSICA CORREA DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.    My name is Jessica Correa. I am a Court Services Deputy at the Leighton Courthouse ("Courthouse"). I have worked at the Courthouse since August 21, 2006. I have worked in courtrooms 301, 706, and bond court. I have also been assigned to various courtrooms as needed over the years. I am currently assigned to courtroom 301 and have been working there for approximately the past four years.

2.    As a Court Services Deputy at the Courthouse, I am responsible for the safety and security of detainees being held in holding cells behind my assigned courtroom and attorneys who consult with the detainees. I am also responsible for the safety and security of individuals in the courtroom, including courtroom personnel and civilians. For example, my job duties include, but are not limited to: escorting detainees to and from court, securing detainees coming to court and during the court process, and monitoring detainees who are in the holding cells. In all of these assignments, my job has required me to have interactions with male detainees daily.

<u>General Description of Harassment</u>

3.    During my employment at the Leighton Courthouse, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b)

Plaintiffs 001004

male detainees purposefully masturbating at me or in front of me; and (c)
frequent crude or sexual comments.

Specific Incidents of Exposure

4.     I have witnessed detainees exposing their penises or masturbating while they
are in the holding cells behind the courtrooms. I  have witnessed this
behavior four or five times in the last two to five years.  However, I hear
about these incidents happening to other female Court Services deputies so
often, it feels like the norm.

5.     For example, I remember at least two occasions when detainees masturbated
at me when I was walking by the holding cell for courtroom 302, Judge
Gainer's courtroom. The detainees were not assigned to me. I was assigned to
courtroom 301, but I had to walk through courtroom 302's holding area while
performing my duties.

Witnessing Harassment of Others

6.     I have seen other women who work in other positions experiencing the same
or similar sexual harassment throughout the Leighton Courthouse. For
example, I've witnessed detainees make crude or vulgar comments to other
Court Services deputies. I do not remember the details of a specific occasion.

Sexual and Sexually Violent Comments

7.     I hear crude or sexual comments from male detainees directed at me on a
regular basis, too many times to count. For example, detainees regularly call
me "bitch," "cunt," and "whore."  Detainees have also made sexually

Plaintiffs 001005

threatening comments such as, "I'm going to stick this dick in you." Detainees

have also commented: "I would fuck you," "Look at her ass," and "Look at her

tits." Detainees make these types of comments all the time.

Knowledge of Defendants

8.  My supervisors know about the detainees' behavior and their sexual

comments towards me and other women. Everyone knows about it. I have

verbally complained to a supervisor each time a detainee exposed himself or

masturbated in front of me.

9.  For years, supervisors have made no effort to discipline detainees or set

consequences for the sexual behavior toward women. When I complained,

supervisors have responded by making comments such as, "Surprised you're

not used to it by now."

Complaints, Ineffectiveness of Complaining, and Discouragement

10.  I have verbally complained to supervisors about the sexual conduct directed

at me, and nothing has been done. On one occasion I wanted to write an

incident report about a detainee masturbating at me, and I believe I was told

I couldn't because the detainee masturbated out of the view of the security

camera.

11.  For both incidents when detainees masturbated at me in the holding area for

courtroom 302, a supervisor was alerted. For one of the incidents, I reported

the masturbation to the Court Services deputy for courtroom 302. She then

reported it to her supervisor, and the supervisor called me to talk about it. To

3

Plaintiffs 001006

my knowledge, there were no consequences for the detainee. For the other incident, I notified the supervisor for 302 myself. Again, as far as I know, the detainee was not disciplined. These incidents occurred before Court Services deputies could submit our own written incident reports. After trying to complain and getting no results, I felt discouraged from complaining further.

<u>Ineffectiveness of Steps Taken</u>

12. The few steps that have been taken to address the harassment have been ineffective. For example, although known masturbators are supposed to wear green jumpsuits now, the front is closed with velcro and is capable of being opened all the way down to the crotch area. I have even heard some detainees complain that the jumpsuits don't stay closed.

13. When detainees with green jumpsuits were still being held in the same bullpen with other detainees, the detainees in green jumpsuits would switch uniforms with detainees wearing brown CCDOC uniforms. They switched so that the judge would not know they were masturbators. Now, detainees in green jumpsuits are kept downstairs on the bridge, separate from other detainees, and are transported in time for court and then back down again. I don't think that stops them from exposing themselves and masturbating. Detainees walk around with their jumpsuits open and they can easily access their penises.

14. Some detainees who have been disciplined for masturbation and exposure are required to be blue-boxed, a more restricted form of constraints than

4

handcuffing. However, when detainees are blue-boxed, they are often not blue-boxed properly. Their hands are supposed to be shackled at their chest, but instead they are down by their waists where they are still able to access their penises.

<u>Lack of Training</u>

15. I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me. In September 2018, a bulletin about dealing with masturbation was read out during roll call, but I do not consider that real training.

<u>Impact on Job Performance</u>

16. The sexual harassment changed the way I do my job.  For example, I never make eye contact with detainees when I am walking through the holding cell area. I also do not respond to detainees when they speak to me, even if they may just be saying hello or asking a question, because I believe that would open the door for detainees to make sexual or crude comments to me. As a result, I only speak to detainees when I am giving them a direct order.   This affects the safety and security of the facility because it gives detainees the impression that I am not paying attention, they could get away with things, or that I am a pushover.

5

17. The behavior by male detainees toward me is unwelcome, offensive, harassing, humiliating, crude, threatening, and causes me to fear the possibility of detainees exposing themselves and masturbating at me again.

18. During every work day at the Courthouse, I experience anxiety over potential harassment and exposure. Even if I am not the direct target of detainees' sexually inappropriate behavior on a given day, my female coworkers and I expect that at least one of us will be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse. I think it happens to someone every day. I know I might be sexually harassed or hear about a female coworker being harassed when I walk through the compound to my assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift. This causes constant stress and makes it more difficult for me to focus on my job of keeping everyone at the Courthouse safe.

Emotional Impact

19. As a result of the constant sexual harassment, I have suffered emotional distress. The harassment and masturbation at the Courthouse makes working there extremely stressful. It affects my mental health because it causes anxiety, irritation, and anger. It also affects my personal life because I talk about it with my family. I am extremely fed up with the lack of action to deter sexual harassment within the Courthouse.

6

DocuSign Envelope ID: F31AE22D-130D-498E-8659-B3F4951F1C6E

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/11/2019
_____
Date

DocuSigned by:

*Jessica Correa*
_____
9F666A440E0140B...
Signature

7

Plaintiffs 001010

## TANISHA CRIBBS DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Tanisha Cribbs. I am a Correctional Officer at the Cook County Jail ("Jail"). I have worked at the Jail since November 18, 2002. I have worked in various parts of the Jail in my role as a Correctional Officer, including: Divisions 1, 3, and 8; ART; Pre-release; and Receiving. I am currently assigned to Receiving and have been in this assignment for approximately three years.

2.  As a Correctional Officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention and maintaining order at the correctional facility. For example, my job duties include, but are not limited to: processing new detainees at the Jail, performing security functions regarding detainees in holding, and discharging detainees from the Jail. Before several months ago, when the Cook County Sheriff's Office created a transport team, my duties also included transporting detainees to and from court and their housing divisions. In performing all of these duties, my job has required me to have interactions with male detainees daily.

General Description of Harassment

3.  During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I

have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis, including regular comments about how they want to sexually assault me.

<u>Specific Incidents of Exposure</u>

4.  I most frequently witness detainees masturbating while they are in the bullpens waiting to go to court.  Detainees approach the bullpen bars or glass wall, expose their penises, and masturbate. They masturbate right in front of me while I am trying to perform my job duties. In recent years, these incidents happened approximately three to four days a week. Groups of detainees would deliberately masturbate in front of me at the same time. Once one detainee started masturbating, other detainees would say something like, "Oh, that's what we doing," and then a group of them would masturbate. At times, there would be four to five detainees masturbating. I cannot recall the exact number of detainees involved in a specific group masturbation incident; I have lost count of the incidents.

5.  One example of an incident when a detainee masturbated at me while he was in the bullpen is that on February 24, 2017, detainee Redacted masturbated with his penis exposed in male holding and stated to me, "I want to fuck the shit out of you," and "I will suck yo pussy."  On November 3, 2017, Redacted exposed his penis to me again when I was walking in the tunnel with Lt. Greer and Redacted was in bullpen 3.

2

6.    I also have witnessed detainees walking and masturbating or with their penises exposed when they are being escorted to and from holding, court, and their divisions. For example, on September 7, 2017, ▮Redacted▮ and ▮Redacted▮ both exposed their penises to me near Post O in the tunnel while Sgt. Thomas was escorting them back to Division 9 from court; Sgt. Thomas witnessed it. Additionally, detainee ▮Redacted▮ has exposed his penis to me and masturbated as I escorted him, while walking right next to me.

Witnessing Harassment of Others

7.    I know that other women who work for the Sheriff's Office experience the same or similar sexual harassment. For example, Lt. Greer and I were together when ▮Redacted▮ exposed his penis to us on November 3, 2017. Officer Sharon Taylor filed a criminal complaint against ▮Redacted▮ for masturbating at her. Additionally, there have been times when I was walking behind a group of detainees being escorted by other female Correctional Officers and I heard the escorting officers instruct detainees to stop masturbating and say that they would write them up.

Sexual and Sexually Violent Comments

8.    I hear crude or sexual comments from male detainees directed at me frequently when they expose their penises and masturbate and at other times. For example, detainees have told me, "I will rape you," "I would suck your pussy," "I want to fuck you," and "I'll fuck the shit out of you," among

3

other things. I have heard these types of comments from detainees more times than I could count.

9.     One of many specific examples is the February 24, 2017 incident with ███████████, when he stated to me, "I want to fuck the shit out of you," and, "I will suck yo pussy."

<u>Knowledge of Defendants</u>

10.     My supervisors and management know about the detainees' behavior and their sexual comments towards me and other women. Everyone knows about it. For example, Sgt. Issac Thomas knows about the detainees' sexual behavior towards me because he witnessed ███████████ and ██████████ ████ expose their penises to me. In 2017, Sgt. Thomas, Sgt. Hein, and Sgt. Bray signed some of my incident reports. Another way that supervisors know about the detainees' behavior is because they review the camera footage when I and other women file incident reports.

11.     Supervisors make no real effort to discipline detainees or set consequences for the sexual behavior toward women. I have heard supervisors make comments, such as, "What do you want us to do?" "Ain't nothing we can do about it." They tell me to write incident reports, but they know that no meaningful consequences for the detainees will follow.

<u>Incident Reports and/or Complaints</u>

12.     I have verbally complained, written incident reports, and filed charges about the sexual conduct directed at me approximately six or seven times. I believe

4

that each time I wrote a detainee up I also filed a criminal complaint. For example, I filed a criminal complaint against Redacted after he exposed himself and masturbated at me when he was walking right next to me as I escorted him. I was afraid that he would ejaculate on me. I also feared that he and the other detainees I was escorting would attack me. In August 2018, I received notice that my case against Redacted was dismissed because he pled guilty to an unrelated charge.

13. Regarding the September 2017 incident with Redacted and Redacted Reda, I told Sgt. Thomas I wanted to press charges. Sgt. Thomas filed an incident report. On November 3, 2017, I filed a criminal complaint for public indecency against detainee Redacted regarding the incident.

14. I also filed an incident report and reported that I wanted to press charges against Redacted regarding the February 24, 2017 issue. Additionally, I filed an incident report regarding a masturbation incident with detainee Redacted in March 2017.

Ineffectiveness of Complaining and Discouragement

15. After writing multiple incident reports, filing charges, and verbally complaining, I was discouraged from complaining and stopped writing incident reports regarding detainee masturbation for some time because complaining did not stop the detainees' behavior. Since then, I have written reports and filed charges regarding a few incidents that were so blatant and

5

Plaintiffs 001053_REDACTED

Plaintiffs 001053

disrespectful that I could not stand by and do nothing.  Supervisors have told me that there is nothing they can do to stop the detainees.

16.     Incident reports are ineffective because the detainees know that the Cook County Sheriff's Office imposes no real consequences for masturbating at women. Additionally, incident reports are thrown out sometimes. Detainees also know that I and other women Correctional Officers cannot defend ourselves because people have been fired or disciplined for defending themselves against detainees' sexual harassment.

17.     Some detainees, who were not masturbating, have even said they wish they could help stop other detainees' inappropriate conduct. However, they said that they would get in trouble for confronting other detainees and trying to stop them because the security cameras record everything and the detainees can be written up for fighting.

18.     It feels like the detainees have taken over the Jail. Earlier in my career at the Sheriff's Office, there were fewer incidents and detainees were disciplined for inappropriate behavior. Now, I feel that the administration leans toward being on the detainees' side instead of taking steps on our behalf.

19.     The few steps that have been taken to address the harassment have been mostly ineffective. For example, although known masturbators wear green jumpsuits now, the front is closed with velcro. Detainees walk around with their jumpsuits open and they can easily access their penises. Detainees in green jumpsuits are held in a separate bullpen and they continue to

masturbate. I am not personally responsible for that bullpen, but I have heard supervisors who monitor the security cameras call out a detainee masturbating and instruct that they be written up.

Lack of Training

20. I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

Impact on Job Performance

21. The sexual harassment changed the way I do my job. For example, I try to avoid interacting with detainees that I know have prior masturbation incidents. I do not talk to them and request a male officer to perform job duties regarding those detainees, such as escorting them to court. I am afraid of passing by or going near them because I fear the possibility of them ejaculating on me.

22. In general, I look down and try not to look in the direction of male detainees to avoid even making them think I am looking at them. Male detainees view a female looking in their direction as an invitation to masturbate; so, I don't look that way at all. That affects my ability to make the facility safe and secure.

7

23. The behavior by male detainees toward me is unwelcome, offensive, harassing, degrading, humiliating, threatening, inappropriate, disrespectful and causes me to fear for my safety.

24. During every work day at the Jail, I experience anxiety over potential harassment and exposure. Even if I am not the direct target of detainees' sexually inappropriate behavior on a given day, my female coworkers and I expect that at least one of us will be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse. I think it happens to someone every day. I know I might be sexually harassed or hear about a female coworker being harassed when I walk through the compound to my assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift. This causes constant stress and makes it more difficult for me to focus on my job of keeping everyone at the Jail safe.

Emotional Impact

25. As a result of the constant sexual harassment, I have suffered severe emotional distress. The harassment and masturbation at the Jail makes working there extremely stressful. I should not have to come to work and be subjected to detainees exposing their penises and masturbating at me. I have anxiety about the sexual harassment in general, and specifically about the possibility of a detainee ejaculating on me. It affects my personal life. It has changed certain aspects of intimacy with my husband. I am really disgusted

8

Plaintiffs 001056_REDACTED

Plaintiffs 001056

DocuSign Envelope ID: 0748B45D-C3C4-49B6-BF00-71230583247F

with the lack of action to deter sexual harassment within the Jail. We put our lives on the line every day, working with murderers and other detainees with no respect for life, and we are not appreciated.

Plaintiffs 001057_REDACTED

Plaintiffs 001057

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/14/2019

Date

Signature

10

## Declaration of Lashon Crump

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.      I am a Lieutenant at the Cook County Jail. I have been working at Cook County Jail since October 1994. I have been a Lieutenant since February 2017.

2.      I have been assigned to almost every division on the compound except Division 11. I worked in Division 10 for 8 years until February 2017. I worked in Division 4 from approximately August 2017 until November 2017. I worked in Division 9 from November 2017 until December 2017. I was assigned to external operations from December 2017 until February 2018. I have been on the movement team since February 2018 until today.

3.      In all of my assignments, except when I worked in Division 4, I have had interactions with male inmates on a daily basis. Division 4 is a female division, so when I worked there, I would see male inmate workers if they came to Division 4 to drop off food or work on a sanitation detail.

4.      When I first started at the jail in 1994, a male inmate would never say anything to me more than "hi." Or maybe he would talk about his court date. But it was nothing like I experience now. The jail has changed so drastically in the last 5-10 years, it's unbelievable.

5.      Today, I experience sexual harassment, or witness sexual harassment toward other female officers, from male inmates on a daily basis. Every single solitary day. They regularly say things like, "You smell good," "I love you," or if they are angry about something, they say things like, "You're not getting screwed at home," or "You must be on your period."

6.      As an example, in mid-October 2018, I was walking on the bridge to monitor the green jumpsuit inmates going to and from court. One inmate in a green jumpsuit starting saying things to me like, "Ooh Lieutenant Crump, you look good, I haven't seen a woman in a long time." I told him to keep moving. He said "I want to just stand here" so he could look at me, and I could tell he was getting more and more bold, so I insisted that he keep moving.

7.      When I worked in Division 10, I would frequently receive calls that a male inmate was masturbating to female staff, whether it be a correctional officer, medical staff, and even the law librarians.

8.      As a Lieutenant, I have access to video footage of the cameras that monitor the Jail. On more than one occasion, I have seen video camera footage of

1

Decl. Ex. 196

Plaintiffs 001382

inmates masturbating to women employees, nurses, law librarians, and to visitors during visitation hours while other visitors' children were present.

9.     On more than one occasion, I have seen video camera footage of female attorneys getting masturbated at or running away because they just got masturbated at, by a male inmate.

10.     When I worked in Division 10, there was a segregation tier, with one inmate per cell. We were required to do rounds and look in each cell to make sure the inmates were in there. I never wanted to get too close to the cell door because inmates would frequently be standing naked, shouting vulgarities, and putting their penises through the chuckholes.

11.     In approximately 2012, in Division 10, a male correctional officer, Officer Lacey, approached me and warned me that he overheard inmate DeAndre Minor talking about how he hasn't "hit Sgt. Crump in the head" yet, but was planning to. "Hitting me in the head" is slang for masturbating to me. A few days later, an inmate who was working in the division gave me the same warning about Inmate Minor and told me to "be careful."

12.     In approximately 2015 or 2016, I was working on the segregation tier. I heard an inmate calling my name over and over. When I turned around, he had his penis in the chuckhole.

13.     I have witnessed sexual harassment happen to other female staff first-hand. For example, there is a security desk in Division 10, with two bullpens on either side. A lot of the time, there are women working at that desk. Every single day —or nearly every day—that I worked in Division 10, I would see the inmates pulling their penises out and masturbating to the female officer working at the security desk.

14.     Even when I was standing in the interlock, I would see inmates pulling their penises out, masturbating at the correctional officers and masturbating at the nurses.

15.     In Receiving, all the green jumpsuit inmates are placed in one bullpen before they go to court. In mid-July 2018, I was monitoring the court movement in Receiving. There, I witnessed video camera footage of five inmates masturbating to a female Lieutenant who was facing in the other direction. They masturbated until they ejaculated on the floor. I was enraged at the level of boldness and disrespect that the inmates were displaying to women.

2

Confidential - Subject to Protective Order

Plaintiffs 001383

16.     I encourage the female staff members to write incidents up, but female staff will often tell me that they have already written inmates up multiple times and nothing happened.

17.     One example that I will never forget is one day, in approximately 2016, Officer Erica M. Jones told me that she witnessed inmates in Division 9 ejaculating onto the floor and then saying to her, "Don't step on my babies." She conveyed to me that she was worried because other inmates were warning her that the inmates would try to put the semen on her. She asked me if there was any way she could get out of Division 9. I was not only disgusted but also fearful for her. I felt that if the inmates were going to go that far, then the next step would be for them to try to touch her. It was scary and there was nothing I could do by myself to help her, so I felt terrible for her.

18.     One day, in approximately 2014, in Division 10, a female correctional officer, Officer Lorna Willoughby, called me, broken in tears because three inmates had pulled their penises out simultaneously and started masturbating to her. It broke my heart. I immediately went to the tier and asked her to point out the inmates. I also looked at the video camera footage to try to identify the inmates. It's often impossible to write an incident report because you can't identify the inmates. In this case, Officer Willoughby wrote an incident report and a disciplinary report and I signed off on both of them.

19.     It got to the point where Division 10 was so bad, that the directors met with us some time in approximately 2015. Director Tapia asked me what I thought they should do. So I, and Sergeant Majoch, Officer Carfo, and Sergeant Doody wrote ideas on how to fix the sexual harassment problem. We submitted it to Superintendent Walsh. We didn't see any of the changes we suggested implemented.

20.     In approximately May or June 2018, I received a call from a female correctional officer Antionnettea Montgomery saying that a inmate tried to put his penis on her. So I went and watched the video. I witnessed, in the video, the inmate in a green jumpsuit followed her, with his hands handcuffed behind his back. He maneuvered in a way that his hands were in the front, holding his penis out, going toward Officer Montgomery. The State's Attorney called me a few days later and asked me details about the incident. I notified the Director Miller's office. I completed the assessment on the incident report written by Officer Montgomery. I think that the only reason the State's Attorney contacted me within a few weeks was because of this lawsuit. I have never seen them move so fast. But it made me wonder why they didn't act that quickly with the other sexually-harassing inmates (all the guys in green jumpsuits). Had they done this previously, it would have at least sent a message to the inmates that there will be repercussions.

3

Confidential - Subject to Protective Order

Decl. Ex. 198

Plaintiffs 001384

21.     There have been times when I was only female supervisor on the day shift, so any time sexual harassment would happen, the female staff would come to me. I recall Sheriff's Police Officer Tate saying words to the effect of, "You know this isn't going anywhere." It was so frustrating being the only one to console the female staff members. It got the point where everyone wanted to talk to "Sergeant Crump." It was insane. It made me angry and sad – a whole range of emotions. But I am going to always help them and be there for them because I'm a woman, I know how it feels, and we have to stick together. I think the female staff prefer to come to me because I know how it feels, so we are in this together.

22.     The jail is not taking the necessary steps to stop the behavior. I think the green jumpsuits are a joke. They don't stay fastened because of the Velcro. The Velcro in the front is no good. One at least one occasion, I have suggested to Director Miller that inmates with a history of sexual harassment be placed in one-piece jumpsuit that fastens in the back.

23.     I am frustrated that Cook County doesn't take this problem seriously. The inmates know there are no meaningful consequences.

24.     It's like the inmates are always right on every level until they are proven wrong. Even when they are proven wrong, they just get a smack on the wrist. I want to know why they don't they have to register as sex offenders.

25.     I also think these guys should be moved to different county. I think it would send a message that if they do this, they run the risk of being further for your family to visit you and other comforts at Cook County that they're not going to have at other counties. Other counties don't pacify inmates the way Cook County does.

26.     In the 23 years that I have been there, it has never been this out of control.

27.     In my opinion, it takes a bold person to pull out their privates in front of others. So I feel anxiety when the green jumpsuit inmates come around. My heart starts pounding and I feel like I need to be on guard and make sure there is a male staff around me. I would never want to be alone in their presence – they could do anything. They are not afraid to do anything.

28.     It makes you angry. Plenty of times I've gone home so mad because of the way women are treated, and my husband asks what is wrong with me. When I tell him what happens to me at work, he can't believe it. But I've invested so much time at the job. My husband, who is a State Police officer, would always say, "The state would never allow this. I can't believe the Sheriff allows this. Who allows their staff to be treated like this?"

4

Confidential - Subject to Protective Order

Plaintiffs 001385

Lashon Crump

Lashon Crump

2/12/19
Date

5

Confidential - Subject to Protective Order

Decl. Ex. 200

Plaintiffs 001386

# Declaration of Denise Daniel

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Denise Daniel. I have worked as a correctional officer for Cook County Jail ("Jail") since February 28, 1994.

2. I have been assigned to Division 4, Division 10, and Division 11. However, I have worked all over the compound–in almost every building—for overtime. For example, I have done a lot of overtime in Receiving. In the last few years, I have worked overtime in Division 9, Division 11, and Receiving. I am currently assigned to Division 11.

3. The male detainees at the Jail sexually harass me and other women. In all of my assignments, except for the few occasions that I worked overtime in the female divisions, I have had interactions with male detainees on a daily basis.

4. I hear verbal sexual harassment every time I walk on the bridge where there is a large bullpen. Detainees are screaming and hollering verbal sexual harassment, like "I'm going to fuck you," all the time. They do it to every female –they don't care what age you are – if you are a female, they will do it to you. I have heard verbal sexual harassment every time I have worked in Receiving, which I worked for overtime approximately 3 days per week in 2015 through 2017. In the last few years in Division 11, the verbal sexual harassment has gotten better, but it still happens.

5. Detainees often masturbate in the bullpens on the bridge because it is usually crowded with many detainees and it is hard to catch which one is doing it. One time, on the bridge, I witnessed a detainee pull his penis out and masturbate toward a female sergeant, Sergeant Latham saying something like, "This is for you." She responded by saying something like, "Oh my god, not again. I'm sick of this."

6. It's difficult to write up a detainee who is masturbating in those bullpens. Many times, if you see a detainee masturbating in a bullpen on the bridge, he is in a crowd of so many detainees, unless you look closely to identify him or already know the detainee, he could easily slip back into the crowd. Your first reaction is to turn away.

7. The sexual harassment is running rampant in the Receiving area, where detainees from every different division come together to get ready for court. So many men are pulling their penises out and masturbating.

1

Plaintiffs 002450

8. On approximately April 26, 2017, I was conducting a count on a tier in Division 11. Detainee D.G. was standing at the chuckhole with his penis exposed and masturbating. I had not seen him standing at the door previously, so I knew that he had jumped out of his bed and came to the door when I was doing the count to look at me. I wrote an incident report. Redacted

9. In December 2018, in Division 11, I saw a detainee who should have been in a green jumpsuit wearing a brown DOC uniform. I had no idea how he got access to that uniform, so I confronted him to ask why he wasn't in a green jumpsuit. He said, "They don't pay you enough to ask me questions that." I ordered him to put on the green jumpsuit. He would not cooperate, so I had to call my supervisor. The detainee finally complied after about 30 minutes. A few weeks later or so, a female correctional officer in Division 11 told me that the same detainee had exposed his penis and masturbated to her when she was doing her rounds in the tier.

10. In about 2016, in Division 11, I witnessed a detainee put his penis through the chuckhole and was masturbating. It was the end of the day, so I did not report it to my supervisor for fear that my supervisors would be angry if I made them stay later than the end of the shift to complete an incident report. When it was time for the shift change, I warned female correctional officer Yazmin Dorantes that there was a detainee in a certain cell who had exposed himself to me. The next night, one of the other detainees told me that the same detainee masturbated at Officer Dorantes and had officers escort the detainee off the tier.

11. I have experienced men masturbating in their cell at me when I am doing the count. Female officers will announce that a female officer is on the tier, but I make sure to announce extra loud so the detainees know I'm coming. Even despite adequate warning, detainees will intentionally have their penises out, waiting for the female correctional officer. I have been told that as long as detainees are in their personal space, then there is nothing we can do. Even if it is their "home," I always make the announcement whenever I'm on the floor so that the detainees know I'm coming and can make sure they aren't undressed when I come to their cell.

12. I recall sometime during roll call in 2015 or 2016, a lieutenant read from a memo that it was ok for detainees to masturbate in their cell because it is "their private space." All the women officers went into an uproar, knowing how rampant the masturbation issue was. We were all upset and surprised by what was said. I couldn't believe that they would allow this kind of behavior to happen toward us because this is our job.

2

Plaintiffs 002451

13. Around November or December 2016, in Receiving, the other female correctional officers and I put clothing bins in front of the window of the bullpens so that we did not have to see detainees' penises.

14. In about August 2016, I was working in the sallyport of Receiving, where the detainees are loaded in and out of the busses. I was working with another female correctional officer, Intisar Hadad. One detainee pulled his penis out, in front of the cameras, facing us. Officer Hadad was really upset by it. One of the male transportation officers overheard Officer Hadad yelling about the detainee exposing himself, and he laughed at Officer Hadad's reaction.

15. After the incident, a male sergeant came to the sallyport. He discouraged her from writing it up. He didn't directly say not to write the detainee up, but he reminded her that it was the end of the shift and that she has three days to write the report, so she didn't have to stay overtime to write the report.

16. Detainees are frequently improperly dressed. One time in Division 11, I witnessed a detainee who was passing out the breakfast trays, wearing no shirt and his pants hanging low. I told him to put a shirt on, so he immediately turned to go to his cell and put a shirt on. The male correctional officer on duty grabbed the detainee's arm and told him he did not have to do that. He allowed the detainee to remain shirtless. I found that disrespectful and embarrassing that he undermined my authority. He later apologized to me for doing that, but I do not understand why he did that.

17. At some point, I spoke to a Sheriff's Police investigator about one of the sexual harassment incidents that I had reported, although I do not recall which one. I do recall the investigator telling me that there was no point in pressing charges against the detainee.

18. Receiving is a fast-paced place, so it's difficult to stop everything, go to the computer, and write up detainees, especially if multiple detainees are masturbating. Sometimes when multiple detainees are masturbating, I am in the middle of transporting up to 35 to 40 detainees. And, if detainees have to go to court, we are pressed for time. Detainees have to be to court on time or else they will be held in contempt of court. When my shift is over, I feel like I can't do the incident report with the supervisor because I am afraid that they will be angry that I kept them late. I also worry that taking time to write an incident report every time sexual harassment occurs could make me lose track of a detainee –especially because we are so short-staffed.

19. The sexual harassment weighs on you and makes you want to just run up out of that place and throw in the towel. You should not be assaulted and

3

Plaintiffs 002452

disrespected at your place of employment, and then be discouraged from your supervisors and told to turn a blind eye. I believe that's why it has gotten so bad.

20. It seems like every day there is somebody writing a report about one of the guys exposing themselves. It's ridiculous. It's like a zoo. The detainees want to do something to you and you can't do anything about it.

21. It's mentally wearing me down. I am considering seeing a psychologist. I don't talk to my family about any of it because that is the only way I can keep my sanity.

_Denise Daniel_
Denise Daniel

May 01,2019

Date

4

Plaintiffs 002453

## ERIN DELEGAN DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Erin Delegan. I was a Law Librarian at the Cook County Jail ("Jail") from May of 2017 to January of 2018, when I was laid off. I was assigned to work in the libraries in both Division 10 and Division 9, but I have worked in every law library in the Jail. During my training, I shadowed Law Librarians in all divisions, and afterwards I sometimes had to work in the law libraries in other divisions to cover for my colleagues if they called out sick. In each of my assignments, I was exposed to sexual harassment by male detainees.

2. As a Law Librarian at the Jail, I assisted detainees with legal research for their pending court cases. Detainees came to the library in groups. In Division 9, it was usually 5-10 detainees at a time, but could be up to 15 in Division 10. The detainees were escorted to the library by one officer, who was usually male. I also usually had an officer stationed in the library with me, who was sometimes male and sometimes female. My job duties included, but were not limited to: helping detainees locate particular law books, helping detainees determine their charges and the associated penalties, and answering their questions about filling out court forms. In performing all of these duties, my job required me to have interactions with male detainees daily.

## General Description of Harassment

3.     I think I have seen a detainee expose his penis or masturbate in every Division of the Jail.  Detainees would expose themselves and masturbate in the law libraries, while leering at me and making lewd comments which sometimes felt like threats of sexual assault.  I often had to walk through the tunnel on my way to work or to turn in papers at the administration building, and detainees would make lewd comments or expose themselves to me as I passed by.

## Specific Incidents of Exposure

4.     I frequently witnessed detainees masturbating or exposing their penises while they were in the law library waiting for me to assist them.  For example, on August 21, 2017, I was working in the law library in Division 9 when detainee Redacted stood up right in front of me, pulled out his penis, and began to masturbate.  The officer on duty tried telling him to stop, but he wouldn't.  I also remember seeing a detainee expose his penis in the law library in Division 6 when I was training.

5.     I also remember that I tried to stay behind the counter in the law library as much as possible.  Most of the time, when I had to go into the library to hand the detainees something or to get a book, the detainees would all try to get close to me, brush up against me, or touch me.  Sometimes, the officer wasn't paying too close attention, and I felt unsafe.

6.     I also saw detainees exposing their penises or masturbating while I was walking in the tunnel.  Detainees were often escorted through the tunnel in

2

Plaintiffs 001388_REDACTED

Plaintiffs 001388

large groups, escorted by only one or two officers. They would be cuffed together, wrist to wrist, but each still had a free hand, which they used to expose their penis or masturbate.

7.    A few times, I got stuck in the tunnel right next to or near masturbating detainees. If a detainee stopped walking for some reason, the whole group had to stop. When detainees are stopped, female civilian employees are not allowed to walk past them, so I would have to just stand there and wait. The detainees would pull out their penises, touch themselves inside their pants, or mumble lewd comments at me under their breath and I just had to stand there and take it. The officers couldn't help me because they were busy dealing with the detainee who had stopped the movement.

8.    This kind of thing happened a few times, and I can't remember exactly when. However, I do remember one time, around September or October of 2017, I got stuck in the hallway with some of my female colleagues while coming back from dropping off our paperwork at the administration building. The detainees were masturbating and exposing themselves and saying things like, "you know you want this." We were stuck there for half an hour because the detainees wouldn't move. The officers couldn't force them to move because of the use of force policy. They had to wait for backup to finally get the detainees to move, and in the meantime, we weren't allowed to pass.

3

## Witnessing Harassment of Others

9.  I know that other women who work in the Jail experience the same or similar sexual harassment throughout the Jail. I have seen it happen to other female Law Librarians and to other female employees in the tunnel.

10. For example, on June 21, 2017, I was talking to an officer in the law library when my colleague, Muriel Gaulthier, interrupted us to tell the officer that Detainee Redacted was masturbating at her.

## Sexual and Sexually Violent Comments

11. I heard crude or sexual comments from male detainees directed at me every day. Once, a detainee told me, "If I wasn't in here, you'd be my wife and we'd have great babies." While passing me in the hallway, detainees would say things like, "You're looking good," and "I'll fuck you." Sometimes the comments were enough to make me feel afraid of being sexually assaulted.

12. When I started working at the Jail, the CRWs and Officers warned me that if I see a penis or hear lewd comments, I should ignore it. If instead I act offended or react negatively, it would only encourage the detainees to keep going and escalate their behavior.

## Knowledge of Defendants

13. My supervisors know about the detainees' behavior and their sexual comments towards me and other women. I know they know about it because when I was hired, they told me to expect the detainees to expose themselves and

4

masturbate in the library and to expect that they would make inappropriate sexual comments towards me.

14. My supervisors don't do anything to address the sexual harassment, except telling me to write incident reports. However, they also said that sometimes it wasn't worth writing incident reports because it was too much of a hassle and nothing significant would happen to the detainee. The attitude amongst my supervisors is that, "they are already in here, so an additional punishment won't matter."

## Ineffectiveness of Complaining and Writing Reports

15. At first, I complained a lot to my supervisors about the detainees' sexual harassment, but they told me so often that this behavior was to be expected, I ended up venting to my colleagues instead. I felt like any complaints to my supervisors would fall on deaf ears.

16. I was not able to write incident reports in CCOMS. When my supervisors would tell me to write a report on a detainee, I would just fill out a generic form, describing what happened, and email it to my supervisor. I don't know what the supervisors did with those forms.

17. For the incident with ██Redacted██ ██Redacted██ Officer Rodriguez said he would write an incident report in CCOMS for me. I thought he would take care of it properly, detainee ██Redacted██ would be criminally charged, and I would be asked to go to court. Neither Officer Rodriguez, or his supervisor Sergeant Moore,

5

Plaintiffs 001391_REDACTED

Plaintiffs 001391

DocuSign Envelope ID: 7DB4A0CE-F8E6-472E-ADEF-0A761F128C22

asked for my input or statement when preparing the CCOMS report, and I never heard anything about what happened to detainee Redacted.

18. Often, it felt pointless to write up the detainees for masturbation, exposure, or inappropriate comments. Even if I wanted to write them up, sending a generic notice to my supervisor didn't really do anything.

## No Real Consequences or Preventative Measures

19. Detainees were aware of when officers weren't looking and they could get away with exposing themselves to us. Sometimes, they would whisper their crude comments to us so the officers couldn't hear them. If there were actual consequences for their behavior, they wouldn't be doing it.

20. Once, I heard that Toni Preckwinkle said the Jail is the detainees' dwelling place, and it should be expected that if you go into someone's dwelling place, they should be afforded the privacy to do what they want (masturbate). But the detainees do not live in the law library, where I worked.

21. The few steps that have been taken to address the harassment have been mostly ineffective. For example, the detainees who are known masturbators are supposed to wear green jumpsuits to keep them from masturbating and carry a pink ID card so we know they are past offenders. The jumpsuits often have holes in the crotch and the detainees also wear them open with the top pulled down to their waists so they can still easily access their penises.

22. Often, detainees were not dressed according to the dress code policy when they came into the library. For example, once I saw a detainee with a Pink ID who

6

wasn't wearing a green jumpsuit. Also, sometimes the detainees would come into the library in beige pants and a white t-shirt, which is not full uniform.

23. I think that if detainees would be handcuffed to the back while walking, they would not masturbate and expose themselves as often. I also think that repeat offenders should have their privileges taken away.

## Lack of Training

24. I never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me. They sent us a sexual harassment computer module, but it only happened after the preliminary injunction in November of 2017.

## Impact on Job Performance

25. The sexual harassment changed the way I did my job. For example, I tried not to make eye contact with male detainees or look in their direction. I tried to stay behind the counter and not go into the library to help the detainees when they had a question. I felt awkward and uncomfortable because they were leering at me. I couldn't explain things as thoroughly as I wanted to because the more attention I paid to them, the more encouraged they were to make inappropriate comments or become sexually aroused. This made it more difficult for me to help them with their cases.

7

26.    The behavior by male detainees toward me was vulgar, awkward, embarrassing, uncomfortable, offensive, sexually aggressive, degrading, humiliating, inappropriate, disrespectful and caused me to feel uneasy and fear for my safety.

27.    I feel incensed that my colleagues and supervisors expected that the detainees would behave in this way. I should not have been exposed to this in my workplace. My friends and family were shocked by what I had to put up with, which made me realize that this kind of behavior should not be expected.

28.    During every work day at the Jail, I experienced anxiety over potential harassment and exposure. Even if I was not the direct target of detainees' sexually inappropriate behavior on any given day, my female coworkers and I expected that at least one of us would be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse. I used to talk about it with the other Law Librarians and also the CRWs all the time, and we were all anxious and nervous that someone would be sexually assaulted one day. We would exchange stories over lunch or while walking through the compound about our colleagues who were sexually harassed.

Emotional Impact

29.    As a result of the constant sexual harassment, I suffered emotional distress. The harassment and masturbation at the Jail made working there extremely stressful. It affected my personal life. I never knew what to expect on a daily

8

DocuSign Envelope ID: 7DB4A0CE-F8E6-472E-ADEF-0A761F128C22

basis, and I often went home worrying about who was going to be in my library the next day.

30.     When I worked at the Jail, I never felt valued as an employee. They took us for granted and figured we'd deal with this. It was difficult for us to file incident reports and I felt like it was expected that we wouldn't complain.

31.     I don't understand why we were laid off and why there aren't enough officers to keep the detainees under control while Sheriff Dart gets to keep all of his high level staff. Even if I was offered a chance to get my job back, I wouldn't want to go back there until I felt that my workplace would be free of harassment or at least until I knew there were enough front line staff to keep me safe if a detainee tried to sexually assault me.

9

Plaintiffs 001395_REDACTED

Plaintiffs 001395

DocuSign Envelope ID: 7DB4A0CE-F8E6-472E-ADEF-0A761F128C22

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

2/26/2019

Date

Erin Delegan

Signature

10

# Declaration of Denise DeMichel

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Denise DeMichel. I worked as a correctional officer at the Jail from approximately August 7, 1995 until January 6, 2019. Since January 7, 2019, I have been a Sheriff's Police Officer.

2. As a correctional officer, I was assigned to Division 5, Division 3&8, and Division 1. I was assigned to Transportation for approximately 10 years until I became a Sheriff's Police Officer.

3. In Transportation, I had interactions with male detainees at least 60% of the time, depending upon whether or not I was assigned to transport male or female detainees.

4. The frequent sexual harassment seemed to start all of a sudden. Out of the 5 days per week that I worked, at least a few days per week, I would experience male detainees pulling their penises out, even when I was driving the bus. I also experienced detainees making sexual comments, such as comments about me bending over, or other derogatory comments, at least a few days per week.

5. For example, on January 10, 2017, I was transporting one detainee, R.G., a high risk movement detainee, to the criminal court building at the Jail. I was working with Officer D.L. Thomas. During the very short bus ride, the detainee exposed himself and began to stroke his penis. I started swearing at him in order for him to stop. Officer Thomas asked, "What are you doing?" and told me to get off the bus, and I did. Officer Thomas escorted the detainee off the bus, and I escorted the inmate to a holding cell in Receiving. In Receiving, I dialed the courtroom deputies for the courtroom that the detainee was going to. The person who answered the phone identified himself as Judge Gaughn. I told him that R.G. exposed himself to me on the bus on his way to court, and the judge said that I could speak to the State's Attorney.

6. After we escorted the detainee up to the courtroom area and placed him in a holding cell, I met with a State's Attorney, whose name I do not recall. I told him what happened and admitted that I did swear at the detainee. I told the State's Attorney that I wanted to press charges.

7. Leiutenant Martin then contacted me, angry because I had spoken to Judge Gaughn.

Decl. Ex. 215

Plaintiffs 002454

8. I may have heard from the State's Attorney office after that, but I do not recall when. I never heard anything regarding the detainee's charges and I was never asked to come to court to testify.

9. I recall that on one occasion when I reported sexual harassment to my sergeant in Transportation, Sergeant Gronke, he threw up his hands and sighed, as if he was frustrated that I was writing a report. Although I do not recall the specific incident, I remember that I wrote an incident report anyway.

10. As another example, on March 2, 2017, I was standing in receiving before an assignment and I saw Detainee S.P. just going at it – masturbating at me – even though there were other detainees in the bullpen with him. I notified Officer R.K. Brown, who also works in Transportation, and asked him if he could get the detainee's ID. Officer Brown got the detainee's ID and gave it to me to write his information down. I wrote an incident report and indicated that I wanted to press charges.

11. On March 29, 2017, I saw Detainee I.P. standing on a bench in one of the holding cells of Receiving, masturbating while looking at me with his penis out. I wrote an incident report and indicated that I wanted to press charges. On April 6, 2017, I received an email from Investigator Anichini from CIID, saying that he would like to have a phone interview with me in order to take my statement. I do not recall whether that phone interview occurred; however, in July 2017, I received an email from ASA Scott Clark stating that the detainee was going to plead guilty to armed robbery with a firearm and would be receiving a 20-year sentence with the Illinois Department of Corrections. The email also stated that because he was charged with a misdemeanor in my case, the matter would be dismissed and no testimony from me would be required.

12. On April 3, 2017, I was in an elevator with a male correctional officer and two detainees that the officer was transporting. In the elevator, Detainee L.J., who was standing in the corner, pulled his penis out and began masturbating while looking at me. I told the officer that the detainee was exposing himself and masturbating to me and that I planned to press charges. I wrote an incident report and indicated that I wanted to press charges; however, no one ever followed up with me on this incident. I do not know if the detainee was disciplined.

13. On July 3, 2017, I witnessed Detainee L.C., who was sitting in the hallway, put his hands in his pants and begin to pull out his penis. I pointed up to the camera and told him he was on camera and told him to stop. The detainee stood up continued masturbating. I called for Officer Galvez and he witnessed

Decl. Ex. 216

Plaintiffs 002455

the detainee masturbating all the way until he finished. I wrote an incident report.

14. Because of the sexual harassment, I started to feel like my safety was in jeopardy. Then I started feeling angry when felt like I wasn't being validated when I expressed that the sexual harassment was a problem. I felt like the Jail cared more about the detainees' wellbeing than my wellbeing. Even when I believed that nothing would come from writing reports, I still wrote them anyway. But, on the other hand, a lot of times I didn't report the sexual harassment because I didn't want to be perceived as "difficult" or "stirring the pot." A Union steward, Officer Taylor, told me that "higher ups" didn't want me on high risk movements anymore because they knew I would write a report if I experienced sexual harassment.

_Denise DeMichel_
Denise DeMichel

May 1, 2019
_____
Date

3

Plaintiffs 002456

# Declaration of Hazel Derden

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Hazel Derden. I am a Lieutenant at the Cook County Jail ("Jail"). I was a correctional officer from 1993 until I was promoted to Sergeant in 2000. I was promoted to Lieutenant in 2003.

2. I have worked in various parts of the Jail in my role as correctional officer, including: Division 6, boot camp, Division 2, and Division 4. I worked in Division 9 from 2007 until 2011, and again in 2012 until 2016. In between my time at Division 9, I worked in Transportation for a little less than a year. I am currently assigned to Central Kitchen. I have worked overtime in RTU.

3. In all of these assignments, my job has required me to have interactions with male detainees daily.

4. When traveling through the tunnels of the Jail or walking past the bullpens, which I do every day to get to my post, I experience verbal sexual harassment by male detainees anywhere from two to three times a week, or as little as every few weeks – the frequency varies. Usually, I try to wait until detainees are past the tunnel before I go into the tunnel, which allows me to avoid the verbal sexual harassment.

5. I have heard crude sexual comments so many times that I have lost track of how many times I have heard such comments. A detainee has said to me, "I want to eat your pussy," and "I will give you $10,000 if you let me fuck you." I also heard detainees yell sexual threats at me, such as "I'm going to snatch you in my cell," and "Bend over so you can get fucked in your ass." Detainees have made remarks about my appearance, such as "Take that damn sweater off so we can see you," and "Damn, you looking good today." Detainees also stick their tongue out at me and lick their lips, and move their hands up and down outside their clothes as if stroking their penises. I often hear detainees say they l"ove me" or things like, "I'll have your dinner ready when you get home." Even when it's not crude, it's still unwelcome. I have not written a report every time I have heard comments like these because it is time consuming to the point that it would interfere with me doing my job.

6. Numerous times, I have seen detainees masturbating in the tunnels and in the bullpens in the tunnels. When I worked at Division 9, the verbal sexual harassment and masturbation occurred all the time—almost every day. I had to do rounds on the tiers every shift. For example, one time I was doing rounds in Division 9 when three detainees put their exposed penises though

Plaintiffs 002158

the chuck hole and began masturbating at me. The details of this incident are described in paragraphs 7-9 below.

7.     I feel like incident reports are ineffective because the detainees know that the Jail has imposed no real consequences for masturbating at women. For example, in 2016, three detainees were masturbating in their cells on the top deck; two were in a cell together and the third detainee was in a separate cell. They were saying things like, "Bend over," and "Take it up the ass" while they masturbated to me. One of the detainees ejaculated through the chuck hole of his cell and fluid was projected out of his cell. I and other officers extracted all three detainees from their cells and put them in a holding cell in the holding area. I wrote an incident report.

8.     Shortly after, I was told I had to meet with Superintendent Thomas. When I met with the Superintendent Thomas, he said, "I'm trying to do damage control." I asked what I did wrong. He said that one of the directors (either Director Holmes or Director Moreci, I cannot recall) was ordering him to write me up for extracting the detainees from their cells. I explained that it is a standard operating procedure to extract detainees from a cell if they project fluid out of their cell. I knew that if I didn't respond to the detainees' actions swiftly, that it would likely not stop the behavior.

9.     I was originally written up for a three-day suspension for "unsatisfactory work performance" for responding to the inmates masturbating at me. At the disciplinary hearing, the discipline was reduced to a written reprimand. None of the male officers involved in the extraction were disciplined. I do not know if the detainees were disciplined.

10.     I also feel that detainees face inconsistent discipline. For example, female correctional officers tell me that some male supervisors don't take inmate harassment seriously, and will sometimes encourage officers to delete their report by saying things like "Man, we don't have time for that today."

11.     I have observed other women who work in other positions being sexually harassed, and in some cases, because I am shift commander, those type of incidents are reported to me. For example, in approximately 2018, another female lieutenant was passing the kitchen and called me to bring her pepper spray because she was escorting an inmate from Receiving back to Division 9, and he exposed his penis and began to masturbate at her. I met her and handed her the pepper spray. The lieutenant didn't use the pepper spray, but used it as a deterrent so that the inmate wouldn't continue masturbating at her.

2

Plaintiffs 002159

12. Sometime in approximately 2014, a female officer reported to me that she was angry because she had been masturbated at by a detainee, told to write him up the next day, and then told it was too late. As the officer relayed to me, she had been working in the law library of Division 9 and Detainee B.G. was masturbating at the law librarian. The law librarian asked the female officer to remove B.G., so the female officer took B.G. out and was escorting him back to his tier. While she was on the elevator with the detainee, he exposed himself again and began masturbating to her, when was just the two of them on that elevator. She reported the incident to a lieutenant and captain on duty at the time and they told her write the incident report the next day. However, when she went to write the report the next day, the same two supervisors told her it was too late.

13. That detainee always exposed himself to the female officers. Another female officer told me that B.G. had exposed himself to her. I told her she needed to put that in writing so that I could attempt to transfer him. The detainee who I was escorting overheard the conversation, chimed in and said, "I'm glad you told her that because he's been saying that when he gets sentenced he was going to pull a female officer in his cell and rape her." As a result of what that detainee told me, I wrote a letter to the "level system board" (which no longer exists) to make sure that B.G. was moved to a different area in Division 9.

14. Sometime in 2018, a female officer reported to me that she had witnessed a detainee masturbating in Cermak and when she reprimanded him, the male officers told her to "leave him alone and let him finish." She was distraught. I encouraged her to write an incident report, but she felt that it would be useless because of the response from the male officers.

15. As another example, I recall that I had to review camera footage after it was reported that a detainee slapped a female CBM employee (food vendor) on her butt.

16. Management is aware of the masturbation problem because I have written multiple incident reports about detainees masturbating openly and submitted them to the Superintendent and Director. I used to encourage female officers to write up the inmates for verbal harassment and masturbation, but my direct supervisors said it wasn't a strong enough charge and discouraged me from having women write the reports.

17. Detainees masturbate at female employees at the Jail no matter their position. For example, I witnessed a detainee, who was in the process of being transported through the tunnel, masturbating at now former Director Jones Tapia.

3

Plaintiffs 002160

18. As a lieutenant I have witnessed the harassment and other management staff have witnessed it as well. For example, I remember reading a report that a detainee masturbated at a female employee in the presence of a director and sheriff while they were on a tier in Division 9.

19. There was a time we were not allowed to write an incident report when a detainee said sexual things to us or made sexual comments about our bodies. Even if we could write reports about the crude sexual comments, we would not be able to write up every time it happens because it is happening to women all day long.

20. Detainees know there are no real consequences for their actions and have said, in front of the camera "Ain't shit going to happen to us," and "What the fuck you going to do?"

21. Female officers have reported to me that they were told by supervisors that it's not a violation if the detainee was masturbating inside their cell. From what I recall, I believe I have heard superintendents say the same thing in meetings. But the detainees are often sticking their penises *out of* the chuckhole.

22. I believe the sexual harassment problem is escalating and didn't used to be like this. There was a time we were able to write up a detainee an send them straight to the hole, but at one point we were told that we cannot do that anymore; instead, we must wait until after their hearing. Although I know policy allows us to perform cell extractions if detainees project food, liquids, or other items out of their cell, the policy was not applied to me when I extracted a detainee for projecting bodily fluid out of his cell.

23. The lax enforcement of the dress code and jumpsuits contributes to the sexual harassment. The detainees often have the green jumpsuits ripped open. I have seen detainees walking down the tunnel with their jumpsuits open and their bare penis exposed. For example, there should be no way for the detainees to access their penis without having to remove the jumpsuit completely. In addition, I believe detainees should face swift punishment and be referred for prosecution.

24. The Jail has never trained me about how to stop the masturbation or verbal sexual harassment.

25. The sexual harassment impacted my ability to do my job by altering the work environment. For example, I sometimes feel hesitant about engaging with the detainees. I also find myself being angry a lot and frustrated.

4

Plaintiffs 002161

26. As example, I feel that I could not properly reprimand detainees for other violations out of fear that they would begin to masturbate at me. In approximately 2016, in Division 9, I witnessed a detainee in the day room with a sheet over his head. Normally, I would verbally command a detainee to remove the sheet from his head, but because this detainee was masturbating, I wrote an incident report instead, because I did not want to get near the detainee masturbating.

27. Because of the constant sexual harassment, I stopped signing up for overtime. I do my job and I don't volunteer to do anything more because I don't want to be harassed.

28. The sexual comments are degrading, horrible and demoralizing. It makes me not even want to trust men in the street. I not only have to think about the sexual harassment that has happened to me, but I have other women's incidents in my head, as well.

29. The sexual harassment has affected my health and my social life. For example, I gained weight and I'm too exhausted to leave my house once I get there. I don't go out and socialize anymore. I haven't dated in years because of the sexual harassment at the Jail, I don't want anyone to touch me. One time, I received a call from an ex-boyfriend and I got extremely upset because I thought he was masturbating while on the phone – it was horrible. It reminded me of what happens at the Jail. I don't have a desire to do my hair or go shopping. If a stranger approaches me, I get paranoid because I think they were once a detainee at the Jail.

30. Work stressed me out so much that I started using my sick leave. The nights before my shift I am up all night stressing, but my biggest motivation for getting up and going to work is that I know I need the paycheck.

_Hazel Derden_
_____
Hazel Derden
04/24/2019
_____
Date

5

Decl. Ex. 222

Plaintiffs 002162

# QUINTORIA DUNMARS

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.    My name is Quintoria Dunmars. I am a registered nurse at the Cook County Jail ("Jail"). I have worked at the Jail since approximately October 2010. I have worked in various parts of the Jail in my role as registered nurse, including: Division 6; Division 4 and Cermak 4; RTU (residential treatment unit) 3rd, 4th and 5th floor. I am currently assigned to Division 10.

2.    As a registered nurse at the Jail, my job duties include medicating tiers and handling Cermak admissions. I tend the cart and deliver medication to the detainees we medicate four to six tiers daily. In all of these assignments, my job has required me to have interactions with male detainees daily.

3.    During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other women employees. I have experienced: detainees exposing their penises to me; male detainees purposefully masturbating at me or in front of me; and crude or sexual comments on a daily basis.

4.    While working at the Jail, I most frequently witness detainees masturbating with their penises exposed through the window of the bubble where I deliver medication. This occurred about at least once a week. On Division 9, the masturbation occurred more frequently.

Plaintiffs 001397_REDACTED

Plaintiffs 001397

5.  I have also witnessed detainees masturbating at me or exposing themselves to me while I am distributing medication. For example, I work in the glass enclosed room between the tier and control room bubble. The detainees can see me from the day room. They stand in the day room and expose themselves and/or masturbate while I am distributing medication. This happens every time I work in the bubble.

6.  I have observed other women employees being subjected to the same or similar sexual harassment at the Jail. For example, I was doing a walk through with Nurse Orr while she was training, an inmate came to the glass, pulled down his pants and started masturbating while she was administering medication.

7.  I experience crude and sexual comments so frequently that I have lost track of how many times I have heard such comments. As an example, on December 14, 2017, a detainee said to me, "Bitch kiss my ass, you need some dick in your life." I documented this comment on the Staff Safety Incident Report and submitted it via facsimile.

8.  I also hear detainees yell crude comments at me, for example, on October 22, 2016, a detainee said to me "You are a bitch, whore. You are stupid, and I hope you die and get hit by a car on your way home." On another occasion a detainee said to me, "If you had a dick between your legs then you could fucking tell me what to do."

9.  My supervisors know about the detainees' behavior. It is open and obvious. Everyone knows about it.

10. Management is also aware of the masturbation problem because I have written multiple incident reports about detainees masturbating openly. For example, when I witnessed an inmate masturbating at a nurse who was training, I notified the tier officer of the detainees' behavior and asked him to call a white shirt. When a supervisor arrived, I informed him of the detainees' behavior.

11. After writing several incident reports, I was discouraged from writing incident reports about detainee masturbation because the management makes you feel like you are wasting their time. For example, when I was training Nurse Orr an inmate started masturbating in front of her cart, I called for a white shirt. When he arrived he got upset and stated "you stopped the process for this?" Nurse Orr was directed to continue with the process of distributing medicine and then he left.

12. Incident reports are ineffective because the detainees know that the Jail imposes no real consequences for masturbating at women. For example, I've written incident reports about detainees masturbating at me, using crude and sexual comments towards me and the detainees were not meaningfully disciplined. If they went to the hole, they would be released from discipline shortly after their hearing and management allowed them to return to the same tier.

3

Plaintiffs 001399_REDACTED

Plaintiffs 001399

13. As another example, detainee [Redacted] [Redacted] has clapped or masturbated at most of the nurses who work in the building and is constantly cycled back and forth between Division 9 and 10. He is removed for a short period of time and then returned to the Division. He continues to masturbate at women nurses because he knows there are no consequences by the Jail.

14. The few steps that have been taken to address the harassment have been ineffective and predictably so, in my opinion, certain policies and practices contribute to the harassment. For example, the lax enforcement of the dress code. Known clappers are supposed to wear green jumpsuits that button all the way up, but they do not wear the jumpsuits as directed. Often an inmate will have on a t-shirt and tie the arms of the jumpsuit around their waist, which means they can still easily access their penises. Some inmates who are supposed to wear a jumpsuit walk around without a shirt, and others wear thermal underwear and a t-shirt. They can also easily access their penises and masturbate.

15. As another example, detainees are not allowed to get medication if they are not fully dressed wearing a shirt and pants. I will sometimes have to yell at my male escort to not let a detainee out of the day room to enter "bubble" because he is not wearing a shirt or pants.

16. I have never received training regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

4

17. The sexual harassment by the inmates has impacted my ability to do my job by altering the work environment. For example, I limit contact with detainees as much as possible. I try to get them in out of my space with limited communication. I do not wear my ID at work, and I go by an alias Torry because I do not want the detainees to know my name and say it when they are masturbating or saying sexually vulgar things.

18. As another example, I will not enter the day room unless detainees are locked up. I avoid certain areas of the prison such as the basement, also known as tunnel, and the stairs because of limited camera security because I am concerned for my safety due to the sexual harassment.

19. The incident report and discipline process is undermined by the Jail and not effective. For example, in response to being told I was going to give them a charge, some detainees have said "ain't shit going to happen to us," and "I can do what I want to do, nobody going to do anything to me." I have also heard detainees say "I'm not going to go to the hole."

20. The sexual behavior and comments by male detainees toward me is unwelcome, offensive, harassing, humiliating, threatening, and caused me to fear for my safety.

21. I believe the problem is escalating. It didn't use to be like this.

5

Plaintiffs 001401_REDACTED

Plaintiffs 001401

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

February 14, 2019
Date

_[signature]_
Signature

Plaintiffs 001402_REDACTED

Plaintiffs 001402

# GLORIA ELLIS DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Gloria Ellis. I am a Correctional Officer at the Cook County Jail ("Jail"). I have worked at the Jail since December 16, 1989. I have worked in various parts of the Jail, including: Division 4, Division 9, and External Operations. I am currently assigned to External Operations and have been in this assignment for approximately eight or nine years.

2.  As a Correctional Officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention and maintaining order at the correctional facility. For example, my job duties include, but are not limited to: transporting detainees to and from lock up and their divisions and transporting detainees to and from outlier courts. In performing all of these duties, my job has required me to have interactions with male detainees daily.

General Description of Harassment

3.  During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis, including regular comments about how they want to sexually assault me.

Decl. Ex. 229

<u>Specific Incidents of Exposure</u>

4.    I most frequently witness detainees masturbating in the lockup area, on division tiers, and in the Sheriff's Office vehicle when I transport them to outlier courts. Detainees masturbate constantly, like it is a habit.

5.    Detainees pull out their penises and masturbate openly in the Sheriff's Office vehicle. For example, I recall an incident in the vehicle when a detainee exposed his penis, masturbated, and made threatening sexual comments to me, such as, "Bitch, I'm going to fuck you," and, "Put my dick in your ass." That specific incident happened approximately three or four years ago, but this type of behavior has happened more times than I could count.

6.    I also recall an incident when I was working on a tier approximately three or four years ago. I was going to turn the shower on for a detainee. He became impatient and approached me at the door of the tier with his penis out, masturbating.

7.    Another occasion while I was working on a tier, a detainee stood on top of a table and began masturbating at me.

<u>Witnessing Harassment of Others</u>

8.    I have seen other women who work in the Jail experiencing the same or similar sexual harassment. For example, I remember an incident when my female partner and I experienced multiple detainees masturbating in front of us and other female officers in the lockup area. When one detainee starts to masturbate, they all do it. It is a follow the leader of the pack mentality. I do

Decl. Ex. 230

Plaintiffs 001091

not recall the names of the other women who were there. This incident occurred within the last three years.

Sexual Comments or Sexually Violent Comments

9. I hear crude or sexual comments from male detainees directed at me frequently. In addition to the examples I gave regarding the incident in the Sheriff's Office vehicle, I recall a detainee told me, "Bitch, I want to fuck you right now with this big dick." Detainees have made many other crude and sexual comments that are disgusting, and they are difficult for me to repeat.

Knowledge of Defendants

10. My supervisors know about the detainees' behavior and their sexual comments towards me and other women. Everyone knows about it. For example, I have verbally complained to my supervisors and written incident reports several times.

11. Supervisors make no real effort to discipline the detainees or set consequences for the sexual behavior toward women. When I wrote incident reports, there was no outcome; nothing was done about the detainees' behavior.

Complaints, Ineffectiveness of Complaining, and Discouragement

12. I have repeatedly verbally complained to my supervisors and wrote several incident reports about the detainees exposing themselves and masturbating. Supervisors have told me to "just write him up," but they didn't impose consequences after I wrote the detainees up.

3

Plaintiffs 001092

13. For example, I wrote an incident report regarding the detainee who stood on top of the table on a tier and started masturbating at me. I also wrote an incident report regarding the shower incident when a detainee was masturbating as he approached the door to the tier. Additionally, I have written up detainees for masturbating in the holding area. To my knowledge, nothing ever came of these write ups.

14. I felt discouraged from complaining and writing incident reports regarding detainee masturbation because complaining did not stop the detainees' behavior.

15. Incident reports are ineffective because the detainees know that the Jail imposes no real consequences for masturbating at women. Detainees have commented, "You're just wasting your time telling on me." The detainees are emboldened by the lack of consequences and are not afraid of anything happening to them. They laugh at me and think it is funny when I say I will report them.

Lack of Training

16. I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

4

Plaintiffs 001093

<u>Impact on Job Performance</u>

17.    The sexual harassment changed the way I do my job. For example, I avoid eye contact with detainees, and that affects the safety and security of the facility because I do not want to look in their direction.

18.    The behavior by male detainees toward me is unwelcome, offensive, harassing, humiliating, threatening, intimidating, and causes me to fear for my safety.

<u>Emotional Impact</u>

19.    As a result of the constant sexual harassment, I have suffered severe emotional distress. The harassment and masturbation at the Jail makes working there extremely stressful. It affects my mental health; it causes me to feel anxious and depressed. It has also affected my personal life. I go home and think about the disgusting things that took place on the job and have to talk to my family members about it because I am so affected by the behavior. I am extremely fed up and angry about the lack of action to deter sexual harassment within the Jail. Women employees have constantly talked about the masturbation problem to superiors and nobody does anything. It is difficult to do my job without the support of management and supervisors, who are not addressing the problem.

5

Plaintiffs 001094

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/11/2019
_____
Date

DocuSigned by:

_____
5A23CAE49E624AF...
Signature

6

Plaintiffs 001095

## <u>VICKI ESQUEDA DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.    My name is Vicki Esqueda. I am a Correctional Officer at the Cook County Jail ("Jail"). I started working at the Jail on approximately April 5, 2005. I am currently assigned to Transportation, where I have worked since January 2017. I have also worked in receiving, Division 9, and Division 10, Central Kitchen, Division 1, and Division 5.

2.    As a Correctional Officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention and maintaining order at the correctional facility. As an officer assigned to transportation, I am responsible for transporting detainees and staff in vans and busses around the compound and to outlying Courts. I also have to escort detainees in and out of the Courthouses and assure everyone's safety during detainee movement. As a transportation officer, I interact with male detainees regularly, but not every day.

3.    Before I was a transportation officer, my job duties included supervising the detainees on the tiers, escorting detainees as needed throughout the compound, participating in daily counts, and assisting staff in distributing medication, food, and other necessities. In performing those duties, my job required me to have interactions with male detainees on a daily basis.

Decl. Ex. 235

<u>General Description of Harassment</u>

4. During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced detainees exposing their penises to me, male detainees purposefully masturbating at me or in front of me, and crude or sexual comments on a regular basis, which sometimes include threats of sexual assault or rape.

<u>Specific Incidents of Exposure</u>

5. I most frequently witnessed detainees masturbating when I worked on the tiers. In Division 9, detainees would stand in the shower area, looking at me, and masturbating. Sometimes, we'd turn off the water supply to the shower to try to get them to stop. When we did that, some of them would then just walk out into the day room, full of soap, and keep masturbating while watching us.

6. At count time in the divisions, we had to shine a flashlight into the cells to count the detainees. When we looked inside, the detainees would be standing there naked, masturbating.

7. When I sat in the bubble in Division 9, I could see detainees through the chuckholes of their cells, naked, and masturbating while eyeing me through the opening.

8. I remember another time in Division 9. I was working in the bubble, watching the tiers, with another female colleague. A detainee stood on top of

2

a garbage can which was in front of the door to the shower area. He was fully naked, masturbating, and looking at me and my female colleague.

9. Sometime in 2013, I was assigned to take some Division 9 detainees to Court through the tunnel. I was at the back of the line, walking the detainees. One of the detainees turned around, looked at me, and started masturbating.

10. On November 15, 2015, while working in Central Kitchen, I was escorting detainees from Division 2 Dorm 4 to their jobs in Central Kitchen. When we got there, I told them to line up for count, and detainee L. P. started taking off his clothes. I told him he couldn't do that; he started yelling at me and charged me with hands swinging.

11. Once, when I was working in receiving, I had to guard the bullpen where the detainees wait to go to court. We had protective custody detainees in one bullpen, and one of the detainees opened up his yellow jumpsuit, pulled out his penis, and started masturbating. A female sergeant, Sergeant Latham, was there too and he was looking back and forth at both of us.

Witnessing Harassment of Others

12. I have seen other women who work in the Jail experiencing the same or similar sexual harassment. A lot of times in Division 9, we'd have a female officer at each end of the bubble. Often, my female colleague at the other end would yell that someone was masturbating. I would have to go over and look so she had someone to corroborate her story.

3

Plaintiffs 002172

Sexual Comments

13.     I hear crude or sexual comments and threats from male detainees directed at
        me whenever I am around them. They always make inappropriate comments
        about my body, like "look at that ass!" Sometimes they threaten me and say
        things like, "I am going to rape your ass." They also call me names: one
        detainee said something like, "I am going to fuck the shit out of you, little-ass
        white girl." The scariest thing was when a detainee asked me what I would
        do if he grabbed me and pulled me into his cell and shut the door.

Knowledge of Defendants

14.     Supervisors and managers at the Jail know about the detainees' behavior and
        their sexual comments towards me and other women. I complained and wrote
        incident reports that my supervisors saw. All of my supervisors knew what
        was going on. All they would say was "what do you want me to do"? or "write
        'em up."

Ineffectiveness of complaining and writing disciplinary reports

15.     I complained to my supervisors every time a detainee masturbated at me or
        made verbal sexual threats. All they did was tell me to write them up.
        Nothing changed as a result of my complaints.

16.     I have probably filed at least 30 incident reports about detainee masturbation
        and sexual misconduct. Most of them were when I was working in Division 9,
        right when the masturbation got bad, around 2013. I also wrote up some
        detainees while I was working in Receiving. Whether those reports led to

4

Plaintiffs 002173

discipline or not, writing them did not have any effect on the detainees' behavior. Eventually, the detainees ended up right back on the tier where I was working, and some of them masturbated at me again and again.

17.  When I would write them up, I'd have to wait for the hearing board to decide whether they were guilty or not, and in the meantime they would stay on the tier where I was working. After the hearings (and after serving any sentence), they'd come back to the tier and then end up targeting me with name calling and more bad behavior.

18.  Especially in Division 9, to the detainees, Jail is Jail; it doesn't matter to them if they get sent to SMU or not. But they will still threaten me if I send them there because they want to have control.

19.  There was one time I wrote a detainee up for masturbating in the shower in Division 9. The Sheriff's Police came to interview me and asked if I wanted to press charges. When I said yes, they told me that nothing would happen because the detainee had already been shipped. They said that it would be a waste of time and resources to bring him back to Cook County to face criminal charges for public indecency because it was likely any sentence he'd get would run concurrently with his other crimes. In other words, any punishment that could result from a public indecency conviction would be meaningless. I didn't understand why they asked me if I wanted to press charges if they weren't willing to pursue it. I felt discouraged; there was no point in writing him up if this was the outcome.

Decl. Ex. 239

Plaintiffs 002174

20. Once, I complained to a male sergeant. He threw up his hands and said "what am I supposed to do? This is a jail – you're going to see this." Then he asked me, "aren't you used to this by now?"

Ineffectiveness of steps taken

21. The Sheriff has tried putting masturbating detainees in green jumpsuits, but they are not effective at preventing masturbation. They can just take the jumpsuit right off.

Lack of Training

22. I never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

Impact on Job Performance

23. The sexual harassment changed the way I did my job. I often turned my back to the cells in receiving so I couldn't see the detainees masturbate. This made it harder to keep the Jail safe.

24. The behavior by male detainees toward me was offensive, degrading, intimidating, disgusting, aggravating, made me angry, and caused me to fear for my safety.

Emotional Impact

25. As a result of the constant sexual harassment, I have suffered severe emotional distress. It affects my marriage. Sometimes when my husband

Decl. Ex. 240

Plaintiffs 002175

DocuSign Envelope ID: 940349DC-7D56-462C-B894-E75CCE226842

wants to get intimate, I am turned off because his language makes me think of the detainees. I get angry more easily.

26. I don't think the Sheriff has done anything about detainees' masturbating at and sexually harassing the female employees. I don't think he cares. He's never in there to see it. He ignored all of our complaints. It felt like he just wrote us off. The detainees still get visits and commissary after they are disciplined for masturbating. If women press charges for being masturbated at by detainees, the detainees only get time served. There are no real consequences. The Sheriff does not seem to care about how this has impacted us.

7

Decl. Ex. 241

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/25/2019
_____
Date

_____
Signature

8

Plaintiffs 002177

# CATHERINE ESQUIVEL DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Catherine Esquivel. I was a Correctional Rehabilitation Worker ("CRW") at the Cook County Jail ("Jail") from July 10, 2006 through October 1, 2016. For the last year and a half I worked there, I was assigned to Division 6. I have worked all over the Jail, in every division except Division 17. I started in Division 9, and then was assigned to Divisions 2, 3, 4, 5, 6, 8/Cermak, and 11, and substituted in Divisions 1 and 10. Even though I had a regular assignment, I would also often have to cover for colleagues in other divisions.

2. As a CRW at the Jail, I was responsible for responding to the detainees' requests and/or grievances. The detainees would fill out request slips or the officers would call me to deal with particular issues. Each morning, I would collect slips from all my assigned tiers. If there were emergencies, such as threats to the safety of detainees or officers, I would respond right away by going to the superintendent or other staff in charge. Then, I would look for slips that needed referrals to other departments, such as Cermak or the Law Library. Finally, I would take the rest of slips for the tiers I was going to that day, and write the response to each request on the slip. I would go on the tier and call out each slip in alphabetical order to give the detainees the response and explain it to them. Anyone else who needed to ask a question could also

Plaintiffs 002178

approach me and talk to me. In performing all of these duties, my job required me to have interactions with male detainees daily.

<u>General Description of Harassment</u>

3.   During my employment at the Jail, I endured sexual harassment by male detainees, which they directed at me and at other female employees. I experienced many detainees purposefully masturbating at me or in front of me, penis exposure, and heard inappropriate sexual comments directed at me on a regular basis, including some threats of violence.

<u>Specific Incidents of Exposure</u>

4.   I most frequently witnessed detainees masturbating on the tiers. I would call a detainee to meet with me, and he would approach me with both of his hands fully inside the front of his pants, cupping his penis. I would tell him, "take your hands out of your pants," but when he came back his hands would likely be in his pants and on his penis again. This happened frequently and regularly.

5.   Once, when I was working in Division 9, I was collecting paperwork on the tier when a detainee dropped his paperwork through the chuckhole on purpose. I bent to pick it up, and all I saw was his penis—he had stuck his penis right in front of the chuckhole so it would be right in my face as I bent over to pick up the paperwork. When I complained to a coworker, she told me "I have seen a lot of penises here."

Decl. Ex. 244

Plaintiffs 002179

6.   About once or twice a week, I'd get request slips covered by a dried or sticky fluid which might have been semen. It was disgusting.

7.   Within a year or two before I left, incidents were escalating more and more. I remember the female CRW, Ms. McCoy, who was working in Division 10, would tell me that the detainees would just come out on the floor of the tier and expose themselves and start masturbating at the her and the female officers. Incidents became more aggressive; the detainees were masturbating more often and saying more threatening things. I also heard the officers were getting more and more reluctant to address it for fear of being disciplined themselves.

8.   Another time, I checked in with the officer in the bubble in Division 9 to let me in to the tier. The officer was writing up a detainee because he had jumped on top of a table, pulled out his penis, and started masturbating towards the officers in the bubble. He was a repeat offender. I heard he did this on purpose so that he would get disciplinary action and delay his movement into the state system.

Witnessing Harassment of Others

9.   I know that other women who work in the Jail experience the same or similar sexual harassment throughout the Jail. For example, at an inmate services staff meeting sometime around the end of 2015, CRW Dildred McCoy, who worked in Division 10, complained about how bad the masturbation had gotten there, and how increasingly aggressive the detainees were getting. She

3

Plaintiffs 002180

told us that one time she was on the tier and 3 or 4 detainees surrounded her, pulled out their penises, and started masturbating at her all at the same time.

10. Once in another staff meeting, I remember one of my coworkers saying, "We have seen too many penises!"

Inappropriate Sexual and Violent Comments

11. Detainees would often make comments that were said in a creepy and sexually aggressive way. They'd leer at me and say, "Ms. E, you look really good today," or "Ms. E, you smell really nice." Once a detainee asked me, "why don't you have a ring on your finger?" More than one detainee was able to tell me what kind of perfume I was wearing, so I stopped wearing it.

12. In addition, they would often threaten me. A detainee once told me he knew what kind of car I drove. He knew where it was parked. This made me afraid that he would be able to find me when he got out and sexually assault me. For a few years I wouldn't wear my wedding ring because I didn't want detainees to think I was connected to anyone on the outside. I felt like, given the opportunity, these detainees would sexually assault any woman, inside or outside of the Jail.

Knowledge of Defendants

13. My supervisors know about the detainees' sexual misconduct. The CRWs complained about it in staff meetings to John Mueller, our deputy director, and occasionally to Director Olson as well. It's our job to report safety risks,

Decl. Ex. 246

Plaintiffs 002181

so word of the detainees' sexually harassing behavior travelled fast amongst CRWs and our supervisors. Sometimes the supervisors would tell us, "that's the nature of the Jail." Most of the time, they would say that our only recourse was to press charges. I didn't press charges because I didn't want to go home thinking that someone dangerous knew I had pressed charges against them.

<u>Incident Reports and/or Complaints</u>

14. When I complained about the sexual harassment, my supervisors didn't do anything. When my supervisor suggested we file criminal charges, I said, "why is it up to us to file charges once we have reported it?" I thought that the Sheriff's police should help us when these things happened and take responsibility.

15. I was not able to write my own incident or disciplinary reports in CCOMS. The CRWs did not have formal complaint forms either. Towards the end of my employment, they told us we could email incidents to our supervisors, but I do not know what, if anything, ever resulted from sending emails. I was also afraid to file charges against detainees because I felt unprotected. Masturbation had become an acceptable form of intimidation and I was afraid of increased activity and retaliation.

<u>Ineffectiveness of Complaining and Discouragement</u>

16. Shortly after I started working at the Jail, I was sexually assaulted by an officer (Officer Matos). After more than a year, he got fired. At the time, John

5

Plaintiffs 002182

Mueller and Rashonda Carroll were in charge of the department. I was told that Internal Affairs would "take care of it" and there was no need to file charges against him. After interviews with the Inspector General and the Sheriff's police, I realized I could press charges and did. For several years after that, the officers treated me differently and acted angry that I had "put paper" on their colleague. This was my reputation around the compound and the officers treated me differently because I did that. This experience made me fear retaliation for complaining about anything, especially sexual harassment. This experience made me wary of complaining and contributed to my feeling that I was unprotected.

17. The detainees know what they are doing. They masturbate and expose themselves on purpose; it can be really scary.

18. There is a clear lack of response from administrators regarding the sexual harassment of staff by detainees. It should not be our responsibility to take action to stop it – the sheriff's office should protect us.

<u>Lack of Training</u>

19. I never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities for detainees to touch themselves, or how to respond if a detainee tries to rape me. The only thing I was ever told was to report incidents to my supervisor.

6

20.     I heard that before I started, there was an attempted rape of a CRW. Because of this and the training I got when I was hired, I thought there was zero tolerance for sexual harassment. That's why I reported the incident when the officer sexually assaulted me. However, that training did not cover sexual harassment by detainees and did not end up giving me the tools I needed to assist my employer in preventing me from being sexually harassed in the workplace.

Impact on Job Performance

21.     The sexual harassment changed the way I did my job. When I walked around the Jail, I was constantly looking around and staying on high alert. I had to have a heightened awareness of my surroundings. I could not depend on the officers to be watching my back. I changed how I serviced a tier in order to protect myself.

22.     For example, I would never go upstairs on a tier if a detainee was out talking to one of the detainees who was locked in his cell. I would always try to make sure the officer in the bubble had a clear view of me – detainees had to stand in a specific spot so that they weren't blocking the officer's view. Occasionally if the detainees seemed like they were about to masturbate or misbehave, I would just leave the tier. This thwarted my ability to do my job and help the detainees who needed me.

7

Plaintiffs 002184

23. The behavior by male detainees toward me was disgusting, revolting, intimidating, and caused me to fear for my safety. I was always cautiously aware of my surroundings and couldn't understand why this was happening.

Emotional Impact

24. As a result of the frequent sexual harassment, I suffered emotional distress. The harassment and masturbation at the Jail made working there extremely stressful. It's harder to sleep at night. I worry about my daughters' safety because detainees may be able to find me and my family.

25. Once I was in line at the gas station and I heard a man say, "Ms. E!" He tried to engage me in conversation. I didn't remember his name, but he was definitely a detainee at the Jail because no one else calls me that, and told me what division he was in. That was unsettling and frightening.

26. I worry about what I hear my former coworkers telling me about how things are escalating – any one of them could be sexually assaulted. I am insulted that the sheriff did not and does not have our back.

27. The well-being and safety of staff is the Sheriff's responsibility, but he is not taking care of us. I don't know of any other work places where people could act like this and get away with it. I do not understand why the Sheriff cannot press charges when detainees commit the clear offense of public indecency in the Jail. We should not have to take responsibility ourselves for stopping this – once we report it, the Sheriff should be accountable for it.

8

Plaintiffs 002185

28.　We were told that the only thing we could do was go ourselves to press criminal charges. This was never a real option because we are vulnerable; the detainees know who we are and how to find us to retaliate. I felt like the Sheriff was abdicating his role as keeper of the jailhouse.

9

Plaintiffs 002186

DocuSign Envelope ID: 94EB9536-8E66-470D-87F3-793D2521F50B

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/11/2019

Date

Signature

10

Decl. Ex. 252

Plaintiffs 002187

# LYNETTE FLOWERS DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Lynette Flowers. I am a Court Services Deputy at the Leighton Courthouse ("Courthouse"). I have worked at the Courthouse since approximately September 18, 1995. I have primarily worked in courtrooms 307 and 702. I am currently assigned to courtroom 702 and have been working there for the past nine to ten years.

2.  As a Court Services Deputy at the Courthouse, I am responsible for the safety and security of detainees being held in holding cells behind my assigned courtroom, attorneys who consult with the detainees, and individuals in the courtroom, including courtroom personnel and civilians. My primary duties are to escort detainees to and from court and secure and monitor them in holding cells. My job requires me to interact with male detainees on a daily basis.

General Description of Harassment and Specific Incidents of Exposure

3.  Male detainees sexually harass me by exposing their penises to me and routinely making crude or sexual comments. Detainees regularly call me a "bitch," comment about my lips in reference to oral sex and make other sexually explicit comments about my body.

4.  I have witnessed detainees expose their penises while they are in the holding cells behind the courtrooms.. I have observed that within the last few years

Decl. Ex. 253

detainees have become blatant about exposing their penises and masturbating in the holding cells.

5.      I specifically recall two times detainees directly exposed themselves to me in approximately late 2016 or early 2017 while I was walking through the holding area behind courtroom 702. On both occasions, when the detainees saw me, they exposed their penises as I was walking by. I do not recall other specifics of the incidents because I try to block them out.

6.      I try to avoid interaction with the detainees in the holding cells. I can often see their hands on their laps or in their pants rubbing or touching themselves – it is obvious what they're doing. I avoid interacting with them directly because I worry that giving them any attention might make them expose themselves to me again.

<u>Witnessing Harassment of Others</u>

7.      Detainees similarly sexually harass other women who work throughout the Leighton Courthouse. A number of my coworkers have told me about incidents they experienced. For example, Deputy Tawanda Wilson, Deputy Sue Plasencia, and Deputy Esther Jones are some of the women who have told me about exposure or masturbation incidents that happened to them. I also know that Deputy Balvina Ranney has been subjected to the detainees' behavior because she is assigned to the courtroom next to mine. Additionally, I have been with female coworkers when detainees made crude and sexual comments to us.

<center>2</center>

Decl. Ex. 254

## Sexual and Sexually Violent Comments

8.     Detainees have made crude or sexual comments to me more times than I could count. One specific sexual comment I recall is a detainee telling me, "I bet your stuff is good." Detainees also regularly comment on my lips being full and allude to oral sex. Detainees catcall me on a regular basis when I walk by the holding cells.

9.     Detainees frequently call me a "bitch" and have said, "Fuck you, bitch." Often when they call me a "bitch" it is after I ignore them when they try to talk to me. I ignore them because I do not want to be harassed.

## Knowledge of Defendants

10.     My supervisors know about the detainees' behavior and their sexual comments towards me and other women because I complained. I verbally complained to my supervisor when a detainee exposed his penis to me in approximately late 2016 or early 2017. I believe the supervisor I complained to was Sergeant "Q" (Quimque, male).

## Ineffectiveness of Complaining and Discouragement

11.     When I did complain to my supervisor about a detainee exposing his penis to me, he did nothing to immediately address it. I do not know whether my supervisor did anything with my verbal complaint after the fact. No one followed up with me.

## Ineffectiveness of Steps Taken

3

Plaintiffs 001280

12.     The few steps that have been taken to address the harassment have been ineffective. For example, I have seen detainees who are required to wear green jumpsuits walk around with their jumpsuits open. The front is closed with Velcro and detainees can open them all the way down to the crotch.

## Lack of Training

13.     I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

## Impact on Job Performance

14.     The sexual harassment changed the way I do my job.  I am apprehensive at work because I never know what a detainee is going to do next. I avoid interacting with detainees directly unless I have to. I do not make eye contact with them unless I have to get a specific detainee for court. Because I know how often male detainees harass female deputies, I often ask my male partner to escort male detainees, unless he is busy with another detainee.

15.     The male detainees' conduct is offensive, harassing and humiliating to me. I fear what would happen if there was not a cell separating me from the detainees. The thought of that makes me feel unsafe at work.

## Emotional Impact

16.     The sexual harassment has caused me emotional distress.  It makes working at the Courthouse extremely stressful. Law enforcement is already a stressful

Decl. Ex. 256

Plaintiffs 001281

DocuSign Envelope ID: FA1B9169-6A7C-4BDC-9076-A414F936A825

profession. When you have to deal with additional unnecessary issues, like detainees constantly sexually harassing you, it adds to the stress level. The Sheriff's Office should be doing everything in its power to make female employees feel safe and secure in order to do our jobs. A detainee exposing his penis to me at work is the last thing I should have to worry about. I keep what is going on at work bottled up and do not want to discuss it with my family. I am extremely fed up with the lack of action to deter detainee sexual harassment within the Courthouse.

Decl. Ex. 257

Plaintiffs 001282

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

3/1/2019
_____

Date

_____

Signature

6

DocuSign Envelope ID: 43177924-252A-41A9-9AA7-408657B37A6B

## <u>TRACIE GARMON DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Tracie Garmon. I was a correctional officer at the Cook County Jail ("Jail"). I worked at the Jail from approximately June 16, 1998 through June 30, 2018. My last assignment was in External Operations ("Ex-ops"), where I worked since at least 2013. I had various assignments in Ex-ops, including providing security at Stroger Hospital and working at the gates of the Jail compound. I also worked overtime in the divisions during that time, mostly in Division 10 and Division 5. Earlier in my career, I worked in Divisions 4, 6, and 9 and in Receiving.

2.  As a correctional officer at the Jail, I was responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, in Ex-Ops, I checked IDs and searched people coming into the compound and guarded detainees who needed medical attention at Stroger Hospital. When I worked in the divisions, my job duties included keeping detainees safe on the tiers, making sure detainees got the meals and medical attention they needed, and transporting detainees throughout the compound. In these assignments, my job has required me to have interactions with male detainees daily.

Plaintiffs 002193

<u>General Description of Harassment</u>

3.  During my employment at the Jail, I endured sexual harassment by male detainees, which they directed at me and at other female employees. I experienced detainees exposing their penises to me, male detainees purposefully masturbating at me or in front of me, and crude or sexual comments often.

<u>Specific Incidents of Exposure and Harassment</u>

4.  While working in Ex-Ops, I most frequently witnessed detainees masturbating and exposing their penises in the bullpen at Stroger. The detainees who came to see the doctor would wait in the bullpen before and after their doctors' appointments with their penises hanging out of their pants, masturbating at me and other women.

5.  Sometimes I would go to check on detainees in their hospital rooms and they would pull out their penises when they saw me coming.

6.  I once took a detainee to the emergency room in Stroger. This detainee had been in the hole for masturbation. He was laying on a gurney and rubbing his penis. When the female doctor went in to examine him, I heard her cry out and say "don't touch me!" I am pretty sure he grabbed her hand and put it on his penis.

7.  Once in late 2016, I was working overtime in Receiving when a riot almost broke out. For some reason, all of the maximum security detainees from Division 9 and 10 came down to the bullpen on their way to court at the same

Plaintiffs 002194

time. This was not supposed to happen and it created a dangerous situation for us. When the detainees came down, many of them were masturbating and making inappropriate sexual comments while generally refusing to follow orders and lock up in an orderly fashion. We somehow managed to get them all into the bullpen. We did not expect this. We were short-staffed and I was scared that something bad was going to happen.

8.  I often worked overtime in Division 10. At count time, the detainees would stand by the door of the cell with their penis out. They knew I was coming and would purposefully expose their penises when I went by. Sometimes I would creep up quietly to do the count so I wouldn't see as many penises.

Witnessing Harassment of Others

9.  I have seen other women who work in other positions experiencing the same or similar sexual harassment throughout the Jail. My female colleagues and I would discuss our experiences with masturbation and exposed penises all the time.

10. When I worked Ex-Ops at the offsite hospitals, detainees often had to be in a room by themselves with female medical staff, and I heard they would pull out their penises or masturbate. For example, one time at Stroger, the dental X-Ray technician told me that when she was taking x-rays of a detainee, he pulled out his penis.

11. One of my female colleagues who worked at the desk in Stroger wrote a report about how the detainees in the bullpen sexually harassed her all the

3

time.  Every time she looked up, she saw a penis.  I didn't know why she didn't like working at the desk until I covered for her once and saw it myself.

## Sexual and Sexually Violent Comments

12.     I heard crude or sexual comments from male detainees directed at me often. While I was guarding the bullpen at Stroger, detainees would say, "suck my dick!"  Detainees have told me I have a big ass and have said things to me like "I got something for you," or "I have a big dick."

## Knowledge of Defendants

13.     My supervisors know about the detainees' behavior and their sexual comments towards me and other women, because we complain. Everyone knows about it.  Even worse, once we complain, supervisors assign women to work with detainees who are known masturbators, or to take assignments in areas where women are often verbally sexually harassed, without taking any precautions to protect us against sexual harassment

14.     The supervisors make no effort to discipline the detainees or set consequences for the sexual behavior toward women. They don't want to do the work to write the detainee up because it creates a lot of paperwork.  So many inmates are suing officers; the supervisors are scared of making a mistake.  It's safer not to take action.

15.     I have also heard officers tell detainees that if they stop masturbating, they'll get an extra sandwich. Rewarding them is easier than writing them up.

Plaintiffs 002196

<u>Ineffectiveness of Writing Incident Reports and Complaining</u>

16.    Throughout my time at the Jail, it was clear that complaining about things led to retaliation.  When I complained, I would be called lazy or be given bad assignments.  I was afraid to complain about detainee sexual harassment because I felt like my supervisors would just give me bad assignments if I did.  After the near riot in Receiving in late 2016, I especially saw that my supervisors had the power to assign me places that would make my job much harder.

17.    On top of retaliation by my supervisors, I was afraid of how the detainees would react if I wrote them up.  Towards the end of my time at the Jail, it felt like any complaint of poor treatment by a detainee would lead to discipline of the officer who took action against them, even if it wasn't substantiated.

<u>Lack of Training</u>

I never received training from the Jail regarding how to address the masturbation or sexual harassment by male detainees, or how to respond if a detainee tried to rape me. Sometime around late 2017 or early 2018, I went to an inservice class where we were told to write up detainees and file criminal charges for masturbation, but the training did not provide any detail about how to do it or what we should do in those situations.

<u>Impact on Job Performance</u>

18.    The sexual harassment changed the way I did my job.  I had to work really hard not to react to the sexual harassment because if I did, it would escalate.

Decl. Ex. 263

Plaintiffs 002197

It heightened my awareness of my situation and made me always conscious of security measures.

19.   Furthermore, the harassment changed the way I dress at work. I tried to wear a longer jacket that would cover my butt.  But it didn't matter what I wore.  The detainees still harassed me.

20.   The behavior by male detainees toward me was offensive, humiliating, degrading, demeaning, and caused me to fear for my safety. This Jail is completely out of control; I fear it is just a matter of time before someone gets raped.

Emotional Impact

21.   The sexual harassment affected my personal life.  I am afraid of being sexually harassed everywhere I go.  I don't like to go out too much.

22.   The Sheriff should have safety of both the detainees and the officers as his first priority.  However, it seems like he only focuses on the safety of the detainees.  I don't understand his ideology.  It feels like the Sheriff has empowered the detainees to work against us.

Decl. Ex. 264

Plaintiffs 002198

DocuSign Envelope ID: 43177924-252A-41A9-9AA7-408657B37A6B

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/1/2019
_____
Date

DocuSigned by:

*Tracie Garmon*
_____
7265C0E77BB64DB...
Signature

Decl. Ex. 265

Plaintiffs 002199

## GRACIE GARNER DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.      My name is Gracie Garner. I am a Correctional Officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately August of 1995. I have worked in different parts of the Jail over the years (Divisions 1, 5, 6, 11, and Laundry). From 2012 to 2014 or 2015, I was assigned to Division 6. From 2015 until April of 2018, I worked in Division 11. Since then, I have been assigned to the Laundry Department ("Laundry").

2.      As a Correctional Officer, I am responsible for the safety and security of detainees being held in pre-trial detention at the Jail, as well as maintaining order within the facility. My primary duty in Laundry is to collect dirty laundry and distribute clean laundry. When I worked in Division 6 and Division 11, my duties included releasing and returning detainees to their cells, supervising them in the dayroom, counting detainees, and escorting them to and from other locations on the compound. In performing all my duties, I am required to interact with male detainees routinely.

General Description of Harassment and Specific Incidents of Exposure

3.      I have been subjected to sexual harassment by male detainees including exposing their penises, masturbating, and making crude or sexual comments. During the time that I worked in Division 11 from around 2015 to 2018, when

Decl. Ex. 266

I would go around to count the detainees, multiple detainees would stick their penises in the chuckholes. When I ordered the detainees to remove their penises from the chuckhole, they would laugh. In Division 6 when I would go around to count detainees, they would lie on their beds and masturbate or stand by the window masturbating, at times, completely naked. It is shocking.

4.     I recall an incident in Division 11 when a detainee pulled out his penis and masturbated at me in the chuckhole. He almost ejaculated on me. I had to move quickly away from the door before he ejaculated. It was disgusting. I wrote an incident report, but he was about to be shipped to the Illinois Department of Corrections. Nothing happened after that.

Sexual and Sexually Violent Comments

5.     Detainees also sexually harass me by making sexual and sexually violent comments to me. I recall in Division 11, detainees would say things like, "Bitch, you gonna suck my dick," and, "Bitch, I killed my momma. I will rape and kill you."

Knowledge of Defendants, Ineffectiveness of Complaining, and Discouragement

6.     My supervisors know about the detainee sexual harassment because I have complained, both verbally and in writing. Because the detainees have not received any consequences after my complaints, I feel extremely discouraged from complaining.

7.     I feel like it is an accepted idea around the Jail that complaining does nothing and paperwork doesn't go anywhere. Even one of my sergeants told me that an

2

Plaintiffs 002189

incident I wrote up, "ain't going nowhere." I feel that we are expected to get used to it or ignore it; the detainees' sexual harassment of me and my female coworkers has become the norm. The lack of support from my supervisors regarding the detainee sexual harassment discouraged me from writing up detainees.

<u>Lack of Training</u>

8.     I have never received training from the Cook County Sheriff's Office specifically regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me. The general message within the Jail is that the sexual harassment is just something you have to deal with as a part of our job.

<u>Impact on Job Performance</u>

9.     The sexual harassment has changed the way I do my job. I wear loose fitting clothes so that it does not cling to my body and draw attention to me. I also wear a sweater around my waist. When I worked on the tiers, I would always announce myself as a female when I went around to count, hoping that the detainees would get dressed. Instead, they purposefully exposed themselves and masturbated because they knew a female was coming. The detainees' sexual misconduct is really disrespectful.

Decl. Ex. 268

Plaintiffs 002190

<u>Emotional Impact</u>

10.     The sexual harassment has impacted me emotionally. It has changed the way I think about men in general. After experiencing detainees expose themselves and masturbate in front of me, I have become jaded toward all men – as if this is something that all men do. I have to intentionally try not to think about men that way. When I first started at the Jail, I was naïve; now, I am hardened by the detainees' behavior. The Sheriff's Office has not been supportive of me and other female officers regarding the detainee sexual harassment. It is not fair to us.

4

DocuSign Envelope ID: 4ECFFFC0-7BBD-4B92-A00A-AC4279ECFE85

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/15/2019

Date

DocuSigned by:

08B552985AC5434...

Signature

5

Plaintiffs 002192

# PATRICIA DIANNE GREEN

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Patricia Dianne Green. I am a clinical registered nurse at the Cook County Jail ("Jail"). I have worked at the Jail since approximately October 26, 2015. I have worked in various parts of the Jail in my role as clinical registered nurse, including: Divisions 2, 3-North, 10, and 11.  I primarily work in Division 10, where I experience severe sexual harassment.

2.  As a clinical registered nurse at the Jail, I am responsible for the safety and health of individuals being held at the Jail in pretrial detention. For example, my job duties include, but are not limited to, assessing all detainees and their medical needs, especially if they have injuries or have been assaulted.  In Division 10, I am one of two charge nurses assigned to work 3:00 PM-11:30 PM shift (second shift).  When I am charge, I delegate work to other medical staff.  I also visit detainees on the tier with DOC escorts to distribute their scheduled medication.

3.  I experience sexual harassment from inmates at the Jail, including: (a) detainees intentionally exposing their penises to me; (b) male detainees masturbating at me or in front of me on purpose; and (c) crude or sexual comments on a daily basis.

4.  Inmates make frequent comments about wanting to have sex with me.  They ask, "Are you married?" and make comments about what they want to do to

Plaintiffs 001136

me sexually. For example, once an inmate said, "wait till you see my dick," and then went behind the glass partition on the tier and started masturbating at me and rubbing his penis against the glass. I told a male officer and he acted as if he didn't see the male detainee inappropriately exposing himself. Male DOC staff often act like they do not see detainees masturbating. I did not ask for an incident report at this time because I have asked for them in the past and nothing was done about the behavior. It just continues, unresolved, and the male officers escorting me never offer to write incident reports.

5.     On a regular basis, there are about 45 or 50 inmates that need to be medicated on each tier. I, as a county nurse, have to go to at least four tiers per day to medicate detainees. On almost every tier, there are male inmates masturbating every day. I attempt to perform my job duties and avoid eye contact with the inmates masturbating. The mostly male DOC staff does nothing to stop the behavior, even when they are well aware.

6.     Division 10, detainees also make sexual advances at me. For example, one inmate wrote me a letter describing wanting to have sex with me when he is released from the Jail, talking about how he dreams about different ways of having sex with me and wants a relationship with me. I reported this incident to a male sergeant and gave him the letter. I never received a call from an investigator about pressing charges. One of the male officers told me that the detainee was temporarily moved to a different division. Several

2

Plaintiffs 001137

weeks later, I saw the same detainee on another tier while I was covering for another nurse.

7.     I have seen other women being subjected to the same or similar types of sexual behavior. For example, detainees are not disciplined for making comments or lewd gestures.  Besides masturbation, myself and other women working at the jail endure, comments, eye winks, cat calls, and men trying to have sex with us.  I do my best to ignore this behavior; however, it should not be tolerated by the administration or the officers.

8.     Inmates make graphic sexual comments to me on a regular basis. I have even received threats when I attempt to ignore their behavior. When inmates come to the medication cart, I frequently hear sexual comments like, "I wanna fuck you," and "wait till you see my dick," and comments about what inmates want to do to me sexually.  Occasionally, male correctional officer escorts will be in a conversation with the male tier officer instead of paying attention to me or the detainees' sexual comments.  The male detainees go undisciplined.

9.     In my experience, the inmates recognize new faces and seem to be more sexually aggressive with new nurses.  As I have gotten to know some of the detainees, explicit sexual comments have become less frequent.  Still, they continue to masturbate constantly.

10.    I have asked officers to write incident reports for me in the past, especially when I was a new nurse.  After no action was taken to discipline the detainees, I stopped bothering with the reports because I have never received

3

Plaintiffs 001138

any responses. Some of male officers complain that reports require too much paperwork and are too time consuming. I received a call from an investigator once; however, it was six months after the incident occurred and I couldn't remember the detainees name because there had been so many additional incidents since that time. Due to the lengthy response time, I stopped reporting incidents. The sexual behavior is minimized and accepted by management as a part of working at Cook County Jail.

11. Incident reports are ineffective because the detainees know that the Jail imposes no real consequences for masturbating at women. For example, once, when attempting to distribute medication, I witnessed an inmate ejaculating on one of my female coworker's hands. Even in this extreme situation, after reporting the detainee, there was no enforcement of discipline and no change in the workplace environment for women.

12. As nurses, we learned to put the pill cup on the table rather than handing it directly to the detainee because they will touch you sexually or make sexual gestures.

13. After distributing medication, we have to ask inmates to open their mouths to check if they swallowed the pills. Inmates make sexual movements with their mouths during pill check. This behavior by male detainees makes me feel uncomfortable, violated, and disrespected as a nurse. I expect my managers and supervisors to do something to try to help with the sexual harassment, but since they are all women, they are victims as well. The

4

Plaintiffs 001139

sexual harassment and masturbating really affects the women working at the Jail because it is so disrespectful.

14. I have never received training regarding how to address the masturbation or sexual harassment by male inmates, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

15. The Jail's solutions to masturbation and harassment are ineffective. Detainees who have been written up for masturbation are given green jumpsuit and color-coded IDs. This does nothing to deter masturbation because detainees do not wear the jumpsuits properly and the dress code is not enforced.

16. The harassment impacts my ability to do my job by altering the work environment. For example, I limit my contact with inmates as much as possible and I am much more alert to my safety and the lack of safety precautions taken at the Jail. I sometimes dread coming to work because this behavior is so disrespectful and devastating. It is viewed as normal behavior and I often regret coming into work.

17. Because of the constant sexual harassment, I no longer work in Division 10. I moved to Division 11, so I do not deal with masturbation incidents as much anymore. The sexual harassment and exposure are devastating and frustrating. I got very tired of going into work because of the sexual harassment. A lot of the time when I worked in Division 10, if I knew we were overstaffed, I would take a sick day so that I didn't have to deal with the

5

Plaintiffs 001140

18. All nurses deal with sexual harassment and masturbation, so we rotate days off so that each woman gets a break from the sexual harassment. Taking a day off is often helpful and I can relieve some of my work frustration because I am not exposed to the harassment that day. I often get anxiety and slight headaches because of the sexual harassment. I am much more alert. Recently I was moved back to Division 11. I have less exposure to masturbation; however, the sexual harassment continues.

6

Plaintiffs 001141

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

01/15/2019

_____       _____
Date                                    Signature

Plaintiffs 001142

# DECLARATION OF DIONNE GRIGGS

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.    My name is Dionne Griggs. I am a correctional officer/deputy sheriff at the Cook County Jail ("Jail"). I have worked at the Jail since approximately June 1993. I have worked in various parts of the Jail in my role as correctional officer, including: Division 1, 2, 4, 5, 6, 9, 10, and Cermak.  I mainly worked in Division 2 for 24 years until around November 2017 and Division 4 from November 2017 to May 2018.  I currently work in External Operations.

2.    In my job, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, I supervise detainees' daily activities, inspect cells, release detainees from their cells into the day room of the tier, and supervise them when they reenter their cells at the end of my shift.  I am required to have interactions with male detainees all day, every day.

3.     Male detainees sexually harass me. They expose their penises to me, masturbate at me, and sexually threaten me or use sexual language about me.  The verbal sexual attacks happen every day or almost every day.  When I go in for count, inmates make sexual comments about want they want to do me sexually.  I am usually the only female on the officer staff for the count; so, male inmates make comments about sexually assaulting me and having sex with me.

Plaintiffs 001438

4.    Inmates masturbate at me when I enter the dorms for detainee count. Detainees purposely prolong my visit, distract me so I lose count, and purposefully wear their underclothes or no clothes when it is time for me to enter the room. They try to get me to stay longer so they can masturbate at me. Detainees wait to use the restroom until minutes before the count, so that my stay is further lengthened. I must enter the bathroom during count where inmates turn, stare at me and begin masturbating. When I announce that I am entering the tier, inmates build "tents" out of sheets so that I must come closer to remove the sheets and see them naked and masturbating. When I tell inmates to stop and put their clothes on, inmates make statements like, "No, I'm looking at you to get off." They don't do this to male officers.

5.    When I worked in Division 4, male inmates stuffed their chuckholes with uniforms so that officers could not see in, forcing officers to unlock the doors and enter the cells. Daily, I opened the door to the cells and found two male inmates naked masturbating at me.

6.    Inmates also masturbate at me while standing in the day room. Male inmates constantly attempt to enter the day room in their underwear or naked, even though officers insist that they must be dressed in full uniform.

7.    When I enter the dorms and ask inmates to use the restroom before count, inmates often respond, "shut up, bitch," and refuse to use the restroom. Then, they complain and go into the restroom during count and masturbate.

Decl. Ex. 279

Plaintiffs 001439

When I worked in Dorm 4 of Division 2, almost daily, inmates would specifically wait until I entered the dorm for my count to use the restroom or go to the shower so that I would be forced to see them naked.

8. Dorm 4 in Division 2 is one of the worst locations I have worked in at the Jail. There are about 600 male inmates (300 on each side of the walkway) and I was usually the only female officer present. I experienced men exposing their penises and masturbation almost daily in this dorm.

9. I have been pregnant three times while working in the Jail. During my pregnancies, I was never taken off the tier and I experienced extreme sexual harassment from inmates. In 2007, several inmates yelled, "look at this bitch, still working and pregnant," and "I hear pregnant pussy is the best pussy." I interpreted these comments as inmates threatening to rape me.

10. Inmates regularly threaten to sexually assault me. I am always scared to use the tunnels to travel between buildings because hundreds of inmates walk through the tunnels with the supervision of only a few officers. While in the tunnels, I experienced inmates calling out to me and trying to grab me. Inmates have said "Hey beautiful, let me suck on your titty," and "When I get out of here, we gonna tap that bed out."

11. When I escort male inmates to different locations, male inmates brush up behind me while walking down stairs, hit me on the behind, or walk so close that they run into me. Daily, male inmates grab my butt and brush up against my breasts.

3

12. Male lieutenants and sergeants know about the sexual harassment because it happens where they can see it and because I have submitted incident reports. I wrote incident reports about the sexual harassment in 2015 or 2016, but I got discouraged. Sergeants and lieutenants who were men complained about doing the incident report paperwork that I submitted and said that it wasn't going to solve any problems. Some of them have blamed me for the sexual harassment and said things like, "You wanted this because of the way you dress."

13. Sometimes male lieutenants and sergeants contribute to the hostile environment against women. When I worked in Division 2, employees ordered food to be delivered to the Jail for a meal. I found out that male lieutenants and sergeants rubbed female officers' food against their crouches before handing out the food to them. They called this "dicking it." Some of my colleagues saw it happening in the common room area. I don't even know how many times the men did this to my food.

14. Also, male lieutenants, sergeants, and officers in Division 2 transferred phone calls to my work line, and when I answered, instead of being a work call, it was a sex line. I know this happened because the phones rang a single time when employees within Division 2 called me (and the phones had a double ring if it was an outside call). This happened endless times. I finally went on the radio and asked them to stop and the harassing phone calls just got worse. I had to take my phone off the hook because it just kept ringing

4

Plaintiffs 001441

and it was always a sex operator transferred to my line by my male supervisors or male officers.

15. Incident reports are ineffective because the detainees know that the Jail imposes no real consequences for masturbating at women. I heard that the Jail moved all the masturbators on one tier and told them if they don't masturbate, they would receive a pizza party. Regardless of their behavior, the inmates still received the pizza party. This was common knowledge because the Jail transformed the officers' dining room in Division 11 into a kitchen for the inmates to make food. This is where they made the pizza for the inmates that masturbated. Women workers talk about their interactions working with the male inmates in green jumpsuits, especially when the pizza parties were happening, because we want to stay informed on what is happening in the Jail and how to protect ourselves.

16. I have never received training regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

17. The sexual harassment has really impacted me. For example, officers are required to inspect detainees' dorms and check for violations. I inspect detainees' dorms as quickly as possible, because male detainees frequently masturbate toward me when I am in their rooms. I do my best, but I am often less detail oriented because I want to avoid the sexual harassment. It

5

Plaintiffs 001442

is impossible to thoroughly inspect the dorm when you are being subjected to masturbation and sexual threats.

18. The harassment also changed the way I dressed at work. I wear a large sweater for nearly every shift to provide extra coverage in an attempt to try to minimize detainees commenting on my breasts, even though the building is often quite warm. No matter how hot I am, and even though it does not stop the comments, I never remove the sweater. I always try to add extra layers of clothing to cover as much of my body as possible.

19. When I began working at the Jail, I felt much safer. The harassment by inmates and my supervisors makes me feel extremely unsafe. I am scared that I will be in the wrong place at the wrong time and might be sexually assaulted or raped. I am scared that I will not be able to protect myself. I don't know what I would do if an inmate tried to sexually assault me. If I protect myself, I'm worried I will get suspended or fired. I am often scared and confused at work. This is not what I signed up for, and should not be part of my job.

Decl. Ex. 283

Plaintiffs 001443

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

03/31/2019

_____
Date

*Dionne Griggs*

_____
Signature

Decl. Ex. 284

Plaintiffs 001444

## SHELEDA GROVES DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.      My name is Sheleda Groves. I am a sheriff/correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately February 10, 2003. When I first started, I was assigned to work in Division 2. Over the years, I had various other assignments throughout the Jail, including in Division 1, Division 9, and the Residential Treatment Unit (RTU). I am currently assigned to Receiving on the 6-2 shift and have been working there for about four years. I often work with a partner, who is usually also female.

2.      As a correctional officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my job duties include, but are not limited to: processing detainees in and out of the jail, providing security to detainees in the holding cells, transporting detainees to Cermak or to the Bridge, monitoring security cameras, and ensuring detainees receive meals and other necessities while they are waiting to be transported. In all of these assignments, my job has required me to have interactions with male detainees daily.

General Description of Harassment

3.      During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male

Decl. Ex. 285

detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis, including regular comments about how they want to sexually assault me.

Specific Incidents of Exposure and Harassment

4. I most frequently witness detainees masturbating and exposing their penises in the holding cells while they are waiting to go to court. There have been so many incidents of this, it is difficult to pinpoint specific times that it happened.  It was especially bad before they moved the male holding area. The male holding area used to be right against the area where the correctional officers sit.  When detainees from Division 9 were in the holding cell, they would come as close as they could to where me and other female correctional officers were sitting, pull out their penises, and masturbate as a group, in front of everyone.   During around 2016 and 2017, this kind of thing happened too many times to count.

5. Detainees also masturbated or exposed themselves to me when I worked in Division 9.  In Division 9, the day room is right next to where the detainees take showers.  Detainees would come out of the shower area naked, look right at me where I was sitting in the bubble, and masturbate.

6. I have seen other women who work in other positions experiencing the same or similar sexual harassment throughout the Jail. My colleagues and I talk about it all of the time.  I remember one of my partners, Officer Duncan, making several complaints about this behavior.  One time, she was about to

2

Plaintiffs 001083

do a security check of her tier, and a detainee was waiting for her right next to the door while masturbating.

<u>Sexual and Sexually Violent Comments</u>

7. I hear crude or sexual comments from male detainees directed at me frequently. Detainees have said things like, "I want to eat your pussy," and "I want to fuck the shit out of you."

<u>Knowledge of Defendants</u>

8. My supervisors know about the detainees' behavior and sexual comments towards me and other women. Everyone knows about it. The supervisors know because they must sign the incident reports we file when detainees masturbate and expose their penises to us.

9. Supervisors make no real effort to discipline the detainees or set meaningful consequences for the sexual behavior toward women. The discipline detainees have received, if any, isn't effective.

10. I recall a colleague of mine confided to me that a supervisor told her that seeing penises and masturbation was part of our job. That supervisor must not understand the extent of what we deal with day in and day out. There are members of upper management in the Sheriff's Office now who have no experience running a jail and have no respect for the employees. Correctional Officers in other counties have told me that they feel sorry for me because our administration lets the detainees get away with masturbating all the time.

Decl. Ex. 287

Plaintiffs 001084

DocuSign Envelope ID: AB9D5BAC-C6CB-45CA-AEF3-8EB9A58EFF27

<u>Incident Reports and/or Complaints</u>

11. I have filed at least three incident reports about detainees masturbating at me. Each time, I requested to also file criminal charges against the offending detainees. No one from the Sheriff's Office contacted me about my request to file charges and I never heard anything from anyone about how these complaints were resolved. Nothing changed.

<u>Ineffectiveness of Complaining</u>

12. After nothing came of my complaints and write-ups, I felt discouraged from writing reports regarding detainee masturbation. The administration does not support female employees regarding the harassment the detainees subject us to. When I write a report, my supervisors dissect my behavior for possible disciplinary action, but the detainees are handled with kid gloves. Detainees even get rewarded sometimes for their bad behavior. The Sheriff's Office cares more about the inmates than it does about us. If we tell the detainee to stop or the detainee knows we complained, his behavior will escalate. I think complaining only puts your safety and your job in jeopardy.

13. Incident reports are ineffective because the detainees know that this Jail imposes no real consequences for masturbating at women. The detainees know the system and know exactly what they can get away with. They are not penalized enough for this behavior; the punishment they get does not make them change.

4

Plaintiffs 001085

## Ineffectiveness of Steps Taken

14.   Beginning around the end of 2017, known masturbators are supposed to all wear green jumpsuits. However, the green jumpsuits are not effective. The detainees wear them off their shoulders and around their waists, and can still easily access their penises.

## Lack of Training

15.   I have never received training from the Jail regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me. In my opinion, it is offensive that there is even a need for such training. This kind of behavior should not be allowed. The Sheriff's Office should never have permitted it to reach the level that it is.

16.   At this point, I am concerned that any training they would give us would have the purpose of protecting the Sheriff's Office and the detainees, not female employees. The policies they have put out so far are not designed to protect us. Now, it would be difficult to trust any training the Sheriff's Office gives us on how to deal with this behavior because they have allowed it to go on for so long.

## Impact on Job Performance

17.   The sexual harassment changed the way I do my job. I feel uncomfortable around male detainees and avoid interacting with them, if I can. I do not make eye contact with them because I am afraid of what they will say and do.

Decl. Ex. 289

Plaintiffs 001086

I won't allow myself to be put in a one-on-one situation with a male detainee anymore. I won't speak to male detainees because I don't want to hear the inappropriate sexual comments that they make. As a result, I am likely less aware of potential dangers, which affects my ability to help make the Jail as safe as possible. A part of my job is to keep the detainees safe, but I can't do that as well anymore because of the sexual harassment.

18. The detainees target me just because I am a woman. It doesn't matter how I dress or how I act. If they see me, they will start making offensive comments and/or pull out their penises. I am afraid of being raped. It is only a matter of time before a detainee actually rapes someone.

19. The behavior by male detainees toward me is unwelcome, offensive, harassing, humiliating, demeaning, threatening, and causes me to fear for my safety.

20. During every work day at the Jail, I experienced anxiety over potential harassment and exposure. Even if I was not the direct target of detainees' sexually inappropriate behavior on a given day, my female coworkers and I expected that at least one of us would be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse. I think it happened to someone every day. I knew I might be sexually harassed or hear about a female coworker being harassed when I walked through the compound to my assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift. This caused constant

Plaintiffs 001087

stress and made it more difficult for me to focus on my job of keeping everyone at the Jail safe.

<u>Emotional Impact</u>

21.  As a result of the constant sexual harassment, I have suffered severe emotional distress.  The harassment and masturbation at the Jail makes working there extremely stressful.

22.  The Sheriff's Office has done nothing to deter the sexual harassment towards women by detainees in the Jail.  I feel betrayed.  I feel lied to.  I feel unprotected.  I am helpless to change my situation.  I am angry because I want to defend myself, but if I do, I might get attacked by an inmate *and* lose my job.  I feel like I don't have any control over what happens in my workplace.

Plaintiffs 001088

DocuSign Envelope ID: AB9D5BAC-C6CB-45CA-AEF3-8EB9A58EFF27

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/15/2019
_____
Date

DocuSigned by:

S. M. G.
_____
38C91BF814D3418...
Signature

8

Plaintiffs 001089

## Toya Hairston Declaration

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. I have worked at the Cook County Jail ("Jail") since approximately November 13, 2006. I have been assigned to work in various locations, including most recently, Division 10 from 2010-2012, Division 6 from 2012-2016, throughout the Cermak Building from 2017-2018, and RTU – female drug treatment unit from 2018 until the present. I have been out on disability since November 10, 2018 after having a stroke on the job.

2. Prior to my transfer to RTU in 2018, my job required me to have interactions with then male detainees daily, such as supervising inmates' daily activities; escorting them between different areas of the Jail; the medical center; and the Leighton Courthouse lockup; making periodic patrols of the inmates' quarters, common areas, and other areas; attempting to maintain control and discipline.

3. I have witnessed male inmates expose their penises and masturbate in front of me on several occasions. It happens so much you don't have time to document every incident. I have witnessed it when I'm walking on tier in Divisions 2, 6 and 10, in the tunnels, and going through Cermak. For example, in Division 10 inmates would go into the tv room sit down and start jacking off in front of me.

Plaintiffs 002457

4. The male inmates sexually harass me by making verbal sexual comments about my body and sexually touching me and other women.

5. After an inmate sexually assaulted me by grabbing my buttocks, I put in a bid to be moved to the female division to try to limit the amount of time I work with the male inmates. I was able to move to RTU in 2018; I still have to interact with male inmates, but not as much. I see them in the tunnels or when I am walking between areas.

6. Every day that I interact with male inmates they make inappropriate sexual comments. These comments can be heard throughout the jail, in the hallways, bull pin, going through male units and the tunnel. For example, male inmates have said to me, "Damn, you have a fat ass"; "I would eat your pussy"; "I would drink your bath water"; "You can sit on my face"; "Let me grab your butt"; and "shake something move something".

7. During the month of April 2016, while on tier in Division 6, a detainee walked behind me and grabbed my buttocks with his hand. All the detainees saw it happen. I told the detainee to step into the hall and locked my tier up. I called the sergeant and lieutenant, and the inmate was handcuffed and taken to segregation in Division 9.

8. Around March 2017, an officer in Division 9 called me to say the inmate was bragging about what he did to me when he touched my buttocks.

9. On December 23, 2017, I received a call from an officer stating that a detainee was being assigned to my unit in Cermak 3 south. When the

Plaintiffs 002458

detainee arrived, it was the same inmate who grabbed my buttocks being moved to where I was assigned to work.

10. The inmate who grabbed my buttocks was charged and found not guilty. The director of the hearing board informed me the reason he wasn't found responsible is because it was not seen on camera.

11. I feel as though the Jail is telling me that I should accept the inmate's behavior because the inmate that grabbed my butt was only temporarily removed from the tier I was assigned to. As far as I know, there was no other discipline and he got to brag to other men that he got away with it.

12. Before working at the Jail, I was a correctional officer at IYC Joliet, which is a max juvenile prison. I did not experience this harassment there, the no tolerance policy was utilized and respected. If sexual harassment happened it was once every 12 months and it was handled immediately by placing the inmate in segregation and/or giving them extra charges.

13. Because of the sexual harassment, when I work with male detainees, I do not like them walking behind me. I am worried they will grab my body. I am always aware of my surroundings and who I'm working with.

14. The sexual harassment at work environment has caused a mental impact on me. Initially after I was grabbed, I buried the incident but didn't really deal with it. Later, I became severely depressed after being informed by Sergeant Baker that the inmate that grabbed me would be returning to my unit. I

Plaintiffs 002459

started crying and left work prior to the end of my shift. It was traumatic and

I struggle with depression and have trouble sleeping.

Plaintiffs 002460

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

05/01/2019
_____
Date

_____
Signature

Plaintiffs 002461

## DANIELLE HARMS

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Danielle Harms. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail for over fifteen years. During my time at the Jail, I have been assigned to External Operations, Divisions 9, 10, 11, Laundry, and Central Kitchen. I currently work in Central Kitchen on the 3:00 –11:00 pm shift.

2. In Central Kitchen, part of my duties is to transport meals from the kitchen to the inmates on the tiers. When I worked in Central Kitchen, from approximately 2012 to 2013 and from 2015 to 2016, I worked on the 7:00 am – 3:00 pm shift. During this shift, I would pass large groups of inmates in the tunnels because that was the time they would be transported to court, to medical appointments, or to other locations. Inmates were usually handcuffed to their backs, but, even then, inmates from Divisions 6, 9, and 10 were still able to pull down their pants and expose their penises when they passed me. I don't have any particular examples to share because this would happen to me every single day that I worked during this shift. I would try not to acknowledge it and just pass the inmates as fast as possible.

3. The sexual harassment was even worse when I worked in Laundry, from approximately 2014 to 2015. Laundry is usually an easy and popular job, but I dreaded going to work when I worked in Laundry because, for two hours per shift, I would have to go to the tiers to exchange clean uniforms and linens for dirty ones, and I would see at least one or two inmates masturbating at me every single time I went onto a tier in Divisions 9 and 10. Division 10 was better than Division 9 because the chuckhole was not at penis-level like it was on Division 9.

1

Plaintiffs 002200

4.     When I first started working on the Divisions, in 2006 through 2012, I would occasionally tell my supervisors that inmates were masturbating when I did my cell check and counts —that happened almost daily.  But my sergeant never did anything when I told him, so I stopped bothering to report it.

5.     Even though Laundry is a nice assignment, I chose to bid for a new assignment because I was constantly seeing men expose their penises and masturbate at me. Since 2016, when I was assigned to Central Kitchen on the 3:00 – 11:00 pm shift, I have not experienced inmates flashing me or masturbating at me because I rarely see large groups inmates in the tunnel at that time.

6.     Inmates also said derogatory sexual comments to me when they passed me in the tunnels in the morning and when I was on the tiers delivering laundry.  Inmates often would discuss me in front of me, saying things like "I would do her, she's pretty" and another would respond "I wouldn't do her, she has no ass."  I never reported these comments, even though they bothered me, because nothing would happen if I told a sergeant.  These comments demoralized me and belittled me, and made me feel like I was nothing.

7.     I have heard sergeants say that correctional officers should just accept inmates' behavior because this is what we are paid for.  Other sergeants have said things like, "If you want to write it up, write it up, but I can't move the inmates because I have nowhere to put them."

8.     In my experience, all women working in the Jail experience the flashing, masturbating, and sexual comments, in both the tunnels and the tiers, because whenever I worked with another woman, I witnessed the same behavior and comments directed at her.  For example, I know another officer who worked in the kitchen with me in 2012 or 2013 who wrote an incident report for an inmate

2

Plaintiffs 002201

exposing themselves to her in the tunnel. She called the Division the inmate was from, described him to the officer until the officer could identify him by name, and then wrote an incident report. But nothing happened.

9.     I always wear a sweater over my uniform, even if it's 100 degrees inside, and even to this day when I work in Central Kitchen, even though I have not experienced any harassment there since working on the 3:00 – 11:00 pm shift. I have driven halfway to work, realized I forgot my sweater, and turned around to get it, even though that made me late. I would tell the lieutenant at check in that I was late because I had to get my sweater and I am not working without my sweater—the lieutenant never challenged me on this. I wear my sweater because it helps me feel like I am covering up my body and protecting myself from the comments and masturbation.

10.    Witnessing the sexual harassment on an almost daily basis from 2003 through 2016 has changed me as a person. My daughter was eleven years old when I left Division 9 for Central Kitchen in 2012. The first week of my new assignment, my daughter asked me, "Hey, do you like your new job?" I responded "Yes, why do you ask?" She said, "Because you haven't come home and gone straight to bed at 6:00 pm and you haven't cried once this week." When she told me that, it was heartbreaking to realize how much what I experienced at work affected her. I hadn't known that she knew how sad and depressed I was because I never talked about the sexual harassment with her, I would only say "It's just work."

11.    Little by little it eats away at your soul and changes you as a person. For example, a few years ago I was walking through the mall with my daughter and a man said to me, "Hey, pretty lady!" Without even thinking about it, I turned around and yelled at him "What did you say to me?!" He put his hands up in the air and said, "Sorry, I was just trying to say hi!" I reacted so aggressively because just hearing a man who

3

Plaintiffs 002202

I did not know talk about my appearance reminded me of the inmates, so instantly I responded so nastily, even though what he had said to me was not even vulgar. In other words, experiencing the sexual harassment has changed how I look at people. At first it made me angry and violent and want to hit the inmates, but if I did that I would lose my job, so now it just makes me sad.

Decl. Ex. 301

Plaintiffs 002203

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/16/2019

_____
Date

_____
Signature

Decl. Ex. 302

Plaintiffs 002204

# DECLARATION OF ANDREA HARRIS

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.     My name is Andrea Harris. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately February 2000.  I have been assigned to work in various parts of the Jail in my role as correctional officer, including Divisions 1, 4, 5, 10, and Receiving. I was assigned to Division 1 from approximately 2004-2012, and I have been assigned to Receiving since 2012.

2.     As a correctional officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. I have daily interactions with male detainees through my job duties, which include, but are not limited to escorting detainees to and from court, accepting and processing new detainees into the Jail, and escorting detainees to the public defender and pretrial services.

3.     During my employment at the Jail, I have endured sexual harassment by male detainees. Specifically, I have experienced male detainees exposing their penises to me, purposefully masturbating at me or in front of me, and making crude sexual comments.

4.     Inmates have masturbated at me or in front of me during the times I walked through the tunnels or past the bullpens on the bridge or in Receiving.  When I encounter male inmates in these areas, they constantly call out at me and other female employees to get our attention. I try not to turn my head toward them in

Plaintiffs 002462

response because they are frequently exposing themselves—often, I can see that they are doing it out of the corner of my eye. I currently experience an inmate exposing himself to me once or twice a month. However, during my time in Receiving, up until approximately mid-2018, it was much more frequent—approximately once or twice a week. Sometimes, when I don't look, the inmate calls me a bitch or another insult.

5.     I have witnessed other female employees being subjected to sexual harassment as well. For instance, in or about 2016 or 2017, I was walking from Receiving into the bridge and a female officer told me that "they have their dicks out" in a particular bullpen. I fortunately was able to then avoid walking past that bullpen.

6.     On another occasion, in spring 2017, I was separating a group of male inmates by their division assignments with another female officer. The area was extremely chaotic because there were 50-75 inmates in one area with just myself, my female coworker, and perhaps one or two other officers. One of the inmates grabbed my coworker's butt. My coworker told me that she wrote an incident report, but no one followed up with her about it and she never learned if it resulted in any discipline or a criminal charge for the inmate. I couldn't believe that even an incident where an inmate physically assaulted an officer would receive so little attention.

7.     In July 2018, I was escorting inmates through the tunnel between Receiving and court to be interviewed by the public defenders and pretrial services with Officer Golden, a female officer. We walked past a bullpen that held a group of approximately twenty inmates. The inmates started making comments about Officer Golden's body, saying things like she had a "big ass." As they made these comments,

2

Plaintiffs 002463

almost all of them – approximately fifteen men – masturbated at us. We could not stop and write the inmates up because we had to deliver the group of inmates we were escorting to their pre-court interviews on time so that they could appear in court on time.

8.　　Another time, in January 2019, an inmate exposed himself to me while I was walking in the tunnel past the bullpen that houses inmates waiting to go to Psych Court. I glanced at him, and he had pulled his penis through an opening in the front of his jumpsuit.

9.　　When possible, I try to avoid working on the bridge (although it is nearly impossible because I don't control the locations where I am assigned to work). At one time, there can be several hundred inmates—the overwhelming majority who are men—on the bridge, and often there are only six or seven officers there. During this time, there often are multiple inmates masturbating at women (sometimes more than ten) and constant catcalling of female employees.

10.　　I have discussed the sexual harassment with other female coworkers. When a female relieves me from a shift or vice versa, we discuss male inmates who have sexually harassed us and tips on avoiding them. Female coworkers have told me that they, "can't wait to leave," and "the Jail is so f*cked up now" because of the constant sexual harassment by inmates.

11.　　Inmates have repeatedly relayed to me that they don't believe they will face consequences for masturbating. For example, inmates have said to me, "Whatcha

3

Plaintiffs 002464

gonna do to me, you aint gonna do nothing to me" when I've asked them to stop masturbating, meaning they don't believe they will face any discipline.

12.     I am not surprised they feel this way. For example, I remember having a discussion with another correctional officer in Division 1 about an incident report I had filed because an inmate exposed himself to me. I told the officer that I was upset because no one ever followed up with me about the report. One of my male supervisors, Lieutenant Tucker, overheard us talking, and he said "they're inmates, this is Jail, that's just what they do." His comment made me feel like supervisors don't care that inmates sexually harass female employees, and that they would not take our reports or complaints seriously.

13.     I have never received training regarding how to address the masturbation or other sexual harassment by male detainees, how to prevent male detainees from repeating sexually harassing behavior, or how to respond if a male detainee tries to sexually assault me.

14.     The harassment has also changed the way I dress at work. I always dress extremely conservatively and always wear larger sized clothing to avoid showing off my figure. For instance, I always wear my sweater, even when it is too warm to do so, which makes me very uncomfortable.

15.     The behavior by male detainees toward me and other female employees is annoying, disrespectful, constant, and relentless. It makes me feel frightened of my own workplace.

4

Plaintiffs 002465

16.  The sexual harassment and masturbation I experience at the Jail impacts my ability to do my job.  I am supposed to be closely supervising detainees to ensure their safety and the safety of everyone in the Jail.  However, I often avoid looking at inmates because, so frequently, they expose their penises. On several occasions while I was working on the Bridge, I was unaware that male inmates were fighting (until someone called it out to me) because I had been trying to avoid looking at them for fear that they would expose themselves. This made me frustrated because I internalized how much the consistent sexual harassment was preventing me from doing my best at work.

17.  I feel very stressed coming to work every day, thinking that I will likely have to encounter exposure or masturbation from an inmate or multiple inmates. The constant sexual harassment also impacts my personal life. The stress has spilled over into it. I judge men unfairly now.  If I see men out in public, or when I'm driving in my car, I'm immediately suspicious of them.  I know it may not be fair, but I am conditioned by the Jail to think the worst of the men in my life.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/29/2019

_____
Date

_____
Signature

5

Plaintiffs 002466

<u>**Tiffany Harris Declaration**</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct

1. My name is Tiffany Harris. I have been a correctional officer at the Cook County Jail "Jail" ("Jail") since September 2006.  I have been assigned to work in Division 3 (2006-2008); Division 9 (2008-2013); Cermak (2013-2018); Laundry (2019-current). I have been assigned to Divisions 1, 2, and 17 when I worked overtime.

2. In my assignment in Laundry, I am responsible for taking male and female detainee's clothes to various divisions and exchange detainee's uniforms. My job duties include working with detainees in laundry. On Sundays, I go to Division 11, which is a male only Division to do the laundry exchange. Because there are male detainees that stay in the laundry area, I interact with the male detainees daily.

3. I have endured sexual harassment by male detainees, including detainees making sexual comments to me, exposing their penises to me, and masturbating at me.

4. Inmates have masturbated at me multiple times, and almost every night that I worked in Division 9.  One example of this is a detainee masturbated at me in 2008 when I was on a tier in Division 9.  I don't remember which tier it was. As another example, sometimes in Division 9, I would be working sitting in the bubble on a tier and I would see something flying past the bubble.  Male inmates would throw their shoes past the bubble to try to get my attention and when I would look at them, they would be masturbating at me. Sometimes they would have their penis out and not be masturbating.  I think that they wanted to see my face.

5. When I was on the tiers in Division 9, I tried to turn my chair a certain way so I did not see any exposed penises.

Plaintiffs 002467

6. Also, when I worked in Division 9, during a count if there was a female officer, we would yell, "woman on tier about to do a count." A lot of times, the detainees would stand up with their penis in their hand like they are about to use the bathroom. But they were not about to use the bathroom, they were doing it on purpose to show their penises to women. The detainees have become creative in the way they expose themselves to female officers.

7. The inmates also masturbate at other women who are my coworkers. For example, several weeks ago, in Division 11 my female partner, Officer Wright informed me that a detainee pulled his penis out and masturbated at her. When the incident occurred, I was in Laundry.

8. Other women have told me they experience sexual harassment too. Female officers have told me that their supervisors would tell them "nothing is going to happen; the hole is full". If the hole is full to capacity, there is no additional room available.

9. The masturbation has died down some since the lawsuit was filed at the end of 2017 so now, I experience less masturbation. But still, almost every Sunday when I must go to Division 11, the detainees know that I am on the tier and they will come to the door in their underwear with an erection.

10. In the tunnels, in Division 9, and in Cermak, inmates sexually harass me by what they say to me about my body. They make sexual threats too. For example, they say things like, "You have big lips" and call me a "bitch". As another example, one inmate, in Division 9 said "I will rape you", "you look familiar", and "I will rape you with my infected penis", it was scary.

Plaintiffs 002468

11. I never go to work without wearing a sweater because my body is always a topic of discussion with the detainees.  I try to cover up because of how they talk about my body.

12. The inmate's behavior is terrible. In 2006 when I first started working at the Jail, it was unheard of for a detainee to look at a woman officer in a sexual way or say sexual things. It seemed like there used to be more repercussions right away. Two or three years after I began working at the Jail, it began to change, and I would have to ask a male partner to go with me to move inmates because I did not feel safe due to all the sexual harassment.

13. The dress code is not being enforced. Inmates can have torn uniforms or wear their uniforms wrong.

14. The harassment impaired my ability to do my job in Division 9. I tried not to have my direct focus on the inmates because they would masturbate at me when they were in the shower, so I would watch the tier but not during shower time. When my partner was a male officer, I would switch with him and he would watch them in the shower.

15. I avoid certain elevators when inmates are in the tunnel to try to avoid sexual harassment. I will not use the tunnel elevators. I will use the back elevators to circumvent the male inmates.  I do not want them to make comments at me. They will say "how you doing", "take your sweater off", "look at her lips, they shiny, what that mouth do".

16. The harassment has affected my personal life.  When I was in Division 9 and Cermak, I would dread coming to work. When I got off, I did not want to see any men, I just wanted peace. When talking to family and friends, my conversations would revolve around who masturbated at me today. I wasn't having regular conversations.  It is still very stressful.

Plaintiffs 002469

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/30/2019

_____

Date

_____

Signature

Plaintiffs 002470

# <u>Declaration of Sandra Hatten</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Sandra Hatten. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since June 8, 1992.

2. I have been assigned to Division 10, Division 2, Receiving, and Transportation. I have worked in Transportation since approximately 2001, except for March through October 2018, when I worked in Receiving. I can be assigned to work in other locations at any time if there is a staff shortage or if I work overtime.

3. During my employment at the Jail, I have endured sexual harassment by detainees on approximately a weekly basis. However, when I first began working there in 1992, detainees were much more respectful toward women. In the last 5 years or so, detainee behavior has gotten worse. It has never been like this.

4. Every day, detainees make sexual comments and propositions to me, such as "I want to date you," "You're gonna be my wife," or "I bet your husband ain't giving you none."

5. In approximately 2015, detainees were exposing their penises and masturbating at me and other women every day, all the time. I witnessed detainees masturbating in Receiving, on the elevator in Receiving, on the transportation bus, anywhere we went. It also regularly occurred in 2016 and 2017. Since the lawsuit was filed, I experience less masturbation and exposure, but the verbal sexual harassment continues every day. In the paragraphs below, I describe some of the many examples of the detainees masturbating at me or exposing their penises to me.

6. For example, in approximately 2016 or 2017, at "Post 8" where officers and other jail staff enter the compound, I saw what seemed like at least 20 detainees in Division 9's recreation area, which has a view of the sidewalk below, all standing in a row, all masturbating with their penises out. They were looking toward me and the other woman I was working with. I heard numerous detainees shouting out to get my attention.

7. On September 15, 2015, I was working on the Transportation bus while the CO I was working with was driving. One detainee, D.G., came up to the front of the bus, near me, and started masturbating. I told him to go to the back of the bus. Then, another detainee, A.L., came up to the front of the bus, while

1

Plaintiffs 002205

he was handcuffed to another detainee, and started masturbating. The detainee who he was handcuffed to just laughed. I moved and reported the incident to my partner, who was driving the bus.

8. I called my supervisor, Sergeant Maloberti and reported the conduct of both detainees. Sergeant Maloberti indicated that nothing was going to happen to the inmates. I insisted that we put it in black and white and write an incident report. I filed Incident Report No. ███Redacted███.

9. I didn't receive a call on whether or not I wanted to press charges until approximately 6 months later. I received a call from an investigator. They said that D.G. was already released from the Jail, so I couldn't press charges against him, but asked if I wanted to press charges against A.L. I said yes. Approximately a few weeks later, I received a call from a state's attorney saying that I would be receiving a subpoena to go to court to attend the sentencing hearing of A.L. I received the subpoena shortly after the phone call.

10. I attended the sentencing hearing of A.L. on March 27, 2017. There were approximately 4 other women in attendance. The state's attorney did not call on me to testify at the hearing. A.L. pleaded guilty to the offense. I do not know what his sentence was. I remember hearing at the sentencing hearing that a detainee will not be considered sex offender until they are found guilty three times.

11. On January 22, 2016, I attended the sentencing hearing of W.W. I had written him up for masturbating, as well, although I do not recall the details of the incident. I testified at his hearing and spoke about the masturbating incident. They had us leave after we testified, so I do not know what his sentence was.

12. If the detainees are masturbating and saying making sexual threats, the next thing they're going to do is rape you. It makes you very cautious. You are always watching, just to be safe.

13. Detainees frequently pass each other notes, which they call "kites." They are not permitted to do this, but they do anyway. In approximately 2015 and 2016, I heard from both detainees and officers that there were "kites" passed around that said that if the detainees get a chance to rape a female officer, they would. It was no surprise – based on how the detainees had been acting and the comments they had been making to female officers, we knew that if they continued to get away with exposing themselves and masturbating, that was the next thing they wanted to do.

2

Plaintiffs 002206

14. Because of the constant sexual harassment, I always make sure to maintain a safe distance from detainees and not let them walk behind me.

15. I have never received training regarding how to address sexual harassment by male detainees, only with supervisors or coworkers. The only thing I know to do is to write up the detainees, but that is it. Supervisors train correctional officers not to sexually harass detainees, but not the other way around.

16. Inmates who have masturbated at women have to wear green jumpsuits, but the green jumpsuits that are used are ineffective at stopping masturbating because many detainees wear the suits unfastened all the way to the bottom.

*Sandra L. Hatten*
_____
Sandra Hatten

04/23/19
_____
Date

3

Plaintiffs 002207

## DECLARATION OF KATIE HEALY

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.      My name is Katie Healy and I am a Correctional Medical Technician ("CMT" or "paramedic") at Cook County Jail (the "Jail"). I have been employed at the Jail since September 2017. I have worked in various parts of the Jail in my role as a paramedic, including Divisions 5, 6, 9, 10, and 11. In 2017-2018, paramedics did not have long-term assignments, and I most frequently was sent to Division 9 and 10. Starting at the end of 2018, we have been assigned to a different Division each month, and I have most frequently been assigned to Divisions 9, 10, and 11. In February 2019, I was assigned to Division 5, which houses female inmates, however I was assigned to Division 6, 9, 10, or 11 on weekends, and I also filled in various Divisions during the week as needed. Currently, I am primarily assigned to distribute medication in Division 9, but I also distribute medication in Divisions 6, 10, and 11 on weekends or when I'm needed.

2.      As a paramedic, I am responsible for the health of individuals being held at the Jail in pretrial detention and for responding to medical emergencies. My job duties include but are not limited to distributing medication to inmates in their divisions, answering inmates' questions about medication and their health and wellbeing, and responding to medical emergencies throughout the Jail. On average, I distribute medication to 60-120 inmates per day.

Plaintiffs 002471

3.    During my employment at the Jail, I have regularly experienced sexual harassment by male inmates including male inmates exposing their penises to me and purposely masturbating at me or in front of me.

4.    Because I am not a sworn officer, I cannot file incident reports with the Jail—a correctional officer must do it for me.

5.    I have also experienced crude, sexual, or unwelcome and inappropriate comments, on a daily basis, including regular comments about how inmates want to have sex with me. Inmates say things like, "oh man I really want to fuck you," "you have big tits" and "look at her ass." They also make unwelcomed comments about my appearance and ask if they can take me on a date when they get out of Jail. I have experienced sexually harassing comments several times a day in Divisions 9, 10, and 11 but they also frequently happen in other areas I have worked.

6.    Inmates frequently masturbate at me with their penises exposed. During times I worked in Division 9 from approximately 2017-2018, it happened daily. When I was waiting to distribute medicine, I would sit in the "bubble," an enclosed glass area between the tiers where the officers sit. Inmates who were in the day room would see me walk into the bubble, and then walk over to the glass and expose themselves—occasionally doing the "helicopter," i.e. twirling their penises around in a circular motion.

7.    Recently in Division 9, an inmate asked me to watch him do a "pull up" on the door frame, purposely loosening his pants so that they would fall as he pulled himself up, exposing his penis. In Division 11, inmates have exposed themselves to

Plaintiffs 002472

me at least 4 times in the past few months. They stick their penises out of the chuckhole and masturbate.

8.      In March or April 2019 in Division 10, I was waiting in the bubble to pass out medication and an inmate who was in the shower waved at me to get my attention. When I looked over, I saw that he was naked (except for a small towel) and masturbating at me. I pointed him out to the correctional officer who was assigned to the area and he told me he would fill out the "paperwork" about the incident, which I told him I wanted him to do. A few days later I had to go to the same tier. The inmate was there, came up to me and said, "I need to talk to you." He then tried to argue with me, telling me that he didn't do it. I responded that there were 35 cameras. It was enraging because the inmate was just there, waiting on the tier, seemingly without consequence and I felt really creeped out that he was able to seek me out and argue with me about the incident. He should have been removed from the tier. It's bad enough to be masturbated at without the inmate trying to engage with you about it after it happens.

9.      In one incident in 2018 in Division 11, an inmate exposed himself through his chuckhole and started masturbating at me as I was medicating an inmate in the cell next door. As soon as I saw what was happening, I said to the inmate "Are you fucking kidding me?" At the time, a male correctional officer was standing right next to me, facing the offending inmate's cell, but he said nothing to the inmate. As we walked off the tier together, the male officer asked me what happened. I told him that an inmate had masturbated at me through the chuckhole.

Plaintiffs 002473

The officer apologized to me but claimed that he had not seen anything, which I found hard to believe. I asked him to file an incident report for me. The report indicated that I wanted to press charges. An investigator interviewed me the next day. A few weeks later, I was notified in writing of the outcome of the charge. This was the only time I have ever been notified of the outcome of charges I had filed against an inmate.

10.     In another 2018 incident in Division 11, an inmate who is a "worker" meaning he is charged with cleaning the tier and has privileges to be out of his cell more often than other inmates, made a comment to me as I was walking off the tier. At the time, the inmate was out of his cell cleaning the floor. He said, "Hey, I got a question for you. You always come in here, and you look like all my bitches. I was wondering if you come in here looking like that for me?" I responded something to the effect of "No, I come in here to do my job." He responded "Well, if anything happens to you, by me, it's going to be your own fault." I was so shocked and frightened that I did not respond; I practically ran away. I was afraid to go back to the tier, because I thought the inmate was going to try to rape or hurt me. The next day, I told the officers in Division 11 what happened. All of the female officers said that we should file an incident report, but a few male officers said I should not bother pursuing filing a report. Because of the reactions of those male officers I did not pursue filing a report.

11.     I also recall one incident in 2018 in Division 9, and its aftermath. I was standing in the bubble waiting to enter a tier to distribute medicine. An inmate who

Plaintiffs 002474

was in the dayroom approached the glass window that was separating us and started masturbating. When I alerted the correctional officer, the inmate ran away and tried to hide his face. I identified him to the officer and said, "the one with dreadlocks." The officer wrote an incident report for me. Two or three months later, an investigator came to talk to me. I told him that I had no idea why he was there since I had not had an incident report filed in months. He proceeded to tell me that he supervises other investigators, and he recently learned that my incident report from Division 9 had been sitting in their office, and that no one had followed up. I then asked him if pressing charges against the inmate would be a waste of my time. He responded, "do you want the truth?" I said yes. He then told me that the prosecutors do not usually follow through on charges of indecent exposure or masturbation, unless it "helps their case." Because of what he said, I did not press charges.

12.     I am constantly afraid that an inmate will expose himself to me or masturbate at me while I am handing out medication on the tiers. I make a practice of announcing myself when I walk on the tier and telling the inmates to put their hands up so that they cannot masturbate while I'm walking by.  Unfortunately, this does not always stop them.

13.     I have seen other women who work in other positions experiencing the same or similar sexual harassment throughout the Jail. For instance, I have been standing next to female correctional officers in the bubble while inmates expose themselves to both of us. I have also been with my colleagues Paramedics Flores and Bain-Norris while inmates have exposed themselves to us in Division 9 and 10.

Plaintiffs 002475

Recently, in 2019, Paramedic Bain-Norris returned to the med room from Division 11, and she said that an inmate had masturbated at her through the chuckhole in his cell while she was walking by to distribute medication.

14.     I regularly discuss inmate sexual harassment with female correctional officers and my fellow female paramedics. We warn each other about particular inmates who are known for masturbation and sexual harassment, and we discuss strategies to avoid those inmates. For instance, recently when I arrived at Division 11, a female officer told me that the same inmate who had been masturbating and exposing himself to Paramedic Bain-Norris had been masturbating out of his chuckhole earlier that day, and for the second or third time that week. The officer said that she was angry because the inmate had been masturbating at female employees several times in the last few days, and yet he had not been removed from the tier. She knew that I had to walk near his cell to distribute medication, so she accompanied me. The inmate did not expose himself when I walked by, but I was very nervous and on guard.

15.     As a paramedic, I cannot file an incident report myself—I have to ask a correctional officer to do it for me. Sometimes male officers act as if filing an incident report about sexual harassment is an inconvenience for them. For instance, Paramedic Bain-Norris told me recently, in 2019, that an inmate had exposed himself to her and she told the male officer who was supervising the tier that she wanted to report it. The male officer told her that he would "get to it." She said that she was upset about an incident and wanted him to file an incident report now, and

Plaintiffs 002476

she wanted to speak to a supervisor. He responded, "I don't have time for this right now." She was so angry and frustrated that instead of finding the supervisor herself or arguing with the officer, she left the tier. I do not know if she later followed up with the officer to write an incident report. This made me reluctant to ask officers to write an incident report for me, for fear that they would act annoyed or just refuse to do it.

16.     I have never received training regarding how to address the masturbation or other sexual harassment by male detainees, how to prevent male detainees from repeating sexually harassing behavior, or how to respond if a male detainee tries to sexually assault me.

17.     I am aware that I can file an EMERS report, which is a report that documents incidents in the hospital reporting system, about inmates, but I do not know how I would use EMERS to report inmate sexual harassment. I was given a brief overview of EMERS during orientation, but trainers did not explain the purpose of the reports.

18.     The sexual harassment toward me and other female employees of the Jail is degrading and appalling. It is hard to find words to describe how it makes me feel. It certainly makes me feel dirty and disgusting, but it also makes me anxious and overly wary of my surroundings—I feel like an inmate could expose himself to me at any time. I feel paranoid. I wear very little makeup, if any. I wear loose scrubs with leggings underneath because I do not want my skin to show if my pants sag or rip. Still, I occasionally question myself when an inmate sexually harasses me,

Plaintiffs 002477

asking if I unknowingly did something to provoke his behavior. This makes me feel even worse.

19.    As a health professional, I want to develop positive relationships with my patients so that I can better attend to their medical needs. But the relentless sexual harassment prevents me from being able to get to know the inmates, which would enable me to do just that. I do not engage with the inmates as much as I otherwise would because I am constantly paranoid about sexual harassment. I am even distrustful of inmates who have no history of sexual harassment or behavior problems; I keep our conversations short and tell them to put their hands up when I walk by. This makes me feel guilty, but it is necessary to protect myself. It's nearly impossible to prepare myself for sexual harassment; all I feel is constant stress.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/30/19

*Katie Healy*

_____          _____
Date                                                    Signature

Plaintiffs 002478

# Declaration of Gabriela Henderson

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Gabriela Henderson. I worked as a Correctional Rehabilitation Worker or CRW at the Cook County Jail from November 7, 2011 until approximately May 24, 2017, when I resigned because of the constant sexual harassment by inmates.

2. When I started working at the Jail, I was a part of the grievance department, where I collected grievances from the inmates in the division I was assigned to. Periodically, I would have to go to other divisions that I was not assigned to, like Division 9, 11, and others. During my employment, I was assigned to Division 6, 3 Annex, Division 3, Division 5, Division 2.

3. In all of my assignments (except Division 3 for about a month in 2014 or 2015), I had interactions with male detainees every day. Even when I was assigned to Division 3 (which was all women at the time), my office was still in Division 2 and I would walk past male inmates.

4. I experienced sexual harassment from the male inmates every single day even if I was assigned to work to an area without men because I had to walk past male inmates. Every day, I would hear comments like, "She got a fat pussy," "Look at her ass!," "She needs to wear her shirts lower," "Let me give you this dick!" and even "Look at the light skinned social worker! Got my dick harder than Chinese algebra!" It was so bad. Every time I walked into the Jail I felt less than a person – like I was on display. It felt like I couldn't come to work and just do my job. It was belittling and gross. I felt disgusting.

5. Inmates also sexually harassed me and other women by exposing their penises to us or masturbating at us.  When I began working at the Jail, when I worked in Division 6 and I was also helping out in Division 9, I endured this approximately on a weekly basis. Starting in approximately 2013, the time that I was assigned to Division 2, I endured this approximately on a monthly basis.

6. For example, one time, in approximately 2012, I went to Division 9 to get signatures on inmates' grievances. I went to the top deck, and then made my announcement to the bottom deck that I was coming down and that they should all place their grievances outside the chuckhole. One inmate, instead, stuck his penis outside the chuckhole and stated, "Grieve that, bitch!" Furious, I stated out loud to everyone that the inmate was being disrespectful and that I was going to stop doing the grievances as a result. All the inmates

1

Plaintiffs 001111

got upset, stating, "No, don't punish us! [for what the other inmate was doing]." Then they began stating things like, "Well, you like it anyway!"

7. I wrote a to/from memo on the incident and submitted it to Sergeant Nalepa. In response, Sergeant Nalpea indicated that there would be no consequences for the inmates. He stated, "I wasn't there, I didn't see it." I couldn't believe that nothing was being done about what had just happened.

8. At one point, a male officer in Division 9 stated to me, "You're a pretty woman, you especially are going to get it" (referring to sexual harassment from the male inmates).

9. From what I understand, female correctional officers are not usually assigned to Dorm 4 in Division 2. However, female CRWs still serviced Dorm 4 – including me. I worked in Dorm 4 for years. The sexual harassment was constant. On numerous occasions, I reported the sexual harassment to Superintendent Hampton. I stated, "Do you know what it's like, as a female, walking through here? The inmates make comments, no matter what I wear to work. I'm not wearing revealing clothing. I am wearing appropriate business attire." In response, Mr. Hampton suggested I wear a smock.

10. I followed his instruction and wore the smock. However, wearing the smock made the inmates comment even more. They would say things like, "Why is she wearing that!" "What do you have under there? Take that off!" An inmate once stated to me, "You could wear a paper bag and it wouldn't matter, I would still look at you." So there I was, sweating in the smock because it was hot, and the inmates were still harassing me.

11. In approximately 2012 or 2013, in Division 2, an inmate approached me with his hands in his pants, and it seemed as if his hands were on his penis. Based on his stance, I had a feeling that something bad was about to happen. The inmate tried to get my attention, saying something like, "I need something." I ignored him because his hands were in his pants. Then he came up and approached me again – this time even closer – and aggressively said, "What are you going to do now, bitch?" There were no officers around to help me. Fortunately, the inmate workers witnessed the incident and told the inmate to leave me alone and escorted me safely out of the day room. I immediately reported the incident to Officer Skinner, who was in the office (and not the day room, where he should have been). In response, he stated, "I didn't see anything." Officer Skinner did not write an incident report, and I believe it was because he did not want to show that he wasn't in the day room where he should have been, causing a safety risk for me. I understood that I could not write an incident report myself because I was not a sworn officer. From what

2

Plaintiffs 001112

I can recall, I believe I wrote a to/from memo on this incident, but I do not recall who I submitted it to.

12. Shortly before I left the jail, I became pregnant. In October or November 2016, in Division 2, I was getting ready to leave the jail for the day, and normally the inmates would be in their bunks at this time. This particular day, they were out. They were out in the day room, causing a commotion by yelling things like, "Look at that pregnant bitch!" "You know what they say about pregnant pussy, it's real good!" Approximately three male officers (whose names I do not know) who were working on the floor at that time ignored the inmates' comments. Fortunately, the one female correctional officer (whose name I don't recall) who was working on the floor consoled me and helped me get off the floor.

13. Approximately the same day, I sent an email to my (male) supervisors, Lestor Hampton and Superintendent Martinez, about the incident. Mr. Hampton stated something to the effect that they would look into it. A few days later, I also spoke to one of the Lieutenants in Division 2, Lt. Macnamara (male) about the incident.

14. Over a week later, someone in the security office called me and asked for details on the incident so that they could write a report. After that, I saw the incident report on CCOMS and saw that someone did write an incident report, but it said something to the effect that there was a "verbal incident" with the inmates and that I reported it late. But, I did not report it late, and many of the details about what happened were not included in the incident report. I felt like the real facts were being covered up.

15. I called the security office and spoke to someone (possibly Lieutenant Macnamara) and explained that the incident report was incorrect. He blew off my concerns.

16. Around that time, I reported to Director Osborn about the sexual harassment. I stated words to the effect of, "I don't feel safe here. If these inmates feel comfortable talking to me like this, and degrade me like this, and there is no order, no consequences… who knows what could happen? Someone could easily come up in my face, anything could happen." I explained that I was pregnant and that I was not only fearing for my own safety but for my child's. Shortly after, in approximately November 2016, I was able to move to Division 5 and work in an administrative setting, away from the inmates.

17. By mid-February 2017, I went on maternity leave, and then resigned from the position in May because it was too much to have to deal with the inmate

3

Plaintiffs 001113

sexual harassment and the supervisors lack of response to our concerns about it.

18. I absolutely hated working there because of the sexual harassment. I had intentions of leaving long before I actually left the jail. I only stayed for financial reasons; I have kids and a family to support. Then, I had a high-risk pregnancy, so I needed to keep my income and the medical insurance. Because of this, I also wanted to make sure that I had something else lined up before I actually left the Jail. A few times, the sexual harassment at the Jail led me to almost quit on the spot – but I didn't; I continued to endure it because I knew I needed to stay for financial reasons. At this point, I hope I never step foot in that jail again.

19. In my regular life outside of work, I like being considered an attractive female. But I hated being considered an attractive female at the jail. The degrading comments were nonstop. I needed to work at the jail to support my family, but I hated how it made me feel. It got to the point where I couldn't be nice. The comments were so constant that I stopped saying "good morning," "how are you?" or "how can I help you?" to the inmates because I was already enduring sexual harassment from them, and I didn't want to turn around after hearing that type of comment and act like everything was fine. I changed my appearance because I didn't want to get more comments from the inmates. God forbid I ever wore a skirt – that could have been the day that something happened to me and then it would probably have been turned on me, like, "you should not have worn a skirt."

*Gabriela S. Henderson*

Gabriela Henderson

12/27/18

Date

4

Plaintiffs 001114

# **TANISHA HENDERSON DECLARATION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.   My name is Tanisha Henderson. I am a sheriff/correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately October 1, 2001. My first assignment was in Division 4. I am currently assigned to RCDC, in Receiving, and have been working there since October of 2016. Depending on my assignment, I sometimes work with a partner, who is sometimes a male but more often a female. Prior to Receiving, I worked in Division 11 for about five years. I have also worked in Division 10. I left Division 11 to go to Receiving because the inmates were out of control and it was too stressful.

2.   As a correctional officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my job duties include, but are not limited to: processing detainees into the jail, taking their ID picture and interviewing them, walking detainees through the tunnel to court, transporting detainees to Cermak Health Services, and supervising detainees while they are in the bullpen waiting to be transported. In all of these assignments, my job has required me to have interactions with male detainees daily.

Plaintiffs 001032

<u>General Description of Harassment</u>

3.    During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis, including regular comments about how they want to sexually assault me.

<u>Specific Incidents of Exposure and Harassment</u>

4.    I most frequently witnessed detainees masturbating and exposing their penises in the tunnel while they walk to and from court. This is a regular occurrence.  Once, I saw a detainee walk out of a courtroom with his penis hanging out of his brown uniform. Detainees who are caught masturbating or exposing themselves are supposed to wear green jumpsuits which both identify them as offenders and are supposed to prevent them from reaching their penises.  However, the green jumpsuits are not effective.  The detainees wear them with the top open and hanging down, and the velcro can easily rip open.  Even when they are handcuffed, the green jumpsuits do not prevent the detainees from masturbating or exposing themselves.

5.    I also see detainees masturbating while they are in the bullpens.  Detainees are held in the bullpens when they are waiting to be transported.  Once, while I was sitting on the bridge with some of my female colleagues, half a dozen detainees from Division 9 stuck their penises out at us through from

2

Plaintiffs 001033

the bullpen.  Additionally, in Division 11, the detainees would expose their penises to me when I walked by their cells to count them.

6.     The incidents of masturbation and exposure have significantly increased in the last two years.  It feels like the detainees think it's trendy to masturbate in front of the female officers.  If we try to stop them, they just complain that they are being mistreated. Often, that means instead of disciplining the detainees for breaking the rules, the Sheriff's Office will reprimand the officers.  However, since the preliminary injunction, there is a team of officers assigned specifically to transport detainees.  I have personally been exposed to penises less frequently since then because I do not have to be in the tunnel as often.

7.     I have seen other women who work in other positions experiencing the same or similar sexual harassment throughout the Jail. If a female is supervising the bullpens, more often than not, a detainee being transported into the bullpen will pull out his penis and start masturbating as soon as he is close enough to see her.

<u>Sexual and Sexually Violent Comments</u>

8.     I hear crude or sexual comments from male detainees directed at me all the time. The comments are so severe, I often am afraid I will be raped.  I hear comments from detainees such as, "I'm going to fuck your big ass," "I'll fuck you," "look at that ass," and "bitch, where do you live"?  It happens so much I have come to expect to hear it every day.  If I tell them to stop, more often

3

than not it will escalate. If it escalates into an altercation between me and the detainee, I am afraid that I will be disciplined for the way I react instead of the detainee being disciplined for acting out in the first place.

Knowledge of Defendants

9.  My supervisors know about the detainees' behavior and their sexual comments towards me and other women. Everyone knows about it. I talk to my supervisors all the time, and they either say, "that's just part of your job" or "write 'em up." It doesn't matter if you write them up because nothing happens. It's a waste of time. The supervisors are sick of it too.

10. The supervisors make no effort to discipline the detainees or set consequences for the sexual behavior toward women. Once Director Jones and Lieutenant Louse visited the Jail and saw some inmates masturbating. I do not know if they did anything to try to address the problem, because nothing has changed. Nothing was done as a result of that incident to protect us from daily exposure.

Incident Reports and/or complaints

11. I complain about the masturbation constantly, but nothing ever changes. These incidents happen so often, it feels like the norm.

12. Once in District 11, I wrote up a detainee for a violation of the disciplinary code. He should have gone in front of the hearing board and gotten time in the hole, but nothing happened. I spent all that time on the paperwork and the only result is that my colleagues and the detainee were laughing at me. I

Plaintiffs 001035

felt embarrassed and discouraged.  This is why I haven't written up any inmates for masturbation or exposure.  It would just make my job harder.

<u>Ineffectiveness of Complaining</u>

13.  Incident reports are ineffective because the detainees know that this Jail imposes no real consequences for masturbating at women. Detainees believe that nothing will happen to them because real consequences have not been enforced. If an officer asks them to stop masturbating, they just say that they can do whatever they want.  This is because they know that if we intervene, the cameras will show the officer yelling at the inmate.  The inmate will complain that the officer was aggressive, and the County will settle with the inmate but not protect us.  I am afraid to be involved in any confrontational situations.  There is nothing to stop a detainee from grabbing an officer and raping her.   Maybe if that happens, something will change, but none of us want to be that officer.

14.  Often, there are over 30 detainees in a bullpen at a time, and some of them pull out their penises or make inappropriate comments.  It's chaotic and feels dangerous.  It is hard to write them up because you don't want to get close enough to see who they are.  The detainees know there are no repercussions for this behavior – it's a waste of time writing them up because they don't care.

15.  Some of the older detainees complain about younger detainees masturbating all the time.  They say, "there used to be order in the jail!"

DocuSign Envelope ID: DD9B88A3-8B33-4B87-ADF4-BCAB0B7889C3

Lack of Training

16.     I have never received training from the Jail regarding how to address the
        masturbation or sexual harassment by male detainees, how to decrease the
        opportunities to repeat the behavior, or how to respond if a detainee tries to
        rape me. I feel like I am fighting for my life without any support. On top of
        that, it feels like the Sheriff's Office supports the detainees more than us. We
        have been instructed that it's ok for inmates to masturbate in their cells if
        they are a certain distance away from us. They reward detainees with pizza
        if they stop masturbating for a short time.

Impact on Job Performance

17.     The sexual harassment changed the way I do my job. I hate coming to work.
        I try to stay away from work as much as I can. The environment at work is
        less safe; I avoid trying to cuff or uncuff an inmate because I would have to
        get close to them. I try not to look down because I don't want to see their
        crotch area. When you avoid looking, you miss other things that might be
        important to the safety of the Jail.

18.     Furthermore, the harassment changed the way I dress at work. Now, I
        always tie a sweater around my waist or wear an over-sized sweater if it's
        cold. I don't want to be accused of provoking the detainees. But, it doesn't
        matter what I wear. The detainees still harass me.

6

Decl. Ex. 332

Plaintiffs 001037

19.     The behavior by male detainees toward me is unwelcome, offensive, harassing, humiliating, threatening, degrading, and caused me to fear for my safety. I feel like the detainees are raping me with their thoughts.

20.     During every work day at the Leighton Courthouse, I experienced anxiety over potential harassment and exposure. Even if I was not the direct target of detainees' sexually inappropriate behavior on a given day, my female coworkers and I expected that at least one of us would be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse. I think it happened to someone every day. I knew I might be sexually harassed or hear about a female coworker being harassed when I walked through the compound to my assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift. This caused constant stress and made it more difficult for me to focus on my job of keeping everyone at the Courthouse safe.

Emotional Impact

21.     As a result of the constant sexual harassment, I have suffered severe emotional distress. The harassment and masturbation at the Jail makes working there extremely stressful. I feel like I could breakdown and cry at any moment. Sometimes, when I get to my car at the end of the day, I do cry. I have seen a therapist to help me cope with the effects of detainees masturbating at me and exposing themselves to me on a regular basis. I

7

have increased migraines from the stress at work and have had to take FMLA leave to cope with them.

22. It feels like the Sheriff's Office doesn't care. My colleagues and I sometimes fear that being a part of this lawsuit will only lead to retaliation at work. I feel like the Sheriff's Office tries to protect the detainees but doesn't protect me and other female employees.

8

Decl. Ex. 334

DocuSign Envelope ID: DD9B88A3-8B33-4B87-ADF4-BCAB0B7889C3

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/12/2019
_____
Date

DocuSigned by:

_____
9554F23B4DD34FD...
Signature

Decl. Ex. 335

Plaintiffs 001040

DocuSign Envelope ID: 95ABAFCE-8D67-4DDF-87C9-8607D8032F74

## <u>ANGELIQUE HERRERA DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.    My name is Angelique Herrera. I am a Court Services Deputy at the Leighton Courthouse ("Courthouse"). I have worked at the Courthouse since I finished the academy, which I started on or about April 7, 1997. I have worked in courtrooms 202, 206, 208, 504, and as a floater in the afternoons. I am currently assigned to courtroom 400 on the 10 AM to 6 PM shift and have been working there since December of 2017.

2.    As a Court Services Deputy at the Courthouse, I am responsible for the safety and security of detainees being held in holding cells near my assigned area and attorneys who consult with the detainees. I am also responsible for the safety and security of individuals in the courtroom, including courtroom personnel and civilians. For example, my job duties include, but are not limited to: transporting detainees to and from court, transporting jurors safely in and out of the courtroom, securing detainees coming to court and during the court process, and monitoring detainees who are in the holding cells. Occasionally, if someone gets remanded to the jail in court, I have to process them in. In all of these assignments, my job has required me to have interactions with male detainees on a daily basis.

Decl. Ex. 336

General Description of Harassment

3.  During my employment at the Leighton Courthouse, I have endured sexual

harassment by male detainees, which they direct at me and at other female

employees. I have experienced: (a) detainees exposing their penises to me; (b)

male detainees purposefully masturbating at me or in front of me; and (c)

crude or sexual comments on a daily basis, including regular comments about

how they want to sexually assault me.

Specific Incidents of Exposure and Harassment

4.  I most frequently witnessed detainees masturbating with their penises

exposed while they were in the bullpen waiting for court.  Often, the

detainees will look at me while standing with their hands in their pants.  I

can see their hands moving inside their uniforms.  A handful of times, the

detainees exposed their penises to me or masturbated with their penises

outside of their pants.

5.  While I was transporting detainees, I was often alone with them.  During

transport, they would make sexually explicit comments while putting their

hands in their pants and touching their penises. Recently, DOC officers have

been assisting with transporting detainees, and they are more often cuffed

behind their backs to limit their ability to put their hands in their pants.

6.  When I worked in Judge Burns' courtroom, Courtroom 202, there was one

detainee who always targeted me.  Whenever I would come back into the

lockup and he was there, he would come right up to the door of the holding

2

Plaintiffs 001228

cell and, while touching his penis, would threaten that he was going to find me when he got out.

Witnessing Harassment of Others

7. I have seen other women experiencing the same or similar sexual harassment throughout the Leighton Courthouse.

Sexual and Sexually Violent Comments

8. I hear crude or sexual comments from male detainees directed at me all the time. Every time I walk past the bullpen, the detainees make a comment about my butt. They have said, "I want to bend her over," or "just give me one shot with her." They also tell me that they can smell my vagina and would love to taste it, that they will "treat me good," and that they will look for me when they get out.

Knowledge of Defendants

9. My supervisors know about the detainees' behavior and their sexual comments towards me and other women. Everyone knows about it. I know this is true because I talked about it with my supervisors. We are very short staffed, and the supervisors just want us to handle the incidents the best we can. That's what they've told us at roll call. There have been times when I have radioed for help because of a detainee exposing himself or masturbating but my supervisor couldn't send anyone to help me. I don't want to look like I can't handle myself at work, and I don't want to be singled out as a cry baby, so I have basically stopped complaining.

3

10. Supervisors make little to no effort to discipline the detainees or set consequences for the sexual behavior toward women. They have put a correctional officer in lockup to try to help but the behavior continues. The supervisors try to make us feel like seeing penises at work is just a part of our job. They joke and say things like, "What do you expect, they are locked up all day. You can't blame them for acting like that when they see a pretty girl." Sometime within the last year, officers from DOC have taken over most of the responsibility for watching the detainees while they are waiting for court. As a result, I do not have so many interactions with my supervisors about the detainees' behavior.

<u>Incident Reports and/or complaints</u>

11. I tried to complain about these incidents when I would go to clock out at the end of the day. My supervisors would just tell me to toughen up. These incidents happen so often, it feels like the norm.

12. I understood that I could not file any formal complaints or disciplinary reports. Once I wrote a to/from to my supervisor about it, but nothing happened.

<u>Ineffectiveness of Complaining and Discouragement</u>

13. Once, my coworker filed sexual harassment charges against another deputy. When she did this, the supervisors made things hard for her by giving her bad assignments and denying her time off requests. I am reluctant to complain about sexual harassment because I don't want this to happen to me.

4

The supervisors don't want to do any extra work – I don't want them to retaliate against me for complaining.

14. Incident reports are ineffective because the detainees know that the Cook County Sheriff's Office imposes no real consequences for masturbating at women. The detainees could care less. I have heard them joke that if they are good they will get a pizza party.

Lack of Training

15. I have never received training from the Cook County Sheriff's Office regarding how to decrease the opportunities for detainees to masturbate or expose themselves or how to respond if a detainee threatens to rape me. In the summer of 2018, we were issued an annual online training in Discrimination, Harassment, and Retaliation, but it did not specifically mention harassment by detainees. I would like some training on how to deal with this behavior when I am one-on-one with a detainee. I am OC certified but have never sprayed a detainee. When I am in the lockup by myself, it's a very unsettling feeling.

Impact on Job Performance

16. The sexual harassment changed the way I do my job. When I walk back to the lockup I have instant anxiety, so I try to avoid going there. I ask my male partners to turn in my paperwork for me, so I don't have to walk past the areas where I know I will see penises or be sexually harassed. It is hard to do my job well when I am so uncomfortable.

5

Plaintiffs 001231

17.　The behavior by male detainees toward me is unwelcome, offensive, harassing, humiliating, threatening, unsettling, and caused me to fear for my safety.  I feel anxious and my heart races every time I pass a male inmate.

18.　During every work day at the Courthouse, I experience anxiety over potential harassment and exposure.  Even if I am not the direct target of detainees' sexually inappropriate behavior on a given day, my female coworkers and I expect that at least one of us will be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse.  I think it happens to someone every day.  I know I might be sexually harassed or hear about a female coworker being harassed when I walk through the compound to my assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift.  This causes constant stress and makes it more difficult for me to focus on my job of keeping everyone at the Courthouse safe.

Emotional Impact

19.　As a result of the constant sexual harassment, I have suffered severe emotional distress and anxiety.  The harassment and masturbation at the Jail makes working there extremely stressful.  My family accuses me of being paranoid and over-protective.  I feel unsafe.

20.　The Sheriff's Office has done very little to deter the harassment.  They don't even seem to be trying to figure out a way to deter it.  I don't think they're concerned about what we put up with.  I don't think they care about us.  If

6

Plaintiffs 001232

DocuSign Envelope ID: 95ABAFCE-8D67-4DDF-87C9-8607D8032F74

they cared, they would come and look at the conditions.  Not just every once in a while, but really see what we're going through.  They don't show true concern for the deputies.

7

Plaintiffs 001233

DocuSign Envelope ID: 95ABAFCE-8D67-4DDF-87C9-8607D8032F74

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/31/2019
_____
Date

DocuSigned by:

_____
C1B376DF393848F...
Signature

Decl. Ex. 343

Plaintiffs 001234

# Declaration of Donita Hill-Shumpert

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Donita Hill-Shumpert. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since 2000. I have been assigned to various parts of the Jail in my role as correctional officer, including: Divisions 3/8, 2, 9, External Operations and Receiving. In recent years, I have been assigned to Division 9 (approximately 2010-2016), External Operations (for about six months in 2016) and Receiving since 2016.

2.  As a correctional officer, I am responsible for the safety and security of inmates at the Jail. In all of my division assignments, part of my job has been to escort inmates to and from locations such as court, medical areas, recreational areas, dorms, and inmate work locations. Currently, in Receiving, I am responsible for booking detainees when they arrive at the Jail, processing their paperwork, supervising detainees in holding, and transporting detainees—sometimes up to 15 at a time—from Receiving to their assigned Divisions.

3.  Since approximately 2012, I have frequently experienced extreme sexual harassment from male inmates at the Jail. This has included vulgar sexual comments and slurs, threatening sexual comments, remarks about my appearance, inmates exposing their penises to me, and inmates masturbating at me.

4.  When I worked in Division 9, beginning two or three years into my assignment there, I experienced these types of incidents multiple times a week and sometimes with even greater frequency. These incidents would often occur while I was counting inmates in their cells to make sure they were alive and present. Inmates knew that I was required

Plaintiffs 002163

to look in to each of their cells, so they would pretend to use the bathroom, hold their penises, and then turn their genitals toward me as I looked in. Inmates also exposed themselves to me frequently when I went around to cells to do the "switching of the hours," meaning I would lock the group of inmates that was in the dayroom back in their cells, and let another group of inmates out of their cells and into the day room. The inmates who were going back into their cells would stick their penises out of their chuckholes at me after I locked their cell doors.

5. In Division 9, I worked in the bubble, a windowed office that looked in to the tiers. It was possible for inmates to stand in the showers and position themselves so they could be seen from the bubble. They would do this and masturbate at me and other female officers. To avoid this, we would try not to look at the showers, sometimes by moving to a part of the bubble where most of the shower area was not visible. But then, inmates would find a way to move into our eyeline. For instance, they knew that if they stood in a certain part of the shower, or stood on a trashcan, we could not avoid seeing them so they would do this and masturbate at us.

6. Starting around 2012, when the inmate masturbation became rampant and widespread, I would regularly write incident reports about sexual harassment. I would usually not hear about inmates getting disciplined because of my reports, but I filed them anyway, believing they were important. Then, I noticed that investigators would often try to talk me out of pressing charges by saying things like "are you sure" and "he's going to get time considered served." After a while, I became hopeless that the Jail would do anything to stop the inmate sexual harassment because of what investigators said to me, because I heard from my fellow correctional officers about inmates who were repeat masturbators in Division 9 getting rewarded with pizza by the Jail as part of a supposed "rehabilitative" program, and because I was not hearing

Plaintiffs 002164

any follow up about inmates getting disciplined. I started to believe that filing incident reports were unlikely to have any effect on the problem.

7.     One incident that has left a strong impression on me occurred in Division 9 at a time when I was the only female officer on the tier. A male inmate began to threaten me from his cell, saying, "Hey Bitch! I'm gonna beat your ass, and then I'm going to rape you, and after I rape you, I'm gonna make you suck my dick. Then depending on how well you suck my dick, I'll decide if I'll kill you then." There were several other male officers present. None of them did anything after the inmate said this, and when we discussed it, it was clear they didn't seem to think it was important because the inmate was in his cell.  But I did think it was a big deal and wrote an incident report. No one ever followed up with me about the report and I'm not aware of the inmate receiving any discipline as a result of it. I still think about this incident and the lack of response, years later.  I've been called a myriad of names, encountered so many sexually harassing remarks, but to be threatened with that level of vulgarity and have it dismissed made me feel disregarded by my profession.  It felt extremely disrespectful to me as a human being.

8.     Around 2016, the constant sexual harassment in Division 9—and the administration's failure to address it—became too much for me. I felt totally overwhelmed. I did a "mini-bid" to work in External Operations and was assigned there for six months. During that time, I worked the 10:00 p.m. to 6:00 a.m. shift, sometimes at Stroger guarding inmates and sometimes at the external jail gates.  My interactions with detainees were much more limited during that time since at Stroger I often guarded inmates as they slept.  Even so, I still experienced sexual harassment. Male inmates would make unwelcome, inappropriate sexual remarks about my appearance, saying things like, "you have a fat ass" and, "she got a bad ass walk on her."  This happened

Plaintiffs 002165

about weekly. These harassing remarks were creepy and unwelcomed and they were especially upsetting because I had transferred to External Operations hoping to avoid the sexual harassment, yet I was still experiencing it. It made me feel like there was no escaping inmate sexual harassment at the Jail.

9.  I also sometimes worked in the emergency room at Stroger. During those times I also observed inmates sexually harassing female nurses. They would make comments to the nurses like, "look at the ass on that one." One time, I told one of the male correctional officers that I was going to write up an inmate for saying these things, and he said something like, "What for? The Jail is not going to do anything" to discipline inmates for verbal sexual harassment. I believed him, because in Division 9 I had filed so many incident reports about actual exposure and masturbation, and as far as I know, they did not lead to a disciplinary action. For this reason, I didn't write incident reports about inmates' sexually harassing comments.

10.  In Receiving, the sexual harassment by male inmates could be relentless. I was subjected to inmates exposing their penises to me or masturbating at me as often as several times a week. Mainly, this would happen frequently in male holding or on the bridge, where there are several bullpens for male inmates. I recall that one time in 2016 or 2017, a male inmate sat in the bullpen masturbating for an hour and a half, openly and in full view of many correctional officers. I know this because I had looked at my watch. None of the male officers said anything to him. By that point, I was feeling completely dejected by the Jail's lack of response to my many incident reports and to the widespread sexual harassment.

11.  I have consistently complained to supervisors—mostly men—in Division 9 and Receiving about the problem of inmate sexual harassment. For some time, I notified a supervisor of almost every incident or masturbation or sexual harassment. Their

Plaintiffs 002166

consistent response was that their hands were tied because they could not make discipline decisions about inmates, all they could do was remove them from the tiers temporarily. They said things like, "I would do more if I could." This made me feel like only policy changes by Jail administrators would improve the problem.

12. However, I had also repeatedly discussed the sexual harassment with the Jail administrators, hoping that they could help address the problem. Each time I did, my concerns were dismissed. This led to me feeling very discouraged.

13. During the time I was assigned to Division 9, I complained to Superintendent Victor Thomas about the constant penis exposure and masturbation directed at women. I asked him what the Jail was going to do about it. I also told him how uncomfortable it made me and the other women who work at the Jail, and that we needed support from the Jail. He acknowledged that it was widespread but told me that the inmates were men and asked me what I expected. I was upset and shocked. So much so that I asked him something like "when are you going to pull your penis out?"—to make the obvious point that its absurd to assume that men simply act this way, and nothing can be done. He got upset and walked away.

14. In approximately 2016, I was with Superintendent Guinta in male holding in Receiving and an inmate was masturbating at me from the bullpen. Superintendent Guinta didn't do anything, and I asked him, "do you see this?" He said that when these things happen, I should just say something belittling to the inmate. I think he specifically suggested, "what's that supposed to be, a dick?" (or something like that) to make him stop. The Superintendent did not say this or do anything else to make the inmate who was masturbating at me stop. I felt completely disgusted that this was his response. These types of comments obviously are not going to control such a widespread problem in the Jail and it also places the responsibility totally on myself

Plaintiffs 002167

and other female employees. It really left me with the impression that there was nothing that we female officers can do.

15. In 2016, I emailed Assistant Director Michael Miller to suggest that the Jail put shower curtains with Velcro, which inmates could not use them to self-harm, in the shower in Division 9 to prevent inmates from masturbating at female officers from the shower. In response, he met with me in person in Division 9, around March 2016, so that I could show him the areas where the curtains were needed. As we were standing in the bubble and I was pointing to places in the shower where the curtain could go, an inmate started masturbating at me. I remember being shocked that the inmate was so brazen, though I put the incident out of my mind and can't remember the outcome.

16. I also heard about an incident when former Executive Director Jones Tapia was in the tunnel and encountered some inmates who made vulgar comments to her. One of them said something like "I want to climb up those long legs and eat your pussy." Those inmates were immediately removed from their division, according to what officers who worked on their tiers told me. But other women, who aren't considered as important at the Jail, are regularly shown penises, masturbated at, and have things that are just as lewd or worse said to them, and no one does anything about them. I've discussed this incident, which I know to be true because I read the incident report, with female colleagues and it's just another thing that makes us feel that the Jail does not take our experiences seriously.

17. The sexual harassment has had a profound impact on me. When I get dressed in the morning, I'm even cognizant of the type of underwear I wear and dress to try to avoid any attention to my body. I wear my uniform a size too big to make sure nothing is tight on my body. But this has never stopped the harassment.

Plaintiffs 002168

18.     When I have threatened to write up inmates for masturbation, exposure, or sexual harassment, they have constantly responded with comments such as, "I ain't never cared," "what are you gonna do?" "you can't do shit to me," and "it's just a write up."

19.     At the Jail, it has gotten to the point where I'm afraid to look at inmates in the bullpens in male holding in Receiving. If I need to look at them, I try not to look below shoulder height to even glance what they might be doing with their hands in case they are masturbating. If inmates call my name, my first reaction is to ignore them in case they are going to expose themselves or masturbate at me.

20.     I have never received training regarding how to address sexual harassment by male detainees, decrease the opportunity for detainees to repeat the behavior, or what to do if an inmate tries to rape me. This type of training would make me feel better prepared to deal with the harassment.

21.     The sexual harassment aimed at me and other female officers is disgusting and degrading. There are no words to describe the sickening feeling I get when an inmate masturbates at me. I feel like we are all traumatized by their behavior. The Jail's response (or lack thereof) has made me feel devalued as an employee and human being. It is very difficult to go to work every day feeling like my employer does not care about me.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and based on my personal knowledge and beliefs.

04/18/2019                                          *Donita Hill-Shumpert*

_____               _____
Date                                                Signature

Decl. Ex. 350

Plaintiffs 002169

## KAROLINA HOGUEISSON DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Karolina Hogueisson. I was a mental health specialist at the Cook County Jail ("Jail"). I worked at the Jail from approximately March 2011 until 2016. I was assigned to various parts of the Jail, including: Division 4 for a year from the start of my employment; and in the Cermak building in locations like 2 North and Urgent Care until I left in March 2016. I was also assigned to work in Division 10. In addition to my regular assignments, I was assigned to work overtime in receiving, and I often walked through other areas of the Jail as part of my job.

2.  As a mental health specialist at the Jail, I interacted with male detainees every day.

3.  When I worked at the Jail, I experienced sexual harassment by male detainees including inmates exposing their penises to me and purposefully masturbating at me or in front of me about twice a week on average, but sometimes it happened multiple times in one day.

4.  For example, I was responsible for doing mental health evaluations on inmates who masturbated at female employees prior to sending them to segregation. I conducted the evaluations in Urgent Care. Those same inmates also masturbated at me while I was trying to conduct their

Plaintiffs 002208

evaluation.  I did not have a radio or a body alarm when I was meeting with inmates so I had to get a correctional officer to come and help me.

5.     When I worked on unit 2N in the Cermak building I saw detainees exposing their penises and/or masturbating at me almost daily. I also saw detainees masturbate at me and other female employees whenever we walked through the Cermak building Urgent Care waiting area several times a week.

6.     As another example, I was interviewing an inmate in my office which was located in Urgent Care of the Cermak building and he was sitting in front of me cuffed.  I was typing on the computer and when I looked up, I saw the inmate with his penis out of his pants and in his hand.  I immediately ended the interview and told him to leave my office.  I made a note of the incident on the inmates' chart.

7.     Inmates would masturbate as if it were a game. You couldn't look up from your desk without risk of seeing an inmate exposed.  The masturbation was so frequent that when you arrived on post in Division 10 the inmates were standing at their cells waiting for you, and if you didn't go up to their cells they would stand on their bed so you could see them performing sexual acts on themselves.

8.     I saw other women experiencing the same harassment.  For example, on a unit, if a detainee was at the glass window exposing himself or masturbating at a woman, and other women were around, we were all getting masturbated at.

2

Plaintiffs 002209

9.    Inmates also made sexual comments to me on a daily basis.  They said things like, "nice ass," and "you can suck my dick, Ms. H".

10.   After reporting masturbation several times, I felt discouraged from reporting masturbation.  I could not make a disciplinary report by myself. I had to get a CO to write an incident report, and I tried to make note of the incidents on the inmates' chart.  One time, inmate masturbated at me in Cermak Urgent Care and I asked a CO to write an incident report.  Later, I was told by an investigator that the report wasn't going to go anywhere.  He said there was no point in me pressing charges.

11.   After being told that my report probably wouldn't go anywhere, because it will get thrown out of court, I never tried to make another report, I would only make note on the inmate charts.

12.   I also stopped reporting the harassment because we were told by management not to pay attention to the catcalls, and other attention seeking behaviors.

13.   I felt like supervisors excused the harassment instead of trying to stop it. For example, I was told by my supervisor things like: "the inmates are going to do it anyways, just turn away and don't look." I also heard management say to me and other women things like, "it won't do any good," "it's not a violation if the inmate is masturbating at you but it's in his cell," and "this is what the inmates do."

3

Plaintiffs 002210

14. Known masturbators were given jumpsuits that set them apart from the other inmates, but the dress code on how the uniform should be worn was not enforced. Inmates wore their jumpsuits with the sleeves tied around their waist.

15. I never received training about what to do if an inmate masturbated at me or made sexual comments to me or how to stop the behavior. However, there was a training on how females should dress and should not dress for the job and they showed us a Power Point presentation with pictures on what the "proper" dress code was. They told us not to wear tight clothing nothing revealing, no tank tips as to not provoke the detainees to sexually abuse us. We were also encouraged to wear loose fitting cover up smocks, and told they were "readily available from the store room" to minimize "potentially provocative appearance." I felt like they were blaming women instead of addressing the problem. Besides, it didn't matter what we wore, the inmates still sexually harassed us.

16. When I worked in Receiving on my overtime shift, I did not see the new inmates get any orientation or training telling them not to masturbate at women staff or not to sexually harass women.

17. The sexual harassment made me feel disgusted, violated and inadequate at my job because I couldn't always perform the mental health services the way I wanted to. I felt like women didn't matter to the administration because

4

Plaintiffs 002211

the harassment wasn't being addressed.  I quit a good job that paid well because the harassment made me not want to go to work.

Decl. Ex. 355

Plaintiffs 002212

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

_____April 9, 2019_____          _Karelina Hagneisen_____
Date                                      Signature

Plaintiffs 002213

## LINDA HOLMES-MILLER DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Linda Holmes-Miller.  I am a Registered Nurse (RN) at Cermak Health Services ("Cermak") in Cook County Jail ("Jail").  I have worked at the Jail since April 2017, and my current assignment is on the 3rd Floor of the Residential Treatment Unit ("RTU").  I have also worked on the fourth floor.

2.  As an RN in RTU, I am responsible for providing nursing care to the detainees that are housed on my assigned floor. For example, my job duties include dispensing medication, attending to detainees' medical requests in clinic, caring for detainees' wounds, giving shots, such as insulin or flu shots, and carrying out other doctors' orders.  Some of these things require privacy, so I am sometimes alone behind a curtain with just me and the patient/detainee.  In performing all of these duties, my job requires me to have interactions with male detainees daily.

General Description of Harassment

3.  During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced detainees exposing their penises to me, male detainees purposefully masturbating at me or in front of me, and crude or sexual comments on a daily basis, including regular comments about how they want to rape and sexually assault me.

Specific Incidents of Exposure

4.    I most frequently witness detainees masturbating in the pod on the tier when

I dispense medication.  Detainees come to the window when they need

medical treatment or they sit near the pod, which is a small, glass enclosed

room.  They often masturbate while they are waiting or will come up to the

window partially clothed or wrapped in a blanket with their penis exposed.

5.    For example, I remember a few days when detainee M. B. sat in his

wheelchair next to the pod window and watched me while masturbating.  He

had a foam tray from lunch in his lap to cover up his penis.  After a few days

in a row of him sitting there just watching me, I figured out that he was

masturbating.  I told the male officer on duty what he was doing and detainee

M. B. got really hysterical about it and said I was lying.  The officer believed

him. I told my coworkers, and they believed me because the same kind of

thing happened to them too.  However, we all understood that nothing would

be done about it because it felt like nothing was ever done.

6.    As another example, once a detainee came to the window to get his meds, and

when he saw me, he put his hands in his pants, started rubbing his penis,

and then moved to the corner to try to finish (ejaculate).  I told the officer on

duty but he just said, "I don't see that."  The detainee ejaculated in his pants.

This detainee was supposed to wear a green jumpsuit, but the officers

allowed him not to wear it if he didn't "feel like it."  He shouldn't even have a

brown uniform.

Decl. Ex. 358

7.     I also have to see patients in the clinic. About once a week, detainees will
write a medical request to see a nurse because there is something wrong with
their penis. They do this on purpose just so that they can show me their
penis, which actually has nothing wrong with it. Then they will pull it out
and start rubbing on it and try to get me to touch it.

8.     The detainees are supposed to be in full uniform when they come to the
window to get their medication. Often, they aren't, because the officers don't
enforce this policy. Once, a detainee, who I think was T. G., came to the
window in just his underwear. I told him to go back and put on his uniform,
so he retaliated by pulling lidocaine patches off of his body and throwing
them at me. I wrote an E-MRS report about it. I don't know if a CCOMS
report was written about it. I don't know what happened after that or if he
actually received discipline for this because no one followed up with me.

Sexual Comments

9.     I hear crude or sexual comments from male detainees directed at me on a
daily basis. They always comment about my shape. For example, they say,
"Ooh, you fine!," "you have a nice shape – your butt is so big," and "I bet your
pussy is nice and juicy." This was embarrassing to me. They also ask if I am
happily married and suggest they could steal me away from my husband. In
addition, I often hear them say, "Nurse, there is something wrong with my
dick, come check it out!"

3

<u>Knowledge of Defendants</u>

10. Supervisors and managers at the Jail know about the detainees' behavior and their sexual comments towards me and other women. I complained and wrote incident reports that my supervisors saw. We discussed it with them. Supervisors would stop by the dispensary from time to time and chat with us and we would tell them what was happening.

<u>Ineffectiveness of complaining and writing disciplinary reports</u>

11. I complained several times to my managers at Cermak about detainee sexual misconduct. Nothing changed. Within the last few months, the nurses have been enforcing the dress code by telling the officers they won't come on the tier until the detainees in line for meds are properly dressed. This has made things a little better, but why should this be up to us?

12. I can't write detainees up myself in CCOMS, so at first I didn't write any incident reports. Just recently, I found out we could write reports in E-MRS about the masturbation. At first I thought E-MRS was just for reporting physical injuries. However, I have never had any follow-up about any reports I have written in E-MRS regarding detainee sexual misconduct.

13. The officers don't do anything until we say something. They are protecting themselves; they have to keep up a positive relationship with the detainees so they don't get injured or disciplined. If the nurse says something, they pretend like they didn't know it was a problem.

4

Plaintiffs 001313

Ineffectiveness of steps taken

14.    Known masturbators are supposed to wear green jumpsuits, but the officers
       don't always enforce this unless there are observers like lawyers or their
       supervisors present.  I sometimes see detainees changing out of the green
       jumpsuit into a brown uniform, which they are not supposed to have.
       Alternatively, they wear the green jumpsuits open far enough or ripped so
       that their penis is exposed.  The jumpsuits do not deter masturbation and
       exposure.

15.    Also, often the green jumpsuits are the wrong size.  If it's two sizes too small
       and too tight, the detainees will wear it open or bust out of it.

Lack of Training

16.    I never received training from the Cook County Sheriff's Office regarding how
       to address the masturbation or sexual harassment by male detainees, or how
       to respond if a detainee tries to rape me.  Cermak gave us training about
       detainee suicide but never about sexual harassment or rape of a nurse by a
       detainee.

Impact on Job Performance

17.    The sexual harassment changed the way I did my job.  Now, if a detainee
       requests to have his penis examined, I always request that I work with a
       male coworker in the clinic so that I am never alone with these detainees and
       the detainees who actually need medical attention can get it.  In addition, the
       constant harassment makes me more alert and focused on protecting myself

5

and staying safe. In other words, because of the constant sexual harassment, I sometimes fear for my safety. This makes it difficult to do my job.

18. Furthermore, the harassment changed the way I dressed at work. I can't take my lab coat off anymore when I get hot. The sweat pours off of me and I still can't take it off. Sometimes I tie it around my waist so that at least my rear end is covered. When I take it off or put it back on, the detainees comment and ask my why I am doing that in a way that makes me feel uncomfortable. I should not have to be questioned about what I wear.

19. All my coworkers wear their lab jackets all the time too. We all feel uncomfortable being just in scrubs around the detainees.

20. The behavior by male detainees toward me is embarrassing, offensive, harassing, degrading, and causes me to fear for my safety. It is simply intolerable. It shouldn't be this way. We are there to do a job, and we shouldn't be treated like that.

Emotional Impact

21. As a result of the constant sexual harassment, I have suffered severe emotional distress. Sometimes I find myself covering up my body when I am out in public or at my second job. I am constantly wary of people looking at my body. It makes me ashamed of my body. Sometimes I come home angry. My husband gets frustrated because I can't say anything to the detainees myself and no one is doing anything about it.

DocuSign Envelope ID: D52C082E-DA96-40F3-B377-43F33315080D

22. I just get really frustrated. I want to be able to go to work and say I did a good job taking care of people. I shouldn't have to talk about how I had to watch guys masturbating – it undermines what I do and makes me feel unprotected and threatened.

23. The Sheriff's policies make it feel like the officers are just there to collect a paycheck. It's ok for the detainees to basically do whatever they want.

7

Decl. Ex. 363

DocuSign Envelope ID: D52C082E-DA96-40F3-B377-43F33315080D

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

3/19/2019

_____

Date

DocuSigned by:

*Linda Holmes-Miller*

_____
87792D41F6824CA...

Signature

8

Decl. Ex. 364

Plaintiffs 001317

<u>**ROSETTE HUNTER DECLARATION**</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.     My name is Rosette Hunter. I am a registered nurse at the Cook County Jail ("Jail"). I have worked at the Jail since approximately November 2004. I have been assigned to various parts of the Jail in my role as a registered nurse, including: Divisions 11, 3, 4, 17 (Women's Detox Division), 10 from 2015 until May 2018, and most recently in Cermak. I have occasionally been assigned to Division 9 as well.

2.     As a registered nurse at the Jail, I am responsible for the health of individuals being held at the Jail in pretrial detention. For example my job duties include, but are not limited to, supervising detainees' activities while they are in the dispensary. I am also responsible for managing, monitoring and assessing chronic illnesses and acute situations, medicating detainees, and taking care of the STI clinic. In all of these assignments, my job has required me to have interactions with male detainees daily.

3.     At the Jail, I endure sexual harassment by male detainees, including detainees exposing their penises to me, purposefully masturbating at me or in front of me, making sexual comments to me on a daily basis in Division 10, making sexual remarks about my appearance and making sexual gestures at me.

Plaintiffs 002214

4. I most frequently see detainees masturbating or exposing their penises whenever I make rounds to distribute medication. The detainees know when we are coming on tier to give out medication so it's a good chance you are going to be flashed. On Division 10, the exposure occurred every day. It also happened on Division 9.

5. I have also seen detainees masturbating at me while I was on the 3-D side of Division 10. For example, in 2018 I was standing with an escort officer passing out medication and I could see two guys in front of me masturbating. I looked to the right and left of me and detainees were on both sides masturbating. I reviewed the camera and it showed five detainees masturbating at me.

6. I have heard about other women get masturbated at. For example, one of our nurses, Kim Anderson told me she was on the tier of Division 10, while she was in the bubble passing out medication a detainee was looking at her from the window masturbating. The detainee masturbated and ejaculated all over the window of the bubble. Another nurse experienced the same harassment. That particular nurse no longer goes on the tier of Division 10 because the same detainee kept coming to her making comments, exposing himself and masturbating at her.

7. It feels very unsafe as a woman and as a nurse because of the sexual harassment. We can't do anything to protect ourselves the way that officers could if they had to. We don't even have a body alarm or a radio. I would like

2

Plaintiffs 002215

to have a body alarm for an extra security precaution because if your escort officer needs to step away for some reason you have no protection.

8. The detainees say sexual things to me on a daily basis when I am in Division 10.. They say things like, "If I was you husband, I would run your bath water." The male detainees will also lick their tongue at me or make hand movements as if masturbating. Sometimes the escort officers will say something to the detainee, other times they don't do anything about it. Officers have said things to me like, "There's nothing we can do" or "you know how these guys are."

9. Detainees also masturbate and expose themselves to female supervisors. For example, there have been times we've had to go on tier for medical emergencies, the detainees are supposed to be lined up against the wall while we go down the tier. A few of the detainees will expose themselves even when female white shirts are present.

10. I often verbally notify my escort officer and supervisor about detainee harassment. As a nurse, I can't write my own incident report so I usually verbally report the harassment. It is up to an officer to write an incident report. For example, I asked an officer to write a report in September 2017, in Division 10, when five detainees exposed their penises and began masturbating while I was medicating. I said to the escort officer that was with me "do you see this" and he replied, "Yes, I got you." The escort officer gave the detainees verbal orders to stop and then called the lieutenant. After

3

Plaintiffs 002216

the lieutenant reviewed the tape the detainees were removed from the tier. I felt lucky this time that the detainees were removed because sometimes the escort officer does not do anything or sometimes I have been told if the lieutenant can't see anything on the video then nothing will happen to the detainees. Also, immediately removing them is only a partial solution. I was not immediately told whether detainees are disciplined or not. So, when I first went back on that tier I was worried that those same five men who masturbated at me could be there at any time. It turned out that an officer told me that only two of them were disciplined, two others were released back to the same tier, and I'm not aware of what happened to the fifth detainee. So I had to face two of the men who group masturbated at me whenever I went to work on that tier. This made me feel like incident reports don't work because there aren't real consequences for everyone. Even though the detainees did not put their hands on me it made me uncomfortable. I felt like a rape victim who had to see the people that assaulted me.

11.    I have heard about other women being physically groped by detainees. For example, a paramedic, Ms. Bains filed a complaint after she was embraced by a detainee who is a known sexual offender. He pressed his body up against hers trying to give her a hug. After complaining to several white shirts about the incident, she felt like she was discouraged from making reports because management thought she was trying to make things difficult and just complaining. She heard male officers say that things such as: she welcomed

4

Plaintiffs 002217

it, "well you leaned into it," and "you didn't do anything or try to push him away."

12. Some supervisors excuse the detainees' behavior rather than try to stop it. For example, I've been told things like, "They're probably not going to do anything because their cell is considered their residence." I've also been told by male co-workers "what can I do about it, you know there guys they are animals," and and "this is what's to be expected, they are a bunch of men who don't see women often."

13. I have never received training from Cook County or the Sheriff's office about what to do when an inmate is masturbating at me or other women. No one has given us examples of situations and told us what to do.

14. Because of the sexual harassment, I try to limit my contact as much as possible with detainees without compromising care.

15. Chronic masturbators are supposed to wear green jumpsuits, but the opening for the jumpsuits are in the front of the suit were detainees can still reach their penis. Also, most detainees don't wear the jumpsuit the way it's intended to be worn, they wear the jumpsuit half on with the sleeves tied around their waste. Detainees also wear plain uniforms instead of the jumpsuits and the dress code is not enforced.

16. The sexual behavior by male detainees toward me makes me feel helpless and like a victim. Even though no one has put their hands on me, I still feel violated. The harassment is emotionally draining, distracting and

5

Plaintiffs 002218

uncomfortable.  I sometimes doubt myself and start questioning my own behaviors, wondering if I am doing something to attract their attention. Most of the time I wear scrub jacket to try not to attract their attention and it feels like something that I can do to cover my body even if it doesn't stop the sexual harassment.

6

Plaintiffs 002219

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/17/2019

_____

Date

_____

Signature

Plaintiffs 002220

DocuSign Envelope ID: 1341F2AB-8CCE-44D9-AACC-6F713C86462E

## <u>BRIDGET INSLEY DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Bridget Insley. I am a Court Services Deputy at the Leighton Courthouse ("Courthouse"). I have worked at the Courthouse since approximately February 25, 2002. When I started, I was stationed at the front door of the Courthouse. I am currently assigned to courtroom 201 and have been working there for the past seven years.

2. As a Court Services Deputy at the Courthouse, I am responsible for the safety and security of detainees being held in holding cells near my assigned area and attorneys who consult with the detainees. I am also responsible for the safety and security of individuals in the courtroom, including courtroom personnel and civilians. For example, my job duties include, but are not limited to: providing security in courtrooms and at the building entry, transporting detainees between the bridge and courtroom, securing detainees coming to court and during the court process, securing the safety of the courtroom, and keeping track of the detainee's court dates and paperwork. Occasionally, I also have to take a defendant into custody if the court remands them. In all of these assignments, my job has required me to have interactions with male detainees on a daily basis. I usually work with a partner, who is almost always male, unless we are short-staffed.

<u>General Description of Harassment</u>

3.   During my employment at the Leighton Courthouse, I have endured sexual

harassment by male detainees, which they direct at me and at other female

employees. I have experienced: (a) detainees exposing their penises to me; (b)

male detainees purposefully masturbating at me or in front of me; and (c)

crude or sexual comments on a daily basis, including bullying me to drop the

criminal charges I have filed against them for their behavior.

<u>Specific Incidents of Exposure and Harassment</u>

4.   I most frequently saw detainees masturbating with their penises exposed

while they were in the bullpen waiting for court.  The detainees sometimes

masturbate with their tongues hanging out.  I see some form of sexual

harassment almost every day, but there were at least 20 times where I felt

like the masturbation, exposure, or comments were worse than usual. In May

of 2017 one of the most violent offenders in the Courthouse, detainee Redact

███, was physically confrontational and aggressive towards me while

masturbating.  He was waiting in the lockup behind my courtroom for his

hearing, and every time I went back there he threatened me.  I pressed

criminal charges against him because he made me fear for my safety.

5.   In 2017, Redacted or his codefendant, Redacted , were in my

courtroom 14 times.  Towards the end of the year, the court started assigning

them separate hearing dates because they acted aggressively and threatened

the safety of the courtroom when they were together.  Because I filed charges

2

against ███████ , I felt threatened each time I had either one of them in my courtroom.

6.      Finally, in the fall of 2017, ████ was put on the Do Not Transport list.  This meant that he waited on the bridge instead of in the courtroom lockup until his hearing time.  On November 20, 2017, ████ was scheduled for court to meet with his attorney. He was the only detainee on the docket; he was given that day in order to limit his interactions with other detainees.  Nevertheless, I still had to go pick him up from the bridge.  The two of us were alone together during this time and he repeatedly threatened and harassed me regarding the criminal charges for indecent exposure I had filed against him.

7.      I kept a log of every detainee who was in lockup outside of my courtroom.  In that log, I would try to note when a known masturbator, a dangerous detainee, or a detainee who had behavior problems was present.  For example, on September 25, 2017, I had two known masturbators in my courtroom, ███████ and ███████ , and on September 26, 2017, I had a detainee, ███████ , who refused to wear his shirt and acted out by flooding the bullpen.  Because these detainees' cases were always up in front of the same judge, I kept seeing them over and over again.

8.      I have also witnessed detainees masturbating on the bridge while walking to and from court.  I can't keep track of all the times I saw that because there are so many examples.

3

<u>Witnessing Harassment of Others</u>

9.  I have seen other women who work in other positions experiencing the same or similar sexual harassment throughout the Leighton Courthouse. Among other things, I've witnessed detainees masturbating at female attorneys. For example, on September 20, 2017, I witnessed detainee █Redacted█ masturbating in front of public defender Niyati. He had also been in the lockup behind my courtroom the month before and had spent the whole day with his pants down below his waist and his penis exposed.

<u>Sexual and Sexually Violent Comments</u>

10. I hear crude or sexual comments from male detainees directed at me all the time. Most frighteningly, detainees █Redac█ and █Redacted█ harass me every time I see them and try to bully me into dropping the indecent exposure charges against █Redac█. These two detainees, who are co-defendants on the same case, are so violent and inappropriate, they cannot even attend court together and must be kept separate from other detainees.

11. Besides these threats, detainees have called me "Betty Big Boobs," have asked to see my "tits," asked me if I have ever been "titty fucked," asked me to show them my pussy, asked if I like getting my pussy licked, and told me they wanted to lick my pussy.

12. It's very jarring to hear these words while I am trying to do my job. I don't want to seem like a baby in front of my male coworkers, so I try to ignore it and make it background noise. I can either cry about it and look like a fool to

4

my colleagues or figure out how to get through the day. I try to note when the most serious offenders will be in my courtroom so I can prepare myself. Knowing it will happen does not make it easier to deal with.

Knowledge of Defendants

13. My supervisors know about the detainees' behavior and their sexual comments towards me and other women. Everyone knows about it. I know this is true because I have complained to my supervisor at least seven times and have filed criminal charges once. Once, I was dropping prisoners on the bridge, I saw 3 or 4 detainees just walking around. One was peeing in a corner; the rest were masturbating. A few supervisors from the Jail were supposed to be escorting them, but they were just standing there. They didn't acknowledge the behavior or try to stop it. They just did nothing. Every supervisor in the building knows about it. I can't think of a single supervisor that hasn't heard something inappropriate said by a male detainee to female deputies.

14. Supervisors make no effort to discipline the detainees or set consequences for the sexual behavior toward women. I didn't even think I could do anything about it, let alone file criminal charges, because I was made to think that this behavior was just part of my job. Until I filed charges, I pushed and pushed to get something done, but I had to just deal with it – no one took any action. All the supervisors would say things like, "what do you expect, they are in

5

cages," and "you're going home at the end of the day." A few times I heard that, I cried.

15. On February 8, 2017, and several other days around then, all of the detainees in my courtroom were handcuffed in the back. However, many of them would contort their bodies so that they could step over the cuffs and have their hands in front. Director Blake told us that if they do that, we should just leave them that way. On that particular day, detainee ▇▇Redacted▇▇ was in my courtroom, acting irate, loud, and aggressive. It was scary. But I was just supposed to leave him alone.

16. A few times, at Roll Call, our supervisors would mention the masturbation and exposure. They would tell us that the detainees are criminals, and there's nothing we [the supervisors] can do to make them stop. I heard this often enough that I believed it. When I found out I could do something by filing criminal charges, I was shocked.

Incident Reports and/or complaints

17. I have made many verbal complaints to my supervisors, but even they don't think anything can be done. These incidents happen so often, it feels like the norm.

18. I filed an incident report and criminal charges against detainee ▇Redacted▇ after he exposed himself to me on May 10, 2017. While the charges were pending, ▇Redac▇ and his co-defendant, ▇Redacted▇, asked me to drop the charges repeatedly and in an aggressive and threatening manner each time I

6

saw them at work.  I have been on disability leave for the past several months, but now that I am back I am afraid I will see them again in my courtroom and the harassment will resume.

<u>Ineffectiveness of Complaining and Discouragement</u>

19.    After a while, I felt discouraged from complaining about each incident of detainee masturbation because I came to understand that there was nothing to do about it.  We would vent all the time about the detainees' behavior, with our colleagues and supervisors, and people would just say things like, "it's not like you work at Marshall Fields.  This is part of your job."

20.     I have been harassed so often by detainees regarding the criminal charges I filed, that I may never file charges again.  My colleagues look at me differently and I am embarrassed.  I would have a hard time telling my husband if I had to file charges again.   My supervisors do nothing to stop the detainees from harassing me about the charges I filed.  They tried keeping detainee ██Redacted██ on the bridge instead of in the lockup behind my courtroom, but I have still had to go and get him from the bridge by myself.  That was when the worst harassment happened.

21.    Incident reports are ineffective because the detainees know that the Cook County Sheriff's Office imposes no real consequences for masturbating at women.  Detainees know that nothing will happen to them.  When I tell them to stop masturbating or to be respectful, they say, "fuck you."  Other times they say, "Ain't shit gonna happen.  What are you going to do, put me in jail"?

7

22.     My colleagues and I have written incident reports and To/From memos about this behavior and we see no change. Tom Dart has never done anything to stop the incidents of masturbation and exposure in the courthouse. I heard that they track the detainees who are caught masturbating and you can see it on their jail record, but we never had access to that until recently. There's no way to tell from the court record whether a detainee is a masturbator. Luckily, I have my book and I know which ones to look out for. However, even if the Sheriff's Office identified them it wouldn't make any difference in their behavior.

Lack of Training

23.     I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee threatens to rape me. I had an inservice training about sexual harassment, but it was about employee-to-employee harassment. My colleague asked the instructor about detainee-to-employee harassment and the instructor said that that isn't sexual harassment.

24.     I would also like some training on how to deal with the stress of the constant sexual harassment. I would like some tips on how to protect myself physically and emotionally; something that would make me feel like I have power over my situation at work.

8

<u>Impact on Job Performance</u>

25. The sexual harassment changed the way I do my job. I feel like I can't do my job very effectively because I don't have the confidence I had before.  When I know there will be a masturbator in my courtroom, I am on edge. I would never hesitate to help anyone or respond to a call, but my decision making is not the same as it was before.  Now I am afraid I will be raped every day.

26. Furthermore, the harassment changed the way I dressed at work. Every day I wear a big, bulky sweater to cover up my breasts. I get extremely hot and sweaty.  But, it doesn't matter what I wear.  The detainees still harass me.

27. The behavior by male detainees toward me is unwelcome, offensive, harassing, humiliating, degrading, frightening, threatening, and caused me to feel nervous, ashamed, embarrassed, and to fear for my safety.

<u>Emotional Impact</u>

28. As a result of the constant sexual harassment, I have suffered severe emotional distress.  The harassment and masturbation at work makes working there extremely stressful.  My marriage has been affected because being intimate with my husband only makes me think about the detainees' behavior I am exposed to at work.  The masturbation and indecent exposure are so prevalent that I am no longer able to separate those images from

9

Plaintiffs 001258

images from being intimate with my husband. We are probably going to be separated and divorced soon.

29. I have been deeply affected by this personally. I am not the same person I was before I started working there. I am angry. I don't want to cry over this. This is not the person I want to be.

30. I feel that Tom Dart has done nothing to deter the sexual harassment by detainees. He is my neighbor – I see him all the time, but he doesn't recognize me. I've read that other places are doing things to curtail sexual harassment in the workplace. I don't understand why the Sheriff's Office has not. I wish I could stop working here, but I have nothing else I can do. I wish I had picked a different career.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

2/3/2019
_____
Date

_____
Signature

11

# KATIE JACOBOWSKI

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Katie Jacobowski. I am a mental health specialist at the Cook County Jail ("Jail"). I have worked at the Jail since June 2015. I have worked in various parts of the Jail in my role as mental health specialist, including: Division 8 RTU (Residential Treatment Unit) and Division 6, Cermak-Urgent Care, and overtime/reassignment in all areas. I have been working in Division 6 since October 2017.

2.  As a mental health specialist at the Jail, I am responsible for the safety and health of individuals being held at the Jail in pretrial detention. For example, my job duties include, but are not limited to, ruling out malingering, assessing inmates' illnesses and providing them with the appropriate level of care, administering group therapy sessions, and administering one-on-one mental health clinics. I interact with male inmates every day. Since starting at the Jail, I have only worked with male inmates, except for rare reassignment and overtime in female areas.

3.  The male inmates sexually harass me by masturbating at me, exposing their penises to me, and saying sexual things to me.

4.  Inmates masturbate at me with their penises exposed, with their hands in their pants, or on top of their pants while they are in group and one-on-one therapy sessions. They most frequently masturbate with their hands in their

Plaintiffs 001445

pants or on top of their pants.  I have witnessed this about 50 times.  This happened in the Urgent Care units with inmates from the maximum-security divisions, RTU, Divisions 9 and 10, but also in Division 6.

5.  Sometimes, male inmates can be very discrete about masturbating at women at the Jail, causing me to be extremely paranoid.  I often question when inmates sit certain ways or shift in their seats, distracting me from my job and causing me to be too alert, on edge, and hypervigilant.  I concerned about being masturbated at and it impacts me as a therapist.

6.  If an inmate has a history of sexual harassment and masturbating at women, I often ask to talk to them on the telehealth video and audio system rather than face to face.  I try to avoid Division 9 because so many of the detainees there masturbate at women.  Also, sometimes when we receive a health service request form, if I feel like I can't handle the harassment or seeing men masturbate at me, I will set up a telehealth meeting instead of meeting in person.

7.  I have seen women who work in other positions being subjected to the same or similar sexual harassment. Female staff talk among ourselves about how to deal with inmates masturbating.  We discuss how to handle situations when masturbation is not outwardly obvious, how to get help, and how to stop the masturbation before it escalates to affect staff and other inmates. We have to do this ourselves because the County and the Sheriff's Office haven't provided us with solutions.

2

Plaintiffs 001446

8.  For example, in Spring 2017, while I was leading group therapy for the inmates in Division 8 RTU, one inmate kept staring at me while using his hand to masturbate over his pants. He never exposed himself, but I knew he was masturbating. Because this was a therapy session, I explained the rules to him and told him he had to keep his hands on the chair, but he did not stop I had to remove him from the session and call an officer over to assist. I was never given instructions by the County or the Sheriff's office on how to deal with this type of situation, there was no protocol put in place. I reported the incident using a reporting form that we faxed to a number. Someone at the Sheriff's office was supposed to follow up; but, I never got a response. This was an extremely overwhelming process and I did not receive a response to my report. I guess I wasn't surprised that I didn't get a follow up call. It was extremely disheartening and reiterated that no one cares if female employees are masturbated at. I am already so busy, and the reports feel like additional paperwork that no one looks at.

9.  Male inmates often sign up for appointments just so they can have interactions with women. Inmates have faked family deaths and suicidal thoughts to get one-on-one mental health appointments with female specialists. Inmates then masturbate under the desk with their hand in their pants and try to prolong our appointment. This also impacts my ability to do my job because I don't always believe inmates when they schedule

3

Plaintiffs 001447

appointments. A lot of inmates lie about illnesses and suicidal thoughts in order to be able to masturbate. I've lost a lot of empathy around this issue.

10. When I worked in Cermak- Urgent Care several male inmates are cuffed using "blue box cuffs" when meeting with me. These are supposed to be more secure, but they are still able to expose themselves during sessions.

11. When I worked night shifts, there was rarely male specialists working the same shift as me. This was extremely uncomfortable because we did not have the option to give problematic inmates who wanted to masturbate at women to male specialists.

12. The male inmates treat women like sex objects. When women walk past the tiers there is always a lot of cat calling. They sexual things to me on a regular basis.

13. I also hear detainees yell sexual threats at me, such as "Hey white girl, I'm gonna f*ck you."

14. The Jail supports a culture that dismisses women's complaints about sexual harassment. I have been told by some male correctional officers things like, "this is what you get paid for," "this is just part of your job, accept it," and asked, "why are you complaining about this." Male officers joke about the masturbation rather than take it seriously.

15. Because of the harassment, I am very cautious of my appearance. I never wear makeup or do my hair. I always wear dark clothes, usually a pair of black pants, but this has not stopped the masturbation.

4

Plaintiffs 001448

16.     The sexual harassment has really impacted me. For example, the
        masturbation and sexual harassment has changed the way I feel about sex in
        my personal life; I feel grossed out and disgusted by sex based on my
        experiences at the Jail.  It makes me think that men, in general, are gross.
        This has caused problems in my personal relationships.  I am overwhelmed
        and sometimes feel hopeless at work.

5

Plaintiffs 001449

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

03/23/2019

_Katie Jacobowski_

_____
Date

_____
Signature

Plaintiffs 001450

DocuSign Envelope ID: 48B373DB-B4E5-4D92-83D1-360291B2C06E

# PATTI JAGIELSKI DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.      My name is Patti Jagielski. I am a Court Services Deputy.  I worked at the Leighton Courthouse ("Courthouse") from approximately July 11, 1993 until March or April of 2018.  At that point, I transferred to the court facility in Markham.  At the Courthouse, I worked in various courtrooms, on the bridge, in the office, and at the front door of the Courthouse.  My last courtroom assignment was in room 606, where I worked for about one or two years. Before that I worked in room 504 for about a year.  During the time I worked at the Courthouse, I sometimes also worked overtime in bond court on the weekends.  Now that I am assigned to work at Markham, there are fewer opportunities like that to work overtime.

2.      As a Court Services Deputy at the Courthouse, I was responsible for the safety and security of detainees being held in holding cells near my assigned area and the attorneys who consulted with the detainees. I was also responsible for the safety and security of individuals in the courtroom, including courtroom personnel and civilians. For example, my job duties included, but were not limited to: providing security in courtrooms and at the building entry, transporting detainees between the bridge and courtroom, securing detainees coming to court and during the court process, making phone calls to secure services for detainees and courtroom personnel, and

Plaintiffs 001021

keeping track of the detainees' court dates and paperwork. In all of these assignments, my job required me to interact with male detainees on a regular basis.

General Description of Harassment

3. During my employment at the Leighton Courthouse, I endured sexual harassment by male detainees, which they directed at me and at other female employees. I experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments at least a few times a week.

Specific Incidents of Exposure and Harassment

4. I most frequently witnessed detainees masturbating with their penises exposed while they were in the lockups waiting for court. I witnessed this type of behavior a few times a month for the last three years I worked at the Courthouse. When it happened, I just had to deal with it because we didn't have enough staff to help stop the detainees from engaging in this type of behavior. Even when the County sent "p-p watchers," employees who would stand by the lockup area and try to deter masturbation, the behavior continued.

5. Once, a detainee I was guarding in the lockup masturbated continually while staring at me for three to four hours. While he was masturbating at me, he said, "Snow bunny, come suck it off." He dropped his pants and put his penis through the bars. I told him to put his penis away, but he didn't. When I

2

complained to my supervisor, he did nothing, and told me the detainee had to stay where he was because he had court.

6.     I have also witnessed detainees masturbating near the bathroom area, where there aren't any cameras.  Often they would call out to me, "Hey Ms. J," to force me to look at them while they were masturbating or exposing themselves.  They also wag their penises back and forth while walking to court on the bridge.  I and other Deputies try to make it a point to walk behind the detainees while escorting them to court so we don't have to see the detainees' penises.

Witnessing Harassment of Others

7.     I have seen other women who work in other positions experiencing the same or similar sexual harassment throughout the Leighton Courthouse. For example, I was present in the courtroom once when a detainee masturbated in front of a Public Defender's intern.  The detainee was wearing a green jumpsuit, which meant that he had already gotten in trouble for masturbating at a female.  He was standing right in front of my partner, facing away from him.  When the detainee pulled out his penis, the intern screamed, and when my partner moved to look the detainee put his penis away quickly to keep my partner from seeing.  The Public Defender and the Court Clerk were also in the courtroom at the time, waiting for the judge to return.

Decl. Ex. 391

Plaintiffs 001023

<u>Sexual and Sexually Violent Comments</u>

8.    I heard crude or sexual comments from male detainees directed at me all the time.  Besides the example above, where a detainee masturbated while looking at me for hours and said, "snow bunny, come suck it off," detainees have said, "Let me fuck you in the ass," "Show me your titties," "Show me that G spot," and "Suck it." I've also been asked, "Have you ever been fucked by a black guy before?" and told "I'll make you cum so hard."  They also threatened to pee on me.  The comments happened so often, I had to learn to block them out.

<u>Knowledge of Defendants</u>

9.    My supervisors know about the detainees' behavior and their sexual comments towards me and other women. Everyone knows about it.  I know this is true because I complained more than ten times to my supervisors Lieutenant Dillon, Sergeant Quinque, and others.  I have also filed at least seven complaints about it.  In addition, I filed a hostile work environment claim with the union.  One time, Lieutenant Dillon and I were watching a security tape and I witnessed a detainee with his penis exposed in front of Deputy Evette Trejo.  Dillon said, "Did you see the 'arm' on that one? It was like a third arm.  Your husband will be embarrassed after he finds out what you saw today."

10.    Another time, I warned my colleagues over the radio that there was a masturbation incident occurring.  My supervisor, who I think was Lieutenant

4

Dillon at the time, yelled back at me over the radio and told me not to do that. There were "higher-ups" in the building, including Kevin Connelly, Executive Director of Cook County Sheriff's Office, and my supervisor didn't want to get in trouble.

11. Supervisors make no effort to discipline the detainees or set consequences for the sexual behavior toward women. The Courthouse deputy staff is often short-handed. Supervisors have told me that there is nothing that they can do to stop the masturbation because they don't have enough people.

12. My supervisors, Lieutenant Baker, Lieutenant Dillon, and one whose name I can't remember told me that detainee masturbation and indecent exposure are just part of my job. According to them, I should just get used to it. The third supervisor said to me, "I don't know what all the girls around here are complaining about (with this lawsuit), it's part of the job." I asked him if he would want his wife or daughter experiencing this. He said, "That's what you signed up for."

13. At morning roll call, we often asked our supervisors what they were going to do about the masturbation, and they said they couldn't do anything about it. As far as I know, none of my complaints, verbal or written, have resulted in any effective discipline for detainees or in a change in their behavior.

Incident Reports and/or complaints

14. I made many verbal complaints to my supervisors, including Lieutenant Dillon, Lieutenant Baker, Sergeant Quinque, and others, but nothing ever

Plaintiffs 001025

DocuSign Envelope ID: 48B373DB-B4E5-4D92-83D1-360291B2C06E

changed. They usually made jokes about it. These incidents happened so often, it felt like the norm.

15. I filed written complaints four or five times in the last year I worked at the Courthouse, and at least twice prior to that. No one has ever followed up with me on those complaints. I could have filed more, but eventually I realized it was pointless to do so unless there was especially egregious behavior or good camera evidence to corroborate what happened. Once, I was called to testify in the sentencing hearing for a detainee who had been convicted of murder, because while he was a detainee, I witnessed him engaging in sexual misconduct and complained about it. At least the judge listened to me and said that the detainee's sexual misconduct was additional evidence that he had no regard for human life.

<u>Ineffectiveness of Complaining and Discouragement</u>

16. After a while, I felt discouraged from complaining about each incident of detainee masturbation because I became labeled as a crybaby by my coworkers and supervisors. I wanted to file criminal charges against some of the detainees, but management's lack of response to my written complaints has led me to believe that it wouldn't matter if I filed them. The behavior would have continued. I even heard that some detainees were given pizza as a reward for not masturbating for a while. This only encouraged more detainees to masturbate so they would be able to get pizza too.

17. Incident reports are ineffective because the detainees know that the Cook County Sheriff's Office imposes no real consequences for masturbating at women. Many detainees are facing long sentences and discipline tickets, or indecent exposure charges do not matter to them, especially because they often don't result in additional consequences. They say things like, "I'm fighting much more than just my dick," or, "Ain't shit gonna happen." When supervisors from the Jail came to the Courthouse, they would often complain that a particular detainee had been masturbating all day, but they were not allowed to take any action to stop them. Some detainees have told me that in other jails, there is punishment for this type of behavior that actually makes a difference.

Lack of Training

18. I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee threatens to rape me. Since the preliminary injunction was entered, we have received general orders about what to do when we see a detainee masturbating or exposing himself, but the orders change often, and we haven't received any training on how to do the things the orders say we should.

19. Female detainees are often also victims of sexual harassment by male detainees. A coworker told me that once, when he had to go into the

7

Decl. Ex. 395

Plaintiffs 001027

DocuSign Envelope ID: 48B373DB-B4E5-4D92-83D1-360291B2C06E

courtroom for a minute, a male detainee sexually assaulted a female detainee
by reaching around the bars in the lockup behind the courtroom and putting
his finger in her vagina.  I have never received any training about how to
handle these types of situations either.

Impact on Job Performance

20.    The sexual harassment changed the way I do my job. For example, I have
trouble making eye contact with the detainees, which makes it harder for me
to ensure their safety and the safety of others.   Also, I took a lot of sick days
towards the end of my time working in the Courthouse because I could not
handle being sexually harassed at work anymore. This affected my ability to
perform well in my job so much that I chose to transfer to Markham, where I
have lower seniority and make less money without access to as many
overtime opportunities.

21.    Additionally, the harassment changed the way I dressed at work.  In the last
few years, to try to avoid attracting attention, I stopped wearing much
makeup or trying to look my best when I went to work.  But, it didn't matter
what I wore.  The detainees still harassed me.

22.    The behavior by male detainees toward me is unwelcome, offensive,
harassing, disturbing, humiliating, threatening, and caused me to fear for my
safety.

23.    During every work day at the Leighton Courthouse, I experienced anxiety
over potential harassment and exposure.  Even if I was not the direct target

8

Plaintiffs 001028

of detainees' sexually inappropriate behavior on a given day, my female coworkers and I expected that at least one of us would be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse. I think it happened to someone every day. I knew I might be sexually harassed or hear about a female coworker being harassed when I walked through the compound to my assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift. This caused constant stress and made it more difficult for me to focus on my job of keeping everyone at the Courthouse safe.

Emotional Impact

24.     As a result of the constant sexual harassment, I have suffered severe emotional distress. The harassment and masturbation at the Courthouse made working there extremely stressful. Being a female deputy is hard to begin with, but this made it almost unbearable. It affects my mental health; I am depressed and have gained a lot of weight. My marriage has been affected because I am ashamed and humiliated by the things I see at work and I am turned off by the idea of sex. My husband, who is also an employee of the Cook County Sherriff's Office, has to hear from his colleagues about his wife seeing penises all day. It is embarrassing. I am disgusted with the lack of action to deter sexual harassment within the jail. When an inmate complains about something, the Sheriff's Office responds right away. When I complained about this offensive and degrading treatment, I was blackballed,

9

labeled as a complainer, and ignored.  Our job is to protect the detainees, but no one is protecting us.

10

DocuSign Envelope ID: 48B373DB-B4E5-4D92-83D1-360291B2C06E

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/13/2019

Date

Signature

11

Decl. Ex. 399

Plaintiffs 001031

## ALTA JOHNSON DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.     My name is Alta Johnson. I am a Lieutenant at the Cook County Jail ("Jail"). I have worked at the Jail since November 1, 2004.  I am currently assigned to Division 10, but I have worked all over the Jail.  I was promoted to Sergeant in 2012 and then to Lieutenant in 2015.  Since I was promoted to Sergeant in 2012, I have been assigned to Records, Division 10, Division 4, and Division 3.  From 2015-2017 I was a non-bid Lieutenant, where I worked in almost every area of the Jail, including Division 10, Division 11, Division 6, RTU, and RCDC.

2.     As a Lieutenant at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention and maintaining order at the correctional facility, and also for supervising the officers and sergeants on duty. For example, my job duties include making shift assignments, signing off on incident reports, escorting detainees, securing detainees, responding to detainee complaints, and responding to all incidents that occur on my shift in my Division.  In performing all of these duties, my job has required me to have interactions with male detainees daily.

General Description of Harassment

3.     During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I

Decl. Ex. 400

have experienced detainees exposing their penises to me, male detainees purposefully masturbating at me or in front of me, crude or sexual comments on a daily basis, and regular comments about how they want to rape and sexually assault me.

Specific Incidents of Exposure

4.  I most frequently witness detainees masturbating on the tiers. As a Lieutenant, it is my job to come to the tier if a detainee has a special request. Often, when I arrive, detainees in the day room and in their cells will call out to me, take out their penises, and start masturbating at me.

5.  For example, on September 20, 2015, I was in Division 10 on tier 1D assisting an officer in bringing a detainee for a visit. Detainee D. M. was staring at me from the cell next to where I was standing, holding his penis and masturbating. Then, detainee M. A., from a few cells away, stuck his penis through the chuckhole and began masturbating at me.

6.  The detainees on tier 1D were relentless. Shortly after the incident with detainees D.M. and M.A., on October 4, 2015, I was on tier 1D and saw detainee M. M. sitting in the day room with his penis out, masturbating at me. Then, on October 16, 2015 on tier 1D, detainee P.C. called out to me from his cell. He had his penis in the chuckhole and was masturbating. I told him to stop, but he said, "bitch, I don't give a fuck if you write 100 tickets," and continued masturbating at me.

Decl. Ex. 401

Plaintiffs 001327

7.  Just a few days later, on October 19, 2015 on tier 1A in Division 10, detainee A. L. saw me standing at the security desk. He stood up on a bench, took off his clothes, and began stroking his penis inside of his underwear while staring at me. When I told him to stop, he said he was allowed to "relieve himself."

8.  As another example, on May 13, 2016, I was talking with an officer in the Division 10 Male Holding area when detainee M. R. called my name. When I looked, he had his penis out and was masturbating and leering at me. I ordered him to stop, but he laughed and said, "you make me sick."

9.  I also get masturbated at in other areas of the Jail. On October 31, 2017, Lieutenant Toni Calvin and I were assigned to work in Receiving when two detainees, D. W. and S. K., masturbated at us from the bullpen.

<u>Witnessing Harassment of Others</u>

10. I have seen other women who work in the Jail experiencing the same or similar sexual harassment. As a lieutenant, I am often assigned to be the "clean up" person when other women are being masturbated at. I have to review the camera footage and assess the incident. Since the November 2017 preliminary injunction, we have a policy that if a detainee masturbates at a female, we are supposed to remove the detainee from the area. However, if I am the one to remove him, I have to deal with the masturbating detainee and he will often continue masturbating at me. Often, when I arrive at an incident, it encourages the detainees to masturbate more. I have to be a

3

professional and do what I can to protect the officers and sergeants under my command, even though usually when I arrive, I am sexually harassed too.

11.    I have called the AO line about detainee masturbation at least 10 times since November of 2017. Whenever there is an incident of masturbation or indecent exposure, the shift Lieutenant is supposed to report it to upper management by calling the AO line.  When we call the AO line, it triggers an email blast to all directors to notify them of the incident.  I have to do this in addition to filling out an incident report in CCOMS.

12.    The AO line notifications generated by my phone calls describe incidents where detainees masturbated and exposed their penises to female staff members such as officers, commissary workers, nurses, and CRWs.  For example, on November 30, 2017, I reported that detainee L.W. stood at a window in the dayroom on his tier in Division 11, with his pants pulled down so his underwear was fully showing, stroking his penis while looking at the civilian commissary worker, Kimulettie Walton.

13.    As another example, on April 27, 2018, I reported that detainee S.H. was masturbating to CRW Loxton in Division 10 while she was working with other detainees in the interlock.

14.    The detainees also use masturbation and penis exposure as a threat towards the officers.  On April 6, 2018, while the officers were attempting to lock up the detainees on tier 3B in Division 10, detainee D.H. got down on the floor, took off his green jumpsuit, and refused to go into his cell. While staff

4

Plaintiffs 001329

escorted him to his cell, he said he was going to continue to refuse to lock up, and next time he will "clap" (masturbate) at the officers who try to make him lock up.

Sexual Comments

15.   I hear crude or sexual comments from male detainees directed at me on a daily basis, and sexual threats weekly. Detainees have called out to each other, "Lu has a nice ass!" and "I'd like to stick my dick in her!"  I remember one time a detainee told me he wanted to slap his dick across my forehead. Whenever I come around, detainees try to get under my skin by making lewd comments.  For example, in March of 2019, I went to the rec room in Division 10 to assist with detainee movement back to the division.  When I got there, the detainees all crowded around the door and started yelling lewd comments at me.  It was so loud I couldn't really tell who was saying what, but I heard the words "fuck" and "dick" a lot.  My sergeant said he wished I didn't have to come help him so that the detainees would not misbehave in this way.  But I have to go because it's my job and I would get disciplined if I didn't.

Knowledge of Defendants

16.   My supervisors know about the detainees' behavior and their sexual comments towards me and other women. I get emails from superintendent Walsh about masturbators on a regular basis.  Further, as a Lieutenant, my supervisors regularly send me to assist female officers in writing up incidents of penis exposure and masturbation.

Plaintiffs 001330

<u>Ineffectiveness of Complaining and Issuing Discipline</u>

17.     I have repeatedly verbally complained to my supervisors about the detainees exposing their penises and masturbating. The complaints fall on deaf ears. The policies never change. All we can do is write them up or send them to segregation housing. They often run out of space and let the detainees out early.

18.     For all of the incidents where detainees masturbated at me, I wrote incident reports and requested to press charges if I could identify the detainee. It did not stop them. The detainees continue to masturbate and expose their penises, and the Sheriff's police has never contacted me to follow up about my requests to file public indecency charges. Now, every detainee that masturbates to staff is sent to division 9. But I don't know what happens to them criminally.

19.     At one point the Sheriff was even rewarding them. It felt like some detainees would masturbate to staff just so that they could stop and then get rewarded with a pizza party. Being labeled as a masturbator is almost like a badge of honor for some of these guys.

<u>Ineffectiveness of Steps Taken</u>

20.     The Sheriff's office has tried putting detainees who masturbate or expose themselves in green jumpsuits to deter their behavior. The green jumpsuits don't work; they are pitiful and horrible. None of them close properly, and most of them don't fit right. If there are actually enough jumpsuits for all of

6

Decl. Ex. 405

the detainees to wear, many of them are ripped or the wrong size. Sometimes, detainees who are supposed to be wearing them get away with not wearing them.

21. Detainees who are supposed to be in green jumpsuits are easily able to get brown uniforms. In a tier of 48 guys, you might have 5 that are supposed to be in green. When the officer and workers come to do uniform exchange, the detainee worker will ask what size they need, and they will say, "XL." The detainee worker doesn't know that the guy is supposed to have a green jumpsuit. The laundry officer doesn't know either. There is no one enforcing the jumpsuit policy.

22. The masturbators are also supposed to have pink IDS and alerts in CCOMS, but it's not a fool proof system. Sometimes they will pretend to lose their pink ID, then wait for an officer who doesn't know them to ask for a new one. Officers have to look in the system for the alert that tells them to use a pink base card instead of a white. But the alert isn't always easy to find and sometimes they end up with a white ID instead of a pink one.

23. Recently, the Sheriff has allowed us to put visiting restrictions on the masturbators. When the detainees are found guilty of exposing their penises or masturbating, they may get a 30 or 60 day visit restriction. However, those alerts can be easy to miss, and they sometimes get their visit anyway.

Plaintiffs 001332

<u>Lack of Training</u>

24. I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me. We have received a few General Orders regarding policies for detainees who masturbate and expose their penises. When we get General Orders, we have to click something to acknowledge that we have read it, but there is no follow up to make sure we understand how we can enforce the Orders. We are just supposed to follow the policies without any training or support.

<u>Impact on Job Performance</u>

25. The sexual harassment changed the way I do my job. When I respond to a living unit to process a complaint, I try to stay at the door of the tier instead of going to the detainee's cell. I should be able to have a conversation with the detainee but I can't get close to him. I try to never enter the day room unless I have to. If I have to go to my office, which is on the first floor near the rec room and the bullpens, I try to wait until there are no detainees in rec or the bullpens so that they won't make lewd comments at me. Even when I am making rounds, I am very uncomfortable walking out of a tier because all of the detainees run up to the door when I leave. I don't like to have my back exposed to the detainees, so I will walk backwards to walk out of the tier. This effects the safety and security of the facility.

Decl. Ex. 407

Plaintiffs 001333

26. Furthermore, the constant sexual harassment has changed the way I dress at work. I used to have a really long sweater that I wore all the time to cover my butt but now it's so frayed and full of holes I can't wear it anymore. I wear a sweater or a jacket all year long, no matter how hot it is, because it gives me a sense of security. It's my cover up. But, it doesn't matter what I wear. The detainees still harass me.

27. Most of the female officers working in the living units wear sweaters to cover up all the time also. It's really hot on the tiers, and I almost never see male officers wearing sweaters.

    The behavior by male detainees toward me makes me feel like a piece of meat. It is degrading, offensive, harassing, humiliating, threatening, intimidating, and causes me to fear for my safety.

Emotional Impact

28. As a result of the constant sexual harassment, I have suffered severe emotional distress. Working there is extremely stressful. It makes me not want to go to work. It's draining. Sometimes I can't focus and just need a time out. I get irritated really quickly.

29. I am disappointed by the Sheriff's lack of action to deter sexual harassment in the Jail. I feel like we haven't progressed at all. I am just a number. I am not important to the Sheriff – I am a body filling a spot and if I leave he'll find someone else to take the abuse.

9

Decl. Ex. 408

DocuSign Envelope ID: 43541020-E100-4DD0-808B-2E2189DF2D17

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

3/28/2019
_____
Date

DocuSigned by:

*Alta Johnson*
_____
6957FE148253437...
Signature

10

Plaintiffs 001335

<u>**BELINDA JONES DECLARATION**</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Belinda Jones. I am a Court Services Deputy at the Harrison & Kedzie Courthouse ("Courthouse"). I have worked at the Courthouse since approximately March 19, 2001. Up until approximately the end of 2017, detainees from Cook County Jail ("Jail") were routinely transported to the Courthouse for court regarding their misdemeanor charges. On occasion, detainees from the Jail still come to my Courthouse.

2.  As a Court Services Deputy at the Courthouse, I am responsible for the safety and security of detainees being held in holding cells behind my assigned courtroom, attorneys who consult with the detainees, and individuals in the courtroom, including courtroom personnel and civilians. My primary duties are to escort detainees to and from court and secure and monitor them in holding cells. My job requires me to interact with male detainees on a daily basis.

<u>General Description of Harassment</u>

3.  The male detainees repeatedly sexually harassed me by exposing their penises and masturbating at me every single day they came to the Courthouse, at times multiple times a day, in the lockup area behind my assigned courtroom. Detainees also called me a "bitch" and other derogatory names when I tried to stop them from masturbating at me.

4.    It was a common ploy of the detainees to call my name, "Officer Jones," and then when I looked to see what they wanted, they would pull their penises out and masturbate at me.

Specific Incidents of Exposure

5.    There are too many incidents of detainees pulling their penises out and masturbating at me to recall all of them specifically. Detainees most frequently exposed their penises and masturbated at me while they were inside of the holding cells or sitting in chairs outside of the cells. There are a few chairs sitting outside of the holding cells in case the cells are crowded or there is a detainee who cannot be put in the same cell as others because of how they are classified. Often, detainees would ask my sergeant, Sergeant Wash (male), if they could sit in the chairs outside of the cells. Sergeant Wash would allow them to do it, even if they were masturbating at me.

6.    On March 26, 2019, four detainees in green jumpsuits came to the Courthouse for misdemeanor charges, even though they generally do not come to my Courthouse anymore. Three of the detainees refused to go into the holding cell. So, the male officer who transported them from the Jail allowed them to sit outside of the cell, right in front of me. One of the detainees pulled out his penis and sat there masturbating in front of me and my female partner, Officer Statham, while also staring at female detainees in the lockup. He was able to expose himself even though he was wearing a green jumpsuit. The officer who transported him told him to stop. He did not stop. He said, "I'm almost there,"

2

because he was close to ejaculating, and kept masturbating until he finished. It was disgusting and the officer's refusal to do anything to stop this made the experience worse.

7.      I remember an incident in 2017 when Sergeant Wash allowed three detainees to sit in the chairs outside the cell, and they constantly masturbated at me and my female partner, Officer Rosales.  I complained and told Sergeant Wash that I did not come to work to sit here and watch detainees masturbate. Sergeant Wash told me, "Don't look at them," and "Put your head down," and did nothing to stop the detainees. He just put a video camera on the desk to record the detainees. One of the detainees slipped out of his handcuffs, snuck into Sergeant Wash's officer, and took food from his desk, which the detainee then shared with the other two detainees. When Sergeant Wash came back, he reviewed the video and saw what happened. Based on his reaction, he seemed more upset about them eating his food than them sitting there masturbating at me all day.

8.      I also recall one particular detainee, Detainee D. who, each time he came to the Courthouse, exposed his penis and sat there all day with his penis out, playing with himself. Sergeant Wash still let him sit in a chair outside the cell.

Witnessing Harassment of Others

9.      I have witnessed detainees expose their penises and masturbate at other female employees. Officer Rosales and Officer Statham have been with me when detainees pulled out their penises and masturbated at us. Also, in late

3

Plaintiffs 001338

2017, I remember an incident when a detainee pulled out his penis and started masturbating at a female Public Defender who was consulting with her client in the lockup area. She became extremely upset. Soon after that incident, the Sheriff's Office stopped routinely transporting detainees to the Courthouse.

Knowledge of Defendants

10. My supervisor, Sergeant Wash, knew about the detainees exposing their penises and masturbating at me because I complained numerous times. When I complained to Sergeant Wash about detainees constantly pulling out their penises and masturbating, sometimes he would say he was "marking it down" and that it would be reflected in the detainees' records. I don't know whether that actually happened, but as far as I know, the detainees did not suffer any consequences.

Complaints, Ineffectiveness of Complaining and Discouragement

11. No matter how many times I complained to Sergeant Wash, he did nothing to stop the detainees from masturbating at me. I remember one day, in 2017, Sergeant Wash allowed one of the detainees to sit in a chair outside of the cells because he could not go into the cell with others. The detainee sat right in front of me, pulled out his penis, and masturbated at me. I complained to Sergeant Wash and he still allowed the detainee to sit outside of the holding cell and continue to masturbate at me. I told my sergeant that I shouldn't have to put up with this, and if he's not going to do anything about it, I was going home. The sergeant still did nothing to stop the detainee. Even though the sergeant

Plaintiffs 001339

DocuSign Envelope ID: F57B51B7-52BB-4C0E-9ECD-484FA8A8F85E

had said the detainee could remain where he was, I was later able to put him in a cell by himself because I could not stand to have him sitting there masturbating at me another minute. It was very frustrating and discouraging that Sergeant Wash chose to accommodate the detainee instead of protecting me as a deputy.

12.     I wrote up the detainee who masturbated at me and my partner on March 26, 2019. I also recall filling out a report in September of 2016 about Detainee M.M. He had asked Sergeant Wash if he could sit outside of the holding cell. The sergeant said he could. Detainee M.M. sat in the chair directly in front of me and continuously masturbated at me throughout the day. He ignored my commands to stop. When I could not tolerate him masturbating directly at me anymore, I put him in the cell. He stood on the toilet so that I could see him through the window in the cell door and continued to masturbate. I put a sheet of paper up to the glass window to block him. He became angry because I refused to watch him masturbate, called me a "bitch," and said he was going to "throw shit" at me as soon as he came out the cell.  When the officer who was transporting him took him out of the cell, he threw feces at me. The feces hit my desk and the wall next to me, but thankfully did not hit me. I felt like vomiting. Although I filed a report, I don't know whether the detainee suffered any consequences.

5

Plaintiffs 001340

DocuSign Envelope ID: F57B51B7-52BB-4C0E-9ECD-484FA8A8F85E

<u>Lack of Training</u>

13. I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to sexually assault me.

<u>Impact on Job Performance</u>

14. The sexual harassment changed the way I do my job. For example, when the incident with the three detainees masturbating at me at the same time happened, Sergeant Wash told me to put my head down. After he said that, I didn't look in the detainees' direction. Although there was a video camera watching them, I feel like that could have affected the security of the lockup area. In that case, one of the detainees slipped out of his handcuffs and stole Sergeant Wash's donut. It could have been much worse.

15. The male detainees' conduct is humiliating, disrespectful, and depressing. It made going to work each day a real struggle for me. It is very upsetting that the detainees have been allowed to get away with this behavior. The detainees who came to my Courthouse knew that Sergeant Wash would allow them to masturbate at me because he never did anything to stop the detainees when I complained.

<u>Emotional Impact</u>

16. The sexual harassment has caused me a lot of emotional turmoil. It was very depressing to go to work everyday and face the detainees. On any given day, I

6

Plaintiffs 001341

knew that multiple detainees were likely to pull out their penises and masturbate at me. On top of that, I knew that my sergeant would not support me. Even though detainees from the Jail do not have to come to my Courthouse on a regular basis anymore, just this week (March 26, 2019), I was subjected to a detainee in a green jumpsuit masturbating at me. The Sheriff's Office has not done enough to protect me and other women from the detainees' sexual harassment.

Decl. Ex. 416

Plaintiffs 001342

DocuSign Envelope ID: F57B51B7-52BB-4C0E-9ECD-484FA8A8F85E

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

3/30/2019
_____
Date

DocuSigned by:

Belinda Jones
_____
D0FCE0885A25404...
Signature

8

Plaintiffs 001343

## SYBIL KEYS DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.     My name is Sybil Keys. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately February 14, 1995. My first assignment was in Division 9. I worked there for eleven years. In 2006 I transferred to Division 6, and in 2010 to Division 11. I worked in Division 11 until 2016, mostly in C and D-Pod. There, I worked with male detainees who were some of the worst behaved in the Jail. I am currently assigned to Receiving on the 6:00 AM - 2:00 PM shift and have been working there for approximately two years. In my twenty-three years at the jail, I have always been assigned to work with male detainees.

2.     As a correctional officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my job duties include, but are not limited to: processing detainees into the jail, processing detainees' shipments to other facilities, processing detainees to and from court, walking detainees through the tunnel, and guarding detainees while they are waiting to be transported by other officers. In all of these assignments, my job has required me to have interactions with male detainees daily. Because I complained about the incidents described in this declaration, my supervisors temporarily assigned me to work only with female detainees in November of 2017. However, that assignment did not

Decl. Ex. 418

last long, and I have recently been rotated through a number of other assignments, which include exposure to male detainees.

<u>General Description of Harassment</u>

3.     During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments on an almost daily basis, including regular comments about how they want to sexually assault me.

<u>Specific Incidents of Exposure and Harassment</u>

4.     I most often witnessed detainees masturbating and exposing themselves while they were in the bullpen waiting for transport. Male detainees exposed themselves on a daily basis while waiting there. Once, in or around early November 2017, I was working basement middle control when two detainees stood on a bench in a holding cell and started masturbating in front of everyone. At first, I didn't know what they were doing because I had my glasses off. When I put my glasses on, I took them right off again, so I didn't have to see what they were doing.

5.     The bullpen in male holding, where the men from division 9 wait, is the worst. It is a glass enclosed holding cell which used to be right next to the desk where the officers would work. The detainees would stand in the window of the holding cell and masturbate at me and other female officers.

2

Plaintiffs 001097

We tried placing clothing gurneys in front of the window between them and us, but they would find any little crack in our barricade and masturbate so we could see it. Finally, when Superintendent Queen came, she moved the bullpen farther away from the desk. Nevertheless, we can still see the detainees masturbating on the cameras constantly.

6.     Detainees also masturbate and expose themselves while walking through the tunnel on their way to and from court. In the approximately two years prior to the preliminary injunction, this behavior happened too many times to count. Since the November 28, 2017 preliminary injunction, I have not seen as many incidents, mostly because I don't walk detainees from court as often. Now there is a special transport team that does this. In the past, I also witnessed detainees masturbating or exposing themselves while working in Division 11, mostly while doing count. They would either stick their penises through the chuckhole, sit on their beds and masturbate, or pretend to be using the bathroom in order to show me their penises. I remember clearly once a detainee put his penis through the chuckhole at me because I noticed he was wearing Homer Simpson underwear.

7.     Detainees who frequently masturbate and expose themselves are supposed to wear green jumpsuits. However, the green jumpsuits, which are supposed to prevent detainees from masturbating, are not effective. The detainees wear them wide open or hanging down by their waists, which does not prevent access to their penises. Once I even saw a detainee in a green jumpsuit

3

Plaintiffs 001098

playing with his penis while handcuffed behind his back. Even worse, the detainees complain that they don't want to wear the green jumpsuits to court because everyone will know what they did. They complain to the supervisors, and most of the time the supervisors will let them wear their brown uniforms to court because they don't want to have an escalated confrontation with the detainee. I have heard that officers will get written up now if a detainee masturbates in front of them but they don't write it up. We don't want to create more problems for ourselves.

8.   I have seen or heard about other women who work in other positions experiencing the same or similar sexual harassment throughout the Jail. For example, one of my colleagues was working in male holding when a detainee put his penis on the counter in front of her. Then he ejaculated on the floor and told the detainees in line behind him "not to step on his kids."

Sexual and Sexually Violent Comments

9.   I hear crude or sexual comments from male inmates directed at me frequently. They comment on the size of my butt and tell me how good their dick would look in my mouth. One detainee told me he would "fuck me in the ass so hard, cum would come out of my ears and nose." When he said that, I tried to discipline him by sternly telling him to stop. The detainee complained to Superintendent Slaughter that I had disrespected and verbally abused him. Superintendent Slaughter called me into his office to reprimand

4

me.  I asked him if the detainee told him what he had said to me first, but Slaughter said it didn't matter – I am supposed to be a professional.

## Knowledge of Defendants

10.  My supervisors know about the detainees' behavior and their sexual comments towards me and other women.  Everyone knows about it.  I talk about it with my friends, Commander Wright, Sergeant Gray, and Sergeant Edwards all the time.  The detainees masturbate in front of the supervisors too.

11.  Supervisors make no effort to discipline the detainees or set consequences for the sexual behavior toward women.  Nothing is ever done to stop this behavior.  Instead, since the lawsuit was filed, we get penalized for trying to ignore it because we get written up if we don't complain or file reports.  It happens so often, filing reports every time is impossible.

## Incident Reports and/or complaints

12.  I have made many verbal complaints to my supervisors.  For example, recently I complained to Lieutenant Calvin.  The Lieutenant responded by asking, "you keep complaining, what do you want me to do?"  These incidents happen so often, it feels like the norm.

13.  I have filed somewhere between 10 and 20 disciplinary reports about the masturbation and other things over the years, but it has just gotten worse. The detainees just laugh at you because they know nothing will happen to them.  Sometimes they get discipline that just doesn't matter.  For example, a

5

detainee without money will not care if he loses his commissary privileges for masturbating.

## Ineffectiveness of Complaining

14. I don't like to write disciplinary reports for detainees because, when you do, the detainees make your job harder. When I was working in Division 6, a detainee threatened me. I tried to assert my authority and wrote him up. The hearing board and Lieutenant Garcia kept giving him extensions. After five or so extensions the Lieutenant just threw it out and told me it wasn't worth it. The detainee laughed at me. I didn't get any support from my supervisors and my safety was threatened. After that, I didn't want to write disciplinary reports. I wrote them anyway for masturbation incidents when they were particularly bad, but many of my younger colleagues tell me that their supervisors expect them to accept the sexual behavior towards them as part of the job.

15. In my experience, the Sheriff's Office has a track record of ignoring policies meant to protect female officers in the jail. When I worked in Division 9, a group of detainees who had escaped from Division 10, nicknamed "the six pack," were moved to Division 9. Those men were not supposed to be on a tier with female officers. Regardless, one was placed on my tier. I asked Superintendent Snooks why he had been placed there, but he said, "it's ok, you'll be alright."

6

Decl. Ex. 423

Plaintiffs 001101

16. Incident reports are also ineffective because the detainees know that this Jail imposes no real consequences for masturbating at women. Detainees have commented about the lack of discipline and know that nothing will happen to them. Even though there are additional penalties for masturbation, such as forcing detainees to register as sex offenders, the detainees know that the masturbation charges are never acted on or pursued.

17. Some of the detainees have told me that Superintendent Jones gave them his phone number so they can call and complain if the officers try to discipline them. Since Sheriff Dart was elected, the Sheriff's office is more concerned with the staff's behavior than with the detainee's behavior. Officers in Division 9 have told me that Superintendent Jones tells them to make the inmates feel comfortable and like they are "at home" while they are staying in the jail. As an example, the officers in Division 9 are no longer required to enforce dress code rules.

18. The detainees have also mentioned that this behavior does not take place in other correctional institutions they have been at. Detainees will come back from being at institutions in other counties and say that if they try to masturbate or expose themselves elsewhere they will get tasered.

19. Back when I worked in Division 9 from 1995-2006, the masturbation and exposure wasn't as bad. There was an incident now and then, but nothing like there is now. The detainees had more respect for the officers' authority back then. Now, they get rewarded for bad behavior. For example, I have

7

Plaintiffs 001102

heard that recently, the Sheriff's Office offered pizza to a tier if the detainees went a month without misbehaving.

20. An inmate from Division 9 told me that the masturbation and exhibitionist behavior is a game. They get a certain amount of points for masturbating in front of different types of women, such as black female officers, white female officers, lawyers, nurses, or civilians. Nothing has been done to change this culture of masturbation and exposure. It's just a game to them. The only time I heard about a masturbating detainee stop was when an older detainee threatened to beat him up if masturbating in front of his lawyer ruined his court date.

## Lack of Training

21. I have never received training from the Jail regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

## Impact on Job Performance

22. The sexual harassment changed the way I do my job. I am more cautious now, especially around younger male inmates, because you never know when one of them will try to reach out and grab you. I feel like at any moment I am at risk for physical harm. It's especially difficult because if I respond and try to protect myself, my job is at risk. I feel like the Sheriff's Office will turn the tables and make it look like I was at fault. As a result, I do what I can to

8

Plaintiffs 001103

avoid being close to male inmates. If I can't avoid it, I make sure there is another officer, preferably a male officer or another female officer with a strong personality or physical command, with me at all times in order to feel safe. I have lost motivation to go to work.

23. Furthermore, the harassment impacted the way I present myself at work. I always wear loose clothing. I don't want to hear the comments from inmates about how I look. But, it doesn't matter what I wear. The detainees still harass me.

24. The behavior by male detainees toward me is unwelcome, offensive, harassing, humiliating, threatening, and caused me to fear for my safety. It messes with my self-esteem. I am not sure of myself anymore.

<u>Emotional Impact</u>

25. As a result of the constant sexual harassment, I have suffered severe emotional distress. The harassment and masturbation at the Jail makes working there extremely stressful. Sometimes, I am so depressed when I leave work I just come home and sit in front of the TV. I don't feel like going out and seeing my friends anymore.

26. Cook County Sheriff's Office's lack of action to deter the sexual harassment makes me frustrated and angry. Unfortunately, I have come to expect this from Tom Dart and his administration. He doesn't seem to care about the officers' well-being. He just seems to care about the detainees and making himself look good in the press. Tom Dart has killed all the camaraderie we

9

Plaintiffs 001104

DocuSign Envelope ID: 316EB202-4169-437E-8159-890E3C234D0B

used to have – now, telling on other officers will get you a better assignment. All the harassment at the jail motivates us to do whatever we can, even if it means stepping on other officers, to get good jobs. People are coming out of the academy working at a desk, then two years later they are your supervisor. They don't know what it's like. It's frustrating and depressing.

Decl. Ex. 427

Plaintiffs 001105

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/8/2019

Sybil keys

2E17ACF36A7E4F7...

Date                                    Signature

11

Plaintiffs 001106

DocuSign Envelope ID: 9D68D4A1-68DF-4B02-B63E-81C70118E331

## CHERRI KRZYZOWSKI DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.      My name is Cherri Krzyzowksi. I am a Registered Nurse (RN), and I worked for Cermak Health Services ("Cermak") at the Cook County Jail ("Jail") from April of 1999 to August of 2017. Before I left, I was the Charge Nurse for the Psychiatric Unit (Cermak 2nd Floor).

2.      As a Charge Nurse in the Psychiatric Unit, I was responsible for ensuring the health, wellbeing, and safety of Psychiatric patients in the unit. My duties included performing rounds every fifteen minutes to monitor detainees under close observation and providing mental and physical medical treatment to detainees in the unit. Throughout almost all of my eighteen years there, I was assigned to the male Psychiatric Unit. In the last approximately six to nine months before I left, I rotated through both male and female Psychiatric Units monthly. My job required routine, close interaction with male detainees.

General Description of Harassment

3.      In every male unit that I worked in, I endured detainees sexually harassing me by exposing their penises, masturbating, and making sexually explicit, disgusting comments to me, including shouting out the sexual acts they would do to me while masturbating and ejaculating in front of me.

Plaintiffs 002221

Specific Incidents of Exposure

4.     The specific incidents of exposure I experienced often had a common pattern. Detainees would call me to the door of their rooms, claiming to have an emergency, and would be standing there in the middle of the floor with their penises out and masturbating. I was forced to play out this scenario constantly because, as a nurse, I was required to respond. Additionally, because I was required by law to do rounds every fifteen minutes for detainees under close observation, the detainees would purposefully expose their penises and masturbate when they knew I was coming by. For detainees not under close observation, I was required to do hourly rounds, and the same thing would happen. I fulfilled my professional obligations despite the trauma it caused me to constantly be subjected to detainees pulling out their penises and masturbating at me at work every single day.

5.     I recall a particular detainee that exposed his penis and masturbated at me four or five times in a single eight-hour shift.

Witnessing Harassment of Others

6.     I have witnessed detainees pull out their penises, masturbate, and make crude sexual comments to other female nurses and medical staff assigned to the Psychiatric Unit numerous times. For example, the detainees masturbated in front of my Nursing Supervisor, Elizabeth Egbo, Nurse Dorrie Sanders (LPN), Nurse Lorraine Chatman (RN), and Nurse Wanda Estes (RN), among others. Several detainees who were normally housed in divisions outside of Cermak

Plaintiffs 002222

even admitted to me that they purposefully got themselves admitted to the Psychiatric Unit to masturbate at the nurses because "the nurses are prettier" there. For example, Detainee H. from Division 9 told me that. When I asked Detainee M.M. why he would continuously masturbate at me and other women, he'd say things like, "You're a woman. I'm a man. What do you expect?"

Sexual and Sexually Violent Comments

7. Detainees made sexual comments about my body and sexually explicit threats about what they would do to me every single day. Detainees have told me: "I'm gonna bend you over"; "I'm gonna fuck you"; "I'm gonna rape you"; "I'm gonna eat your pussy"; "You're going to suck my dick"; "I'm gonna bust in your ass," and other nasty, disgusting things more times than I could count. They often made these comments while masturbating and staring right at me.

8. For example, I recall Detainee C.C. would say, "I'm gonna eat your pussy," to me on multiple occasions while he was masturbating and staring at me, and then he would ejaculate.

Knowledge of Defendants, Ineffectiveness of Complaining, and Discouragement

9. I recall attending periodic Town Hall Meetings to discuss concerns, including the constant sexual harassment by detainees. As an employee of Cook County, I was not able to complete my own incident reports. At the Town Hall Meetings we were told to fill out complaints on a written form. When detainees sexually harassed me, I was supposed to report it to an officer on duty, who would then report it to their superiors. For example, I repeatedly complained to the

3

Plaintiffs 002223

following male officers: Officer Grimach, Officer Linewebber, Officer Torro, Officer Gibbons, Officer Spann, Officer Chapman, and Officer Anderson. The officers told the detainees to stop, which did not work, and said there was nothing else they could do except write it up. My coworkers and I asked the officers to write detainees up on multiple occasions (at least five to ten times), and the detainees never received discipline as a result. Officer Chapman said, "Our hands are tied." Officer Spann made Detainee C.C. apologize to me, but the damage was done – images of him masturbating, ejaculating, and yelling out my name and vile sexual things he wanted to do to me don't just go away with an apology.

10. The officers would tell me to ignore the detainees or move out of their view, but that was not possible because of my professional obligations as a nurse. For example, I would have to perform my duties even when, for instance, a detainee stood on his bed shaking his penis at me repeatedly in front of the nursing station.

<u>Lack of Training</u>

11. I have never received training from the Cook County Sheriff's Office or the County regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tried to attack me. I remember receiving basic sexual harassment training regarding coworkers, but not detainees. Regarding detainees, we were merely told to report incidents to an officer and fill out a

4

complaint form – neither of those things stopped the detainees because they did not receive any meaningful consequences.

## Impact on Job Performance

12.    The sexual harassment changed the way I did my job. It made me not want to go to work, and at times, I called off on days that I emotionally could not take the constant sexual harassment. As a healthcare professional, I have to control my own personal emotions, empathize with my patients, and make my patients' wellbeing my primary focus. Detainees constantly pulling out their penises and masturbating at me made that difficult to do. The detainees' behavior made me angry, aggravated, frustrated, and a range of other emotions that I did not want to feel toward my patients. I repeatedly asked them to stop and tried to explain the way it made me feel. They did not grant me the dignity as a fellow human being to respect my requests. Their conduct was incredibly demeaning, disrespectful, nasty, degrading, offensive, and humiliating.

## Emotional Impact

13.    The sexual harassment has caused me severe emotional distress. I always tried to leave what happened at work at work, but it became impossible. I still experience anxiety about what I endured. Just thinking about it makes my heart start racing. There should have been consequences for the detainees, and there were none. I felt completely powerless. The Sheriff's Office and County,

5

DocuSign Envelope ID: 9D68D4A1-68DF-4B02-B63E-81C70118E331

which were in positions of power to stop the detainees, did not protect me and other female employees.

6

Decl. Ex. 434

Plaintiffs 002226

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/6/2019

Date

DocuSigned by:

*Cherri Krzyzowski*

2EC359CF02624F1...

Signature

7

# DECLARATION OF SHONNITA LANIER

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.     My name is Shonnita Lanier. I was a nurse at the Cook County Jail ("Jail"). I worked at the Jail for approximately two years and retired in August 2017 after an inmate assaulted me. I have worked overtime shifts as in-house registry in all the divisions, but was assigned in Division 8 for most of my time at the Jail.

2.     As a nurse at the Jail, I was responsible for the safety and health of individuals being held at the Jail in pretrial detention. For example, my job duties included treating and meeting with inmates one-on-one and distributing medication on the tier.

3.     When I worked at the Jail, I endured sexual harassment by detainees directed at myself and other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis, including regular comments about how they want to sexually assault me and have sex with me.

4.     I most frequently witnessed detainees masturbating with their penises exposed when I was distributing medication on the tiers. The Jail has a two-door system for entering a tier. You must enter the first door, it locks behind you, and then you can enter the tier through the second door. There are a

Plaintiffs 001143

few minutes before the second door unlocks where you must wait in the glass area in between the two doors. Every day, inmates hovered around the windows and masturbated at me while I prepared to distribute the medication. This always gave me a sickening feeling and male officers always ignored the inmates. The male officers assigned to the tiers never said anything. They giggled or shook their heads, but never took any action to stop the inmates from masturbating.

5.      On September 11, 2016, I wrote an incident report for an inmate (from Division 6) that came to see me for a one-on-one appointment. He came into the treatment room and said he had a boil or rash on his thigh. When I inspected the injury, he began vigorously stroking his penis repeatedly and saying, "Look at it, look at it." I asked him to put himself away, but he continued to masturbate and expose himself. I called an officer for assistance, and as the inmate was leaving he screamed, "Could you see if I was circumcised?" As far as I know, the inmate received no discipline. The Sheriff's Office and my supervisors at Cermak did nothing to make sure I felt safe at my job.

6.      I also felt threatened when walking through the tunnels, the only way to travel between different areas of the jail. I always walked as quickly as possible and if a group of inmates passed me, I would stand against the wall and try not to look scared. In these situations, usually only one officer

2

Plaintiffs 001144

supervised over 20 inmates and they would yell and masturbate at me as they passed.

7. I saw other women who worked in different jobs being subjected to the same or similar sexual harassment. For example, a female social service worker was being constantly cat called by an inmate and he ultimately grabbed her. Rumors travel through the Jail about a teacher that was raped. My coworkers have warned me, "Be careful, that happened." All of the women staff at the Jail experience similar harassment. We discussed the harassment and tried to give each other tips on how to protect ourselves and how to avoid being masturbated at, but I never received any formal training about how to prevent masturbation or what to do if it occurs. No one ever gave me training about what to do if an inmate threatened to rape me or tried to rape me.

8. Sexual comments were something we experience almost every single day. Inmates always called out what they wanted to do to me sexually. As an example, one inmate said, "Put it on my finger and let me smell it," and "I'm gonna look you up when I get out."

9. Management was aware of the masturbation problem because I reported multiple incidents about detainees masturbating openly. My supervisors told me, "Nothing is going to happen if you report incidents. It's not even worth the paperwork." My supervisor also told me, "snitches get stiches."

3

Plaintiffs 001145

10. After reporting several incidents, I was discouraged from reporting detainees masturbating because when the lieutenants and other management are busy and processing incident reports takes away from other work they do. Male officers would say, "You knew what you were getting into when you started working here," and "If you're not happy with the situation, just quit." Employees throughout the Jail call Cook County "Cook County Cuddle Care" because nothing happens when incident reports are written and everyone feels like it is a waste of time.

11. The harassment impacted my ability to do my job by altering the work environment. For example, I was always scared that I might get raped. Nurses are supposed to be alone when speaking with and assessing inmates for the inmates' privacy. Officers cannot be within earshot of nurses; therefore, nurses have no protection or support from correctional officers. I always requested that inmates be cuffed to the bed, unless they have arm injuries. Even if cuffed from behind or to the bed, some inmates could still maneuver the cuffs to the front of their bodies and masturbate. Some officers did not comply with cuffing behind and some didn't comply with cuffing the inmates at all. There was always a shortage of handcuffs; so, a lot of the time, officers didn't have enough handcuffs to cuff the inmates during visits. This made me feel extremely uncomfortable and unsafe because I was worried about being masturbated at or assaulted. I was extremely scared in situations where officers could not stay in the room because of HIPPA laws

4

Plaintiffs 001146

and had to stand outside the door. They would not be able to get to me in time if something were to happen. If an inmate had a red ID card, indicating that they have a history of masturbating at women, I asked for them to be cuffed, no matter what the injury was.

12. As another example, I felt that I could not give proper emergency care to inmates. If there was an emergency on the tier and all the inmates were out on the tier, I would not enter the tier until all the inmates were locked in their cells because of the frequent masturbation and because I was concerned for my safety. This situation ultimately threatened the safety of the inmates in need of medical care.

13. The harassment changed the way I dressed at work and how I felt about my body. Managers told me to purchase larger scrubs and always wear a lab coat to cover up more of my body. It is uncomfortable to wear so many layers and larger scrubs. One of my managers said, "What are you doing? Why are you wearing perfume?" These comments made me feel like I was being blamed for the way inmates treat female nurses.

14. The behavior by male detainees toward me was unwelcome, offensive, harassing, humiliating, threatening, and caused me to fear for my safety.

15. I have severe emotional distress because of the constant sexual harassment. I am extremely stressed and cannot sleep. Working at the Jail in that environment caused me to drink more alcohol because I could not sleep. I could not leave the effects of the Jail at work. I took it home. Now, I am

5

Plaintiffs 001147

always nervous when someone walks behind me. I am always on alert, and I feel like I cannot trust anyone. I used to love being a nurse, but I can no longer perform one-on-one patient care because of the trauma I experience from working at the Jail.

16. On August 15, 2017, I was responding to an emergency on a tier and an inmate hit me across the face. I was sent to the emergency room, received therapy, saw a psychiatrist, and was on a number of medications. This incident made me fear being sexually assaulted because I saw how easy it was for me to be attacked on the tier. Now, I get angry with certain comments and perceive them to be threatening, even if they are not meant to be. I can't trust anyone now and that fear was exacerbated by the sexual harassment and masturbating at the Jail. After this attack, I just couldn't get comfortable. I was always scared, and I didn't want to be at the Jail anymore. Inmates always reminded me that they were getting out and knew my full name from my ID. It was just too much. I was too scared to stay in Chicago, so I move out of state.

6

Plaintiffs 001148

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

_____1/14/2019_____           _____Shonnita Lanier_____

Date                              Signature

Decl. Ex. 442

# IDA LEWIS DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.       My name is Ida Lewis. I am a correctional officer at Cook County Jail (the "Jail"). I have worked at the Jail since approximately 2006. I have been assigned to various parts of the Jail including Division 5 (2007-2008), Division 17 (2008-2016), and Division 4 (2016-2018). I have been assigned to Division 11 since approximately March 2018. I also did significant overtime in Receiving—approximately four shifts per week—for about four-to-six months during 2017.

2.       As a correctional officer, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my job duties include supervising inmates, transporting them around the Jail and to court, and ensuring a safe environment for inmates and staff at all times.

3.       In all of my assignments, my job has required me to have regular interactions with male inmates.  This has been true even when I worked in Division 17 which housed female inmates and when I worked in Division 4 during the time it housed female inmates because I would encounter male inmates when I escorted female inmates to Cermak or from Receiving, which was part of my regular job duties. The Jail changed Division 4 from a female population to a male population in approximately April 2017, which was during the time I was assigned there.

4.       During my employment at the Jail, I have endured sexual harassment by male inmates. I have experienced inmates exposing their penises to me and

1

Plaintiffs 002479

inmates purposefully masturbating at me or in front of me. When I worked in Receiving, and in Division 4 when it housed men, I experienced this approximately 2-3 times a week. Currently, in Division 11, I experience this approximately every other week and sometimes more.

5. I have also endured crude and harassing sexual comments to and about me by male inmates. They say things like "she has a big ass," "she's got big titties," or "I'd like to fuck her in the ass" to me, and "you look like you can fuck." In Divisions 4 (when it housed men), 11, and Receiving, I have been subjected to these types of comments multiple times a week.

6. I would even experience sexual harassment when I worked in Division 17, which housed female inmates, and Division 4, which housed women for half of my tenure there. Every time I transported female inmates to other parts of the Jail, which I did 3-4 times a week, we encountered male inmates in the tunnels, and they would make lewd sexual comments to me. When I worked the night shifts, I would often transport female inmates to see the nighttime on-call doctor in Cermak, who saw both male and female inmates. In order to leave the office of the on-call doctor, male inmates would have to walk past the female inmate holding area in Cermak, where I guarded female inmates. The male inmates would almost always direct harassing comments at me like "look at that ass" when they walked by.

7. As part of my duties in Divisions 4 and 11, I have been required to walk through the tiers and look into male inmates' cells to do an inmate count. The inmates know when I am on the tier because they can hear me coming. I wear a large set of

Decl. Ex. 444

Plaintiffs 002480

keys that jingle as I walk, and I have made a practice of announcing "female officer on the floor." Inmates have exposed themselves to me by either standing with their penis in or close to their opened chuckhole, or purposely using the toilet and then turning their genitals toward me when I walk by. In Division 11, this happened multiple times a month. This happened even more often when I worked with male inmates in Division 4, at least 2-3 times a week.

8. I recall one incident in Receiving in 2017. I was sitting at a desk outside the glass window of one of the male bullpens (group cells). An inmate knocked on the glass to get my attention, and when I looked up, I saw that he was resting his penis against the glass. I looked away and asked the correctional officers that were nearby "does nobody see this?" A female correctional officer who was permanently assigned to Receiving said in a defeated tone, "oh yeah, they do that all the time." There were several male officers nearby, all of whom I am sure saw the inmate and none of them said a word. I considered writing an incident report, but because Receiving was not my permanent assignment, and the officers who did work there on a permanent basis did nothing in response, I got the impression this would not be considered appropriate and tried to ignore the inmate until he finally put his penis away. The incident made me feel unnerved and afraid.

9. Another time, in October or November of 2018, I was walking on the tier in Division 11 and I heard an inmate, who I could not identify, make a sarcastic remark to me from his cell. I remarked back to him and kept walking. As I was walking off the tier, I heard him shout "I'll put my dick in her mouth." I was so

3

Plaintiffs 002481

frightened by the possibility that he might try to physically assault me, especially because I had to work on that particular tier for the rest of the day. Every time I have been assigned to that tier since then, I have been afraid. I did not write an incident report because I could not identify the inmate who made the threat.

10. I know that other female employees of the Jail are subjected to similar sexual harassment from male inmates because I discuss incidents of sexual harassment with them. We trade accounts of the sexual harassment we endure and warn each other about specific inmates who repeatedly expose themselves and/or masturbate.

11. In December 2018, I learned from my correctional officer colleagues and from reading the incident report that in Division 11 an inmate masturbated and ejaculated at my female colleague, Officer Boussou. The inmate was standing in the day room of the tier, and she was sitting in her desk on the other side of the glass. He knocked on the glass and started masturbating. She told him to stop and called her supervisor, but by the time the supervisor arrived, the inmate had ejaculated on the glass. This made me upset and disturbed, because I was new to Division 11 at the time and had been hoping I would not experience the same kind of sexual harassment as my previous assignment in Division 4. Hearing about this incident made me fearful that would not be true, and those fears turned out to be well-founded.

12. Another female colleague in Division 11, Officer Altman, told me that in 2017 or 2018, she wrote up an inmate for masturbating at her and told her supervisors about it. The next day, the inmate was still on her tier. She had to

4

Plaintiffs 002482

repeatedly complain to her supervisors for several more days before they moved the inmate away from her tier.

13.     I have never received training regarding how to address the masturbation or other sexual harassment by male inmates, how to prevent male inmates from repeating sexually harassing behavior, or how to respond if a male inmate tries to sexually assault me.

14.     In 2018, Officer Altman also told me that one of her female colleagues, an officer, told her male supervisor, on her tier that an inmate had been constantly cat-calling her and masturbating at her. The supervisor told this female correctional officer that she should "take it as a compliment." I was taken aback—I could not believe that he said such a sexist thing about such a serious situation. Hearing about this made me angry and discouraged because a representative of the Jail had demonstrated such a careless attitude about sexual harassment.

15.     I recall my supervisors in Division 4 acknowledging the problem of inmate sexual harassment on at least three occasions: (1) I overheard some of the male sergeants saying that their "hands are tied" with regard to addressing inmate sexual harassment. They said that they cannot do anything except reprimand inmates for their behavior, write incident reports, and then wait for the hearing board to dole out discipline; (2) In conversation with several correctional officers, including myself, supervisors in Division 4—Lieutenant Dean (male) and Sergeant Mitchell (female) said that they are frustrated, because they do not feel supported by the administration with regard to addressing inmate sexual harassment; (3) In 2017 or

5

Plaintiffs 002483

2018, in Division 4, I had a conversation with Lieutenant Dean and a small group of male and female officers about sexual harassment and other inmate behavior issues in the Jail. In response to myself and other correctional officers complaining about inmate sexual harassment, he said words to the effect of "nothing is being done" and that the administration is "throwing out a lot" of charges and incident reports regarding sexual harassment.

16.     When I speak with my female colleagues, they often complain that their supervisors do not do anything in response to the sexual harassment, and have also told me that the incident reports they file do not result in discipline for the inmates. They have told me things like "the reports don't go anywhere." This makes me feel discouraged from reporting inmate sexual harassment, especially given what I have heard from my own supervisors.

17.     The constant sexual harassment at the jail has affected my wellbeing at work. I have felt anxious and paranoid while I am in the Jail, because I have been afraid that a male inmate will expose himself to me. At times, the sexual harassment has made me feel hopeless. I wear my shirt and pants one size too big, hoping that hiding my body will minimize the risk that an inmate will expose himself to me or sexually harass me. Still, I have experienced sexual harassment regularly.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/30/2019

_____          _____

Date                                                    Signature

6

Plaintiffs 002484

# Declaration of Juanita Long

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Juanita Long. I have worked as a correctional officer at the Cook County Jail since April 1991. I have been assigned to Division 3, Division 5, and transportation. I have also worked overtime or covered shifts in Division 4, 8 and External Operations. I have been assigned to transportation since approximately October 2004.

2. I have interactions with male inmates on a daily basis. Even on a day when I am transporting female inmates, I still encounter male inmates in the facilities. Correctional officers assigned to transportation work in groups of 2, with one officer driving the bus while the other officer supervises the inmates.

3. At the Jail, the male inmates sexually harass me. I experience cat-calling and propositions every day. For example, they say things like, "Hey baby!" and "Will you be my baby mama?"

4. The male inmates also masturbate openly at me and other women. I witness it approximately once a month. For example, on March 5, 2019, I witnessed an inmate who I was standing close to in the criminal courts building, Inmate S.R., touching his genitals and I could see that he had an erection in his pants. I immediately moved away from S.R., and he continued to touch himself. I could not leave the area because I was transporting an inmate to court, so I had to wait until the inmate I was transporting was called. I reported the incident to a movement officer, Officer Bingham, and she called Sergeant Dew from the movement team about the incident. Sergeant Dew arrived and S.R. denied masturbating. I asked Sergeant Dew to remove S.R. from the area. Sergeant Dew said that he couldn't do that because external operations was responsible for him. Sergeant Dew also told me that if I wanted to report the incident, I would have to report it to my immediate supervisor. I reported the incident to my immediate supervisor, Lieutenant Martin (male). I couldn't write the incident report that day because I was still transporting my inmate to the Livingston courthouse in Pontiac, Illinois, and wouldn't return until 6:00 p.m., so I had to write the incident report the next day, on March 6. I indicated that I wanted to press charges. Incident Report No. ███████████.

5. The same day, a male Sheriff's Police Investigator (whose name I do not recall) called me and asked what happened. He explained that if the charges went to court, they would be thrown out, because the inmate did not pull his penis out. So I agreed not to press charges.

1

Plaintiffs 002235

6. Sometime in the spring of 2017 in Receiving, I saw an inmate in a holding cell or bullpen masturbating openly while looking at me and the female inmates I was supervising. When a male sergeant walked past, the inmate stopped. But as soon as the male sergeant was gone, the inmate started masturbating again. I did not report the incident because I was in the middle of transporting other inmates. I left in disgust.

7. I remember another occasion, at a time I cannot recall, when I was transporting female inmates out of Receiving, another officer was transporting approximately 10 male inmates in the loading area. I witnessed one male inmate pull his penis out at the sight of me and the female inmates I was transporting.

8. As another example, around the fall of 2017, I transported an inmate to the criminal courts building. The inmate was not placed in the bullpen with the rest of the other inmates because he was considered "high risk movement," so he could not be placed in the bullpen with other inmates. I supervised him as he sat in the small hallway behind the courtroom. I saw that the inmate kept reaching in his pants and fondling his groin area. I repeatedly had to ask him to stop, to which he would comply, and then begin again. I told him I would move him to an isolated area if he continued and had to monitor him closely to make sure he did not pull his penis out.

9. The transportation officers, including me, have to drive past the Division 9 recreation area every day. We pull into Post 16 to enter the compound. This is all in direct view of the Division 9 recreation area, where the inmates can see out. Another female officer warned me not to look up at the recreation area because inmates are often masturbating at the people they can see below. I have seen multiple male inmates in the recreation area simultaneously masturbating openly while looking out and cat-calling me and the other female officers on the sidewalk below. I don't look up there anymore because I don't want to see them exposing themselves.

10. I have not written an incident report on the sexual misconduct because in my position in transportation, I'm always on the go and always moving, so I cannot stop to write a report. But, I usually report the sexual misconduct to the officer assigned to that area in person.

11. In about May or June of 2017, I heard from other correctional officers that an inmate in one of the Receiving rooms was masturbating to a female correctional officer and ended up ejaculating on or near her. It disgusted me to hear that. It made me apprehensive about doing my job because it made me feel like anything could happen. Even though it didn't happen to me, it made me feel violated. Although it isn't rape, this type of sexual harassment feels like the closest thing

2

Plaintiffs 002236

to it. It seems to me like the inmates are just running amok and they think that they can pull out their penis at any moment.

12. In response to concerns about sexual harassment, I have heard male sergeants during roll call say things like, "This is jail," "This is what you get paid for," and "This is the worst of the worst. Deal with it." I do not recall the names of these sergeants.

13. I like my job, but I haven't felt as comfortable in my job for the last 5 years or so. My job is to observe and monitor the inmates, but being exposed to penises and masturbation makes it so I don't want to look, which affects my ability to do my job. That type of behavior makes me less observant and it is my job to be observant. Plus, I always second-guess how I should respond to inmate sexual harassment. If an inmate is exposing himself, I don't know what is on his mind or what he plans to do next. If the inmate came at me, I wouldn't know how to react, and I would worry about getting suspended or losing my job. I worry that the administration would blame me if I tried to stop an inmate who was coming at me with his penis out.

14. The sexual harassment at the jail has caused me anxiety and rolled over into my personal life. I take extra care when locking up my house and making sure my daughter is safe. I don't go out as much anymore, especially at night.

_____
Juanita Long

April 3, 2019
_____
Date

3

Plaintiffs 002237

## <u>CHRISTINA LOPEZ DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.      My name is Christina Lopez. I am a sheriff/correctional officer at the Cook County Jail ("Jail").  I have worked at the Jail since approximately May 15, 2006.  My first assignment was in Division 1, which was a maximum-security male division.  I worked there and on the "three and eight," a rotation between Division 3, Division 8, and Cermak, until approximately late 2014. After that I worked in the kitchen for 2 years. I am currently assigned to Receiving on the 2:00 PM - 10:00 PM shift and have been working there for about 2 years. Depending on my assignment, I might work with a partner, who is sometimes a male and sometimes a female.

2.      As a correctional officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my job duties include, but are not limited to: processing detainees in to the jail, walking detainees through the tunnel, ensuring the safety of detainees while they are in holding cells, ensuring the safety of civilians in the jail, and escorting detainees to different parts of the jail complex, including Cermak and the dormitories. In all of these assignments, my job has required me to have interactions with male detainees daily.

<u>General Description of Harassment</u>

3.     During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis, including regular comments about how they want to sexually assault me.

<u>Specific Incidents of Exposure and Harassment</u>

4.     I most frequently witnessed detainees masturbating and exposing themselves while they are in the bullpen waiting to be transported.  For example, on October 11, 2017, I filed an incident report after I saw detainees [Redacted] and [Redacted] exposing themselves and masturbating in the presence of any female who passed their holding cell in the tunnel.  [Redacted] was wearing a green jumpsuit and it was unbuttoned.  That day, I had to walk past the holding cell a few times over the course of several hours.  Every time I walked past, detainees [Redacted] and [Redacted] had their penises out while masturbating and making lewd comments at me.

5.     Male detainees also expose themselves on a daily basis while walking through the tunnel to and from court.  While they walk, they pull their penises out and start playing with themselves.  On September 26, 2017, I was standing on the female bridge with two other female officers, when detainee [Redacted] walked by, escorted by an officer and wearing an open green

2

jumpsuit, while masturbating and making lewd comments. The male officer escorting him just ignored it.

6. In the approximately two years prior to the preliminary injunction, this behavior happened too many times to count. Since the November 28, 2017 preliminary injunction, I do not remember witnessing any incidents of exposure or masturbation, but the verbal sexual abuse has continued unabated. I hear a comment about my ass, or worse, from detainees almost daily. Further, the green jumpsuits which are supposed to prevent detainees from masturbating are not effective.

7. I also witnessed detainees masturbating or exposing themselves while I was working in Division 1. When I would do bunk checks at the beginning of my shift, the detainees knew I was coming. Almost every day, the detainees would be masturbating at me in their cells. One particular detainee would wait on his bed, with his legs spread, masturbating at me when I got to his cell. When my supervisor tried to reprimand him, he said he didn't know I was going to come by. But it happened almost every day.

8. I also remember a detainee named [Redacted]. One day when I was walking the corridor and the cell doors were open, [Redacted] came part-way out of his cell masturbating at me. He would not stop. I waited ten or fifteen minutes for my supervisor to come. When she walked up, she asked how I knew he was masturbating, as if she didn't believe me. Then she witnessed it herself.

3

9.   I have seen other women who work in other positions experiencing the same or similar sexual harassment throughout the Jail. Every time a detainee directs sexual harassment towards me, they also direct it at the other women who walk by before me and after me.

Sexual and Sexually Violent Comments

10.  I hear crude or sexual comments from male inmates directed at me all the time. From the very first week I started work as a correctional officer in Division 1, I was verbally sexually abused.  That first week, I was standing by the elevator and a detainee said, "I'll bend you over and fuck the shit out of you with your fat ass."  The comments have continued on a near daily basis and have gotten progressively worse over the last couple of years. I even hear these things when I am escorting detainees to be released.  I have no recourse – I can't discipline them when they are about to go home.

11.  On April 26, 2016, I was supervising the Kitchen when an inmate called me a bitch.  I sent him back to his dormitory and he said, "This is why they should never give pussy the power.  Ain't no one even listening to this Bitch; I should slap her."

12.  Other comments I have heard include: "Sit on my face and suck my dick," "I'll rape your ass," "look at the ass on her," and "I am going to swallow your pussy."  When I heard that one, I felt like I was going to choke.  It made me sick to my stomach and completely embarrassed.  I told the inmate to stop

4

and not to talk to me that way.  He said he would file a grievance about me.  I felt powerless.

Knowledge of Defendants

13.  My supervisors know about the detainees' behavior and their sexual comments towards me and other women.  Everyone knows about it.  For example, my supervisors, Lieutenant Peterson and Sergeant Ludwig, know about it because they participated in my incident report of October 11, 2017.  Supervisors are present when the detainees engage in this behavior and they don't do anything about it.

14.  Supervisors make no effort to discipline the detainees or set consequences for the sexual behavior toward women.  My supervisors sometimes even instruct me not to complain or write up the detainees. They will turn their heads, walk away, or pretend they didn't hear what was said.  They won't help you if you ask a detainee to stop doing something.  They don't want the extra paperwork.  When I wrote up the incident with detainees ███████ and ███████, my Sergeant asked, "Why would you do that?  He was just playing with himself."  My Sergeant didn't want to have to deal with it.

15.  Despite my complaints, nothing is ever done to stop this behavior.  On the contrary, the detainees sometimes get rewarded with pizza, pop, or movies after engaging in this behavior.  Now, the detainees are even getting therapy dogs to help with the stress of being incarcerated.  I would like a therapy dog

5

to help with the stress caused by the sexual harassment I endure every day at work.

<u>Incident Reports and/or complaints</u>

16. I have made countless verbal complaints to my supervisors, but nothing ever changes. These incidents happen so often, it feels like the norm.

17. I have filed at least 20 incident reports regarding exposure, verbal sexual abuse, and masturbation. When I started in Division 1, I wrote up countless detainees for verbal sexual abuse. After a while, the hearing board just threw out my write-ups.

18. I filed criminal charges against detainees Redacted and Redacted. If I had known this was an option earlier, I would have filed criminal charges many more times.

<u>Ineffectiveness of Complaining</u>

19. I have written so many incident reports about sexual harassment at the jail, I just gave up because nothing happened. There's just no point anymore. If I wrote up every violation of the disciplinary code for exposure, masturbation, or sexual harassment I saw, I'd spend my entire day writing reports and wouldn't be able to keep the jail safe. The reports don't have any effect anyway. So, it feels like a waste of time to continue writing them.

20. Other male officers have told me that I complain too much and cause too many problems. They tell me that if I write up the detainees it won't go

6

anywhere. They say that this is what I get paid for.  No one should be harassed like that at work.

21.  My supervisors ignore the behavior, throw out my reports, and complain when I make them participate in reporting a harassing detainee.  Even the investigator who interviewed me about the incident with detainees **Redacted** and **Redacted** told me the charges would not make any difference.  I haven't been told anything about what happened with the charges I filed.  I know that **Redacted** and **Redacted** were charged with Public Indecency, but no one ever told me if there was an outcome of the case and I have never been asked to testify in court about what happened.

22.  Incident reports are ineffective because the detainees know that this Jail imposes no real consequences for masturbating at women.  They say things like, "I don't give a fuck about that write-up.  I am facing a body."  Also, they know that their discipline will get thrown out at the hearing board.  If they are already facing 80 days "in the hole" for previous infractions, what's another 20?

23.   Some detainees have told me that they are shocked at the behavior in Cook County Jail.  On the day that I was sexually harassed by detainees **Redacted** and **Redacted**, I was escorting new inmates through the tunnel who witnessed the behavior.  They could not believe that such behavior was allowed.  It was embarrassing.

7

24. Recently, in September of 2018, I was walking towards the holding area when I saw three or four male detainees coming out of the bullpen. They were all wearing green jumpsuits, with the front open and hanging down by their waists. They were all handcuffed in the back. A supervisor was walking them back to their dormitory. I should have written them up for uniform violations, but I didn't because they were being escorted by a supervisor who was letting them get away with it.

25. Some detainees have told me that this behavior does not happen in other counties. They say the other counties are stricter and do not tolerate sexual harassment by detainees.

<u>Lack of Training</u>

26. I have not received proper training from the Jail regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me. The only thing we have received is a verbal instruction at Roll Call telling us that if we see a detainee exposing himself or masturbating in front of a female *civilian* or a female *detainee*, we're required to write that inmate up or face disciplinary charges. I guess it doesn't matter if they expose themselves or masturbate in front of female officers.

27. We have also not received proper training on how to cuff detainees or blue box them to prevent them from accessing their penises. I took a 45-minute class about blue-boxing, but there was not sufficient opportunity to practice

8

it enough times to be confident in how to blue box a detainee. Because we have not had proper, hands-on training, on how to do this, officers often don't do it when they are supposed to in order to avoid a confrontation with the detainee. If the detainee puts up a fight or complains about being handcuffed, more often than not the officer will get disciplined for treating the detainee poorly.

Impact on Job Performance

28. The sexual harassment changed the way I do my job. I try to avoid going to the bullpens or walking past detainees in green jumpsuits. I try never to walk through the tunnel by myself. If I have to pick up a detainee from a holding cell, I avoid looking at any other detainees. I get nervous that I will see something I don't want to. This makes it harder for me to keep the jail safe.

29. Furthermore, the harassment has made me think about changing the way I dress at work. I thought about tying a sweater around my waist and think about wearing a larger uniform. But, it doesn't matter what I wear. The detainees still harass me.

30. The behavior by male detainees toward me is unwelcome, unwanted, offensive, disgusting, harassing, embarrassing, humiliating, threatening, and caused me to fear for my safety.

9

<u>Emotional Impact</u>

31.    As a result of the constant sexual harassment, I have suffered severe

emotional distress.  The harassment and masturbation at the Jail makes

working there extremely stressful. I am uncomfortable all the time.  I am

nervous and anxious about seeing masturbation and humiliated by the way

the detainees talk to me. It makes me embarrassed and ashamed.  I am

scared at work. I want to cry a lot.  I have called EAP a few times, but it

hasn't really helped.  Worst of all, it has started to affect my marriage.  I see

and hear so much sexual abuse at work that I don't want to be intimate with

my husband.  When I get home at the end of the day, I just want to go to

sleep.  This isn't right; I feel terrible about it.  My mother tells me that I have

changed and that she is worried this job is making me miserable.

32.    Last year I went to the doctor because I had chest pains, stomach pain, and

shortness of breath.  The doctor did all kinds of tests, but nothing was wrong

with me.  She told me I should find a new job.

33.    I am extremely fed up with the lack of action to deter sexual harassment

within the jail.  I feel like I am worthless.  I am not valued as an employee.  I

am embarrassed to work for the Cook County Sheriff's Office; the sheriff does

not care about us or our safety.  My workplace is unsafe.  If something

happens to one of us, the sheriff doesn't care.  He'll just find another body to

take the abuse.

10

DocuSign Envelope ID: 7280D018-D00B-42F6-B398-839F800D8443

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/11/2019
_____
Date

_____
Signature

11

DocuSign Envelope ID: 85CBCF18-CE84-43C6-B50B-46AC33278864

# LAKISHA MACKLIN DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.   My name is Lakisha Macklin. I am a Correctional Officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately September 28, 1998. I have worked in various parts of the Jail, including: Receiving (RTC), Division 11, Division 9 and Division 4. I am currently assigned to RTC and have been in this assignment for approximately two years.

2.   As a Correctional Officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention and maintaining order at the correctional facility. For example, my job duties have included, but are not limited to: counting detainees, escorting detainees to and from court, monitoring detainees while they are in holding cells, and monitoring detainees in dayrooms. In performing all of these duties, my job has required me to have interactions with male detainees daily.

General Description of Harassment

3.   During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis, including regular comments about how they want to sexually assault me.

Decl. Ex. 463

<u>Specific Incidents of Exposure</u>

4.    In the last several years, I have been subjected to detainees exposing their penises and/or masturbating so often that I cannot say exactly how many times it has happens. At times, it has been rare that a week goes by without an incident. Detainees most frequently have masturbated in front of me during my count of detainees, while they are in their cells. Before going around to count detainees, my female coworkers and I would announce that a female officer is present. On a number of occasions, as I walked past detainees' cells, they stood directly behind the bars of their cells with their penises exposed, masturbating. Frequently detainees would yell lewd or obscene comments at me while I walked around to count. At times, multiple detainees exposed their penises and masturbated.

5.    Detainees also expose their penises and masturbate while I am escorting them to and from court, jail, or medical facilities.

<u>Witnessing Harassment of Others</u>

6.    I know that other women who work in the Jail experience the same or similar sexual harassment.  I have seen detainees expose themselves to other female correctional officers. For example, I have seen male detainees in green jumpsuits with their penises exposed while being escorted by female Correctional Officers. I have heard the escorting officers instruct detainees to stop masturbating and say that they would write them up.

2

Plaintiffs 001213

<u>Sexual and Sexually Violent Comments</u>

7.    I hear crude or sexual comments from male detainees directed at me frequently when they expose their penises and/or masturbate, and at other times as well. For example, detainees have told me, "I want to fuck the shit out of you," "I will eat your pussy," and, "Suck my dick, bitch," among other things. I have heard these types of comments from detainees more times than I could count. It happens so often that it's become as commonplace as someone asking me if I want a cup of coffee.

<u>Knowledge of Defendants</u>

8.    My supervisors know about the detainees' behavior and their sexual comments towards me and other women.  Everyone knows about it. I have verbally reported to my supervisors that detainees are exposing themselves and masturbating in front of me on a number of occasions. Another way that supervisors know about the detainees' behavior is because they review the camera footage when we file incident reports.

9.    Supervisors make no real effort to discipline detainees or set consequences for the sexual behavior toward women. In response to my verbal complaints to supervisors, I have been told, "What do you want me to do?" "There's nothing we can do," and, "It's part of the job." I have also been discouraged by supervisors from making incident reports for the same reason.

Decl. Ex. 465

Plaintiffs 001214

DocuSign Envelope ID: 85CBCF18-CE84-43C6-B50B-46AC33278864

Complaints, Ineffectiveness of Complaining, and Discouragement

10. To the best of my recollection, I have verbally complained, written incident reports, and filed charges about the sexual misconduct directed at me at least twice. I believe that on at least one other occasion I wrote up the detainee but did not file a criminal complaint.

11. After writing incident reports, filing charges, and verbally complaining, I felt discouraged from complaining. I stopped writing incident reports regarding detainee masturbation because complaining did not stop the detainees' behavior. Even so, I still make verbal complaints to my supervisors regarding detainees exposing their penises, masturbating, or making verbal threats. My supervisors tell me that there is nothing they can do to stop it.

12. Incident reports are ineffective because the detainees know that the Cook County Sheriff's Office imposes no real consequences for masturbating at women. Additionally, incident reports are thrown out sometimes. Detainees also know my female coworkers and I cannot defend ourselves because people have been fired or disciplined for defending themselves against detainees' sexual harassment.

13. It feels like the detainees have taken over the Jail. I believe that earlier in my career at the Sheriff's Office, there were fewer incidents and detainees were disciplined for inappropriate behavior. Now, I feel that the administration leans toward being on the detainees' side instead of taking steps to protect its female employees and make the jail safer.

Decl. Ex. 466

Plaintiffs 001215

14.     The few steps that have been taken to address the harassment have been mostly ineffective. For example, although known masturbators are supposed to wear green jumpsuits now, the front is closed with Velcro. Detainees walk around with their jumpsuits open and they can easily access their penises. Also, detainees poke holes in the crotch area of their green jumpsuits so that they can expose their penises.

Lack of Training

15.     I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

Impact on Job Performance

16.     The sexual harassment changed the way I do my job. For example, I try to avoid interacting with detainees that I know have prior masturbation incidents. I do not talk to them and I request a male officer to perform job duties regarding those detainees, such as escorting them to court. I am afraid of passing by or going near them because I fear the possibility of them masturbating and ejaculating on me.

17.     In general, I look down and try not to look in the direction of male detainees to avoid even making them think I am looking at them. Male detainees view looking in their direction as an invitation to masturbate. Avoiding looking at male detainees affects my ability to make the facility safe and secure.

Plaintiffs 001216

18.   The behavior by male detainees toward me is unwelcome, offensive, harassing, degrading, humiliating, threatening, inappropriate, disrespectful and causes me to fear for my safety.

19.   During every work day at the Jail, I experienced anxiety over potential harassment and exposure.  Even if I was not the direct target of detainees' sexually inappropriate behavior on a given day, my female coworkers and I expected that at least one of us would be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse.  I think it happened to someone every day.  I knew I might be sexually harassed or hear about a female coworker being harassed when I walked through the compound to my assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift.  This caused constant stress and made it more difficult for me to focus on my job of keeping everyone at the Jail safe.

Emotional Impact

20.   As a result of the constant sexual harassment, I have suffered severe emotional distress. The harassment and masturbation at the Jail makes working there extremely stressful. I should not have to come to work and be subjected to detainees exposing their penises and masturbating at me. I have experienced stress and anxiety about the sexual harassment. It affects my personal life. It has made it harder for me to have relationships with men, and I have a hard

6

Plaintiffs 001217

time trusting them. I have also become overprotective of my children. I am seeing a therapist to deal with the stress and anxiety.

21.     I am really disgusted with the lack of action to deter sexual harassment within the Jail. We put our lives on the line every day, working with murderers and other detainees with no respect for life, and we are not appreciated.

7

DocuSign Envelope ID: 85CBCF18-CE84-43C6-B50B-46AC33278864

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/29/2019
_____
Date

DocuSigned by:

8814545CA62C4E7...
_____
Signature

Decl. Ex. 470

Plaintiffs 001219

# Declaration of Angela Maniak

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Angela Maniak. I have worked for Cook County as a Mental Health Specialist (MHS) III since May 6, 2013.

2. As a Mental Health Specialist, I have been assigned to RCDC (Receiving), Division 9, Division 6, Urgent Care, and Cermak 2E. I am currently placed in Urgent Care in the Cermak building. I typically changed assignments every year. However, at any given time, I could be asked to work anywhere in the jail for the day, based upon staffing shortages. For example, I have been called to work in RTU and on each of the wings of Cermak's second floor.

3. My job duties have included conducting one-on-one mental health assessments of detainees who go through RCDC (receiving), or detainees who are referred to me by the medical department. I have also been required to check on detainees who are serving disciplinary time in special management units ("SMU"). I have provided grief and emotional support to detainees who have been referred to the medical staff or who have submitted a health service request form.

4. Currently, I work in the urgent care of Cermak, so detainees that require medical attention are brought to me in the clinical area. There is always an officer present when I am assessing detainees. It is common for male detainees to be improperly dressed so their undergarments, at the very least, are exposed. Often, I notice the green jumpsuits are worn completely open and you can see their boxers, the uniforms do not fit properly, or there is a tear or hole near the crotch area.

5. In all of my assignments, my job has required me to have interactions with male detainees on a daily basis .

6. During my employment at the Jail, in every assignment, including RCDC (Receiving), Division 9, Division 6, Urgent Care, and Cermak 2E, I have witnessed sexual harassment by male detainees that is directed at me and at other female employees.

7. As an example of sexual harassment, I have experienced detainees masturbating toward me multiple times in urgent care.

8. As another example, in Cermak 2E, the geriatric division, there was a detainee was known to masturbate in his cell when female staff were present.

1

Plaintiffs 001403_REDACTED

Plaintiffs 001403

Often, the correctional officers would place a medical divider curtain in front of his cell window when he was masturbating at the window. This practice is no longer allowed in Cermak. There was another detainee in 2E who would frequently yell sexual threats to me and other female medical staff.

9. Additionally, detainees sexually harass me verbally, like whistling and cat calling, or sexual threats where detainees say sexual things they want to do to me, and other violent threats. When I was assigned to Division 9 and Division 6, I experienced verbal sexual harassment every time I went on the tiers, which was weekly. At least a few times per month, I work overtime in Receiving, and I experience the verbal sexual harassment from the detainees about every few months. I have experienced verbal sexual harassment many times in urgent care.

10. Often, when a detainee says something sexually inappropriate or sexually aggressive toward me, I will add it to their clinical notes to alert other mental health staff for purposes of their own safety. I also alert the correctional officers on duty to see if they will take action to stop the inmate or to start the process to discipline the inmate with an incident report. I am not allowed to write an incident report in CCOMS when an inmate sexually harasses me. A correctional officer on duty would have to do it and I do not receive notification of the result of the report.

11. In 2014, during shift rotation in Division 9, I was bringing a Mental Health Specialist, Kelli Polo, to one of the tiers, because she was new to the tier and she was going to be taking over my shift. At this time, officers took detainee Redact Redacted to the showers. While in the shower area, the detainee started banging on the wall to make noise. All detainees and staff looked in his direction because of the noise he was making in the shower. Then, Detainee Redacted dropped his pants and started swinging his penis around with his hand while looking at me and Ms. Polo. A correctional officer (whose name I do not recall) wrote an incident report. Incident Report No. Redacted.

12. After the incident, I emailed my supervisor at the time, Dr. Rogers, regarding the incident. She responded by asking me to add a "clinical note" in the detainee's clinical chart describing his behavior, and I did.

13. I remember that I told a sergeant or lieutenant that I wanted to press charges. I cannot recall who it was, but I believe it was a male.

14. After the incident, an investigator called me and said he received an incident report regarding this incident. He wanted to meet with both me and Ms. Polo, but ended up not meeting with me, and I never heard from the investigator

2

Plaintiffs 001404_REDACTED

Plaintiffs 001404

again. I don't know if the inmate was disciplined and I never knew if I was going to see him again or if he might try to expose his penis to me again.

15. As another example, in December 2015, I was working in urgent care. I read a note from another MHS that detainee [Redacted] had masturbated to her. When he came in, I addressed the incident right away. I said, "I know you have done this. I just want you to know that if it happens again, I will write you up and press charges." From what I recall, he brushed it off. I did the assessment, and he left. Then, I went to give an officer some paperwork. [Redacted] was in the "staging area," (waiting area), waiting for an officer to escort him back to Division 9. As I walked past the detainee, he said "Ms. Maniak!" When I turned to look, he had his pants to the floor and his penis was out. Detainee [Redacted] [Redact] was standing next to Detainee Marshall and also had his pants down and penis out. I told the detainees that they would be written up. Detainee [Redacted] stated, "We don't give a f*ck!" while his genitals were still exposed.

16. An officer shift change was occurring at the time, and I recall approximately four male officers were nearby at the time (although I do not recall any of their names). I alerted the officers that the two detainees were masturbating openly, and they witnessed the detainees masturbating. However, none of the male officers in the area reacted to what I told them. No one asked if I was ok, and they seemed to dismiss my concerns by their non-reaction. Their non-reaction indicated to me that they were not interested in writing an incident report on the detainees.

17. I immediately called the Lieutenant on duty, Lt. Deanes, a female. She asked me to email her what had occurred. That same day, I emailed her, per her request, describing the incident. Lieutenant Deanes assured me that an incident report would be written on the detainees. An officer printed the incident report for me. See Incident Report No. [Redacted]. The report indicates that it was written by "J. Escobedo," who I do not know. It indicates that the detainees were masturbating under their underwear, but I remember that they were masturbating at me with their penises exposed.

18. Additionally, I emailed Dr. Gomez about the incident.

19. Furthermore, I submitted a report into the EMERS system, but that report is now inaccessible to me. Once you submit a report into EMERS, you cannot access it again.

20. Approximately one month later, I was approached by a male investigator, who asked me about the incident. He had a notebook to write down what I said and he took notes as we spoke. He explained that they had not had a

3

chance to look at the cameras, but asked if "I was sure" that was what happened. When he questioned me, he made me feel like I should doubt what I saw. I felt like he did not believe me. I told the investigator that I wanted to press charges. He informed me that the detainee was going to bond court on the charge. I do not know if either of the two detainees from this incident were disciplined.

21. I have felt discouraged from reporting sexual misconduct because I have not seen any results from charges filed.

22. Sometime in 2016, the jail implemented "green jumpsuits" with Velcro in the front that starts on the hips and goes all the way up. The green jumpsuit is not working. Because it's Velcro, detainees do not actually Velcro the suit, nor do the officers enforce the detainees closing their suits. It's worse than wearing pants and a top. I have seen female officers intervene and tell detainees to put their jumpsuits back on while male officers stand back and do nothing.

23. In May 2018, a male officer escorted a detainee to the clinical area where I was working for a mental health assessment. I noticed that the detainee's green jumpsuit was completely open in the front. I had to ask the detainee to close his jumpsuit and he complied. I was frustrated that the male officer had not already told the detainee to close the jumpsuit. This happens often.

24. In approximately April 2018, a group of green jumpsuit detainees came into the clinical area of Cermak. The detainees had their jumpsuits open. One of the detainees' jumpsuit was open all the way down near his genitals and his genitals, through his boxers, were hanging out of the jumpsuit. A female officer, Officer Bowens, said to the detainee, "You cannot come in here unless you close your jumpsuit." From what I recall, the detainee told her to "fuck off." The male officer escorting him did not do anything and the detainee continued to wear his jumpsuit open.

25. Additionally, detainees are not always in the green jumpsuits when they need to be. In approximately March 2018, in the clinical area, I observed a male detainee wearing the standard beige DOC uniform. His pants appeared to be much too small and he was wearing them too low, so I told the detainee he needed to pull his pants up. He explained that the uniform did not fit him. After I conducted his mental health assessment, I reviewed his chart and saw the detainee had a "pink ID," which means that the detainee has received discipline regarding sexual misconduct, and thus he should have been in a green jumpsuit and not the standard beige shirt and pants uniform. I went to Lieutenant Barajas and told him that the detainee needed to be in a green jumpsuit.

4

Plaintiffs 001406

26. The harassment has changed the way I dress at work. I almost always wear long cardigans to cover most of my body. I also wear tennis shoes just in case I ever have to run away from a detainee in an emergency situation, including a sexual attack from a detainee.

27. The sexual harassment has affected my interactions with detainees and how I conduct myself at the jail. I have always tried to acknowledge detainees and treat them well, but the harassment has made it so I have avoided saying hello to detainees to try to avoid catcalls and harassment.

28. I feel protective of the other women who work in the jail. When I hear about the sexual harassment happened to other women I become angry, mostly because things are not done to help them.

_Angela Maniak_
**Angela Maniak**

Feb 25, 2019
**Date**

5

Plaintiffs 001407_REDACTED

Plaintiffs 001407

## MARY MARQUEZ DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.      My name is Mary Marquez. I am a Correctional Officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately September 12, 2011. I have been assigned Division 10 since November of 2017 and also worked there when I first started at the Jail. Prior to Division 10, from 2013 to 2017, I worked in Administration on a special compliance team, where we went all over the Jail. I have also been assigned to RTU and Division 5.

2.      As a Correctional Officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my job duties include keeping detainees safe on the tiers, transporting detainees, making sure detainees have all of their necessities, and supervising detainees while they are in holding cells. As an officer on the compliance team, I visited the tiers and all areas of the Jail to meet with detainees and officers and to inspect the premises. This was a special assignment that was part of the Department of Justice oversight of the Jail. In performing all of these duties, my job requires me to have interactions with male detainees daily.

General Description of Harassment

3.      During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I

Decl. Ex. 476

have experienced detainees exposing their penises to me, male detainees purposefully masturbating at me or in front of me, and crude or sexual comments almost every day, including regular comments about how they wanted to sexually assault me.

Specific Incidents of Exposure

4. I most frequently witness detainees masturbating on the tier in Division 10. Detainees in the shower area will stare at the female officers in the bubble while masturbating. Detainees will also masturbate at me and other females in the dayrooms, when waiting for medications, and in their cells (when they know we can see them).

5. For example, on December 20, 2018, I was watching the dayroom from the bubble when I saw detainee D.J. sitting on a bench near the phones on the side of the dayroom. He was staring at me with his hands in his pants and was moving his hand up and down over his penis area. I knocked on the window to try to get him to stop and notified my supervisor. When Sergeant Rafferty removed him from the tier, he told her he needed to get his sperm out. We wrote him up, and he was moved off of the tier and given a green jumpsuit. At the hearing board, he was found not guilty, because it wasn't clear that he was masturbating on the camera footage. As a result, he did not have to wear the jumpsuit anymore. About a week later, he was put back into Division 10 on a different tier where I could be assigned. At no point was I

2

Plaintiffs 002239

notified of the hearing or his discipline; I just found out because he was back in the division.

6.  Around January or February of 2019, an investigator came to talk to me and said they couldn't press criminal charges on detainee D.J. because he didn't "expose himself" to me. The investigator asked me to sign a complaint refusal form.

7.  As another example, in approximately July of 2012, I was assigned to Division 10 on the 3-11 shift. I was doing medical escort, escorting the nurse to each tier to medicate the detainees. The nurse and I were in the interlock. Each detainee comes into the interlock one by one to receive their medication. Detainee Z.B. was moving around in the dayroom with his hands in his pants, trying to get a good view of us. When it was his turn to get his meds, he came into the interlock and whipped out his penis and exposed himself to us. I was so startled I started screaming at him. He was put in the hole, but while he was there, I heard he exposed himself to another female officer.

8.  Another time, in 2017, I was also doing medical escort in Division 10. I was standing in the interlock with the nurse. I looked over towards the shower area, and I saw a detainee staring at me. I knew he was masturbating. I tried moving to block his view of me, but every time he would move too so he could still see me. Eventually I opened the tier door and told him to stop. He ran back to the showers, but when he came out to get his meds, he said, "I didn't

3

Plaintiffs 002240

do it." I didn't write him up because there was no way to prove he was
masturbating.

<u>Witnessing Harassment of Others</u>

9. I have seen other women who work in the Jail experiencing the same or
similar sexual harassment. For example, a detainee exposed his penis to one
of the officers I worked with in compliance while she was walking past him in
the tunnel.

10. Female officers who work the tiers with me also complain about
masturbation and exposure. One of my colleagues told me that the detainees
on her tier would stand in their cells, put their penises in the chuckhole, and
masturbate while staring at her.

11. One time, a female officer told me that she wrote up a detainee for
masturbating at her from his cell. When she tried to press charges, the
Sheriff's police told her that the cell is the detainee's private domain. They
told her it would be a waste of time to file charges because it wouldn't go
anywhere.

<u>Sexual Comments</u>

12. I hear crude or sexual comments from male detainees directed at me on an
almost daily basis. While I was in administration, I walked through the
tunnels a lot. The detainees would stare at me and whistle and call me
"baby." They would tell me I smell good or that they wanted me to be their
girlfriend.

4

Plaintiffs 002241

13. Once, in Division 10, a detainee told me he had a big dick and if I were with him, I wouldn't ever want anyone else. Then, recently in early 2019, I was walking between tiers in Division 10, and the detainees were watching me from the windows, banging on them to get my attention, making heart signs, blowing kisses, and mouthing "I love you."

Knowledge of Defendants

14. Supervisors and managers at the jail know about the detainees' behavior and their sexual comments towards me and other women. I complained and wrote incident reports that my supervisors saw. I have also seen detainees gawk at my female sergeant. Whenever she came on the tier they would jump up and try to get her attention. Sergeant Rafferty also knows because of the incident with detainee D.J.

Ineffectiveness of Complaining and Writing Disciplinary Reports

15. I think I complained to my supervisors every time a detainee masturbated at me or exposed himself. Although many of my supervisors tried to help, no one in the administration took the issue seriously and nothing changed.

16. I tried to file criminal charges but was discouraged from doing so because it wouldn't go anywhere. The Jail discipline doesn't seem to work either; the detainees just say they don't care if they are written up.

Lack of Training

17. I never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to

5

Plaintiffs 002242

decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

Impact on Job Performance

18.    The sexual harassment changed the way I did my job. When I have to go on a tier to check on something, I do whatever I can to ensure that I don't have to go anywhere near the shower area. I am on edge whenever I go on the tier and try not to look at the detainees. When I am in the interlock, I will position the monitors to block the window to the shower area so the detainees can't have a view of me. I can then only see the shower area from the camera. This makes it harder to keep the tier safe.

19.    Furthermore, the harassment changed the way I dressed at work. I always wear a sweater, even when it's hot. I have to cover up my body so the detainees won't comment about it. My colleagues do the same. One female officer I know who is big-chested especially feels like she has to wear a sweater to cover her body.

20.    The behavior by male detainees toward me is offensive, degrading, intimidating, shameful, disgusting, and inappropriate. Some detainees are so sexually aggressive, I feel unsafe.

Emotional Impact

21.    As a result of the constant sexual harassment, I have suffered severe emotional distress. It makes me on edge. I have anxiety when I go to work.

6

DocuSign Envelope ID: 29DDF2F6-22FF-40CC-92EA-6EEB3A504E9D

22.     The Sheriff's Office doesn't care about our complaints or take them seriously. They just tell us that this is what we signed up for. I feel like nothing would have been done about the sexual harassment if the Public Defenders didn't complain. The Sheriff's Office took their complaints seriously but not ours. They care more about their public image than our safety.

Decl. Ex. 482

Plaintiffs 002244

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/16/2019

Date

Signature

8

DocuSign Envelope ID: 1586ED73-8FA8-46E1-81E7-728555C67288

# JENNIFER MARSZEWSKI DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.    My name is Jennifer Marszewski. I am a Court Services Deputy at the Leighton Courthouse ("Courthouse"). I have worked at the Courthouse since approximately September October 20, 1997. I have been assigned to Courtroom 101 for about 7 or 8 years. Prior to that, I have been assigned to other courtrooms, including Courtroom 100, which is Central Bond Court. When I worked there, I walked through the tunnel between the Courthouse and Cook County Jail ("Jail") on a daily basis because I had to pick up paperwork in Division 5.

2.    As a Court Services Deputy at the Courthouse, I am responsible for the safety and security of individuals in the courtroom, including detainees, attorneys, courtroom personnel, and civilians. For example, my job duties include providing security in courtrooms and at the building entry, transporting detainees between the bridge and courtroom, securing detainees coming to court and during the court process, securing the safety of the courtroom, and keeping track of the detainee's court dates and paperwork. Occasionally, I also have to take a defendant into custody if the court remands them. In all of these assignments, my job has required me to have interactions with male detainees on a daily basis. I usually work with a partner, who is almost always male.

Decl. Ex. 484

<u>General Description of Harassment</u>

3. During my employment at the Courthouse, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced detainees exposing their penises to me, male detainees purposefully masturbating at me or in front of me, and crude or sexual comments on a daily basis, including regular comments about how they wanted to rape or sexually assault me.

<u>Specific Incidents of Exposure</u>

4. I most frequently witness detainees masturbating down on the bridge area. We have to walk through the bridge in order to pick up detainees or drop off paperwork. There are holding cells on the bridge and in the tunnel leading to Division 5. When I walk past the holding cells, the detainees call out to me and try to ask me a question/get my attention. If I look, they almost always take their penis out and start masturbating.

5. Detainees also masturbate in the lockup area behind my courtroom. For example, on September 13, 2016, I was conducting a routine court call in the lockup area for courtroom 101, which included figuring out which detainees needed to be let out for their court appearance. I walked past the holding cell, and detainee D. C. stood up and asked me what time it was. The clock was right behind my desk, so he wanted me to turn around for a second and then turn back. When I did, he was standing there with his penis out, masturbating.

2

Plaintiffs 002486

6.     A couple of times in the lockup area, I had some detainees out of the cell waiting to go to court. They were sitting in chairs in front of my desk, with one hand handcuffed to the chair. They used the other hand to masturbate.

7.     When my coworkers and I walked back and forth through the tunnel to the Jail, we'd see detainees waiting to go to court, either standing in line or sitting in holding cells. Almost daily, they would see us coming, put their hands in their pants, and start touching their penises while staring at us. When we went past a line of detainees, sometimes one or two would step out of line to make sure we saw them and then expose their penises.

<u>Witnessing Harassment of Others</u>

8.     I have seen other women who work at the Courthouse experiencing the same or similar sexual harassment. In the tunnels, the detainees yell out and expose themselves to any female who walks past.

9.     My colleagues and I would constantly complain to each other about what happened. One time a female officer told me that a detainee grabbed her butt. Another told me that a detainee stood right in front of her with his penis out, masturbating, while she was booking him in.

<u>Sexual Comments</u>

10.    I hear crude or sexual comments from male detainees directed at me on a daily basis. They say things like, "I'll fuck you in your ass," "I'll spit in your ass," "I'll eat that motherfucker," and "you look like you suck good dick." I

Decl. Ex. 486

Plaintiffs 002487

remember a detainee commenting, "I bet she works at a strip club."

11.   The detainees always comment on the female deputies' bodies. I am constantly hearing them say, "look at that ass," or "she's got a fat ass, I'd like to fuck the shit out of that."

12.   During or after all of this, they usually touch their penis, expose their penis, or masturbate.

Knowledge of Defendants

13.   Supervisors and managers at the Courthouse know about the detainees' behavior and their sexual comments towards me and other women. One incident I remember, I told them what happened, but my supervisor looked at the camera to confirm what I said. I wasn't making it up, but it felt like they didn't trust me. I have also seen detainees masturbate at female sergeants at the Jail.

Ineffectiveness of complaining and writing disciplinary reports

14.   I complained to my supervisors several times about detainee sexual misconduct. Nothing changed because of my complaints. It wasn't until the lawsuit was filed that anything was done.

15.   I felt like my supervisors believed that I should expect this behavior because I work in a correctional setting. I remember one time I complained to a male sergeant and he said, "you work at a jail, this is what they do. If you can't handle it, you shouldn't have signed up to work here."

4

Decl. Ex. 487

16.  I have asked the security team to write up detainees for masturbating maybe two or three times. I never heard anything about them.

17.  We haven't had any recent training on writing incident reports in CCOMS; if an incident happens it's easier to go to the security team who write incidents all the time.

18.  Also, I don't think my supervisors would appreciate it if I wrote up every possible masturbation incident. For example, just a few weeks ago, there was a detainee in lockup behind the courtroom, standing in line to go to court. He had his hands in his pants, moving them around. He didn't take out his penis, but it looked to me like he was masturbating. I didn't write it up because I didn't think that anyone would believe me that he was actually masturbating. I couldn't see inside his pants myself to prove it. Further, I think the write-up would probably have gotten thrown out since there wasn't any video of his penis being out. I feel like my supervisors would think I was petty if I wrote something like this up. They would have the attitude that he wasn't doing anything – just standing there with hands in is pants, which happens all the time. A lot of times, even when there is video, they don't believe us that the detainees are masturbating.

19.  I don't remember if I ever filed criminal charges against a detainee for masturbation. I don't think I would have because I would not have thought about it as an option – it was just a disciplinary issue for the Jail. None of

5

Plaintiffs 002489

my supervisors ever told me or suggested that I could or should file criminal charges.

20. The male officers want to help, but they are stuck. The only way to get the detainees to stop masturbating is to physically restrain them which is not allowed anymore. Also, the male officers won't write the detainees up because the officers don't feel like they are victims. In other words, since the masturbation isn't directed at them, it's not their job to write them up. If I want to write someone up, then they'll support it, but they won't take the initiative to do it themselves.

21. For example, a couple of months ago, we had a lot of detainees in lock-up, including some females in one holding cell. The male detainees were lined up and some of the detainees were around the corner near the female detainees. I was at the desk in front and my male partner was in the back near these detainees. One detainee stepped out of line with his hands in his pants and started talking to the female detainees. Immediately, my phone rang, and the officers in the video review unit yelled at me because we were not keeping the detainee from masturbating in front of a female detainee. My partner couldn't stop him. He told him several times to step away from the females and take his hands out of his pants but he wouldn't. There was nothing my partner could do. After a few minutes, the detainee ended up at the front of the line near my desk. He stepped out of line again to ask me a question. He

6

stood in front of my desk, talking to me and leering at me with his hands in his pants. No one from the video review unit called to tell us that this behavior was unacceptable. It felt like the supervisors only cared that the detainee was sexually harassing another detainee, not that he was harassing me.

Ineffectiveness of steps taken

22. Detainees who are caught masturbating are supposed to wear green jumpsuits. All the green jumpsuits do is identify them as what they are, they don't prevent masturbation. The detainees are still able to reach their penis through the buttons at the front. All day long I see detainees walk past my desk from the elevator to court with their jumpsuits unbuttoned all the way down to their penis. The jumpsuit almost makes it easier for them to touch their penises.

23. I don't think the Sheriff's Office did anything to try to stop the masturbation until the lawsuit was filed. Now, all they do is cuff them to the back and make sure they spend less time in the lock up area behind the courtrooms. It doesn't stop the behavior, we just don't have to endure it as long.

Lack of Training

24. I never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees or what to do if a detainee tries to rape me. We got a lot of training about sexual harassment by supervisors and coworkers, but never about detainees.

Decl. Ex. 490

Plaintiffs 002491

Impact on Job Performance

25. The sexual harassment changed the way I did my job. It makes me very self-conscious. It makes my job harder. If there's a detainee sitting in front of my desk masturbating, I don't want to look at him. I am responsible for keeping everyone safe which is harder when I can't look at the detainees.

26. Furthermore, the harassment changed the way my colleagues dressed at work. One colleague I had who was very large-chested was always wearing a sweater. She was having hot flashes all the time and we would tell her to take the sweater off, but she would say no because then the detainees would comment about her breasts.

27. The behavior by male detainees toward me was degrading, threatening, intimidating, vulgar, inappropriate for the workplace, and caused me to fear for my safety.

Emotional Impact

28. As a result of the constant sexual harassment, I have suffered emotional distress. It's very frustrating to have to deal with this. It makes working there very stressful.

29. It feels like the Sheriff's Office has just ignored the sexual harassment of female staff by detainees. This makes me feel unimportant. Our supervisors tell us this isn't a big deal. It feels like no one cares about us.

30. The Sheriff's Office reaction to the detainees' behavior feels even worse because even though we have been complaining for years, no one did

Decl. Ex. 491

Plaintiffs 002492

anything until the Public Defenders complained and the public found out. The Public Defenders are more important to the Sheriff than his own employees. I feel like a second-class citizen.

31. I shouldn't have to be subjected to this kind of behavior, regardless of the fact that I chose a career in law enforcement. Our jobs are dangerous and stressful enough without having to deal with the pressures of sexual harrassment that we are forced to deal with on a daily basis at our workplace.

Decl. Ex. 492

DocuSign Envelope ID: 1586ED73-8FA8-46E1-81E7-728555C67288

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/29/2019
_____

_____
Date                                                    Signature

10

Plaintiffs 002494

## Declaration of Melissa Mazias

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Melissa Mazias. I have been a correctional officer at the Cook County Jail since August 15, 2011.

2. I have been assigned to Division 4, Division 10, the administration relief team (ART), Cermak, both male and female units within RTU, and Division 6. When I was on the administrative relief team in 2012, I had to work in all the divisions all over the compound. I have been assigned to Division 6 since April 2018. However, I can work elsewhere in the Jail if I work overtime.

3. In all of these assignments, except for Division 4 and the female unit within RTU, I had interactions with male inmates every day. Even when I was assigned to Division 4 and the female units of RTU, I saw male inmates when I was transferring female inmates through the tunnel. Any time I had to leave RTU or Cermak, for example, even just to drop off paperwork or to go to the lunch room, I would see male inmates. Numerous times, I and the female inmates were verbally sexually harassed by the male inmates.

4. During my employment at the jail, I have witnessed male inmates either sexually harassing me or sexually harassing the female inmates I am transporting, almost every time I have walked past them. Almost every time I ever walked through Receiving, which I had to do often when I was assigned to Cermak and to RTU, I heard male inmates make sexual remarks about my body or say sexual things to try to get my attention because I am a female officer. For example, one inmate in Division 6 would always blow kisses at me. When I was in Division 10, one inmate would continue to tell me that he was going to marry me.

5. Working Division 6, the inmates verbally harass me almost every day, depending on the deck I am working on. Whenever a female correctional officer is the new officer on the deck, and you do something that the inmates aren't happy with, they will call you a "bitch" or a "cunt." They will comment on my body and my appearance, say I have a big butt and thighs. They have said things like "when I get out of here, I will take you out" and other propositions. If I were to give every example of sexual comments made toward me by inmates, I feel like it would take forever.

6. For example, sometime in 2018, I was working in Division 6, approximately six inmates started verbally sexually harassing me. They were calling me a "bitch," "cunt," "dyke," "little boy," and other things. I spoke to a sergeant

about the incident. I recall the sergeant questioning whether I was sure that it was these inmates who were shouting at me. The sergeant, as well as other supervisors who I cannot recall, discouraged me from writing an incident report because they claimed I couldn't be sure exactly who was making those comments, so I did not write a report until approximately one week later, as explained in the following paragraphs.

7. Approximately one week later, during roll call, I was told to meet with Superintendent Beachem. I met with Superintendent Beachem, and he asked why I didn't write an incident report.

8. After that I wrote an incident report, as requested by Superintendent Beachem. I named four inmates. Still, Sergeant Ross was reluctant to accept the report, stating that I couldn't prove it was those particular inmates. This experience made me feel discouraged from writing reports.

9. No one followed up with me on this report, but I looked up the inmates in CCOMS and saw that one inmate was found not guilty, two were found guilty, and one I could not find any records for. I do not know if any of the inmates were actually disciplined other than removal from the tier.

10. In approximately March 2019, one of the worker inmates who I supervised was having performance deficiencies. I told the inmate that I was going to terminate him from his worker position. From his cell, I heard the inmate screaming about me, saying, "that bitch can't fire me!" I wrote an incident report on this. The next day, I heard the inmate complaining to the male sergeant on duty, saying that I can't fire him. I don't believe the inmate would undermine a male correctional officer or treat a male correctional officer this way. I also think the inmate purposefully used the word "bitch" because it is meant to degrade me as a woman.

11. I have witnessed inmates masturbating numerous times. Whenever I have worked a shift in Division 9, which I did a few times approximately 2012 during the midnight shift, I would see inmates sticking their penises out of the chuckhole all night long. I did not write up inmates for doing that because I had not been trained that I could write up inmates for sticking their penises out of the chuckhole. I did not even know that I could.

12. When I was working in RTU, in the "east control" area, the side holding cells have a button near the doors that inmates can press to request a door to open. When they press the button, a camera turns on to show who is buzzing. One day, in approximately 2017, an inmate continued press the button and flash his penis to the camera. He knew that I was there watching the camera.

2

Plaintiffs 002496

13. Considering the sexual harassment I have dealt with, that was a "good" day. Nonetheless, I immediately called a sergeant to notify him of the inmate's behavior. In response, the sergeant indicated he was not concerned and may have said something to the effect that he had better things to worry about. Based on the sergeant's response, I did not write an incident report. In addition, I do not have time to write a report every time an inmate engaged in some form of sexual harassment. I needed to monitor the door to make sure the inmates were secure.

14. In Division 6, I have had an inmate repeatedly ask to give me a massage. One inmate, who believed he was going to be released in July 2018, said he was going to wait for me in the parking lot when he got out of the Jail. He continued to describe a "road trip" he was going to take me on, which sounded like human trafficking. He ultimately was not released, and told me he would take me out "next time." I didn't report it because if I reported every incident like this, I would have to make multiple reports every day and that would be impossible. I would be writing reports all day.

15. Also in Division 6, in approximately July 2018, another inmate, Inmate O.R., would often tell me I had "pretty eyes" and make other comments about my body. He would sometimes claim that he was going to refuse to go into his cell and lock up, but he didn't say it seriously – he acted as if he was joking and just wanted attention. One time, he asked me if I could read lips. When I was observing the day room while I was in the interlock, O.R. kept mouthing words to me, which I could not decipher. I turned around to face away from the inmate, so he would know that I was not going to pay attention to him. I had to continue to observe the day room from the cameras instead of in person.

16. On or around July 5, 2018, O.R. entered his cell during lockup in Division 6, but started pushing on the cell door to prevent me from closing the door. Then, an unknown liquid substance was projected at me. I felt like this incident was specifically because I am a female officer. I reported this incident to Sergeant Campos and Lieutenant Gonzalez and an incident report was written. When I wrote the incident report on the computer, I checked the box that indicates that I want to press charges.

17. Although the inmate was removed from the deck, I did see him again that same day. I was relieved to go to Cermak (by myself, without another officer escorting me) for a medical evaluation following the incident. On the way to Cermak, as I was walking through the tunnel, I saw that inmate O.R. was handcuffed to a wall in the tunnel. As I walked past him, he apologized. When I was returning from Cermak, I saw him again.

Decl. Ex. 496

Plaintiffs 002497

18. I do not recall hearing anything about the incident after that. I do not know if he was disciplined for the incident.

19. What bothered me was that he felt like his behavior was acceptable. He is a minimum inmate, so he is likely not going to be in Cook County for very long. But he still felt like it was ok for him to do that to me and put something on my body. I believe that, in his mind, he thought he was playing, but it was not a joke. If the consensus is that the inmates feel like they can do that without a problem, then I believe the county is failing somewhere.

20. Inmates in Division 6 are often inappropriately dressed. They always walk around with their shirts off, so I have to tell them to put their shirts back on. I feel like the male officers and supervisors do not enforce the dress code for inmates the way that women do.

21. Because of the sexual harassment, I don't feel safe at work. There is an emergency button on our radio, but I don't think it is effective because the protocol to find where the alarm is coming from is complicated. It would likely take about an hour to find where the alarm is coming from. In addition, the buttons are often accidentally pressed, and even if no one identifies themselves and the fact that they accidentally pressed the button, no one goes to check and see if the officer is ok. I recall only one time seeing a supervisor respond to an emergency button being pressed. In RTU, there are emergency alarm buttons on the desks, but you would have to be near a desk in order to press them.

22. Officers will often read other officers' reports in CCOMS. Everyone does it every day. Because of this, sometimes I feel uncomfortable writing the details of the verbal sexual harassment that inmates say to me on the incident reports because I know that anyone can see it. I don't want the whole compound knowing that I had to sit there and listen to that. But, I also don't want to leave out details.

23. The sexual harassment has affected me outside of work. I have trouble sleeping sometimes, especially when I've been exposed to a bad deck of inmates who have sexually harassed me all day. Correctional officers have enough to deal with already, adding the sexual harassment just makes it that much worse.

*Melissa Mazias*

_____
Melissa Mazias

04/25/19
_____
Date

Decl. Ex. 497

Plaintiffs 002498

## SHIRLEY MCBRIDE DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Shirley McBride. I am an Emergency Response Technician (ERT) for Cermak Health Services at the Cook County Jail ("Jail"). I have worked in the Jail since 1993. Since 2015, I have been assigned to the Division 9 Dispensary. Before that I was assigned to Division 6. Over the course of my career, I have worked all over the Jail.

2.  As an ERT at the Jail, I am responsible for providing medical care to detainees being held in pre-trial detention. I provide routine medical services in the Division 9 Dispensary and respond to medical emergencies on the tiers. Some of my duties include performing EKGs, wound care, and drawing blood. My job requires me to interact with male detainees on a daily basis.

General Description of Harassment

3.  Male detainees sexually harass me by exposing their penises, masturbating, and routinely making threatening sexual comments to me. I have witnessed detainees expose their penises and masturbate at least twenty times. I also witness detainees masturbating or fondling themselves under their uniforms on a daily basis. Detainees make sexually explicit comments to me several times a week. They have even made sexual comments to me in the middle of medical emergencies.

Decl. Ex. 498

4.  Detainees frequently expose their penises and masturbate at me when we are alone in the treatment rooms or lab of the Dispensary. Detainees also get erections while I am trying to perform medical tests, such as EKGs. These incidents are very distressing because I am in a small, closed off space with the detainees. I feel unprotected. An officer is assigned to the Dispensary, but the officer is not required to be inside the treatment room or lab. Because of multiple experiences when detainees exposed themselves and masturbated at me in a treatment room or the lab, now, I ask the officer to come inside. However, that's not always possible. Detainees also masturbate in the waiting area and triage area of the Dispensary.

5.  On the tiers, detainees pull out their penises and masturbate in the dayroom, and commonly stick their penises through the chuckholes of their cell doors and masturbate.

Specific Incidents of Exposure

6.  I recall a masturbation incident that happened around November 2014. I was in a treatment room with Detainee M.S. I looked down to get something. When I looked up, Detainee M.S. was stroking his exposed penis. I told him to stop, and he shushed me as if to keep me from alerting an officer about what he was doing. He continued to masturbate. I felt extremely vulnerable and like a victim of sexual molestation. I reported it to the male officer assigned to the Dispensary and he wrote it up. An investigator contacted me and asked if I

2

Plaintiffs 002500

wanted to press charges. I said yes, but no one followed up with me after that. I don't know if the detainee received any discipline.

7. In 2017, Detainee Q.W. and two other detainees continuously masturbated at me while waiting to be triaged in the Dispensary. All three of them sat in the waiting area, with their penises exposed, masturbating and laughing at me. After I complained about him, Detainee Q.W. threatened me by saying he knows my first and last name and can easily find me when he is released from the Jail.

8. I remember a detainee, Detainee T.A., who I believe faked medical emergencies so that he could expose himself to female medical staff. When I arrived in response to the emergencies, he would expose his penis. One time when this detainee claimed to be having a seizure, I put him in a wheelchair. He leaned back and began rubbing his head against my breasts. I was extremely uncomfortable, but as an ERT, I must respond to emergency situations and provide medical treatment, even when I suspect it may not be a real emergency.

9. When I perform segregation rounds to check on detainees' welfare, detainees often stick their penises out of the chuckholes and masturbate at me. For example, in approximately 2015 or 2016, I was doing segregation rounds and I dropped my pen. I stopped briefly to pick it up. As I got up to continue walking, a detainee ejaculated through a chuckhole. It was disgusting. I think that if I hadn't stopped to pick up my pen, he would have ejaculated on me.

3

10. Detainees openly masturbate and are blatant in their behavior. I recall an incident in approximately August 2017 when Detainee J.C. masturbated at me in the dayroom near the tier door while I was in the vestibule. He licked out his tongue and put his leg up on the wall, giving a full view of his entire genital area. I complained and the male officer on duty filled out an incident report. I sought to press charges. Later, the detainee asked me why I had complained.

11. I also remember an incident in the Dispensary that occurred in May of 2017. Detainee D.B. exposed his penis and started masturbating at me while he was sitting in the triage chair and I was trying to take his blood pressure. It was shocking. I complained to the male officer on duty and he filled out an incident report. I sought to press charges against the detainee.

<u>Witnessing Harassment of Others</u>

12. I know that women in different positions at the Jail also experience sexual harassment by the detainees. For example, I recall that Detainee M.R. exposed his penis to me and other female employees repeatedly during 2017. Detainee M.R. would claim to have stuck something in his penis so that he could expose himself and we would have to touch him. After Detainee M.R. began doing that, other detainees took his lead. Throughout 2017, it was an ongoing ploy for detainees to claim they had stuck something in their penises in order to expose themselves to me and other female medical staff. It puts us in a terrible position because we know they are faking the injury or intentionally injuring themselves, but our job requires us to provide medical care.

4

<u>Sexual and Sexually Violent Comments</u>

13.     Detainees frequently make comments such as, "Give me some of that pussy,"
        and "Look at her ass." During one incident approximately three years ago, I
        really feared for my safety. I was doing segregation rounds by myself and the
        officers forgot I was on the deck. They locked me in. Detainees began yelling
        sexually violent comments at me like, "I'll fuck her in her ass!" "I'll fuck her in
        her eye!" "I'll fuck her in the nose!" - describing how they would sexually
        assault me in any way that was physically possible. I became very upset and
        started crying. I felt like I was in imminent danger because detainees had
        recently been able to get out of their cells by putting what they call "poppers"
        into the door lock – things like a small piece of paper that would keep the door
        from locking properly. Right as the officers finally came in to let me out, a
        detainee actually did pop his cell door open. I consider myself to be tough, but
        this was a really traumatic event for me. I had been instructed to perform the
        segregation rounds by my supervisor, Carol Boyd. An officer is supposed to
        escort me, but this time no one did. When I left the deck, I complained to
        Superintendent Jones and my supervisor immediately. The Superintendent
        told me I shouldn't have been in there in the first place. He blamed it on me,
        even though I was performing a duty required by my job.

<u>Knowledge of Defendants, Ineffectiveness of Complaining, and Discouragement</u>

14.     The Sheriff's Office knows about the detainee sexual harassment because I
        have repeatedly complained about it. As a Cook County employee, I don't have

Plaintiffs 002503

the ability to fill out my own incident reports in the Jail's computer system. However, I have asked officers to complete incident reports for me approximately fifteen to twenty times. When officers complete incident reports, their superiors are notified.

15. In addition to the specific incidents listed above, I also asked for an incident report to be filled out about an incident in the Dispensary around November 2017. Detainee M.L. was masturbating while sitting across the desk from me. I tried to hide behind the computer so that I would not see his penis. The more I ducked behind the computer, the more the detainee slide his chair closer to me. It was scary because I was in a confined space with him. I complained and the male officer on duty wrote an incident report. I sought to press charges, but the Sheriff's Police Investigator told me that, because I was hiding behind the computer and did not actually see his penis, the charges wouldn't go forward. His penis was visible on video, and he was clearly masturbating at me. He did not receive any meaningful consequences for what he did to me. That was extremely discouraging.

16. When I complain about detainee sexual harassment, sometimes male officers will tell me that they won't write it up because they didn't see it. Other times, officers will fill out incident reports but, as far as I know, the detainees have not suffered meaningful consequences. I have been told that nothing can be done about my complaints when detainees are masturbating under their uniforms or if I don't see their exposed penises. Because I have tried to report

6

DocuSign Envelope ID: E164E1F9-FDD1-4CEB-B073-81B717874B1D

such incidents and the detainees involved know my complaints were not processed, the detainees understand that if they don't expose their penises directly to me or if I don't look, they will get away with it.

17. For several masturbation incidents, investigators have interviewed me and asked me if I wanted to press charges. I have sought to press charges approximately eight to ten times. In most cases, investigators later contacted me and said someone "dropped the ball," and the case was thrown out. I believe criminal charges regarding only one incident I reported went before a judge.

18. I have been made to feel that the sexual harassment is a part of the job. Male officers have made comments such as, "You signed up for this," and, "You work in a jail full of men. What do you expect?" Male officers contribute to the problem at times. For example, about six months ago, I was preparing to administer a flu shot, which required a detainee to pull down his green jumpsuit to take his arm out. A male officer started flashing a flashlight and imitating strip club music. The officer and the detainee laughed, but I did not think it was funny. I explained to the officer afterward that things like that make the sexual harassment by detainees worse. I also remember approximately four years ago when a male officer in Division 6 showed detainees an adult magazine and asked whether they agreed that a woman in the magazine looked like my coworker, a nurse. The officer and the detainees laughed, but my coworker was humiliated.

Decl. Ex. 504

Plaintiffs 002505

Ineffectiveness of Steps Taken

19.    The few steps that have been taken to address the harassment have been ineffective. For example, I have seen detainees wearing green jumpsuits and still exposing their penises. In March 2019, Detainee D.M. masturbated at me while wearing a green jumpsuit. The front is closed with Velcro and detainees can open them easily. I have seen detainees wearing jumpsuits with the Velcro completely ripped off, the jumpsuits wide open or around the waist, and the detainees' underwear showing.

Lack of Training

20.    I have never received training from the Cook County Sheriff's Office or Cook County regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to sexually assault me.

Impact on Job Performance

21.    The sexual harassment has made it more difficult to do my job. I am wary of being around detainees because they have repeatedly sexually harassed me. It makes me very nervous every time a detainee sits down for medical evaluation or care, even for a simple blood pressure, because of the multiple times detainees have sat in the chair pulled out their penises and started masturbating. From one moment to the next, I expect that a detainee will expose his penis and masturbate at me again. It is a very uneasy, unsettling, and vulnerable feeling.

8

Plaintiffs 002506

DocuSign Envelope ID: E164E1F9-FDD1-4CEB-B073-81B717874B1D

22.    The detainees' exposure, masturbation, and sexually explicit comments to me are offensive and threatening. Sometimes I fear for my safety even outside of work. For example, recently a detainee threatened, "All I have to do is Google you," after I complained about him masturbating at me.

Emotional Impact

23.    The sexual harassment has caused me emotional distress. I consider myself to be a tough person, but the constant sexual harassment is hard for anyone to take. It wears down on you over time. It is hard to get the images of detainees pulling their penises out and masturbating at me out of my head. The disgusting, frightening things they say are not easy to dismiss from my mind. It affects my personal life because I worry about the possibility that a detainee will track me down. The Sheriff's Office and the County have not taken meaningful action to address the detainee sexual harassment in order to protect me and other female employees.

Decl. Ex. 506

Plaintiffs 002507

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/27/2019

Date

DocuSigned by:

*Shirley McBride*

3283535 7895B458...

Signature

10

## KIMTRINA MCCLELLAND

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Kimtrina McClelland. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail for approximately thirteen years. During my time at the Jail, I have been assigned to Divisions 6, 10, and 11, Electronic Monitoring, Receiving, Transportation, and on the Administrative Relief Team ("ART"). When I was assigned to ART, I worked in whichever division was short that particular day. I have been assigned to Transportation since 2015, but I continue to work overtime in whichever division I am needed.

2.  In Transportation, I mostly transport inmates from different jails to the Cook County Courthouse. I also transport special risk or high profile Cook County Jail inmates within the jail by picking them up in Receiving. Every inmate that I transport has to be blue-boxed.

3.  In all of my assignments, whether working in Transportation or in ART or overtime where I am assigned to whichever division needs me, I have daily, direct contact with male inmates.

4.  Male inmates have exposed their penises and masturbated in Divisions 1, 9, 10, Receiving, and while I am transporting them. For example, when I was on ART working in Divisions 9 and 10, I worked in the bubble right outside the showers. Inmates would touch themselves and masturbate while looking at me as they were in the shower. The masturbation was so constant that I could not do the paperwork I had to do as part of my job.

1

Plaintiffs 002246

5.      I remember one time, in Division 10, when inmate D.M. walked up to the bubble from the shower and ejaculated on the window right in front of me.  Another time, also in Division 10, a guy came up to the glass window and started ejaculating at another female officer in there.  I was in security at that time, and the female officer called security and told me to zoom the camera in to show what was happening. That inmate was taken to the hole, but to my knowledge he was not charged, even though it was clear from the video what he had done.

6.      For me, the masturbation is the worst in Division 9.  That was where younger inmates are housed, and the masturbation is constant—I see men masturbating every day in both the shower area and the holding area.  I remember one time recently when I was working transportation and I had to go to Division 9, and I was the only woman in the holding area.  Seven or eight inmates began masturbating all at once as soon as they saw me.  The male officers in Division 9 refused to do anything, they just told me "There's nothing we can do about it, just don't go in there," but I had to go in there as part of my duties as a transportation officer to check IDs.

7.      The same thing has happened many times when I walk past the holding areas in Receiving—a bunch of inmates will all see me and start masturbating at once, and I have to just ignore it because there are too many to deal with.  I wouldn't be able to do my job if I tried to stop and write up a report every time I witnessed an inmate flashing his penis or masturbating at me because it's just too many.

8.      I also experienced men masturbating at me when I worked in Division 1 as ART or overtime.  Division 1 has a catwalk with just bars around the cells, and I would do cell checks there.  I remember three or four times when I would check on an inmate in Division 1, and he would be lying on the bed naked or with his pants down, with

2

Plaintiffs 002247

his penis exposed and erect because he knew I would be checking his cell. This behavior happened on almost all the tiers and almost every day for me in Division 10—an inmate would be behind his cell door and he would call you to come over because he needed something. I knew that they were already masturbating and were just calling me over so that I could see it and they could look at me while they masturbated. I felt like I had to just ignore this behavior and keep going to do my job, but I felt embarrassed and humiliated that I was just expected to have to see that kind of behavior as part of my job.

9. As a transportation officer, I often transport inmates in a van. About twice a month, I witness inmates masturbating in the van, even though they have the blue boxes on, because most of the inmates are still wearing the two-piece jumpsuits and they can still put their hands in their pants and take out their penises. I know they are masturbating when I stop the van at a light or a stop sign and the van is still shaking or moving. A lot of male transportation officers do not want to be my partner because they know they will have to deal with inmates exposing themselves or masturbating at me just because I am a woman, and they don't want the extra burden of having to defend me.

10. Similarly, most male officers in Receiving don't want me or other female officers to come into Receiving to blue-box the inmates to transport them to Court. They don't even want me to come into the interlock bubble in Receiving because the inmates will still be able to see me. The male officers just tell me to stay outside, that the male officers will do the blue-boxing to avoid any problems with the male inmates when they see me. The male officers are worried that they will get in trouble for excessive force if they put their hands on the inmates to try to stop them if they start

3

Plaintiffs 002248

exposing themselves or masturbating at me, so they just tell me to wait outside or in the van.

11.   I remember one time, an older female officer was in Receiving and an inmate in the holding area whipped his penis out at her and started masturbating. The female officer cried and came inside the interlock bubble to get me. I went into the holding area and the inmate was still doing it and laughing at me.

12.   The inmates also make derogatory comments at me, every single day, in all of the Divisions, in Receiving, while I am transporting inmates, or anywhere in the Jail where I pass an inmate. "Oh, you have a big ass" and "shake that ass" are normal comments that I hear every day that I work. I also have heard comments like "don't be afraid baby to look over here" when inmates are in the shower and trying to flash their penises at me.

13.   I remember writing three different incident reports about inmates masturbating, but I never was notified of the outcome of those reports or if anything happened to those inmates. Because nothing ever seemed to happen as a result of the incident reports, I stopped writing them because it was just more work for me, with no result.

14.   I believe that everyone in the Jail has witnessed the inmates sexually harassing women because it happens everywhere and cameras are everywhere. I have also called sergeants and lieutenants when I witnessed masturbation in the beginning, and the inmate's penis would still be out when they came.

15.   Sergeants are not always supportive when I mention writing up masturbation—they will say things like "We'll take care of it, we'll move him to another division, so there's no need for you to write it up." I've also heard hearing officer say things like "it's jail, what do you expect" or "they can't be held accountable if they are in the shower."

4

Plaintiffs 002249

16.     When I started working at the Jail and witnessing the masturbation, I would cry
        and call my sergeant because I didn't know how to deal with it.  But now, I just
        ignore the inmates when they are flashing their penises or masturbating at me.  I
        don't pay any attention unless another officer is crying about it, then I tell the
        inmates to stop.  Because I am often transporting high risk or high-profile inmates, I
        feel like I can't worry about who is jacking off because it will distract me from my
        highest priority, which is preventing escape of high-risk inmates and maintaining
        jail security.

17.     Because I've worked in the Jail so long and witnessed so much masturbation, I feel
        like I have had to get numb to it—I've learned not to pay it any attention.  In the
        beginning I was emotional and crying about it, but not anymore.  But even though I
        try not to react to it, it is still humiliating and embarrassing and it makes me feel
        dirty and ashamed.  Sometimes, when a bunch of inmates are all masturbating at
        once, I forget where I am and feel like I am just in a room with a bunch of guys who
        are about to rape me.

18.     I used to wear a sweater and wrap it around my waist.  These days, I wear a sweater
        almost every day, and I wear leggings under my uniform.  I don't know why I wear
        the leggings, for some reason it makes me feel safer to have another layer between
        my body and the inmates.

19.     The masturbation has also affected me outside of my work.  When I started this job,
        often when I got home, I got flustered.  I would discuss it with my husband, and he
        would get upset and wanted me to quit, but I need this job for the money.

5

Plaintiffs 002250

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/11/2019
_____
Date

_____
Signature

Plaintiffs 002251

# DARLENE MCCORD DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.       My name is Darlene McCord. I am a sheriff/correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately June 22, 2010. I have worked in various parts of the Jail in my role as correctional officer, including: Divisions 1, 4, 10, 17, and 9. I have been on disability leave since August 2017. I am currently assigned to Division 9 and have been working there for the past five years.

2.       As a correctional officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my job duties include, but are not limited to: supervising detainees' daily activities, inspecting cells, releasing inmates from their cells into the day room, returning inmates to their cells, and escorting inmates to other areas of the Jail. In all of these assignments, my job has required me to have interactions with male detainees daily.

3.       During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis, including regular comments about how they want to have sex with me.

Decl. Ex. 514

Plaintiffs 001150

4.	I most frequently witness detainees masturbating with their penises exposed through the chuckholes of the doors to their cells.  Whenever detainees hear me coming, they start masturbating and place their penises in the chuckhole door. This happens almost daily.

5.	When I worked in laundry in Division 9, inmates masturbated with their penises exposed through the chuckholes every day.  I was assigned to laundry for about six months.  The masturbation got so bad that on several occasions, I had to enter the day room and face the door of the tier, with my back to the cells, because so many inmates had their penises exposed at the same time.

6.	I have also witnessed inmates masturbating in the showers and bathrooms while on patrol.  For example, I remember that in 2015, I turned my back on three inmates in the shower to assist my partner across the room.  There was a glass partition between the inmates and where I was walking.  When I turned around, three inmates were following me behind the glass and masturbating.

7.	I have seen other women who work in other positions experiencing the same or similar sexual harassment throughout the Jail.  For example, I've witnessed inmates masturbating at nurses and medical staff during dentist appointments and in medical offices.  As another example, in 2016, I saw an inmate grab a teacher's butt.  The teacher and I both wrote him up.

8.	I hear crude or sexual comments from male inmates directed at me so often that I have lost track of how many times I have heard such comments. For

2

Plaintiffs 001151

example, inmates have asked me out on dates and asked to spend more time with me. Inmates have commented, "Hey beautiful, when I get out we're going to have sex," "I'd f*ck that," and "Ms. McCord, you draggin a wagon."

9.     My supervisors know about the detainees' behavior and their sexual comments towards me and other women. They have either heard the comments themselves or read incident reports.

10.    Management makes no real effort to discipline inmates or set consequences for the sexual behavior toward women. My male supervisor has said, "It's nothing. That happens all the time," when I complain about the masturbating.

11.    I have probably written over 20 incident reports about the sexual conduct directed at me, and never received information on the final outcome. When we switched over to the computer-based reporting system, I noticed that a lot of my past reports from Division 10 were missing. I could no longer access these past reports. For example, in 2014 or 2015, I wrote an incident report when a detainee was masturbating in front of the water fountain in the day room in Division 10. I was the attending officer on the tier and every time I looked up, this inmate was staring at me masturbating. I know that I reported him; however, I cannot find this incident report now.

12.    I wrote another incident report when one inmate had his pants down and his and his penis rubbing against the glass partition staring at a group of female officers.

3

13. I have given verbal orders to stop when multiple detainees had their penises in their hands waiting in line for court. They did not stop, and the male officers present did nothing to get them to stop.

14. As another example, in 2016, I wrote an incident report after a male detainee had an erection while I was searching him. After this incident, the inmates went to rec and as he passed me in the hallway, he made sexual comments towards me. This made me feel disgusted and objectified. The Jail does not enforce a uniform dress code and this makes it more difficult for officers to search detainees. This incident made me feel uncomfortable doing inmate searches.

15. After writing several incident reports, I was discouraged from writing reports about the masturbation because a superintendent P. Jones and the male director at the time said it would not do any good. I have been told to accept the sexual behavior towards me as part of the job.

16. Incident reports are ineffective because the detainees know that this Jail imposes no real consequences for masturbating at women. Inmates have commented about the lack of discipline and know that nothing will happen to them.

17. Inmates have also mentioned that this behavior does not take place in other corrections institutions they have been at. Some detainees have told me that they are surprised by the amount of masturbation at the Jail, and said,

4

Plaintiffs 001153

"When you're downstate they don't allow this to happen." Downstate means at other jails or prisons.

18. I have never received training from the Jail regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

19. The sexual harassment changed the way I do my job. For example, correctional officers are required to inspect detainees' dorms and check for violations. I inspect detainees' dorms as quickly as possible, because detainees frequently masturbate toward me when inspecting their rooms.

20. Furthermore, the harassment changed the way I dressed at work. I always cover up at work and dress as modestly as possible. I always layer and wear bulky clothing to try to avoid further harassment. It doesn't matter what I wear; the inmates still harass me.

21. The behavior by male detainees toward me is unwelcome, offensive, harassing, humiliating, threatening, and caused me to fear for my safety. As a result of the constant sexual harassment, I have suffered severe emotional distress. The harassment and masturbation at the Jail makes working there extremely stressful. It affects my mental health. I am exhausted and don't want to be bothered after leaving a shift at the Jail, which affects my personal life. When I first began working at the Jail, the exposures and masturbating were almost an everyday occurrence in Division

5

Plaintiffs 001154

9.  It was getting crazy and it made me feel heavily stressed at work and in my every day life.  I started having a reoccurring nightmare that I was surrounded by hundreds of penises and could not escape.  It was horrible.  I didn't want to tell anyone about the dream because it was so traumatizing.  I witnessed so many masturbation incidents that I stopped writing them down. I have been on leave since August 2017, and the thought of the harassment I experienced still gives me hi-stress and anxiety.  No one should have to go through that mentally.  I am extremely fed up with the lack of action to deter sexual harassment within the jail.

Decl. Ex. 519

Plaintiffs 001155

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

01/15/2019
_____
Date

_____
Signature

Decl. Ex. 520

Plaintiffs 001156

# Declaration of Rita McCoy

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Rita McCoy. I have worked as a correctional officer at Cook County Jail since March 10, 2003.

2. I have been assigned to Division 3&8, External Operations, Division 10, and RTU. I am currently assigned to the Criminal Courts Movement Team (CMTT). I have been assigned to CMTT since March 2018.

3. With the exception of External Operations in 2004 until 2006, I have had interactions with male detainees on a daily basis.

4. The sexual harassment by detainees happens every day. In my current position, because I am responsible for moving male detainees, so I walk past different male detainees all day. Every time I walk past male detainees, I hear things like, "God damn, look at that big ass" and other comments, like calling me a "hoe" or a "bitch." I just keep walking. It feels degrading. It seems like the administration thinks it's ok for them to call me a "hoe," a "bitch," or that I need to "suck some dick." Every day we go into work we are being degraded and there are no consequences for their actions. Inmates will even say things like, "write it up, nothing will happen."

5. It's not a part of my job to be called a "bitch," "hoe," or told to "suck some dick." One time, an inmate said to me, "Look at that ass, it's like a basketball." Officer Ross witnessed the incident. I did not write up this incident because there is not enough time in the day to write up every inmate that says something sexually degrading. I'm on the movement team, so I would have to stop every time an inmate said something – and that would take too much time. Also, many women don't write it up because they know nothing will happen to the inmate.

6. I have been attacked by a detainee who was masturbating at me. On approximately May 20, 2015, I was sitting in the correctional officers' office, which is connected to the interlock of the tier. I saw Detainee <span>Redacted</span> (Inmate ID # <span>Redacted</span>) returning from the barbershop by himself without anybody escorting him. I buzzed the door to allow him into the interlock so that he could go onto the tier. But instead of going to the tier, he placed his body halfway into the correctional officers' office, where I was, and used his body to block me in. As I was blocked in, he pulled out his penis and started masturbating. I tried to push him out of the door. Detainees on the tier could see what was happening and started yelling for my partner, Officer

Plaintiffs 001115

Arce, to come help me. Eventually, he was able to come in and assist me in subduing the detainee. I was livid.

7. I immediately wrote an incident report and a disciplinary report on the detainee. I indicated that I wanted to press charges. Lieutenant Blanchard (male) encouraged me to write an incident report but said he didn't know what was going to happen to the detainee because the detainee was going to be moved downstate soon.

8. After the attack, no one from the county came to check on me, no one asked if I needed to talk to a therapist. Because the county did not respond at all to the attack, I confided in friends and family for comfort.

9. I did not hear from an investigator for approximately a year. About a year after the incident, I received an email from Investigator Boyd and I met with him in person. Investigator Boyd (male) said, "He's already doing 10 years and your case doesn't carry what his case carries." He also stated words to the effect of, "He didn't touch you, so he wouldn't get as much." He discouraged me from pressing charges and handed me a Complaint Refusal on Victim's Request to sign. I signed it because I felt that I had no other choice.

10. This experience discouraged me from reporting incidents. I was sexually attacked by a detainee and it took an entire year to hear from an investigator, only to be discouraged from pressing charges. A lot of officers do not write a report every time they are sexually harassed because of instances like these where nothing happens. Furthermore, would be impossible to write up every incident of sexual harassment because it happens so often.

11. In approximately May or June 2018, inside the tunnel, a detainee who was locked up in the holding cell in the tunnel, pulled down the green jumpsuit and started masturbating. I said to him, "No you ain't doing that!" I called for officers to come, and they removed him from the cell. I filed an incident report and indicated that I wanted to press charges.

12. Approximately a month or so later, I saw two Sheriff's Police investigators (males) walking in the Division 5 lobby. I approached them, introduced myself, and said, "Do you have the complaint I gave you about the detainee jacking off to me?" They said, in words or effect, that there was a backlog and they were behind and that it would be a while.

13. In approximately August 2018, I received an email and a phone call from a female State's Attorney. I stated that I wanted to press charges, but I haven't heard anything since then.

2

Plaintiffs 001116_REDACTED

Plaintiffs 001116

14. On July 12, 2018, I was verbally harassed by Detainee [Redacted] (Inmate ID # [Redacted]). I tried to put a handcuff on Detainee [Redacted], who sitting on the bridge. When I went to handcuff him, he said, "What the fuck are you doing?" and I told him I was handcuffing him. When he still would not comply, I called a male correctional officer, Officer Delgardo. He still would not comply, so a third correctional officer (a male), Officer Burress, came and commanded that he put handcuffs on. The detainee said to the male correctional officer, "I'll do it for you, but not for that bitch." The detainee then started sexually harassing me, telling me that I needed to "get some dick," and threatening me, "maybe you should get some of this county dick!"

15. Sergeant Gardiardo approached us toward the end of the altercation and I informed him what the detainee was saying to me. When the sergeant turned to the detainee, the detainee said, "All I told her was to go suck some dick!"

16. In approximately June or July 2018, I was required to sit in the lockup area of the court and observe the detainees. One detainee (whose name I cannot recall) kept saying things like, "You are pretty," "You have pretty lips," for hours, trying to get my attention. I kept ignoring him. Finally, another female correctional officer stepped in and told him to stop.

17. The detainees know that the jumpsuits are ineffective. In approximately June 2018, a detainee said to me that they're being put in green jumpsuits but they don't get charged, nothing happens to them. He stated, in words or effect, "They just put us in green just to shut you all up."

18. When Sheriff Dart started giving pizza to green jumpsuit detainees in approximately 2016, I remember hearing detainees say things to each other about wanting to be included in the pizza parties. I remember hearing a detainee say to another detainee, "What are you doing with that green on?" and the other detainee said, "I just did it so I could get some pizza." In response, the detainee said, "I want to do that." I could not tell which detainees were having that conversation because there were many of them around.

19. When I found out about the pizza parties, I felt like the detainees were getting praised for jacking off at women. Do they know how that made us feel? Terrible.

20. The sexual harassment is degrading and it takes a toll on you mentally. It makes me feel less as a woman. I go to work to do a job, not to be sexually harassed and feel belittled every day. It's just too much. Sometimes, I say to

3

the inmates, "I'm someone's mother. What if someone talked to your mother like this?" You're already fighting to get respect being an officer, and then you have to fight to get respect as a female alone. We want to be treated the way they treat the male officers. Don't look at me as a female – look at me as an officer. I want the inmates to treat me the way they would treat a male officer.

21. For a while, I didn't even want my husband to touch me. I was at a point where I had to remind myself that those comments are not true – I'm not a "bitch" or a "hoe," I have a husband who loves me. But if someone says this to you every day, it starts wearing and tearing on your mind.

_____
Rita McCoy

_____January 4, 2019_____
Date

Decl. Ex. 524

Plaintiffs 001118_REDACTED

Plaintiffs 001118

# DECLARATION OF SHARON MCHUGH

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.      My name is Sharon McHugh and I am a Correctional Officer at Cook County Jail (the "Jail"). I have worked at the Jail since 1997. During my time at the Jail, I have been assigned to Division 4, Division 1 from approximately 2000 to 2013, and Transportation, where I have been assigned since 2013. I have also performed overtime shifts in Divisions 5 and 9.

2.      As a correctional officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. In Transportation, my duties include transporting detainees off-site to courts in outlying counties, hospitals, or other places they need to go, and, in some cases, supervising them for the duration of the time they are away from the Jail. I also escort high risk movement ("HRM") detainees to and from their hearings in Leighton Criminal Courthouse, which is connected to the Jail through an underground tunnel, and I supervise them throughout the time they are in the Courthouse.

3.      My job duties require me to interact with male detainees daily.

4.      From approximately 2014-2018, I witnessed male detainees exposing themselves to and masturbating at myself and other female employees nearly every day. One area where this frequently occurred was in Receiving, where some of the bullpens that held male detainees were placed right across from the desks where I and other correctional officers complete the paperwork needed to sign detainees in and out of the Jail. The detainees in those holding cells would consistently stare at me and other female officers and masturbate. We would often direct them to stop but this rarely worked. The masturbation was so persistent that eventually we just tried not to look at them. There were almost always male Sergeants in Receiving when this happened, and it

1

Plaintiffs 002509

would have been very difficult for them to avoid seeing detainees masturbating at us, given how frequently it happened. However, the male sergeants never said anything to the detainees to get them to stop masturbating, and to my knowledge, they also did nothing to discipline the detainees. Approximately a year ago, the male detainees were moved from that bullpen to an area away from the desk where I usually check detainees in and out of the Jail. I heard from other correctional officers the that detainees were moved because something in that bullpen was broken. Since then, I have been subjected to less masturbation in Receiving, but it still happens at least once a month.

5.     When I escorted HRM detainees to Leighton Criminal Courthouse, which I did from 2014-2018 approximately 3 times a month, almost every time male detainees masturbated at me from the holding cells that are located behind the courtrooms. When I would tell them to stop, they would say things like "you must like it" and "why are you looking?" On occasion, I was required to wait with an HRM detainee on a bench that directly faces a holding cell where one or more detainees are masturbating at me, which has been infuriating and humiliating. There have almost always been male correctional officers present when this happens, and they have said nothing to the detainees nor done anything else to stop them.

6.     Male detainees also make crude and sexual comments to me and other female employees. They have said things like, "let me eat that pussy," "let me get with you," and "you know you want it." I have heard these comments almost every day. I hear them from male detainees in Receiving. I also hear these comments when I pull up to Post 8, which holds the armory where I turn over my weapons upon returning from a transportation run. The area where I exit the vehicle is visible from the Division 9 recreation yard, and detainees yell sexual comments at me when they see me. Detainees in the holding cells in Leighton Criminal Courthouse also make sexual comments to me nearly every time I had to transport an HRM detainee there.

2

Plaintiffs 002510

7.     Since the November 2017 preliminary injunction went into effect, and since the male detainees were moved from the bullpen near the desk that I often use in Receiving, the incidents of exposure and masturbation have become less frequent, but I am still subjected to it at least once a month. Also, the verbal sexual abuse has continued unabated.

8.     The sexual harassment has happened so often that it is difficult for me to recall the details of specific incidents. However, one incident that sticks out in my mind occurred in Division 9 when I was picking up an HRM detainee for a court hearing. While preparing the detainee for transport in a room that had a window into the dayroom, I turned my head and saw multiple detainees standing at the window exposing themselves and masturbating at me. My male partner told me to go out in the hallway, but he did not say anything to the detainees or write an incident report. There were also correctional officers on the tier who I feel confident saw the detainees masturbating at me, but they did not say or do anything to get them to stop. I did not write an incident report because I did not know who the detainees were, and I did not have time to find out because I was responsible for escorting the HRM detainee to his court hearing on time.

9.     The green jumpsuits do not prevent detainees from masturbating or exposing themselves. I remember one incident in Receiving when I was walking past the male bullpens and a detainee in a green jumpsuit one of the bullpens masturbated at me and ejaculated on the floor. There were male correctional officers nearby, some of whom must have seen him do this, but none of them said anything. I did not stop to write an incident report because I was trying to find a detainee who needed to be transported to an outlying court for a hearing, and I could not delay locating him.

10.     I also recall one occasion when I was transporting a group of detainees from by bus. My partner was driving, and I was sitting in a seat against the side of the bus so that I could

Decl. Ex. 527

Plaintiffs 002511

see the detainees. One of the detainees masturbated, with his penis exposed, for almost the entire two-hour drive back to the Jail. I told him multiple times to put his penis away, but he responded, "I'm not going to stop. I haven't seen a female in a long time." My male partner stayed silent, even though he heard me telling him to put his penis away.

11.     I know that other female employees are subjected to indecent exposure, masturbation, and verbal sexual harassment by male detainees because I have been with them when detainees masturbate at both of us. For instance, when detainees have masturbated at me at the desk in Receiving, I have often been standing with other female correctional officers. I also regularly discuss the problem of detainee sexual harassment with other female officers including officers who work in other divisions; we trade stories and warn each other about particular detainees who are known for masturbating at female employees. Knowing that my female colleagues are also constantly experiencing sexual harassment makes me feel like it could happen to me at any time. I often worry that it will escalate and someone will attack me or one of my female colleagues.

12.     Supervisors know that detainees are masturbating at women and verbally sexually harassing them. For instance, there are usually male sergeants within earshot when detainees make crude sexual comments to me in Receiving and I am certain they have heard them. On many occasions male detainees have masturbated at or exposed themselves to me and my female colleagues in Receiving within male sergeants' sightline and I am confident they have witnessed that too. I recall having one conversation with other female correctional officers and a male sergeant about the constant detainee sexual harassment, and he said words to the effect of, "well you took this job – you knew this was going to happen."

4

Plaintiffs 002512

13.     I have never received training regarding how to address the masturbation or other sexual harassment by male detainees, how to prevent male detainees from repeating sexually harassing behavior, or how to respond if a male detainee tries to sexually assault me.

14.     The sexual harassment by male detainees toward me and other female employees is disgusting and disrespectful. I feel humiliated and embarrassed when I go to work every day, and I dread seeing the male detainees because I am afraid that they will sexually harass me, expose themselves, or masturbate. I wear my uniform too big in order to cover my body, which can be hot and uncomfortable. This has not stopped the harassment.

15.     The constant sexual harassment has caused me to be nervous and anxious in my life outside of the Jail. I am less trusting of people outside of the Jail because being constantly subjected to sexual harassment by male detainees makes me paranoid that other people will sexually harass me. It is exhausting and stressful to feel this way all the time.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

05/01/2019

_____
Date

_____
Signature

5

Plaintiffs 002513

## ALISHIA MERCHERSON DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Alishia Mercherson. I was a Mental Health Specialist III at the Cook County Jail ("Jail") from approximately August 2013 to July 2016. While at the Jail, I was assigned to Cermak and Receiving, but I also worked in Divisions 9 and 10 when I was needed due to staff shortages, and overtime in Division 2/RTU.

2. As a Mental Health Specialist at the Jail, I was responsible for the mental health needs and safety of individuals being held at the Jail in pretrial detention. For example, I assessed inmates' mental health needs, performed mental health diagnoses, provided group and individual therapy sessions to inmates, and checked in on the inmates in Cermak, which is the Jail's residential infirmary. In all of my assignments, my job required me to have interactions with male detainees on a daily basis.

3. Throughout my employment at the Jail, I endured sexual harassment, including male inmates exposing their penises to me; purposefully masturbating at me or in front of me; and, on a near-daily basis, making crude or sexual comments to me. I also repeatedly saw male inmates directing the same types of sexual harassment at many female employees of the Jail.

4. While working at the Jail, I frequently witnessed inmates masturbating when I did rounds. As part of my duties, I was required to conduct unit rounds by

Plaintiffs 001344

walking by each cell and looking at each inmate. Often, I would enter the areas where inmates' cells were located, and inmates would rush to stand near the window on the door on their cells, expose themselves and begin masturbating. Or, inmates would sit on their bed and expose themselves and masturbate, knowing that I would have to walk by and witness them. This happened so frequently that at one point, in Cermak, officers put paper over the windows on the cell doors to block outside visibility of inmates masturbating in their cells. Mental health unit supervisors then came to the area of Cermak where I was assigned, and I heard them telling officers to take down the paper.

5.     When I was assigned to Receiving in 2016, I also would see male inmates stare at me from outside my glass interview cubicle, masturbating, while I was conducting mental health assessment interviews with other inmates. This usually happened during times the Jail was very busy and had many inmates in the overflow areas. When it happened, it would frighten me and distract me from interviews I was trying to conduct.

6.     Inmates were supposed to have their hands cuffed behind their bodies during therapy appointments, but often their hands were cuffed in the front, so the male inmates could, and did, still touch their penises during their appointments.  Even if they did not touch themselves, some inmates would become visibly aroused during our sessions and then stare at me and lick their lips or make other gestures to ensure I noticed. Also, officers were supposed to sit directly outside the door during appointments, but sometimes when I would

2

Plaintiffs 001345

call for an officer because a male inmate was saying something sexually inappropriate or touching his penis, there would be no one for backup at the door and I would be left to deal with the situation on my own, which was unnerving, intimidating and left me concerned for my personal safety. This happened throughout the areas where I worked.

7.    I recall one inmate in Cermak, M.R., who frequently called me to his cell, saying things like "I need you to see something" or "I need to talk to you" and when I responded to him he would be masturbating or telling me that he had something stuck in his penis because he "wanted to harm himself."

8.    I did my best to avoid seeing inmates who had a history of masturbating at female staff unless it was an emergency. I have overheard some such inmates making comments to officers such as, "Man, is Ms. Merch here today? You'd hit that wouldn't you." Even taking these measures, it was impossible for me to avoid sexual harassment.

9.    I observed women working in other positions in the Jail being subjected to the same or similar sexual harassment that I experienced. For example, on at least one occasion I overheard a male inmate threatening to rape another female mental health specialist while he was working one-on-one with her at Cermak.

10.   When I had lunch with female mental health specialists and unit nurses, we often discussed the sexual harassment that each of us had recently been subjected to by male inmates. Female employees tried to help warn one

3

Plaintiffs 001346

another about which male inmates were known to masturbate. Nevertheless, the masturbation happened so frequently that it was impossible to avoid.

11. I experienced crude and sexual comments by male inmates so frequently— multiple times a week—that I lost track of how many times it occurred. Examples of such comments that were directed at me include, "Ms. Merch, you so fine" and "look at your ass." When I was pregnant, the behavior got worse. For example, male inmates would ask me "who popped you off?" and then start masturbating at me. Once in Cermak, in Unit 2 South, I did not give an inmate the attention he wanted from these comments and he threatened to kill me when he got out of the Jail.

12. My supervisors knew about the male detainees' sexually harassing behavior. It often occurred in front of them, and employees complained about it to them. In a staff meeting I attended, my manager, Dr. Gomez, a man, made comments such as, "you make good money because you're being subjected to this" and "get another job if you don't like it here" in response to female mental health workers voicing concerns about sexual harassment and other issues.

13. Mental health specialists could write an EMERS report about sexual harassment. EMERS is a computerized reporting system used by Cook County Health and Hospital Systems to report and document incidents. But supervisors did not encourage female mental health specialists to make reports. For instance, in Cermak, I was repeatedly told by supervisors that, with regard to repeat masturbators, if the problem had already been

4

Plaintiffs 001347

documented in an EMERS report, then the issue was known and there was little point in documenting it every time it happened. On at least one occasion, I overheard two or three female nurses talking about how the EMERS reports did not have any outcomes. I believed there would be no follow up or consequences for an inmate who had an EMERS report. Based on this, I felt that filling out reports for every incident of masturbation or sexual harassment would be pointless.

14.     If I wanted to file an incident report with the Jail in CCOMS, I needed the help of a correctional officer because, as a Mental Health Specialist, I cannot use the system. Male correctional officers repeatedly told me that they thought filing incident reports about sexual harassment, masturbation, or indecent exposure, was usually pointless because the inmates were already facing serious charges, so being convicted of a charge like indecent exposure would not meaningfully increase their sentence. This made me feel like some officers would be reluctant to help me file an incident report.

15.     Filing an incident report about sexual harassment with the Jail also felt ineffective because male inmates believed that the Jail would not impose meaningful consequences for them masturbating at women. For example, male inmates said to me that incident reports "aint gonna do shit" and they threatened to write a grievance about me for naming them in an incident report.

<div align="center">5</div>

Plaintiffs 001348

16. I never received training regarding how to address the masturbation or other sexual harassment by male inmates, how to decrease male inmates' opportunities to repeat such behavior, or how to respond if an inmate tried to sexually assault me.

17. The sexual harassment in the Jail impacted my ability to do my job. For example, if an inmate masturbated when meeting with me, I had to end our session and the inmate had to be removed from my office. I was required to conduct at least two group therapy sessions per shift and meet with inmates on an individual basis as their needs presented. I was also required to write at least two notes about each inmate per day to document the mental health issues they presented and the mental health interventions I offered them. If an inmate was masturbating in his cell, I could not allow him to leave his cell to join group therapy in the day room unless he stopped masturbating. If an inmate was sexually harassing me or exposing himself, it was difficult to examine him or offer him therapy. In essence, the constant sexual harassment frustrated my ability to meet these requirements.

18. I dressed conservatively at work in an attempt to minimize sexual harassment from inmates. I always intentionally avoided wearing any clothes that were form fitting or clingy, and I maintained professional boundaries with inmates. Still, male inmates masturbated at me and made offensive sexual comments to me, which was emotionally draining for me.

6

Plaintiffs 001349

19.    When I was working at the Jail, I sometimes spoke with my husband, who is a correctional officer in the Jail, about the inmate sexual harassment and described some of the things that would happen to me during the day. He was never surprised when I told him what happened because he had observed the Jail administration had not responded adequately to inmate sexual harassment, indecent exposure, or masturbation. He advised me to make officers "do their jobs" by accompanying me when I had to talk to male inmates. However, officers would not always be available to accompany me. And I still experienced sexual harassment even during the times when I was with officers.

20.    As a result of the constant sexual harassment I experienced at the Jail, I dreaded going to work and suffered serious emotional distress.   When I was at the Jail, I felt extremely stressed and nervous every day while I was working with male inmates because I was always concerned about being sexual harassed and afraid of potentially being sexual assaulted.  I felt the need to be alert and hypervigilant at all times, even in moments when no male inmate was present with me.

21.    Even though I no longer work at the Jail, the sexual harassment from male inmates has left an impact on me. I now have a private counseling practice. However, working with male clients often causes me a lot of stress. When I do see a male client, I only make appointments during the day, when I know that there are other people in the building. I am often nervous during our sessions. If a male client were to talk to me about sex, I would be extremely scared and

7

Plaintiffs 001350

uncomfortable. I directly attribute this to the harassment I experienced at the Jail.

22. I speak with female mental health specialists who currently work at the Jail. As of February 2019, that they told me that they are still subjected to the same frequency and severity of sexual harassment that I experienced when I was at Jail.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/01/2019

_____
Date

*Alishia Mercherson*

_____
Signature

8

Plaintiffs 001351

# <u>TERRI MERRIWEATHER DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Terri Merriweather. I am a Certified Medical Technician ("CMT") at the Cook County Jail ("Jail"). I have worked at the Jail since approximately August 2, 1989. Since 2013, I have been assigned to the Drug Unit (3 Annex) and then the Division 11 Dispensary. For approximately the last four years, I have been assigned to the Division 11 Dispensary.

2. As a CMT at the Jail, I am responsible for providing medical care to detainees being held in pre-trial detention. My duties include providing routine medical services in the Division 11 Dispensary, such as checking detainees' vitals and assessing health-related complaints, and I also perform duties on the tier. My job requires me to interact with male detainees on a daily basis.

<u>General Description of Harassment</u>

3. Male detainees sexually harass me by exposing their penises, masturbating, and making crude or sexual comments to me. I have witnessed detainees expose their penises and masturbate approximately twenty to thirty times. I have also witnessed detainees masturbating or fondling themselves under their uniforms on multiple occasions. Additionally, detainees routinely make sexually explicit comments to me. Detainees have made sexual threats, such as threats of rape, to me approximately twenty times or more.

Decl. Ex. 538

<u>Specific Incidents of Exposure</u>

4.     I recall an incident that occurred one to two years ago in Division 11. While I was performing my duties as a CMT, a detainee exposed his penis and began masturbating at me. I requested an officer to complete an incident report and wanted to press criminal charges. Sheriff's Police investigators told me that if they brought disciplinary charges against the detainee instead of me filing criminal charges, the process would go faster, and the detainee would be removed from the unit more quickly. I did not want to continue to see the detainee on a daily basis. Because of that, I took the investigators' advice. To my knowledge, no charges were brought. If they were, the detainee did not receive significant discipline because he was back in my work area within a few weeks.

5.     I remember another incident that happened approximately four years ago when I was assigned to the Drug Unit (3 Annex). A detainee exposed his penis, said, "suck my dick," and called me a "bitch." I complained and requested that the detainee be removed from the unit. My complaint fell on deaf ears.

6.     On a number of occasions, I have also witnessed detainees masturbating in the shower or walking around naked when I was trying to pass out medication. I do not recall details regarding a specific incident.

7.     On a daily basis, detainees also come into the Division 11 Dispensary to complain that there is something wrong with their penises. Based on the

Decl. Ex. 539

Plaintiffs 001296

frequency of these visits and evaluating the detainees, I believe that some of the visits are an excuse to expose themselves to me and other women.

## Witnessing Harassment of Others

8. I know that women in different positions at the Jail also experience sexual harassment by the detainees. For example, my coworker Nurse Georgina Jardine was with me during the exposure incident described above that occurred in the Drug Unit. Additionally, the same detainee continued to expose himself and make sexual comments to women, including a female sergeant. I do not recall the sergeant's name.

## Sexual and Sexually Violent Comments

9. Detainees frequently make comments such as, "Give me some of that pussy," "Look at her ass," or threaten sexual assault in a variety of different ways, describing what they will do to me. About one and a half years ago, a detainee asked me "for some ass," and then told another detainee he was going to "fuck me." He lied to the other detainee that I agreed to have sex with him. I felt violated by the detainee's lie and the sexually explicit things he said to and about me.

## Knowledge of Defendants, Ineffectiveness of Complaining, and Discouragement

10. The Sheriff's Office knows about the detainee sexual harassment because I have repeatedly complained about it. As a Cook County employee, I don't have the ability to fill out my own incident reports in the Jail's computer system. However, I have requested officers to complete incident reports for me multiple

3

Decl. Ex. 540

times. When officers complete incident reports, their superiors are notified. In recent years, detainee sexual harassment has been so bad that it was not possible for me to request an officer to write up detainees every time and still be able to perform my job duties. At times, I have also been told that there was not enough space for additional detainees to go into segregation, which made it even less likely the detainees would be disciplined.

11.     Additionally, because I did not witness detainees I had written up receive any meaningful consequences, I felt discouraged from continuing to request incident reports to be filed. I had to continue interacting with the detainees and they would know I complained about them.

12.     I have also verbally complained approximately fifty to sixty times over the course of my career. In response, I have heard statements such as: "If you women are going to work here, these are the things to expect"; "You need to stay home and raise your babies. You shouldn't be out here working"; "It's a part of the job"; "Turn your head away"; "Grow some balls"; "Man up"; and, "You are working in a man's institution." I have heard these types of comments so often that I cannot recall specifically who made them.

<u>Lack of Training</u>

13.     I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

4

Plaintiffs 001298

## Impact on Job Performance

14.  The sexual harassment has made it more difficult to do my job. Each time I have to take vitals, I am leery of being close to the detainees. I am apprehensive because I worry they will exposure their penises and masturbate at me again. To try not to draw attention to myself, I always wear a coat or sweater at work, but that doesn't really make a difference.

## Emotional Impact

15.  The sexual harassment has caused me emotional distress.  It makes working at the Jail extremely stressful. It makes me angry that the detainees are permitted to constantly sexually harass me and other female employees without any real consequences. I am generally a more negative person now, even outside of work, which affects my personal life. The Sheriff's Office and County have not done enough to address this issue.  I feel like the expectation is that I and other female employees should just learn to deal with it.

5

Decl. Ex. 542

DocuSign Envelope ID: D81DEEF2-D21D-4410-8194-B57C968310CD

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

3/26/2019
_____
Date

DocuSigned by:

Terri Merriweather

A4927565353442B...
_____
Signature

6

Plaintiffs 001300

# SANDRA MILLER DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Sandra Miller.  I am a Building Service Worker in Environmental Services at the Cook County Jail ("Jail").  I am assigned to the Cermak Medical Building ("Cermak").  I started work at the Jail in 2013.

2.  In Environmental Services, I am responsible for cleaning certain areas of the facility.  For example, my job duties include cleaning detainees' cells, cleaning offices, dispensaries, and medical treatment areas, washing and waxing the floors, and properly disposing of sharps and medical waste.  In performing all of these duties, my job required me to have interactions with male detainees daily.

General Description of Harassment

3.  During my employment at the Jail, I endured sexual harassment by male detainees, which they directed at me and at other female employees. I experienced detainees regularly exposing their penises to me, male detainees purposefully masturbating at me or in front of me, and crude or sexual comments on a daily basis.

Specific Incidents of Exposure

4.  I most frequently witnessed detainees masturbating while I was walking in the hallways between divisions or through receiving.  When I walked by detainees, they grabbed their penises and wagged them at me.  They would

Plaintiffs 002252

grope themselves, stick their tongues out, and/or lick their lips while looking at me. It was disgusting and frightening, especially because I do not really have any way to protect myself.

5. Detainees also masturbated a lot in the emergency room. They would be lying on gurneys waiting for treatment and just start masturbating. It did not matter who was around or what else is going on – as long as there was a woman present they would start masturbating. They would often leer at me and other women while they did it.

6. One of my assignments was to clean the office in receiving. I would often have to walk through a large group of detainees and sometimes step over them to get to the office in order to clean it. I always locked the door behind me. It was scary. Some of them would grab their penis when I walked by.

7. One detainee, who was a detainee worker assigned to clean the cells in receiving, slipped a note under the door into the office while I was cleaning it. The note said, "Do you like me? Y/N." When I came out of the office, he told me that he was getting out soon and we should hook up. I called the front desk and told them to get him out of my area. An officer came to escort me out of the area but nothing happened to the detainee.

8. Another time, I went into a detainee's cell in the medical wing to clean it and he had left me roses made out of toilet paper. It scared me because many of these guys are dangerous and you do not know what they may do next.

2

Plaintiffs 002253

<u>Sexual Comments</u>

9.    I heard crude or sexual comments from male detainees directed at me, literally, every single day. They made cat calls at me. They would say things like, "you've got a nice ass, I would fuck you!" One detainee told me I was exotic looking and wanted to have sex with me. Often they told me they wanted to hook up with me, or suggested that we "get together" when they got out.

<u>Knowledge of Defendants</u>

10.    Supervisors and managers at the Jail know about the detainees' behavior and their sexual comments towards me. I told my supervisor, Carl, about it. He didn't say anything. I feel like the supervisors just ignore it.

<u>Ineffectiveness of complaining and writing disciplinary reports</u>

11.    I complained to my supervisor, Carl, a couple of times. One time he laughed at me and the other time he pretended he didn't hear me. After that, I realized that nothing was going to happen and that it was useless to complain. Needless to say, nothing changed.

12.    I never wrote incident reports or filed criminal charges against the detainees for sexually harassing me – I didn't know I could. No one ever explained that we could do anything in response to detainees' sexual behavior.

13.    The male officers sometimes tell them to stop, but they don't. It really felt like there were no consequences for this behavior.

Decl. Ex. 546

Plaintiffs 002254

<u>Lack of Training</u>

14.     I never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to make them do it less often, or how to respond if a detainee tries to touch or assault me.

<u>Impact on Job Performance</u>

15.     The sexual harassment changed the way I did my job. I had to pretend I didn't see them. This made me less safe because I couldn't anticipate the detainees' movements. I was often working by myself with no officers around. I locked myself into rooms to clean them and sometimes would need to call officers on the phone from inside the room to get the detainees away from the door so I could get out.

16.     For example, when I cleaned the medical area, the area was closed, and I was by myself. But, the detainees would be outside and could see in. They could watch me and I was afraid they could get in. I had to lock myself in to feel safe.

17.     Furthermore, the harassment changed the way I dressed at work. If I had a coat on because I had to walk in between buildings, I would keep in on until I was inside a locked room and doing my cleaning work.

18.     The behavior by male detainees toward me was creepy, offensive, degrading, threatening, intimidating, and caused me to fear for my safety.

4

Plaintiffs 002255

<u>Emotional Impact</u>

19.  As a result of the constant sexual harassment, I have suffered a lot of anxiety and stress.  It made me more aware of things around me.  When I am out on the street I look around, afraid that I will be sexually assaulted.  It makes me feel dirty.  I wonder if I did something that made them do this to me.

20.  The sheriff's office knows what's going on, but they don't care.  They want to do as little as possible.  I was always on the night shift and would often be in a room by myself cleaning.  It was creepy. When I had to walk through the Jail, sometimes I would ask for an escort, but I would have to wait a long time for them to come.  It felt like they forgot about me. No one protected me.

Decl. Ex. 548

Plaintiffs 002256

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

3/31/19
Date

Sandra Miller
Signature

6

Plaintiffs 002257

DocuSign Envelope ID: 6C7144DA-CD10-4738-92DF-DC418E78AB10

## TUNESIA MITCHELL DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.    My name is Tunesia Mitchell. I am a Correctional Sergeant at the Cook County Jail ("Jail"). I have worked at the Jail since September 5, 1995. I have been on medical leave for an on-duty injury since October 16, 2018, and will likely return to work in April or May of 2019. My most recent assignment was as a Sergeant floating between Cermak and Division 10. I got assignments daily; I could be assigned to either Cermak or Division 10. I had this assignment for one or two years, and prior to that I was in Division 4. Division 4 housed females when I started but males at the end. Before Division 4, I was in Division 17 and Records, and during that time, in approximately 2011, I was promoted to Sergeant. For my first 15 years at the Jail I worked as an officer in Division 1, maximum security.

2.    As a Sergeant at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention, maintaining order at the correctional facility, and supervising the officers on duty. For example, my job duties include, assigning lunch and other breaks to the officers on duty, checking in with the staff on the tiers to make sure they have what they need for the day, occasionally sitting on the tiers to cover for the officers during breaks, responding to incidents, signing off on incident reports, escorting detainees, securing detainees, and responding to detainee

Plaintiffs 001408_REDACTED

Plaintiffs 001408

complaints or requests.  In performing all of these duties, my job has required me to have interactions with male detainees daily.

## General Description of Harassment

3.      During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced detainees exposing their penises to me, male detainees purposefully masturbating at me or in front of me, crude or sexual comments on a daily basis, and regular comments about how they want to rape and sexually assault me.

## Specific Incidents of Exposure

4.      I most frequently witness detainees masturbating on the tiers.  Most of the time I see it when I go into the tiers to do a check or a search.  When I enter I will say, "Female on the tier, cover up," but they won't cover up; they masturbate instead.  They pretend they didn't know I was coming.

5.      I also see detainees masturbating and exposing themselves when they walk through the stairwell in Division 10, coming down for rec time.  Usually the whole tier will come down at once, and they have to be searched before they go to rec.  The officers stand at the top and bottom of the stairs, and I have to be present for the search at the bottom.  A sergeant has to be present, but I usually have a male officer with me to do the pat-down search.  They will have their hands in their pants and say things to you like "you look good this morning," or make suggestive faces at you. The detainees are supposed to be

2

in proper uniform, but sometimes they aren't. Sometimes the detainees who wear green jumpsuits sometimes "accidentally" leave them open so their penises are "accidentally" exposed. I have to tell them to get dressed before I let them into the rec area.

6. Sometimes when I am working in Cermak, the detainees in the sitting area get impatient and tired of waiting. In this area, they sit on benches, cuffed to the front, with their ankle shackled to the bench. They don't like it. They will purposely take out their penis and start masturbating in the hopes that we will pay attention to them and they will be served sooner. If their appointments are over and they are waiting to be transported back to their divisions, they often threaten to "clap" (masturbate) at the officers if they aren't taken back soon.

Witnessing Harassment of Others

7. I have seen other women who work in the Jail experiencing the same or similar sexual harassment. For example, on March 8, 2018, I was supervising the medicating of a male tier in Division 4. Detainee Redacted was receiving his medication in the interlock with Officer Campos and Nurse Morrison. Detainee Redacted has a history of hiding his medication. When I walked by, detainee Redacted had his pants down and was in his underwear. Officer Campos told me that detainee Redacted had put his medication cup in his pants, then stripped naked, exposing his penis, to show

3

Plaintiffs 001410

the female nurse that he had not hidden anything. When I got there, he said, "Sergeant Mitchell, I was just trying to show her I didn't have anything."

8.     Another time in Division 4, I was supervising a different medication pass with a female officer. One detainee pretended to stick the medication in his waistband, and then put his hands in his pants and started rubbing and shaking his penis to "show" he didn't have anything in his pants.

9.     One time in Division 10, I saw a detainee expose himself to Lieutenant Alta Johnson. She was assisting with locking up the detainees. He didn't like something she said, so he said, "bitch, you can suck my dick," and then pulled out his penis.

10.     As a sergeant, I often have to assist other women when they are being sexually harassed. I respond to the incident and help secure the detainee, assist in writing the incident report, and help determine whether the detainee needs to be moved immediately. I usually let the officer take a break for a little while and supervise the tier for a bit. Everyone doesn't do that but I do, because I understand what they are going through. I have to be a professional and do what I can to protect the officers and civilian employees. If the officer can't get them to stop masturbating, I have to try.

Sexual Comments

11.     I hear crude or sexual comments from male detainees directed at me on a daily basis, and sexual threats weekly. For example, detainees have told me, "You got a big old ass," and "I've been locked up for six months - I'd fuck the

4

shit out of you." Regularly, I hear how fat my ass is and what they want to do to it. I especially hear this in Cermak, where the detainees come from all over the compound. One detainee said, "I am in love with you. I just want to run up to you and kiss you and I don't care if anything happens. How can I get with you when I get out?" Detainees have made these or similar comments too many times to count.

12. Once, in Division 4, a detainee said, "your man must not be treating you right. I have seen you on the block, I know where you live. I am going to fuck the shit out of you when I get out."

13. As an officer in Division 1, we had an area called ABO. That's where they kept the worst of the worst. They typically didn't send women there. However, one day I had to go on a special assignment to check on the condition of the cells. A detainee saw me and said he would bend me over, fuck me in the ass, and shit down my throat. He then told me that if he ever saw me in the street, he would rape me.

Knowledge of Defendants

14. Supervisors and managers at the Jail know about the detainees' behavior and their sexual comments towards me and other women. I know, because I have been told by my supervisors, that the only thing I can do or tell my officers to do is write the detainees up.

5

15.  I also know that my supervisors know about the detainees' behavior because some of my female supervisors are masturbated at also, like Lieutenant Johnson.

## Ineffectiveness of complaining and writing disciplinary reports

16.  Writing up detainees for sexual misconduct is not an effective deterrent. Usually when the detainees get written up, they just get put in green jumpsuits and sent to division 9 or 10. They don't get sent to the hole too much anymore because it's so common-place. The detainees think it's a joke. A lot of these guys have so much pending discipline it just doesn't matter.

17.  I have been involved in helping other female employees write approximately 20 incident reports about detainee sexual misconduct. Most were in Division 10 or Division 4.

18.  Sometimes my male coworkers will tell the detainees to stop, but they don't because there are no real repercussions for them. So now, the officers just tell them not to be disrespectful and we have to hope they will stop. No one wants to give the detainees the impression that we care if they are doing it one way or the other because then they will get encouraged and do it more.

19.  Some Male officers have told me that I am a woman, so I should expect this behavior and just "deal with it." The male officers don't encourage the detainees' behavior, but some of them have the attitude that it's a jail, so what do you expect.

6

## Ineffectiveness of Steps Taken

20.     The Sheriff's Office has put the known masturbators in green jumpsuits, but
the green jumpsuits are ineffective. Sometimes the guys will put on brown
uniforms (they swap with other guys on the tier) if they have to go
somewhere with me. If I catch them doing it, they say they want to wear
brown so they won't be labeled as a masturbator. Some will use the excuse
that they were just masturbating to their girlfriend, not to any female
employees. If they don't have a proper uniform, I can't take them to court or
wherever else they need to go.

21.     We also don't have enough of the right sizes of the jumpsuits. If they get the
wrong size, they'll refuse to put it on and then sit around in their underwear.
They also tear them up or rip them in the hopes that there won't be enough
for them to get a new one. Regardless, the jumpsuits don't prevent the
detainees from accessing their penises: they still masturbate even when they
are wearing it, even when I tell them to stop.

22.     The Sheriff has done nothing to address the verbal harassment either. The
only option we have is to write them up, which doesn't stop them.

## Lack of Training

23.     I have never received training from the Cook County Sheriff's Office
regarding how to address the masturbation or sexual harassment by male
detainees, how to decrease the opportunities to repeat the behavior, or how to
respond if a detainee tries to rape me.

7

Plaintiffs 001414

24. The Sheriff put out a General Order about how you should treat a masturbator, which was to tell the officers to notify their supervisor. But I am a female supervisor, so for my officers, notifying your supervisor doesn't matter because they will keep doing it when I come. That's not training.

Impact on Job Performance

25. The sexual harassment changed the way I do my job. It heightens my sense of my surroundings. I am always aware of what's going on around me. Knowing I might see a detainee expose himself or masturbate makes me more fearful of what I will see when I go to check on the next tier or other location. I am always looking over my shoulder.

26. Furthermore, the harassment changed the way I dressed at work. I try to cover up as much as possible. I wear pants that are too large and always wear an oversized sweater that covers my butt. I wear a sweater even in the summer time when it's really hot. I call it my security blanket.

27. The detainees ask me why I wear my sweater so big. They make me feel like they can see right through my clothes. I try to make myself as un-attractive as possible. My colleagues and I discuss covering up our bodies all the time.

28. The behavior by male detainees toward me is harassing, degrading, threatening, and causes me to fear for my safety.

Emotional Impact

29. As a result of the constant sexual harassment, I have suffered emotional distress. It causes me to have strained relations with my family. At work I

8

Plaintiffs 001415

have to act as if nothing bothers me and act tough. My husband says I don't have to act like that at home, but sometimes I just can't help it. I have a hard time showing my emotions now. We have a rule now that I take 30 minutes when I get home to do nothing to try to shake off the craziness of the day. If I don't do that, it's hard for me to engage with my loved ones.

30. I am glad someone is finally doing something to try to stop the excessive masturbation and exposure at the Jail. I can't believe how commonplace it's become. I am just shocked at the detainees' behavior and I wish something could be done about it.

9

Plaintiffs 001416_REDACTED

Plaintiffs 001416

DocuSign Envelope ID: 6C7144DA-CD10-4738-92DF-DC418E78AB10

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

3/14/2019

Date

Signature

Decl. Ex. 559

Plaintiffs 001417_REDACTED

Plaintiffs 001417

## LAURA MLINARCIK DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Laura Mlinarcik. I am a Courtroom Services Deputy assigned to the Leighton Criminal Court Building. I have worked at the Cook County Sheriff's Office in Courtroom Services since 2001. Since approximately 2013, I have been assigned to courtroom 205, 302, 303, 404, and 604. I am currently assigned to courtroom 205 and have been working there since January 1, 2019. In all of my previous assignments except for 604, I have experienced male detainees exposing themselves and masturbating.

2.  As a Courtroom Deputy, I am responsible for the safety and security of detainees assigned to my courtroom, attorneys who consult with the detainees, and individuals in the courtroom, including courtroom personnel and civilians.

3.  The majority of the detainees I interact with on a daily basis are male. Until approximately the end of 2017 or early 2018 when some of CCSO's practices changed, my job required me to retrieve detainees from the bridge and transport them up and down on the elevators to go to court. I also monitored detainees while they were in the lockup behind my courtroom waiting to be called to court and escorted them to and from the courtroom.

General Description of Harassment

4.  Detainees have exposed their penises or masturbated at me in the lockup behind the courtroom, downstairs on the bridge and tunnel, and even on the

elevator. Over the past two to three years, on average, this would happen multiple times in a given month. Detainees also make vulgar sexual comments.

5.  At times the masturbation issue has been so bad that I kept track of which detainees were known masturbators to try to avoid putting them in the bullpen together. For example, in approximately 2015 or 2016, there were nine known masturbators, who were part of the same case, and would have been in the courtroom 302 bullpen at the same time.

6.  When I or other female Deputies would go to the bridge and tunnel to retrieve detainees from CCDOC, multiple detainees would expose their penises at the same time as soon as they saw us. I remember this happening a number of times since 2013. Because there were multiple detainees exposing themselves at the same time, I do not recall their specific names on a specific occasion.

<u>Specific Incidents of Exposure, Witnessing Harassment of Others, and Incident Reports</u>

7.  I recall an incident that happened to me in March 2018 while I was escorting Detainee ▮Redacted▮ to court. Detainee ▮Redacted▮ was a repeat indecent exposure offender and was required to wear a green jumpsuit. When we were in the south side detainee elevator on the way to court, ▮Redacted▮ exposed his penis; it was hanging out of his jumpsuit. When I escorted him back to the bridge after court, he asked me not to report him. I told him that I was going to report him. He responded, "I don't give a fuck. What you gonna do to me?"

2

8.     Detainees also sexually harass other female Courtroom Deputies. For example, I witnessed a detainee expose himself to Deputy Jessica Correa in approximately 2015 or 2016. I was assigned to courtroom 302 and Deputy Correa was assigned to 301. A detainee, whose name I cannot recall, was in the 302 lockup. As Deputy Correa walked into the lockup area, he exposed himself to her. Deputy Correa came to me and told me what happened. I looked in the lockup area and his penis was still exposed. Sue Plasencia, Kelly Shields, and Jessica Vergara have also told me about multiple exposure and masturbation incidents they have experienced.

9.     I have also witnessed detainees expose their penises and masturbate at female public defenders on multiple occasions. In all of those incidents, I assisted in identifying who the detainees were because they were assigned to my courtroom. For example, I remember an incident in August 2016 when I was assigned to courtroom 303. Detainee [Redac] [Redac] masturbated at Public Defender Gasman in the lockup area while she was trying to interview her client. I reported the incident.

10.     I also recall when a detainee masturbated at Public Defender Armendariz in March 2017. While I was working in courtroom 302, I overheard Public Defender Armendariz say, "put your penis away," from the lockup area. Detainee [Redact] [Redacted] had pulled out his penis and started masturbating. I reported the incident to Sergeant Hunter (male).

3

DocuSign Envelope ID: EE35CDC3-D99B-4979-BCC0-DA69B8A2C072

11. I witnessed a similar incident happen to Public Defender Armendariz again in June of 2017 when I was assigned to courtroom 302. I heard Public Defender Armendariz yell out from the lockup area. I went to assist her and found Detainee [Redacted] standing in the bullpen with his penis exposed and masturbating. I called Sergeant King (female), and the security team completed an Offense/Incident Report.

12. As another example, on May 15, 2017, Deputy Eric Calandra informed me that he overheard a Public Defender say, "put your penis away!" from the lockup area. Detainee [Redacted] had exposed his penis and started masturbating. I reported it to Sergeant Quimque (male) and the security team completed an Offense/Incident Report.

13. The very next day, on May 16, 2017, Detainee [Redacted] masturbated at Public Defender Balmer in the lockup of 302 and she reported it to me. I reported it and the security team completed an Offense/Incident Report. [Redacted] is a repeat masturbator. Because he was assigned to my courtroom, I know he has at least nine or ten indecent exposure charges for exposing himself or masturbating at female CCSO employees or public defenders.

14. I also recall an incident within the last few years in the lockup for courtroom 302 when a detainee completely undressed and stood there naked while holding his penis. I reported it but do not recall whether an incident report was created.

4

Plaintiffs 001421

15.   Detainees have also made crude or sexual comments to me. For example, Detainee Redacted said things like, "No one would know [if we had sex]," "You know you want it."

## Knowledge of Defendants

16.   My sergeants know about the detainees' sexual misconduct because I reported it to them. In the last three years, Offense/Incident reports have been written regarding at least five incidents of detainee exposure or masturbation that I reported to my sergeants, including Sergeant Hunter, Sergeant Quimque, or Sergeant King. I have also reported incidents to Deputy DiMarco (male), who is on the security team.

## Ineffectiveness of Complaining and Discouragement

17.   No one followed up on my complaints or after Offense/Incident Reports were created. That means I rarely know whether the detainees received any discipline, unless they tell me themselves or I hear a rumor. Detainees Red █████ ████ █████ and █████ █████ who all had indecent exposure incidents with me, other female CSCO employees, or female public defenders, told me that after 30 days of not exposing themselves or masturbating at female employees, they got pizza and large snickers bars.

18.   I did not file criminal charges because I was very discouraged by what I saw happening to indecent exposure charges in the courtroom. I observed that when detainees went before a judge and took a plea deal on their felony charge, the judge would drop all the indecent exposure charges. I witnessed this in my

5

Plaintiffs 001422

DocuSign Envelope ID: EE35CDC3-D99B-4979-BCC0-DA69B8A2C072

courtroom regarding detainees who exposed themselves to me, my coworkers, or courtroom personnel. For example, when Detainee ▐Redacted▐ came before the judge in courtroom 404, he had approximately eight indecent exposure charges. They were all dropped when he took a plea deal for his felony charge. He suffered no additional consequences.

19.    I also feel discouraged from continuing to complain about the sexual harassment because of the general attitude of my superiors about it. For example, another female deputy told me that one of our sergeants, Sergeant Mike Stawczyk, said that "it's part of your job."

Lack of Training

20.    I have never received training from the Cook County Sheriff's Office about how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me. I have received basic  sexual harassment training about sexual harassment among coworkers and supervisors, but none of that training was scenario based or hands on training. Based on my recollection, that training did not discuss anything specifically about detainees.

Impact on Job Performance

21.    The sexual harassment changed the way I do my job.  I am more apprehensive. Detainees' green jumpsuits are often hanging open, and I worry that at any minute they will expose themselves to me again. As a result, I ask my male partner to go get the detainees instead of me. If my judge allows it, I do not

Decl. Ex. 565

Plaintiffs 001423_REDACTED

Plaintiffs 001423

uncuff the detainees. I think being uncuffed makes it more likely they will expose themselves, although in my experience detainees have still been able to expose themselves while handcuffed. I fear for my safety around detainees and worry they will hurt me.

Emotional Impact

22.    I have suffered emotional distress because of the sexual harassment by detainees. The harassment and masturbation at the Courthouse makes working there extremely stressful. I put up a wall of toughness, but the detainees' behavior is traumatizing. I am disgusted with the CCSO because they treat it as if it is part of my job to deal with detainees exposing their penises and masturbating. They have not taken serious steps to address the problem and protect their female employees.

7

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

2/25/2019

Date

DocuSigned by:

Signature

8

## ANNTIONETTEA MONTGOMERY

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.　　My name is Anntionettea Montgomery. I am a deputy sheriff correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately September 1995. I was out on medical leave from 2013-2017 and returned back to my position at the Jail in 2017.　While working at the Jail, I have worked in Divisions 4, 5, 9, 11, Receiving, Trust, Cermak, and Transportation.　I am currently working in receiving.

2.　　All of my assignments at my job require me to have interactions with male detainees.　I endure sexual harassment by male detainees which they direct at me and other female employees.　Before I went on leave, the white shirts deterred inmates from acting disrespectfully to women.　The Jail was nothing like it is now. It's all changing.

3.　　The sexual harassment has increased over the years.　First it was the sexual name calling and the catcalling at women, then it was masturbating at women, and next it is sexual assault.　It is going to escalate to rape. No one at the Jail is taking steps that will solve the problem.

4.　　On May 1, 2018, I was escorting an inmate in a green jumpsuit back to his tier. Even though he was hand cuffed in the back, he was able to reach around and expose his penis.　He began chasing me with his penis exposed.　I believe that he was trying to rape me.　I kept stepping back and he kept coming at me.　I felt like I could not physically defend myself because of the rules put in place by the administration.　The administration has said that correctional officers are not

Plaintiffs 001157

allowed to put their hands on inmates. I was so upset because the administration took my power away. The first thing I thought was "can I take him down?" and then I thought I would lose my job if I defended myself. The most upsetting part of this incident is that I was so defenseless. I will never let myself be that weak and helpless ever again.

5.  After escaping the incident, I walked to get a sergeant. I wrote an incident report and pressed felony charges. I was extremely upset and was brought into the sergeant's office to review the video tapes of the incident. I asked tons of questions about different restraints and options for new restraints in order to avoid this in the future. However, I feel like no one had my back. I feel completely lost and overwhelmed. No one is rectifying the problem of sexual harassment and assault in the Jail.

6.  After being on leave, when I came back in 2017, I was working on the male bridge doing my transportation rounds and I had to walk past groups of inmates exposing themselves and masturbating multiple times at me. I didn't look and walked really fast trying to ignore it. In the transportation unit, during my daily rounds, it's impossible not to walk past inmates exposing themselves and masturbating. I am always walking in and out of receiving, moving male inmates from all divisions, and see inmates masturbating all over the jail every single day.

7.  This is not something you want to deal with at work. I was out for three years and before leaving, I rarely saw this type of thing happening. In 2006, men would masturbate in their cells and the showers, but it was never at this level. It didn't happen as often as it does now, and it was not as severe.

8.  I also experience male inmates making sexual comments, remarks about my appearance, and lewd gestures every day. Inmates always make comments like, "I

2

Plaintiffs 001158

would eat that," "I would fuck that," and anything else sexual. I try to put a wall up and forget the comments they make in order to deal with daily life at work. It is really hard. The other day I was talking to a co-worker about how hungry I was, and an inmate said, "Ima see my girlfriend soon, too." He was trying to change my words into something sexual.

9. I have completely lost track of the number of times I've been exposed to sexual harassment at the Jail. Other women at the Jail talk about it too. We sit around talking about inmates grabbing us and try to support each other. I feel really sorry for the women working in the tiers. The women who actually have to go on the tiers where the men are not in cuffs have it really bad too. I assume that all or most of the women at the Jail experience sexual harassment.

10. In the time I've been back, I have only written one or two incident reports because I see the masturbating and exposure much less. I do not write an incident report every time I see a male inmate masturbating or exposing himself because, in my experience, writing reports does not change anything at the Jail. Nothing has changed at the Jail since I was sexually assaulted at work. I still have not heard anything back from the administration regarding my sexual assault incident. The states attorney left me a message after it happened; but, when I called back, I left a message and never heard back.

11. In 2017, every time I entered Division 11 to do a count, I saw the same inmate naked and masturbating in my direction, trying to make eye contact. I wrote him up, but my supervisor never moved him. I had to threaten to refuse to take the assignment before they removed him. The male supervisors blame the females. They say, "Why is it they are always getting exposed to?" They make it seem like it's

3

Plaintiffs 001159

the women's problem. I've even experienced my reports not being processed. I've been in the office and watched supervisors ignore my reports.

12. The sexual harassment impairs my ability to do my job to the best of my ability. I've been at the Jail so long and I've seen a lot. This is the first time in my life that I have really felt helpless. Maybe it was the situation I was in, but I now feel so helpless at work. I get so stressed out about going to work. I have to go in and my stomach is in knots. Sometimes I am scared. I feel like I lost control. These inmates are not scared to take the next step. I'm worried someone will get raped. A lot of the women are worried that one of us will get raped. People say that they are just waiting for it to happen and that the administration is encouraging this behavior.

13. When I was sexually assaulted at work, it affected my entire life outside of work. I was drinking more. I didn't want to go outside. It was so stressful, and I didn't want to go back to work. I am too ashamed to even tell my family about what happened.

14. The sexual harassment at the Jail is only getting worse. Sometimes I like coming into work, but it really depends on the day. If I was going to break down, I would have broken down a long time ago. However, now it is just so much more stressful because I fear that something is going to happen. Someone will get raped.

4

Plaintiffs 001160

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

01/16/2019
_____
Date

_____
Signature

Plaintiffs 001161

# CHRISTINA MUHAMMAD DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Christina Muhammad. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately August 2003. I have worked in various parts of the Jail in my role as correctional officer, including: Divisions 3, 6, 8, 9, 10, 11, RTU and Cermak. I currently work in the lobby of Division 10 (I was transferred to the lobby because I was pregnant in August) but will be returning to the tiers soon.

2.  As a correctional officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my job duties include, but are not limited to: escorting detainees between different areas of the Jail (to court, dispensary, school, the law library, etc.), assuring no detainees are harassed or hurt, and supervising inmates' daily activities. In all of these assignments, my job requires me to have interactions with male detainees daily.

3.  During my job, I experience sexual harassment. Inmates sexual comments toward me on a daily basis, including threats about how they want to sexually assault me. Inmates also expose their penises to me and masturbate at me.

4.  Inmates make sexual comments to me so often that there is no way to remember how many times I have heard such comments. Regularly, inmates

Plaintiffs 001162

call me a "b*ich," "whore," and "c*nt." Inmates yell, "b*tch, suck my d*ck" and threaten to rape me daily. Inmates say, "Ima rape you," and "Ima come up to the Jail and wait for you when I get out." This happens so often it seems normal. My male supervisor told me this was just part of the job. Ninety nine percent of my supervisors have been male.

5.      I frequently witness detainees masturbating in the day room. For example, on January 1, 2017, I was in the bubble monitoring the inmates in the day room. For the last hour of my shift, every time I looked up, there were two inmates standing inside their cells masturbating beside each other, staring at me. I could see them masturbating through the chuckhole. They continued to masturbate at me until the end of my shift; however, there was no way to move out of their line of vision because I was assigned to watch the tier from the bubble. I wrote an incident report and complained to my male supervisor. No disciplinary action was taken.

6.      I have also experienced assault from inmates as part of the sexual harassment. In May 2016, an inmate hit me across the face. He was upset that I was getting married and screamed, "Why did you marry that little mother f*cker!?" and called my husband "a little b*tch *ss n*gger." He then hit me across the face and knocked my hat off my head. He yelled, "Wait until I get out" and "I'll kill your husband and f*ck you in the *ss." I was in complete shock. I couldn't believe what was happening. I tried to radio for assistance, but my radio would not key up. My male partner did not react

2

Plaintiffs 001163

and did nothing to help. I was finally able to call my supervisor and he removed the inmate from the tier. But later, the state's attorney called me and asked me to drop the charges that I brought against the inmate so that the inmate could accept a plea deal. This phone conversation made me feel unsupported as an officer. I felt like the administration did not care about me and I had to be more alert in order to protect myself while working. I was completely shocked by the entire incident as well as my supervisors and the administrations' reactions.

7.  While I was working in Division 9, inmates frequently masturbated in the showers while staring at me. From the officer's station, you can see clearly into the showers; so, inmates masturbate at the women working all day long. Inmates have sat in front of the TV with blankets draped over their laps masturbating at the women working on the tiers. Inmates know where the cameras' blind spots are and openly masturbate at women in those areas so that they are not caught on tape. On several occasions, inmates put their penises on the glass partition on the tiers and masturbated while staring at me. One inmate spit at me and threw what appeared to be urine and feces at me after I ignored his sexual advances and comments. He kept asking me to come to his chuckhole and told me that he loved me and wanted to be with me.

3

Plaintiffs 001164

8.     Inmates often masturbate at women with their penises exposed through the chuckholes of the doors to their cells. While working on the tiers, this happens about a couple of times a week.

9.     My supervisors know about the detainees' sexual behavior. I have been told by supervisors that this behavior "is just part of the job," "accept it," "this is what you're paid for," and asked if I provoked it.

10.    Management is also aware of the masturbation problem because I have written multiple incident reports about detainees masturbating openly. I have probably written about 10-15 reports per year for the past 15 years. I would have written more reports, but my male supervisor discouraged writing reports and told me it was a waste of time. Discipline for sexual harassment is inconsistent and ineffective. In the past, if we observed an inmate masturbating, we were instructed to search his cell and remove books, or photos, or snacks. Now, we are no longer allowed to search inmates' areas and remove items. This makes enforcement of policies and rules much harder.

11.    Incident reports are ineffective because the detainees know that the Jail imposes no real consequences for masturbating at women. For example, I wrote an incident report about one detainee masturbating at me and he was removed from the tier and sent to the hearing board. After being released from the hearing board, he was sent right back to the tier where he continued to masturbate at me.

4

Plaintiffs 001165

12.  Supervisors excuse the detainees' behavior rather than try to stop it. For example, once, when I complained about the masturbating, my male superintendent commented, "What the hell is Smith doing that everyone is masturbating to her?" I heard two male supervisors talking about me in the Division 10 lobby when I was leaving for the day. Supervisors have said, "What did you expect? This is jail."

13.  I have not been trained how to stop inmate sexual harassment. We had one training during in-service about harassment, but it only pertained to staff to staff harassment and did not mention anything about inmate harassment or how to stop it.

14.  The harassment changed the way I dressed at work and how I feel about my body. I wear the largest sweatshirt I can find so that it covers most of my body. I wear extremely loose-fitting clothing and always have a baseball cap on. I wear no makeup and try to look as masculine as possible at work, but this doesn't make a difference in the harassment.

15.  This behavior by male detainees towards me is blatantly disrespectful and offensive because detainees know I am an officer of the peace.

16.  As a result of the constant sexual harassment, I dread coming to work. I think about quitting every day. It is extremely discouraging that this sexual harassment goes undisciplined by supervisors. I feel like management does not care about women employees and does nothing to make women feel safe and respected at work. The situation is so bad I think that someone will have

5

Plaintiffs 001166

to be raped, killed, or taken hostage before the Jail takes real action to enforce disciplinary rules about masturbation at women.

Plaintiffs 001167

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

01/15/2019

_____
Date

_____
Signature

Plaintiffs 001168

DocuSign Envelope ID: 49D54465-5B6B-43C1-AA5A-5327577EA9CB

## DAARINA MUHAMMAD DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Daarina Muhammad. I am a Registered Nurse (RN) at the Cook County Juvenile Detention Center. From January 25, 2015 until June of 2017, I worked at Cermak Health Services ("Cermak") at Cook County Jail ("Jail") and was assigned to Urgent Care.

2.  As an RN in Urgent Care, I was responsible for providing nursing care to the detainees that have medical emergencies. Urgent Care is an area of the Jail where detainees come for health concerns that they feel need immediate attention. My job duties included triaging inmates, taking vital signs, passing out medication, changing wound dressings, and taking EKGs. I assisted the doctors as directed. In performing all of these duties, my job at Cermak required me to have interactions with male detainees daily.

General Description of Harassment

3.  During my employment at Cermak, I endured sexual harassment by male detainees, which they directed at me and at other female employees. I experienced detainees exposing their penises to me, purposefully masturbating at me or in front of me, and making crude or sexual comments on a daily basis, including regular comments about how they wanted to rape and sexually assault me.

Plaintiffs 002258

<u>Specific Incidents of Exposure</u>

4.     I most frequently witnessed detainees exposing their penises and masturbating in beds they were assigned to in Urgent Care. Detainees commonly complained that they would claim to have swallowed a foreign substance, which required us to closely monitor them. We would have to assign them to a bed within our view for monitoring - the detainees took that opportunity to masturbate at me and my female coworkers. This happened on a regular basis.

5.     For example, I remember one time a detainee claimed to have a medical emergency. He was assigned to a bed next to the nurses' station. He exposed his penis and began masturbating while staring at me and my coworkers.  I told the officer on duty and my Nursing Supervisor, Sharon Hollingsworth. The officer said he would write the detainee up.  However, I was never notified whether he actually did or if that detainee was disciplined.

6.     I recall another occasion, while I was passing medication out, a detainee flashed his penis at me when it was his turn to receive medication. I wanted the detainee to be written up. The officer escorting the detainee said he didn't see anything. Because of that, I do not believe he wrote it up. This was one of the first times I experienced a detainee expose himself to me. It was shocking and set the tone for my time at Cermak – it showed this behavior was tolerated toward women.

Decl. Ex. 581

Plaintiffs 002259

7.  Detainees exposed their penises to me in other areas of the Jail as well. I remember an incident that happened when I went on a run with two paramedics. On the way to Division 2, there were inmates outside in the yard. All the inmates exposed their penises and stuck them into the holes of the gate. They yelled sexually explicit things at us.

Witnessing Harassment of Others

8.  I have seen other women who work in the Jail experiencing the same or similar sexual harassment. The detainees exposed themselves to my female coworkers as well. For example, Nurse Mercado and Paramedic Westbrook worked with me in Urgent Care, and on multiple occasions, I witnessed detainees expose themselves and masturbated at all of us.

Sexual Comments

9.  I heard crude, disgusting, sexually explicit comments from male detainees directed at me on a daily basis. They would talk about me having "a fat ass," and say things like, "I would love to bend you over." I also recall several times when detainees would tell my coworker, Nurse Mercado, that they would "fuck the shit out of her."

Knowledge of Defendants

10. My supervisors know about the detainees' behavior and their sexual comments towards me and other women because I complained about it. My coworkers complained too. For example, I complained to Nursing Supervisor Hollingsworth a few times a week. Nurse Hollingsworth tried to address it by

3

Plaintiffs 002260

asking the doctors whether nurses could clear detainees from needing to stay in a bed, in order to prevent detainees from masturbating while they were waiting to be seen by the doctor. We wanted to be able to use our nursing judgment to determine whether the detainees needed a bed or could wait in the waiting area. However, we were not permitted that discretion.

Ineffectiveness of Complaining

11.   Although I complained multiple times, nothing ever changed.  Superiors would just laugh it off and tell me that this was the nature of the environment I chose to work in.

12.   As a Cook County employee, I couldn't write detainees up myself in CCOMS. There is an incident report system (E-MRS) in the Cook County Hospital and Health Services computer system, but it is for reporting if harm occurs to a patient or equipment malfunctions. There is no type of report that I recall ever being instructed to use for detainee sexual harassment. When detainees masturbated at me, I would ask the officer on duty to write it up. I don't know if they ever did because no one followed up with me. I also would record detainee masturbation in their patient charts, but that information would not be used to discipline them.

13.   The officers on duty would tell the detainees to stop masturbating. Sometimes they would briefly stop, but then would begin masturbating at me and my coworkers again, almost immediately. Because the detainees were in Urgent Care, they couldn't be removed from the area. So, we were forced to endure

4

Plaintiffs 002261

detainees exposing themselves and masturbating at us. Because the detainees faced no consequences, they understood that they would not be disciplined for masturbating at the nurses in Urgent Care. As a result, they repeated the behavior over and over again.

14. Even after detainees who were known masturbators were supposed to wear green jumpsuits, they would continue to touch themselves and make sexually explicit comments to me and other female employees.

## Lack of Training

15. I never received training from the Cook County Sheriff's Office or Cook County regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tried to rape me.

## Impact on Job Performance

16. The sexual harassment changed the way I did my job. I was very frustrated by the detainees' behavior. It made me not want to go to work. The detainee sexual harassment was one of the primary reasons I chose to leave Cermak. One thing that really scared me was that my coworkers and I exited the building through the same door where detainees would be discharged from the Jail. The detainees would be standing around in the parking lot and loitering on the streets. We were afraid that one day they would actually carry out the sexual threats they made.

Plaintiffs 002262

17. The harassment also changed the way I dressed at work. I would wear oversized scrubs and oversized lab coats, instead of my normal clothing size, in order to hide the shape of my body. I would purposefully make myself as unattractive as possible at work to try not to draw the detainees' attention. It didn't really make a difference.

18. The behavior by male detainees was humiliating and disgusting. It made me fear for my safety on a daily basis when I went to work and even outside of work, where I worried I would run into detainees that had been released.

## Emotional Impact

19. As a result of the constant sexual harassment, I have suffered emotional distress. Knowing that I could go home at the end of the shift is the only thing that made working there barely tolerable. It affected my personal life with my fiancé. It was difficult for me to be intimate with him after a day of being assaulted by detainees' exposing their penises, masturbating, and making sexually aggressive comments. It also made me hyper vigilant about my surroundings outside of work. Because detainees would say what they would do to me if they ran into me on the street, it made me fearful that something horrible could happen to me at any moment.

20. It was a big let down that my employer did not do more to protect me from the detainees' constant sexual harassment. You expect to go to work and feel safe, but that was not what I experienced working in Cermak.

6

Plaintiffs 002263

DocuSign Envelope ID: 49D54465-5B6B-43C1-AA5A-5327577EA9CB

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

3/20/2019
_____
Date

DocuSigned by:

Daarina Muhammad

85FD0DE87AFC442...
_____
Signature

7

Plaintiffs 002264

## <u>DONNETTA MYART DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.     My name is Donnetta Myart. I am a Correctional Officer at the Cook County Jail ("Jail"). I have worked at the Jail since January 1994. I have worked in various parts of the Jail in my role as a Correctional Officer, including: Receiving, External Operations, Laundry, Division 5 and Division 8. I am currently assigned to External Operations and I have worked there for approximately three years.

2.     As a Correctional Officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention and maintaining order at the correctional facility. For example, my job duties include, but are not limited to: working the perimeter of the jail and guarding detainees while escorting them to and from the doctor, primarily at Stroger Hospital. In performing my duties, my job has required me to have interactions with male detainees daily.

<u>General Description of Harassment</u>

3.     During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual

comments on a daily basis, including regular comments about my appearance and how they want to sexually assault me, now and after they are released.

<u>Specific Incidents of Exposure</u>

4.    I most frequently witnessed detainees masturbating when I was assigned to work in Receiving, where the detainees are in bullpens waiting to go to court. Detainees exposed their penises and masturbated, at times, on a daily basis, especially in the bullpen for Division 9. Detainees would approach the bullpen bars or glass wall, expose their penises, and masturbate in front of me while I was trying to perform my job duties.

5.    For example, on or about September 17, 2015, when I was working in Receiving, detainee ▉Redacted▉ stood in the corner of the bullpen watching me through the window, with his hands in his pants masturbating. I ordered ▉Reda▉ to stop and had ▉Reda▉ escorted to an isolated bullpen by a male correctional officer.

6.    In another incident that occurred on or about August 9, 2016, when I was working in Receiving and  assigned to Male Holding, Division 9 detainee ▉Redacted▉ masturbated directly at me while he was in the bullpen. I ordered ▉Redact▉ to stop and informed him that I would be writing him up. He replied, "so what," and continued to masturbate.

7.    I also have witnessed detainees walking with their penises exposed and/or masturbating while they are being escorted to and from the holding area, court, and their housing divisions.

2

## Witnessing Harassment of Others

8.      I know that other women who work in the Jail experience the same or similar sexual harassment. Everyone I work with has had to deal with male detainees masturbating and exposing their penises. For example, I recall an incident when I was in the basement middle control room with three other female correctional officers. Several male detainees came up to the window, exposed their penises, and started masturbating at us.

9.      Additionally, there have been times when I was walking behind a group of detainees being escorted by other women Correctional Officers back to Division 9 and I heard the escorting officers instruct detainees to stop masturbating and say that they would write them up.

## Sexual and Sexually Violent Comments

10.     I hear crude or sexual comments from male detainees directed at me frequently, both when they expose their penises and masturbate and at other times as well. For example, detainees have said to me: "Look at that big ass," or, "You know you want some of this." Detainees have also made threatening statements, such as, "I'm going to find you and give you what you need," while holding their penises in their hands. I have heard these types of comments from detainees more times than I could count.

## Knowledge of Defendants

11.     My supervisors  know about the male detainees' behavior and their sexual comments towards me and other women. Everyone knows about it. For

3

example, Lt. Calvin knows about the detainees' sexual behavior towards me because Lt. Calvin witnessed detainee ███Redacted███ masturbating at me. Additionally, Sgt. Crook, Sgt. Vegas and Sgt. Monroe know about the detainees' behavior because they signed some of my incident reports about detainee masturbation in 2016 and 2018. Another way that supervisors know about the detainees' behavior is because they review the camera footage when we file incident reports.

12.    Supervisors make no real effort to discipline detainees or set consequences for the sexual behavior toward women. I have been told that the male detainees' behavior is part of the job. I have heard supervisors make comments, such as, "This is what you signed up for."

<u>Incident Reports and/or Complaints</u>

13.    I have verbally complained, written incident reports, and filed charges about the detainees' sexual conduct directed at me at least two times.

14.    For example, I filed an incident report and pursued criminal charges against detainee ███Redacted███ for Public Indecency. I appeared in court to testify against him, but before I had the chance to testify, the State's Attorney told me that █Redact█ was going to be offered time served and that he would not be sentenced for exposing himself to me.

15.    I also filed an incident report and asked to press charges against detainees ███Redacted███ and ███Redacted███. I do not know what the outcome was because I was never contacted by anyone at the Sheriff's Office to follow up.

4

## Ineffectiveness of Complaining and Discouragement

16. After writing multiple incident reports, filing charges, verbally complaining, and having nothing happen, I told my supervisors that I would fill out incident reports and press charges every time the harassment occurred. Shortly thereafter, I was temporarily removed from a 90-day assignment within Receiving. I believe that I was removed because my supervisor did not want to continue dealing with my complaints and the paperwork associated with me pursuing charges.

17. Even if we filed incident reports for every occurrence of masturbation or exposure, the incident reports are ineffective because the detainees know that the Cook County Sheriff's Office imposes no real consequences for masturbating at women.

18. The few steps that have been taken to address the harassment have been mostly ineffective. For example, although known masturbators are supposed to wear green jumpsuits now, the front is closed with Velcro. Detainees walk around with their jumpsuits open and they can easily access their penises.

## Lack of Training

19. I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

20.    I feel that my fellow Correctional Officers and I are not supported by the Cook County Sheriff's Office. If a detainee exposes his penis or masturbates at me, I am hesitant to act or defend myself because I will be blamed for the incident and it will negatively affect my job.

Impact on Job Performance

21.    The sexual harassment changed the way I do my job. Because of the sexually hostile work environment in Receiving, I bid out of that department to obtain my current positing in External Operations. Nevertheless, even in External Operations, the harassment continues.

22.    In general, and especially when I see a detainee in a green jumpsuit, I look down and try not to look in the direction of male detainees to avoid even making them think I am looking at them. Male detainees view looking in their direction as an invitation to masturbate. Avoiding looking in the direction of male detainees affects my ability to make the facility safe and secure.

23.    The behavior by male detainees toward me is unwelcome, offensive, harassing, degrading, humiliating, threatening, inappropriate, and disrespectful and causes me to fear for my safety.

24.    During every work day at the Jail, I experienced anxiety over potential harassment and exposure.  Even if I was not the direct target of detainees' sexually inappropriate behavior on a given day, my female coworkers and I expected that at least one of us would be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse.  I think it

Plaintiffs 001064_REDACTED

Plaintiffs 001064

happened to someone every day. I knew I might be sexually harassed or hear about a female coworker being harassed when I walked through the compound to my assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift. This caused constant stress and made it more difficult for me to focus on my job of keeping everyone at the Jail safe.

Emotional Impact

25. As a result of the constant sexual harassment, I have suffered and continue to suffer severe emotional distress, extreme stress, and anxiety. I have trouble sleeping many nights. I am frequently unable to relax or enjoy my life outside of work. I am constantly afraid for my safety because I am afraid that male detainees are going to attack me and rape me at home or outside of work, once they are released. I am afraid that male detainees may also try to attack my family members. As a result, I have become overprotective of my grandchildren. I live in fear because of the detainees' behavior and the Sheriff's Office's failure to address it.

7

DocuSign Envelope ID: EB26250C-773A-4805-8427-5649BD1A13CE

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/15/2019
_____
Date

DocuSigned by:

Donnetta Myart
_____
7FA09B306E32457...
Signature

8

<u>**TRACY NELSON DECLARATION**</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.      My name is Tracy Nelson. I am a Court Services Deputy. I have worked for the Cook County Sheriff's Office since 2000. Until approximately 2015, I was a Correctional Officer at the Cook County Jail ("Jail"). In that role, I worked in many different areas of the Jail (RTU, Divisions 3 & 8, 9, 10, and Receiving). My last assignment as a Correctional Officer was in Receiving from approximately 2013 to 2015. With the exception of Division 3, all of my assignments as a Correctional Officer required daily interaction with male detainees.

2.      Since 2015, I have been a Court Services Deputy. When I first became a Court Services Deputy, I was assigned to the Bridgeview courthouse for about one year. From 2016 to the present, I have worked at Leighton Courthouse ("Courthouse"). I was assigned to courtroom 206 for approximately two years. Currently, I am a "floater," assigned to whichever courtroom needs assistance.

3.      As a Court Services Deputy at the Courthouse, I am responsible for the safety and security of detainees being held in holding cells behind my assigned courtroom, attorneys who consult with the detainees, and individuals in the courtroom, including courtroom personnel and civilians. My primary duties are to escort detainees to and from court and secure and monitor them in holding cells. Until recently, I was also responsible for transporting detainees between

Plaintiffs 002265

the tunnel, bridge, and courtroom lockup area. In my current role as a Court Services Deputy, I interact with male detainees on a daily basis.

General Description of Harassment and

4.  Male detainees sexually harass me by routinely exposing their penises, masturbating at me, and making disgusting, sexually explicit comments. I estimate that I have witnessed detainees expose their penises and masturbate hundreds of times. Detainees have ejaculated right in front of me, which is the most degrading thing I have ever experienced. As a Correctional Officer, I was subjected to detainees pulling out their penises and masturbating at me daily, sometimes multiple times a day. As a Court Services Deputy, I still experience detainees exposing themselves and masturbating at me. In both roles, the demeaning sexual comments happen on a regular basis.

Specific Incidents of Exposure

5.  It is hard to recall the specifics of each time a detainee sexually harassed me because it has happened so many times. In addition to all the times detainees have pulled out their penises, masturbated, and made sexually aggressive comments to me, detainees have also touched me inappropriately. One detainee pinched my butt. A lieutenant and sergeant were there when it happened and witnessed it, but they would not back up my side of the story. I've also had a detainee grab my wrist once and grab me around the waist once.

6.  I recall an incident that happened sometime in 2017. A detainee in a green jumpsuit was in the holding cell of my assigned courtroom. The detainee pulled

2

Plaintiffs 002266

out his penis and started to masturbate at me. I was disgusted and felt violated. I reported the incident and the security team wrote him up. I also sought to press charges against him.

7.    I remember another incident I experienced as a Court Services Deputy, when I went to retrieve a detainee for court. Another detainee who was sitting in the holding cell exposed his penis and was stroking it. I was shocked. He asked me not to file a complaint against him. I told him I was going to submit the complaint. He responded, "Fuck you, bitch." An incident report was submitted, and I sought to press charges against him.

8.    When I worked in Receiving, on the bridge, multiple detainees would stand in the bullpen together and  expose their penises and masturbate at me and other female officers while we were trying to perform our job duties. It was demeaning to have to continue to do my job with a group of detainees standing there masturbating.

9.    When I worked on the tiers, I remember one detainee called my name and said, "I need to show you something." When I went to see what he wanted to show me, he was standing in the shower shaking his penis at me. Every morning on the tiers when I went around to count detainees they would wait for me to come by and masturbate at me. There were also times when I opened chuckholes to pass through breakfast, and the detainees would have their penises sitting in the  chuckholes.

3

Plaintiffs 002267

<u>Witnessing Harassment of Others</u>

10.    I have seen detainees expose their penises, masturbate, and make sexual comments to other female employees throughout the Jail. In each assignment I had as a Correctional Officer, I was with female coworkers during some of the masturbation incidents I experienced, and we also talked to each other about how horrible it was. As a Court Services Deputy, I also know that other women are being sexually harassed by the detainees because we discuss it around the Courthouse.

<u>Sexual and Sexually Violent Comments</u>

11.    Detainees make vulgar sexual comments to me daily. Detainees have told me, "I want to fuck you in your ass"; "I want to stick my dick in your mouth"; and, "I would fuck the shit out of you." Those are just a few examples of the disgusting types of things detainees have said to me.

12.    When I was assigned to courtroom 206 for two years, from approximately 2016 to 2018, there was a particular detainee that verbally sexually harassed me constantly. It was very difficult to deal with this detainee because he was extremely sexually aggressive towards me. I was told that I should just ignore him. It got to the point that if I saw that he was scheduled for an upcoming court date, I wanted to take off from work that day. It was so constant that it really started to get to me.

4

DocuSign Envelope ID: 6F663966-27A6-4459-B582-B29B52B65983

<u>Knowledge of Defendants</u>

13. My supervisors know about the detainees' behavior and their sexual comments towards me and other women because I have complained more times than I could count. Several male sergeants or lieutenants responded with comments like, "What do you expect?" For example, I complained to Lieutenant Young, Sergeant Nalepa, Lieutenant Grochowski, and Lieutenant Wright about the sexual harassment. They did not take it seriously.

<u>Complaints, Ineffectiveness of Complaining, and Discouragement</u>

14. When I complained to my supervisors, they would get angry and react as if I was just bothering them. Their reactions made me feel like I was expected to accept detainees constantly pulling their penises out and masturbating at me as a daily part of my job. This discouraged me from complaining. It was so disappointing that my supervisors did nothing to stop the detainees' behavior. Earlier in my career, when I worked in Division 10, my male lieutenant would openly voice his opinion that women did not deserve to work at the Jail and that it is a man's job. When I complained about detainees sexually harassing me, Lieutenant Wright (deceased) frequently said things like, "What did you expect was going to happen? You're a woman working in a man's world. You should expect this." I heard him tell many other female officers the same things. This discouraged us from complaining about detainee sexual harassment.

Decl. Ex. 599

Plaintiffs 002269

15. As a Correctional Officer, I did not know I was allowed to file criminal charges against detainees for indecent exposure. So, I wrote what we called tickets. The tickets went to the Hearing Board to decide whether the detainees would receive discipline. I have written detainees up for exposure and masturbation approximately two hundred times. My female coworkers and I wrote so many tickets that we were told that there was a line for the hole and the Hearing Board would not issue any more discipline. The Hearing Board would throw out the complaints and the detainees would come right back on my tier. When they returned, they would taunt me and other female officers with comments like, "I told you wasn't nothing gonna happen." After experiencing this repeatedly, I felt extremely discouraged.

16. As a Court Services Deputy, I learned that I could file criminal charges against detainees for exposing their penises and masturbating at me. I believe I have filed criminal charges approximately four or five times. For two of the incidents, I remember Sheriff's Police investigators coming to ask me if I wanted to press charges. I said yes and signed criminal complaints. No one from the Sheriff's Police followed up with me after that. For one of the complaints, I found out the detainee went before a judge, but he took a plea deal for his felony charge. No one told me what the outcome was.

Ineffectiveness of Steps Taken

17. The few steps that have been taken to address the harassment have been ineffective. Even though known masturbators are supposed to wear green

Decl. Ex. 600

Plaintiffs 002270

jumpsuits now, the green jumpsuits do not stop detainees from exposing themselves. I remember an incident in 2018, when I picked up a detainee in a green jumpsuit from the bridge. He was handcuffed in the back but was able to reach around and expose himself to me in the elevator. I have seen other detainees in green jumpsuits with their penises exposed, no less than ten times.

## Lack of Training

18. I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

## Impact on Job Performance

19. The sexual harassment changed the way I do my job. It makes me more cautious when I'm doing my job and apprehensive about interacting with detainees. It makes me not want to go to work. We do not deserve to come to work and be disrespected. The male detainees' conduct is disgusting, demeaning, and degrading. I feel really violated.

## Emotional Impact

20. The sexual harassment has really impacted me severely, emotionally as a person. It impacts the way I interact with people on a regular basis. It has made me less trusting of men. It affects my ability to have healthy relationships with men, especially new relationships. When I first started

Decl. Ex. 601

Plaintiffs 002271

DocuSign Envelope ID: 6F663966-27A6-4459-B582-B29B52B65983

working at the Jail, I was an optimistic person. Experiencing years of being subjected to detainees sexually harassing me, with nothing being done about it, has changed me as a person. It made me angry, aggressive, and short-tempered with my family. The way the Sheriff's Office has failed to address this issue makes me feel like my dignity as a woman and a human being is not important to my employer.

Decl. Ex. 602

Plaintiffs 002272

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/5/2019

Date

DocuSigned by:

TRACY NELSON

F4FE7A811F07479...

Signature

9

DocuSign Envelope ID: EC8E13C4-2D78-4CCE-A4EF-5D9F7D336CEE

## VICKIE NEYLON DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Vickie Neylon. I was a Licensed Practical Nurse (LPN), working for Cermak Health Services ("Cermak"), at the Cook County Jail ("Jail"), from approximately March of 1994 to March of 2019, when I retired. My assignment before retirement was in Division 8 RTU (Residential Treatment Unit) in the male Psychiatric Unit on the fourth floor, and I had been in that assignment for about eight years.

2. As an LPN, I was responsible for providing medical services to ensure the physical and mental wellbeing of detainees in pre-trial detention at the Jail. My primary job duties included passing out medication, changing wound dressings, injections, and evaluating detainees after fights and before they are sent to the ER, among other general medical care tasks. I medically evaluated the detainees and if it was clear that the issue was mental health and not physical, I sent them to the mental health unit, which was on the same floor. My job required daily interactions with male detainees.

<u>General Description of Harassment and Specific Incidents of Exposure</u>

3. I endured sexual harassment by male detainees. The detainees exposed their penises, masturbated, and routinely made crude or sexual comments directed at me. Detainees exposed their penises or masturbated at me on a weekly basis, and at times, daily or multiple times a day. They made vulgar sexual comments

Decl. Ex. 604

Plaintiffs 002274

about my body or what they wanted to do to me on a daily basis. I also received explicit sexually violent threats from detainees.

4. Within the last four to five years, Detainee M.H. constantly sexually harassed me and other women. Detainee M.H. was not a Psychiatric patient, but periodically he was sent to our segregation pod on the A Tier, often for a month or more, because he repeatedly got into trouble in other parts of the Jail. Detainee M.H. would masturbate at female staff repeatedly. The nurses had to alter the way we did our job because of him. At first, we were required to insert a catheter for him, but he would try to rub our breasts and touch our hands. We complained repeatedly for months at a time, whenever he was in the segregation pod, and our Charge Nurse (female) escalated our complaints, but nothing was done. It was not until we continued to complain over and over that Director Brown (female) said that Detainee M.H. would have to insert the catheter himself while we supervised. Even then, we had to stand there while he said disgusting, vulgar things, and masturbated. Because of how severely he harassed us, eventually the Director said that he would have to insert the catheter alone in his cell.

5. The medication room, where I passed out medication on the E Tier (protective custody), was located near the shower area. While I was passing out medication, detainees purposely opened the door and exposed their penises, and masturbated at me from the shower area. The officers did not see what the

2

Plaintiffs 002275

detainees were doing. I reported the detainees but by that time the detainee would have closed the door, and the officer would not write it up.

6.   Detainees regularly walked up to the medication window with their hands inside their pants. I would tell them to remove their hands. They were also not supposed to come to the medication window without a shirt on. Detainees would sometimes come get medication without shirts and some officers allowed it.

Witnessing Harassment of Others

7.   Detainees sexually harassed other female nurses. For example, I would always have another female nurse with me when I had to supervise Detainee M.H. putting his catheter in. Often he would make explicit sexual comments and masturbate at both of us. Other women also told me about masturbation incidents they had.

Sexual and Sexually Violent Comments

8.   Detainees routinely made vulgar, sexually explicit, and threatening comments to me. Detainees have said things like, "I'm gonna fuck you," "I can imagine sticking my dick in your ass," "I wanna feel your breasts," "I want to fuck you in your breasts," "I want to just eat you out," "I'd sure like to kiss you," or "I like your lipstick. I want to taste it."

9.   For example, Detainee M.H. threatened to "fuck" me more times than I could count. There was not a day that went by while he was in the segregation pod that he did not make some vile sexual comment to me. He would sit on the

Decl. Ex. 606

Plaintiffs 002276

other side of the medication window, longer than it took to take his medicine, saying the most degrading things to me. The officers did not make him get up, and once Detainee M.H. realized that, he would sit there for however long he wanted to, sexually harassing me. The male officers who were guarding the detainee told me that there was nothing they could do about the verbal sexual harassment because the detainee didn't touch me. The majority of the time the male officers just stood there and didn't say anything to the detainee.

<u>Knowledge of Defendants, Ineffectiveness of Complaining, and Discouragement</u>

10. The Sheriff's Office and the County know about the detainees' behavior because I complained multiple times. For instance, I complained about Detainee M.H. numerous times. Nothing was done to stop him from constantly sexually harassing me and other women.

11. I would report the detainees' behavior in the MERS computer system. I submitted at least three or four complaints about detainee sexual harassment, both verbal and masturbation. I never heard anything after that. I did not know I could ask officers to complete incident reports in the Jail's computer system. I would report the masturbation incidents to officers and ask that they put it down in their log book. They did not seem to take it seriously. I don't know whether they did anything with my complaints other than that. I don't know if they notified their supervisors. No one followed up with me. I felt really discouraged. It was as if the Jail was allowing the detainees to run things, instead of the other way around. We were told that every complaint needs to

4

Plaintiffs 002277

be investigated. As far I know, the Sheriff's Office and the County never investigated my or my female coworkers' complaints.

12.    I have also complained to my Charge Nurse about the detainee sexual harassment. My Charge Nurse would try to get the detainees to stop verbally harassing or masturbating at me and other nurses by talking to them. The nurses complained amongst ourselves. For example, we all complained about Detainee M.H. and decided as a group that no one would be permitted to be alone with him.

13.    While known masturbators are supposed to wear green jumpsuits to prevent exposure and masturbation, and less incidents happened to me after that, the Sheriff's Office did nothing to address the severe verbal sexual harassment by detainees.

Lack of Training

14.    I never received training from the Cook County Sheriff's Office or the County regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee grabs me or attacks me.

Impact on Job Performance

15.    The sexual harassment changed the way I did my job. I felt unsafe at work. I did not want to interact with certain detainees because I was afraid they would pull out their penises, masturbate, and say demeaning things to me. I dreaded doing my job. Since the Sheriff's Office and the County did nothing to stop the

Decl. Ex. 608

Plaintiffs 002278

DocuSign Envelope ID: EC8E13C4-2D78-4CCE-A4EF-5D9F7D336CEE

detainees' behavior, I wanted to do something about it myself, like really curse the detainees out. But I saw other nurses who spoke up to the detainees get in trouble. The detainees would complain about the nurse. Then the nurse would be humiliated when a supervisor publicly asked the detainee what the nurse did to him and took the detainee's word for what happened.

Emotional Impact

16. The sexual harassment has had a real emotional impact on me. It made work extremely stressful. I experienced a lot of anxiety about interacting with detainees who I knew, based on past incidents, were likely to sexually harass me. It also made me angry because I wanted something to be done about it. I feel that our complaints had no weight, and that the Sheriff's Office and the County were more likely to believe detainees' complaints about us than our complaints that detainees were constantly pulling their penises out, masturbating, and verbally sexually harassing us. It is upsetting that my wellbeing and safety, and the wellbeing and safety of my female coworkers, was not a priority for the Sheriff's Office and the County.

Decl. Ex. 609

Plaintiffs 002279

DocuSign Envelope ID: EC8E13C4-2D78-4CCE-A4EF-5D9F7D336CEE

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/12/2019

Date

DocuSigned by:

*Vickie Naylo*

CAF494276F924F2...

Signature

Decl. Ex. 610

Plaintiffs 002280

**<u>Juwanna Orr</u>**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Juwanna Orr and I am a nurse at Cook County Jail. I have been working at Cook County for about four years and have primarily been assigned to Divisions 10, 2, 4, the Cermak building, RTU, 11 and Division 2-Dorm 2. Currently, I'm primarily assigned to Division 10.

2. Because I handle the medical needs and emergencies of the male detainees, I interact with male detainees every day. One of my duties is to pass out medication from what is called the "interlock," which is a glass room in between the tier and the hallway leading to the rest of the building. The specific detainees that need medication from me come into the interlock with an officer. Because the interlock's walls are all glass, men on the tiers can see me pass out medication.

3. I experience daily verbal sexual comments and threats from male detainees, as well as male detainees exposing their penises and masturbating at me. The inmates also try to touch my body. I experience an inmate masturbating at least a few times a month. It has become almost commonplace but is still so upsetting and very distracting.

4. Just about every day, inmates on the tiers in Division 10 expose their penises and masturbate at me as they watch me pass out medication. The male officers usually act like they don't see this behavior and won't acknowledge it until I bring it up myself to the detainees. When I see this happening, I say something like "don't be disrespectful." Usually the detainees stop for a second, take a little walk, then, if the officer doesn't say anything to them, come back and start masturbating again. If

1

Plaintiffs 002281

the officers say anything, it is something like "Get away from the window," but they rarely threaten to punish or write up the masturbating detainees—only seen an officer write a detainee up for masturbation once or twice.

5. Detainees that come inside the interlock to receive medication often come in with their pants hanging low, below their long underwear, so that I can see the bulge of their penises through the long underwear. One or two detainees have also made derogatory sexual comments to me while they are in the interlock with me, telling me about what they want to do with my body.

6. I feel uncomfortable going into the interlock because I feel like I am being exposed and put on display for detainees to masturbate to me. I've tried to come up with a few solutions to avoid seeing the masturbation, but my ideas have always been rejected. For example, one time, I mentioned to an officer that the Jail could put reflective paper on the walls of the interlock so that I could see through the paper to the tier, but the detainees on the tier could not see me. The officer brushed off my idea. Later, the Jail put reflective paper up for the visitors, but not for us in the interlock. I also tried to medicate in the hallway instead of in the interlock to avoid being in the sight of the detainees on the tier, but my nursing manager said I wasn't allowed to do that. When I told her I was doing that to avoid having to see detainees masturbate to me, she told me to just act like I don't see it and keep on working.

7. When I first came to the Jail, I was told by my supervisors and colleagues that if I reported sexual harassment by the detainees, nothing would happen. For example, in 2015, I saw a detainee resting his arm on another inmate's back and masturbating. I asked a male officer if he could be written up and he said, "Do you really want to write that up?" so I didn't report it.

8. Some examples of the inmates masturbating or exposing themselves to me include:

2

Plaintiffs 002282

a) In 2016, I entered the tier in Division 10 and started medicating. I had set up the medication trays along the doorway and one of the inmates was staring at me and started masturbating. I told one of the officers and then the inmate stopped. The officer then noticed the inmate masturbating a second time and I wrote a safety report with the nursing staff and the officer wrote and incident report. I was contacted once to sign the paperwork and received an email from an investigator, but never received any other follow-up.

b) In July 2017, I was distributing medication on the tier on Division 10 and one of the detainees was talking on the phone. He reached his hands in his pants and started masturbating while staring at me. One of the male officers looked his way and he stopped doing it.

c) In winter 2017, I entered 3-David in Division 10 and went into the interlock. 3-David was known as the "clapper tier" because the majority of men who masturbated were put on that tier. I noticed an inmate walking towards me and trying to get in my line of vision. I pulled back to get out of his line of vision and he yelled, "She just don't want anyone to see her ass." I informed the male officer and he did not write an incident report.

d) Inmates often stand behind the shower wall and masturbate. Once on 4 David in Division 10 I saw an inmate masturbating at me from a distance in the shower area. I was about to gesture for an officer, but he walked away and stopped masturbating.

e) Once I had to medicate near the rec room in Division 10 and the detainees had to come out of rec to get medicated. One of the detainees was only wearing long johns and he started masturbating at me. When I told the

3

Plaintiffs 002283

officer, the detainee acted as if he was just adjusting himself, so the officer did not write an incident report. Other nurses told me that nothing would happen if I reported it, so I thought it would be pointless.

9. When I experience an inmate masturbating or exposing his penis, I try to write a safety report and fax it to the designated number. I receive a "completed fax" response but never hear anything back about my complaint.

10. I spoke with my direct supervisor and a sergeant about the masturbation problem because we were having a meeting about it. I wanted reflector paper to be put on the windows so that staff could see into the divisions, but the inmates couldn't see out and masturbate at us. I was told they couldn't get the reflective paper on the male cells, but the women's tiers and the visitors area have reflective paper.

11. I have also heard male inmates making crude and sexual comments at me when they were behind the door on the tier in Division 2 and Division 10. When they stand near the door, I can hear everything from inside the interlock. I have heard them say, "I'd fuck the shit out of her," and have had inmates make comments about my hair and make insinuations about having sex with me. I have also been walking with female officers and have heard inmates direct inappropriate sexual comments to both of us, making me extremely uncomfortable.

12. When I am going to and from the Jail to my car, I also hear and see detainees beating on the glass and hollering my name.

13. It doesn't matter how you dress as a woman, inmates will still masturbate at you. I try to dress as simply as possible, but it still happens.

14. The sexual harassment has changed the way I do my job. I am on guard all the time and always aware of my surroundings. I am always aware of potential safety issues. I am watching the inmate I am medicating and the other guys on the tier at the

4

Plaintiffs 002284

same time.  It makes you really weary.  Inmates always try to grab the cup of medication in a certain way and try to touch my arm.  They will ask you for an HSD form and then try to grab your hand.  It is upsetting and offensive when they touch you.

15. I think the Jail is saturated with sexual harassment and it has changed the way I act at work.  I am much more aware of what is happening around me.  If someone near me stops and stands for too long I get concerned and nervous.  This behavior from male detainees is offensive and threatening.  As nurses, we go onto the tiers to handle emergencies and help inmates.  But inmates are always talking about our body parts and what they want to do to us sexually.  It's horrible. We just don't know what to do.

Decl. Ex. 615

Plaintiffs 002285

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/03/2019

_____
Date

*Juwanna Orr*

_____
Signature

Plaintiffs 002286

## Declaration of Sandra Parker

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.     My name is Sandra Parker. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since 2007.  I have been assigned to various parts of the Jail including Division 3, Division 8/RTU, Cermak, Division 9, and Division 10.  I was assigned to Division 10 from 2012 or 2013 until about April 2018. From approximately April 2018 until March 2019, I was assigned to the Residential Treatment Unit (RTU), which is part of Division 8. Since late March 2019, I have been assigned to Division 9.

2.     Throughout most of my time in the Jail, with the exception of working one year on a women's floor in Division 8/RTU, I have primarily worked with men and constantly experienced male inmates exposing themselves and masturbating in front of me.

3.     I have experienced crude and sexual comments made by male inmates, many times on a nearly weekly basis and sometimes more than that, both on the tier and walking through the tunnels where inmates are transported to different parts of the Jail.  They have made comments about my body and about what they will do to me sexually. For example, male inmates have said to me, "I'll fuck the shit out of you" and "oh, she has a little booty."  Such comments made by male inmates scare me and cause me to mentally shut down.

1

Plaintiffs 002514

4.    The sexual harassment has happened so often that very few specific experiences stick out in my mind. It is basically the norm at the Jail and, as a result, the environment at work is extremely uncomfortable. When I worked in Division 10, an inmate exposed himself or masturbated at me at least once a week. For instance, inmates frequently would get up to use the toilet when they heard me coming and then turn their genitals toward me when I looked in their cell. Often, I could not identify the inmate because there are two inmates per cell, and the one exposing himself would turn his head away from me. The other inmate's face was not always visible, and I would not always be able to take time away from my duties to look up the identity of the inmates assigned to the cell.   After doing the body count, I would frequently have to work an entire eight-hour shift given that one of the inmates had exposed himself to me, without always knowing for sure who it was. It was incredibly creepy, and it made me feel very uncomfortable and frightened to have to work with that group of inmates for the rest of the day.

5.    In 2016 or 2017, an inmate, Redacted, exposed himself to me in Division 10 while he was talking on the phone. I was walking outside of the tier door escorting a nurse who was going to distribute medication on the tier. I looked through the tier door, which is glass, and saw that Redacted was on the phone, across from the area where the nurse was going to walk. Redacted looked at me, pulled his penis out, and started masturbating. I filed an incident report and Redacted was moved temporarily from the tier. However, no one ever followed up with me about the report. Later I tried to find the report by looking it up in the Jail's CCOM system but

2

Plaintiffs 002515

there was no record of it anywhere. I have no information about what happened to my report. The experience of writing up this incident and never hearing back or, even finding a record of my report, made feel that the Jail does not take the reports seriously, that they won't go anywhere, and that it does not matter if I file one.

6.      Supervisors know that inmates are masturbating at women. In or around 2016, when I was working in Division 10, another female officer told me that in response to an inmate exposing himself to her, her supervisor asked, "did you provoke it?" In 2017, another female correctional officer told me that she complained to her supervisor about an inmate exposing himself, and her supervisor (he's a male) responded, "what do you expect, you work in a jail with men." Hearing these comments made me feel terrible, like female employees were being blamed for the sexual harassment incidents.

7.      I have been deterred and discouraged from reporting sexual harassment incidents. In 2017, in response to my complaint that an inmate had exposed himself, my supervisor, Sergeant Smith, said something to the effect of, "this is your job," "this is going to happen," "you choose to work here," "what do you expect," "what do you want me to do about it," and "every job can be done whether you're a male or female."

8.      In March 2019, I was in Division 9, in the upstairs area of the tier. I looked down to the lower level and saw an inmate on the phone wearing only a towel around his waist, which is a violation of the dress code. Using a loud voice so that I could be heard from upstairs, I commanded him to put on his uniform. He did not comply. I then left the tier and called my supervisor, Sergeant Ibarra (he's a male).

3

Plaintiffs 002516

By the time Sergeant Ibarra arrived, the inmate was wearing his uniform, which was a green jumpsuit. Sergeant Ibarra did not remove him from the tier. The two of us then looked up the inmate's record, and it showed that he had more than 30 incident reports—most of which were for sexual harassment and indecent exposure. Upon seeing this, Sergeant Ibarra said, "Writing him up is not going to go far, just call us and we'll take care of it." His comment made me feel discouraged, but I wrote an incident report anyway because I was so fed up with inmate sexual harassment that doing something felt better than doing nothing.

9. I have only written a few incident reports, including the report in March 2019, for indecent exposure or masturbation by male inmates, even though I have routinely experienced such sexual harassment. This is in part because the frequency of the incidents left me too overwhelmed to do so, the comments made to me and that I have heard about from the supervisors have discouraged me, and because I am only aware of one of my reports resulting in the inmate being officially disciplined.

10. Inmates have repeatedly indicated to me that they don't think there are repercussions for masturbating in front of women. They have made comments to me like, "I'm getting out, I don't care if you write me up."

11. The problem of inmate sexual harassment started getting worse around five or six years ago. I started experiencing many more incidents around that time and began hearing about it frequently around the jail around then too. I also read incident reports on CCOMS almost daily, for my own information and safety, so that

4

Plaintiffs 002517

I know what is going on in the Jail, and I see that there are significantly more incidents of sexual harassment than there were when I first started at the Jail.

12. Even the inmates have noticed that the problem began escalating about five or six years ago. Older inmates who have been in and out of the Jail over the years say that the Jail has changed. A lot of the older inmates apologize to me and say that it doesn't happen at other counties. I often wonder what is so different at Cook County compared to other institutions.

13. Inmates who constantly expose themselves are identified by green jumpsuits, but the green jumpsuits the Jail uses are not an effective deterrent. These men find a way to poke holes in or open their green jumpsuits to expose themselves anyway. I can recall at least three occasions in 2016 or 2017 when an inmate wearing a green jumpsuit exposed himself to me. Pink IDs are also given to inmates who are known to be frequent masturbators. However, I have seen multiple inmates in Divisions 9 and 10, who I knew to have pink IDs, wearing the standard Jail uniform rather than a green jumpsuit.

14. A lot of women employees, myself included, wear our uniform sweaters to cover up our bodies, even when it gets hot, hoping to avoid the harassment. My sweater is my comfort zone. If I don't wear it, I feel uncomfortable. However, it does not prevent detainees from harassing me.

15. The sexual harassment by male inmates, towards me and other female employees, is embarrassing and degrading. My colleagues and I should not have to

5

Plaintiffs 002518

tolerate this behavior in our workplace. It makes the Jail a bad place for me and other women to work.

16.     The harassment impairs my ability to do my job.  Every morning, I don't even want to go to work because I am overwhelmed thinking about the sexual harassment that will be in store. I put up a mental wall when I am on the tiers; I try not to let the sexual harassment affect me, but it does. It makes me scared and embarrassed. I don't feel secure while at work and emotionally, it is overwhelming and draining.

17.     I do not feel like I can discuss the sexual harassment I experience at work with my husband or other people in my family, because I know it will upset them. My husband and I have been together for 18 years, and I feel like I have been hiding this part of my life from him. I feel like I have to protect him and my other loved ones from knowing what happens to me every day. It is stressful and emotionally isolating.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/30/19

_____

Date

*Sandra Parker*

_____

Signature

6

## RAMONITA PEREZ DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Ramonita Perez. I am a Correctional Officer at the Cook County Jail ("Jail"). I have worked at the Jail since 2005. I have worked in various parts of the Jail in my role as a Correctional Officer, including: RTC, Division 3, Division 8, Division 10, Division 6, RTU and RCDC. I am currently assigned to RCDC and have been in this assignment for about three years.

2.  As a Correctional Officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention and maintaining order at the correctional facility. For example, my job duties have included, but are not limited to: daily counts, escorting detainees to and from divisions and the Courthouse and monitoring detainees while in bullpens and lockups. In performing all of these duties, my job has required me to have interactions with male detainees daily.

General Description of Harassment

3.  During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis, including regular comments about how they want to sexually assault me.

Specific Incidents of Exposure

4.  I frequently witness detainees masturbating while they are in the Division 9 bullpen, in the holding cell outside of the control room in the Receiving area, and in the bullpens near the intake area. Frequently, when I walk past the bullpens near the intake area, male detainees expose their penises and masturbate.

5.  For example, on one occasion in 2015, male detainee [Redacted] asked me for a form. When I went to his cell to give him the form he requested, he exposed his penis and masturbated at me. I gave him a verbal order to stop. He laughed at me and said "ok." Later that evening, I observed detainee [Redact] looking at me and masturbating again.

6.  Another specific incident of detainee masturbation that I recall occurred in 2017, in the Division 9 dayroom. I was sitting in the bubble, which overlooks the dayroom, and Detainee [Redacted] was watching me through the window while standing on the top deck and masturbating.

Witnessing Harassment of Others

7.  I know that other women who work in the Jail experience the same or similar sexual harassment throughout the Jail. I have seen it happen to other female correctional officers. For example, I have seen multiple male detainees in the Division 9 holding cell masturbating at my female coworkers and I as we walk by.

2

8.     I am aware, based on my own experiences and that of other female correctional officers, that in some divisions male detainees expose their penises and/or masturbate at female correctional officers on almost a daily basis.

## Sexual and Sexually Violent Comments

9.     I hear crude or sexual comments from male detainees directed at me very frequently.  They most often comment about the size of my butt.

## Knowledge of Defendants

10.    My supervisors know about the detainees' behavior and their sexual comments towards me and other women. I have verbally reported to my supervisors that detainees are exposing themselves and masturbating in front of me on a number of occasions.

11.    Another way that supervisors know about the detainees' behavior is because they review the camera footage when we file incident reports. My supervisors also sign off on incident reports that I file. Supervisors make no real effort to discipline detainees or set consequences for the sexual behavior toward women.

## Incident Reports and/or Complaints

12.    I have verbally complained, written incident reports and filed charges about the detainees' sexual misconduct directed at me at least twice. For example, I wrote an incident report and filed a criminal complaint against Redacted in 2015.

13.    Additionally, I wrote an incident report and filed a criminal complaint against Redacted in 2017.

3

<u>Ineffectiveness of Complaining and Discouragement</u>

14.     After writing incident reports, filing charges and verbally complaining, I felt discouraged from complaining because complaining did not stop the detainees' behavior. Since then, I have continued to make verbal complaints to my supervisors regarding detainees exposing their penises, masturbating, or making verbal threats to me.

15.     Supervisors have told me that there is nothing they can do to stop the detainees and that, since detainees are being shipped to serve sentences at Illinois Department of Corrections facilities, there is no sense in filing criminal charges against them.

16.     Incident reports are ineffective because the detainees know that the Cook County Sheriff's Office imposes no real consequences for masturbating at women. Detainees know that my female coworkers and I cannot defend ourselves because people have been fired or disciplined for defending themselves against detainees' sexual harassment.

17.     The few steps that have been taken to address the harassment have been mostly ineffective. For example, although known masturbators are supposed to wear green jumpsuits now, the jumpsuits do not prevent masturbation. The front is closed with Velcro; detainees walk around with their jumpsuits open and they can easily access their penises.

4

Plaintiffs 001246

## Lack of Training

18.    I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me. I do not feel that I have received adequate training to deal with the male detainees' behavior.

## Impact on Job Performance

19.    The sexual harassment changed the way I do my job. For example, I try not to make eye contact with male detainees. I try not to make any unnecessary contact with male detainees. I try not to look in the direction of male detainees. Avoiding looking in the direction of male detainees, affects my ability to make the facility safe and secure.

20.    The behavior by male detainees toward me is unwelcome, offensive, sexually aggressive, degrading, humiliating, inappropriate, disrespectful and causes me to fear for my safety. I feel that I am not safe at work.

21.    During every work day at the Jail, I experience anxiety over potential harassment and exposure.  Even if I am not the direct target of detainees' sexually inappropriate behavior on a given day, my female coworkers and I expect that at least one of us will be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse.  I think it happens to someone every day.  I know I might be sexually harassed or hear about a female coworker being harassed when I walk through the compound to my

5

Plaintiffs 001247

assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift.  This causes constant stress and makes it more difficult for me to focus on my job of keeping everyone at the Jail safe.

Emotional Impact

22.     As a result of the constant sexual harassment, I have suffered severe emotional distress. The harassment and masturbation at the Jail makes working there extremely stressful. It affects my personal life. I have become suspicious of men who I do not know. I constantly have a heightened sense of awareness around men. I am afraid that a male detainee will be released and will find and rape me. Because the detainees' sexual misconduct has caused me to live in fear, I have also become more protective of my children.

As a result of the male detainees' behavior, I feel depressed and anxious. I feel underappreciated at work, and I do not feel valued.

6

DocuSign Envelope ID: F97E090E-F394-41D7-96BE-229551A6A8DA

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/31/2019
_____
Date

DocuSigned by:
_____
Signature

7

# DEBRA PITTS-DOSS DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Debra Pitts-Doss. I was a Correctional Officer at the Cook County Jail ("Jail"). I worked at the Jail from April 1, 1986 through December 30, 2015. My last assignment was in the Laundry, where my job involved delivering uniforms and linens to all Divisions of the Jail. I worked in Laundry for my last two and a half years, and prior to that I worked in RCDC/Receiving for thirteen years. In my early years at the Jail I was assigned to many different divisions.

2. As an officer assigned to the Laundry, I was responsible for providing clean linens and uniforms to the detainees. I was also responsible for the safety and security of the detainee workers, civilians, and officers who came into the Laundry room. Each day, another officer and I would supervise 10 to 15 detainee workers in the Laundry room who washed the clothes and linens. In addition, I was responsible for choosing detainee workers who would assist me in going to the divisions to pick up the dirty laundry and deliver the clean laundry. In my previous roles, my duties also included ensuring the safety of detainees, booking and bonding out detainees, and many other tasks that helped to keep the Jail safe. In performing all of these duties, my job required me to have interactions with male detainees daily.

Plaintiffs 001301

3.  During my employment at the Jail, I endured sexual harassment by male detainees, which they directed at me and at other female employees. I experienced detainees exposing their penises to me, male detainees purposefully masturbating at me or in front of me, and crude or sexual comments on a daily basis, including regular comments about how they wanted to rape and sexually assault me.

Specific Incidents of Exposure

4.  I most frequently witnessed detainees masturbating on the tiers. When I went into each Division, I had to go to the cells. The laundry exchange was done through the chuckhole. As the Officer from Laundry, I had to make the pass because if the detainee workers did it, they would try to pass contraband. I would offer the clean laundry to the detainees through the chuckhole, but in exchange, detainees would stick their penises out at me. All I could do was ask them to put it away and keep going. This happened pretty much every day in every Division. Officers on the tiers couldn't really do anything because the detainees would just put it away quickly before the officers could see. I can't think of any Division that didn't masturbate a lot.

5.  I also saw detainees masturbating in the tunnel. They would be sitting on a bench, waiting for the transportation team to take them to court, with their

2

Plaintiffs 001302

penises out, handcuffed in the front, masturbating. This happened all the time. They'd call out, "Officer Doss!" so that I would turn and look.

6. When I had to deliver laundry to Division 1, I had to go on the catwalk. This meant I was very close to the inmates. The cells in Division 1 are just bars (no chuckhole). When I got to the tier, I'd have to call out, "Laundry!" The detainees knew I was coming, and often they'd be naked and masturbating when I arrived. All I could do was keep walking past.

7. When I delivered laundry to Division 2, I would set up in the rec room. The detainees would come down to swap their laundry with their hands in their pants, masturbating. A few times they would take their penises out when they saw me at the bottom of the stairs. They would always make sexually inappropriate comments at me when they arrived in the rec room. No matter how many times I asked a detainee to take his hands out of his pants, it didn't matter – every last one of them was doing it.

<u>Witnessing Harassment of Others</u>

8. I have seen other women who work in the Jail experiencing the same or similar sexual harassment. I remember talking about it with my coworkers, Officers Vivian Baker and Vicki Davis, when I worked in receiving. When I was in Laundry, my coworker Rebecca Belk and I would always talk about how we couldn't believe the brazen sexual behavior by the detainees. I also remember that the detainees who worked in the Laundry would masturbate

3

Plaintiffs 001303

and make lewd comments at the female civilian who worked at the desk, Benita Harris.

Sexual Comments

9.  I heard crude or sexual comments from male detainees directed at me on a daily basis. These comments were completely unprovoked; as soon as I walked onto a tier they would start. Every day a detainee told me to suck his dick. They regularly called me a "stupid, fat bitch." Detainees have also said, "tell your mama to suck my dick." On many occasions they told me they wanted to fuck me in the ass and that when they got out, they would "beat my ass." I have also heard detainees say things like, "I want to fuck you in the ass you fat bitch," "come and suck my dick," and "I want to fuck you/your mama." During or after all of this, they usually touched their penis, exposed their penis, or masturbated. A couple of times they also threatened to kill me. It happened so often, I couldn't stop to write them up every time, I just had to keep moving forward to the next cell.

Knowledge of Defendants

10. Supervisors and managers at the jail know about the detainees' behavior and their sexual comments towards me and other women. I complained and wrote incident reports that my supervisors saw. Also, I remember once in Receiving I heard a detainee tell a female supervisor to suck his dick. I think it was Sergeant McCullough.

4

Plaintiffs 001304

11. When I complained, the first thing my supervisor would tell me was to write it up. My male supervisors, such as Captain Martinez and Sergeant Loughston, told me, "this is the job you took so you should accept it."

12. If a detainee sexually harasses a female, the male officers won't usually jump in because they can lose their jobs. Officers are not allowed to touch detainees in most situations. The detainees will disrespect the officers all the time because they know they can get away with it.

Ineffectiveness of complaining and writing disciplinary reports

13. I believe I complained to my supervisors at least 100 times about detainee sexual misconduct. Nothing changed.

14. I believe I wrote hundreds of incident reports regarding detainee sexual misconduct during my employment at the Jail. It had no effect. Occasionally, a detainee would be moved away from my work area after I wrote an incident report, but I still saw them, especially when it happened in Laundry because I went all over the Jail.

15. If I wrote up a detainee for sticking their penis through the chuckhole at laundry pass, it was because that day they were saying such horrible things and I had just had enough. Just regular masturbation wasn't enough to make me stop and write them up because I would have finger cramps writing all of those reports.

16. If the detainees' masturbation was particularly bad when I arrived, sometimes male officers would just ask me to leave, so that the detainees

5

Plaintiffs 001305

would no longer have a reason to masturbate. They'd ask the sergeant for permission not to change clothes on the tier that day. It happened a lot towards the end of my time there because they had cameras everywhere and the officers didn't want to get in trouble. It was just easier not to deal with it.

17. Sometimes, when I saw detainees in the tunnel masturbating, I would stop to write them up. However, I didn't do it every time because I believed it wouldn't go anywhere. By the end, the detainees would just say, "bitch, write me up, I am not going to get in trouble." They didn't care if I wrote them up. I never heard anything from the hearing board after I wrote them up either. I had to let it slide off of me because I felt like there was nothing I could do about it.

Lack of Training

18. I never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

Impact on Job Performance

19. The sexual harassment changed the way I did my job. It was so hard to deal with this on a daily basis. There was only so much abuse I could take. I didn't want to come to work anymore. The only thing I could do was ignore it. This made me less aware of potential security issues or other problems.

6

20. Towards the end of my employment at the Jail, it felt like the detainees had all the rights. Officers, including myself, were scared that if we tried to discipline the detainees for masturbating and exposing their penises or saying horrible things to us, we would lose our jobs. For example, I heard that Officer McClendon is fighting for his job because he pushed a detainee back into his cell after the detainee kept coming out of his cell and wouldn't follow orders to go back in. I also heard that Officer Palomino lost his job because he hit an inmate after an inmate hit him.

21. As another example, I am friends with Officer Parker's mother. She told me that he was suspended for almost two years while the sheriff investigated an incident where an inmate hit him and he just pushed the inmate off of him. The merit board found him not guilty of excessive force and he's back at work now, but he lost two years of pay.

22. Furthermore, the harassment changed the way I dressed at work. I always wore loose pants and often wore a sweater – I didn't want to attract attention.

23. The behavior by male detainees toward me was degrading, threatening, humiliating, and caused me to fear for my safety.

Emotional Impact

24. As a result of the constant sexual harassment, I suffered severe emotional distress. I had trouble feeling compassion for my family. If a stranger got too

7

Plaintiffs 001307

close to me I would jump and want to yell at them.  I lost my patience and wasn't as kind anymore after working at the jail.  It made me bitter.

25.    It also affected my mental health.  I started having anxiety and panic attacks.  I retired only 5 months before I could collect my maximum pension, but I started having panic attacks going to work and I couldn't do it anymore. When I left work I would be crying almost every day.  I lost almost $1000 a month in my retirement benefit by leaving five months earlier than I should have.

26.    When I think about how the Sheriff has reacted to the detainees' behavior, I am very sad.  I feel hopeless.  I still think about the people working in the Jail and pray for them.  I hear from my colleagues that are still working there that now, this stuff is ten times worse. I am so frustrated.  I don't think the Sheriff took care of me and my colleagues like he should have.

8

Plaintiffs 001308

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

3-22-2019

Date

Debra Petts-Dass

Signature

9

Plaintiffs 001309

# Declaration of Kelli Polo

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Kelli Polo. I have worked as a Mental Health Specialist III ("MHS") at the Cook County Jail since approximately May 6, 2013. I have been assigned to work regularly in the following areas of the Jail: Receiving, Division 9, Division 10, the inpatient psychiatric unit of the Cermak building, and in the Residential Treatment Unit (RTU). I have also worked in other divisions and areas of the Jail on an as-needed basis. I am currently assigned to Receiving.

2. In Receiving, I conduct "intake mental health assessments" to determine detainees' level of care, psychiatric needs, and crisis handling, if necessary. I also refer detainees to psychiatry, medical, or mental health counseling for follow-up care, if necessary. I work with detainees all day long.

3. Mental health specialists can be assigned to work in any division of the Jail on any given day. If there is a staff shortage, "operational need," or a crisis in any division, I can be assigned to work in that division on that day. There, I will participate in well-being checks on detainees, psychotherapy groups for detainees, walk-in crisis calls, and other mental health services. Sometimes I will be assigned to work overnight in a division. Between my regular assignments and daily assignments, I have worked all over the Jail.

4. In all of my assignments, my job has required me to have interactions with male detainees on a daily or almost daily basis. Even in the approximately 9-10 months in 2015 and 2016 when I was assigned to the female psychiatric unit, I had contact with male detainees a few days per week, either walking through the basement of Cermak or on daily assignment to a male division. I could have been mandated to work with male detainees at any time.

5. Before I was assigned to Receiving, I worked in RTU. In both assignments, I experienced sexual harassment about the same amount. In Receiving, on a weekly basis, male detainees make remarks about my body and physical appearance, and they also stick their hands in their pants and begin touching their genital area in a way that appears they are going to start masturbating. This also occurred in RTU on a weekly basis. On approximately a monthly basis, detainees will proposition me and ask me out on dates. For example, they will say things like, "I get out on Friday, I'm going to take you on a date," "Can you be my baby mama?" and "When I get out of jail, can we hook up?" One time, Detainee ████████ a known masturbator, told me that before he left the Jail, he was going to "make sure" that he got a kiss from

Plaintiffs 001426_REDACTED

Plaintiffs 001426

me. The sexual harassment occurred in RTU the same amount. I hear crude sexual comments, like "suck my dick;" lewd gestures, such as detainees making facial expressions simulating licking or pointing to their genital area; and detainees masturbate in their pants or while their genitals are exposed, approximately every other month. In RTU, it was the same. For example, when I was working in RTU, I witnessed a detainee masturbating during a group therapy session.

6. However, when worked in Division 9 in 2013 through approximately 2014, the verbal sexual harassment, such as catcalls, remarks about my body and physical appearance, asking me out on dates, and crude sexual comments happened every day, any time I walked onto the tiers, and sometimes in the hallways, as well. I also witnessed detainees masturbating, whether in their pants or while their genitals were exposed, about every other time I was on the tiers in Division 9.

7. The sexual harassment, including the verbal sexual harassment, masturbation and men exposing their penises to women happens so frequently to me and other women employees that I have lost count of exactly how often it has happened and cannot recall every incident.

8. As one example, in about June or July 2018, when I was doing a detainee's mental health assessment in Receiving, he continued to put his hands down his pants and play with himself by touching his penis. I kept telling him to take his hands out of his pants. He would initially comply, but then immediately put his hands back in his pants and continue to touch his penis.

9. As another example of the more egregious conduct I have experienced, in about 2014, I was going to do a well-being check on a tier in Division 9. As soon as I walked onto the tier, a detainee on the other side of the tier who was about 25-30 feet away, pushed the chuckhole of his cell open, stuck his penis out of the chuckhole, and began masturbating while staring at me through the window of his cell. I reported the incident to the male officer on duty at the time, whose name I do not recall.

10. About one week later, I received a call from Sheriff's Police investigator. I gave him my statement and said that I wanted to press charges. When he called me back to follow up, he said they would not be pursuing the case because they cannot prove that the detainee was masturbating toward me specifically – because there were officers and other detainees around. But I was the only woman on the tier. It was demoralizing because it made me second-guess what I saw and question myself, like maybe I was making too big of a deal, because they weren't taking it seriously. It made me feel like there was no point in reporting this behavior when no one even believed me,

and any future reports would likely be rejected and turned away. It made me feel like pressing charges was pointless. Why would I want to continue talking about what happened and re-live the trauma when nothing would happen anyway?

11. On about April 6, 2017, I was doing rounds on Tier 2E of RTU. Detainee Redacted was standing at the door of his cell, masturbating at me with his penis exposed. I wrote a Staff Safety Incident Report, which is a report used by Cermak Health Services staff because we cannot make reports in the Jail's incident reporting system and faxed it to the number at the top of the form. However, a Staff Safety Incident Report does not start the process to discipline the inmate for indecent exposure and masturbation. Only correctional officers could write an incident report in the Jail's incident reporting system (CCOMS). As mental health staff, I am not allowed to submit incident reports in CCOMS. I have also never been trained on how to use CCOMS.

12. On about September 8, 2017, I was on the 4th floor of RTU. I was in the process of requesting that a detainee be moved to the psychiatric special care unit. I handed the tier officer, Officer Benda, an envelope with the documents to move the detainee. Another detainee, Redac Redacted, was exiting tier 4D at this time and witnessed what I was doing. Apparently angry that I was getting a detainee moved, Detainee Redacted started yelling something like, "It's her fault, that unprofessional bitch! She started all of this!" The officer and Mental Health Specialist Christine Mendenhall witnessed this event. I wrote a Staff Safety Incident Report on this. To my best recollection, I also submitted an EMERS report on this incident. EMERS is a computerized reporting system used by the Cook County Health and Hospitals System to report incidents in county medical facilities. But I cannot access my EMERS reports after submitting them. Also, filing an EMERS report on a detainee does not lead to discipline.

13. Another time, in Division 9, a detainee was masturbating toward me. When I told him I was going write him up, he said, "It doesn't matter. I'm fighting a murder. I'm not going to get any extra time." I reported his sexual misconduct to the male officer on duty at the time. To the best of my recollection, I wrote a report in EMERS about it, as well. The next time I was on the tier, approximately one week later, the detainee said something like, "Why did you write me up? You made me look bad." I do not know if the detainee was disciplined or not. At the time this incident happened, even if a detainee was sanctioned with time in SMU, it did not happen right away.

14. I have observed other women being subjected to the same or similar harassment. I have seen it so many times that I have lost track of each specific incident. A few examples are:
    a. Numerous times, I have walked past detainees' cells and heard them yelling lewd remarks and exposing themselves to me and the women I was working with at the time. This has happened in all of the places I have worked (e.g. in Division 9, Division 10, RTU, Receiving, and the basement of Cermak).
    b. In approximately 2013 or 2014, I began my orientation day in Division 9 with another mental health specialist, Angela Maniak. I witnessed a detainee who had been in the showers approach the door, facing us, and start swinging his penis around while staring at us. I remember speaking to a correctional officer about the incident and saying that I wanted to press charges, but I do not recall hearing anything after that;
    c. In approximately May 2018, my supervisor, Dr. Butler, was interviewing a detainee in Receiving. While I could not see what was occurring inside the small room she was in, I witnessed her scream and run out of the room that she had been interviewing a detainee in. Later, Dr. Butler told me that the reason she ran out of the room was because the detainee had pulled his penis out;
    d. As another example, in approximately 2014 or 2015, I was interviewing a detainee in Receiving. In the middle of the interview, he abruptly walked out of the room and grabbed another mental health specialist's buttocks (Lauren Cartwright).

15. It's very frustrating knowing this happens to the women at the jail. It makes you feel powerless and humiliated. You feel victimized, but you need the job, so you try to block those incidents out of your mind and keep pushing forward.

16. If I were to press charges every time a detainee verbally sexually harassed me, exposed himself, and/or masturbated, I would be doing it all day. Nobody has time to chase down investigators, do interviews, every day.

17. Sometime in between 2013 and 2015, after I sent emails and spoke in person to management about the rampant sexual harassment, including Dr. Rogers (Unit Director of Division 9) and Dr. Kenya Key (Chief Psychologist), I approached Dr. Key and stated something like, "This is getting out of hand. Detainees are masturbating constantly. Why do we have to keep doing this?" Dr. Key stated something like, "We have to keep doing well-being checks. There are blue smocks in the cabinet. Why don't you wear those?" suggesting that wearing a smock might discourage the detainees from sexual

harassment. Her comment made me feel that she was putting it on us and blaming us for the harassment.

18. Other mental health specialists and I followed Dr. Key's suggestion and wore the blue smocks. However, even when we wore the smocks, the detainees continued to harass us. They would say things like, "Why are you wearing that?" "Why won't you let me see your body?" "That's bullshit! We don't get to see females very often," and "Let me see what you have on under that."

19. At some point in approximately August 2016, after a detainee in Division 10 had taken another detainee hostage, there was a huge safety concern among Cook County Jail staff. At that time, other mental health specialists and I heard from both detainees and officers that the detainees were planning on taking a female staff member hostage and raping her next. We brought concerns about our safety to Dr. Gomez (Director of Mental Health) and Dr. Key including at a "town hall" meeting, but they did not offer any solutions to stop or prevent the harassment. Dr. Key stated something to the effect that the Labor Board would never approve of it. Dr. Gomez even stated, "Men can get raped, too."

20. The rampant sexual harassment has affected my mental health. It has raised my stress levels and increased my anxiety. When I began working in Division 9, my anxiety was so severe that my doctor prescribed anxiety medication.

21. I am constantly aware that the sexual misconduct could happen at any time at the Jail. I am in a state of constant hypervigilance. In the back of my mind, there is the question of "would someone try to grab us and rape us?" So I always try to locate the exit and find a clear path out of any situation. I keep an eye out at all times.

22. I like the job, the benefits, and I like what I do. But I do not like the sexual harassment. It is really hard to work at a job when you know you're going to be a victim. It makes me have feelings of wanting to leave, wanting to quit the job, or wanting to cry.

23. At the end of the work day, I sit my car for a few minutes and do some deep breathing because I feel so wound up, on edge, irritable, cranky, and wanting to be alone. I am hypersensitive to sounds at home -- sometimes just the TV can irritate me. I have to calm myself inside so that I can transition to seeing my family.

24. The sexual harassment affects you inside and outside of work. I continue to go to therapy every week, but I still feel hypervigilant and aware of my

Plaintiffs 001430_REDACTED

Plaintiffs 001430

surroundings at all times, like while taking public transportation or being other public places. There is general sense of hypervigilance.

03/04/2019
Date

_Kelli Polo_ (signature)

Kelli Polo

Plaintiffs 001431_REDACTED

Plaintiffs 001431

# <u>Declaration of Lori Ponce</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.    My name is Lori Ponce (formerly Wiskur). I have worked as a correctional officer at the Cook County Jail since approximately April 23, 2012.

2.    I have worked in Division 4, Division 11, Receiving (RCDC), RTU, and Division 10. I have worked in Division 10 since April 15, 2018. In nearly all of these assignments, my job has required me to have interactions with male inmates.

3.    My job duties include working on the male tiers every day, supervising them to ensure their safety and security. I unlock the inmates' doors to allow for their allotted time in the day room. I also lead inmates to the recreation area and other areas of the tier, if necessary. It is also my responsibility check inmates' cells; I go to the door and visually inspect that there is nothing covering the windows and that there are no other violations in the dorm.

4.    Every day, inmates catcall me and make comments about my appearance and my body, and "complimenting" me, which I consider inappropriate. For example, inmates often say to me, "You are so beautiful," or "You're so fine." When I tell them to stop, inmates often say that it is just a compliment.

5.    The lewd, sexual, and inappropriate comments seemed even 10 times worse when I was pregnant, which made me extremely uncomfortable. In one instance, when I was visibly pregnant, an inmate said, "Damn. Motherfuckers must have run a hard train on her!" I also heard an inmate say, "She has real good pussy now." On another occasion, I recall another inmate saying to me, "I wonder what your pussy tastes like."

6.    When I am on the tiers, I can tell that the inmates are looking at my body. Because of this, I frequently wear a sweater around my waist. I have heard inmates say statements such as, "Stop trying to hide your booty," and "Is your husband a black man? Because no white man could handle that," referring to my body.

7.    Some time in approximately June 2018, in Division 10, an inmate said to me that he had multiple wet dreams about me the night before. I did not write him up because I just wanted to continue doing my job and carrying out my responsibility of letting the inmates out of their cells. Approximately one week later, other inmates told me that they saw that same inmate masturbating to me. I didn't write him up since I didn't see it and couldn't prove that it happened, but it still bothered me.

8.    Every day when I worked in Receiving, male detainees exposed their penises to me and/or masturbated to me, but it happens in other areas where I work, too.

1

9. The inmates in green jumpsuits, who are known for masturbating, are now spread around the jail, so I could run into them almost anywhere. Every time I see an inmate in a green jumpsuit, I get anxiety because I'm afraid they are going to sexually harass me. I see the green jumpsuit and my guard goes up. I still do my job, but I don't want to have any interaction with them. Even if they just have a simple question, I'm afraid they're going to do something more than just ask the question – like sexually harass me.

10. Other women have to deal with similar harassment. For example, inmates have harassed both me and a female commissary employee about our appearances. Multiple inmates stated aloud, referring to the commissary employee and me, "How can this black bitch be next to this white bitch, and she has no ass and this white bitch has a fatter ass than her."

11. The pervasive sexual harassment is even noticed by other inmates. Inmates have apologized to me for the sexual behavior of other inmates.

12. I have reported the sexual harassment, and I have also been discouraged from reporting it. When I worked in Receiving in August 2014 through May 2016, I would see inmates exposing their penises on a daily basis. On one occasion, I approached Sergeant Cintron about the behavior. Sergeant Cintron blew off my concerns and encouraged me to move on.

13. As another example, in approximately August 2013, I wrote an incident report on an inmate exposing his penis to me in Division 11. After I filed the incident report, a male investigator called me asked if I wanted to press charges. At the time, I did not know much about the process, so I asked "What would happen if I pressed charges?" The investigator stated something to the effect of, "It's not worth it to press charges. Nine times out of ten, it's going to be dropped because they are facing bigger charges, like murder." Because of his statements, I agreed not to press charges.

14. Shortly after, possibly that same week, the same investigator approached me in person to give me paperwork to sign. At that time, the investigator stated, again, in words or effect, that "it's not worth it" to press charges. He also stated that his wife works at the jail and that he also encourages her not to press charges, either.

15. As another example, in May 2018, I was working in Division 10. When it was time for detainee Redacted to take his medication, I looked in the chuckhole to see if he was ready. Instead, I saw his erect penis in line with the chuckhole. I submitted an incident report about this.

16. The response to my incident report was discouraging. After a few phone conversations with Investigator Dosier, I met with him and another male staff member whose name I did not know at the time (and later found out his last name is Trice). In the meeting, Investigator Dosier stated, in words or effect, that if I were to press charges, they would be "false" because the inmate was in his "private

2

Plaintiffs 001120_REDACTED

Plaintiffs 001120

domain." He further stated "We're under a microscope right now with these charges. And if you go through with this, it is a false charge." Because I felt so discouraged, as well as intimidated, I reluctantly agreed to not press charges.

17.     Furthermore, Officers, like myself, feel discouraged from writing up inmates or strictly enforcing policies because inmates frequently threaten to write officers up in return. On more than one occasion, inmates have threatened to write me up through grievances. I have had inmates say to me, "I am going to grieve you off this tier" for simply enforcing policies, like requiring them to wear their uniform or not letting them stay their cell when they are required to come out.

18.     I try not to let the jail environment make me a hard person. I try to treat everyone, including inmates, the way I would want to be treated if I was in their situation. But it is very difficult working in the jail because of the sexual harassment toward female staff and negative response from supervisors.

19.     I have never received training regarding how to address sexual harassment by male detainees, decrease the opportunity for detainees to repeat the behavior, or minimize the impact of the behavior.

20.     The harassment makes it difficult to do my job in the way that I want to. For example, I am required to check inmates' dorms, but I know certain inmates are going to sexually harass me. Knowing that I am about to be harassed, I feel embarrassed and put down before I have even begun to fulfill my duties. When inmates say especially degrading things to me in front of all the other inmates, I feel humiliated and ashamed. Over time, it begins to eat at you.

21.     The frequent harassment has affected me emotionally and changed my reception to compliments and to physical touch, which affects my marriage. Because I face frequent harassment about my appearance at work, which inmates often call "compliments," I no longer appreciate genuine compliments from my husband in the same way that I used to. I do not want my husband to unexpectedly touch me, even in a playful or romantic manner; I have to say "please don't touch me right now." Sometimes, I do not want to be intimate with my husband at all, because the stress from the harassment at work lingers in my mind. It has really affected my relationship.

_____
Lori Ponce

_____
Dec 27, 2018
Date

3

     Plaintiffs 001121_REDACTED

Plaintiffs 001121

# Declaration of Desiree Ray

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Desiree Ray. I have worked as a correctional officer at Cook County Jail since November 1, 2004.

2. Since I have been employed at the Jail, I have been assigned to Division 4, Division 8/RTU, Division 9, and Division 11. I am currently assigned to Division 11.

3. In all of my assignments, except for Division 4, I have had interactions with male inmates on a daily basis. Even when I worked in Division 4, I would regularly see male inmates when I had to escort female inmates to other areas of the Jail.

4. I experience sexual harassment by male inmates all the time. When I or other female correctional officers walk past them, they will regularly say things like, "That muthafucka decent," or "that ass is fat," referring to our buttocks. They will tell us that they love us. They say so many sexual things that I can't recall everything I've heard. Sometimes, so many inmates are making sexual comments at the same time that I can't tell exactly what they're saying – but I know that it's sexual in nature.

5. If I wrote up every time the inmates say something sexual toward me or another female officer, I would spend the whole day doing it and not get anything else done.

6. For example, in approximately July 2018, as I was exiting a tier in Division 11, a female social worker told me that she heard an inmate say, "Can I lick your clit?" She knew which cell it came from, but she did not know which of the two inmates in the cell said it. I wrote an incident report on this.

7. Inmates also expose themselves to female employees, including me. At the beginning of each shift, correctional officers have to announce that we going to do a count of the inmates. A lot of times, inmates will know that I am coming around and will purposely have their penises exposed to me.

8. As another example, in approximately 2012-2013, I was on a power washing detail to clean the showers, where I would supervise the working inmates as they cleaned. As the inmates were washing the showers, I received a phone call, so I went to the interlock to accept the call, and continued to monitor the tier from the interlock. When I looked up toward the inmates who were in

Plaintiffs 001268_REDACTED

Plaintiffs 001268

their cells on the top deck, I suddenly saw 6-8 penises in a row, sticking out of the chuckholes, all masturbating. I alerted my colleagues, and officers came in and went to all the cells, presumably to tell the inmates to stop masturbating. After that, the inmates taunted me and said things like, "If you didn't like it, all you had to do was say so," as if they had done nothing wrong. It made me feel violated. I also felt scared because I was thinking that if they are *that bold* to do that to me, when I'm an officer and they are locked up, then when they get out of jail, there is no limit. Because of this, I always feel like things are going to escalate and get worse – like one day, a female officer is going to be raped.

9. As another example, in approximately 2013, in Division 9, I went to the cell on the top deck of the tier to let a plumber come in and fix a clogged toilet. As I went to go back down the stairs of the tier, I heard Inmate [Redacted] say, "Hey CO, come here, it's an emergency." When I went to his cell, he had his penis in his hand, stroking it back and forth. I wrote an incident report and disciplinary report and indicated that I wanted to press charges.

10. It was a month before Sheriff's Police investigator called me. I do not recall the investigator's name, but I remember it was a male. He discouraged me from pressing charges. He asked, "Do you want to press charges?" I said yes. He then stated words to the effect of, "The problem we have here is you all want to write these reports but you don't come to court." I told him I would come to court. And I did. However, I was not called to participate, which was discouraging. At the hearing, the state's attorney said to me, "We're having this same problem with the nurses," referring to the inmate masturbation. They also explained that only thing they could do for him is give him an additional 180 days maximum. Then they told me he had a "stay."

11. In approximately 2012, I was on a sanitation detail in Division 9, so I had 4 inmate workers with me, cleaning the tiers. We got to one tier, and there was an inmate named [Redacted], whose last name I do not recall. He called me over to his cell, and when I got there, I saw he had his penis in his hand and he was stroking it. I reported the incident right away to the male sergeant on duty (whose name I don't recall). I wrote an incident report and a disciplinary report on this inmate. Approximately one week after the incident, I saw the same inmate, [Redacted]. He said to me, "That muthafucka big, aint it?" referring to his penis. Members of the hearing board were right outside conducting hearings for the other inmates at the time, so I immediately went to the hearing board members (whose names I don't recall) and told them about the incident. They said "Don't worry about it," or words to that effect, and assured me that they would take care of it. I do not know whether they did or not.

2

Plaintiffs 001269_REDACTED

Plaintiffs 001269

12. In approximately 2016 or 2017, Inmate [Redacted] was sitting in the gated recreation area outside by himself. I was working at my desk at the time and could see the recreation area from my office. I looked out the glass window of my office and saw [Redacted] standing on a chair, masturbating to me. I put a piece of paper on the window to block his view of me. I called the sergeant to get him escorted back inside.

13. Sometime in 2017, on the psych tier of RTU, I was sitting at my desk. I looked up and I saw an inmate was at the toilet stalls, but was facing away the stalls and masturbating while looking at me. Some of the other male inmates told him to stop. The male correctional officer who I was working with at the time also told him to stop.

14. As another example, in approximately 2017, I was working as the area officer in RTU and inmates masturbated at me in receiving. I was transporting an inmate back from Cermak and had to walk past the holding cells in receiving. There were two different bullpens. I heard an inmate say "Hey, Ray! Hey, Ray!" trying to get my attention. I could see from my peripheral vision that his arm was moving and that it was evident that he was stroking back and forth, masturbating. Other officers witnessed this happen.

15. I don't recall directly which supervisors have discouraged us from writing reports, but discouragement is a common problem at the county. One female correctional officer told me that a sergeant told her not to write up an inmate for exposing his penis because, he said in words or effect, the inmate was in his cell, which is his "private living area."

16. There is constant verbal harassment is overwhelming – it doesn't have to be penis exposure – it's the verbal. Even if you write them up, there are no repercussions. There are no real consequences so you constantly have to deal with this every day when you go into work. You try to tell the guys "be respectful," but they still do it because they know that nothing is going to happen to them.

17. They need to put something into effect where verbal assaults are taken seriously – not just the penis exposure and masturbation.

18. In fact, I had to bid out of Division 9 to escape the sexual harassment because it was affecting my psychological well-being. The inmates were always masturbating. I had to change my work assignment because of it. The sexual harassment still happens in Division 11, but it was really running rampant in Division 9 and it was just getting worse. It felt like no one was doing anything about it and there was a reward system – pizza parties – which encouraged inmates to expose themselves because they wanted pizza. I had to

3

Plaintiffs 001270_REDACTED

Plaintiffs 001270

leave. I was exposed to it so much. Every day, mentally, it was draining. I was always on guard.

19. The fsexual harassment has had a psychological effect on me. I have been exposed to so many penises while at work, that I have even had to talk to my husband about how it affects me and my intimate relationship with him.

20. The green jumpsuits aren't working – they wear them open or around their waist. It's ridiculous.

21. Being on a tier with 48 guys who are all looking at you like a piece of meat, and where the sexual harassment is tolerated, is just not safe. There needs to be consequences for sexual harassment so that it can be stopped. Something needs to change.

22. As a woman working at the Jail, I live in fear. I am afraid that I am going be the one that they are going to grab and pull into a cell and rape me. That is always in the back of my mind. That worry never goes away.

_Desiree Ray_

Desiree Ray

January 25, 2019

Date

4

Plaintiffs 001271

# Declaration of Vanessa Robinson

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Vanessa Robinson. I have worked as a correctional officer at the Cook County Jail since April 1991. I have been assigned to Division 2, 4, RTU, and support services (which includes laundry, kitchen, and sanitation). Within support services, I have been assigned to the laundry room, and since approximately 2016, I have been assigned to work in the Central Kitchen.

2. In all of these assignments except Division 4 my job has required me to have interactions with male inmates on a daily basis. For example, in the Central Kitchen, I supervise inmates who work in the kitchen. Occasionally, I have to deliver food to divisions, like Division 2, 5, 6, 9, or 10.

3. The male inmates verbally sexually harass me. I have experienced male inmates making derogatory remarks, talking about my "behind," yelling out catcalls and sexual comments, saying sexual things they would do to me when they get out of jail, and if I ignore them, they yell out my name and try to get my attention. When I worked in laundry, the verbal sexual harassment occurred every time I went on the Division 9 and 10 tiers to do a uniform exchange. It also happened in Division 6. Today, I work in the Central Kitchen, so I have to go through the tunnels to get to my assignment. At least 3 days per week, inmates will make sexual comments to me. Often, the correctional officer, usually a man, will do nothing to stop it so I try to get to work as early as possible in order to avoid the inmates and the sexual harassment.

4. Male inmates have also exposed their penises and masturbated at me. When I worked in laundry, this happened during the uniform exchanges at least 3 to 4 times per week. I have seen inmates expose their penises to me in the tunnel multiple times. In the tunnels, they have exposed themselves numerous times. I have not written up the incidents in the tunnels because I do not know who the detainees are. They are coming from different divisions and there is not a computer nearby to write a report.

5. For example, in about April 2016, when I was assigned to laundry, I went to one of the tiers in Division 9 to do a uniform exchange. As I approached one of the cells to exchange the inmate's uniform, I saw the inmate waving his penis at me. I immediately told the sergeant on duty at the time whose name I cannot recall. The same day, the sergeant wrote an incident report which I signed off on. I indicated that I wanted to press charges.

Plaintiffs 001460

6. About four months later, I received a call from a Sheriff's Police investigator, who requested that we schedule an in-person meeting. Shortly after, I met with the investigator. I confirmed that I wanted to press charges on the inmate who exposed his penis to me. The investigator reviewed the incident report with me, and also had me sign the criminal complaint. I requested a copy of the criminal complaint, but never received it. No one at the Jail followed up with me.

7. In about September 2016, I received a subpoena to go to court to attend the inmate's trial for when he exposed his penis to me. When I went to court, the state's attorney announced that the trial was going to be continued to a later date. I was never notified of the date the trial was continued to so I did not get to testify. I do not know what happened to that inmate. None of my supervisors at the Jail followed up with me or supported me. I felt I was on my own standing up against the sexual harassment.

8. I am worried that if inmate sexually assaults me or another woman that we won't be able to defend ourselves. I am worried about using force to stop a sexual assault because I am worried about being disciplined. For example, I heard about an inmate touching a female officer sometime in 2018. Hearing about this made me frustrated because it feels like our only option is to write a report and hope that they are disciplined. It seems like we don't have the tools to stop it.

9. Inmates feel empowered to sexually harass us. I recall an inmate saying something like, "You can't do anything to us. We run this place. We do what we want to do." I interpreted that to include sexually harassing women.

10. I am frustrated because when I first started, I never felt anxious and worried. I used to love to come to work every day. Recently, it's been harder and harder to come into work every day.

11. Because of the sexual harassment at the Jail, as well as the Jail overall becoming more unsafe, my anxiety has increased. For about the past two years, I have had to see a therapist and a psychiatrist on a more frequent basis. I have been put on high blood pressure medication due to the stress at the Jail according to my doctor. I frequently have severe headaches, and I have had two mini-strokes.

12. My therapist, psychiatrist, and primary doctor have encouraged me to take off work if I have to for the sake of my health but the Sheriff's Office seems suspicious of my need to take time off and I don't feel supported.

Plaintiffs 001461

13. Some female officers have told me that they are retiring early because of the sexual harassment. If I didn't have to take care of my son, I would consider retiring early, too. I have to stay because of financial reasons.

*Vanessa Robinson*
_____
Vanessa Robinson

03/08/2019
_____
Date

Plaintiffs 001462

# <u>DECLARATION OF CARLELLA ROGERS</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.     My name is Carlella Rogers, and I work at as a deputy sheriff correctional officer at the Cook County Jail.  I have worked at the Jail since September 1996.  Most recently, I have been assigned to Receiving for about four or five years.  Before Receiving, I was assigned to Division IV where I worked with women inmates from about 2008 through about 2014 or 2015.

2.     In Receiving, I regularly interact with inmates who are men.  Receiving is the area where inmates come into and go out of the Jail.  For example, I deal with detainees who are coming into the Jail after being arrested.  We send them off and make sure they get to the right court.  My experience is predominantly with inmates when they are being transported from where they are housed in the Jail to Receiving where they are in holding cell and waiting to go to court.

3.     The men who are inmates sexually harass me and other women.  They say sexual things to me every day that I work in Receiving.  It's humiliating the things that they say to me so I don't even want to repeat them.

4.     From the time I started working in Receiving until about a year ago, almost every day that I worked in Receiving, a male inmate would expose his penis to me or masturbate at me.  Some days the masturbation and exposure would happen more than once a day.  For example, this happened when I worked on the Bridge in Receiving and when I worked Post O.  Most recently, the inmates still expose their penises to me and fondle their penises at me, but because of the handcuffs and the green jumpsuits, it happens less frequently.

5.     When I started working in Receiving in about 2014 or 2015, I noticed that things had changed from the time that I had regularly worked with the men before, which was around 2008 or before.  Earlier, the inmates weren't always so aggressive talking about their bodies and your bodies in a sexual way.  There weren't all these indecent exposure incidents happening.  Now the Jail pretty much tolerates that behavior.

6.     Sometimes, more than one man will have his penis out at you and you will have to deal with a group of penises.  For example, I remember a time that I was working in Receiving, looking the other way and an inmate called out, "Officer Rogers" to get my attention.  When I turned around, there was 5 to 10 penises sticking out of the bull pen.

7.     I feel discouraged about writing incident reports related to the inmates making sexual statements about my body, about what they would do to me sexually, or about the inmates masturbating.  I don't feel like writing an incident report is going to stop the bigger problem if the Administration is just tolerating it.

8.     It seems to me that other officers feel like there is nothing they can do to stop the harassment when the Administration is okay with it.  For example, I saw an inmate walking

Plaintiffs 001463

down the hall in Receiving, and he had his penis is out, but the male officer he was walking with did not do anything. The officer didn't make the inmate put his penis away. I'm not sure why he didn't correct the inmate, but maybe it's because you don't know if the Administration is going to support you.

9.      Sometimes supervisors have been watching inmates on the camera and the inmates masturbate, but they didn't write the incident report. Instead, they asked me to write the incident report. That doesn't seem right to me because I can't identify the inmate if I didn't see it happen. It's discouraging that lieutenants and superintendents aren't writing the incident reports.

10.     As a woman, it seems so unhuman to even write this stuff down. I don't even want to think about what the men do to us. It's humiliating to write it up. Talking about it or writing about it is hard. It's like you have to re-live it.

11.     The sexual harassment has impacted me and my workplace. I feel like I have had no choice but to develop thick skin. I need my job. You are at work so much it's like it is your second home. For me, when the Administration doesn't stop the sexual harassment, it feels like your parents are telling you that you just have to deal with it, and you don't have any other choice but to do what you are told.

12.     I have never received any training from the Administration on how to stop inmates from exposing their penises to me, masturbating at me, or saying sexual things to me.

13.     Over the four to five years I have worked in Receiving, I have never heard of new inmates receiving directions or warnings that the Jail has a policy against sexual harassment of women officers.

Decl. Ex. 656

Plaintiffs 001464

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

03/27/2019

_____
Date

_____
Signature

Plaintiffs 001465

## APRIL ROWELL-ROBINSON

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is April Rowell-Robinson. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail for approximately thirteen years. During my time at the Jail, I have been assigned to Division 10 (male maximum detainees), Divisions 4 and 5 (female detainees), and Receiving.

2.  I currently work in Division 5 with female detainees. In this position, one of my duties is to transport the female detainees within the Jail compound, from their cells on the tier to the Cermak Building for their medical appointments. In this position, I have interactions with male detainees on a daily basis because I pass groups of male detainees being transported on the bridge, in the tunnels, or in Receiving while I am transporting my female detainees through those areas.

3.  About three to four times a week, while I am transporting my female detainees, I pass male detainees who expose their penises to me and my female detainees. The men are able to do this even if they are handcuffed to the back. Often, the men are wearing the green jumpsuits when they do this—the Velcro on the jumpsuits often does not stay closed, and then the whole front of the jumpsuit falls open, and the male detainees are able to stick their penises out through the slit in their boxer shorts. Putting a male detainee in a green jumpsuit does not stop them from exposing their penises—they do not care about the jumpsuit.

4.  Every day when I pass male detainees, they say derogatory things to me and my female detainees, like "Do you want to see this dick?" I try to ignore them and concentrate on moving the female detainees out of there as quickly as possible.

1

Decl. Ex. 658

Plaintiffs 002287

There is no way to write up a detainee for making these comments because they happen so fast, in passing, and if I ask who made the comment, all the detainees will deny it.

5. I have also seen male detainees in Receiving masturbate at me in the bullpens. This happened about two or three times a week, and a few times, three or four men in the bullpen would all masturbate at me at the same time.

6. I have seen male detainees expose their penises and masturbate at me so many times that no single example stands out. I'm so tired of seeing this disgusting behavior.

7. I am unable to write incident reports when male detainees expose their penises or masturbate at me on the bridge or in the tunnels because when this happens to me, I am in the middle of transporting my female detainees, and I have to keep them moving. I don't know who the male detainees are or what division they are from, so there is no way for me to write them up.

8. I've never been trained on how to respond to male detainees exposing their penises, masturbating at me, or making disgusting comments to me.

9. I never wear tight clothing to work because I don't want to give the male detainees a reason to notice me. I also try to get my female detainees to the Cermak Building as early as possible, to try to avoid passing male detainees.

10. Seeing this behavior so often has changed me—I feel like I'm locked up eight hours a day, and when I leave work I am free. It can be overwhelming and triggering—for example, I won't let my son or his friends wear their pants sagging, I tell them "I don't want to see your drawers!" I don't want them reminding me of the detainees inside.

2

Plaintiffs 002288

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/19/2019

_____
Date

_____
Signature

Plaintiffs 002289

# Belinda Sanders

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Belinda Sanders and I am a correctional officer at Cook County Jail.  I have been a correctional officer at Cook County since 1994.  Throughout my employment, I have been assigned to work in Divisions 4, 11, Receiving, and Transportation.  With the exception of the three years I worked in Division 4, which was female detainees, I have worked mainly with male detainees.

2.  I have been working with male detainees in Transportation for the past 15 years.  In Transportation, I generally interact with male detainees all day every day.  In this assignment, I transport both male and female detainees from their housing units to other locations in the Jail and the courthouse as well as outside the Jail to other courthouses, detention facilities, or to outside medical facilities, either within Cook County or to other facilities in other counties.  I work more with male detainees than with female detainees in this assignment.

3.  From about 2015 until about 2018, the detainees sexually harassed me at the Jail just about every work day.  They made offensive sexual comments to me when I passed them anywhere on the compound, exposed their penises and testicles to me and masturbated at me in the bullpens in Receiving.  For example, one time when I was walking to Receiving through the garage, an inmate waiting in line to get on the bus to go to Court pulled his penis out and masturbated at me.  Since the lawsuit was filed at the end of 2017, I experience much less masturbation and flashing.

4.  It's disgusting, but my employer made it so that I had no choice but to get used to the masturbation and exposure because it happens every day to women who are

1

Plaintiffs 002520

assigned to transport the inmates. The administration made it part of our job because they never tried to do anything about this behavior until this suit was filed. For example, in 2016, I was escorting a male, high-risk movement inmate from court to Division 9 with my male partner. I was walking in front of the inmate and my male partner was walking behind me in the tunnel. The inmate exposed his penis and started masturbating at me. We were bringing him back from court where the Judge had just told him that he didn't want to see another complaint about this inmate. I told Sergeant Gronke about the incident and wrote an incident report when I got back to my unit.

5.     As another example, in 2017, I was loading a bus with several inmates from separate divisions. One of the inmates pulled his penis out in front of me. I told him to stop and called in a male officer. After he saw the male officers, he put his pants back on. In this particular situation, I just wanted to leave. The sexual harassment happened so much that I didn't want to deal with it. And writing up the incident report was difficult because I had to re-live it. The men exposing their penises to me and the lewd, lascivious, and disrespectful comments that they made to and other women just happened too often to report.

6.     In 2016, I was transporting an inmate to 555 (Domestic Court in the Cook County Courthouse) because my inmate had a case there, and the deputy told me that the Judge wouldn't let certain inmates charged with exposing themselves into the court room. He made them stand in the threshold of the courtroom door while he transferred the case to the Criminal Court. I stayed inside the courtroom and my male partner stood in the hallway and watched the bullpen. My partner told me to stay in the courtroom because there were so many inmates masturbating.

2

Plaintiffs 002521

7.      In 2018, I was transporting an inmate in protective custody. I made him sit to the back of the bus, but he moved to the front of the bus while I was driving and started masturbating. I told him to go back to the back of the bus and when he got off the bus, his jumpsuit was unsnapped, and he was masturbating.

8.      I also saw inmates masturbating while I was walking past the bullpens in Receiving. I was never able to report masturbation when it is in passing because it slowed you down when you had to get to court. I couldn't get my job done if I had to stop and write an incident report every time an inmate was masturbating at me because it just happened so often. It should never have gone this far where inmates are constantly masturbating everywhere you look.

9.      Male inmates also make sexually aggressive comments about me and my body every time they saw me. They say things like, "That's my speed, I'd fuck her," and "I love you Ms. Sanders."

10.     I believe all women that I know working at the Jail have experienced sexual harassment by male detainees. The women working at the Jail discuss the sexual harassment. For example, one of my coworkers told me that another female correctional officer at the Jail was working in receiving when an inmate came up to her desk after leaving court and ejaculated on her desk. He said, "Clean up my babies." I don't know if this actually happened, but it is the kind of thing that could happen at the Jail given all the sexual harassment and it makes me feel disgusted about my workplace. I have also seen inmates sexually harass my co-workers. For example, once I witnessed an inmate expose his penis and masturbate at another officer.

11.     The lieutenants and superintendents that I have worked with over the last 5 years or so are aware that the inmates sexually harass women. On certain transportation

3

Plaintiffs 002522

runs, like Markham (District 6 of Cook County Courthouse) because there were so many detainees masturbating all at once on a bus, the sergeants and lieutenants tried to assign male officers to work with male inmates and female officers to work with female inmates.  But this did not work because there were so many more male inmates than female inmates, and so many female correctional officers, so we had to work with male inmates who masturbated at them.  They just tell us women to be careful, but to me, if an inmate is bold enough to pull his penis out and masturbate at you, he is bold enough to snatch you and rape you—I believe it's only a matter of time before a correctional officer will be raped.

12. The sexual harassment at the Jail made my job very tiring and exhausting.  I was constantly on alert because of the constant masturbation, exposure, and disgusting sexual comments and it was so stressful.  By the time I got home I was exhausted.  I used to feel good about coming to work.  Your supervisors defended you and the inmates respected female officers.  Now, the sexual harassment problem has escalated so much that I am worried someone will be raped.  I just try to get to work and get home safely.

4

Plaintiffs 002523

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/26/2019

_____
Date

_____
Signature

Plaintiffs 002524

## ASIAN SANFORD

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Asian Sanford. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail for approximately seventeen years. During my time at the Jail, I have been assigned to Divisions 2 and 11, External Operations, and Receiving. The majority of my career at the Jail I was in Division 11, from approximately 2005 to 2016/2017. For the past two or three years, I have been assigned to Receiving. I have also been assigned to a variety of locations to work overtime, like Division 9.

2.  When I worked on Division 11, I was a tier officer. In Division 11, each floor had 4 tiers, and each tier had 48 male inmates. There was one officer assigned to each tier who was responsible for those 48 inmates.

3.  In Receiving, my duties include processing new inmates, processing inmates going between their Divisions and court, and distributing inmates to their different bullpens. I work directly with male and female inmates; the majority of inmates are male.

4.  In both Division 11 and in Receiving, I have worked or currently have direct interaction with male inmates on a daily basis. In both assignments, I experience male detainees flashing their penises at me, masturbating at me, and saying sexual comments to me. In Division 11, male inmates exposed their penises to me approximately two to three times per week and masturbated at me about once a month. When I am in the tunnels in the basement and pass by the bullpens where inmates are waiting to go to court, male inmates flash me their penis about once a

1

Plaintiffs 002290

month and masturbate at me approximately once every two or three months. I try not to look or to respond when the inmates call me over from the bullpen, because in my experience, the inmates call female correctional officers' names or say they need help to get female officers to look at them, and when you do look at them, that's when they flash you or start masturbating in your direction.

5.     When I worked in Division 11, I had to open the cell doors at a particular time. I would let the inmates know the doors were about to be open. Many times when I would open the cell doors, an inmate would be on the other side of the door with his penis exposed. I can't even think of a particular example because this repeatedly happened on a monthly basis, and no particular situation stands out—they are all the same to me. The inmates did this to me because they heard my female voice. I don't recall them doing this to the male officers.

6.     In Division 11, nothing would happen to these guys after they masturbated at me. I would tell my sergeant, but the inmate would stay there and his behavior would not stop. In my experience, the inmate would only stop if a male sergeant would talk to him.

7.     One time about five years ago, I was working overtime in Division 9 for the first time. After I opened the cell doors, two inmates inside the bathroom area called me over. When I got there, the inmates were completely naked in the doorway of the shower, jacking off. I could see everything because there was no curtain or door to the shower. I was so disgusted and angry, I called one of my male co-workers over, and he said "Oh my god, nobody told you? That's how they do over here." I took that to mean that I should have done something differently, maybe not look in the direction of the bathroom or ask the male officer to respond to the inmates' calls, but I don't know because nobody ever told me. I went back to my desk in the inner lock

2

to try to get my head together. From there, I could only see the tops of the showers and the men in them, but these two inmates started jumping up so that I could see their naked bodies. I felt bad the entire day and called my sergeants. The said "ok, we'll come up," but they didn't come up immediately, which made me feel like they did not see the issue as urgent or an emergency. I was upset the whole night.

8. The majority of times I have transported inmates back to their division or to Court, inmates will get close enough to me to try to touch me. No inmate has ever actually been able to touch me because I am able to move away in time. This has happened both in the living units in Division 11 and in Receiving. When we transport inmates, there is one officer in front of the line and one at the back of the line. Because I am afraid of the inmates trying to touch me, I try to walk behind the inmates so that I can see them. When my partner is a male officer, he is usually fine with being in the front of the line.

9. I've also seen inmates masturbate at other female correctional officers. About a year ago, one of my female co-workers was in the basement in Receiving, and a guy in a green jumpsuit was being transported to his division. His hands were cuffed in the front and he was jacking off. We told the male transporting officer, who said he didn't see it, but told the inmate to stop and closed the front of his jumpsuit. My co-worker wrote an incident report, but she said she doesn't know if anything ever happened because she was never contacted about it.

10. Every single day that I work with male inmates, or even days when I just walk by male inmates, I hear sexual comments that are out of line. They say things like "Suck my dick," "I'll eat your pussy," "Let me see your pussy," "I'll fuck you in the ass," "I'll fuck your kids," "Come here, let me feel on your ass," "I like your lips," and "You thick as hell."

3

Plaintiffs 002292

11. I believe that all sergeants and lieutenants know about the sexual harassment because if they haven't witnessed it themselves, correctional officers have reported it to them. For example, in Receiving, the bullpen used to be right next to the officer's desk. The max inmates would stand right up against the cage and masturbate at the officer—often six or seven inmates would do this all at once. I saw female correctional officers put gurneys in between the bullpen and the desk to try to block their view of us. After a while, the bullpen was moved to the other side of the room where the inmates could not see the officer's desk, but even so, when you had to walk by, the masturbation would start again. I believe that management knows about the masturbation because they moved the bullpen.

12. I was never directly told not to write up incident reports when I witnessed flashing or masturbation, but I have never done it because I saw that nothing was ever done after. When it happened to me and was urgent to me, but the sergeants' reaction showed me that it was not urgent to them, I did not see the point of writing it up. I have also heard from other correctional officers that you have to write reports about the same inmate multiple times for masturbation before anything happens, which is another reason I don't bother. I have also heard through the grapevine that the Sheriff has said that this is part of our job and what we are getting paid for. I feel like I am being forced to believe that this behavior is normal and expected.

13. Since the lawsuit, sergeants now say directly that we can write up incident reports. Also, sergeants have told us that male inmates have the right to masturbate in their cells because that is their personal space.

14. I have never received any training on how to address sexual harassment by inmates.

15. Since the lawsuit was filed, it seems like the Jail is taking sexual harassment a bit more seriously. It is more talked about and sergeants have told us to write up

4

Plaintiffs 002293

incidents of sexual harassment. Recently, inmates are wearing one-piece jumpsuits and are often handcuffed. But as long as the jumpsuit is open and they are cuffed in the front, they can still masturbate. The jumpsuits themselves don't fix the problem because inmates can open them down the front, and no one makes them keep the jumpsuits closed.

16. The sexual harassment has changed how I act. I used to be as helpful to the inmates as possible. For example, I would check their court dates in Receiving if they asked me to. Now I am less helpful because I don't trust their intentions when they ask me for help. When an inmate calls me over to him, I worry that he is only calling me so that he can flash me or masturbate at me. This worry makes me not want to respond to inmates.

17. The harassment has also changed how I dress. I always wear a long sweater or a sweater zipped up because I want to avoid the inmates seeing my body. I wear long sleeves every day, even in the summer when it's hot.

18. The sexual comments, flashing, and masturbation make me feel nasty, disgusted, and irritated. I can't even describe how it makes me feel—it's like they are taking something out of me.

5

Plaintiffs 002294

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/24/2019

_____
Date

_____
Signature

Plaintiffs 002295

# JAN SANGSTER DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.   My name is Jan Sangster. I am a Licensed Practical Nurse (LPN) assigned to Cermak Medical Building ("Cermak") at the Cook County Jail ("Jail"). I have worked at the Jail since approximately October 2, 2017. Until February of 2019, I was assigned to the Division 9 Dispensary. I am currently assigned to Cermak.

2.   As an LPN, I am responsible for providing medical services to ensure the physical and mental wellbeing of detainees in pre-trial detention at the Jail. One of my primary job duties in the Division 9 Dispensary was passing out medication to detainees housed in the North and South Towers. My job duties in Cermak include admitting detainees to Cermak for medical care, conducting medical evaluations, and providing wound care to detainees that have sustained injuries. My job requires daily interactions with male detainees.

General Description of Harassment

3.   I have endured sexual harassment by male detainees. The detainees expose their penises, masturbate, and routinely make crude or sexual comments directed at me. Their comments include threats about finding me when they are released from the Jail. The comments and threats detainees make are sexually explicit and degrading.

Decl. Ex. 672

DocuSign Envelope ID: 51BBAE05-3DD4-47FF-9C87-21064E256720

4.   When I was assigned to the Division 9 Dispensary, where I worked for about one and one-half years, detainees exposed their penises and masturbated at me several times per week, everywhere that I had to work.

5.   When I was in the medication room in Division 9, where I passed out medication, detainees would walk right up to the window and pull their penises out or they would stand by the door and masturbate at me while staring at me. I saw numerous detainees pull out their penises and masturbate throughout the Jail— in the day room, in their cells with their penises sticking out of the chuckholes, in the showers, and on balconies of the tiers.

6.   I am currently in training for my new assignment in Cermak. The other women who work there have already warned me that the exposure of penises and masturbation by the detainees at female employees in Cermak is rampant there too.

7.   On a daily basis, detainees walk around with their hands in their pants, touching themselves, playing with their penises, under their clothes. That is a regular occurrence throughout the compound.

Specific Incidents of Exposure

8.   In approximately September 2018,  detainee P. walked out of his tier toward me holding his exposed  penis while I was in the medication room. He started to approach the window where I was passing out medication and said, "There's something in my dick." I was disgusted and asked the officer to  write him up and to press charges, but the officer who completed the paperwork did not even

Decl. Ex. 673

Plaintiffs 001319

mention that the detainee exposed his penis to me. The officer wrote it up as a medical issue because the detainee cut his arm and claimed to have stuck something in his penis. When I asked why he was not written up for exposing himself, I was told that his penis was not visible in the video. I pursued my complaint and the fact that the detainee wasn't even written up for the sexual harassment up the chain of command, but the detainee still was not charged. Later, I saw the detainee in the hallway, and he taunted me about not facing any consequences. I continued to follow up about pursuing my complaint and was told that the detainee was scheduled to be shipped to the Illinois Department of Corrections after his next court date, so nothing was going to happen to him. He still was never charged for exposing his penis to me.

9.   I also recall an incident that happened around December of 2017 on tier 2C. Detainee D. W. was up on the top floor of tier 2C with his penis out, masturbating and watching me. I reported the detainee to Officer Taylor. He gave the detainee verbal commands to stop. The detainee briefly stopped masturbating, but then continued to masturbate. Officer Taylor completed an incident report. I also reported this incident to a male sergeant, Sergeant Maglaya. I was never contacted about actually following through on the charges.

<u>Witnessing Harassment of Others</u>

10.   Detainees sexually harass other women at the Jail, including other female nurses. When I was assigned to the Division 9 Dispensary, if a detainee pulled

3

Plaintiffs 001320

out his penis or masturbated at one of the nurses, we would try to warn each other so that whoever had to pass medication next could try to mentally prepare themselves. For example, Nurse Smith, Nurse Lloyd, Nurse Welbon, and I have talked about incidents of detainee masturbation at us and how disgusting and scary it is.

## Sexual and Sexually Violent Comments

11. Detainees make vile, sexually explicit, and threatening comments to me every single day I am at work. Detainees have said things like, "When I get out, I'll be waiting for you by the gate," or, "I'll see you on the outside." Detainees have threatened to run into my car and block my ability to leave the parking lot. Detainees describe in graphic terms what they want to do to me sexually - "I want some of that pussy"; "This dick is for your pussy"; "I'll eat your pussy"; and "I know you suck good dick." These comments stick with me long after I hear them.

## Knowledge of Defendants

12. The sergeants and lieutenants on duty know that the detainees expose themselves and masturbate at me because I have complained on multiple occasions, and the supervisors on duty are notified. For example, Sergeant Velez (male) and Sergeant Maglaya (male) have been notified regarding incidents of masturbation I experienced, but nothing seems to make any difference.

4

Plaintiffs 001321

Incident Reports, Ineffectiveness of Complaining, and Discouragement

13.  As an employee of Cook County, I am not able to complete my own incident reports in the Jail's CCOMS computer system. When detainees sexually harass me, I report it to an officer on duty.  For example, Officer Willie Smith is an officer on duty that I notified when a masturbation incident occurred recently. The officers on duty are supposed to file an incident report, but I am never told whether they actually do or not. In my experience, male officers are generally nonchalant about the detainees' exposure and masturbation because it is not directed at them. I only find out if an incident report was completed if a Sheriff's Police investigator calls me and asks whether I want to press charges. When that happens, I always say yes. I have sought to press charges against several detainees (approximately four or five times). But after repeatedly saying "yes" I want to press charges, I have never received follow up after that.

14.  When I ask that  incident reports be written up or to press charges, sometimes I am asked whether I want an incident report written up or to press charges multiple times, even though I have already said yes.  That is discouraging to me because it is as if they are expecting me to change my mind so that they can avoid doing the paperwork. I feel pressure to just say "no" and let it go.

15.  I have also complained to my Charge Nurse multiple times about seeing penises, being masturbated at and other sexually explicit behavior. The nurses, including the supervisors, complain amongst ourselves. Some nurses have told me they are afraid to complain because they are concerned that they

5

will be viewed as troublemakers. They worry that, if they complain too much,

they will be moved to a less desirable job assignment.

Ineffectiveness of Steps Taken

16. The green jumpsuits that known masturbators are supposed to wear to prevent

exposure and masturbation are ineffective. The front is closed with Velcro and

detainees can open them all the way down to the crotch. I have seen detainees

with holes ripped in the crotch area of their jumpsuits. They tear up or modify

the jumpsuits in a number of different ways. This means that detainees are

still able to access their penises to expose themselves and masturbate. For

instance, Detainee D.W. had on a green jumpsuit when he masturbated at me

in December 2017. Every single detainee that has masturbated at me, with

just one exception, has done it while wearing a green jumpsuit.

Lack of Training

17. I have never received training from the Cook County Sheriff's Office regarding

how to address the masturbation or sexual harassment by male detainees, how

to decrease the opportunities to repeat the behavior, or how to respond if a

detainee grabs me or attacks me.

Impact on Job Performance

18. The sexual harassment changed the way I do my job. When I worked in the

Division 9 Dispensary, I felt a sense of doom every time I went to work. I was

constantly worried about what the detainees would do to me. I had hoped that

my new assignment at Cermak would be better, but so far I am learning that

6

Plaintiffs 001323

female employees can't escape the constant sexual harassment, and detainees exposing their penises and masturbating at us there either. The male detainees' conduct is degrading, disrespectful and disgusting. It makes me feel afraid, angry and violated.

Emotional Impact

19.   The sexual harassment has really caused me emotional anguish.. Because of it, work is that much more stressful. Even at home, I cannot get rid of the stress. I go home from work and complain to my significant other. It affects my mental health – I feel very depressed. There is enough to worry about regarding my safety working in a Jail. I should be able to make a living without being subjected to daily exposure to penises, aggressive masturbation, and disgusting sexual comments and threats to me.

Decl. Ex. 678

Plaintiffs 001324

DocuSign Envelope ID: 51BBAE05-3DD4-47FF-9C87-21064E256720

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

3/25/2019

Date

DocuSigned by:

Jan Sangster

A17365F4C1D14CE...

Signature

8

Plaintiffs 001325

# ELAINE SCOTT DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.    My name is Elaine Scott. I am a Correctional Officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately May of 2006. I have worked in various parts of the Jail over the years, but I am currently assigned to Division 6. I've worked in Division 6 for approximately ten years, but my assignments vary. For example, I have worked on the tier, in the Division 6 Dispensary, in the visiting cages, and in the lobby.

2.    As a Correctional Officer, I am responsible for the safety and security of detainees being held in pre-trial detention at the Jail, as well as maintaining order within the facility. My duties include releasing and returning detainees to their cells, supervising them in the dayroom, counting detainees, and escorting them to and from the dispensary, court, and other locations on the compound. In performing all my duties, I am required to interact with male detainees on a daily basis.

General Description of Harassment and Specific Incidents of Exposure

3.    I have been subjected to sexual harassment by male detainees including exposing their penises, masturbating, and routinely making crude or sexual comments. Detainees stand within view of the observation window and masturbate at me, stand or sit in the dayroom masturbating, with one leg over the balcony masturbating, stick their penises through the chuckholes, and

Decl. Ex. 680

DocuSign Envelope ID: E25A6A94-EDC6-48F5-9BBB-F4303B03B997

stand in their cells and masturbate. The detainees purposely masturbate when they know I am coming around to count them.

4.    When I was assigned to work on the tiers, until approximately two years ago, detainees pulled out their penises and masturbated at me all the time. They would stare into the observation window at me from the second floor with their legs spread and masturbating.

5.    I was assigned to the Division 6 Dispensary after that until around June of 2018. Detainees frequently fondled themselves and masturbated under their uniforms in the Dispensary. Since then, I have had various assignments, including working the tier to relieve other officers.

6.    I remember an incident that happened in around April of 2016, when I was assigned to the tier in Division 6. I was returning detainees from the dayroom back to their cells. Detainee D.B., whose cellmate I had to let back in, came to the door of his cell with his penis in his hand, flinging his penis back and forth at me, and masturbating. I ordered the detainee to stop, and he did not stop, and at the same time claimed that he wasn't doing anything. When I told him that he would receive a disciplinary ticket, he said, "What, you afraid of a little dick?" I complained to my male sergeant, Sergeant Strugielski, and wrote it up. A Sheriff's Police Investigator took both of our statements. The detainee claimed he did nothing wrong. I wanted to press charges, but as far as I know, no charges went forward.

Decl. Ex. 681

Plaintiffs 002297

7.   I know detainees sexually harass other female employees because we discuss it amongst ourselves.

8.   Detainees make explicit sexual comments, such as comments about my body, about once per week. Detainees also offer to take me on dates or to buy me things when they are released from the Jail.

<u>Knowledge of Defendants, Ineffectiveness of Complaining, and Discouragement</u>

9.   My lieutenants and sergeants know about the detainees' behavior toward me because I have complained. I have had various supervisors because their assignments fluctuate, similar to the way my assignments change from time to time. When I complain about detainees who masturbate at me from their cells, including when they stick their penises out of the chuckholes, I have been told that "it's their privilege to do in their cell," and "it's just a part of the job."

10.   I have written around twenty-five to thirty incident reports about detainee indecent exposure and masturbation. On several occasions Sheriff's Police Investigators came to speak with me and asked if I wanted to press charges. I always said yes, that I very much wanted to press criminal charges, but nothing happened after that. They did not follow up, and I didn't receive notice of any resolutions. I have also verbally complained numerous times.

<u>Lack of Training</u>

11.   I have never received training from the Cook County Sheriff's Office specifically regarding how to address the masturbation or sexual harassment

3

by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

## Impact on Job Performance

12.     The sexual harassment has changed the way I do my job. Knowing that a detainee may pull out his penis and masturbate at me at any moment, makes me very apprehensive around them. I also wear loose fitting clothing and try not to do anything to make myself stick out, such as wear perform or get my nails done, in order to avoid drawing attention from the detainees. I worry about what a detainee might do to me, and it makes me feel unsafe.

## Emotional Impact

13.     The sexual harassment has a profound effect on me emotionally. It is hard to transition from work back to the outside world. The constant sexual harassment from detainees at work affects my perception of my physical appearance outside of work because detainees have made me overly conscious of my sexuality. I don't like dressing up because I am so used to constantly being afraid to bring attention to myself. It really affects my personal life because I stay in the house – I don't go out on dates, or to events or other places to socialize. I don't feel attractive to my husband because of what I go through at work. I have been married for more than thirty years, and the impact on my marriage is devastating. The Sheriff's Office has not done enough to address this issue in order to make the work environment safe for me and my fellow female employees.

4

Plaintiffs 002299

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/9/2019
_____
Date

DocuSigned by:

*Elaine Scott*
C95837F43EEB42E...
_____
Signature

5

Plaintiffs 002300

## PATRICE SCOTT DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Patrice Scott. I am a Court Services Deputy at the Leighton Courthouse ("Courthouse"). I have worked at the Courthouse since approximately August 29, 1996. I am currently assigned to Courtroom 304, where I have worked for about a year. I have also been assigned to Courtrooms 204, 307, and 504. In addition to being assigned to individual courtrooms, I have to work the front door of the courthouse on a rotational basis and cover for colleagues in other courtrooms as needed.

2. As a Court Services Deputy at the Courthouse, I am responsible for the safety and security of individuals in the courtroom, including detainees, attorneys, courtroom personnel, and civilians. For example, my job duties include providing security in courtrooms and at the building entry, transporting detainees between the bridge and the courtroom, securing detainees coming to court and during the court process, and keeping track of the detainee's court dates and paperwork. Occasionally, I also have to take a defendant into custody if the court remands them. In all of these assignments, my job has required me to have interactions with male detainees on a daily basis. I usually work with a partner, who is almost always male.

<u>General Description of Harassment</u>

3.  During my employment at the Leighton Courthouse, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced detainees exposing their penises to me, male detainees purposefully masturbating at me or in front of me, and vulgar comments and name calling quite often.

<u>Specific Incidents of Exposure and Harassment</u>

4.  I most frequently see detainees masturbating with their penises exposed while they are in the lockup behind my courtroom waiting for court. The detainees often keep their hands in front of their pants, and when I see them, they are either already masturbating or they start when they see me. They will hover around the gate that is across from the courtroom door, waiting for a female to come through so they can start masturbating or making lewd comments, while touching or exposing their penises.

5.  Usually there are about 10 detainees in the bullpen at a time, but sometimes we combine bullpens with courtroom 303. When that happens, there can be up to 25 male detainees in the bullpen. It's scary, because they all crowd together with their hands in their pants, touching or rubbing their penises. I don't know many of these detainees from the other courtroom and am not sure what they are capable of.

6.  Sometimes detainees stand in the bullpen with their penis out, facing the door to the courtroom, masturbating. I once walked back to the bullpen area

2

Plaintiffs 002302

to see a detainee doing this, and as soon as he saw me he started swearing at me, saying he wanted to fuck the shit out of me.

Witnessing Harassment of Others

7. I have seen other women who work in other positions experiencing the same or similar sexual harassment throughout the Leighton Courthouse. Among other things, I've witnessed detainees masturbating in the lockup at female attorneys, including Public Defender Tammi Ford Sanderson.

8. I have also heard that other female deputies have seen detainees masturbating while walking from receiving to the courtroom lockups.

Sexual and Sexually Violent Comments

9. I hear crude, violent, or sexual comments from male detainees directed at me all the time. They call me names. Most often they call me a bitch, but they also comment about my body. For example, they will say things like, "I will see you on the outside, you skinny bitch, and fuck you up." They will tell me they want to fuck the shit out of me while touching their penis. They threaten to "buck up" at me, which I think means they are getting ready to assault me.

Knowledge of Defendants

10. My supervisors know about the detainees' behavior and their sexual comments towards me and other women. Everyone knows about it. I know this is true because when it was really bad, before the changes described below were made, we talked about it in Roll Call on numerous occasions.

3

Decl. Ex. 687

11.     Prior to the preliminary injunction, supervisors made no effort to discipline the detainees or set consequences for the sexual behavior toward women. At that time, the masturbation and exposure happened all of the time, but my supervisors didn't do anything. There was an overall belief that there wasn't much a Court Sergeant could do about a detainee. Their attitude was that the detainees' behavior was the responsibility of the Jail supervisors, not the Court supervisors.

12.     Over the last year, there have been some changes that have affected the number of masturbation and exposure incidents in the Courthouse. Now, the masturbators in green jumpsuits are supposed to just come up for their court appearance and go right back down. Also, when a detainee starts masturbating or pulls his penis out, we are allowed to give detainees disciplinary tickets.

13.     These changes help, but have not solved the problem. Almost every day, somewhere in the Courthouse, a detainee sexually harasses a female deputy in some way. The verbal harassment has continued unabated.

        <u>Ineffectiveness of Writing Incident Reports and/or Complaints</u>

14.     I complained about masturbating and exposure by detainees in Roll Call, but nothing really changed until recently, when the Sheriff's Office implemented the changes above.

15.     Until recently, we did not have access to CCOMS and I couldn't file incident reports directly into the system. Even if I could have, I didn't think it would

4

Plaintiffs 002304

make any difference.  My supervisors acted like there was not anything that could be done about it.

16.    I regularly hear detainees say they don't give a fuck if they get written up. Some say they'll gladly go in the hole.  They will just take whatever consequences, because the consequences don't matter to them.

Ineffectiveness of Steps taken

17.    The known masturbators are supposed to wear green jumpsuits now.  In addition, when they are transported to court, they are required to be cuffed in the back.  The cuffing, when it is actually done properly, is more of a deterrent than the jumpsuit itself.  The detainees often wear the green jumpsuits unbuttoned or open and folded down to their waist.

Lack of Training

18.    I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, or how to respond if a detainee threatens to rape me.  We have had sexual harassment training but it did not pertain at all to detainees.

Impact on Job Performance

19.    The sexual harassment changed the way I do my job.  After the detainee in the bullpen told me he would fuck the shit out of me, I tried not to go back there anymore.  I would always ask my partner to go back there to get the detainees.  This put an extra burden on my partner.  If I had to be the one to go back there, I would yell the detainees name from the doorway rather than

5

DocuSign Envelope ID: 8E5D528D-68FA-4AA7-9A46-97C95AC4CD58

try to get close and figure out who's turn it was. This made it harder for me to help them if they had questions or concerns.

20. The behavior by male detainees toward me is demeaning, harassing, threatening, and causes me fear for my safety. I don't appreciate being treated this way.

Emotional Impact

21. As a result of the constant sexual harassment, I have suffered severe emotional distress. Sometimes I just feel like a piece of meat. I am afraid to go into certain parts of the Courthouse. I try to leave work at work, but I get easily offended when I am outside of work. I am overly cautious.

22. The harassment and masturbation at work makes working there extremely stressful. When I hear detainees making lewd comments at me, I feel scared, but I feel like I have to just take it because I need to do my job, because I need my job.

Decl. Ex. 690

Plaintiffs 002306

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/4/2019
_____

Date

DocuSigned by:

_____
68E9CE1A4205440...

Signature

7

Plaintiffs 002307

## Declaration of Wendy Shadbar

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Wendy Shadbar. I have worked at the Cook County Jail since May 31, 2005. I began working at the Jail as a correctional officer, and I was promoted to Sergeant in 2011.

2. During my employment at the Jail as a correctional officer, I worked in Division 10 and Cermak. Since becoming a Sergeant, I have worked in Division 4, Division 9 from November 2011 until approximately 2016. I have worked in Division 11 since May 2016. When I worked in Division 9, I would also escort detainees to Cermak and Receiving.

3. I am currently working the 11 pm to 7 am shift (a.k.a. "midnights"). Typically, there are 1-5 Sergeants working in Division 11 during that shift. There are approximately 30-45 officers on a shift.

4. In all of these assignments, except for Division 4, my job has required me to have interactions with male detainees on a daily basis. Even when I worked in Division 4, I would still have to leave the division to transfer female detainees to Cermak or receiving, deliver paperwork or pick up supplies in other divisions, approximately once or twice a week. On those occasions, I would walk past male detainees and they would verbally sexually harass me.

5. During my employment at the Jail, I have experienced sexual harassment by male detainees, which they direct at me and other female employees. I experienced verbal sexual harassment every single day when I worked in Division 9. Detainees would make comments about my appearance, call me a "bitch," say "look at that ass," "suck my dick," and other sexual comments. In Division 11, detainees have called me a "bitch" and other sexist epithets on a few occasions.

6. Approximately every week or every other week, I will see a CCOMS report about other women being masturbated to or threats of violence by detainees coupled with specifically sexist comments to female correctional officers (for example, "You're a fat bitch," or other things that wouldn't be said to a male officer). I have experienced physical resistance and/or violence and assault by detainees while they yell sexual and/or sexist language at me (for example, Detainee G.S. said to me, "I'm not moving, bitch. Suck my dick!" on October 17, 2014 when I was attempting to move him. Incident Report No. Redacted.)

Decl. Ex. 692

Plaintiffs 002308

7. When I worked in Division 9, I witnessed male detainees exposing their penises through the chuckhole at least once per week.

8. In the paragraphs below, I describe some examples of the incidents of sexual harassment that I have experienced.

9. For example, in 2016, a violent incident between detainees in Division 9. Once the detainees were subdued, I spoke to one of the detainees, O.G., and he said, "Why are you talking to me, bitch? I'm gonna get you in the world. I'm gonna kill you," and "I'm gonna rape you." He also said, "How many correctional officers' dicks have you sucked?" Although another officer wrote an incident report about the fight and other detainee misconduct, I filled out a witness statement form to accompany the report and included the language that the detainee said to me. See Exhibit A to this declaration.

10. For example, on approximately November 1, 2014, in Division 9, on one of the segregation tiers, male correctional officers called me for assistance because Detainee S.M. would not return his breakfast tray. When I approached the detainee, I asked him to return the tray. The detainee called me a "bitch" and spit in my face. I feel like he did this because I am a woman. I notified the shift commander, Lieutenant Matanic. Lieutenant Matanic reported the incident to Superintendent Frank Arce. Lieutenant Matanic reported to me that Superintendent Arce was not going to address the incident or move the detainee to a different area of the jail. He also stated that the message from Superintendent Arce was something to the effect of, "If you try to take him out of his cell, I will be seeing you in OPR" (the office of professional review). I filed an incident report regarding the incident. Incident Report No. ▮▮▮▮▮▮ ▮▮▮▮▮▮.

11. Shortly after the incident, I received emails and a phone call from an investigator. He asked if I wanted to press charges, and I said yes. I gave the investigator my statement. The investigator also stated that he would contact the other correctional officers who witnessed the incident to obtain statements from them.

12. In an email exchange with the investigator regarding the incident, the investigator said that the video which had been sent to him by the video review unit did not include the incident. So I knew that the investigator was not provided with the correct video footage to review the incident. I do not know if he was ever able to review the video footage of the incident.

13. Detainee S.M. was not moved. I continued to work and see S.M. whenever I worked on his tier, which was approximately every week.

2

Plaintiffs 002309

14. On January 28, 2019, over four years later, I received an email from a State's Attorney stating something to the effect that the individual cases that officers were bringing against him were not going to be pursued because he was found guilty but pled mentally ill.

15. On approximately September 6, 2013, in the Division 9 segregation unit, I heard a detainee loudly banging on door of his cell. When I looked to see what was happening, I saw Detainee V.R. with his penis out, masturbating. I immediately wrote an incident report on this (Incident Report No. Redacted). When I looked that detainee up in the computer system, I saw about five other incident reports where V.R. had engaged in indecent exposure and/or masturbation toward female staff.

16. I emailed my supervisors, including Commander Frank Arce and Superintendent Victor Thomas, conveying that this incident was V.R.'s sixth documented incident of exposure and masturbation toward female staff. They did not respond to my email.

17. Approximately the next day, I contacted the Criminal Investigation Division of Cook County Jail to notify them that the detainee had a history of masturbation and indecent exposure and that I wished to press criminal charges. I knew to contact CIID because CIID representatives had told us during a supervisor meeting that we should reach out to them. I also knew this by speaking to the male officers in Division 9. They informed me that if a male officer or male detainee is attacked and injured by an detainee, CIID or Sheriff's Police Investigators typically come to the building that same day to do an investigation. CIID let me know that they would pass the information to a Sheriff's Police investigator.

18. I was then contacted by a Sheriff's Police investigator. The investigator, Mr. Plybon, tried to talk me out of pressing charges. He said something like, "Nothing will happen to him" (referring to the detainee) and "The State's Attorney may not even approve the charges." I made clear that it was my right to press charges and that I wanted to move forward with it. Because I insisted, the investigator took my statement.

19. Although V.R.'s time in disciplinary segregation was extended as a result of my report, I still had to see him because I was frequently required to work in disciplinary segregation. Additionally, due to overcrowding in disciplinary segregation, V.R. was also moved to other parts of Division 9, so I continued to see him in other parts of Division 9 after he was moved out of disciplinary segregation.

3

Plaintiffs 002310

20. After hearing nothing from CCSO, approximately four months later, I received a subpoena to attend the trial regarding the charges I had pressed against Detainee V.R. Despite the fact that I told the prosecutors that I had never been a part of a criminal trial and wanted advice on the process, they did not give me any preparation or advice on the court procedure. Nonetheless, I attended the trial on February 16, 2014 and provided the prosecutors with my incident report, as well as all other incident reports from other officers regarding this detainee. I don't believe the prosecutors even read the documents I gave them. I was asked to take the stand in court, and a prosecutor asked me what happened. I described the incident to the prosecutor. The public defender then interrogated me harshly, doubting my ability to properly identify which detainee was masturbating when there were two detainees in the cell. Throughout the questioning, the prosecutor sat quietly, not objecting to anything the public defender was asking. It was an overwhelmingly negative experience for me. I did not feel supported by my employer or by the prosecutor. It seemed like CCSO and the prosecutor purposefully did not take the case seriously in order to discourage me from bringing similar complaints in the future.

21. Ultimately, the detainee was found not guilty. After the hearing, the clerks and other people in the court's office apologized to me, saying words to the effect of, "We're so sorry, what were they thinking?" referring to the sloppy prosecution of the case.

22. After the trial, I still had to have contact with Detainee V.R. on a regular basis because CCSO allowed him to remain in the areas of the Jail where I worked. Knowing he was there every day made me feel disgusted and stressed. It also made me feel like my safety, as well as other officers' safety, was inconsequential to the department. I felt powerless to make a difference for myself. If I couldn't keep myself safe, how was I supposed to keep the staff that I supervise safe?

23. On multiple occasions after the trial, I looked up the detainee's disciplinary status and saw reports that he was continuing to masturbate to other female staff, but CCSO was doing nothing to stop it.

24. In the entire time that I have worked at the Jail, the administration has never asked me how I am doing or if there would be a better assignment for my health and well-being to alleviate the sexual harassment. In particular, none of the management asked about my safety and security when the trial was pending against Detainee V.R. or after the trial was over.

25. I worked at the Jail before Sheriff Tom Dart became the Cook County Sheriff. From my experience, when I was a correctional officer under Sheriff

4

Plaintiffs 002311

Sheehan, masturbation incidents were dealt with more swiftly. From what I recall, a masturbating detainee was usually moved away from the area where the victim female officer worked, and the female officer was not likely to see the detainee again. Female officers seemed more comfortable reporting that a problematic detainee was in the tier she was working and requesting that the detainee be immediately moved. Also, the Hearing Board was previously made up of individuals who worked in the jail, knew the rules and procedures, had contact with detainees, and generally seemed to understand the Jail.

26. Eventually, I stopped reporting the sexual harassment that detainees were subjecting me to because the incident reports were futile, and even when I went as far as going to court, it was such a negative experience.

27. I know that the female correctional officers are receiving unwanted sexual attention, indecent exposure, and sexual threats from detainees because they have approached me to report such incidents and ask for help. It hurts me immensely to have correctional officers come to me and say "help me, what do I do?" and to feel like my hands are tied by CCSO because it does nothing. Even though I am frustrated, I advise female correctional officers to write an incident report and press charges.

28. From what I understand, for a few years until around the end of 2017, the policy was that I was not allowed to move a masturbating detainee to another location unless and until the detainee was served with a disciplinary ticket, was seen in front of the hearing board, and the hearing board found him guilty. We were only allowed to immediately move a detainee if he physically assaulted an officer or another detainee. If I were to move a masturbating detainee before his case was heard by the hearing board, that would have violated policy and his disciplinary ticket would have likely been thrown out. In the meantime, the victim female officer would have to see the detainee every day with the detainee knowing that the female officer wrote him up. If the detainee were found to be "not guilty," the detainees would often taunt the female officer something and say something like, "I beat the ticket!" (meaning he was found not guilty).

29. It is standard procedure that if a correctional officer files an incident report on an detainee, either the correctional officer or the supervisor on duty can indicate on the incident report whether or not the correctional officer wants to press charges. However, multiple correctional officers have reported to me that some supervisors will not include in the incident report that the correctional officer wants to press charges. In such event, I always advise the correctional officer that they do have a right to press charges and can go to the Criminal Investigations Division directly.

5

Plaintiffs 002312

30. Multiple female correctional officers have told me they spoke to Sheriff's Police Investigators who discouraged them from pressing charges, told them that nothing would happen to the detainee, that the State's Attorney probably wouldn't take the charge anyway, and that they would not be paid overtime for the time they spent in court. One female officer, who I cannot recall, told me that after she wanted to press charges for masturbation or indecent exposure, a Sheriff's Police Investigator told her that the investigators had "more important things to do" because they were investigating murders. I do not know if she ended up pressing charges.

31. The lack of response by administration to this rampant sexual harassment has destroyed my career. Before Sheriff Dart, I had great attendance and glowing recommendations and reviews from my supervisors. I was enthusiastic about my job, and as a result, I became a Sergeant in just 6 years. I was even accepted onto the Emergency Response Team. I firmly believe I was on track to be a Lieutenant or higher.

32. I do not recall the sexual harassment being as big of a problem before Sheriff Dart. I think that once the policies of Sheriff Dart were implemented, the sexual harassment in Division 9 became out of control and the administration did nothing to stop it. My stress level went through the roof due to the sexual harassment and the lack of support from the administration. I began suffering from insomnia, migraines, nightmares, nausea, and severe stress. The stress affected my attendance because I needed to take time off for my health and well-being. Once I began taking FMLA leave to care for my husband, the Emergency Response Team stopped contacting me. Because I have taken time off, and the Jail weighs attendance heavily, I am concerned that I may not ever be considered for promotion or get special training again or special assignments again. I worry that my career is essentially over.

_____

Wendy Shadbar

April 19, 2019

_____

Date

6

Plaintiffs 002313

# Exhibit A

Plaintiffs 002314



## COOK COUNTY SHERIFF'S OFFICE
RESPONSE TO RESISTANCE / USE OF FORCE

## DATA COLLECTION PACKET
# WITNESS STATEMENT FORM

| C.R. NUMBER | INCIDENT NUMBER |
|---|---|
| | DIV9-2016-45 |

| WITNESS NAME (Last, First, M.I.): SHADBAR, W | ADDRESS / CITY / STATE / ZIP: | ☐ D.O.C. INMATE |
|---|---|---|

| D.O.B.: | HOME PHONE: | CELL PHONE: |
|---|---|---|

| JDE NUMBER: 771519 | STAR NUMBER: | DEPARTMENT: ☑ D.O.C. ☐ COURTS | ASSIGNMENT: | PHONE NUMBER: (773) 674-7100 | ☐ D.O.C. INMATE |
|---|---|---|---|---|---|

| WITNESS IN CUSTODY: ☑ NO ☐ YES - Inmate Number: | INSTITUTION: | SID NUMBER: | IR NUMBER: | CB NUMBER: |
|---|---|---|---|---|

### WITNESS - STATEMENT REGARDING THE USE OF FORCE

☐ *REFUSED TO GIVE STATEMENT*
☐ *CONDUCTED BY CIID/ISU/SHERIFF'S POLICE INVESTIGATORS (SPI'S)*
☐ *UNABLE TO INTERVIEW (SPECIFY REASON BELOW)*
☐ *STATEMENT TAKEN ON VIDEO - INVENTORY NUMBER:* _____

KNOWINGLY PROVIDING FALSE INFORMATION OR MAKING FALSE STATEMENTS TO A SWORN CCSO STAFF MEMBER MAY RESULT IN YOU BEING IN VIOLATION OF STATE STATUTE 720 ILCS 5/26-1 a-4 (FALSIFYING A POLICE REPORT) AND IF CURRENTLY INCARCERATED IN CCDOC, YOU MAY ALSO BE SUBJECT TO DISCIPLINARY ACTION.
_____ (WITNESS'S INITIALS).

I give this statement of my own free will. No promises, threats or coercion of any kind have been made to me by any INDIVIDUAL OR MEMBER OF THE Cook County Sheriff's DEPARTMENT. _____ (WITNESS'S INITIALS)

R/SGT. SHADBAR #3172 WAS NOTIFIED VIA RADIO OF A "10-10 ON 1E". R/SGT. RESPONDED WITH SEVERAL DIVISION 9 OFFICERS. R/SGT. WITNESSED DETAINEES ███████████████ AND ███████ ████████████LOWER THEMSELVES DOWN FROM THE UPPER LEVEL DOWN TO THE TABLES BELOW. ALL DETAINEES WERE GIVEN ORDERS TO GET DOWN ON THE GROUND. DETAINEE ██████STAYED ON THE TABLE AND WAS COMPLIANT WITH ORDERS. DETAINEE ██████IGNORED ORDERS TO STAY ON THE GROUND AND TO NOT RESIST. OFFICERS BOND, GONZALEZ, AND VALADEZ SECURED DETAINEE WITH FIRM GRIPS AND ESCORTED DETAINEE OFF THE TIER TO THE 1ST FLOOR CORE AREA.
R/SGT. NOTIFIED SUPERVISORS AND CERMAK, REQUESTING PARAMEDICS. PARAMEDICS DAVIS AND CROWLEY RESPONDED AT APPROXIMATELY 0240 HOURS. DETAINEE ██████WAS MOVED OFF THE TIER BY PARAMEDICS AND ESCORTED TO CERMAK VIA GURNEE WITH OFFICER KIBLER.
DETAINEE ██████WAS ESCORTED TO CERMAK WITH PARAMEDICS VIA WHEELCHAIR WITH OFFICER TAMAYO. INTERAGENCY HEALTH INQUIRY FORMS SENT TO CERMAK.

ALSO NOTE THAT, R/SGT. ATTEMPTED TO INTERVIEW DETAINEE, WHEN DETAINEE ██████STATED TO R/SGT. "WHY ARE YOU TALKING TO ME, BITCH? I'M GONNA GET YOU IN THE WORLD. I'M GONNA KILL YOU. GET A '45. I'M GONNA RAPE YOU." THIS STATEMENT WAS WITNESSED BY OFFICERS BOND, GONZALEZ, VALADEZ, PATZ, TAMAYO, OVERSTREET, KIBLER, AND METCALF. DETAINEE THEN CONTINUED BY SAYING "HOW MANY CORRECTIONAL OFFICER'S DICKS HAVE YOU SUCKED?" ALSO SEE FOOTAGE AND AUDIO CAPTURED ON TASER CAMERA #3845.

| WITNESS SIGNATURE: | DATE: | TIME: |
|---|---|---|

### DEPARTMENT USE ONLY

| INTERVIEWING SUPERVISOR'S NAME/STAR (PRINT): | SIGNATURE: | DATE: | TIME: |
|---|---|---|---|
| OFFICER/SUPERVISOR WHO WITNESSED INTERVIEW - NAME/STAR (PRINT): | SIGNATURE: | DATE: | TIME: |

(FCN-66)(NOV 13)

PAGE 1 OF 1

Decl. Ex. 699

Plaintiffs 002315

# CASSANDRA SHELTON DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Cassandra Shelton. I am a Correctional Officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately April of 2000. I have worked in various parts of the Jail, including: Receiving (RTC), Division 5, Division 4, Division 9 and Division 2. I am currently assigned to RTC and have been in this assignment for approximately two years.

2. As a Correctional Officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention and maintaining order at the correctional facility. For example, my job duties have included, but are not limited to: counting detainees, escorting detainees to and from divisions and the Courthouse, and monitoring detainees while they are held in bullpens. In performing all of these duties, my job has required me to have interactions with male detainees daily.

General Description of Harassment

3. During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis, including regular comments about how they want to sexually assault me.

Decl. Ex. 700         Plaintiffs 001235_REDACTED

Plaintiffs 001235

4.    In the last two years, I have been subjected to the exposure of penises and/or masturbation by detainees approximately once a week, and sometimes more frequently, but it happens so often that it is hard for me to estimate.

Specific Incidents of Exposure

5.    I most frequently witness detainees masturbating while they are being transported to their housing divisions, or in the bullpens on the bridge while they are waiting to be called for court. Detainees have frequently exposed their penises and masturbated at me while I was sitting at my desk trying to fill out paperwork. They would walk up to the window of the Division 9 bullpen, knock on the window to get my attention, and when I looked, they would expose their penises and masturbate.

6.    I recall an incident in 2018 involving detainee Redacted. Redacted, who was being escorted by Officer Baluk with two other detainees, approached Post O where I was assigned. While wearing an open green jumpsuit and handcuffed from behind, Redacted maneuvered his arm from around his back and exposed his penis. I told Officer Baluk that Redacted had exposed his penis to me. Officer Baluk responded dismissively but closed the front of Redacted uniform. I asked for Redacted I.D. in order to write him up, and Officer Baluk retrieved it. Redacted stated, "I don't care lady it's not going to do nothing."

7.    I remember another occasion, in 2017, while I was waiting for female detainees to return from Bond Court on the female bridge with Officer Crawford-Alexander-Moreci and Officer Lopez. Detainee Redacted began

2

walking toward the female bridge door. While wearing a green jumpsuit, Washington exposed his penis to us and began masturbating and making lewd sexual comments as he continued walking toward us. The detainee ignored an order from Officer Crawford-Alexander-Moreci to stop.

8. In August of 2016, I reported two incidents of detainee masturbation that I experienced within a seven-day timeframe. Both incidents involved detainees masturbating at me from the Division 9 bullpen while I was sitting at my desk trying to perform my duties. Both detainees refused my orders to stop masturbating and merely smiled and continued masturbating when I said I would write them up if they didn't stop. One of the detainees, Redacted, even responded by telling me to make sure that I pressed charges so that he could leave Division 9 to attend court.

## Witnessing Harassment of Others

9. I know that other women who work in the Jail experience the same or similar sexual harassment throughout the Jail. In addition to the example regarding Redacted exposing himself to me and my coworkers near the female bridge door, I have seen male detainees in green jumpsuits with their penises exposed, while they were being escorted by female correctional officers.

## Sexual and Sexually Violent Comments

10. I hear crude or sexual comments from male detainees directed at me frequently, both while they expose their penises and masturbate and at other times. For example, detainees with their penises exposed have made

3

comments, such as, "Ain't nothing little about me—I can put this inside you and show you," among other things.

Knowledge of Defendants

11.  My supervisors know about the detainees' behavior and their sexual comments towards me and other women. Everyone knows about it. My female co-workers and I constantly discuss it during roll call. I have reported to my supervisors that detainees exposed themselves and masturbated in front of me on several occasions. Another way that supervisors know about the detainees' behavior is because they review the camera footage when we file incident reports regarding exposure and masturbation.

12.  Supervisors make no real effort to discipline the detainees or set meaningful consequences for the sexual behavior toward women.

Incident Reports and/or Complaints

13.  I have verbally complained, written incident reports, and filed charges about the detainees' sexual misconduct directed at me at least three times. I wrote an incident report and filed a criminal complaint against ███████ in 2017 and ███████ in 2018. I also sought to press criminal charges for public indecency against Detainees ███████ and ███████, but never heard anything.

14.  Additionally, I wrote an incident report and filed criminal charges against detainee ███████. On August 9, 2016, I was assigned to male holding when detainee ███████, who was sitting in the corner of the Division 9 bullpen,

4

was stroking himself. He kept banging the glass to try to get my attention so I could see. After writing him up and pressing criminal charges, I actually went to court for his hearing, but he received no real consequences. He was given time considered served.

## Ineffectiveness of Complaining and Discouragement

15.    Incident reports are ineffective because the detainees know that the Cook County Sheriff's Office imposes no real consequences for masturbating at women. Detainees know that my female colleagues and I cannot defend ourselves because people have been fired or disciplined for defending themselves against detainees' sexual harassment.

## Ineffectiveness of Steps Taken

16.    The few steps that have been taken to address the harassment have been mostly ineffective. For example, although known masturbators are supposed to wear green jumpsuits now, the jumpsuits do not prevent masturbation. The front is closed with Velcro; detainees walk around with their jumpsuits open and they can easily access their penises. Also, detainees sometimes poke holes in the green jumpsuits that they use to expose their penises. For the last six months or so, detainees in green jumpsuits are supposed to be held in a separate bullpen. It doesn't matter; they continue to expose themselves and masturbate.

Plaintiffs 001239_REDACTED

Plaintiffs 001239

<u>Lack of Training</u>

17.    I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me. I have not received adequate training to deal with the male detainees' behavior.

<u>Impact on Job Performance</u>

18.    The sexual harassment changed the way I do my job. For example, I try to avoid making eye contact with male detainees. I try not to interact unnecessarily with male detainees. I am more cautious when anyone calls my name because, so many times, I have responded only to have a male detainee expose his penis to me.

19.    In general, I look down and try not to look in the direction of male detainees to avoid even making them think I am looking at them. That affects my ability to make the facility safe and secure.

20.    The behavior by male detainees toward me is unwelcome, offensive, degrading, humiliating, inappropriate, disrespectful and causes me to fear for my safety. I am fearful that I will be trapped with one or more inmates during an inmate transfer and raped.

21.    During every work day at the Jail, I experienced anxiety over potential harassment and exposure. Even if I was not the direct target of detainees' sexually inappropriate behavior on a given day, my female coworkers and I

DocuSign Envelope ID: E1D94296-912C-4C03-9E07-7FF1527FDEBC

expected that at least one of us would be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse. I think it happened to someone every day. I knew I might be sexually harassed or hear about a female coworker being harassed when I walked through the compound to my assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift. This caused constant stress and made it more difficult for me to focus on my job of keeping everyone at the Jail safe.

Emotional Impact

22.    As a result of the constant sexual harassment, I have suffered severe emotional distress. The harassment and masturbation at the Jail makes working there extremely stressful. In my personal life, it also makes me wary with men I do not know. As a result, I have experienced increased stress and anxiety, which affects my health.

Plaintiffs 001241_REDACTED

Plaintiffs 001241

DocuSign Envelope ID: E1D94296-912C-4C03-9E07-7FF1527FDEBC

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

2/1/2019
_____
Date

DocuSigned by:

_Cassandra Shelton_
050BBC9FD445457...
_____
Signature

8

## KELLY SHIELDS' DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.     My name is Kelly Shields. I am a Deputy Sheriff in Courtroom Services assigned to the Leighton Criminal Court Building. I have been employed in that capacity since approximately 2003. My previous assignments have included Courtroom 404, Courtroom 308, and Courtroom 700. I have also worked as a floater, where I go to any courtroom that needs assistance. I am currently assigned to Courtroom 402 and have been working there approximately two or three years.

2.     As a Courtroom Deputy, I am responsible for the safety and security of detainees being held in holding cells behind my assigned courtroom and attorneys who consult with the detainees. I am also responsible for the safety and security of individuals in the courtroom, including courtroom personnel and civilians. For example, my job duties include, but are not limited to: transporting detainees to and from court, securing detainees coming to court and during the court process and monitoring detainees who are in the holding cells behind the courtroom. In all of these assignments, my job has required me to interact with male detainees on a daily basis.

General Description of Harassment

3.     During my employment as a Courtroom Deputy, I have endured sexual harassment by male detainees, which they direct at me and at other female

employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis.

<u>Specific Incidents of Exposure</u>

4.    I most frequently witness detainees masturbating, with their penises exposed, while they are in lockup areas behind the courtrooms waiting for their cases to be called and on the bridge.

5.    For example, on or about April 12, 2016, detainee **[Redacted]**, while in the lockup area behind Courtroom 402, pulled out his penis and began to masturbate in front of me while I was transporting other detainees to and from the courtroom.

6.    Similarly, on or about August 10, 2016, detainee **[Redacted]**, while in the lockup area behind one of the courtrooms on floor 4 of the courthouse, exposed his penis and began to masturbate in front of me while I was transporting other detainees to court.

7.    As another example, on or about June 13, 2017, detainee **[Redacted]**, while standing on the bridge near the north side prisoner elevator waiting to be transported to court, exposed himself and began masturbating at me.

<u>Witnessing Harassment of Others</u>

8.    I have seen other female employees experiencing the same or similar sexual harassment throughout the Leighton Courthouse. For example, I've witnessed detainees masturbating at other Courtroom Deputies and attorneys. On or

about October 19, 2016, I witnessed detainee ███████ expose his penis and masturbate in front of Attorney Alana M. DeLeon in the lockup behind Courtroom 402.

9. As another example, on or about October 17, 2017 in the lockup behind Courtroom 402, detainee ███████ pulled out his penis and began masturbating, while staring directly at Assistant Public Defender Coryn Steinfeld.

## Sexual and Sexually Violent Comments

10. I hear crude or sexual comments from male detainees directed at me almost every day regarding my physical appearance.

## Knowledge of Defendants

11. My supervisors know about the male detainees' behavior and their sexual comments towards me and other women. Everyone knows about it. For example, Sgt. Hunter and Sgt. King-Griffin know about the detainees' behavior because they have signed off on many of my incident reports.

12. In many cases, jail supervisors make no real effort to discipline the detainees or set meaningful consequences for the sexual behavior toward women.

## Incident Reports and/or Complaints

13. To the best of my recollection, I have filed approximately six or seven inmate disciplinary reports relating to detainees' sexual misconduct. For example, I filed a disciplinary report against ███████, but I understand that no

discipline was issued because the ticket expired. I also filed a disciplinary report and criminal charges against Redacted .

14. Additionally, I filed two disciplinary reports against Redacted for incidents that took place in October 2016 and October 2017, and a report against Redacted in 2017.

15. I do not know whether Redacted, Redacte , or Redacted were actually subject to the full recommended discipline.

16. To the best of my recollection, I have further sought to press criminal charges against detainees on approximately 5 or 6 different occasions. In most instances, I never heard anything back regarding any charges.

17. Detainees who have been identified as masturbators are supposed to wear green jumpsuits to prevent access to their penises. The green jumpsuits are ineffective because the detainees wear them open in front.

## Lack of Training

18. I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

## Impact on Job Performance

19. The sexual harassment changed the way I do my job. For example, I avoid making any eye contact with certain detainees or looking in their direction.

4

20.   The behavior by male detainees toward me is unwelcome, offensive, harassing, humiliating, threatening and caused me to fear for my safety. Sometimes I feel like the Sheriff's Office does not have control of the detainees.

21.   I feel as though the Cook County Sheriff's Office does not support female Courtroom Services staff and that they are more concerned with male detainees' well-being than they are with the well-being of female employees like me.

22.   During every work day at the Courthouse, I experience anxiety over potential harassment and exposure.  Even if I am not the direct target of detainees' sexually inappropriate behavior on a given day, my female coworkers and I expect that at least one of us will be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse.  I think it happens to someone every day.  I know I might be sexually harassed or hear about a female coworker being harassed when I walk through the compound to my assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift.  This causes constant stress and makes it more difficult for me to focus on my job of keeping everyone at the Courthouse safe.

Emotional Impact

23.   As a result of the constant sexual harassment, I have suffered severe emotional distress. The harassment and masturbation at the Courthouse has made working there extremely stressful. It affects my mental health—I have

5

experienced depression and anxiety as a result of the male detainees' behavior. As a result of the depression and anxiety, I have sought out treatment from mental health professionals. I am also now less trusting of men I don't know because of the male detainees' behavior. I have also been worried that some male detainees will try to find me and sexually assault me after they are released.

6

DocuSign Envelope ID: 37979D98-2214-4350-8751-738C922EC28B

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/22/2019
_____
Date

DocuSigned by:

_Kelly Stidd_
5896812C60D843C...
_____
Signature

7

DocuSign Envelope ID: 03ACA147-5C46-425B-80A2-973033FABD67

# MAXIE SIMON DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.      My name is Maxie Simon. I am a Registered Nurse (RN), and I worked for Cermak Health Services ("Cermak") at the Cook County Jail ("Jail") from October of 1994 to November of 2018, when I retired. Over the years, I have worked all over the Jail with the exception of Division 9. My last assignment before I retired was in Division 2. I had been assigned to Division 2 about six years. My assignments immediately before that were in Cermak and Division 10.

2.      As an RN, I was responsible for ensuring the health and wellbeing of detainees being held in pre-trial detention at the Jail. My typical duties included evaluating the patient's health, triage, medication, and ambulatory care. My job required daily, close interaction with male detainees.

<u>General Description of Harassment and Specific Incidents of Exposure</u>

3.      During my employment, detainees sexually harassed me by exposing their penises, masturbating, and routinely making crude or sexual comments to me, including sexually violent comments about what they would do to me.

4.      I most frequently witnessed detainees expose their penises and masturbate in the exam room. Detainees got erections, pulled out their penises, and masturbated (inside and outside their pants) while I was trying to evaluate them. These things happened all the time.

Decl. Ex. 715

DocuSign Envelope ID: 03ACA147-5C46-425B-80A2-973033FABD67

5. When I would pass out medication in Division 2, the detainees frequently exposed themselves, masturbated, or made sexual comments. For example, detainees would pull out their erect penises and tell me to look.

6. I remember a particular incident when I was putting a blood pressure cuff on a detainee in the exam room. With his other hand, he was aggressively masturbating in his pants and started to make noises. I told the detainee to get out of my office, and I reported it to an officer. The officer sent him back his housing unit but did not write an incident report.

7. About two years ago, I was temporarily assigned to work in Cermak on the third floor. There was an incident that I remember vividly. I had to dress a detainee's wound that was right above his crotch. I handed him some ointment and turned my back to gather the wound dressing. When I turned back around, he had pulled out his penis, slathered it with the ointment, and was masturbating. It was shocking and disgusting. I was so angry. I still had to dress his wound. I told him to hold down his penis while I dressed the wound because his erection would have been touching my hand if he didn't. I complained to the officer on duty and to the supervisor and other medical staff on that shift. The detainee did not face any consequences.

8. While I was walking in the hallways throughout the complex, detainees would routinely sexually harass me. They made lewd sexual comments and exposed their penises as I walked by.

Decl. Ex. 716

Plaintiffs 002526

9. Detainees also frequently walked around with their hands in their pants. I felt extremely disrespected trying to provide medical care to someone with his hands inside his pants, touching his penis.

10. Earlier in my career, when I worked in Division 10, detainees would call me over to their doors and be standing there with their penises out, playing with themselves when I came to see if they needed assistance. Detainees also exposed themselves to me and said nasty sexual things when I worked in Cermak, before I was assigned to Division 2. Detainees would stand in front of the door completely naked and masturbate while leering at me.

## Witnessing Harassment of Others

11. I have witnessed detainees pull out their penises, masturbate, and make crude sexual comments to other female nurses and medical staff. For example, when the detainee masturbated with the ointment, there were several other female staff members around. I also had a coworker who was really upset and confided in me after multiple detainees in Division 9 all stood on the balcony and masturbated at her when she went on the tier to pass medication.

## Sexual and Sexually Violent Comments

12. Several times a week, detainees made sexual comments about my body and what they would do to me. Detainees frequently commented about my butt, and would even sing the song, "I like big butts," whenever I walked by. It seemed like a joke to them, but it made me uncomfortable. One detainee told

3

me, "Can you feel my balls hitting your butt?" – graphically describing what he wanted to do to me.

13. I always complained about the verbal sexual harassment to the officers on duty. Sometimes if the officer on duty was a woman, the detainee would be verbally harassing all of us. Verbal sexual harassment was something that happened every day and we were not instructed about how to handle it. My supervisors heard the detainees making sexual comments and did not address it.

Knowledge of Defendants, Ineffectiveness of Complaining, and Discouragement

14. The sergeants and lieutenants on duty during my shifts were aware of the sexual harassment by detainees because my coworkers and I complained. Every nurse I worked with complained about the detainees' sexual misconduct to a sergeant or lieutenant at one time or another. Nothing was ever done about it. The detainees didn't suffer any consequences after we complained. It seemed like they were allowed to do whatever they wanted, while my female coworkers and I had to suffer the harassment.

15. Most of the sergeants and lieutenants were men, and responded to complaints by saying things like, "What am I supposed to do about it?" or would just tell the detainee to go back to their dorms. They did not write the detainees up. My coworkers and I were told that we took this job and knew what could happen. But when I took this job, even knowing that it was in a jail, I never imagined that I would be subjected to the level of sexual harassment I experienced - men

4

frequently pulling out their penises, masturbating, or making sexual comments to you is not something anyone expects to happen in a workplace.

16. As an employee of Cook County, I was not able to complete my own incident reports in the Jail's computer system. I would have to ask an officer to write it up. After complaining verbally multiple times and seeing the reactions of the sergeants and lieutenants, I was discouraged from continuing to complain.

17. I also complained to my supervisors. The detainees' behavior was considered just a part of the job. Nothing was done.

18. I recall attending Town Hall Meetings to discuss concerns, including the constant sexual harassment by detainees. At the Town Hall Meetings we were told to fill out complaints on a written form. My coworkers and I never got responses regarding any consequences to the detainees, and the situation did not improve overall.

19. Instead of imposing meaningful consequences, it was well known around the complex that some detainees were given pizza on Fridays if they didn't masturbate. It seems to me that the Sheriff's Office was rewarding bad behavior.

<u>Lack of Training</u>

20. I have never received training from the Cook County Sheriff's Office or the County regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tried to sexually assault me.

5

Plaintiffs 002529

Impact on Job Performance

21.     The sexual harassment changed the way I did my job. I had to modify the way I performed my duties because it was always a possibility that I would turn around to find the detainee standing their masturbating. It made me overly cautious. The detainees' behavior was disgusting, degrading, and disrespectful.

Emotional Impact

22.     The sexual harassment really impacted me emotionally. After being on guard all day, I would still be on edge after work.  This impacted the way I interacted with family and friends. I felt anxious all the time, and often felt depressed as well. It made no sense to me that the Sheriff's Office and the County did not take adequate steps to stop the detainees from constantly exposing and masturbating themselves. We were just expected to deal with it.

6

Plaintiffs 002530

DocuSign Envelope ID: 03ACA147-5C46-425B-80A2-973033FABD67

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/29/2019
_____
Date

_____
Signature

Decl. Ex. 721

Plaintiffs 002531

# PAULETTE SIMON-HALL DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Paulette Simon-Hall. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately June 22, 1998. I am currently assigned to the movement team on the 6:00 AM to 2:00 PM shift. From sometime in 2016 until March 2019, I was assigned to External Operations ("Ex-Ops"). In 2015-2016 I worked in Receiving for about a year. Prior to that I was assigned to Laundry, Central Kitchen, and Division 6. I don't remember my exact assignments before Division 6, but I have worked in almost every division of the Jail.

2. As a correctional officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. On the movement team, I interact with male detainees on a daily basis. We pick up the detainees from their Divisions and take them to the bullpens on the bridge. When they come back, we take them back to their division. Unless I am assisted by other officers, the most detainees I can escort by myself is six or seven.

3. In ExOps, I interacted with detainees less frequently. There, my duties included searching civilians coming into the Jail and guarding detainees at the hospital. In my previous assignments in Laundry, Central Kitchen, Division 6, and others, my duties have also included distributing uniforms

Plaintiffs 002316

and linens to the Divisions, keeping detainees safe on the tiers, processing detainees into the jail, and supervising detainees while they are in the bullpens, all of which required me to interact with male detainees on a daily basis.

General Description of Harassment

4.     During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I experienced detainees exposing their penises to me, male detainees purposefully masturbating at me or in front of me, and crude or sexual comments whenever I am around male detainees.

Specific Incidents of Exposure and Harassment

5.     I most frequently witnessed detainees masturbating and exposing their penises when I was passing out laundry on the tiers. Detainees would pull out their penises when I passed by them to give them clean uniforms. Once, a detainee's cell mate was standing behind him, masturbating at me, while I handed him his clothes.

6.     Whenever I had to go to Division 9, I saw a detainee's penis. I knew it would happen no matter what. When I entered the tier, hey knew I was coming to give them clean uniforms and they would be waiting at their cells with their penises out and masturbating at me.

2

Plaintiffs 002317

7.   In Ex-Ops, when I saw detainees at Stroger, they often had their hands in their pants, playing with their penises while leering or staring at me or other women.

8.   I have only been working on the transport team for one week, and so far the detainees have not been able to masturbate while I am walking them because they are most often handcuffed to the back. However, once they get into the holding cells, they are uncuffed and will often play with and openly fondle their penises while watching the females who are guarding the cells. It makes me afraid to look at them.

9.   For example, the other day I had to do a lunch relief in the bullpen area. I was sitting at the guard station when one of the detainees called my name. I didn't want to respond or look over there because I thought he might have his penis out. He was trying to get my attention but I wouldn't look that way because I was afraid he would sexually harass me. Fear of being harassed makes it hard to do my job.

10.  When I worked in Division 6, detainees would purposefully expose their penises to me during count. They know the routine and knew I was coming by their cells, so they were ready for me. When I walked by to check on them, many of them would stand there with their penises out, masturbating at me.

Witnessing Harassment of Others

11.  I have seen other women who work in other positions experiencing the same or similar sexual harassment throughout the Jail. A few years ago, when I

3

worked in Receiving, the other officers discussed it all the time. It was then that I realized it happened to women all over the Jail.

## Sexual and Sexually Violent Comments

12.  I have heard crude or sexual comments from male detainees directed at me often. When I worked in the Laundry, detainees would always make vulgar comments at me when I came by with their clothes. I heard them say things like, "I see you, bow-legged," and "suck my dick." They would say they wanted to fuck me. They would constantly talk about what they would do to me if they could just get me alone.

13.  During count in Division 6, I would call the detainees' names and they would respond, "bitch." Sometimes they would also make vulgar comments about my body or how I looked.

## Knowledge of Defendants

14.  My supervisors know about the detainees' behavior and their sexual comments towards me and other women. I complained about it, but nothing changed.

## Ineffectiveness of Writing Incident Reports and Complaining

15.  When I mentioned the harassment to my supervisors, they never did anything except tell me to write it up.

16.  I don't think that writing up a detainee makes a difference. For one thing, I saw a lot of write ups get thrown out. For others, maybe they would get a couple of days in the hole. Some of the detainees actually like going to the

4

Plaintiffs 002319

hole because they see their friends there. It seemed that the Sheriff never imposed consequences that the detainees really cared about so the detainees kept harassing us.

## Ineffectiveness of Steps Taken

17.   Detainees who masturbate are supposed to wear green jumpsuits to keep them from masturbating. They don't work; the jumpsuits don't stay closed and the detainees can still access their penises.

## Lack of Training

18.   I never received training from the Jail regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to touch themselves, or how to respond if a detainee tried to rape me. I definitely wasn't trained to expect to see detainees' penises and constant masturbation.

## Impact on Job Performance

19.   The sexual harassment changed the way I did my job. I don't want to look at detainees anymore. If I am guarding detainees in a cell, like in the lunch shift example above, I don't feel comfortable responding to their requests. In general, I am very uncomfortable around detainees which makes it harder to keep the Jail safe.

20.   Furthermore, I can never wear lotions or anything with a scent to the Jail because the detainees will comment about what it does to them. The few

Decl. Ex. 726

Plaintiffs 002320

times I did wear something scented, they said things like "oh, you smell so good, you're sexy, let me fuck you."

21. The behavior by male detainees toward me makes me feel small. I feel like I have done something wrong. It is offensive, humiliating, and degrading.

Emotional Impact

22. When I leave the Jail every day, I have to make an effort to leave the stress and anxiety behind. I try not to dwell on it. When I was in Laundry, it was the worst, because every time I had to go to Division 9 I had to mentally prepare myself to have the will to do it. My supervisors never would excuse me from servicing Division 9 even though they knew I would be subjected to a group of detainees masturbating at me.

23. I don't understand what the Sheriff is doing. We have so many directors trying to run the Jail but it's still totally out of hand. In the one week since I have been back to the Jail on the movement team, I am stunned by the way the detainees are allowed to behave. Detainees are allowed to leave the divisions in their shower shoes or without their uniform on properly. They say disrespectful things in the tunnel all the time. I saw a detainee complain to a supervisor that the officer escorting him gave him "bad vibes." The supervisor actually assigned someone else to walk with him. Detainees shouldn't get to say which officers are assigned to them! When I worked a max division in Division 11 before Sheriff Dart was in charge, there was never any masturbation, even with sexual predators on the tier. Now it

6

Plaintiffs 002321

DocuSign Envelope ID: 130AAAE7-31A6-4A28-93DC-3FB9AA733CD5

happens all the time. I am shocked and confused by the utter disrespect the Sheriff seems to have for his female employees and the ways in which we are sexually harassed.

Decl. Ex. 728

Plaintiffs 002322

DocuSign Envelope ID: 130AAAE7-31A6-4A28-93DC-3FB9AA733CD5

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/18/2019
_____
Date

DocuSigned by:

Paulette Simon-Hall
_____
7AC916876CD54FC...
Signature

8

Plaintiffs 002323

# KATIE SMITH DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.      My name is Katie Smith. I was a Correctional Rehabilitation Worker (CRW) at the Cook County Jail ("Jail"). I worked at the Jail from approximately February of 1993 until I retired in June of 2018. Over the course of my career, I worked in most divisions within the Jail at one time (Divisions 1, 2, 4, 5, 6, 9, 11 and RTU (residential treatment unit) 8). My last two assignments were in Division 6 and Division 9. From approximately 2010 to 2014, I worked in Division 9. At the time I retired, I was assigned to Division 6 and had worked there for around four years.

2.      As a Rehabilitation Worker at the Jail, I was responsible for providing social services to detainees being held in pre-trial detention in the Jail's housing divisions. My duties included responding to detainees' requests for information and services, including helping them file grievances, and contacting their attorneys and family members. My job required me to interact with male detainees daily.

General Description of Harassment

3.      As a Correctional Rehabilitation Worker at the Jail, I routinely endured sexual harassment by male detainees. I experienced detainees exposing their penises and masturbating at me, and making offensive and threatening sexual comments, including explicit threats of sexual violence.

Decl. Ex. 730

4.    In my most recent assignments in Division 6 and Division 9, detainees pulled out their penises and masturbated at me on a weekly basis, and at times daily. Detainees also fondled their penises and masturbated at me under their uniforms every day. Several detainees would also stick their penises in the chuckholes of their cell doors when I came to provide social services.

Specific Incidents of Exposure

5.    I frequently witnessed detainees masturbating with their penises exposed whenever I traveled through the tunnels. For example, in April 2018, I was going through the tunnel and an inmate yelled out to me, "Look at this!" When I turned my head, he had his penis exposed and shook it at me.

6.    I was required to meet with detainees regarding social services that were available. I would sit at a desk on the tier with no barrier between me and the detainees. Detainees would stand close to me and masturbate or sit on the other side of the desk and masturbate right out in the open. Then they would laugh about it when I got upset. It was shocking and very demeaning. I would tell them that if they didn't stop, I would not provide them with services. But they knew I was required to help them, or they could file grievances against me for refusing to provide services to them.

7.    I recall an incident in around 2018, when I worked in Division 6, when a detainee tried to attack me. Detainee E.B. charged at me, yelling sexual and violent threats about what he was going to do to me, and other detainees had to hold him back. I sought to press charges. An investigator came to take my

Decl. Ex. 731

Plaintiffs 002325

statement and never followed up. I had to see that detainee on a regular basis. Every time I saw him, he would grab his penis and aggressively shake it at me while saying disgusting profanities. He also sexually harassed other female CRWs. I filed multiple grievances related to him, but his behavior continued, and he filed grievances against me for not providing him services. I complained to Superintendent Beecham about this detainee, because he had not been moved off my tier, despite the continuous harassment I suffered. After numerous complaints and several months, eventually the detainee was moved to a different tier.

8. One of the most traumatizing incidents that happened to me was, in Division 11, when a detainee who I was trying to provide services to became combative and sexually aggressive and went into a rage. He yelled at me, while shaking his penis at me, "See this! I can ram it down your throat! I'll cut your pussy out, eat it, chew it up, and spit it in your face!" I was horrified and shaking. After I complained, a Sheriff's Police investigator came to take my statement and asked if I wanted to press charges. I said I did, but no one followed up with me.

9. I have been groped and grabbed by detainees at the Jail several times. For example, more than once, when I entered a tier inmates ran towards me. They would circle around me, gather together and try to block my path. When I tried to get through the crowd, the detainees would grab or feel my butt. This

3

Plaintiffs 002326

behavior happened in Divisions 2, 9, and 11, but Division 9 and 11 were the worst.

## Witnessing Sexual Harassment of Others

10.     I witnessed detainees sexually harass other rehabilitation workers, as well as other female employees, all the time. For example, when I was assigned to Division 9, detainees pulled out their penises and masturbated at me and other female CRWs constantly. I also saw detainees sexually harass Psychiatric doctors and nurses who were women.

11.     I recall talking about the sexual harassment with fellow CRWs like Latoya Davis, and my supervisor, Lynea Fenderson, who also experienced it. My supervisor told me she was walking through the tunnel and an inmate exposed his penis to her.

## Sexual and Sexually Violent Comments

12.     When I arrived in the morning to provide services to the detainees, they would often immediately start calling me derogatory names for women, such as "bitch." They described in sexually explicit terms what they would do to me. The example about the detainee who said he would cut out my vagina is only one of the horrifying sexually violent things detainees have threatened to do to me. Detainees also threatened me by saying they know my family.

13.     They also called me a "sexy bitch," "sexy lady," and said, "You're sexier than some of the younger ones around here." In Divisions 2, 6, 9, 11 and RTU, detainees made sexual advances to me, including comments about how they

Plaintiffs 002327

want to sexually assault me. Detainees have said, "Oh baby, when can I take you out?" "Can I have your address so I can send you flowers?" "I know where you live and when I get out, I'm coming to your house." I have also heard them say to me, "Are you married? I can do it better than your husband in bed," "Do you want this penis?" "I would like to give you what you need," and, "you haven't had what I got".

Knowledge of Defendants, Ineffectiveness of Complaining, and Discouragement

14. My supervisor, the officers, lieutenants, and sergeants on duty knew about the detainees' behavior towards me because I complained. I also complained to Superintendent Beecham. My coworkers and I met with management monthly and complained about why they were not protecting female workers. I made repeated verbal complaints and wrote memos about the constant sexual harassment by male detainees. I estimate that I wrote or had officers write approximately ten or more written complaints. It was frustrating that, as a Cook County employee, I could not write incident reports myself. I felt that my complaints fell on deaf ears and were not taken seriously. On several occasions, I was told to just ignore the detainees. The officers, lieutenants, and sergeants acted annoyed, as if they did not want to do the paperwork.

15. For example, when I complained about the incident in Division 1, when the detainee said, "I will cut you pussy out and eat it," the officer said he couldn't verify that it happened and did not write the report. Escort officers are supposed to be by our side the entire time whenever we are working with

5

Plaintiffs 002328

detainees. Since the officer did not want to write the report, I submitted a memo regarding the harassment. My escort officer was upset that I submitted the memo.

16. Officers were supposed to announce whenever female staff was on tier, but they didn't always do it. On rowdy tiers, such as Division 6, tier 1C and 1D, 2J and 2L, I would ask an officer to walk with me, which they were supposed to do anyway. Some officers would comply, but others would not. I never had a problem with the female officers as escorts because they knew what we were going through. Male officers had such disregard for my safety that I was once locked on the tier with fifty to sixty detainees because the officer left to go on break. After that I refused to go on the tier without an officer with me.

17. It seems to me that the detainees know that the Jail does not seriously discipline detainees for masturbating at women. For example, when detainees masturbate, I have heard them say things to me and other staff members in response to our complaints, such as, "Ain't shit going to happen to me, watch," "I can do anything I want to you and they can't move me, I'm in a program." If they go before the hearing board or are removed from the tier temporarily, when they return to their division, they would say things like, "What did I tell you? Ain't nothing going to happen to me." I have also overheard some detainees say to other detainees about the masturbation, "You wouldn't get away with this at IDOC," and, "You would never get away with that upstate."

6

Plaintiffs 002329

<u>Ineffectiveness of Steps Taken</u>

18.    The green jumpsuits that known masturbators are supposed to wear to prevent

exposure and masturbation are ineffective. The front is closed with Velcro and

detainees can open them all the way down to the crotch. The detainees are still

able to pull out their penises. I remember an incident that happened in late

2017 when I was walking in the tunnel. I had been summoned to the office by

my supervisor. I saw a detainee wearing a green jumpsuit, with it down around

his waist and his hands inside, fondling his penis. Then, when he saw me, he

pulled out his penis and shook it at me. I complained to the male officer who

was escorting the detainee. He just told him to put his penis away.

<u>Lack of Training</u>

19.    I have never received training from the Cook County Sheriff's Office or County

specifically regarding how to address the masturbation or sexual harassment

by male detainees, how to decrease the opportunities to repeat the behavior, or

how to respond if a detainee grabs me or attacks me.

<u>Impact on Job Performance</u>

20.    The sexual harassment changed the way I did my job. I was always on guard,

especially because my job required me to interact closely with detainees who

were constantly sexually harassing me and other women. After experiencing

someone pull their penis out and start masturbating right in front of me, I was

apprehensive whenever I was around detainees. I feared for my safety because

of the things they did and said to me, but also because of an incident that

DocuSign Envelope ID: 09CAF654-C1D1-49F8-B755-AEC89FBFD024

happened earlier in my career. A detainee came into a CRWs office, where she was sitting at her desk with her back to the door, snuck up behind her, put his hand around her neck, choked her, and said he was going to rape her. That was always in the back of my mind, especially because of my own experiences when detainees tried to attack me. After an incident with a detainee exposing himself and masturbating, I would be nervous and shaky. Sometimes, I would have to go into an office and try to calm myself down before continuing with my day. It affected my ability to do my job because, at times, I would just walk off and let my supervisor know I couldn't work on the tier because I was being sexually harassed.

21.   It also changed the way I dressed at work. I heard male officers blame the way female employees dressed for the sexual abuse we received from the detainees. But they were wrong. We intentionally dressed conservatively. We purposefully wore loose fitting clothing and smocks over our clothes, but it didn't help. The detainees still sexually harassed us. For example, they would make comments like, "I'd love to see how you look without all those clothes on."

22.   The detainees' sexual misconduct toward me was extremely disrespectful, degrading, and demeaning. As a CRW, I was there to assist them, but they had no regard or appreciation for that.

Emotional Impact

23.   Enduring years of constant abuse and sexual harassment from the detainees caused me severe emotional distress. Sometimes, it got the best of me

8

Plaintiffs 002331

DocuSign Envelope ID: 09CAF654-C1D1-49F8-B755-AEC89FBFD024

emotionally, and I would come home and confide in my family about it. Other times, I withdrew from family members, and wouldn't answer my phone. My kids would drive by my house to see if my car was in the driveway because they hadn't heard from me.  Family members often told me that my personality has changed, I became easily aggravated, and would I snap at them when they tried to check on me. I tried to separate work from home, but it was difficult to do because of the emotional toll of the aggressive sexual harassment. I did not feel protected by the Sheriff's Office or the County.

Decl. Ex. 738

Plaintiffs 002332

DocuSign Envelope ID: 09CAF654-C1D1-49F8-B755-AEC89FBFD024

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/10/2019
_____
Date

DocuSigned by:

_____
4EEFA1CDC765497...

Signature

10

DocuSign Envelope ID: CDCEDD08-BB25-4769-8990-54D7FCCB05B1

## <u>LORNA SPENCER DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.    My name is Lorna Spencer. I was a Correctional Medical Technician ("CMT") for Cermak Medical Services at the Cook County Jail ("Jail"). I worked at the Jail from February 2, 1987 until December of 2016. I have worked in every division of the Jail and in the Cermak building in my role as a CMT.

2.    As a CMT at the Jail, I was responsible for giving certain medical care to the detainees who were held in the correctional facility. For example, my job duties included, but were not limited to: dispensing prescribed medications on the tiers, assisting nurses and doctors with medical treatment, giving physicals to newly admitted detainees, administering CPR in medical emergencies, and attending to the detainees' medical complaints. In performing these duties, my job required me to have interactions with male detainees daily, and in all areas of the facility.

General Description of Harassment

3.    During my employment at the Jail, I endured sexual harassment by male detainees, which they direct at me and at other female employees. I experienced detainees exposing their penises to me, male detainees purposefully masturbating at me or in front of me, male detainees ejaculating towards me, and regular comments of a crude or sexual nature, including comments about how they want to sexually assault me.

1

Plaintiffs 001284

<u>Specific Incidents of Exposure</u>

4.  I mostly witnessed detainees masturbating and exposing themselves while I was working on the tiers. They masturbated right in front of me while I was trying to perform my job duties. I also frequently saw detainees exposing themselves and masturbating in the tunnel. I think I saw a detainee masturbate at least every other day.

5.  For example, I sometimes had to dispense medication in Division 9. The place where you dispense medication is right next to the shower area. Almost every time I went to Division 9, when I arrived on the tier, the detainees would line up naked in the shower area, look at me, and masturbate. We used to medicate in the mornings, which is when the detainees usually shower.

6.  Also in Division 9, sometimes detainees would sit on the steel steps in the day room and have contests to see who could ejaculate first and project their semen the farthest.

7.  Another time, I think around 2013 or 2014, I was dispensing medication in the interlock in Division 6. Some detainees were coming in from the hallway. The interlock is small. About five detainees passed me, and one of them groped me on my butt. I brought it to the attention of the officer, and he asked me which one did it, but there were so many of them in that small space, I didn't know.

Plaintiffs 001285

8.    I have also had semen squirted at me.  Once a detainee ejaculated on my cart and I didn't notice it until I had left the tier.  Another time a detainee ejaculated towards me and almost hit my leg.

9.    I also witnessed detainees walking and masturbating or with their penises exposed when they were being escorted through the tunnel to and from holding, court, and their divisions. Often, groups of up to 15 detainees would be escorted by just one or two officers.  These detainees were cuffed together but still had a free hand, and they would use it to pull out their penises and masturbate when they saw females coming. When I walked through the tunnel, I had to inch against the wall and look at the ground to avoid seeing penises.   A few times, I saw a detainee take his hand off of his penis and try to grope women as they walked by, while saying, "Man, let me grab this pussy."  It made me feel so unsafe, I would always carry a pen in my hand just in case one of those detainees attacked me.

10.    As another example, in Division 6, I had to use the stairwell to get from tier to tier or back and forth from the dispensary.  It often happened that I would head down the stairs and a whole tier of detainees would be coming up at me with the officer coming up last.  I couldn't walk past them in the stairwell because it is very narrow.  If I tried to pass them, they would touch me.  I either had to turn around and run back the other way as fast as I could or yell, "paramedic in the well!" and hope they would stop to give me time to go back up and out of the stairwell.

Decl. Ex. 742

Plaintiffs 001286

## Witnessing Harassment of Others

11.    I know that other women who work in the Jail experience the same or similar sexual harassment. I have seen other female employees of the Jail who need to move through the tunnel to get to their work stations walk as close as possible to the wall so they can avoid getting too close to detainees' penises.

12.    Once I was talking to a coworker, Kim Childs, who works in the mailroom. She was driving a cart through the tunnel and a detainee jumped on top of her cart, and she felt like he was going to attack her. The detainee was cuffed and being escorted by an officer but was still able to easily access her.

13.    It seems like the detainees are just out of control these days. Many of my CMT coworkers talked about detainees masturbating at them too. It seemed like it was a part of the daily routine.

## Sexual and Sexually Violent Comments

14.    I heard crude or sexual comments from male detainees directed at me daily. For example, detainees would tell me I had "nice titties" or "nice lips." I also heard them say, "I'd like to rape you in your mouth," and "I never fucked an old bitch before." Once, when I arrived on a tier and went to a detainee's cell on seg rounds to check on him, I found him lying naked on his bed and masturbating. He said, "why don't you come over here and lay down next to me?" The detainees would often ask for my phone number because they wanted to call me when they got out.

4

DocuSign Envelope ID: CDCEDD08-BB25-4769-8990-54D7FCCB05B1

15. When I first started working at the Jail, I had to go to Division 1, which was maximum security. I was pregnant, and a detainee told me he had never fucked a pregnant lady before, and that he wanted to rape me hard enough that the baby would come out of my mouth. After that, I was constantly afraid of being raped. I had to develop a thick skin, because if they see you are scared, they will keep doing it.

## Knowledge of Defendants

16. My supervisors and management in Cermak know about the detainees' behavior and their sexual comments towards me and other women because we complain about it. Sometimes they witness it too, and all they say is "put some paper on them," and "be careful."

17. Sometime around 2013 or 2014, I understood that the Sheriff's Office instituted a "hands-off" policy regarding detainee discipline. Once the hands-off policy went into place, a lot of officers didn't get involved as much when the detainees would engage in sexual behavior toward women. If I was in the dispensary, for example, sometimes the detainees would have their hands in their pants masturbating and I would call the officer to get him to stop. The officer would just say, "come on, man," but that's all. Once, a male Officer told me that the detainees have a right to masturbate.

## Incident Reports and/or Complaints

18. I complained to my supervisors about the sexual misconduct but all they did was tell me to write them up. Sometimes I wrote summaries of what

5

Plaintiffs 001288

happened and gave them to my supervisors, but I don't know what they did with them. Since I could not write disciplinary reports in CCOMS myself, I had to ask officers to write the detainees up for me.

19. Writing up detainees wasn't always an easy solution. Sometimes I would try to submit a write-up on a detainee, and he would not give me his correct name. Also, I didn't want to really look at the detainees in order to identify them because it just encouraged them to masturbate more. Other times the officers would say they'd help me write up an incident later, but they never came back to do it.

20. The few write-ups I was able submit did not stop the behavior. Further, I rarely knew if the detainees were actually disciplined or not. Once, a detainee I had written up walked by me the day after I submitted the write-up and said, "Old fat bitch, you thought you got me, didn't you. You wrote me up but nothing happened." I was angry that nothing happened to him. After that, I stopped writing up detainees for masturbation and exposure.

21. I felt like you couldn't prove the detainees had masturbated at you unless you had their semen on you. The officer would always ask which detainee it was that did something but we didn't know their names so sometimes it was hard to identify the right person.

<u>Ineffectiveness of Complaining and Discouragement</u>

22. After complaining and trying to write incident reports had no effect on the detainees' behavior, I felt lost and helpless. Towards the end of my

6

Plaintiffs 001289

employment at the Jail, the Sheriff instituted a zero tolerance rule (hands-off policy) for the officers in terms of using force on the detainees. This meant that if a detainee was masturbating or exposing himself, nothing could be done to physically stop him. Now, the inmates know the officers cannot touch them. Working there was scary. In this kind of environment, it felt like the detainees could do whatever they wanted. It was out of control. We were not safe.

## Lack of Training

23.  I never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tried to rape me. They did tell us that if we got into an argument with an inmate, we should turn around and leave. We also got hostage negotiation training. But we never received training on how to stop sexual harassment by detainees.

## Impact on Job Performance

24.  The sexual harassment changed the way I did my job. I retired 4 years before I planned to because I was afraid and no longer felt secure. The Jail was understaffed. The officer to detainee ratio was always over the limit. I was always aware of my environment but I was anxious all the time. Whenever I was with a patient, I looked around to find objects or people that might keep me safe if I was attacked. I tried to stay out of the tunnel as much

7

DocuSign Envelope ID: CDCEDD08-BB25-4769-8990-54D7FCCB05B1

as possible. I would go outside, get in my car, and drive around the outside of the Jail to go to the pharmacy or Cermak if I could to avoid walking through the tunnel. If I did have to walk through the tunnel, I would always try to make sure I wasn't alone.

25. In general, I looked down and tried not to look in the direction of male detainees, because if they were masturbating and you acknowledged it, then it encouraged them to continue and become more aggressive. Not being able to look at a detainee made it difficult for me to administer proper medical care.

26. The behavior by male detainees toward me was offensive, harassing, degrading, humiliating, threatening, inappropriate, disrespectful and caused me to fear for my safety.

27. During every work day at the Jail, I experienced anxiety over potential harassment and exposure. Every day, my female coworkers and I expected that at least one of us would be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse. This caused constant stress. We would talk about each other's experiences with sexual harassment by detainees often.

Emotional Impact

28. As a result of the constant sexual harassment, I have suffered severe emotional distress. It was difficult to be intimate with my boyfriend because I

Plaintiffs 001291

was disgusted by the harassment at the Jail. My boyfriend would ask for sex and I would cringe. It turned me off to sex.

29. The harassment and masturbation at the Jail made working there extremely stressful. One day I was in Division 6 dispensing meds before it closed, and the officer had stepped out into the hallway. I was locked in the interlock with a detainee. My medical cart was between me and the detainee, but I was scared. Another detainee I knew had masturbated at me was standing on the other side of the door. From then on, I had nightmares that I was stuck in the interlock with a detainee and he sexually assaulted me.

30. I understood that wherever there was a detainee, there should be an officer, but it wasn't always like that. Sometimes the sergeants would say that we couldn't always have officers in the dispensary with us. We were exposed. For example, in the dispensary in Division 6, the officer sat with the detainees in the waiting area, which is far from the treatment rooms. If something were to happen while treating a patient, we'd have to scream really loud and then they still wouldn't be able to come because they would be leaving the detainees unattended. I felt like I always had to fend for myself. I was unprotected.

31. I chose to work at the Jail because I wanted to help people who really needed it. Unfortunately, because the detainees were allowed to sexually harass me, I no longer felt safe to do my work. I became afraid that a detainee would be

9

Plaintiffs 001292

DocuSign Envelope ID: CDCEDD08-BB25-4769-8990-54D7FCCB05B1

able to rape me before an Officer could step in to stop it.  I was on guard all the time, and I thank God that I got out of there before someone raped me.

Decl. Ex. 749

Plaintiffs 001293

DocuSign Envelope ID: CDCEDD08-BB25-4769-8990-54D7FCCB05B1

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

3/12/2019
_____
Date

DocuSigned by:

*Lonna L Spencer*
_____
0578807C6EB7420...
Signature

Decl. Ex. 750

Plaintiffs 001294

# Latisha Statham

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Latisha Statham. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail for about 14 years in Divisions 3, 6, 9, 10, 8, and in the women's dorms in the Cermak annex. I have been working in Division 6 recently. All of my assignments at the Jail require me to interact with male inmates.

2. Male inmates sexually harass me. It ranges from verbal sexual harassment to exposing their penises and testicles to masturbating to assaulting me sexually by grabbing my breasts.

3. The sexual harassment is bad in Divisions 9 and 10, but I have also experienced it in Division 6 and in the tunnels or hallways. Even if you're not working in Division 9 or 10, you have to cross these inmates in the tunnels or hallways and they expose themselves and masturbate at you. When inmates walk past me and other female coworkers in the tunnels or hallways, they reach in their pants and make comments about our bodies, such as "Let me know that ass, girl" or "Let me get in them pants" or "I'm gonna fuck you when I get out."

4. When I worked in Division 9, I experienced male detainees exposing their penises and testicles and masturbating at me daily. When I went up to the doors of the inmates' cells, inmates would hear me coming and stand by the door with their penises exposed in their hands. They also made vulgar gestures and said what they want to do to me sexually.

Plaintiffs 002334

5.      When I worked in Division 9, my partner was also female, and she would tell me to look the other way if she witnessed a guy masturbating at us so that I didn't have to see it too. This happened often, not every day but a few times a week.

6.      Once I was on a tier in Division 9, and an inmate grabbed my breasts. He came out of his cell to see the nurses for medication. I was trying to lock him back up and he came up on me and groped me. I pushed him back and slammed the door. I called my male supervisor, Officer Morici, and he claimed that he saw me pushing the inmate but didn't see me being grabbed. I wrote an incident report and wanted to press charges, but when the investigator called me a month later, the inmate was already shipped out and the County dropped the charges. This discouraged me from pressing future charges or writing incident reports because nothing happened.

7.      When I worked in Division 9, the shower area was open. Inmates stood on the top of the garbage cans, so they were in my view and masturbated at me. They could see me sitting at my desk. This happened about once a day for about eight years. I wrote fifteen numerous incident reports about this behavior. In most cases, inmates would get about three days in SMU, but then they'd come back out and do the same behavior again. When I would threaten to write inmates up for this behavior, the inmates would say they didn't care.

8.      Now, the showers have velcro-like shower curtains, but those curtains only cover about one-third of an inmate's body, and do not provide any coverage from above. As a result, when I am on the top deck, I can still see inmates while they are showering, and the can still see me.

Decl. Ex. 752

9.      Men have masturbated at me two or three times in Division 6.  For example, in 2017, in Division 6, I walked onto the deck and I hollered that I was coming onto the deck so that the inmates would be prepared, dress themselves, and wouldn't be completely naked.  I went up to one of the cell doors and one of the inmates was masturbating and his penis was exposed.  I called over my male supervisor, a sergeant, and he asked where the inmate was masturbating.  I told the sergeant that the inmate was masturbating in his cell and the sergeant said that inmates could masturbate in their cells.  I wrote an incident report but never heard anything back about the incident.

10.     On Tier 1 of Division 6, one of the inmates was standing in front of the window into the officers' office.  He was standing jacking off with his penis exposed right in front of where I was sitting and working.  I called my male supervisor, Sergeant Witfield, and wrote an incident report.

11.     In Division 6, the inmates make vulgar comments towards me and the other female employees.  I've heard inmates call at me, "Sweetheart, you looking good in those pants," and "I know your daughter look like you.  We'd tap that and your daughter," and "Baby, you my wife."  I get comments every day but I try to just block out the comments and keep going on with my day, even though it is hard to ignore them because they are so dirty.

12.     In the winter of 2019, an inmate followed me in the hallway in Division 6, told me how much he loved me, how when he got out he would find me, and that he "was gonna fuck me."

13.     When I was pregnant, I worked on the tier in Division 9 until I was five months pregnant.  The male inmates would make comments like, "That's my baby."  These comments

Plaintiffs 002336

would make me feel dirty and I thought it was shameful that these men would think it was okay to talk about my baby like that.

14. I've written numerous incident reports about masturbation and other sexual behavior. Sometimes male lieutenants or sergeants just curse out the inmate masturbating and say it is handled, and discourage me from writing a report.

15. I have been encouraged to accept inmates' behavior by male sergeants. Sometimes when you tell your sergeant you want to write an incident report, they say things like, "I'ma talk to them. Don't write a report until you talk to me first." But when you tell them about incidents, they don't want you to write reports and say, "What do you want me to do?" I have also heard other male officers say, "We get paid for the same job. Just deal with it." Not all incident reports are processed. Once you enter one into the system, your supervisor has to sign off on it. If they don't sign off on it, it doesn't always go through. Because sergeants cannot delete reports, they can "error it out"—they add an "error" message to make the report not go through and look like it was accidental. I think sergeants have done this to my incident reports because five or six times I had written reports, but then when I went back into the system to check on their status, my words were deleted, and all that appeared in the reports is the word "error." Five or six female co-workers who are my personal friends also told me this happened to them.

16. I was also told by sergeants that I cannot write up detainees for masturbating in the shower because they are supposed to be touching their bodies in the shower. Once the detainees learned about this loophole, they began going into the shower, with their clothes on, and then dropping just their pants and masturbating in the shower, without turning on the water or actually taking a shower. When I complained about this behavior

Plaintiffs 002337

to the sergeant, I was still told that because the detainees were in the shower, I could not write it up.

17. Even if you write an incident report, it seems like it doesn't matter because the County does not actually file charges on them. This happened to me after the inmate grabbed my breasts in Division 9 and I got discouraged.

18. The sexual harassment has given me a lot of anxiety because I never know what's going to happen. It doesn't matter what tier I'm on, every day I think, "Is today going to be the day something worse happens?" I am scared about an inmate grabbing and touching me again. I never go onto the tier by myself. Sometimes I am asked to go in by myself without backup. I just keep calling for backup until someone comes.

Plaintiffs 002338

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/13/2019

_Latisha Statham_

_____
Date

_____
Signature

Plaintiffs 002339

# <u>MICHELLE STRICKLAND DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Michelle Strickland. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately June 2005. I have been assigned to various parts of the Jail in my role as correctional officer, including: RCDC (Receiving); Divisions 5, 6, and 10; External Operations; EM (Electronic Monitoring); ART (administrative relief team); and Transportation, where I have been since April 2015. I took a medical leave of absence from June 2015 through September 2017.

2. As a correctional officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my current job duties as a transportation officer include, but are not limited to, safely and securely transporting detainees, via van or bus, to and from the Jail and the Courthouse, the doctor's office, and other jails. When I was assigned to RCDC, I was responsible for transporting detainees back to their cells in the different divisions. When I was assigned to ART, I filled in wherever I was needed due to a shortage of officers. As an ART officer from 2012 through 2013, I worked in every single division, and my prior job duties included, but were not limited to, supervising detainees' daily activities, inspecting their cells, releasing them from their cells into the day room of the tier, and putting them back in their cells at my shift. In all of these

Plaintiffs 002340

assignments, my job has required me to have interactions with male detainees daily.

3.    When I worked in ART from 2012-2013, I endured sexual harassment by male detainees, which they directed at me and at other female employees. On a daily basis, I experienced: (a) male detainees flashing or "clapping" their penises at me; (b) male detainees masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis, including regular comments about how they want to sexually assault me.  Division 9 was where I experienced the worst and most frequent sexual harassment, but I also experienced sexual harassment in the form of lewd and offensive comments in the hallways and tunnels.  For example, while I was transporting detainees back to their divisions, I would hear comments like "Damn, look at that ass, did you see that walk?"

4.    I most frequently witness detainees masturbating at me with their penises exposed in the shower.  When I worked in Division 9 as ART, I would sit in the glass bubble that was slightly higher than the showers.  I could look down to see the detainees, and they could look up to see me.  On a daily basis in Division 9, I would look down from the bubble and see a detainee staring and smiling at me while he was jacking off.

5.    I know I wrote an incident report at least once after a detainee exposed his penis and masturbated at me when I was in ART in Division 9, but I don't know what happened or if that detainee was ever charged because I was

2

Plaintiffs 002341

moved around so much in ART. There was no process to inform me of the outcome of the investigation.

6.     I did not write up other experiences of sexual harassment in Division 9 because I did not know and did not have a rapport with those sergeants—as an ART officer—I was disbursed to whatever division I was needed. I know the sergeants knew about the daily sexual harassment in Division 9 because I heard them say things to the detainees like "Cut that shit out, I'll move you to the hole," but the flashing and the masturbation seemed like lower priorities to the sergeants. I don't know if the sergeants actually followed through with their threats to discipline the detainees after they masturbated.

7.     I also remember sometime before 2013, when I was working in Division 5, I started my shift as usual with a count of detainees. Like I regularly do, I yelled "female on the deck" to warn the male detainees that I was there before I looked in each cell. I got to one detainee's room and he was sitting there jacking off. I threatened to write him up, but decided not to because he apologized and said he didn't know I was coming. But then, the next day, I did the same count, yelled the same warning, and the same inmate was jacking off again. I stopped the count, called the sergeant over, wrote him up, and had him removed at that moment. The sergeant that day was a black female who I knew would not tolerate the detainee's behavior, and that is why I believe he was removed and put in the hole instantaneously. I

3

Plaintiffs 002342

remember a male sergeant telling me at the time, "You can write it up, but you know nothing's gonna happen."

8.   When I worked in RCDC and had to walk down the hall past the bullpens, detainees would climb up on the walls of the bullpen and scream things like "Look at that ass, I would eat that!"  I remember one time, a lieutenant yelled at the detainees to get off the wall and to stop screaming at me, but he said he couldn't do anything more because he didn't know which detainee had yelled at me.

9.   A similar thing happened to me my very first week at the Academy in 2005. We had to come into the Jail, and I was the class commander so I was the last one in the line.  As I passed the bullpen, detainees climbed the bullpen wall and screamed sexually offensive comments about my body at me.  I was so scared I remember my spine stiffening.  I still experience that same reaction at work now when I see a bunch of detainees getting off a bus at the courthouse or Jail.  As a result I figure out how I can get to my work vehicle as fast as possible to avoid hearing the sexual comments I know they will say to me.

10.  In Transportation, flashing and jacking off is less frequent—I would say men expose their penises to me about once every three months now.  But I still hear lewd and inappropriate sexual comments about my body every single day as I am transporting inmates.  Detainees say things like "Damn, officer, you're fine as hell" and "Damn, look at that ass, shit, I'd fuck her."

4

Plaintiffs 002343

11.     I remember in late June 2018, when I was dropping female detainees off to

        RCDC, I saw a male detainee in the glass bullpen look at me and reach into

        his pants to jack off.  I immediately reported it to the female lieutenant, who

        confronted the detainee, but he denied it.  She reviewed the tape and then

        asked me what I wanted to do.  I felt like it was the lieutenant's job to decide

        what to do, and that I had done my job by reporting the incident up the chain

        the moment it happened.  I don't know if anything ever happened to that

        detainee because I had to go back to my van and continue with my job.

12.     I don't file incident reports for the daily verbal harassment I experience

        because, although no one has said it directly, it has been taught that the

        sexual comments go with the job.  I have heard this from other female

        correctional officers as well, that they have been told by their sergeants to not

        worry about the comments and to just let them go.  I am also discouraged

        from writing reports because I don't know the outcome of the report or if the

        detainee is ever disciplined or charged.  And, I don't write reports because the

        detainees don't care if you do—if I threaten to write them up, they laugh in

        my face and say things like "I don't give a fuck about a write-up, I'm fighting

        life, who cares!" or "That write up don't mean shit to me, it ain't going

        nowhere.

13.     I believe the sexual harassment is not taken seriously by the male officers

        because they often stop and look at female officers' bodies just like the

5

Plaintiffs 002344

inmates do.  I remember one time, a male lieutenant asked me if I was wearing boy-cut underwear.  I was offended.

14. Recently, in fall 2018, I was driving a bus a detainee got angry and said to me, "Hey, fuck you, I hope you get fucked up the ass, I hope this bus flips and you fucking die and someone rapes your dead body."  These comments made me so depressed because they were just so awful—I thought about how sad my father would feel if he knew that men talk like that to his daughter.

15. I have never received any training on how to address sexual harassment by male detainees.

16. The behavior by male detainees toward me is disgusting, inappropriate, and disrespectful.  Working at the Jail and seeing and hearing this sexual harassment has made me more jaded.  I feel like I used to be nice, sweet, patient, calm, and soft, and I am none of those things anymore.  Instead, I have become more aggressive, quick-witted, smart-mouthed, more guarded, less patient, and not as trusting, all so that I can protect myself.

17. The sexual harassment has also changed the way I interact with my boyfriend.  Whenever he makes comments about how he's thinking about me or wants to be intimate with me, I usually brush him off or tell him I don't want to hear that or for him not to talk to me like that.  I say those things, even though I know my boyfriend has the best intentions and respects me, because those comments make me feel like I'm at work.

6

Plaintiffs 002345

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

_11 Apr 19_
Date

_[signature]_
Signature

7

Plaintiffs 002346

## ROSE STURDIVANT DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Rose Sturdivant. I am an Administrative Assistant II for the Cook County Sheriff's Office. I have worked for the Cook County Sheriff's Office since approximately July 17, 2000. Currently, I am assigned to work at the Leighton Courthouse ("Courthouse") satellite location at 3150 W Flournoy, in the Pilot Program lockup area, where I have worked since November 4, 2013. Prior to that, I worked in Division 5 at the Cook County Jail ("Jail"), in the Records Department.

2.  As an Administrative Assistant II for the Sheriff's Office, I am responsible for entering information from the courts about the detainees' schedules and status. I input the Judge's orders into CCOMS so that the officers know when the detainees need to be moved. The Administrative Assistants are the heart of the jail; without us, no one would know where the detainees are supposed to be.

3.  The Pilot Program is testing a new paperless tracking system at the satellite Courthouse. My office is in the lockup area, where detainees wait to go to court and then back to where they are housed. I enter Judges' orders into the computer system and make sure that when the detainees leave the lockup area, they have an updated plan ("Mittimus," or "Mitt") for where they are

going. At 26th and California, the Judges send their orders to Records in Division 5, the Administrative Assistants process the paperwork, and then have to send it back to the Courthouse before the detainees get their Mitt. It can take a long time. In the Pilot Program, we can process the information right away. Eventually, this process will be applied in all Cook County courts. Because of the location of my work space, my job requires me to have interactions with male detainees daily.

General Description of Harassment

4.    During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced detainees exposing their penises to me, male detainees purposefully masturbating at me or in front of me, and detainees making lewd, vulgar, and sexual gestures at me on a regular basis.

Specific Incidents of Exposure

5.    I most frequently witness detainees masturbating in the waiting area. My office is in front of the waiting area, which is next to the bullpen. Detainees will line up there when it is time for them to be transported. The detainees will sit on the bench in the waiting area and take out their penis and play with it.

6.    I have also seen detainees expose their penises in the bullpen. Once, I saw detainee M.R. stand up on a bench and strip naked. Another time, I was walking to the courtroom, and had to pass by the bullpen. I saw a detainee

2

Plaintiffs 002348

standing in the doorway holding his penis in his hand, watching me and laughing.

7.    Detainees walk past my work area all the time and make lewd or sexual gestures at me, such as grabbing their penis while looking at me. There is a window between my work area and the waiting area. I put some poster board up in front of the window and covered all but a tiny crack. This way I know if I am needed or if anything happens, but I can't see what the detainees are doing.

8.    I remember one time when a detainee was standing in line to go back to the Jail. I was sitting in my office, with the poster board covering most of the window, but he saw me through the crack. He stepped out of the line, pulled out his penis, and started shaking it at the glass while walking towards me. He found the one open spot in the window that I had not covered up and targeted me.

9.    As another example, when I need to make copies, I have to walk past the detainees who are in the waiting area. The detainees often make vulgar gestures at me when I walk by, and one day, a detainee sitting in a chair in the waiting area took his penis out and started waving it at me.

10.    When I worked in Division 5, there was a time when our office was in front of some of the male housing units. The detainees in there used to stand up in the day room, look at me and my female coworker through the window, pull out their penis, and masturbate. Eventually they put up a cubicle board so

3

Plaintiffs 002349

the detainees couldn't see in the office anymore. This didn't stop them from masturbating though; since then, the masturbation problem has gotten much worse.

<u>Witnessing Harassment of Others</u>

11. I have seen other women who work in the Courthouse and the Jail experiencing the same or similar sexual harassment. For example, recently, in March 2019, a detainee was sitting on the bench in the waiting area with his hands in his pants, playing with his penis. He looked back and forth at me and the Deputy, Belinda Jones, while stroking himself.

12. I remember another time when detainee M.M. sat down in the middle of the floor of the waiting area, pulled out his penis, and started masturbating at a female Deputy. The officers put him into a holding cell, where he defecated and urinated into a milk carton and then used it to throw feces all over the waiting area while he was being escorted out back to the Jail.

13. I talk and complain about the masturbation all the time with my female colleagues, including Deputy Jones and others I work with in Division 5 and Receiving.

<u>Knowledge of Defendants</u>

14. Supervisors and managers at the Jail know about the detainees' behavior and their sexual comments towards me and other women. We all complain to our lieutenant at the Pilot Program, Rosemary Candelier. Deputy Jones always

4

Plaintiffs 002350

reports to the sergeant or lieutenant on duty what's going on so that the detainees can be moved or re-classified.

<u>Ineffectiveness of complaining and writing disciplinary reports</u>

15. I complained to my supervisors several times about detainee sexual misconduct. Nothing changed. Recently there's been fewer incidents of masturbation at the Pilot Program, but it's only because the Sheriff stopped letting the masturbators come to our Courthouse for their hearings, not because they aren't doing it anymore. The few masturbators that do come to the Pilot Program now are accompanied by the Emergency Response Team, so they are well-guarded and have to behave.

16. I cannot write my own incident or disciplinary reports. I did ask Sergeant Dillon to write up one detainee; the time when the detainee was standing in the doorway of the bullpen, masturbating at me. I felt so disrespected and angry when this happened, especially because the detainee was just standing there laughing like it was a joke. Neither Sergeant Dillon nor anyone else ever told me what the outcome of that report was.

<u>Lack of Training</u>

17. I never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees or how to respond if a detainee tries to rape me. I have had a Lexipol training about sexual harassment, but I don't think it specifically referred to harassment by detainees.

<div align="center">5</div>

Impact on Job Performance

18. The sexual harassment changed the way I did my job. I had to put poster board on the window of my work station which makes me less aware of my surroundings. Depending on what happens in the waiting area, this could be a safety concern.

19. Also, I make a point to try not to walk past the detainees as much as possible. If I have to go into the courtroom to pick up paperwork, I try to do it when there are no detainees in the building, which sometimes causes a delay or makes it harder to do my job. Sometimes I don't go to the bathroom when I need to because I have to walk past the detainees.

20. Furthermore, the harassment changed the way I dressed at work. I always wear pants and long shirts or sweaters that cover my rear end. I dress very conservatively.

21. The behavior by male detainees toward me is offensive, disrespectful, violating, threatening, and has caused me to fear for my safety.

Emotional Impact

22. As a result of the constant sexual harassment, I have suffered emotional distress. I get anxious whenever I see detainees because I don't know what they are going to do. I shouldn't have to be humiliated by detainees; they should not be allowed to behave this way. This makes me angry.

23. I feel like the Sheriff's policies do not protect me or keep me safe.

6

Decl. Ex. 769

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/16/2019

Date

Signature

7

Plaintiffs 002353

**Dora Tapia**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Dora Tapia. I have been a correctional med tech ("CMT 2") on the medical team since 1994. As a CMT 2, I visit select divisions at the Jail and dispense medication to the inmates and respond to inmates' medical requests. At the Jail, I have worked in Dorm 1 in Division 2, Dorm 2 in Division 2, Dorm 4 in Division 2, Division 3 Annex, Division 5, Division 6, Division 9, Division 10, and Division 11. My current assignment is to go to the pharmacy, pick up inmates' medication, enter the divisions, and dispense the medication to inmates on the tiers.

2.  All my assignments at my job require me to have interactions with male inmates daily. Once I enter the tiers, I call the men by name and most of the time the individual inmates come up to me to pick up their medication. Sometimes I go to the cell doors to distribute medication.

3.  Inmates sexually harass me at least once a week when I am distributing medication on the tiers in Divisions 9, 10, and 11. As soon as the inmates see a woman on the tier, they make nasty and derogatory comments and make sexual gestures. I have heard inmates say, "She's walking shaking her ass" and "She might be old but she's still hot." Unlike nurses, CMT 2s don't have officers escort them on the tiers, so we are always alone on the tier without security which makes me feel especially unsafe when the men are saying sexual things about my body. Just last week, a CMT supervisor ("CMT 5") told me that the CMTs are supposed to have officer escorts like the nurses do, but we don't. If I had an officer escort, I would feel safer.

1

Plaintiffs 002354

4.    At the end of March 2019, when I was distributing medication in Division 10, an inmate said to me, "give me that pussy, bitch." He was in a stairwell and I was on the tier on the other side of a door. No officer was there, and I did not know who the inmate was or which division he was from, so I just kept going with my job because there was nothing I could do.

5.    Men also expose their penises to me and masturbate at me. For example, in 2017, I entered the Division 11 and announced myself. One of the inmates knew what days I passed out medication on his tier, and when I got to his cell, two different times he exposed his penis to me, and a third time he was completely naked. I threw his medication at him and left the tier. Supposedly that inmate got written up and moved, but I am not sure, all I know is that I haven't seen him again. One of the male officers told me to throw the medication at inmates if they expose their penises or masturbate at me so that's what I do. I haven't received training on how to deal with these situations.

6.    Another time while working in Division 11 in 2017, the same inmate heard me entering the tier and purposefully started taking a shower in the upper level of the tier, so I would have to see him naked again. The shower area is right next to the entrances to the tiers, and the showers have no screens or curtains on them, so I can see everything when an inmate is showering. I verbally reported the inmate to the officers on the tier.

7.    Sometimes, inmates hear me entering the tier and call me over to their cells saying something like, "Come here, I have a question for you." When I get to their cell doors, inmates are standing at the chuckhole exposed and masturbating. This has happened to me twice.

2

Plaintiffs 002355

8.  I regularly see and hear inmates making the same nasty sexual remarks to female officers, such as calling them "bitches" or commenting on how their bodies look in the clothing they are wearing. I try to dress as sloppy as I can and never wear tight clothing, but that doesn't stop the harassment.

9.  The sexual harassment has changed my attitude towards work. I respond more negatively to inmates' comments and requests. I go to work with my "jail face" on and act completely differently at work. I am not friendly with inmates. I am very to the point with them and try to interact as little as possible with male inmates.

10. My male supervisor, a CMT 5, knows that inmates are masturbating at women because we come back from delivering medicine and tell him. We had such a big problem in Division 9 that we had a meeting to discuss the masturbation. The CMT 5 suggested that only male CMTs go to division 9, but my male co-workers responded that male and female CMTs make the same amount of money and have the same position, so it would not be fair. I also talked about the masturbation problem directly with my CMT 5, but we couldn't come to a middle ground solution.

11. Because of the sexual harassment, I am more resistant to interacting with male detainees. I don't want to hear the comments or the harassment because it just makes my job so much harder. I try not to go to Division 9 at all, and when I do, I go in as early as possible so that hopefully the inmates are still sleeping.

12. It used to be nice to come to work. Now it's a struggle to be there. Knowing where you're assigned and knowing the types of offensive and sexual comments you'll get in these areas makes it really hard to come to work. In the past, inmates didn't act like this. Sometimes the tiers are so chaotic because the inmates are out of their cells and in the day rooms. When the inmates are out of their cells and one inmate starts making comments, the other inmates egg each other on by laughing or joining in.

3

Plaintiffs 002356

This happens on every tier in all of the divisions where I have worked and I have worked in Divisions 2, 3, 5, 6, 9, 10, and 11. One time, I went onto a tier and the officer let the door close behind me, so it was just me and the inmates. The inmate closes to me said, "Don't worry, we're not gonna do anything to you." I responded "I know you're not," but I was putting on a front because I know that the door should not have closed behind me, and in the inside I was nervous, thinking "Oh my god I hope nothing happens." I did my job as quickly as possible and felt very lucky that none of the guys exposed themselves, masturbated, or tried to touch me.

13. The jail feels so saturated with sexual comments and men exposing their penises and masturbating that it is hard for me to focus on an inmate if they have a serious medical question.

4

Plaintiffs 002357

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/19/2019

_____
Date

_____
Signature

Plaintiffs 002358

# <u>ALEXIS TAYLOR DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Alexis Taylor. I am a Correctional Officer at the Cook County Jail ("Jail"). I have worked at the Jail since May 31, 2005. I have had different assignments within the Jail, including Receiving (RTC), Divisions 9, 3 & 8. I have been assigned to Receiving since August 2013. Before Receiving, my most recent assignment was Division 9.

2. As a Correctional Officer, I am responsible for the safety and security of detainees being held in pre-trial detention at the Jail, as well as maintaining order within the facility. My duties in Receiving include processing new detainees and securing and monitoring detainees in holding cells on the bridge. I process and monitor all incoming new detainees and detainees going back and forth to Leighton Courthouse and outlying courts. I escort detainees to and from their divisions through the tunnel, when assigned to the holding area. I also discharge detainees being released from the Jail.

<u>General Description of Harassment</u>

3. During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced detainees exposing their penises, purposefully masturbating at me or in front of me, and making disgusting, sexually explicit comments on a

Decl. Ex. 776

daily basis, hundreds of times, including comments about how they want to sexually assault me.

Specific Incidents of Exposure

4.    I most frequently see detainees expose themselves or masturbate in the bullpens in Receiving. At times, particularly between 2013 and 2016, I witnessed detainees pull out their penises and masturbate on a regular basis – I can recall at least thirty to forty times. Although less frequent now, I still see this behavior.

5.    Approximately three months ago, I was standing with my back to the bullpen in Receiving. A detainee in the bullpen kicked or tapped the glass to get my attention. When I turned around, the detainee had pulled down his pants, took out his penis, and began massaging it, masturbating within a foot of me. The glass wall on that bullpen is supposed to be so that we can see into the bullpen, but they can't see out. But at close proximity, as I was, he could see me and I believe he was staring at my butt while he masturbated, before he made a noise to get my attention.

6.    There have also been many times where I walked past the bullpen and detainees would be sitting on the bleachers masturbating. When this happens, I usually let a male officer know and ask them to tell the detainee to stop. I am uncomfortable dealing with detainees who are sitting there with their penises out and masturbating.

2

Plaintiffs 002533

7.    I remember an incident on the bridge, where visibility into the bullpens is not one-sided. Six or more detainees were standing there with their penises in their hands and aggressively masturbating as I walked by.

8.    When I was assigned to Division 9, before I went to Receiving, multiple detainees frequently stuck their penises in the chuckholes. They would also masturbate in the shower area. For example, in early 2013, I recall a detainee who stepped out of the shower area - he spit saliva and mucus out of his mouth, dripping it onto his erect penis, then he spit in his hand, and began twisting and stroking his penis as he masturbated and stared up at me while I was in the interlock. It was disgusting and is still an image I can recall vividly.

Witnessing Harassment of Others

9.    I know detainees also sexually harass other female Correctional Officers and Court Services Deputies. Many of my female coworkers have discussed incidents they experienced with me; all of us have been subjected to it. For example, Alicia Webster has complained to me about the incidents she experienced.

Sexual and Sexually Violent Comments

10.   I hear crude or sexual comments from male detainees directed at me on a daily basis. Detainees make sexually explicit and sexually violent comments, such as, "I'll fuck the shit out of you bitch," "I'll suck your pussy til it's dry," "Bend that ass over, I'll suck twenty snickers out of that," "Come sit on my face," and "Drop that pussy on my dick." I could go on forever with the examples of the

Plaintiffs 002534

vile things they say to me. At times, I have heard these types of demeaning comments on a daily basis, and even multiple times a day.

Knowledge of Defendants, Ineffectiveness of Complaining, and Discouragement

11.     My supervisors know about the detainees' behavior and their sexual comments towards me and other women because we have repeatedly complained. I verbally complained to my sergeants. They would go talk to the detainees, but nothing more was done. Some of my coworkers repeatedly wrote incident reports, but they never went anywhere. I was discouraged from writing incident reports because over and over I saw my female coworkers write reports to no avail. It did not seem to be a priority for our supervisors. I know female officers who have been told "this is what you signed up for" in response to complaints. The detainees who my coworkers wrote incident reports about never received meaningful consequences or discipline. My coworkers never heard anything back from our supervisors about their complaints. This further discouraged me from continuing to complain myself.

Ineffectiveness of Steps Taken

12.     The few steps that have been taken to address the harassment have been mostly ineffective. For example, although known masturbators are supposed to wear green jumpsuits now, the front is closed with velcro and detainees can easily tear them open. They can still access their penises. I remember an incident about a year ago when two detainees being escorted through the tunnel were in the process of exposing themselves to masturbate while wearing

4

Plaintiffs 002535

green jumpsuits. I yelled for a male officer to stop them. The jumpsuits were no barrier to them.

## Lack of Training

13.    I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to sexually assault me. There is a sexual harassment section during in-service, but my understanding is that is in references to fellow employees.

## Impact on Job Performance

14.    The sexual harassment changed the way I do my job.  For example, I avoid eye contact and avoid interacting with detainees when I can, especially when they are making disgusting sexually explicit comments to me. Looking in their direction seems to egg them on. Sometimes, I have avoided escorting certain detainees who have been verbally sexually harassing me on a particular day. I wait for someone else to escort them, and then escort the next group of detainees.

15.    If I see a detainee with his penis exposed and masturbating, I ask a male coworker to address the issue because I am disgusted and uncomfortable in that situation. It is demeaning and degrading for the detainees to openly masturbate at me or in front of me and other women. I also feel nervous and

5

Plaintiffs 002536

apprehensive whenever I have to be in close proximity to detainees, such as when I have to cuff them. It puts me on pins and needles, and I feel uneasy.

16. Also, when I have to escort detainees from holding to their divisions, I always wrap my sweater around my waist or wear a male officer's large coat so that detainees behind me will not stare and make sexual comments about my body.

<u>Emotional Impact</u>

17. As a result of the sexual harassment, I have suffered emotional distress. The harassment and masturbation at the Jail makes working there extremely stressful. At times in the past it made it difficult to be intimate with my partner. I feel the Sheriff's Office has ignored my wellbeing and the wellbeing of other female officers. The Sheriff's Office does not deem the comfort and security of female officers a priority. They treat us as dispensable. We are taken for granted.

Decl. Ex. 781

Plaintiffs 002537

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/25/2019
_____
Date

_____
Signature

7

Plaintiffs 002538

# BEVERLY TAYLOR DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Beverly Taylor. I am a Patient Care Attendant ("PCA") at Cermak Health Services ("Cermak") in Cook County Jail ("Jail"). I have worked at the Jail since approximately November 16, 2016. I am currently assigned to RTU on the third floor. I also float around to other floors in RTU and other divisions, such as the dispensary in Division 2. I could be assigned to anywhere in the Jail if needed.

2.  As a PCA at the Jail, I am responsible for providing medical services to the detainees that are housed in RTU and throughout the compound. For example, my job duties include taking vital signs, checking blood pressure and blood sugar ("accuchecks"), assisting nurses and doctors with medical treatment, responding to medical emergencies, and assisting in detainee wound care. In performing all of these duties, my job requires me to have interactions with male detainees daily.

General Description of Harassment

3.  During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced detainees exposing their penises to me, male detainees purposefully masturbating at me or in front of me, and crude or sexual

Decl. Ex. 783

comments on a daily basis, including regular comments about how they want to rape and sexually assault me.

Specific Incidents of Exposure

4.     I most frequently witness detainees masturbating on the deck. When I go to take blood pressures of the detainees on the deck, I sit in a glass-enclosed medical treatment area. Often detainees will approach the glass with their hands in their pants, rubbing their penises. Sometimes detainees approach the window where I dispense their medication, and they are half-dressed. To receive their treatment, they are supposed to be in full uniform. I don't want to see them naked. Even worse, sometimes they pull their penises out and shake them at me, or masturbate and try to ejaculate at me when they get up to the window for their turn.

5.     I remember detainee M.M. in deck 3F, who I know was a masturbator because he wore a green jumpsuit. He always wore his jumpsuit open and hanging down around his waist. More than once, when I would go to deck 3F to check blood pressures, he would come up to the side window of the medical area, with his hands in his pants. Then, he would saunter over to the front of the window, sit down, and start asking me questions like "did you sleep well last night?" Then, it escalated, and he would ask if I slept naked. Finally, he would flat out ask, "it ok if I masturbate to you?" I would tell him no, and to get away from the window, and then I would call the officer. He would run away to the back of the room, where I could still see him, masturbating while

2

looking at me. This made it really hard to service the detainees in front of me because I was constantly distracted by this man looking at me and masturbating. The male officer let him stand back there – he wouldn't call a sergeant or take him out of the deck until I was finished. I was left to fend for myself even though the officer is supposed to control the detainees and had the power to take him away.

6.     I remember another detainee, G.B., who was housed on deck 3A. When he came to the window for an accucheck, he said, "you have some big old titties, let me grab one of your titties." When I didn't respond, he said, "what if I put my dick on this window?" Detainee G.B. has done this kind of thing to me more than once. Whenever it happened, I would try to grab the officer's attention, but he wasn't usually nearby, and when he came back, detainee G.B would say something like, "I didn't say nothing to this bitch." Nothing happened to him. The officer would just let it go.

7.     Another detainee on 3A, S.W., was supposed to be wearing a green jumpsuit. I was supposed to give him ensure every day. When he came to the window, he almost never had the jumpsuit on right. I would tell him to button it up or straighten it, but he would say, "I know you want to see my dick." One time he said, "what if I stick my dick in your mouth?" Finally, the officer on the tier got sick of me complaining about this and offered to give S.W. the ensure for me so that I didn't have to see him.

3

Plaintiffs 002361

DocuSign Envelope ID: 39DE9FD9-E372-4C25-9FBD-8B32C51A94F5

8.     I also see detainees masturbate in other areas of RTU. For example, one time
I was working on the second floor, male detox. Detainee M.R. was in the
solitary confinement area, which was right across from the nurses' station.
He sat in the cell with his penis in the chuckhole, watching me and other
women as we walked by. He would try to learn our names, so that he could
call out to us and show us his penis. It was disgusting.

9.     I remember another time when I was standing in the hallway, and a detainee
worker who was pushing a linen cart stopped right next to me and rubbed up
against me. When I yelled and told him not to touch me, he said something
like, "oh, oops, I didn't mean to." The officer and the sergeant who responded
to my screams did not support me – they said since my back was turned, I
couldn't know he did it on purpose. I felt completely unprotected by the
officers.

10.    The worst was detainee B.M. He harassed me for a period of two years. He
was housed on 3G. Regularly, he would come to the window for an accucheck,
smile at me and ask me personal questions. I told him not to ask personal
questions. In return, he would say things like, "I don't really like big women,
but I'd fuck your fat ass." When I didn't respond and told him to stop, he
started writing grievances on me saying that I was out to get him, that I
smile at others and talk to others but not him, and that I was mad because he
wouldn't be my boyfriend. I complained a lot, but my supervisor actually told
me to apologize to him for not treating him well. I couldn't believe it. The

4

Plaintiffs 002362

union helped me and eventually my supervisors supported my refusal to service his tier and kept me away from him.

11.     I used to walk through the tunnel regularly to go to the cafeteria, another division, or my manager's office. Sometimes I would see big groups of guys walking through the tunnel, shackled in pairs with one free arm, pulling their penises out, whistling, catcalling, and shaking their penises at me and my female colleagues. This was too much for me; now I try to walk outside between buildings whenever I can, even if it's cold out.

12.     In RTU, the detainees are allowed to walk down the hallway unescorted if they are going to rec or coming back from a treatment. I am scared that one of them will reach out and grab me or rape me.

<u>Witnessing Harassment of Others</u>

13.     I have seen other women who work in the Jail experiencing the same or similar sexual harassment. Other PCAs have told me that detainee M.M.[1] will ask them to open their legs while they are sitting in the medical service area.

14.     Once I arrived at tier 3A to check blood sugars just as one of the nurses was finishing her med pass. When I got there, the nurse was screaming, and I saw detainee G.B. putting his penis away. He had put his penis in the window, right at face level. The hole in the window, which we pass

---

[1] This is a different detainee than the M.M. mentioned in paragraph 5.

Decl. Ex. 787

Plaintiffs 002363

medication and give treatment through, is big enough that he could have reached in and grabbed her.

15. I also heard that a detainee ejaculated on Nurse Erasca's arm in 3F during med pass.

<u>Sexual Comments</u>

16. I hear crude or sexual comments from male detainees directed at me on a daily basis. Aside from what I have already mentioned, detainees will crowd around the medical window, and as a group, comment on my body, and freely describe what they'd like to do to me. For example, I have heard detainees say, "Ms. T, you sure got some big titties," "ooh, you got a big ass," "I could rock your world," and "I could fuck you!" They also ask me why I wear a jacket to cover my body, ask me personal questions like whether I am married or do I have kids, and they try to get me to look at their penises.

17. Other PCAs have told me that sometimes detainees give them letters with their phone numbers, suggesting that they get together when the detainee gets out.

<u>Knowledge of Defendants</u>

18. Supervisors and managers at the Jail know about the detainees' behavior and their sexual comments towards me and other women. I complained to my supervisor when I first started, but he told me to ignore it. Then, my next supervisor after him wouldn't let us document the detainees' behavior because if we did, it would be in their medical charts and might be considered

6

as illegal. Now, I finally have a supervisor who encourages us to document these incidents by writing reports in E-MRS. All of my supervisors have been fully aware of how the detainees sexually harass us.

<u>Ineffectiveness of complaining and writing disciplinary reports</u>

19.   After all of my complaints about detainee sexual misconduct, nothing has changed. The detainees still masturbate, make inappropriate comments, and expose their penises to me on a regular basis.

20.   I can't write detainees up myself in CCOMS, but now I can report what happens in E-MRS. The E-MRS report is supposed to go to the department heads and to DOC. DOC is supposed to generate incident reports and disciplinary tickets, but I don't usually know if that gets done because no one follows up with me. Occasionally, investigators will come up to the floor to interview me but not every time. After a detainee gets a disciplinary ticket for masturbation, he will have to wear a green jumpsuit. Most detainees in green jumpsuits don't wear them properly and can still masturbate at me. Sometimes that detainee will also have to spend some time in the hole, but then a few weeks later he's back in my window.

21.   The few times an investigator has come to see me because a detainee exposed his penis or masturbated at me, they discourage me from pressing criminal charges and try to settle things by getting the detainee to apologize. I think they do this so they don't have to do the paperwork.

7

Plaintiffs 002365

22.    Some of my colleagues have told me that they don't want to press charges on detainees who masturbate at them because they are afraid of retaliation. If we file charges, the Sheriff's Office makes our address and phone numbers public, so the detainees or their friends can find us.

23.    The detainees will retaliate against us for complaining. They will threaten to harm us physically, but they will also threaten our jobs. If a detainee gets in trouble and gets put in a green jumpsuit because I complained, he will look for ways to write grievances on me and try to get me disciplined. For example, he will purposefully wait until I have completed my work and am packing up for the day, then come to the window and ask for an accucheck. When I say no, he wasn't there at the right time, he will complain that I refused to service him and that I have a bad attitude.

<u>Ineffectiveness of steps taken</u>

24.    Known masturbators are supposed to wear green jumpsuits, but the jumpsuits are ineffective at deterring masturbation. The green jumpsuits and pink IDs mean nothing. The detainees find a way to get brown uniforms and wear them instead. I know this because they will come to the window with a pink ID but wearing a brown uniform. Some of them will poke holes in the jumpsuits so they can pull their penises through the holes. Others will wear the jumpsuits all the way open and folded down, exposing their underwear.

8

<u>Lack of Training</u>

25.     I never received training from the Cook County Sheriff's Office or Cook County regarding how to address the masturbation or sexual harassment by male detainees, or how to respond if a detainee tries to rape me.

<u>Impact on Job Performance</u>

26.     The sexual harassment changed the way I did my job. I try to keep my head down. I don't look right out into the open area on the deck. When too many detainees get too close to the window, I will close the window and wait for the officer to come over. This makes my work go slower. No matter where I am in the Jail, I am always looking for an escape route if detainees come by unexpectedly.

27.     Furthermore, the harassment changed the way I dressed at work. I wear so many clothes I sweat like a hostage. I always wear my lab coat, no matter how hot it gets. I wear layers of clothes to obscure my body, to try to prevent the detainees from making comments like, "Ooh I can see your bra line." But it doesn't matter how I dress, the detainees still harass me.

28.     The behavior by male detainees toward me is offensive, degrading, threatening, intimidating, humiliating and causes me to fear for my safety. I feel disgusted and unprotected.

<u>Emotional Impact</u>

29.     As a result of the constant sexual harassment, I have suffered severe emotional distress. As a single woman, every time I see a man now I am

Plaintiffs 002367

afraid of what a man is thinking when he looks at me. I have a hard time getting close to men. I am on the defensive all the time.

30. Working at the Jail is extremely stressful. When I get off of work, I have to sit in the parking lot for 30 minutes to an hour before I get my head right to drive home. Not only that, but I am sometimes afraid to go to my car in the first place because they stopped assigning officers to provide security in the parking lot. When detainees bond out, they get out from the same exit which leads to the parking lot. They ask to use my cell phone, and follow me to the parking lot. Sometimes I have to turn around and go back in the building until they are gone. I am afraid they will sexually assault me.

31. My colleagues and I talk about how we sometimes drink, smoke, and eat too much to deal with the stress of working in this environment. I am starting to have blood pressure problems.

32. The constant sexual harassment has also affected my mental health. It has made me a very angry person. I feel backed into a corner all the time. I cannot get through one day without someone saying something about my body. Sometimes I think about strippers: they take their clothes off for a living and still men don't make as many comments to them about their bodies as detainees make to me about mine. I did not sign up for that.

33. I feel like the county doesn't care about us. They just need a body to do the job and not complain about how they are treated. I come there to work, not to be mistreated. This is how I pay my bills – I don't have a husband or any

10

Plaintiffs 002368

DocuSign Envelope ID: 39DE9FD9-E372-4C25-9FBD-8B32C51A94F5

other way to earn money. I am frustrated. I shouldn't have to put up with this just to support myself.

Decl. Ex. 793

Plaintiffs 002369

DocuSign Envelope ID: 39DE9FD9-E372-4C25-9FBD-8B32C51A94F5

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/5/2019
_____
Date

DocuSigned by:

9367BCD69BC04C3...
_____
Signature

12

Decl. Ex. 794

Plaintiffs 002370

# SHARON TAYLOR DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Sharon Taylor. I was, until August of 2018, a Correctional Officer at the Cook County Jail ("Jail"). I worked at the Jail beginning in December of 2002. I worked in various parts of the Jail in my role as a Correctional Officer, including: Division 6, Division 5, Division 4, Division 3 and Receiving. My last assignment at the Jail was in Receiving, and I was in that assignment for approximately four years.

2. As a Correctional Officer at the Jail, I was responsible for the safety and security of individuals being held at the Jail in pretrial detention and maintaining order at the correctional facility. For example, my job duties included, but were not limited to: processing new detainees at the Jail, performing security functions regarding detainees in holding, discharging detainees from the Jail, counting detainees, and providing security while detainees were in the dayrooms.

General Description of Harassment

3. During my employment at the Jail, I endured sexual harassment by male detainees, which they directed at me and at other female employees. I experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual

comments on a daily basis, including regular comments about my physical appearance.

<u>Specific Incidents of Exposure</u>

4.   I most frequently witnessed detainees masturbating while they were in bullpens waiting to go to court. Detainees would typically approach the bullpen bars or glass wall, expose their penises and masturbate. They masturbated right in front of me while I was trying to perform my job duties. In recent years, to the best of my recollection, these incidents happened approximately five or more times a week. Groups of detainees would deliberately masturbate in front of me at the same time. At times, there would be as many as ten to fifteen detainees masturbating in the same bullpen at the same time. I cannot recall the exact number of detainees involved in a specific group masturbation incident; I have lost count.

5.   For example, on or about April 2, 2018, while I was sitting at the front desk working the Male CCB Bridge, detainee ███████ from Division 9 was in the bullpen waiting to go to court. ████ pulled down his green jumpsuit and began masturbating at me. ████ proceeded to put his penis through the bullpen gate as he continued masturbating. I notified Sgt. Cruz of ████ behavior and Sgt. Cruz directed ████ to stop masturbating, which he did. After Sgt. Cruz left and went to speak to other detainees in a different bullpen, Cratic began masturbating again. It was only when Sgt. Cruz returned and told Cratic to stop again that he ceased his behavior.

2

6. I also witnessed detainees masturbating or exposing their penises while they were being escorted to and from holding, court, and their housing divisions. For example, I have seen many detainees, escorted by supervisors, walking with green jumpsuits undone on the top, their penises exposed, and masturbating.

## Witnessing Harassment of Others

7. I know that other women who work in the Jail experience the same or similar sexual harassment throughout the Jail. For example, I observed Officer Watkins walk past Bullpen 8 on the bridge. Multiple detainees exposed their penises and masturbated at her as she went by. Additionally, at times, I walked behind a group of detainees being escorted by other female Correctional Officers, and I heard the escorting officers instruct detainees to stop masturbating and say that they would write them up.

## Sexual and Sexually Violent Comments

8. I heard crude or sexual comments from male detainees directed at me frequently, when they exposed their penises and masturbated and at other times. For example, one detainee told me that he was waiting for me, that he would think about me when he was masturbating, and that he would come and find me after he was released from custody. I cannot recall the specific inmate who said those things, but I distinctly recall the incident. I have had other inappropriate comments directed at me including, "Bitch," "I want to suck your

3

pussy," and, "Let me lick your ass." I have heard these types of comments from detainees more times than I could count.

## Knowledge of Defendants

9. My supervisors know about the detainees' behavior and their sexual comments towards me and other women. Everyone knows about it. For example, Sgt. Cruz knows because of the incident with Redacted on or about April 2, 2018. I also spoke to Sgt. Plante about male detainees' behavior. Another way that supervisors know about the detainees' behavior is because they review the camera footage when we file incident reports.

10. Supervisors made no real effort to discipline detainees or set consequences for the sexual behavior toward women. I heard supervisors make comments such as, "It comes with the territory."

## Complaints, Ineffectiveness of Complaining, and Discouragement

11. I verbally complained, wrote incident reports, and filed charges about the sexual conduct directed at me numerous times, although I cannot recall the exact number. For example, to the best of my recollection, in or about April of 2018, I filed a criminal complaint against Redacted after he exposed himself and masturbated at me, but I do not know what the outcome was.

12. After writing multiple incident reports, filing charges and verbally complaining, I felt discouraged from complaining, and stopped writing incident reports regarding detainee masturbation for some time, because complaining did not stop the detainees' behavior. I wrote additional reports or had reports

DocuSign Envelope ID: 7A316AF1-E83B-4AB6-8F74-7EC42FE647E6

taken on my behalf and filed charges regarding a few incidents that were so blatant and disrespectful that I could not stand by and do nothing. Supervisors have told me that there was nothing they could do to stop the detainees.

13. Incident reports are ineffective because the detainees know that the Cook County Sheriff's Office imposes no real consequences for masturbating at women. Detainees have told me that they do not care, or they "don't give a fuck," if I write them up. Additionally, I have heard that incident reports are thrown out sometimes. Detainees also know that my female coworkers and I cannot defend ourselves because people have been fired or disciplined for defending themselves against detainees' sexual harassment.

14. It feels like the detainees have taken over the Jail. Earlier in my career at the Sheriff's Office, there were fewer incidents and detainees were disciplined for inappropriate behavior. Now, I feel that the Jail administration leans toward being on the detainees' side instead of taking steps to protect female employees and make the jail safer.

15. The few steps that have been taken to address the harassment have been mostly ineffective. For example, although known masturbators are supposed to wear green jumpsuits now, the front is closed with Velcro. While I was there, detainees would walk around with their jumpsuits open and they could easily access their penises. Detainees in green jumpsuits were held in a separate bullpen, but they continued to masturbate.

## Lack of Training

16. I never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tried to rape me.

## Impact on Job Performance

17. The sexual harassment changed the way I did my job. For example, I tried to avoid interacting with detainees that I knew had prior masturbation incidents. I avoided eye contact with male detainees as much as possible. On occasion, I requested a male officer to perform job duties regarding those detainees, such as escorting them to court.

18. In general, I looked down and tried not to look in the direction of male detainees to avoid even making them think I am looking at them. Male detainees viewed looking in their direction as an invitation to masturbate. Avoiding looking in their direction affected my ability to make the facility safe and secure.

19. The behavior by male detainees toward was unwelcome, offensive, harassing, degrading, humiliating, threatening, inappropriate and disrespectful and caused me to fear for my safety.

20. During every work day at the Jail, I experienced anxiety over potential harassment and exposure. Even if I was not the direct target of detainees' sexually inappropriate behavior on a given day, my female coworkers and I

6

expected that at least one of us would be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse. I think it happened to someone every day. I knew I might be sexually harassed or hear about a female coworker being harassed when I walked through the compound to my assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift. This caused constant stress and made it more difficult for me to focus on my job of keeping everyone at the Jail safe.

Emotional Impact

21. As a result of the constant sexual harassment, I have suffered severe emotional distress. For the last four years I worked at the Jail, I left work holding back tears and then cried in my car all the way home. The harassment and masturbation at the Jail made working there extremely stressful. I should not have had to come to work and be subjected to detainees exposing their penises and masturbating at me. I have anxiety about the sexual harassment in general and specifically about male detainees masturbating at me or possibly sexually assaulting me. I have experienced depression as a result of being sexually harassed at work.

7

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/14/2019

_____
Date

_____
Signature

8

# Declaration of Cecelia Thomas

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Cecelia Thomas. I have worked as a correctional officer at the Cook County Jail since February 21, 2000.

2. I have been assigned to Division 5, Division 10, Division 1, Division 9 (from 2010 until 2016), and Receiving. I have been assigned to Receiving for the last 3 years. I could work elsewhere on the compound for overtime or if I was mandated to work elsewhere.

3. In all of my assignments, I have had interactions with male detainees every day. In my current assignment, I have interactions with male detainees from all different divisions, new detainees coming into the jail, and detainees leaving the jail, almost every day.

4. Detainees will make sexual comments toward me and other female staff members in Receiving, but the frequency in which I experience it varies based upon where I am working that day. Sometimes, detainees will verbally sexually harass me multiple times per week. Other times, it is less frequent. I have heard detainees make references to my body and say things like "I'll bend you over," "I'll fuck you up the ass," and other similar comments.

5. I witness detainees exposing themselves and masturbating in Receiving in the bullpens on the bridge or in the tunnels almost every time I am walking past or assigned to work in those areas. I am assigned to work in those areas every few months and I walk past those areas weekly. When I walk through the bridge or tunnels, you have to have "tunnel vision" – I don't look in those bullpens so that I don't see the detainees masturbating at me and other women. Sometimes, I can see a motion that looks like they're masturbating, but I don't look to confirm it.

6. When I first started at the Jail, things seemed really under control. The sexual harassment was not common – no more than once a month, if that much. The detainees treated women with more respect. There were also consequences. For example, back then, I was aware that visits would be taken away from detainees as a consequence for disrespecting a female officer. I do not see detainees get visits taken away anymore.

7. Over the years, the sexual harassment has gotten worse. I moved to Division 9 in 2010, and then everything got worse. Detainees gradually got more bold – they went from verbally sexually harassing female staff, and then, when

1

Plaintiffs 002371

they realized they could get away with that, they began masturbating openly to female staff regularly.

8. I have written at least five incident reports for detainees masturbating, mostly when I worked in Division 9. I cannot access at least 2 of the incident reports because they are no longer in CCOMS. I do not know what happened to those reports.

9. For example, on September 20, 2012, In Division 9, I announced to the tier that I was going to do the count of the detainees, as usual. When I went to M.J.'s cell, he was lying on his back with his penis totally exposed, masturbating. I wrote an incident report. Incident Report No. [Redacted].

10. Sometime in 2013, in Division 9, Detainee C.L. was in the shower, looking at me while masturbating. I moved over so he couldn't see me, so he moved over so that he could continue to watch me while he masturbated. I kept moving somewhere else, and so did he so that he could stand in my line of sight. I wrote an incident report on this. The detainee denied masturbating or moving around the shower so that he could continue to watch me. I know that he was found "guilty" on his disciplinary report, but I do not know if he received any consequences. Incident Report No. [Redacted].

11. On October 29, 2014, Detainee C.H. was in the shower of Division 9, masturbating while looking at me. I told nearby female officers, Officer Esqueda, Officer Cordova, Officer Lilly, Officer Garcia to watch out because the detainee was masturbating, and they said that they had also noticed him masturbating and tried to move out of his line of vision. When the detainee noticed us looking at him in disgust, he continued to masturbate while looking at us. I turned off the shower, told the detainee to get dressed and exit the shower. He yelled at me to turn the shower back on and continued to masturbate. I called Sergeant Nalepa to the tier and reported the incident. I wrote an incident report and indicated that I wanted to press charges. The detainee was not moved off the tier. Incident Report No. [Redacted].

12. On another occasion, in September 2016, I witnessed Detainee M.M. standing on the sink of the bathroom connected to the Division 9 dental office waiting area, masturbating with the door ajar, so that he could look down at me sitting at the officer desk. I ordered for him to stop, but he did not stop. I called for assistance on the radio, wrote an incident report, and indicated that I wanted to press charges. Incident Report No. [Redacted]. I do not recall hearing anything after I wrote the incident report.

13. Sometime between 2013 and 2016, I went to court on two different occasions based on my reports of detainees exposing themselves and masturbating in

2

Plaintiffs 002372

Division 9. I recall that for one of the detainees, they did not pursue the charges that I brought because he was being tried for crimes with much larger sentences, so they dropped the indecent exposure charge.

14. In May 2015, I and other officers met with Nneka Jones Tapia to discuss our concerns about the jail. While we discussed many different concerns, one of the issues that the female officers mentioned was the rampant masturbation that was happening in Division 9. She sent us a follow up email on May 19, 2015 thanking us for meeting with her. See Exhibit A to this declaration.

15. In July 2016, I think I briefly spoke to Director Jones Tapia again. On July 21, 2016, I sent her an email to follow up with our conversation about the masturbation issue. I wrote that I feared that the lack of consequences for masturbating detainees would lead to an assault on an officer and I suggested some solutions, such as taking commissary and telephone privileges away and restricting time spent out of their cells if they are a repeat offender. Director Jones Tapia emailed me back saying that she would discuss it with Director Moreci, but I never heard anything after that. See Exhibit B to this declaration.

16. I have witnessed sexual harassment and assault happen to other women at the jail. In approximately 2015-2016, in Division 9, a supervisor (who I cannot recall) showed me and other correctional officers (who I cannot recall) a video of a female commissary worker, working right outside of the tier of Division 9, have her buttocks grabbed by a detainee. This made me feel like if the partner I was working with at any given time turned around or walked away, the detainees could take the opportunity to grab me, too. I worry that detainees could take the opportunity to sexually assault a female officer.

17. Sometime in 2016 or 2017, in Receiving, I viewed a tape of a female officer, Luz Canada, walking with a male officers, escorting a detainee, and the detainee grabbed her buttocks.

18. It's an unsafe environment. If these guys decided one day that they wanted to do something, like attack a female staff member, I believe the female staff would be in danger. Before the sexual harassment became so common, I never felt unsafe at work. I knew every day that the people I worked with would take care of each other. But now, there is a fear factor. I worry that the people making decisions on how to run the jail have never actually worked in the jail and don't know what it feels like to have the constant sexual harassment.

19. I'm here to keep the jail secure. The reason why the shower is visible so that I and other officers can monitor the detainees to make sure they do not get

3

Plaintiffs 002373

raped, beaten, or anything like that. But it has gotten to the point where the sexual harassment is so rampant that we constantly see detainees masturbating in the shower, so we don't want to look. But if I complain about it, I feel like the question would turn on me, like, "So why were you looking in the shower?"

20. I have never received training on how to respond to sexual harassment from detainees. However, from what I can recall, starting in around 2013, administration was putting out the message that detainees were allowed to masturbate in their cell. However, I never received any formal training or memo on this policy. Detainees masturbating in their cells affects officers who are monitoring them, doing rounds and counting detainees in their cells. Detainees in Division 9 were not only masturbating inside their cells – I witnessed detainees masturbating with their penises sticking out of the chuckhole on the door.

21. I feel like the supervisors and administration are not always on the women officers' side about the sexual harassment. Superintendent Victor Thomas has said to another officer, in front of me, "They are locked up, what do you expect?"

22. I believe that all the women at the Jail are sick of the sexual harassment. Everybody gets frustrated about the whole situation. The stress related to the sexual harassment incidents caused me to suffer from migraines more frequently. It also added more stress to my personal relationships with men outside of work because they have no idea the sexual harassment I've heard and dealt with all day at work. Sometimes, even friends and family don't understand because they do not know the extent of the sexual harassment.

_____
Cecelia Thomas

18 April 2019
_____
Date

4

Plaintiffs 002374

# Exhibit A

Decl. Ex. 807

# Thank you

Nneka Jones (Sheriff)

Tue 5/19/2015 4:37 AM

To: Donita Hill-Shumpert (Sheriff) <Donita.Hill-Shumpert@cookcountyil.gov>; Cecelia Thomas (Sheriff)
   <Cecelia.Thomas@cookcountyil.gov>; Jessica Barber (Sheriff) <Jessica.Barber@cookcountyil.gov>; Sentwali Smith (Sheriff)
   <Sentwali.Smith@cookcountyil.gov>;

Officers Hill-Shumpert, Thomas, Barber and Smith:

I just wanted to send you a note of thanks for meeting with me last week. I have a list of items that I will begin addressing next week. While I won't promise you that things will be perfect, I will promise to make your work environment better through your continued input and guidance. Thank you for having faith in me to make a difference. Have a blessed day.

Nneka

Dept. Ex. 808

Plaintiffs 002376

# Exhibit B

Plaintiffs 002377

# Re: Division 9

## Nneka Jones Tapia (Sheriff)

Fri 7/22/2016 3:32 PM

To:Cecelia Thomas (Sheriff) <Cecelia.Thomas@cookcountyil.gov>;

Thank you very much for emailing me. I will discuss this with Director Moreci and ask that someone follow up with you regarding your suggestions. Have a great weekend!

Nneka Jones Tapia, Psy.D
Executive Director
Cook County Department of Corrections
773-674-5959

**From:** Cecelia Thomas (Sheriff)
**Sent:** Thursday, July 21, 2016 8:03:44 AM
**To:** Nneka Jones Tapia (Sheriff)
**Subject:** Division 9

Good morning Dr. Jones!

I am writing per our conversation yesterday. As you already know, Division 9 is in need of major changes. Although Supt. Jones is putting forth a great effort to make these changes, he is only one person and can only do so much at one time. I would like to see some focus on the whole masturbation issue and implementation of consequences for such actions. It is my fear that the lack of control we have on this issue will lead to a sexual assault on an Officer. It is already understood that certain things cannot be done, so let's talk about what can be done. Maybe we can start with taking privileges from these offenders. Dir. Moreci had a great idea a few months ago that was never completely implemented. His idea was to restrict the female visitors for these offenders to mother's and grandmother's only. That would be a great start. From there repeat offenders may risk the loss of commissary, telephone and hours out. Please give this issue some thought and lets work together to solve such problems. Thank you in advance for your attention to this matter.

Humbly,

Ofc. Cecelia Thomas
Div. 9/7-3/Det. 2

Plaintiffs 002378

# **Danielle Thomas**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Danielle Thomas. I am a mental health specialist at the Cook County Jail ("Jail"). I have worked at the Jail since May 17, 2001. I have worked in various parts of the Jail in my role as mental health specialist, including: Divisions 2, 4, 6, 9, 10, Classifications (haven't worked in Classifications for 6 or 7 years), the Emergency Room in Cermak, and 2-West in Cermak. Additionally, I have worked overtime in the male residential treatment Unit (RTU).

2.  As a mental health specialist at the Jail, I am responsible for crisis intervention, clinical interviewing and assessment, group therapy, and mental health-related paperwork. I also act as an interdisciplinary liaison. Overall, I am responsible for the mental health needs of the detainees, and ensuring that they are treated safely and up to standards.

3.  Most of my time working at the Jail has been spent with male detainees. Now I work with male detainees 100 percent of the time, meeting with them every day. I have only worked with female detainees a total of two years out of the 17 years I have been at the Jail.

4.  During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced male detainees exposing their penises to me and

Decl. Ex. 811

Plaintiffs 001190

masturbating in front of me nearly weekly and constant remarks about my appearance and crude, sexual comments.

5.      For example, in 2016 I was called to the holding area outside a tier to speak with a male detainee before being transferred to segregation. Before a detainee is sent to segregation, a mental health specialist must speak with him to ensure he is not at a mental health risk going to segregation. I was speaking with this detainee, when he exposed himself and began masturbating and stared at me. I stepped back and went to the correctional officers' office to explain what happened. As I was leaving, the detainee threatened to kill my kids, husband, and dog. I felt so disrespected because I was trying to help this detainee and he didn't care at all. I felt horrible, was caught so off guard, and didn't expect to be exposed to or masturbated at in the slightest. I go into sessions with a therapeutic mind, trying to help the detainees and it is so hurtful when something like this happens.

6.      After leaving the holding area, the shift commander, Commander Clemmons (male), was called in. We reviewed the tapes and he confirmed that the masturbation was caught on tape. He took my statement and I pressed charges. Later, the investigator (also male) took my statement and said, "More than likely, he won't get any time." After that, I never heard anything regarding the incident. The lack of response to this incident just confirms that the administration is not taking sexual harassment and the masturbation incidents seriously. It was caught on tape and there was still

2

Plaintiffs 001191

no disciplinary action taken.  I feel like taking my statement was just protocol and the inmate will never be charged.  I am not hopeful that the sexual harassment will decrease because the charges never go through.

7.  I do not like going onto the tiers because there are 30 to 40 inmates and only one officer.  Sometimes, the officer has to stay outside the tier to open the doors and deal with other logistics.  If I was sexually assaulted on the tier, I don't think an officer would be able to get to me in time.  My department would say, "You know not to go into the tiers along;" but, this is what I am being instructed to do.  My department keeps scheduling me in the tiers alone, but I refuse.

8.  As another example, in 2017, I was working in the special management unit of Division 9.  A detainee was brought in and handcuffed to the wall.  He still managed to pull out his penis and masturbate at me.  I left the office and got an officer.  I asked for an incident report and to press charges.  I spoke with the investigator, but, again, I never heard back.

9.  Again, in Division 9, I was working with a detainee who was notorious for masturbating.  He pulled out his penis and began masturbating at me.  I called in an officer, the detainee was removed, I gave a statement to the officer and the investigator.  This was not the first time I've seen this inmate masturbate in public.   Still, I never heard back regarding the report.

10.  Detainees also verbally sexually harass and threaten me.  In Division 9, detainees can fill out Health Service Request Forms to apply for an

3

Plaintiffs 001192

appointment with a mental health specialist. One detainee wrote, "I need to speak to Ms. Thomas' big sexy ass." Another wrote, "just bend over. I won't put the entire thing in, just the tip." This made me feel extremely uncomfortable because my supervisor kept assigning me to these men even after I experienced sexual harassment. My department didn't care that I was being sexually harassed and said I could not deny these men services. I don't understand why another mental health specialist couldn't be assigned to these men. It is hard to be therapeutic and do your job when you are being subjected to sexual harassment. I am scared that at any moment, these detainees will expose themselves to me. I make sure they are handcuffed every time I meet with them.

11. On several occasions, officers ask me to run group therapy sessions on the tiers without officer supervision. When I run sessions outside the tiers, the inmates are usually handcuffed, so I feel safer. On the tier, male inmates can be out of their cells unhandcuffed and if any of the chuckholes are opened, an inmate is almost always masturbating with his penis exposed through the chuckhole. Because of the sexual harassment, I never feel safe enough to be on the tier without an officer; so, I refuse to do it. On about July 12, 2018, I was prepping to run a group therapy session in Division 6 and ten detainees walked in. The detainees said, "They said to come in here alone," referring to the officers. This has happened to me four or five times. None of my supervisors checked to see if an officer was escorting them and my partner

4

Plaintiffs 001193

(female) and I had no idea where these detainees came from.  It is so unsafe,
and I am worried about a plethora of things happening.  I am worried about
sexual harassment, sexual assault, rape, a fight breaking out, attacks;
overall, I just don't know what is going on.  Just knowing that one of the male
inmates will likely expose himself and masturbate and there would be no
officer around is enough to make me uncomfortable with a situation.

12.    Sexual harassment has become the culture at the Jail.  If you complain,
supervisors just say, "You should be used to it.  You just have to put up with
it because this is where we work."  It is just accepted as the way things are.

13.    In my experience, all or most women who have interactions with male
detainees experience this harassment in some form or another.  When male
inmates expose their penises, masturbate, or even make sexual comments
and comments about wanting to have sex with me, I feel unsafe and not
supported by management.

14.    I have never received training regarding how to address sexual harassment
by male detainees, decrease the opportunity for detainees to repeat the
behavior, or minimize the impact of the behavior.

15.    Sometimes, the harassment impairs my ability to do my job.  If I know a
particular person is going to masturbate, I tend to judge them before even
meeting with them.  Especially in group therapy, I am so paranoid about
being harassed that I'm not even comfortable enough to do my job.  It is not a
conducive environment for running therapy sessions.  Lately, I decline a lot

5

more visits because I am concerned about exposure, masturbation, and harassment.

16. The sexual harassment has changed the way I act. It is anxiety-provoking. I am always on high alert. Now, I dread going to work when I didn't used to. It used to be easy, you went in, did your job, and left. It used to be that exposure was extremely rare. Now, I am afraid because of the sexual harassment. I am always worried that I will have to argue with my supervisor about going into the tier alone.

17. I have anxiety about going into work and anxiety about what I will be forced to face next at work. The comments from male detainees are horrible, and the male officers talk about sex, rape and drugs too. You never know what you're going to get from a detainee and I'm scared about being put in a situation where I am sexually harassed or assaulted, and I don't have backup from male officers.

18. I am worried the problem will not get better until someone gets raped or sexually assaulted. Given everything that has already happened, what is going to stop detainees from going that far? If I ever got into that situation, I would hate to have to explain how I got there to my supervisors because they are so unsupportive.

19. I think consequences for male detainees sexually harassing women need to be more consistent and there needs to be more communication between departments.

6

Plaintiffs 001195

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

_1/15/19_

Date

_W. Thomas_

Signature

Decl. Ex. 817

Plaintiffs 001196

<u>**Declaration of Ricquia Thomas-Carter**</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.      My name is Ricquia Thomas-Carter. I have been a correctional officer at the Cook County Jail ("Jail") since 1997.  During my employment at the Jail, I have been assigned to Divisions 3, 5, 6, 8, Cermak, and External Operations, and I also have filled in when extra staff were needed in Divisions 1 and 2. Since 2013, I have been assigned to External Operations at Stroger Hospital. I worked in Division 6 from about 2010 to 2013, immediately prior to being assigned to External Operations.

2.      As a correctional officer, I am responsible for the safety and security of detainees and maintaining order at the correctional facility and other areas where I am assigned. In External Operations at Stroger Hospital, my duties also include processing detainees for appointments and guarding detainees who have been admitted to the hospital until they are discharged, which includes escorting them around the hospital when needed. I also occasionally guard points of entry to the Jail, where staff and visitors enter the Jail.

3.      In External Operations, I work with male detainees daily. When I worked in Division 6 and other divisions, I also worked with male detainees daily in a tier setting. While working on tiers and in dorms, I supervised 40-60 male detainees at a time and escorted them to their daily activities throughout the Jail.

4.      Throughout my employment, I have experienced male detainees masturbating in front of me or at me.  In the earlier part of my career it was much rarer and often happened in situations where detainees were masturbating privately, and I came across them. For several years, it has been targeted at me and other female employees. For the past several years, it has been the worst it has ever been during the time I worked at the Jail.

1

Plaintiffs 001455

5.      I speak with officers who work in different parts of the Jail during certain times, such as our annual training and when I am guarding the entry points to the Jail. The topic of inmate sexual harassment is raised frequently in our conversations. Female officers often relay to me incidents of inmate sexual harassment—whether it happened directly to them or to someone they know. It upsets me when I hear about other women being masturbated at and exposed to because I know how it feels and that it happens to women across the Jail, regardless of their appearance, age or body type. It makes me feel like all of us are constantly at risk.

6.      I also often discuss the sexual harassment incidents with other female officers who work directly with me. If an incident happens, we vent about it and discuss which male detainee did it, so that we know to be cautious and try to avoid that detainee. We also try to surround ourselves with male officers to deter detainees from sexually harassing us. But none of these things have stopped us from being sexually harassed.

7.      In one situation, in 2013 when I was working in Division 6, I was moving a group of detainees to outdoor recreation and directed them to all line up outside the deck in the hall. One detainee got out of line and "accidentally" moved up against me and touched my behind. In response, I forcefully yelled at all of the detainees to stay in line, because I could not identify the detainee who had stepped out of line and touched me. I felt horrible and disgusted.

8.      When I was working in Division 6 on the tiers, I endured lewd sexual remarks and catcalls from detainees almost daily. They would cat call me and audibly say things to and about me, like "she got a bad body," "Officer Carter has a big ass," "I'd bend that bitch over," and "I want to take you on a date when you get out of here." They would tell me to come into their cell so they could "eat my pussy" or "fuck the shit out of me." Because it was happening so frequently, I would just try to ignore it. If I wrote up an incident report every time this happened, I would be writing incident reports all day instead of watching the inmates and looking out for their safety. But the comments were very unsettling and made me feel worried for my own safety.

2

Plaintiffs 001456

9.    In my current position in External Operations, detainees routinely make unwelcomed comments about my physical appearance that I find harassing. I tell them to stop, but they regularly continue making comments throughout the time they're in my custody.  These comments also throw me off guard and make me feel uncomfortable.

10.   In 2015, I was working in the Intensive Care Unit of Stroger Hospital with another female officer. One of the detainees turned on his side in the hospital bed and stuck his penis out of the bed railing. He began watching me and masturbating. I yelled at him to stop. I told the male officers and my supervisor, Sergeant Herrera, about what had happened. Sergeant Herrera said that he would talk to the inmate, and he walked up stairs where the inmate was located.  But Sergeant Herrera never followed up with me after this incident or asked me if I wanted to file a report or filed one himself.

11.   In December 2016, I was processing male detainees for their clinic appointments at Stroger.  A group of male detainees were in the cell facing my desk. I was doing paperwork and after some time I looked up to find that all the detainees except one had been escorted to their appointments. The one still waiting was staring at me and masturbating.  I filed an incident report and investigators interviewed me about the event, but I never received any follow up or learned whether the inmate was disciplined. Therefore, I am not confident that my filing a report affected the inmate in any way.

12.   I am appalled by the male detainees masturbating at and in front of me. I feel discouraged about writing incident reports because it does not appear that they are effective or taken seriously. For example, I never received any follow up on the incident report I filed about the incident that occurred with the detainee waiting for his clinic appointment.  And one of my colleagues, a female correctional officer, told me that she filed an incident report about an inmate who exposed himself to her, and as far as she knew, the inmate received no discipline as a result. I also have heard from other female correctional officers that the hearing board review unit often focuses on flaws in the way an officer has written the incident report, instead of focusing on the detainee's behavior and holding him accountable for his actions.  I have found this to be extremely discouraging.

3

Plaintiffs 001457

13. Some of my supervisors have on occasion asked male officers to escort detainees who are wearing a green jumpsuit so that the female officers do not have to do it. On at least a dozen of occasions over the past year, I have witnessed male officers forcefully complaining because they were asked to do this.

14. This behavior by the male detainees, toward me and other female employees, is disgusting. I feel like us women at the Jail are on our own without our fellow male officers looking out for us—for example because of how much they complain when they escort detainees in green jumpsuits—which heightens how stressful and bad the harassment itself makes me feel. In my experience, male officers treat the sexual harassment as a mere inconvenience and not important unless a male detainee actually touches you.

15. To try to avoid harassing comments from male detainees about my body, I typically wear clothing that is one size too large and a huge sweater, which is hot and uncomfortable, sometimes so much so that I sweat. Still, such clothing does not prevent sexual comments being made by male detainees.

16. I have never received training regarding how to address sexual harassment by male detainees, decrease the opportunity for detainees to repeat the behavior, or what to do if an inmate tries to rape me.

17. Over the last five years, my stress and anxiety has significantly increased because of the sexual harassment. I try to hide my stress from detainees because I worry that they will sense it and it will just cause more sexual harassment. However, despite my best efforts, it causes me to be on edge, which makes me communicate with detainees in a very harsh tone. It does not feel good to be on edge all the time; it has a huge negative impact on my quality of life.

18. I often dread going to work because of the sexual harassment I know I will experience there. When male detainees simply call out my name, I immediately cringe and feel disgusted based on past experiences of sexual harassment, regardless of whether the detainee has ever harassed me.

4

Plaintiffs 001458

19. I never used to feel this way. I have experienced so much harassment at the Jail and heard so much about what other femle employees have experienced that I am concerned that a woman working there will be physically assaulted or raped because the sexual harassment is so brazen.

20. I now look at men in general in a negative light. I don't like attention or compliments. I don't trust men and I avoid areas where I know there will be large groups of men. For instance, when I go out with my friends, I do not like going to clubs or bars. If I do go, I do not like it when men talk to me there, and I do not accept drinks from men. I did not used to feel this way.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/01/2019

_____

Date

_____

Signature

5

Plaintiffs 001459

# EVETTE TREJO DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.     My name is Evette Trejo. I am a Deputy Sheriff in Courtroom Services assigned to the Leighton Criminal Courthouse ("Courthouse"). I have worked in Courtroom Services since 2001 and have had various assignments, including being assigned to different posts as needed (as a "floater") and to Bond Court in afternoons. I have been working as a floater and in Bond Court for the past two years.

2.     As a Courtroom Deputy, I am responsible for the safety and security of detainees being held in holding cells behind my assigned courtroom and attorneys who consult with the detainees. I am also responsible for the safety and security of individuals in the courtroom, including courtroom personnel and civilians. For example, my job duties include, but are not limited to: transporting detainees to and from court, securing detainees coming to court and during the court process, and monitoring detainees who are in the holding cells behind the courtroom. In all of these assignments, my job has required me to interact with male detainees on a daily basis.

General Description of Harassment

3.     During my employment as a Courtroom Deputy, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b)

Decl. Ex. 823

Plaintiffs 001205

male detainees masturbating at me or in front of me, and at times, ejaculating near me; and (c) crude or sexual comments on a daily basis, including regular comments about how they want to sexually assault me.

Specific Incidents of Exposure

4. I most frequently witness detainees masturbating with their penises exposed while they are waiting in the holding cells behind the courtroom, and as I am transporting male detainees to and from the courtroom through the holding area.

5. For example, on one occasion, my supervisor instructed me to fill in for another Courtroom Deputy in Courtroom 306. However, I was not told that the reason I was being sent to cover this post was because the Courtroom Deputy assigned to Courtroom 306 was in the process of writing up a male detainee for masturbating at her. When I arrived, the same male detainee exposed his penis and masturbated directly at me. When I complained to my supervisor, I was told not to document the incident because the male detainee was already being written up and "one write up is enough."

Witnessing Harassment of Others

6. I have seen, or have heard of, other female employees experiencing the same or similar sexual harassment throughout the Leighton Courthouse. For example, I am aware of an incident involving Deputy Sheriff Patti Jagielski where a male detainee exposed his penis and stuck it outside of the lockup's bars while masturbating.

2

Decl. Ex. 824

<u>Sexual and Sexually Violent Comments</u>

7.      I hear crude or sexual comments from male detainees directed at me on almost a daily basis. For example, male detainees have threatened to rape me. Additionally, when I walk by they have made comments such as, "Can I eat that pussy?" "Man, I would tear that up," and "Can I eat that?"

<u>Knowledge of Defendants</u>

8.      My supervisors know about the detainees' behavior and their sexual comments towards me and other women. Everyone knows about it. For example, when my supervisor sent me to cover Courtroom 306, my supervisor was aware that a detainee had just masturbated at a female deputy, and then was also aware when I reported that the same detainee masturbated at me.

9.      Supervisors make no effort to discipline detainees or set consequences for the sexual behavior toward women. I have made complaints to my supervisors about male detainees exposing themselves and masturbating. My supervisors told me that they would take care of the paperwork, but to my knowledge no such paperwork was filled out.

10.     Male coworkers also do not take the detainees' sexual harassment seriously. On one occasion, a male coworker told me that I was only upset about male detainees' exposing their penises and masturbating because I hadn't "seen a dick before."

<u>Complaints, Ineffectiveness of Complaining, and Discouragement</u>

3

Plaintiffs 001207

11.   I have filed incident reports relating to detainees' sexual misconduct, but it did not make a difference. When I verbally report male detainees' behavior to my supervisors, I have received threats of retaliation.

12.   After writing incident reports and complaining, I felt discouraged from complaining about detainee masturbation and eventually stopped because my supervisors did not take my complaints seriously. They don't want to do the paperwork.

13.   Incident reports are ineffective because the detainees know that the Cook County Sheriff's Office imposes no real consequences for masturbating at women. Detainees have commented about the lack of discipline and know that nothing will happen to them.

<u>Ineffectiveness of Steps Taken</u>

14.   The few steps that have been taken are ineffective. For example, although known masturbators are supposed to wear green jumpsuits now, the jumpsuits are not effective at stopping detainees from exposing their penises and masturbating. The Velcro closures on the green jumpsuits does not stay closed. Detainees can open them and easily access their penises. On one occasion, I even witnessed a detainee remove his penis in front of the judge in my courtroom. Sometimes detainees have a hole in their green jumpsuit in the crotch area, which they use to remove their penises. Further, supervisors do not require detainees to keep their green jumpsuits closed when they observe the jumpsuits open.

4

## Lack of Training

15.    I have never received training from the Cook County Sheriff's Office regarding
how to address the masturbation or sexual harassment by male detainees or
how to decrease the opportunities to repeat the behavior. I am concerned about
my ability to perform my job safely as a result of the lack of training on how to
handle male detainees' sexual harassment and masturbation.

## Impact on Job Performance

16.    The sexual harassment changed the way I do my job.  For example, now I do
not want to look in the direction of male detainees. I avoid interacting with
male detainees whenever I can. I do not make eye contact with detainees. This
makes it difficult to do my job effectively.

17.    The behavior by male detainees toward me is unwelcome, offensive,
threatening,    harassing,    humiliating,    degrading,    inappropriate,    and
disrespectful. This behavior has caused me to fear for my safety.

18.    During every work day at the Leighton Courthouse, I experienced anxiety
over potential harassment and exposure.  Even if I was not the direct target
of detainees' sexually inappropriate behavior on a given day, my female
coworkers and I expected that at least one of us would be subjected to lewd
comments, sexually inappropriate gestures, exposed penises, or worse.  I
think it happened to someone every day.  I knew I might be sexually
harassed or hear about a female coworker being harassed when I walked
through the compound to my assigned work location, while at work, while on

5

Plaintiffs 001209

DocuSign Envelope ID: 7DDA0BC8-B35E-471D-90C5-2912CFBA2F2C

breaks, and even while exiting the compound at the end of my shift. This caused constant stress and made it more difficult for me to focus on my job of keeping everyone at the Courthouse safe.

Emotional Impact

19. As a result of the constant sexual harassment, I have suffered severe emotional distress. The harassment and masturbation at the Courthouse makes working there extremely stressful. I have experienced severe anxiety. I find that I am constantly in fear that male detainees who I discipline will come after me once they are released. All of this has also affected my relationship with my husband. It is hard for me to be intimate with him after being sexually harassed and exposed to detainees' masturbation all day long.

20. The Sheriff's Office's lack of action to deter this behavior is extremely frustrating. I do not feel valued or appreciated at work. No one should have to go to work in these conditions.

6

Plaintiffs 001210

DocuSign Envelope ID: 7DDA0BC8-B35E-471D-90C5-2912CFBA2F2C

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

2/1/2019

Date

Signature

7

Plaintiffs 001211

# TIANA TUCKER DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Tiana Tucker. I am a Correctional Officer at the Cook County Jail ("Jail"). I started working at the Jail on approximately August 2, 2004. I am currently assigned to Division 10, where I have worked on and off for most of my time at the Jail. I have also worked in Receiving, Division 11, and External Operations ("Ex-ops").

2. As a Correctional Officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention and maintaining order at the correctional facility. For example, my job duties include supervising the detainees on the tiers, escorting detainees as needed throughout the compound to Court or medical appointments, escorting Nurses throughout the building when they need to medicate the tiers, organizing paperwork for detainee disciplinary tickets, and providing security for the detainees' visits with attorneys and civilians. In performing all of these duties, my job requires me to have interactions with male detainees daily.

General Description of Harassment

3. During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced detainees exposing their penises to me, male detainees

Decl. Ex. 830

purposefully masturbating at me or in front of me, and crude or sexual comments on a daily basis, which sometimes include threats of sexual assault or rape.

Specific Incidents of Exposure

4.      I most frequently witness detainees masturbating when I am escorting Nurses who are dispensing medication. The detainees see us from either the day room or inside their cells. They will call out to us, and when we look, they will have their penises out and be masturbating at us. Sometimes the detainees in the day room just walk right up to us, pull out their penis, and start masturbating. Sometimes they do it as a group.

5.       I have also seen groups of detainees on the tier crowd around the window between the tier, the interlock, and the visiting area and masturbate to the female visitors, including attorneys.

6.      As an example, on March 12, 2016, I was escorting Nurse Locke on Tier 1D in Division 10 while she was medicating the tier. When we walked into the interlock, Detainee M.M. put his penis into the chuckhole of his cell. He called out to me and when I looked, he started masturbating. When Nurse Locke was finished medicating the tier and we were in the interlock preparing to leave, a male officer let detainee M.M. out into the day room for his hour out. Detainee M.M. walked towards us and began blowing kisses at me. He winked and smiled at me through the window to the interlock. I wrote him up and requested to press charges masturbating at me, but he was

2

already in disciplinary segregation. The Sheriff's Police told me they wouldn't press charges because he was in his own "dwelling" when he stuck his penis in the chuckhole and masturbated at me. I found this excuse to be outrageous.

7.     As another example, in early 2018 on Division 10 tier 2B, I was preparing to lock up the detainees for the end of the shift and one of them got upset because he didn't think he had had enough time out. I called my supervisor, who put him into his cell. Once he was in there, he started yelling at me, saying he was going to beat me up, then rape me, and then beat me up again. I was scared.

8.     Another time, I was working Tier 2D, sitting in the bubble, watching the cameras. The cameras scroll to the different tiers on that floor. On the camera, I saw two detainees in tier 2A standing in front of the TV, masturbating. There was a male officer sitting on the tier, but he either didn't see it or didn't want to pay attention. I went over to Tier 2A to see what was going on, but by the time I got there they were not masturbating anymore. When I confronted the detainees, they told me it was none of my business. They said, "we weren't masturbating at you, so what do you care?" I get the impression that the male officers do not want to bother with masturbators.

Decl. Ex. 832

Plaintiffs 002381

<u>Witnessing Harassment of Others</u>

9.    I have seen other women who work in the Jail experiencing the same or
similar sexual harassment. For example, I have heard that detainees
masturbate at the female law librarians while they are supposed to be doing
their legal work in the law library.

<u>Sexual Comments</u>

10.   I hear crude or sexual comments from male detainees directed at me and my
female colleagues on a daily basis. They will comment on all of our bodies,
saying things like "she has a fat ass," "she has big titties," or "it looks like
she's wearing a wonder bra." If a female officer asks them to do something
they don't want to do, they will often respond with "suck my dick," or by
calling us "bitch." Then there was the time I was just trying to do my job by
putting a detainee back in his cell at the end of his time out and he told me,
"I will beat your ass, fuck the shit out of you, then beat your ass again." I will
never forget that.

<u>Knowledge of Defendants</u>

11.   Supervisors and managers at the jail know about the detainees' behavior and
their sexual comments towards me and other women. They know because I
complained to them and wrote incident reports they had to sign off on.

Plaintiffs 002382

<u>Ineffectiveness of Complaining and Writing Disciplinary Reports</u>

12.    There was a time when I complained to my supervisors almost every day about the masturbation and vulgar comments. Based on their reactions, it felt like nothing could be done. They just told us to be careful.

13.    I wrote at least three incident reports about detainee masturbation and sexual misconduct. No one ever told me what happened as a result of my write-ups.

14.    I tried to file criminal charges at least once, for the incident with detainee M.M., but the Sheriff's Police wouldn't pursue it because the detainee was masturbating in his cell. They had video of him sticking his penis through the chuckhole at me, then blowing kisses and winking at me, and they told me they couldn't press charges because he was "in his own dwelling." I was so shocked, I asked to see his lease. He doesn't pay for the right live there, the taxpayers do.

15.    Some male officers are sympathetic to the sexual harassment we endure, but others have told me that I should know that being sexually harassed comes with the territory of being a female Correctional Officer.

16.    The detainees know the rules but regardless, they masturbate on purpose to try to intimidate us or get a rise out of us. A detainee once pointed out the part of the inmate handbook that says they are not allowed to masturbate while they are in Cook County custody. I later found out he was a serial rapist, but even he was upset by the rampant exhibitionist masturbation.

5

Decl. Ex. 834

Plaintiffs 002383

<u>Ineffectiveness of Steps Taken</u>

17.    Putting the masturbators in green jumpsuits has had mixed results. On the one hand, it is good to know who the masturbators are because we know who to be mindful of. If we had to escort them somewhere, or if we saw them in the Law Library, we'd know. On the other hand, it is a problem because the detainees give us a hard time about wearing them. Sometimes they take the brown uniforms from other detainees and/or rip up their green jumpsuits so that they have nothing to wear. This causes tension between the detainees and the officers which makes it more difficult to do our jobs. Sometimes the officers just give up and let them wear what they want because it's easier.

18.    For some detainees, the green jumpsuit is a badge of honor. It shows they can act however they want. They can still reach their penises just fine while wearing the jumpsuits.

<u>Lack of Training</u>

19.    I never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me. I remember once I was told that if a detainee takes me hostage, the Sheriff's Office will not negotiate my release. That makes me feel like I am on my own – the Sheriff's Office doesn't support me.

Decl. Ex. 835

Plaintiffs 002384

<u>Impact on Job Performance</u>

20.     The sexual harassment changed the way I did my job. Since I have been constantly sexually harassed, I just put my head down and try not to look at detainees. If detainees call my name, I ignore them, and I never make eye contact. I am nervous whenever I go on the tier. This makes it harder for me to keep the Jail safe because I can't see everything.

21.     Furthermore, the harassment changed the way I dressed at work. I wear a baggy uniform and a size 3x sweater, even though I am normally a size medium or large, to cover my body. If I have to take off my sweater because it gets too hot, I either tie it around my waist or untuck my shirt to cover my backside.

22.     The behavior by male detainees toward me is harassing, degrading, threatening, disrespectful, ignorant, and makes me feel unsafe.

<u>Emotional Impact</u>

23.     As a result of the constant sexual harassment, I have suffered severe emotional distress. I am stressed out and have anxiety around other people. My mindset has been changed. When I am out in the world, I am uneasy around men, especially if they have their hands in their pants. At work, I am also afraid. I never know what a masturbating inmate is thinking or intending. I am afraid to go on the tiers because the detainees could be planning to rape me.

Decl. Ex. 836

Plaintiffs 002385

DocuSign Envelope ID: 7C0E5A75-1547-41D4-9415-DD5F688B5968

24.    The Sheriff doesn't understand what we go through. Whenever there's a bad situation, the supervisors ask what we, the officers, did wrong to make the detainees act this way or to make the situation go bad. I feel like the Sheriff's Office doesn't care about me. They think I should just deal with it.

25.    I feel like the Sheriff's Office has not made any attempt to address the situation. The officers have been trying to fix this for years, but the Sheriff's office didn't listen to us or change anything until a lawsuit was filed. They are not proactive in protecting us.

Decl. Ex. 837

Plaintiffs 002386

DocuSign Envelope ID: 7C0E5A75-1547-41D4-9415-DD5F688B5968

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/8/2019
_____
Date

DocuSigned by:

_____
1A581261BBE9492...
Signature

Decl. Ex. 838

Plaintiffs 002387

# LINETTE TYLER

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Linette Tyler. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since August 1995. I was assigned to Division 9 from 1995 to 2003, and to External Operations from 2003 to present.

2. When I worked in Division 9, inmates flashed their penises at me or masturbated at me. For example, one inmate masturbated at me for four days in a row as I was going through my count. When I wrote an incident report after the fourth day, my Captain asked me, "Are you sure you want to write it up like this?" I said "Yes," but nothing happened to the inmate. He masturbated at me two more times after I wrote him up, and I was so upset I told the Captain that he had to either move the inmate or move me. After that, the inmate was moved, but I don't know if he was disciplined or just transferred to another division.

3. Inmates have also purposefully brushed up against my body in the Cermak Building, when I would pick up inmates to take them to medical appointments. This has happened about three times—once when I worked in Division 9, twice when I worked in External Operations.

4. Now that I am in External Operations, I have less interaction with inmates at the Jail because I have been assigned to outside posts or posts dealing with visitors. My current 90-day rotation is at Stroger Hospital, where I take inmates to different clinics for their medical appointments.

5. Before March of this year, when I was assigned to posts inside the External Operations office in the basement of Division 9, the inmates from Division 9 who

1

Plaintiffs 002539

were outside on the deck would yell sexual comments at me when I was walking from the parking lot to the External Operations office. I heard these comments every single time that inmates were outside on the deck—on average, about twice a week. They would take off their shirts and yell things like "Can I go home with you," "You hear me speaking to you, you're just mad because you can't have this dick!" I cannot write up these inmates because I don't know their names.

6. I know that I am not the only woman who experiences sexual harassment at the Jail because I talk about it with my female co-workers. For example, one of my friends has called me upset because inmates at Stroger Hospital exposed their penises at her.

7. Experiencing unwanted and disrespectful sexual harassment while I am working has changed me. I always wear loose clothing to avoid attention. I used to be shy and innocent, but now I curse more and don't trust people. For example, the first time an inmate in Division 9 masturbated at me, I figured it was a mistake and he was not really doing that at me, but then the next time he masturbated at me, he looked me directly in the eye and smiled.

8. The sexual harassment has also affected my ability to do my job. It makes my job stressful, especially whenever I have to walk with inmates at Stroger—whenever I uncuff them for appointments, I get nervous. I have heard about female correctional officers in Division 9 being grabbed, and I am scared that could happen to me. Nothing seems to happen to the inmates if they do anything to the officers. I am always on the lookout for people, I don't trust being around people because I put them in the same category as the inmates.

Decl. Ex. 840

Plaintiffs 002540

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

05/01/2019

_____
Date

_____
Signature

Plaintiffs 002541

# Declaration of Barbara Unseld

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Barbara Unseld. I have been a correctional officer at the Cook County Jail ("Jail") since 1991.

2. I was assigned to Division 2 for the first 18 years of my career at the Jail. Then I was assigned to laundry from approximately 2010 until 2014. I was assigned to Receiving from approximately 2014 until 2018. Since 2018, I have been assigned to External Operations, where I work in an administrative building the compound.

3. Throughout my career, I have had regular interactions with male detainees. For example, when I worked in laundry, I had to go to all male divisions to distribute the laundry.

4. In my current assignment, I interact with male detainees who are on work assignments and who clean the office, lift and carry boxes, and other tasks. I also see male detainees around the compound every day when they are on their way to court or moving around the compound. I also could be assigned to work in different divisions based on a staff shortage. For example, in approximately December 2018, I was assigned to work in the Central Kitchen one day due to a staff shortage and I worked with male detainees.

5. The male detainees sexually harass me almost every day. I hear sexual harassment coming from the male detainees who I walk past when I'm walking around the compound. They say things like, "Hey baby!" and "She's got a big old fat ass," and if I don't respond, they will say something like, "Oh, you don't speak? Fuck you, bitch." When I worked in Receiving, I heard the verbal sexual harassment every day walking past the bullpens in the tunnels or in the male holding cells before they go to court. Detainees would get impatient and agitated in the male holding cells while waiting to go to court, and would often call for officers to ask when they are going to be transported to court. Sometimes detainees would call me a "bitch." When I worked in laundry, I heard the verbal sexual harassment every day in the divisions. There was not one day that I didn't hear verbal sexual harassment or see a detainee expose himself to me.

6. When I worked in Receiving, I witnessed detainees exposing themselves and masturbating at me many times.

1

Plaintiffs 002388

7. In Receiving, I worked in the control rooms numerous times. There are cameras in every bullpen in Receiving so that the officers working in the control rooms can monitor the detainees. The control rooms in the basement have glass windows so the detainees can see if a female officer is working in there. There are intercom buttons that officers or detainees can press so that officers in the control rooms can see and communicate with the person who is pressing the button. Many times, I have witnessed detainees press these buttons, and once I respond over the intercom to see what they need, they hear that its a woman's voice, and begin masturbating in front of the camera. Sometimes they would be completely naked. I recall a detainee who, every time he was in a bullpen in Receiving, he would say, "you know what time it is," and he would strip naked, press the intercom button, and masturbate in front of the camera. We have to view the cameras every time someone buzzes, though, because it is our duty in the control room to respond to those calls.

8. In laundry, I saw detainees masturbating and exposing themselves to me almost every day that I passed out uniforms in the divisions. I do not recall a day that I went to a division and I didn't see someone expose their genitals to me. Sometimes, I would walk right back off the tier and report to the supervisors that the detainees had their clothes off and were masturbating. It got to the point where I would give a speech when I returned to the tier and say, "There are two female officers here doing a uniform exchange. If you come to the door without clothes on or if you expose yourself in any way, I am not going to do your uniform change."

9. Sometime in approximately 2014, when I worked in Receiving, I wrote two incident reports in one day on two different detainees who were masturbating at me with their penises exposed. The first one, M.M., was in a holding cell next to the desk that I was working in Receiving, masturbating. I approached my supervisor, a sergeant, and told him to turn around to see the detainee masturbating. The detainee continued to masturbate. I told my supervisor, "I'm not going to sit here and watch him do that. He needs to leave." When my supervisor approached the detainee, the detainee denied masturbating and said that I was lying. I stepped out, went to the bathroom, and cried. I wrote an incident report and indicated that I wanted to press charges. My supervisor wrote an incident report, as well, since he witnessed it.

10. The other detainee who masturbated to me that day, C.J., was standing an arm's length from me in Receiving, waiting for me to scan his ID card. Out of my peripheral vision, I could see his hand moving. When I looked, he had his penis out and he was masturbating. That was the second time that someone had masturbated in front of me that day so I was very angry. I reported the incident to Lieutenant Cintron and he pulled the camera footage up to view

2

Plaintiffs 002389

the incident. I wrote an incident report and indicated that I wanted to press charges.

11. I saw Detainee M.M. a few more times after that incident. For example, I saw him in Cermak and he said, "Ms. Unseld, I love you," and looked like he was reaching toward his penis to see if he could pull it out and start masturbating.

12. I didn't hear any follow up on the M.M. incident until over a year later, when I received a subpoena to testify at M.M.'s court date. I arrived to court on the court date, along with other female correctional officers and deputies who had pressed charges against him, but I was never actually called to testify. I heard the detainee demand to see who was waiting to press charges against him, and I saw him peek into the room that we were sitting in to see who was in there. I also heard him say that we were all lying and that he had never "seen any of us before in [his] life." I heard that the detainee got a continuance, and I was not called back to court after that.

13. Sometime in 2017, I saw Detainee M.M. again in Receiving. When the detainee saw me, he called me out by name and said "I love you!" and "I'm sorry!" He then said, "You tried to press charges against me and they dropped the charges, it didn't even go anywhere!"

14. I didn't hear any more follow up to the C.J. incident until 2018 when I received a subpoena to come to court and testify at his sentencing hearing. He was being sentenced for murder. Another female officer and I were called to testify about his character. I testified at his sentencing hearing and talked about the incident in 2014.

15. The sexual harassment has affected my job because I am required to check the bullpens, but I don't want to check the bullpens because I'm afraid that I'm going to see someone exposing their penis. When I worked in the Receiving control room, I felt like I couldn't do my job to the best of my ability because I didn't trust that detainees weren't just ringing the intercom so they could masturbate in front of the camera.

16. The sexual harassment has affected me so much, that I cried both in and outside of work. It felt like a post-traumatic situation. I felt violated even though I was not physically touched at work. I didn't want to ever talk about work because I would break down and cry. Some days, just thinking about the sexual harassment at work would make me break down and cry – even today, I can barely talk about it without crying. My family members suggested that I see a professional. Finally, I went to EAP and talked to an EAP employee about the sexual harassment. EAP referred me to counselors

3

Plaintiffs 002390

and I called every number – two were disconnected and the one that I got through to never got back to me, so I never got to actually seek professional help.

_Barbara Unseld_
Barbara Unseld

04/24/2019
_____
Date

Decl. Ex. 845

Plaintiffs 002391

## Declaration of America Velez

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is America Velez. I worked as a correctional officer at the jail from March 10, 2003 until February 2, 2019. On February 3, 2019 I became a Deputy Sheriff.

2. During my employment at the jail, I have been assigned to Division 4, 5, 6, 3&8, 9, 10, Administrative Relief Team ("ART"), laundry (from December 2016 until April 2018), and the movement team (from April 8, 2018 until February 2, 2019). As a Deputy Sheriff, I work in the courthouse.

3. In all of my assignments, except for Division 4, ART and 3&8, I have had interactions with male detainees on a daily basis. When I worked in laundry, I had to go to Division 2 to pick up detainees who were laundry workers, and then we would take the laundry to Division 6 and distribute it there. Whenever needed, I would also distribute laundry to Divisions 9, 10, or other divisions in the compound. While on the movement team, I moved detainees all over the compound, as well as to and from the courthouse.

4. I first noticed the inmates masturbating at me and exposing their penises to me around 2014 in Division 9. The shower areas of the tiers were open, so the detainees would often masturbate in the shower while looking at me and other female correctional officers who were on duty to monitor them.

5. Masturbation toward female officers happens in other areas of the jail, too. For example, in approximately 2015 or 2016, in Division 5, a detainee who was walking to go back to his division pulled out his penis and started stroking himself. I told him to stop and he wouldn't listen. I called correctional Officer Etapa over to tell him about the incident and ask the name of the detainee. He gave me the detainee's name, I immediately called the sergeant on duty in Division 10, Sergeant Zurella, and reported the incident to him. I also spoke to my lieutenant, Lieutenant Hallihan. The lieutenant filled out the incident report with me. I indicated that I wanted to press charges.

6. As another example, in approximately April or May 2018, on the movement team, I was taking detainees from the courtroom to male holding in Division 8/RTU. After that, when I was exiting Division 8/RTU, I buzzed for someone to open the door and let me out. It took a few seconds, and before the doors opened, I saw a green jumpsuit detainee in a bullpen. The detainee had his jumpsuit completely off, and he was stroking his penis against the glass. I

1

Plaintiffs 002392

asked for the sergeant, Sergeant Rubiani, and reported the detainee's conduct to him. Sgt. Rubiani said, "Get used to it. That is what they do." I said, "No, I want to write a report." He said, "Go ahead, but he is not one of ours. He is in holding here for Division 9." So I went to the desk in RTU and look at the IDs to identify the detainee with Sgt. Rubiani's help. I wrote the incident report in RTU. Sgt. Rubiani did the administrative assessment. I indicated that I wanted to press charges.

7. Approximately two weeks later, I received a call from a Sheriff's Police Investigator and he asked if I wanted to press charges. I said yes. He said he would come to the movement team's office to meet with me. Two Sheriff's Police investigators came to my office (one male, one female) and handed me the complaint to sign and press charges against the detainee. I signed. However, I have still not been called to court or heard anything about that detainee's case.

8. As another example, in approximately May or June 2018, in the tunnel, I saw a male correctional officer, whose name I do not know, walking detainees. One of the detainees was in a green jumpsuit and I noticed he was handcuffed to the front, even though he was supposed to be handcuffed to the back. I saw the detainee pull his penis out and start stroking it while looking at me. I said to the officer, "You are going to allow him to be handcuffed to the front? He has his penis out! He is stroking his penis!" The officer said something to the effect of, "That's the way we have them handcuffed." I explained that they need to be handcuffed to the back, and he shrugged me off. The detainees heard what I said to the officer and started laughing, saying, "Haha, stupid bitch, mind your business!" and "Fuck you!" It was a shame.

9. At one point, I was retaliated against after writing incident reports on masturbating detainees. On November 17, 2017, was working in laundry at the time. On this day, I was assisting with a uniform change in Division 9. In Division 9, there are two tiers on each side. First, I saw an inmate masturbating on one tier. I called my supervisor in laundry, Sgt. Palmer. She did not answer. I called the office in laundry, where Officer Austin answered and said Sgt. Palmer was not there but would let her know. Officer Austin also said that I should call the supervisors in Division 9. I called Sgt. Rudnick via the radio, and Sgt. Rudnick and Sgt. Hein came up to the tier in Division 9.

10. I spoke with both of the sergeants in Division 9 in person about this incident. I stated that the inmate was masturbating. They told me to go work on the other tier, so I did. While I was working on the other tier, I witnessed another inmate sticking his penis through the chuckhole at me. I called Sgt. Rudnick

Decl. Ex. 847

Plaintiffs 002393

on the radio again. Sgt. Rudnick and Sgt. Hein came to the tier, and I stated, "They're masturbating... I'm going to write them up." I wrote two incident reports, but none of the supervisors wanted to put their names on the incident reports. Because they did not want their names on the report, I was reprimanded for insubordination. Additionally, the Jail did not pursue discipline against the inmates who did this to me.

11. I believe detainees continue to sexually harass the female staff members because they know they can get away with it.

12. The green jumpsuits are not working. Even when detainees are handcuffed in the back, they can pull the back of the jumpsuit tight so that the Velcro in the front tears open.

13. The sexual harassment is upsetting. I have experienced it at the Jail since 2014. It's a stressful environment for anybody to have to deal with this kind of sexual harassment – it's like an epidemic. You know at any given time that this could happen and you have to write a report and risk retaliation.

14. If it was your family, how would you feel? What if it was your wife, and you heard her come home every day talking about what she had to deal with at work?

04/02/2019

America R. Velez

America Velez

04/02/2019
_____
Date

Decl. Ex. 848

Plaintiffs 002394

# Declaration of Jamila Villarreal

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Jamila Villarreal (formerly Price until October 2017). I have worked as a correctional officer at the Cook County Jail since 2007.

2. I have been assigned to the Cermak building, Division 3, and Division 10. I have been assigned to Division 10 since 2012. For about two years, from 2016 until 2018, I was assigned to Division 10's "building control," in an office, monitoring cameras and opening doors. Since approximately September 2018, I have been assigned to Division 10's law library and Tier 2A.

3. In most of these assignments, including my current assignment, I have had interactions with male detainees on a daily basis. I did not have interactions with male detainees when I worked in Division 3 (in approximately 2007 until approximately 2009) and when I worked in building control.

4. Although I did not have interactions with male detainees myself when I worked in building control, I frequently witnessed female correctional officers in the building, mad and talking about how they had just been "clapped" (meaning masturbated at by male detainees). I have seen reports that detainees were masturbating, in front of the camera, in front of everybody, like they don't even care.

5. It has happened to me, too. In approximately in 2013 or 2014, in Division 10, a detainee was laying in his bed, and I knocked to make sure he was alive, as is required of correctional officers. He jumped out of the bed like a jack-in-the-box and I saw his pants were at his ankles and he was masturbating. I told him to stop, and he said "I'll stop when I finish." I wrote an incident report about this detainee.

6. Approximately one year later, I received a call from a Sheriff's Police investigator (male). It had been so long since the incident, the detainee had already been discharged out of the Cook County Jail. I believe the investigator said something to the effect that he was "closing up the case."

7. In approximately 2014 or 2015, Division 10, I read a report on the IMACS system that a tier of detainees from Division 10 went to outdoor recreation. The outdoor recreation area faces the administration's parking lot. The report explained that all of the detainees were masturbating in the direction of the administration's parking lot. From what I can recall, the report stated that they were masturbating to a director from the recreation area.

Decl. Ex. 849

Plaintiffs 002542

8. The next day, I was working in the lobby monitoring the visitors. I witnessed the mother of one of the detainees' who had been named in the report come in looking for her son, but when I looked the detainee up, I saw that he had already been moved out of the Cook County Jail the evening of the incident. I have never seen the County move a detainee out of the jail the same evening –or even at all—for masturbating to an officer. I also noticed a black tarp was placed on the Division 10 recreation area gate after this incident. I do not know if the black tarp is still there today.

9. In December 2015, I was working in living unit 4A in Division 10. I was taking a detainee to get ice for the living unit. Detainee D.M. was in the holding cell by the ice machine. He asked me if I had the time. I looked at my watch, and when I looked up to tell him the time, he had his penis out and he was masturbating at me. The shift commander's office was nearby, so I immediately went to the shift commander's office and spoke to Lieutenant Botica (male). Lieutenant Botica said that the detainee was waiting to be transferred to another building. He said, "He is leaving anyway. Do you really want to write him up?" and I said yes. I wrote the incident report. Lieutenant Botica mentioned in the "administrative assessment" portion of the incident report that the detainee was being transferred.

10. A few months later, I met with a male Sheriff's Police investigator. I signed the complaint indicating that I wanted to press charges. I never heard anything about this incident after that. I have no idea if the detainee was charged or disciplined. I do not know what came of it.

11. In 2007 and 2008, right when I got out of the academy, I was assigned to Division 10 for a few months. At that time, I experienced very little sexual harassment. It is much different over the last 6 years or so. When I worked on the Division 10 tiers before I went to building control, around 2016, detainees would holler out of the chuckholes things like, "I would fuck the shit out of her" when I wasn't looking, so it would be impossible to tell who said it. This type of verbal sexual harassment and comments about my body would happen every day.

12. I always wear a sweater to try to avoid the sexual comments, but they sexually harass me anyway. I wear a layer under my clothes – a complete outfit –under my uniform, no matter how hot it is to try to keep myself safe. In case a detainee ever pulled on me or ripped my uniform, I would have something on under it.

13. Before this lawsuit, male supervisors treated sexual harassment like it wasn't a big deal.

2

Plaintiffs 002543

14. The green jumpsuits are a joke. The detainees wear the jumpsuits with the Velcro open. I have seen detainees with green jumpsuits that are ripped all the way down to the detainees' pelvis. Detainees can still masturbate at me when they are wearing a green jumpsuit.

15. When detainees go to recreation where I am assigned in Division 10, none of them are handcuffed. So 48 guys from a living unit will go to recreation, and the ones in green jumpsuits will have their jumpsuits open and no handcuffs, giving them the opportunity to masturbate at me if they want to.

16. I have never received training on how to deal with detainee sexual harassment. I have only received training on coworker sexual harassment.

17. I'm always defensive, so if I see someone out on the street with their hands in their pants, I'm always suspicious.

_____

Jamila Villarreal

April 30, 2019

_____

Date

3

Plaintiffs 002544

# DECLARATION OF VICKI WASH

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.    My name is Vicki Wash I am a correctional officer at at the Cook County Jail ("Jail"). I have worked at the Jail for approximately 12 years. During my time at the Jail, I have been assigned to Division 2, 3, 5, 6, 8, and Receiving. I was assigned to Receiving from about May 2017 to February 2019. On February 3, 2019, I moved to Courts, where I currently have very little contact with inmates because I now mainly deal with the public.

2.    For about 10 years, I worked directly with male inmates. During those years I was working on the male tiers and had daily interactions with male inmates. When I worked in Receiving I worked mostly with female inmates, but still had contact with male inmates from all different divisions because every day I would pass by the bullpen in receiving where all the male inmates were detained on their way to and from court.

3.    When I was working on the tiers with the male inmates, I was sexually harassed. Inmates constantly made verbal sexual comments to me. For example, inmates regularly said things like, "Ms. Wash, let me hit that," and "Look this way, Ms. Wash. I wanna show you something" and when I would look at them, the inmates would have their penises exposed, and "Ms. Wash, I wanna fuck you." I try to black out and ignore the verbal sexual harassment. While working on the tier, the verbal sexual harassment happened about once every three months, but in Receiving, I heard these comments every day or every other day.

1

Plaintiffs 002395

4.      On an almost daily basis, the men in the bullpens in receiving also made vulgar sexual gestures at me.   I would see male inmates pulling out their penises, playing with themselves, jacking off, and flicking their tongues at me as I passed the bullpen.

5.      When I first started in Receiving in May 2017, I had to go to the bridge to pick up new inmates.  On the way to the bridge, you always have interactions with all types of detainees.  There are large groups of detainees all in one area.  I was waiting to pick up inmates from court and one of the male detainees in the bullpen had pulled out his penis, was masturbating and staring at me.  I told the other officers I was with, but I did not have the chance to write an incident report because by the time I had a free minute to report it, the inmate had already been taken back to his tier so I could not identify him.

6.      I have experienced male detainees masturbating while staring at me dozens of times in Receiving.

7.      Other times when I worked in Receiving, detainees would pass the bridge on the way to court or back to the tiers and if they were cuffed in the front, they were often masturbating.  A few times, the male inmates also rubbed their shoulders against mine while passing me on the bridge to or from the court.

8.      I have been walking with other women employees when I witnessed male detainees masturbating.  Once my coworker said, "I'm so tired of this.  We shouldn't have to be dealing with this."

9.      I think I've become numb to the sexual harassment because it's been going on for so long.  I try to block it all out.  I feel that this behavior from male detainees is extremely offensive and disrespectful.

2

Plaintiffs 002396

10. I think that most supervisors don't take sexual harassment very seriously and think that you should expect to have to deal with sexual harassment because of where you work. It is the expectation that this is going to happen. When I raise the issue that inmates are jacking off and something needs to be done, supervisors rarely ask who the particular inmate was or otherwise try to solve the problem. For example, when I complained about a guy flicking his tongue at me to a sergeant, he asked, "did he touch you?" When I said no, he responded, "Don't worry about it as long as he doesn't put his hands on you."

11. A few times when I was working on the tiers, I tied a sweater around my waste to cover more of my body. I have seen seven or eight other female correctional officers do this too, but it doesn't really make a difference, I still got comments from inmates. I don't think anything will change unless inmates are consistently and severely punished for sexual harassment.

12. The sexual harassment has affected other parts of my life outside of work as well. My boyfriend used to say that I needed to stop bringing my work home with me. I didn't even realize it was bothering me so much until he said something to me. It used to affect me a lot and I was letting it affect my home life. I had to consciously stop talking about it at home. It is already an extremely stressful environment and when you add the sexual harassment on top of it, it does not make it any better. It just adds to the stress and frustration.

3

Plaintiffs 002397

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/05/2019

_VICKI WASH_

_____        _____

Date                                                         Signature

# HESTER WASHINGTON-FARR

1. My name is Hester Washington-Farr. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately July 1997. I have worked in all of the divisions in my role as correctional officer, but have been permanently stationed in Divisions 3, 4, 8, 10, 11, External Operations, and Receiving.

2. As a correctional officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. I interact with inmates every day. For example, my job duties include facilitating movement throughout designated departments, ensuring no contraband enters the Jail, maintaining order, observing medical units, acting as a liaison between detainees and social workers, and providing a police presence to deter violence within the Jail.

3. At work, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis, including regular comments about how they want to sexually assault me.

4. While working at the Jail, I most frequently witness detainees masturbating with their penises exposed while waiting to appear before court in the bullpen. For example, in 2015, while working in receiving, one of the inmates began masturbating. I asked him to stop, he stopped for a moment, and then

Plaintiffs 001272

began masturbating again.  This continued to happen until the receiving process ended, which was about 30 minutes.

5.　　As another example, in May 2018, I was escorting a group of male inmates wearing jumpsuits on the bridge.  One inmate yelled to another, "Man, clap her!" meaning masturbate at me.  Next, this inmate asked to use the restroom; however, because he was in a jumpsuit, he had to be escorted to the restroom.  He was in the restroom for nearly 20 minutes.  Once he exited the restroom, he came up to the gate (in my direct vision) and started masturbating at me.

6.　　Every day the movement team brings a division of inmates with a history of masturbation to the bridge and holds them in a single cell.  Once, about 20 inmates started masturbating at me at the same time.  I heard one of them yell at an inmate in another cell, "Clap her ass! If you do, you can get a jumpsuit and come over with us!"  Some inmates take pride in masturbating at female staff.

7.　　I experienced crude and sexual comments so frequently that I have lost track of how many times I have heard such comments. For example, detainees have said:

- o "Man, look at her big titties!"
- o "I'd love to f*ck your p*ssy."
- o "I bet you'd suck my d*ck."
- o "I bet you have a fat p*ssy."

2

Plaintiffs 001273

8.  On another occasion, one inmate was walking in the tunnels with his pants down and his penis exposed. I asked the male officer escorting him if he saw the inmate. The officer ignored my comment.

9.  The Jail is an extremely hostile and depressing workplace. The frequency of the masturbation and sexual threats have led me to feel as if it is only a matter of time before a woman, civilian or officer, is raped. I firmly believe that the sexual harassment is only escalating and I am constantly looking over my back, paranoid that I will be raped. The Jail is overall an extremely unsafe working environment.

10. My supervisors know that male inmates masturbate at women employees. Everyone knows about it.

11. Management also knows that the incident report system does not stop masturbation. In the 21 years I worked at the Jail, I only wrote three incident reports because the inmates were not disciplined when I did. The only outcome I've ever received from reporting masturbation, was a male supervisor requesting that the inmate stop. Inmates rarely take these requests seriously. I have never heard of an inmate receiving added time to his sentence for masturbating at women.

12. Furthermore, there are so may reports filed that it is nearly impossible for the hearing board to hear all of them. In the past, it was not out of the ordinary for reports to go unprocessed. I have seen supervisors who are men tear up reports instead of filing them.

3

Plaintiffs 001274

13. Incident reports are ineffective because the detainees know that the Jail imposes no real consequences for masturbating at women. Masturbation and sexual harassment are accepted as standard behavior at the Jail. Officers are scared that if they discipline inmates, they will be suspended or fired.

14. The harassment impacts my ability to do my job by altering the work environment. I constantly fear for my safety and think about quitting every day. I am extremely frustrated with my supervisor Sgt. Plante's reaction to the masturbation. I do not come to work to see men masturbate at me and I am overwhelmed with the anger I feel at work. Every day when I arrive at work I think, "Is today the day? Is someone going to get raped today?"

15. Furthermore, the harassment changed the way I dressed at work. All of the women at the Jail check in with one another. We try to protect each other by saying, "You need to put a sweater on. You need to cover up more." It's one of the only ways we can try to protect each other even though it doesn't stop the masturbation.

16. Some detainees have said to me that they are surprised by the amount of masturbation at women at the Jail, and that, "It isn't like this in Jefferson or Livingston County. They'd kick our asses if we acted like this there."

17. The behavior by male detainees toward me was unwelcome, offensive, harassing, humiliating, threatening, and caused me to fear for my safety.

18. As a result of the constant sexual harassment, I have suffered severe emotional distress. Every time I go to work I feel more unsafe and must be

4

Plaintiffs 001275

more alert.  I get increasingly more frustrated and agitated by the workplace environment and the stress has started to spill over into my personal life.

Plaintiffs 001276

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

01/24/2019

_____
Date

_____
Signature

Plaintiffs 001277

# Declaration of Erin Watson

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Erin Watson. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately September 22, 2014. I have worked in various parts of the Jail in my role as correctional officer, including: RTU (residential treatment unit) starting in about September 2014 for about a year; then I worked in PRC (pre-release) for a little less than a year; and I then began working in Division 9, which is maximum security, in the Spring of 2016. In Division 9, I was assigned to various posts, including core officer, tier officer, and nurse escort.

2.  I have been out of work due to an on-duty injury since August 19, 2016.

3.  As a correctional officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention. For example, my job duties when I am assigned to the post of tier officer in Division 9 included, but were not limited to, supervising detainees' daily activities, inspecting their cells, releasing them from their cells into the day room of the tier, and putting them back in their cells at the end of my shift. In all of these assignments, my job has required me to have interactions with male detainees daily.

4.  During my employment at the Jail, I have endured sexual harassment by male detainees every day, which they directed at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees purposefully masturbating at me or in front of me; and (c) crude or sexual comments on a daily basis, including regular comments about how they want to sexually assault me.

5.  While working at the Jail, I most frequently witnessed detainees masturbating with their penises exposed through the chuckholes of the doors to their cells. Many of the chuckhole locks were broken so that the chuckhole doors were constantly open, and detainees would frequently expose their penises through the chuckholes. In Division 9, the masturbation occurred every day by multiple detainees. I have also witnessed chuckholes covered in detainees' semen.

6.  Additionally, I have witnessed detainees masturbating at me while I was working in the Control Room (the office where correctional officers work which overlooks the tier). For example, on my first day working in Division 9, I was the only woman correctional officer assigned to that tier and the

Plaintiffs 001473

detainees' masturbated at me all day long. I was working in the glass enclosed Control Room between the tiers. The detainees could see me in the Control Room from the day room because there is a glass window connecting the two areas. I estimate that about 30 detainees masturbated at me off and on for about 8 hours, from either the open showers in the day room, or from their cells.

7. I have observed other women who work in other positions being subjected to the same or similar sexual harassment. For example, sometime between Spring 2016 and August 2016, in Division 9, I was walking past another tier where I was not posted, and I witnessed a group of detainees standing in a day room. The detainees standing next to each other. All of the detainees in that line were masturbating while watching the female commissary employees pass out food in the day room on that tier.

8. I have experienced crude and sexual comments so frequently that I have lost track of how many times I have heard such comments. As an example, in Division 9, on May 16, 2016, a detainee said to me, "You like big cock, Ms. Watson. Do you want me to put my big cock in you?" I documented this comment on a handwritten note at the time. I may have written this incident in the log book that day, but I cannot recall.

9. I have also heard detainees yell sexual threats at me, such as "I'm gonna fuck you in the ass."

10. How no women officers have been raped in the Jail is beyond me. The frequency of the masturbation and sexual threats have led me to believe that the detainees will rape me or another female correctional officer.

11. My supervisors know about the detainees' behavior. It is open and obvious. Everyone knows about it.

12. I know management is aware of the masturbation problem because I have written multiple incident reports about detainees masturbating openly and supervisors have addressed the issue roll call.

13. For example, I wrote a report on June 2, 2016, in Division 9, when a detainee exposed his penis and began masturbating in the microwave room (which is also the interview room). I gave the detainee verbal orders to stop. The detainee asked me if he was going to be written up, and when I said yes, he said "I should knock your ass out."

14. I wrote another incident report on June 11, 2016, when a detainee was masturbating in the microwave room. I gave him verbal orders to stop and

2

Plaintiffs 001474

sent him back to the tier. When the detainee returned to the second floor tier, he continued masturbating while facing me.

15. After writing several incident reports, I was discouraged from writing incident reports about detainee masturbation because the managers are busy and processing incident reports takes away from other work that they do. How many times can I call a supervisor and say I have another inmate masturbating at me? I wouldn't be able to do my job if I wrote an incident report every single time it happened. Also, I have been told by multiple supervisors that it's "part of the job" and it's "what I signed up for."

16. Incident reports are ineffective because the detainees know that the Jail imposes no real consequences for masturbating at women. For example, I wrote an incident report about one detainee masturbating at me and he was not meaningfully disciplined. He was released from "the hole" shortly after his hearing and management allowed him to return to a "program" tier for better behaving detainees.

17. Because I was discouraged from writing incident reports, sometimes I would document masturbation incidents in the daily log book at the post. Supervisors would sign the post log book every day so they knew the masturbation was happening.

18. Some supervisors excuse the detainees' behavior rather than try to stop it. For example, in 2016, during roll call one day, former Superintendent Cozzolino stated that detainees "can't help it" (referring to masturbation) because "they are mentally ill." He also stated that this type of behavior is the job we "signed up for."

19. I have never received training regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

20. The harassment impacted my ability to do my job by altering the work environment. For example, correctional officers are required to inspect detainees' dorms and check for violations. However, I would inspect detainees' dorms as quickly as possible, because detainees would frequently masturbate toward me when I was doing the inspection.

21. As another example, I felt that I could not properly reprimand detainees for other violations out of fear that they would begin to masturbate at me. In approximately 2016, I witnessed a detainee in the day room with a sheet over his head. Normally, I would verbally command a detainee to remove the

3

Plaintiffs 001475

sheet from his head, but because this detainee was masturbating, I wrote an incident report instead, because I did not want to get near him.

22.  As another example, women officers would sometimes tape up pieces of paper over the windows in the control room connected to the tiers in Division 9, covering the part of the windows so that we could not see the chuckholes on the cell doors and so that we would not have to see as many penises sticking out of the chuckhole. Supervisors saw the paper on the windows because they visited the bubble. I recall some supervisors asking me and other officers what the paper was for, and we would explain it was because the detainees were constantly masturbating.

23.  Furthermore, the harassment changed the way I dressed at work. I would wear a sweater for nearly every shift in order to provide extra coverage of my body, to try to minimize detainees commenting on my breasts, even though the building was often quite warm. No matter how hot I was, even though the sweater didn't stop them, I would not remove the sweater.

24.  Some detainees have said to me that they are surprised by the amount of masturbation at women at the Jail, and that, "it isn't like this" in prisons downstate.

25.  The behavior by male detainees toward me was unwelcome, offensive, harassing, humiliating, threatening, and caused me to fear for my safety.

26.  As a result of the constant sexual harassment, I have suffered severe emotional distress. Specifically, I have suffered a loss of sleep, frequent crying, and recurring nightmares where detainees attack me, beat me, and then masturbate over me as I lie on the ground, injured. I get sick to my stomach just thinking about it.

_Erin Watson_
Erin Watson

2/18/2019
Date

4

Plaintiffs 001476

## <u>ALICIA WEBSTER DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Alicia Webster. I am a Deputy Sheriff in Courtroom Services assigned to the Leighton Criminal Courthouse ("Courthouse"). I have worked in Courtroom Services since 1993 and have had various assignments. I am currently assigned to Courtroom 303 and have been working there for the past two years.

2.  As a Courtroom Deputy, I am responsible for the safety and security of detainees being held in holding cells behind my assigned courtroom and attorneys who consult with the detainees. I am also responsible for the safety and security of individuals in the courtroom, including courtroom personnel and civilians. For example, my job duties include, but are not limited to: transporting detainees to and from court, securing detainees coming to court and during the court process, and monitoring detainees who are in the holding cells behind the courtroom. In all of these assignments, my job has required me to interact with male detainees on a daily basis.

<u>General Description of Harassment</u>

3.  During my employment as a Courtroom Deputy, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees masturbating at me or in front of me; and/or (c) crude or sexual

comments on a daily basis, including regular comments about how they want to sexually assault me.

<u>Specific Incidents of Exposure</u>

4.   I most frequently witness detainees masturbating with their penises exposed while they are in the lockup area behind the courtroom waiting for their cases to be called. For example, on or about October 3, 2016, detainee ███████ exposed his penis and began to masturbate in the lockup area of Courtroom 303, where I was assigned.

5.   Male detainees also expose their penises and masturbate while I am transporting detainees to and from the courtroom.

<u>Witnessing Harassment of Others</u>

6.   I have seen, or have heard of, other women who work in other positions experiencing the same or similar sexual harassment throughout the Leighton Courthouse. For example, I am aware of an incident involving detainee ██████ ███, during which he exposed himself to my colleague, Deputy Sheriff Susana Plasencia. She was in the elevator that is used to transport detainees to and from court. While the elevator doors were open, detainee ████, who was in a courtroom lockup cell, exposed his penis and began masturbating at Deputy Plasencia.

<u>Sexual and Sexually Violent Comments</u>

7.   I hear crude or sexual comments from male detainees directed at me on almost a daily basis. For example, male detainees have made threatening comments,

2

such as, "Watch yourself." Detainees have also said, "Look at me," while they were exposing their penises and masturbating.

<u>Knowledge of Defendants</u>

8. My supervisors know about the detainees' behavior and their sexual comments towards me and other women. Everyone knows about it. For example, Sgt. Hunter and Lt. Dillon know about the detainees' behavior because they have signed off on my incident reports.

9. Supervisors make no effort to discipline detainees or set consequences for the sexual behavior toward women. When I complained, my supervisors told me, "Yeah, we'll take care of it," but then did nothing.

<u>Complaints, Ineffectiveness of Complaining, and Discouragement</u>

10. I have filed at least one incident report relating to detainees' sexual conduct against Redacted in 2016.

11. After complaining, I felt discouraged from complaining regarding detainee masturbation because my supervisors did not take my verbal complaints seriously and did not follow up on my requests to document complaints. In general, I have not received responses beyond my supervisors' initial statement to the effect of, "Yeah, we'll take care of it." I stopped complaining because nothing changed in response to my complaints.

12. Incident reports are ineffective because the detainees know that the Cook County Sheriff's Office imposes no real consequences for masturbating at

women. Detainees have commented about the lack of discipline and know that nothing will happen to them.

<u>Lack of Training</u>

13.   I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees or how to decrease the opportunities to repeat the behavior.

14.   When I first began working at as a Courtroom Deputy, inmates did not expose themselves or purposefully masturbate towards Courtroom Deputies. I believe this extreme sexual misconduct has become prevalent in approximately the last five years. I feel that we are not adequately trained or prepared to handle this type of behavior.

<u>Impact on Job Performance</u>

15.   The sexual harassment changed the way I do my job. For example, I avoid looking at detainees as much as possible. I keep my head down when I can. I do not make eye contact with detainees. Since the Sheriff's Office has taken no action to stop the sexual harassment, I do not feel valued at work.

16.   The behavior by male detainees toward me is unwelcome, offensive, harassing, humiliating, degrading, inappropriate and disrespectful. This behavior has caused me to fear for my safety in the workplace.

17.   During every work day at the Leighton Courthouse, I experienced anxiety over potential harassment and exposure.  Even if I was not the direct target of detainees' sexually inappropriate behavior on a given day, my female

DocuSign Envelope ID: 30A6D770-88C6-4F8B-A95B-BAA8186A1F0B

coworkers and I expected that at least one of us would be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse. I think it happened to someone every day. I knew I might be sexually harassed or hear about a female coworker being harassed when I walked through the compound to my assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift. This caused constant stress and made it more difficult for me to focus on my job of keeping everyone at the Courthouse safe.

Emotional Impact

18. As a result of the constant sexual harassment, I have suffered severe emotional distress. The harassment and masturbation at the Courthouse makes working there extremely stressful. It affects my mental health. I find that I now have a harder time dating or trusting men. I am constantly worried about male detainees being released and trying to find me. I have become overprotective of my children as a result of the male detainees' behavior. I have started seeing a therapist to deal with the stress and anxiety caused by the male detainees' behavior.

5

DocuSign Envelope ID: 30A6D770-88C6-4F8B-A95B-BAA8186A1F0B

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/17/2019
_____
Date

DocuSigned by:

_____
Signature

Decl. Ex. 871             Plaintiffs 000983_REDACTED

Plaintiffs 000983

## ANGELIQUE WESTMORELAND DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Angelique Westmoreland. I am a Correctional Officer at the Cook County Jail. I have worked at the Jail since approximately April 10, 2000. Since approximately 2013, I have worked in Division 10 and Receiving. I am currently assigned to Receiving and have been in this assignment for around five years. My assignments within Receiving rotate from time to time, for example, between paperwork, male holding, and the bridge.

2.  As a Correctional Officer, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention and maintaining order at the correctional facility.

3.  I process new detainees that the Chicago Police Department brings to the Jail. I fill out felony paperwork. I also monitor the detainees in male holding when they are waiting to be transported to outlying courts or returning. Most of the detainees I interact with are male.

General Description of Harassment

4.  Whether I am at my post or walking around the facility, male detainees sexually harass me by exposing their penises, masturbating, and making inappropriate sexual or threatening comments.

5.  In the male holding part of Receiving, detainees in the bullpen stare at me and other female officers, expose their penises, masturbate, and make comments

about our bodies. Until approximately the end of 2017, when Superintendent Queen (female) moved Division 9 detainees into a different bullpen (in the "alley"), they were in the bullpen adjacent to our desk. I experienced multiple detainees exposing themselves and masturbating every day.

Specific Incidents of Exposure, Witnessing Harassment of Others, and Incident Reports

6.  In February 2018, while I was doing an identification check of male detainees leaving for the Illinois Department of Corrections, Detainee [Redacted] [Redacted] standing within one to two feet of me, exposed his penis and started masturbating at me. I ordered him to stop and he refused. Another officer came and removed him from the bullpen. I reported it to my lieutenant and wrote it up. The detainee did not face any consequences because he was leaving for IDOC.

7.  When I was assigned to Division 10, I experienced a number of masturbation incidents. One particular incident occurred in approximately 2013 while I was relieving another officer to take lunch. As soon as one detainee saw me come on the tier, he walked to the open entrance to the shower area and started masturbating while staring at me. I gave him a verbal order to go back to the tier. He refused and I wrote him up.

8.  Often when detainees in male holding exposed their penises and masturbated at me, I was with other female Correctional Officers. For example, Officer

2

Unseld, Officer Parnell, Officer Sanford, Officer Myart, and Officer Evans have been with me during masturbation incidents.

## Sexual and Sexually Violent Comments

9.  Detainees make sexual and sexually violent comments to me and about me. For example, detainees have said, "look at her titties," and that I have a "fat ass." Groups of detainees stand around and say things about me, like they would "eat her pussy." Detainees have also said, "When I get out, I'm coming to look for you," "Don't let me find you," and, "I'll catch you out in the street." The detainees describe the sexual acts they will do to me when they find me.

10. In February 2019, when I was walking through the hallway to my paperwork assignment in the old building, a detainee walked past me and said, "I'll fuck the shit out of you." The detainees have to go through the same hallway I do when they are coming from their divisions, through the tunnel, and on the way to male holding to be transported to outlying courts. Detainees make these types of comments routinely. It makes the work environment feel hostile to me. Detainees never talk to the male officers that way.

## Knowledge of Defendants

11. My sergeants know about the detainees' behavior because I have reported detainee sexual harassment to them. For example, I have reported detainees' masturbation and exposure to Sergeant McKinnie (male) and Lieutenant Calvin (female). For example, when detainees would masturbate at me and other female officers in male holding, we reported it to Sergeant McKinnie.

3

## Ineffectiveness of Complaining and Discouragement

12.    I did not receive notice of an outcome or resolution to my complaints. I don't know whether detainees received any discipline. I am discouraged from complaining because, despite my and other female officers' complaints, I have never witnessed as many incidents of detainee masturbation and exposure as I have within the last three to five years, as compared to the rest of my career.

## Lack of Training

13.    I have never received training from the Cook County Sheriff's Office specifically regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me. The in-service sexual harassment training regarding coworkers and supervisors does not deal specifically with detainee masturbation and exposure.

## Impact on Job Performance

14.    The detainee sexual harassment makes me on high alert all the time.  I am afraid. I never know when or where the detainees will expose themselves and masturbate, or worse. I have heard about incidents of detainees grabbing female officers and groping their butts. I worry that detainees will try to touch me sexually.

15.    I feel violated by the detainees' sexual misconduct. I feel vulnerable. The threatening sexual comments make me worry about what will happen when the detainees are released. I don't feel safe from detainees' sexual harassment

4

Plaintiffs 001435_REDACTED

Plaintiffs 001435

DocuSign Envelope ID: 1B2B48AE-5000-40C0-BA67-C0EDFF270D43

even when I am not at work. I have anxiety about running into detainees outside of work.

## Emotional Impact

16.   I have suffered severe emotional distress. I spoke to my doctor about how extremely stressful working at the Jail is. I was terrified to go back to work after maternity leave a few years ago because I knew what I was going back to. The detainee exposure, masturbation, and verbal harassment affect my personal life; it affects my marriage. My husband gets angry at the disgusting things the detainees do and say to me. He is very supportive and hates seeing me so upset. As a result, I have stopped talking to him about it, even when I need someone to talk to about upsetting incidents. It makes him feel helpless and unable to protect me. This is my livelihood. There are times that it is difficult to make myself go to work. I should not have to deal with detainees sexually harassing me every day. The CCSO has done a poor job of handling the detainee sexual harassment problem. My female coworkers and I feel like the CCSO does not care about us; we are not being protected.

Plaintiffs 001436_REDACTED

Plaintiffs 001436

DocuSign Envelope ID: 1B2B48AE-5000-40C0-BA67-C0EDFF270D43

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

3/13/2019
Date

Signature

6

Plaintiffs 001437_REDACTED

Plaintiffs 001437

# RONICA WILLIAMS DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Ronica Williams. I am a Correctional Rehabilitation Worker (CRW) at the Cook County Jail ("Jail"). I have worked at the Jail since approximately August 2013. I have worked in various parts of the Jail including: Division 1, 9, 4, 8/RTU, and 6. I have been assigned to Division 6 since approximately January 2018.

2. In all of these assignments, my job has required me to have interactions with male detainees daily. Even when I was working in Division 4, I would occasionally see male detainees in the tunnel or another division if I needed to be in that division for a particular reason.

3. At work, I experience sexual harassment by male detainees, which they direct at me and at other female employees. I experience detainees exposing their penises to me; male detainees purposefully masturbating at me or in front of me; and sexual remarks about my appearance. The inmates do this to me throughout the Jail, but it has been the worst for me in Division 9.

4. When I first started working at the Jail in 2013, I was assigned to Division 9. Occasionally, inmates would masturbate openly at me and other women. When I was reassigned to Division 9 in 2015, I witnessed inmates masturbating through the chuckhole of their cells daily. For example, there are times when I was serving the tier and the detainees they would prolong

Plaintiffs 001173

our meeting by continuing to ask questions, then when I looked down the detainee would be masturbating in the chuckhole. The inmates did not do this to men.

5. As another example, detainees would also purposefully prolong my time so that other inmates could masturbate at me. Once, I was responding to an inmate at his cell and another detainee was standing in the corner looking at me and masturbating through the chuckhole.

6. Inmates masturbating and exposing their penises has happened so frequently to me and other women employees that I have lost count of the number of times.

7. It got to the point where I stopped servicing detainees on the tier. Instead, they would have to come to meet with me at the door, but that didn't make the matter any better. Detainees would crowd around me and the officer at the door. Once, a detainee left the crowd and went to the top of the tier where he could see me better and started masturbating. When I looked up, I could see him stroking his penis while looking at me. I wrote it up in an incident report. When I reviewed the video footage I saw the inmate standing in the crowd facing me masturbating. Then, he walked away, stopped at the table on the tier to pick something up. Next, he went to the top of the tier to finish masturbating at me.

8. I have heard detainees make sexual remarks about my appearance. For example, a detainee said to me, "I can tell what type of body you have even

2

Plaintiffs 001174

though you don't walk around with tight clothes, and that makes me want you even more because I can see you don't want that type of attention."

9.     Almost daily I hear detainees yell things out to me such as, "you are really beautiful;" "you got a fat ass;" "you know you're my baby;" "you know you're my wifey;" and "I want to get to know you better." They have also commented on how I should wear my hair, and they pile at the door when I go to collect grievances and make sexual moaning sounds. A lot of the time I can't even make out what they are saying because so many of them are speaking at once.

10.    The Jail management knows that male inmates sexually harass women because there have been numerous verbal complaints and incident reports. Incident reports are sent to the deputy directory, director and your immediate supervisor

11.    Management is aware of the masturbation problem because I have written multiple incident reports about detainees masturbating openly at me. When I report the incidents, the responses I get from management and other male employees, make me feel like they are saying being masturbated at is my fault or it's the way I am handling the situation. I recall being told "if you would just say something back to them, they would stop doing it." I was also told that if I humiliate them it would stop. I shouldn't have to change who I am so I'm not harassed, it just shouldn't happen.

3

12. As another example, I submitted a report regarding an inmate masturbating at me, and later called into to my Deputy Director's office because something was missing from my report. After we discussed the incident report he said to me, "You know you've been late a lot lately." He then asked me if I was looking for another job. I asked him why he would bring this to me now when I'm complaining about being sexually harassed. He replied "I was going to do it anyway." His response made me feel like I shouldn't have said anything about the inmate masturbating. I felt like I was being targeted and attached because I complained about being harassed. I feel like there is no care or concern even though this is happening to me, yet again.

13. The report I filed went through the investigation process and I was contacted by an investigator regarding the incident. I was asked if I wanted to press charges on the detainee but declined. When I write a report on a detainee for sexual harassment my goal is to have them removed from my tier, not to press charges. I don't press charges on detainees because I fear for my safety. When you press charges on a detainee you have to give up personal information about yourself, and the detainees are very resourceful. I have been told by management staff and other employees that when they go to court the judge won't do anything anyway. I don't see the point in going through all of that and exposing myself, and in the end, nothing happens to the detainee.

4

Plaintiffs 001176

14. Inmates masturbate at lieutenants too. For example, I heard that a detainee was in the shower masturbating while he was looking at a female lieutenant. The lieutenant submitted a report about the incident and tried to pressed charges. From what I understand, the detainee was not charged because he was in his own space and it wasn't considered a punishable offence.

15. After writing several incident reports, I felt discouraged from writing incident reports about detainee masturbation because the lieutenants and other management are busy and processing incident reports takes away from other work that they do, as well as my work. I wouldn't be able to do my job if I wrote an incident report every single time it happened. Also, why would I waste my time writing reports when nothing is being done to the inmates anyway? I have been told by male staff members in response to discussions about sexual harassment by detainees, "You know where you work, this is the Jail," and "You have a job to do."

16. Other women have also been deterred or discouraged from reporting this harassment. For example, I heard that CRW Swanigan was constantly being sexually harassed by one detainee, which she reported. When that detainee was released from the Jail he called her while she was on duty saying, "I told you when I got out we could be together." Swanigan reported the call to management and was told that they couldn't pull his records, and nothing could be done. What happened to CRW Swanigan is exactly why I want to have as little exposure with the detainees as much as I can. I feel extremely

5

Plaintiffs 001177

unsafe.  The next step for the detainee is to look up her home address and show up at her door.  I don't feel protected by the jail administration.  I just don't feel safe.

17. At some point things got super volatile in Division 9, and a few colleagues in my department and I had a discussion on how we can still get our grievances but have less exposure with the detainees.  We shared our thoughts with management, but nothing ever happened.  After many follow-ups we were eventually told "you all still have a job to do."

18. When a group of male detainees masturbates at female employees, I feel they do it to show how much more they are in charge than we are.  When the detainees saw that things weren't happening, and they weren't being punished, the sexual harassment started to spread like wildfire.  It's as if they are thinking they can harass women and get a slap on the wrist, but we still must come to work day after day and watch them do it.

19. Inmates who harass women frequently escape discipline, or are not disciplined because there are effectively no consequences.

20. Incident reports are ineffective because the detainees know that the Jail imposes no real consequences for masturbating at women.  For example, if a detainee is placed in the hole for sexual harassment, he may spend a few days there, but he's back on the tier before the completion of his punishment. We are often told it is too crowded.

6

Plaintiffs 001178

21.   As another example, if detainees hear they are getting written up for sexual harassment they say, "Imma just go down there and be back in my cell the next week."

22.   Detainees at Cook County have told me that this behavior does not take place at other correction institutions they have been at. "It's totally different at the prison, it's not like this." I have also heard "It's different at Statesville," and "All this stuff that go down here don't happen in the prison."

23.   I have never received training regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

24.   The sexual harassment problem has escalated, and it didn't use to be like this. I dreaded going to work because the detainees knew they have all the power in this situation and I fear what they might do next. On the flip side, the lack of support from management and how they handle the harassment is also discomforting. The way things were being handled promoted and escalated the harassment of female employees, because of that, I don't feel like I have the support of the people above me

25.   The harassment impacted my ability to do my job by altering the work environment. For example, while in Division 9 I limit contact with inmates as much as possible. I stopped collect grievances on the tier; instead, I would stand in the doorway with an officer between me and the inmate. Me and

7

Plaintiffs 001179

other co-workers drafted a memo with ways to collect grievances, so we don't have to go down tier to try to limit interaction with inmates.

26. As another example, I avoid certain areas such as the tunnels, especially in Division 9. If I must be in the tunnel, I try to time it if possible, I try to time it up to when detainees have already gone to court or are back in their cells. Going in the tunnel causes me a lot of anxiety.

27. The harassment changed the way I dressed at work. I wear a sweater and my clothes baggy on every shift in order to provide extra coverage of my body.

28. The behavior by male detainees toward me is unwelcome, offensive, harassing, humiliating, threatening, and caused me to fear for my safety.

29. As a result of the constant sexual harassment, my marriage has suffered. My husband says I am moodier and more temperamental. Also, my husband and I were trying to have a baby, but I don't want to have sex regularly. I had trouble having sex with my husband because of all the penises I have to see daily.

30. Furthermore, I started seeking therapy because of the harassment. I was attacked as a child and the oversexualization at work brought up a lot of stuff from my past.

31. The "hands off" policy has contributed to the sexual harassment. For example, the employees at the Jail fear being sued and/or losing their job. We have no authority to discipline the detainees; therefore, the detainees are not dissuaded from their behavior.

8

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

01/18/2019

_____
Date

_____
Signature

Plaintiffs 001181

# CYNTHIA WILSON DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.    My name is Cynthia Wilson I am a correctional officer at the Cook County Jail ("Jail").  I have worked at the Jail for approximately 28 years.  During my time at the Jail, I have worked in RTU Drug Unit, Division 1, and Division 10.  I have been working in Division 10 for the past 15 years or so, where I have interactions with male detainees daily.

2.    The men who are inmates at the Jail sexually harass me.  In Division 10, they flash their penises at me and masturbate at me with their penises exposed and underneath their jumpsuits.  They also verbally sexually harass me.

3.    In Division 10, I sit at the desk and the male detainees are in the bullpens in front of the desk.  Even if they are handcuffed, they can still masturbate at me—at least two different cuffed inmates have masturbated at me.  The inmates in the bullpen were masturbating at me while I sat at my desk, in their view,  so much that I asked to have the bullpen moved to the other side of the wall.  If I see them masturbating at me and they won't stop when I ask, I have to hide my head behind my computer so that I am not in their view.

4.    One time a few years ago, a full bullpen of male inmates masturbated at me, anywhere from four to ten inmates.   The inmates come down to the bullpen for having a separate incident, but then they masturbate and it's another charge.

5.    I have written three or four incident reports for different inmates masturbating at me, but I only talked to an investigator and heard about the outcome for one, inmate R.B.  I have gotten subpoenaed three or four times to testify at inmate R.B.'s

Plaintiffs 002545

sentencing for his original case, presumably so that the judge can give inmate R.B. additional time for his masturbating in the jail while he was awaiting sentencing. For the other incident reports I drafted, the investigators have told me that the inmate has to be written up two or three times before he will be charged.

6. I want to say I've written incident reports for masturbation about five times. I didn't write more incident reports, even though I experienced masturbation about once a week, because I felt like nothing was going to happen, or I would just talk to the inmates to stop.

7. I hear sexual comments from male inmates every day that I work at the Jail. I've heard these comments my entire career in the Jail whenever I pass by inmates in the tunnels, not just in Division 10. They say, "Ms. Wilson, you got a big butt," "You look good," and "I'll take care of you, Ms. Wilson." They always say sexual comments and sometimes you don't even know where it is coming from because they are in a large group of men. I have never reported any type of verbal sexual harassment because if I had to stop what I was doing to write an incident report every time I heard these types of comments, I would never be able to actually do my job. If I had a dollar for every time an inmate had called me a "bitch," I would be rich. I can't write it up every time they say something to me because it happens so often.

8. I try to cover up my body a little bit more to try to avoid the sexual harassment. It feels like something I can control. I always wear a sweater, but it doesn't stop the comments.

9. The Jail has not given me training on how to address sexual harassment by male detainees. It would be good to have direction. We try to cuff the male inmates in the back, but some of them are so double-jointed that they can get out of them. Sometimes the inmates swap uniforms so those who are supposed to be in green

Plaintiffs 002546

jumpsuits are in normal uniforms.  Sometimes inmates are supposed to be in green jumpsuits, but we don't have enough for all the men who masturbate.

10.    I have seen some inmates that are supposed to be wearing green jumpsuits are figuring out a way to still wear the regular uniform.  I don't know if inmates are exchanging clothing or officers are not paying attention, but I know that inmates themselves pass out the jumpsuits and uniforms to other inmates, so something is going on.

11.    The harassment sometimes impacts my ability to do my job.  I try to hide behind my computer screen when I am working in front of male inmates so they can't see me and masturbate at me.  At first, the masturbation was crazy to see.  Now I feel like I have no choice so I just ignore it and either they stop, or they keep going.   But I still don't want to see it.

12.    The sexual harassment has affected my personal life.  Now when I get home, I don't want to see anything sexual because I feel like I've been exposed to sexual things all day at work.   I also won't let my kids play rap in my house where the rappers use the word "bitch."

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

05/01/2019

_____
Date

_____
Signature

Plaintiffs 002548

DocuSign Envelope ID: 0B2A0E48-5D41-4AB5-99FE-2974B7252616

## YAWFIS WILSON DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Yawfis Wilson. I have worked at the Cook County Jail ("Jail") since approximately March of 2011. . For the first five years I worked there, I worked as a regular Correctional Officer. I was assigned to Division 10, Division 4, Cermak (overtime), and an administrative division that sent officers to different divisions that needed office help. Since 2016, I have been a Correctional Officer/Investigator in the Strategic Intelligence Unit (SIU) (located under Division 5).

2. As an Investigator in the SIU, my responsibilities focus on gathering intelligence regarding gang activity related to detainees in pre-trial detention and how external gang activity influences the Jail's population. I work with outside agencies that need access to detainees to interview them. I also investigate battery incidents between detainees within the Jail. Both as a Correctional Officer and an Investigator, my job has required close interaction with male detainees on a daily basis.

General Description of Harassment

3. I have been subjected to sexual harassment by male detainees including exposing their penises, masturbating, and routinely making crude or sexual comments. Detainees have pulled out their penises and masturbated in front of me at least twenty times. Detainees have exposed their penises and

Decl. Ex. 891

Plaintiffs 002399

masturbated in front of me in every assignment I've had at the Jail, besides Division 4 (female detainees).

4. They frequently expose their penises and masturbate in the tunnel and in the bullpen on the bridge. Even doing something as simple as glancing over a coworker's shoulder at a work station, I can see detainees masturbating on the security monitor. I also see detainees fondling their penises and masturbating under their uniforms on a daily basis. It's everywhere.

Specific Incidents of Exposure

5. As an Investigator, I conduct searches on the tiers in divisions throughout the Jail. I have witnessed detainees masturbate at me from their cells. They'll stand directly in front of the door and masturbate in the chuckholes. It is very disturbing to see multiple penises being thrust through the chuckholes at me.

6. When I was a Correctional Officer assigned to the administrative unit, I was sent to every division in the Jail, as needed. I recall detainees in Division 9 sticking their penises out of the chuckholes on their cell doors when I walked into the dayroom and yelling sexual obscenities at me. I remember one time in particular where the harassment was so severe, I told my supervisor and immediately left the tier because it was so upsetting.

7. When I was a Correctional Officer assigned to Division 10, detainees would stand in the toilet and shower area and purposefully masturbate and stare at me while I was in the observation bubble. They would pretend to use the bathroom, but I could see what they were doing.

2

Decl. Ex. 892

8.  Another thing that frequently happened in Division 10 was detainees would masturbate at me when I came around to count them in their cells, even though I announced a female on deck, which was supposed to make them cover up. They would do the opposite of cover up and be standing in the middle of the floor or lying on their beds masturbating. I recall multiple incidents regarding one detainee, who intentionally lied on his bed, with his penis exposed, masturbated, and ejaculated in front of me when I came around to count detainees. Detainees would do the same thing when I was assigned to Cermak and went around to count them.

9.  Even when I was assigned to a female unit in Cermak, the male detainees sexually harassed me when they walked by where I was stationed to go into intake for Cermak. I also witnessed them masturbate in the waiting area of Cermak.

10. As an Investigator, I am required to do a "jail day" periodically. I am temporarily assigned to a different post for that day. When I am assigned to Receiving, as soon as the detainees see me and other female workers or female detainees, they constantly pull out their penises and masturbate in the bullpen. Groups of detainees will stand in the bullpen masturbating at us while making crude and disgusting sexual comments and threats. It is particularly jarring when you are confronted by a group of detainees like this—it makes you feel even more violated.

3

Plaintiffs 002401

<u>Witnessing Harassment of Others</u>

11.    I have witnessed detainees sexually harass other female employees. For example, when I am assigned to Receiving on a "jail day," there are female Correctional Officers also working at that post. The detainees expose their penises, masturbate, and make explicit sexual comments to all of us.

<u>Sexual and Sexually Violent Comments</u>

12.    As an Investigator, I personally hear detainees make sexual comments to me around a few times per week. Detainees comment about "how fine" I am and tell me that I'm "fuckable." When I was a Correctional Officer assigned to tiers, I heard comments such as, "I'm gonna bend you over," other sexual threats, or comments about my body more frequently. The sexual threats really scared me. Detainees have told me, "You should just give me a couple of minutes in my cell." Or, "Let me out, and I'll make you feel like a real woman." They made me extremely uncomfortable.

<u>Knowledge of Defendants, Ineffectiveness of Complaining, and Discouragement</u>

13.    My supervisors know about the detainees' sexual harassment toward me because I have complained multiple times. I have written detainees up approximately five times and verbally complained at least ten times. Sometimes the paperwork for an incident I tried to write up went missing. As a Correctional Officer, when I wrote up incidents that did make it to the Hearing Board, I was never notified what the outcome was. There is not a procedure, as far as I know, regarding notifying the author of the incident

4

Plaintiffs 002402

report. The lack of follow up discouraged me from continuing to make written complaint.

14. I frequently see detainees expose their penises in the tunnel during movement. It is disgusting that I can't walk through a hallway at work without a detainee pulling out his penis on me at any given moment. It would be difficult to stop all the detainees to identify the detainee who exposed himself. It would be unsafe to do that in the crowded tunnel when sometimes there is only one officer escorting multiple detainees. As a result, I still complain verbally, but I have less of an opportunity to write detainees up.

15. When I complain to male lieutenants and sergeants and discuss the masturbation issue with male coworkers, their general dismissive attitude about it makes me feel like I'm supposed to accept it as part of my job.

Lack of Training

16. I don't recall ever receiving training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me. There are multiple programs about issues that detainees face, such as suicide risk. I don't understand why there aren't more programs to address issues that affect female employees.

Impact on Job Performance

17. The sexual harassment has made it more difficult to do my job. I try to avoid looking in the direction of detainees, but it is necessary to interact with them

5

to perform my job duties. The detainees' behavior is so blatant that, even when I try not to look, sometimes it can't be avoided. I also avert my eyes and face, and wear my hair in a certain style, because I am concerned about running into detainees when they are released from the Jail. I hope that not looking directly at them will mean they wouldn't be able to recognize me. I wear men's pants that hide the shape of my body to avoid drawing attention to myself, but that doesn't really work.

18. I have heard of detainees plotting to take a female employee hostage and planning to rape her. That really scares me. When I conduct searches on the tiers, I am always afraid that the detainees could attack me and take me hostage.

Emotional Impact

19. The sexual harassment has heavily impacted me emotionally. Having detainees pull out their penises and masturbate at me is disturbing and psychologically damaging to me. I constantly feel verbally and physically attacked by the detainees' sexual misconduct. I try to separate work from life, but it is really difficult. The constant sexual harassment by detainees has made me hyper aware of men and excessively vigilant around them.

20. My female coworkers and I deserve to be treated with respect and protected by our employer from the detainees' constant sexual harassment. I am tired of the consensus around the Jail being that "this is what you signed up for." This is

Plaintiffs 002404

DocuSign Envelope ID: 0B2A0E48-5D41-4AB5-99FE-2974B7252616

not what I signed up for. It is not right that the Sheriff's Office has brushed its female employees' complaints aside and failed to really address this issue.

Decl. Ex. 897

Plaintiffs 002405

DocuSign Envelope ID: 0B2A0E48-5D41-4AB5-99FE-2974B7252616

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

4/9/2019
_____
Date

DocuSigned by:

6AF847EB955F47D...
_____
Signature

8

Plaintiffs 002406

## DECLARATION OF DIANE WINTER

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Diane Winter. I have been a correctional officer at the Cook County Jail ("Jail") since November 1, 2004. While at the Jail, I worked in External Operations, Division 6, Central Kitchen, Division 4, and Division 17. I have worked occasional overtime shifts in External Operations and the Hospital. I am currently working in the Central Kitchen.

2. All of my assignments within the Jail require me to have interactions with male detainees. I work with male inmates for seven hours a day, five days a week. Even if an officer is working in security, he/she will have occasional interactions with inmates or could be called in to help out on the tier when there is a shortage on the tier.

3. Currently, I am working in the van delivery post of the central kitchen. I work with one male inmate delivering food to inmates by division. Tier inmates help the inmate workers pass out meals and I monitor all services to ensure the inmates are not doing anything they shouldn't be doing and don't take items back to their cells.

4. I have endured sexual harassment by male detainees earlier in my career and currently in my career. In 2006, I worked midnight shifts in Division 6. I had to do a count at the beginning and end of every shift. It was dark, so I had to flash a light into the cell and look through the chuckhole to make

Plaintiffs 001182

sure inmates were in their cells.  Once, I flashed the light into the cell and put my face near the chuckhole and the inmate had his penis in the chuckhole, two inches in front of my face.  About 20 times I experienced an inmate either naked on his bed masturbating or standing by the door exposed and masturbating during my midnight count.

5. When I worked in Division 6, inmates hid contraband in their pants and kept their hands in their pants.  I ordered, "Please show me what's in your pants."  The inmates laughed at me a said, "That's just me, that's me."  (They were referring to their penises).  They did this on purpose so I had to pat them down, which made me uncomfortable.

6. I experience male detainees masturbating in front of me almost two or three times a week now.

7. After the inmates in the Central Kitchen are done working, a lot of them sit in the corner for about an hour with their hands in their pants.  They are masturbating so I tell them they need to remove their hands from their pants and they say they are just cold.  I have to watch them, even if I don't want to because there is more contraband in the Jail now and I have to ensure the safety of all people in the Jail.

8. In early spring 2018, I was riding a golf cart with one of the kitchen workers through the tunnels.  Another male officer was walking with an inmate from Division 6.  This inmate was wearing a green jumpsuit, but it unsnapped all the way down, he was cuffed in the front, and had his penis exposed,

2

Plaintiffs 001183

masturbating. I got the attention of the male officer escorting him and said, "Officer, look what he is doing. Officer, he is playing with himself, laughing and smiling." The officer replied, "Oh, he's a jumpsuit inmate." The officer shrugged it off and didn't even look at the inmate and finally said, "That's why he has the green jumpsuit."

9. In June 2018, I was working in the kitchen and two inmates were lined up against the window. All of a sudden, one of the male inmates was following a female CBM worker (food distributer in the kitchen) with an erection. I ordered him back in line and told him to stop looking at the CBM workers. I turned around for one minute and he took off again, walking towards another CBM worker. Again, I ordered him back in line and he still had an erection. The CBM workers were insulted and surprised. They were not used to the environment of the Jail and were not warned that this sexual harassment happens.

10. In March 2018, I was working in the kitchen and one of the inmates purposely brushed up against my breasts. I said to him, "I'll put it on paper," and the inmate laughed and said, "oh sure." I wear a T-shirt when I work in the kitchen because it gets extremely hot there. The kitchen heat makes it harder to stay covered up; however, if an inmate is making me feel uncomfortable, I will wear an oversized sweater, no matter how hot it is.

11. No one takes the paper trail seriously. The paper trail is pointless. I have no problem reporting incidents, but supervisors don't take them seriously. I

Decl. Ex. 901

Plaintiffs 001184

have had male and female sergeants tell me that nothing happens and the paper trails are pointless.

12. I have also been exposed to sexual harassment in the form of crude sexual comments and comments about my appearance. When I was working in receiving, I heard comments daily. Inmates would say, "Officer Winter, I want to fuck you," "Hey, why don't you fuck my dick," "Officer Winter, you want to suck my dick?" This is common language at the Jail. This happens less in the kitchen because the inmates I work with get paid bonuses and want to keep their positions working. I now hear these comments about twice a week. Male supervisors do not do anything to stop inmates from masturbating and sexually harassing female officers. If you bring it up to them, they reply, "this is just your job."

13. I try to ignore the sexual comments, but I really don't like the way they make me feel. The comments remind me of a bad childhood experience and make me feel degraded, lower, and not good enough.

14. I have also observed other women being subjected to the same or similar harassment. I work with another woman regularly and I have heard inmates say, "Oh baby, come on baby," when she walks past. She just tries to ignore them and keeps going.

15. There was an incident where a female officer was doing a count in Division 9 and an inmate reached out the chuckhole and grabbed her vagina and

4

Plaintiffs 001185

wouldn't let go.  My coworkers and I talk about this incident because we are afraid and want to avoid getting in this type of situation.

16. The Jail is saturated with this type of behavior.  I encounter it directly and hear about it on a daily basis.  The administration never took correctional officers' complaints seriously.  The masturbation and sexual harassment had to go up the hierarchy of the Jail before it was taken seriously.  This makes me feel like my experiences weren't important to anyone and I was expected to put up with it.  I would get home and be all out of sorts.

17. Supervisors know that inmates are masturbating at women.  They have been told about it, reported to, or have seen it many times themselves. When I worked in Receiving, there was a group of nine or ten inmates returning from court masturbating in the holding cells and yelling, "let me clap for you!" Clapping means masturbating.  The male sergeant there just said, "cut it out," "that's what men do."  They stopped for a bit, but after the sergeant left, they started up again.  The sergeant just shrugged his shoulders at me.  I felt degraded, completely disrespected, and unsupported as an officer.

18. I have never written a formal incident report because it just isn't what you do.  Unless there is physical harm, it is useless.  Any time I reported an issue I just brought it to the attention of the sergeant or a male officer.  Incident reports aren't advertised as a way to handle sexual harassment.

19. This never used to happen and inmates have observed a change as well. Inmates know that we are short staffed because they can see that one officer

5

Plaintiffs 001186

is doing the job of three officers.  I don't remember this type of thing happening when I was a rookie.

20. I believe that the sexual harassment has impaired my ability to do my job. At times, it is easier to say, "You know what, I'm not doing it today."  It's just too much, it ruins your day and sometimes it is easier to call in sick and forget about it.  I'm so stressed out from work that sometimes I just need a break.  I just have to get out of there and call off work.  I called off sick so many times because I was just too frustrated with the sexual harassment and the masturbating to go in and do my job.

21. I used to love my job.  I don't care for it anymore.  I always wonder, "What will I have to put up with today?" I have become less sensitive to the harassment and I have become hardened.  I see the harassment changing my attitude towards a lot of things in my personal life and the things I see in the street.  If men are too friendly to my children or grandchildren, I get angry.  I am always worried about men being around my children now.  My children tell me that I've changed since working at the Jail.  They say, "You treat us like inmates.  We're not inmates."  I experience a lot of anxiety and depression as a result of the sexual harassment at the Jail; but, this is the best paying job I've ever had and that's why I stay here.  I think about quitting all the time, but I need this job.  I often ask myself, "Why did I even start this job?"  I come home crying because I am so frustrated and stressed out.  But you just have to pick yourself up, go into work and deal with it.

Decl. Ex. 904

Plaintiffs 001187

22. In 2009, I had a seizure from stress and developed a brain aneurism. Recently, in August 2018, I had another seizure and my doctor said it was related to high stress. My job and the sexual harassment at the Jail is so high stress it is affecting my physical health.

Decl. Ex. 905

Plaintiffs 001188

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

01/18/2019

_____
Date

_____
Signature

Plaintiffs 001189

# Declaration of Sharon Wright

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  My name is Sharon Wright. I am a correctional officer at the Cook County Jail ("Jail"). I have worked at the Jail since approximately March 2005. I have been assigned to various parts of the Jail in my role as correctional officer, including: Divisions, 3, 6, 8, 5, 9, 10, 11, Receiving, and Laundry. In recent years, I have been assigned to Division 10 (approximately 2011-2012), Division 5 (approximately 2012-2013), Division 6 (approximately 2013-2014), and Division 11 (approximately 2014-2016). I have been assigned to Laundry since approximately September 2016. I also briefly was assigned to Receiving.

2.  As a correctional officer, I am responsible for the safety and security of inmates at the Jail.  In all of my Division assignments, part of my job has been to escort inmates to and from locations such as court, medical areas, recreational areas, dorms, and inmate work locations.

3.  I have been assigned to Laundry since approximately September 2016. My duties in Laundry include supervising inmates who work in Laundry and escorting them to and from their Divisions to the laundry facility and the Divisions we are servicing. Since approximately September 2018, I have been assigned to work with women inmates from Division 5 in the morning. However, in order to escort the women inmates to Laundry, I have to walk through the tunnels, where I encounter male inmates. Then, halfway through my shift, I transport the women inmates back to Division 5 and return to Laundry, where I help prepare laundry to be washed or delivered the next day. Male inmates who work in Laundry are usually in the same room as me during

1

Plaintiffs 001466

this time, and I am sometimes assigned to transport them back to their division at the end of their shifts. In addition, on Sundays I am assigned to go to Division 11 to drop off clean laundry and collect dirty laundry from male inmates at their cells. At Division 11, I supervise a group of male inmates who help me collect and distribute laundry.

4.    I have been sexually harassed by male inmates so often that I have lost count of the number of times it has happened.  Every day I am concerned that a male inmate will expose himself to me or masturbate in front of me.  When I was working on the tiers in Division 11, this happened on at least a weekly basis. In Receiving, I witnessed this nearly weekly when I walked past inmates in the bullpen, which are large holding cells for multiple inmates. Currently, a male inmate exposes himself to me almost weekly—either when I service Division 11 or when I encounter male inmates in the tunnels.

5.    When I worked in Receiving in 2016, I walked past the main Receiving bullpens (group cells), daily. Each time I passed the bullpens, there would be several inmates waiting there to be transported to court. Some inmates made a practice of exposing themselves to any woman who walked past the bullpens. This happened to me at least weekly and sometimes more often. I know that they did this to other female employees too, because if another female officer had already passed the bullpens, she would warn me not to look at certain inmates who were exposing themselves. I know that male officers were aware that inmates in Receiving were exposing themselves frequently, because I saw that they were present when it was happening. The male officers did not intervene or say anything to the inmates who exposed themselves.

6.    In January 2016, I was assigned to work at the Bridge, where my job included walking from one end of a gated area to the other to let inmates through. There are also several

2

Plaintiffs 001467

holding cells at the Bridge that houses groups of male inmates; I had to let inmates in and out of those holding cells on their way to being escorted to court or back to their divisions. On one occasion, a male inmate yelled from the holding cell to try to get my attention and when I walked toward his cell, he pulled down his pants and exposed himself to me. I then asked the male correctional officers to pull him out of the cell. As the male correctional officers opened the cell and pulled him out, some of the other male inmates who were in the same cell protested his removal and tried to push themselves out of the cell. I had to push one inmate back into his cell and quickly slide the door closed in his face. I was the only woman at the Bridge that day. The scene was chaotic, and I feared for my safety. I filed a report about the incident, but investigators did not follow up to interview me about the report and ask if I wanted to press charges until about six months later, in July of 2016.

7. In 2016 or 2017, an inmate masturbated at me while I was standing at his cell door in Division 6 to collect his laundry. I directed him to stop, and he responded, "I can't help it, you just fine," and did not stop.

8. In the winter of 2017, while I was collecting laundry in Division 6, I approached the cell of the same inmate to ask him to sign a document that listed the items he had given me to be washed. As I approached the cell, I could see through the chuckhole that he was masturbating at me while he was talking to me.

9. In early June 2018, I was walking through the tunnels, escorting five female inmates to the laundry facility. We approached a group of male inmates in a line with two male correctional officers in the front and two male correctional officers in the back. One inmate towards the back of the line was walking with his penis exposed, masturbating. Even though all the inmates including him had handcuffs on and he was wearing one of the green jumpsuits, he still was able to open the Velcro on his

3

Plaintiffs 001468

jumpsuit and masturbate with his penis out. I directed the five women inmates I was escorting around the corner until the group of men passed.  Then, multiple inmates in the line walking toward us started taunting and catcalling at us and several other inmates took their penises out. I didn't know the identity of the inmates who harassed us, and I was too busy making sure that the women I was escorting were protected to ascertain who they were.  The male officers did nothing to prevent or stop the harassment from occurring and, as far as I know, they did not report it.

10.     If I am walking through the tunnels and I see male inmates walking toward me, I try to find a hallway or corner to hide where they cannot see me for fear that they will expose themselves or sexually harass me. I also often hide behind the large laundry bin that I move as part of my current assignment, in order to try to avoid male inmates calling out at me and exposing themselves to me. I wear a large sweater to hide my body any time I know I am going to encounter male inmates, which is very hot and uncomfortable and exacerbates my hot flashes. Still, inmates call my name, make comments about my body, and tell me to "take that sweater off."

11.     When I am working with male inmate populations, I also endure verbal sexual harassment, catcalling, and remarks about my appearance on a daily basis.  For example, in winter 2018, I was exchanging uniforms in Division 10 and a male inmate yelled out "bitch, suck my dick."  Since the inmates were in their cells, I didn't even know who yelled it.  On another occasion, a male inmate yelled at me, "you ain't got no ass anyways, take off that sweater."  This even happens when I am working with female inmates because I still encounter male inmates when moving throughout the jail.

12.     Sometimes I cannot identify the male inmate responsible for sexually harassing me, so it is not possible to write an incident report.  Also, given how frequently the sexual

4

Plaintiffs 001469

harassment occurs, writing an incident report every single time it happens would be very disruptive to my work. My experience has also given me the impression that incident reports won't have a real impact on the sexual harassment. For example, it took so long (more than six months) for the investigator to respond to my report about the incident on the Bridge.

13. I know that supervisors are aware of inmates masturbating at women because I have personally reported it to my own supervisors. In 2012, another female officer told me that after she told her male supervisors that an inmate masturbated at her, her male supervisor said, "this is just part of your job, accept it." Hearing this made me feel like management at the Jail does not care about female employees.

14. Sexual harassment at the Jail is not taken seriously. Even the inmates know that there will not be consequences for sexually inappropriate behavior. In response to me threatening to write them up for this type of behavior, male inmates have frequently made comments to me like, "bitch, this is jail," "y'all can't do shit," "ain't nobody gonna do shit," "you do what I say" and "I run you."

15. I have never received training from the Jail regarding how to address the masturbation or sexual harassment by male inmates, how to decrease the opportunities to repeat the behavior, or how to respond if an inmate tries to rape me.

16. In March 2019, I was moving through the tiers on Division 11, collecting inmates' dirty sheets and giving them clean sheets. When I approached the second-to-last cell, the inmate handed me his sheets and I could see through the chuckhole that he was masturbating at me. I said, "is you really doing this?" I left the tier and called the supervisor, Sergeant Bozeman. Sergeant Bozeman helped me identify the inmate and write a report. The inmate was sent to segregation. This was the first time a

5

Plaintiffs 001470

supervisor has ever responded to this type of incident in a way that did not make me feel like I was getting on the supervisor's nerves.

17. Being routinely subjected to masturbation and other sexual harassment at the Jail makes my job extremely stressful, and I feel helpless to defend myself from it. I know that the sexual harassment takes an emotional toll on my female coworkers as well because we talk about it with each other. I have had countless conversations with other women who work at the Jail about how frightening the sexual harassment is to us.

18. The constant sexual harassment has seriously impacted my relationship with my ex-husband too. It made me less interested in being physically affectionate with him. He would get upset and tell me, "don't bring that shit home. I ain't no inmate." I looked at myself at one point and thought, "why am I like this?" Then I realized it's because of having endured the constant masturbation incidents and other harassment directed at me by the male inmates, which has caused me great stress.

19. I hate working at the Jail because of the sexual harassment I constantly experience. I feel like it is killing me, and nothing has improved despite supervisors being aware of the situation. I used to love my job when I started. Now I hate working around the male inmates because they sexually harass me and even when they are not, I dread it happening. I transferred to Laundry in order to minimize my contact with them. However, I still see male inmates daily. The stress of worrying about experiencing harassment literally makes me feel sick. Even now when I spend a lot of my time with female inmates, there are still days when I have to call in sick because I wake up feeling like I cannot deal with the harassment that I know I will experience from the male inmates I encounter at work.

6

Plaintiffs 001471

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

04/01/2019

_____

Date

_____

Signature

7

Plaintiffs 001472

## <u>LISA YATES DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.     My name is Lisa Yates. I am a Correctional Officer at the Cook County Jail ("Jail"). I have worked at the Jail since March 1990. I have had various assignments within the Jail, including: Receiving, External Operations and Division 3. I am currently assigned to Receiving and have been in this assignment for approximately 14 years.

2.     As a Correctional Officer at the Jail, I am responsible for the safety and security of individuals being held at the Jail in pretrial detention and maintaining order at the correctional facility. For example, my job duties include, but are not limited to: monitoring detainees as they are being escorted to and from their housing divisions, processing detainees into the Jail, classifying detainees, escorting detainees to court and medical appointments, and performing security functions regarding detainees in holding cells. In performing these duties, my job has required me to interact with male detainees daily.

<u>General Description of Harassment</u>

3.     During my employment at the Jail, I have endured sexual harassment by male detainees, which they direct at me and at other female employees. I have experienced: (a) detainees exposing their penises to me; (b) male detainees

Plaintiffs 001067

purposefully masturbating at me or in front of me; and (c) inappropriate comments and violent sexual threats from detainees.

## Specific Incidents of Exposure

4.     I most frequently witness detainees masturbating while they are being transported to and from court, waiting to go to court, or being escorted back to their housing divisions. For example, in Receiving, detainees approach the bullpen bars or glass wall, bang on the glass or scream my name to get my attention, and then expose their penises and masturbate while I am trying to perform my job duties. In recent years, these incidents seem to happen on a daily, or almost daily, basis.

5.     Detainees also masturbate with their penises exposed when they are being escorted to and from the holding area, court, or their divisions. For example, on one occasion, I was with my superintendent when a detainee walked right past us while masturbating. My superintendent did nothing.

## Witnessing Harassment of Others

6.     I know that other women who work in the Jail experience the same or similar sexual harassment throughout the Jail. At times, I have been walking behind a group of detainees being escorted by other female Correctional Officers and have heard the escorting officers instruct detainees to stop masturbating and say that they would write them up.

Decl. Ex. 915

Plaintiffs 001068

DocuSign Envelope ID: D34485CC-95A9-4A84-B151-2E0A87F35FD0

Knowledge of Defendants

7. My supervisors know about the detainees' behavior and their sexual comments towards me and other women. For example, my superintendent knows about this behavior because of the incident when a detainee masturbated while walking past both of us. Supervisors make no real effort to discipline detainees or set consequences for the sexual behavior toward women.

Complaints, Ineffectiveness of Complaining, and Discouragement

8. I have not filed any incident reports because I have seen other female Correctional Officers file incident reports without obtaining any consequences for the detainees as a result.

9. For the same reasons, I have not made verbal complaints to my supervisors. I have seen other female Correctional Officers make verbal complaints to supervisors and those verbal complaints have not been taken seriously or have been ignored.

10. Incident reports are ineffective because the detainees know that the Cook County Sheriff's Office imposes no real consequences for masturbating at women. Detainees also know that the Correctional Officers cannot defend themselves because people have been fired or disciplined for defending themselves against detainees' sexual harassment.

11. It feels like the detainees have taken over the Jail. Earlier in my career at the Sheriff's Office, it seemed like there were fewer incidents and detainees were disciplined for inappropriate behavior. Now, I feel that the administration

Decl. Ex. 916

Plaintiffs 001069

leans toward being on the detainees' side instead of protecting female employees and taking steps on our behalf.

Ineffectiveness of Steps Taken

12.     The steps that have been taken to address the harassment have been mostly ineffective. Although known masturbators are supposed to wear green jumpsuits, the front is closed with Velcro and it does not prevent them from exposing themselves. Detainees walk around with their jumpsuits open and they can easily access their penises. Detainees in green jumpsuits are held in a separate bullpen. Yet, they continue to masturbate. I am also aware that detainees in green jumpsuits are sometimes not segregated in their own bullpens; sometimes they are integrated with detainees who are not wearing green jumpsuits when they are waiting to be sent off site.

Lack of Training

13.     I have never received training from the Cook County Sheriff's Office regarding how to address the masturbation or sexual harassment by male detainees, how to decrease the opportunities to repeat the behavior, or how to respond if a detainee tries to rape me.

Impact on Job Performance

14.     The sexual harassment changed the way I do my job. For example, I try to avoid interacting with detainees that I know have prior masturbation incidents. I do not talk to them and sometimes request a male officer to perform job duties regarding those detainees, such as escorting them to court. I am

4

Plaintiffs 001070

afraid of passing by or going near them because I fear the possibility of them masturbating at me or exposing their penises to me.

15. In general, I look down and try not to look in the direction of male detainees to avoid even making them think I am looking at them. Male detainees view looking in their direction as an invitation to masturbate. Avoiding looking in their direction affects my ability to make the facility safe and secure.

16. The behavior by male detainees toward me is unwelcome, offensive, harassing, degrading, humiliating, threatening, inappropriate and disrespectful and causes me to fear for my safety.

17. During every work day at the Jail, I experienced anxiety over potential harassment and exposure. Even if I was not the direct target of detainees' sexually inappropriate behavior on a given day, my female coworkers and I expected that at least one of us would be subjected to lewd comments, sexually inappropriate gestures, exposed penises, or worse. I think it happened to someone every day. I knew I might be sexually harassed or hear about a female coworker being harassed when I walked through the compound to my assigned work location, while at work, while on breaks, and even while exiting the compound at the end of my shift. This caused constant stress and made it more difficult for me to focus on my job of keeping everyone at the Jail safe.

Decl. Ex. 918

Plaintiffs 001071

DocuSign Envelope ID: D34485CC-95A9-4A84-B151-2E0A87F35FD0

<u>Emotional Impact</u>

18.     As a result of the constant sexual harassment, I have suffered emotional distress, including stress, sleeplessness, trouble staying asleep, and increased migraine headaches. The harassment and masturbation at the Jail makes working there extremely stressful. I should not have to come to work and be subjected to detainees exposing their penises and masturbating at me. I feel like my employers do not care about our well-being or what happens to female Correctional Officers. I feel that they are more concerned about detainees' well-being. We put our lives on the line every day, working with murderers and other detainees with no respect for life, and we are not appreciated.

Decl. Ex. 919

Plaintiffs 001072

DocuSign Envelope ID: D34485CC-95A9-4A84-B151-2E0A87F35FD0

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and is based on my personal knowledge and beliefs.

1/14/2019
_____
Date

_____
Signature

Decl. Ex. 920

Plaintiffs 001073