Exhibit 3

## DECLARATION OF BRAD CURRY

I, Brad Curry, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I have been employed by the Cook County Sherriff's Office (CCSO) since January 2015. I am currently the Chief Operating Officer, a position I have held since March 2017. My earlier titles were First Assistant Director and Bureau Chief of Corrections, Courts, Investigations, and Intelligence. During my time at CCSO, I have been responsible for overseeing the Cook County Department of Corrections (the CCDOC or jail) and the Cook County Courts System (the courts). Before joining the CCSO, I spent 26 years working in corrections at the Illinois Department of Corrections.

2. The facts set forth in this declaration are drawn from information I have received in my position with the CCSO. It does not contain all of the facts I know about the matters discussed below.

### Background

3. The Cook County Sherriff's Office is the main law enforcement agency serving Cook County. It contains several departments, including the Cook County Sherriff's Police, the Court Services Division, and the Cook County Department of Corrections and has over 6,900 members. Among other things, it oversees individuals in Cook County being held on criminal charges pending resolution of their criminal cases, following which they, if convicted, are sent to the Illinois Department of Corrections to serve their sentences.

4. Cook County detainees are held in custody at the Cook County Department of Corrections (CCDOC or jail), which currently houses approximately 6500 individuals at any given time. There are 14 courthouses comprising the Cook County Judicial system. The Leighton Criminal Courthouse is the largest of the courthouses with the most number of criminal courts. Detainees are regularly transported from the jail to those courthouses for court appearances. On an average day, approximately 700 to 900 detainees are transported to and from court, with the majority of them to the Leighton Criminal Courthouse. Correctional officers and deputy sheriffs are responsible for overseeing the detainees in either the jail itself or the lock ups in the courthouses.

5. Beginning in about 2015, there have been numerous instances of public indecency by male detainees in the presence of female assistant public defenders (APDs) that have occurred in the jails and courthouse lockups. These incidents involve male inmates exposing themselves and masturbating in front of female APDs.

6. Although these incidents have occurred in other Cook County courthouses, they are most prevalent at the Leighton Criminal Courthouse. Although these incidents have occurred in multiple areas of the CCDOC, they are most prevalent in Divisions 9 and 10, which are the divisions that house the most serious offenders.

Exhibit A

7. When detainees are remanded to CCDOC custody, the CCDOC provides every detainee a handbook during their intake process which describes the rules and regulations they must follow while in custody. The first information provided to detainees, after explaining the intake process, addresses a zero tolerance policy for sexual conduct and harassment of any kind.

8. Detainees who engage in this prohibited conduct can be charged in two ways. The first way is through an administrative charge of indecent exposure or masturbation. The CCSO has established a comprehensive disciplinary system for the prevention, deterrence, and punishment of inappropriate conduct by detainees. When a detainee is identified as having engaged in such conduct, a CCSO corrections officer or deputy sheriff writes a disciplinary ticket for indecent exposure or masturbation. The detainee will then have an administrative hearing in front of a hearing board, which occurs within approximately a week. If found guilty, the board may impose sanctions.

9. The second way is through a criminal charge of public indecency, which is a Class A misdemeanor. When a detainee is identified as having engaged in such conduct, a deputy sheriff reports the incident. Depending on whether the incident occurred in the jail or courthouse, either the CCSO Police or the deputy sheriff in the courthouse, respectively, will reach out to the victim to find out if he or she is willing sign a complaint. If a complaint is filed, it is forwarded to the States Attorney's Office for a criminal charging decision, and the criminal process proceeds accordingly.

10. In addition to the comprehensive discipline and charging system in place, the CCSO has taken numerous steps to prevent this behavior. I have described a number of those steps below.

## Modified Uniforms

11. One way the CCSO has tried to prevent this behavior is through the use of modified uniforms that restricts immediate access to the detainee's genitalia. These uniforms were designed and made by the CCSO. These uniforms are not available for purchase and must be manufactured in house by the seamstress who removes the buttons on the lower opening, sews it shut, and sews a new opening higher on the jumpsuit. The modified uniforms are a specific green color, which is unique to only those inmates who have been found guilty administratively of having engaged in this conduct wear (with the exception of a green colored uniform that has been worn by certain inmates while working in the kitchen). The special color is important as it helps the deputies visually identify those who have been found guilty of this conduct and more easily intercept any attempts to repeat such conduct despite the modified uniform. (In addition to the modified uniforms, the CCSO also issued those administratively adjudicated guilty of this conduct a special ID so they could be easily identifiable to deputies.)

12. In August 2016, the uniforms were first designed. In October 2016, once the uniforms were ready, the CCSO apprised detainees via town hall meetings of the modified

uniforms, letting them know that the modified uniform would be provided to any detainee that engaged in indecent exposure/masturbation from that point forward and began requiring that such detainees wear the uniforms.

13. To date, the CCSO has made over 400 modified uniforms. There are approximately 129 detainees currently wearing the modified uniforms. These detainees have been found guilty administratively of having engaged in this conduct. Once found guilty, the detainees must wear the jumpsuit for the entirety of their incarceration at CCDOC.

14. Detainees do not like wearing the uniforms as they are more restrictive and difficult to put on and take off. Detainees who have been required to wear the uniforms have engaged in conduct objecting to the use of the modified uniforms, including ripping or burning them in a microwave. The modified uniforms are viewed by detainees as a punishment for engaging in this conduct as well as an administrative sanction for engaging in the prohibited conduct.

15. Accordingly, the CCSO requires all detainees who have been administratively found guilty of engaging in such conduct to wear the modified uniforms. The CCSO does not currently require detainees who have not been found guilty of engaging in such behavior to wear the modified uniforms. Requiring all detainees to wear the modified uniforms would effectively impose a punishment on the entire detainee population, regardless of whether they have engaged in the prohibited conduct. Additionally, it would impair the deputies' ability to readily identify those detainees who have been found guilty administratively of having engaged in this conduct and more readily be able to intercept any attempts to repeat the conduct despite the modified uniform.

## Handcuffing Procedures

16. Another way in which the CCSO has tried to prevent this behavior is through handcuffing procedures in the Leighton Criminal Courthouse.

17. With respect to handcuffing procedures in the Leighton Criminal Courthouse, the CCSO enacted the following measures in March 2017, which are currently in effect. For those detainees who have been found administratively guilty of engaging in this conduct, the CCSO imposes restricted movement procedure requiring the detainees to remain handcuffed in the basement lock up until their case is called, rather than being placed un-handcuffed in the lockups adjacent to the courtroom in which their case will be called which is the protocol followed with other detainees. Originally, the CCSO separated conduct that occurred in the jail and conduct that occurred in the courthouse lockups. The handcuffing procedure was used only for those who had committed the conduct in the courthouse lockups. In October 2017 however, the CCSO expanded the program to include all such conduct regardless of where the incident took place.

18. Moreover, in October 2017, the CCSO began a new handcuffing initiative with respect to those detainees who have not engaged in such conduct. The CCSO brings those

detainees up to the courthouse lockups as per common practice but handcuffs those detainees behind the back for transport to and from the courtroom, which had not been the practice prior to this conduct becoming so prevalent. Those detainees are reminded of why they are being handcuffed behind the back, namely because of this issue, and informed that if any of them engage in this behavior, all detainees in that particular lockup will be handcuffed behind the back for the remainder of their time in the courthouse that day.

19. The CCSO previously tried other measures regarding handcuffing in the Leighton courthouse. For example, in January 2016, the CCSO handcuffed all detainees in the courthouse lockups, regardless of whether they had been found guilty of engaging in such conduct. The CCSO faced opposition from certain of the judges as well as certain of the APDs and subsequently discontinued this practice.

20. With respect to procedures regarding handcuffing detainees in the areas of Division 9 and 10 in jail to which APDs have access to visit clients, detainees utilizing their dayroom time generally must be unrestrained according to jail standards. As such, the CCSO does not handcuff detainees when they are permitted to move around the tier during their dayroom time. The detainees moving around the tiers are visually able to observe APDs meeting in private glass visiting rooms with their clients. The CCSO does not restrict the days and times when APDs can visit their clients, and thus they are permitted to visit their clients during times when detainees are moving about the tier on their dayroom time.

21. However, four tiers in Division 9 are part of the special management unit. Detainees found administratively guilty of engaging in this behavior are sentenced to a period of days in the special management unit. They are not kept in the special management unit indefinitely, only to the extent of their sentence. Individuals in the special management unit are subject to special restrictions including having to wear a waist restraint system which restricts the use of their hands when moving about the tier. They are not subject to these same restrictions once they have completed their sentence in the special management unit.

22. It is the policy of the CCSO to encourage and maximize the use of recreational and dayroom time for inmates. The CCSO believes through experience that recreation and dayroom use alleviate stress and anxiety in detainees, increase positive behavior and support the mental health of the detainees. Lengthy detention within individual cells has the opposite effect, increasing negative behavior and the deterioration of the detainees' mental health.

23. Accordingly, the CCSO currently handcuffs in the Leighton Criminal Courthouse all detainees who have been found administratively guilty of engaging in such conduct. Consistent with jail standards as noted above, the CCSO does not handcuff those detainees when they are in the jail utilizing their dayroom time and visually able to observe APDs meeting with their clients.

**Deputy Monitoring**

24. The CCSO has also tried to prevent this behavior by deputy monitoring.

25. In the Leighton Criminal Courthouse, there are four courtrooms on a floor. In between each set of two courtrooms, there is a lockup area. There are typically four deputies assigned to each set of two courtrooms to monitor the two courtrooms and the adjoining lock up area. The APDs have been asked to adopt the following precautions: (1) not to enter the lockup for visits with their clients without a deputy escorting them; (2) use a talk through box located on the 2nd and 3rd floors to conduct their client meetings; (3) or conduct their client meetings at the jail.

26. In February 2017, the CCSO placed five additional deputies on floors 4 through 7 in the Leighton Criminal Courthouse to provide additional monitoring in the holding cells. There was at least one additional deputy on each of the four floors with the courtrooms. In August 2017, due to Cook County budget constraints, the CCSO was required to reduce overtime costs and discontinued the use of the additional deputies. However, since that time the CCSO has assigned an additional between four and six management staff not subject to overtime pay requirements who provide additional monitoring of the courtroom lockups and, as set forth above, explain to detainees that if any detainee engages in prohibited sexual activity, all detainees in that lockup will be handcuffed for the remainder of the court call.

27. Accordingly, the CCSO currently has staff assigned to all lockup locations.

**Other Measures**

28. The CCSO has employed several other measures to attempt to prevent this behavior by detainees. Listed below are some of the additional steps that the CCSO has taken.

29. The CCSO has tried to prevent this behavior through attempting to effect change in the law. In January 2016, the CCSO attempted to increase criminal penalties for public indecency, which is currently a Class A Misdemeanor. It is only upon an individual's third conviction that felony charges and registration as a sex offender are triggered. The CCSO introduced Senate Bill 2220 which would have triggered felony charges and sex offender registration upon the second conviction, if the act was committed in a custodial environment. The bill faced opposition from the Cook County Public Defender (CCPD). The bill was not passed. In early 2017, the CCSO also attempted to change the Cook County Code of Ordinances to allow the CCSO to issue citations in order to fine detainees who engage in public indecency acts. The Chief of Administrative Hearings for Cook County reviewed the proposal and found that Cook County lacked jurisdiction to issue and enforce such citations.

30. The CCSO has tried to prevent this behavior through administrative sanctions as provided by jail standards. For example, the CCSO at various points in time has used the following

measures, among other things, with those detainees found administratively guilty of having engaged in such conduct: (1) revocation of "good time" credits; (2) transferring repeat offenders to jails in outlying counties; (3) restricting the visits of repeat offenders to only attorneys, clergy and parents; (4) requiring service of any special management unit time in Division 9 (viewed as undesirable by detainees) rather than any other division in which they were originally located; (5) loss of commissary.

31. The CCSO has also tried to prevent this behavior through other deterrent tactics. For example, the CCSO has used the following measures for those detainees found administratively guilty of having engaged in this behavior; (1) requiring those detainees to have an ID identifying them as having engaged in this conduct; (2) creating an Officer Safety Alert board with pictures of those detainees; (3) calling the parents of those repeat detainees to explain why other family members were no longer permitted to visit.

32. The CCSO also tried to create a special unit that only would house those detainees found administratively guilty of engaging in this conduct. In October 2016, the CCSO created a tier for such detainees in which placement imposed as a result of the administrative proceeding was 60 days for initial exposure offense and 90 days for multiple exposure offense. Detainees in that unit had restricted visits, restricted movement, restricted time out of cell, and limited group interactions. Due to a number of issues, including some detainees believing it gave them a heightened status to be a part of the special unit, the CCSO discontinued the use of this special unit. Detainees who are administratively found guilty of this behavior and sentenced administratively to serve time in the special management unit now serve it with the general special management unit.

33. The CCSO has implemented measures to ensure that those detainees found administratively guilty of engaging in such conduct are tracked. Every detainee found guilty of such conduct is issued an "alert" in the Cook County Offender Management System. The CCSO is able to monitor those individuals through the alert to ensure that they are wearing the modified uniforms and being held in the basement at the courthouse.

34. The CCSO has worked to counteract any unintended benefits from detainees engaging in such conduct. In 2016, when the CCSO learned that some detainees were specifically engaging in such conduct so that they could leave the jail for transport to outlying courthouses for their criminal charge hearings (a trip detainees see as a benefit because they get a change of scenery), the CCSO worked with the Cook County Judiciary, Cook County Public Defender's Office, and the Cook County States Attorney's Office to move indecency court hearings to the Leighton Criminal Courthouse, in order to remove that incentive.

35. The CCSO has increased regular internal assessment of this conduct to closely monitor the conduct. In 2016, the CCSO began monthly panel reviews with jail superintendents to address this conduct as well as other types of incidents occurring in each division in the jail. The panel reviews are designed to help identify solutions to deal with these problematic issues and particular detainees. These monthly panel reviews remain in place.

36. The CCSO has worked in concert with other stakeholders to try and prevent this behavior. Soon after the CCSO observed the beginning of this behavior, in October 2015 CCSO executive staff contacted the Cook County Public Defender's Office and requested assistance in dealing with this behavior, including conducting town halls with detainees. The CCSO and the CCPD jointly held town halls during which they together explained the consequences related to this behavior, particularly having to register as a sex offender. Signs were also posted at the jail informing the detainees of the potential consequences for acts of indecent exposure in the jail and courthouses. In January 2016, CCSO executive staff again met with the assistant public defenders in person and by telephone to discuss actions that could be taken to decrease this behavior, including criminal prosecutions of the detainees engaging in the behavior. When the CCSO was advised that the APDs were reluctant to press charges against their clients, the CCSO urged the CCPD to reconsider, highlighting the need for all parties to present a consistent and unified approach. The CCSO has continued to work with the State's Attorney's Office (SAO) to bring criminal charges against detainees who engage in this conduct asking the SAO to expedite the prosecution of such cases.

I, Brad Curry, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated this 14th day of November 2017.

*[signature: Brad Curry]*