Exhibit 20

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

HOWARD, *et al.*,

       Plaintiffs,

vs.

COOK COUNTY SHERIFF'S OFFICE,
and COUNTY OF COOK

       Defendant.

Case No. 17-cv-8146

Judge Matthew F. Kennelly
Mag. Judge Sidney I. Schenkier

---

### EXPERT REBUTTAL REPORT OF KATHLEEN K. LUNDQUIST, Ph.D.

I, KATHLEEN K. LUNDQUIST, under penalty of perjury, state as follows:

1. I have been retained by counsel for Plaintiffs to review and analyze the expert report (dated March 7, 2019) of Defendants' expert, Dr. Benjamin Wilner, in *Howard, et al. v. Cook County Sheriff's Office and County of Cook* (No. 17-cv-8146). I have examined the data produced by Dr. Wilner, his analysis of the data and the conclusions he reached concerning sexual harassment of female employees.

**PROFESSIONAL BACKGROUND**

2. I am an Industrial/Organizational Psychologist currently employed as President and CEO of APT*Metrics*, Inc., in Darien, Connecticut. My work experience over the past 30 years has been in the areas of Industrial Psychology and Psychometrics, focusing on the use of empirical evidence to design, validate and assess the fairness of human resource practices,

such as the analysis of job requirements, the validation of employee selection procedures, and the design of related human resource processes.  I have been a Fellow with the Psychological Corporation, a Summer Research Fellow with the Educational Testing Service (ETS), and a Research Associate with the National Academy of Sciences.

3.  Throughout my professional career, I have extensively researched, designed, and conducted statistical analyses and provided consultation to major corporations in the banking, financial services, technology, retail, electronics, aerospace, pharmaceutical, telecommunications, and electric utility industries, as well as for federal, state, and local agencies and not-for-profit organizations.

4.  I have consulted with both plaintiffs' and defendants' counsel in employment discrimination cases and have testified as an expert witness in numerous such cases and provided statistical analysis as part of that testimony. I have served as an expert for the states of Alabama, California, New Jersey, New York and Rhode Island; the cities of Boston, MA; Garland, TX; Houston, TX, and Tulsa, OK, as well as the U. S. Department of Labor, the U. S. Department of Justice, and the U. S. Equal Employment Opportunity Commission.

5.  I have been appointed by the U. S. Department of State to serve multiple three-year terms as a member of the Examiner's Board for the Foreign Service; have served as a member of the expert panel on work analysis and assessment for the U. S. Department of Labor's National Skill Standards Board, chairing its Endorsement Review Panel, and have presented invited testimony on multiple occasions to the U. S. Equal Employment Opportunity Commission concerning fairness in employment procedures.

6.  I have also served or am currently serving as a court-appointed expert to help carry out the provisions of consent decrees in employment discrimination class actions involving Abercrombie & Fitch, Bank of America, Coca-Cola, Dell, the FBI, Ford, Kodak, Morgan Stanley, Sodexo, Target and the U.S. Census Bureau. My role in these settlements has included reviewing and modifying where necessary the organization's human resources practices, including statistically evaluating the fairness of such practices. My qualifications are set forth in my curriculum vita, which is attached to this report as Attachment A. A list of cases in which I have testified at trial or in deposition in the last four years is also contained in Attachment A.

7.  I am currently licensed as a psychologist in the State of Connecticut.

**INVESTIGATION**

8.  The data and documents I used to form my opinions in this case are listed in Attachment B. I reviewed the Complaint, various declarations and deposition testimony and analyzed the data produced by Dr. Wilner and defense counsel covering the period from January 2015 through September 2018.

9.  I have been assisted in this work by Dr. James DeLeon and Dr. Zoe Zhang, Industrial Psychologists employed by APT*Metrics*.

**THE RELEVANT DATA FOR ANALYSES IN THIS CASE**

10. It is my understanding from the Third Consolidated Complaint (November 14, 2018) that this case concerns sexually harassing behavior by male inmates against females employed by the Cook County Sheriff's Office (CCSO) at the Jail (including women working as Corrections Officers, Social Workers, Librarians, etc.) or as Court Services Deputies at the

Leighton Courthouse, along with female medical personnel employed by the County in positions with Cermak Health Services, the provider of daily health care for detainees at the Jail.

11. It is further my understanding that sexual harassment directed at Assistant Public Defenders (APDs) is not at issue in this case, nor are incidents which involve sexually harassing behavior by female inmates or sexually harassing behavior which is directed against male employees, other inmates or visitors.

12. The relevant locations at issue are the Jail and the Leighton Courthouse.

13. The Cook County Offender Management System (CCOMS) is a database in which information about inmate misconduct is recorded and categorized by the nature and severity of the offense. Incident codes are used to describe the offenses (CCSO_Howard_0078544-0078547; CCSO_Howard_0078551-0078554). In his report, Dr. Wilner identified and counted five relevant incident codes reflecting three types of sexual misconduct:

- **Indecent Exposure** (codes 210 and 323[1]): Intentional exposure of genitals, buttocks, pubic region or female breasts (areola or nipples) and/or unauthorized nudity.

- **Sexual Harassment** (codes 216 and 325[2]): Subjecting another person to sexually harassing or sexually suggestive conduct, including making sexual proposals.

- **Masturbation** (313): Masturbation in public or in front of staff or visitors

This report will examine the above codes as well as two additional codes which relate to

---

[1] Indecent Exposure was coded as 210 prior to May 2017 and coded as 323 after May 1, 2017.
[2] Sexual Harassment was coded as 216 prior to May 2017 and coded as 325 after May 1, 2017.

sexual misconduct not considered by Dr. Wilner in his report:

- **Sexual Activity** (316): Engaging in acts of a sexual nature, including penetration, without use of force or threat[3], and

- **Sexual Abuse/Assault** (412): Forceful act of sexual conduct or sexual penetration committed on a staff member, visitor or another inmate.

14. In addition, as discussed later in this report, incident descriptions for three other incident codes – **Aggravated Verbal Threat** (301), **Verbal Threat to Staff** (320) and **Disrespect to Staff** (322) – were found on occasion to include some incidents which are sexual in nature but were not coded as such. Since we did not have sufficient time to review and examine all the incidents associated with these codes, we elected not to include them in our formal counts of sexual misconduct. They are discussed later as examples of the types of incidents which lead to the conclusion that not all sexual misconduct has appropriately been accounted for.

15. Incident data were provided for the period January 2015 through September 2018.

## ERRORS IN THE DATA REPORTED BY DR. WILNER

16. Dr. Wilner included in his analyses incidents that are not relevant to this case and excluded incidents that are relevant. We focused on valid cases for the sexual misconduct codes listed above[4]. For the

---

[3] We did not include incidents with code 316 unless they were accompanied by another valid sexual misconduct incident code.

[4] Although Dr. Wilner examined a range of other non-sexual incident codes (which he termed "300-level benchmark incidents" and "403 benchmark incidents"), he presents the frequency of this misconduct to address a claim not made by Plaintiffs, i.e., that sexual misconduct incidents are the most pervasive issue at CCJ. I was unable to find such a claim in the Third Consolidated Complaint and indeed Dr. Wilner uses the following language in his report, "Based on these comments one **could** conclude that Plaintiffs are claiming that the reported indecent exposure-related incidents are the most pervasive issue at CCJ" (Wilner Report, p. 8, **emphasis added)**. That is an inference of Dr. Wilner, not a claim of Plaintiffs and therefore will not be addressed in this report, except to the following extent. In his Figure 1, Dr. Wilner portrays what he terms 300-level benchmark incidents occurring many times more frequently than sexual misconduct incidents, peaking in late 2017 at about seven times as frequently. However, according to Defendants' own categorizations, almost half of those "300-level benchmark incidents" are NOT directed against staff members, but rather are most often batteries against other inmates. Eliminating from Dr. Wilner's flawed "benchmarks" the incidents directed against victims who are not relevant to this case (i.e., other

period from January 2015 through September 2018, Dr. Wilner identified 2,073 incidents of sexual misconduct.  When properly counted, we found 1,745 valid incidents.

17. Table 1 below shows the number of cases of sexual misconduct reported by Dr. Wilner and the number of cases added or eliminated based on our further review of the data[5].  The application of our criteria to Dr. Wilner's dataset shows a less than careful attempt by him to ensure the accuracy of the data and cases he reports.  Dr. Wilner failed to identify cases with relevant sexual misconduct codes and included data for a large number of cases unrelated to the allegations in this case.

---

inmates, visitors, and APDs) dramatically reduces the difference between sexual misconduct incidents and the questionable "300-level benchmark" incidents.

[5] The cleaned data are contained in CCSO_Howard_0324283_CLEANv2 – *Incident Reports by Source*

Table 1
Criteria Used to Remove Errors from Dr. Wilner's Data

| Criterion | Dr. Wilner's Data | Corrected/Cleaned Data |
|---|---|---|
| Raw (uncleaned) cases | 2280 | 2293<br>13 cases added with relevant sexual misconduct incident codes previously counted by Dr. Wilner as 300 level non-sexual benchmark incidents |
| Within Timeframe (Jan 2015 – Sep 2018) | 140 out of date range excluded | 140 out of date range excluded |
| Relevant Sexual Misconduct Incident Code | 44 cases excluded because coded as "Not a Relevant Violation Code"; Both 2,099 cases coded with "Relevant Violation Code" and 148 coded as "No Violation Code" were counted in total | 44 cases added by including codes 316 and 412; 119 cases coded as "No Violation Code" were examined but not recoded as they would have been excluded by other criteria; 2,197 cases with "Relevant Violation Code |
| Location (excluding other non-Leighton courthouses) | 24 cases at non-Leighton courthouses were excluded | 27 cases excluded at non-Leighton courthouses (3 additional cases excluded: 2 identified at Markham by Incident Report narratives; 1 identified at Domestic Violation/DV courthouse) |
| Victim Type (not against APD or Other as a victim; not committed by female inmate; not a duplicate/test/error report) | No exclusion of cases based on victim type | 327 cases excluded with victim as APD, Other, or both; 64 cases excluded with male victim, or committed by female inmate, or duplicate/test/error reports, based on source file narratives; 123 cases with "No Victim Type" were not recoded as they would have been excluded by other criteria); 1,779 valid reports on CCSO[6] or Medical Personnel |
| Final Count of Cases* | 2,073 | 1,745 |

[6] In recoding incidents that had no victim type documented in the source file, the incidents that occurred on other staff (e.g., social worker, teacher) were coded as "CCSO", as CCSO staff was typically the reporter of such incidents.
*Note: Some cases were excluded based on multiple exclusionary criteria, so the final count of cases is fewer than the total number of cases excluded by the criteria.

18. Dr. Wilner also examined the frequency of certain sexual misconduct by location within the jail (Wilner report, Figure 6). Unfortunately, the data in Dr. Wilner's Figure 6 suffer from several data and computational issues. Dr. Wilner reports the monthly averages of incidents for three female housing divisions (Divisions 3, 4 and 5) not relevant to this case; includes a non-existent Division 15 which he footnotes as "conservatively included" and reporting incidents "… considered not to have occurred within CCJ or the Courthouse" (Wilner report, p. 14, footnote 32), and fails to include incidents occurring at the Courthouse or at the Jail but outside a division in his Figure 6 and/or codes those incidents as occurring in the division in which the inmate resides. He also appears to have erroneously calculated average monthly incident rate as if all the divisions were in operation for the full period of time from January 2015 through September 2018. In fact, he reports the average monthly incident rate for Division 1 (which was only in operation from January 2015 through February 2016) as if it had operated for the full 45 months. As a result, he reported the monthly incident rate as 0.56 when in fact it was more than three times as high (1.79) for the months in which it was in operation. Dr. Wilner also combined counts for Division 3, a female housing division, with data from Division 3 Annex, a male housing division, and then treated the combined data as if it represented 45 months of operation (i.e., January 2015 through September 2018) even though Division 3 had residents for only 14 months and Division 3 Annex had residents for only 32 of 45 months. In other words, he divided the counts by 45 months to get an average monthly rate, even though neither unit was in operation for anywhere close to 45 months.

19. Table 2 shows the differences in sexual misconduct incident counts for Dr. Wilner's analyses and our counts by division after we recoded incidents which actually occurred in other locations in the jail or other divisions based on a review of the source files on the incidents. In some cases, the counts were also decreased based on the cleaning criteria in Table 1. Of note is that Dr. Wilner elected to combine the data for Divisions 8, 9 and 10 in his Figure 6, which distorts the picture and implies that

sexual misconduct is barely occurring in the remainder of the jail and courthouse facilities. A comparison of Dr. Wilner's original Figure 6 and his Figure 6 (Corrected) as discussed above is shown in Figures 1 and 2. Figure 2 provides a more accurate presentation of the prevalence across various locations within the Jail and Courthouse of inappropriate sexual behavior, including in other locations within the Jail (e.g., in Receiving, Classrooms, Kitchen, Dispensary, and the Bridge) and in the Courthouse, none of which were effectively addressed by Dr. Wilner.

Table 2
Sexual Misconduct Incidents by Location

| Location | Population Data | Dr. Wilner's Count | Corrected Count* |
|---|---|---|---|
| Division 1 | New population data received from 0330678, from Jan 15 to Feb 16 | 25 | 20 |
| Division 2 | Data for four dorms from Jan 15 to Nov 18 | 46 | 37 |
| Division 3 | Data from Jan 15 to Feb 16 | 22; Combined Div 3 Annex into Div 3 | Excluded – female division |
| Division 3 Annex | Data from Jan 15 to Sep 17 | | 6; Separated from Div 3 as it's a male division |
| Division 4 | Data from Feb 16 to Apr 18 | 47 | Excluded – female division |
| Division 5 | Data from Jul 15-Aug 15, then Nov 17 to Nov 18 | 37 | Excluded – female division |
| Division 6 | Data from Jan 15 to Nov 18 | 118 | 84 |
| Division 8 RTU | Data from Jan 15 to Nov 18 | 1439; Combined | 149; Separated from Div 8 |
| Division 8 | Data from Jan 15 to Nov 18 | | 71; Separated from Div RTU; almost all in Div 8 Cermak |
| Division 9 | Data from Jan 15 to Nov 18 | | 618 |
| Division 10 | Data from Jan 15 to Nov 18 | | 348 |
| Division 11 | Data from Jan 15 to Nov 18 | 100 | 92 |
| Other Location in Jail | N/A | Not included in Fig.6 | 151 |
| Leighton Courthouse | N/A | Not included in Fig.6 | 110 |

*Differences in the counts were due to cases recoded to "Other Location in Jail" or other divisions based on source files, or they were excluded based on cleaning criteria.

Figure 1
Figure 6 from Dr. Wilner's Report



**Figure 6**
**Indecent Exposure-Related Incidents Reported By Jail Division**
**January 2015 - September 2018, Monthly Averages**

Figure 2
Corrected Version of Dr. Wilner's Figure 6



**Figure 6 (Corrected)**
**Sex-Related Incidents by Male Inmates by Jail Location of Incident**
**January 2015 - September 2018, Monthly Averages**

20. Many of the same errors which plagued Dr. Wilner's Figure 6 were also present in his Figure 12. Figure 12 relies on erroneous counts which require substantial clean-up, as discussed above. Specifically, Figure 12:

   a. Omits Division 1 altogether from the figure;

   b. Combines data for a female division (Division 3) with a male division (Division 3 Annex);

   c. Reports data for female divisions (Divisions 3, 4 and 5) which are irrelevant to the issues in this case;

   d. Combine data for Division 8 RTU with Division 8 (Cermak);

   e. Either excludes, or attributes to a division, incidents that occurred elsewhere in the Jail or in the Courthouse.

21. Even ignoring these flaws, we are unable to replicate his findings for Figure 12.

**PATTERNS OF SEXUAL MISCONDUCT OVER TIME**

22. Dr. Wilner refers throughout his report to the sexual misconduct behavior as "indecent exposure-related reported incidents". This labeling tends to minimize the significance and severity of the sexually harassing behavior reported, particularly given the prevalence of masturbation and sexual assault incidents.

23. Dr. Wilner also created a benchmark comparison group of other unrelated inmate misconduct as if the significance of sexual misconduct should be credited only if it were the most prevalent misconduct in the Jail and Courthouse.

24. Figure 3 presents the pattern of sex-related incidents by quarter for the period from January 2015 through September 2018. Each bar represents the total of Indecent Exposure, Sexual Harassment, Masturbation and Sexual Assault incidents against female employees. The graph shows a dramatic increase in incidents in 2015 and a decline in the later quarters of 2018. Across the time period, only 2 of 15 quarters had a sex-related incidence rate against female employees of less than once

per day and over half of the 15 quarters had sex-related incidence rates against female employees of 2 or more times per day. Those frequency rates are shown with horizontal lines in Figure 3. I also understand that CCSO's 30(b)6) witness Bradley Curry testified that 36 sexual misconduct incidents in two months would be significant (Curry deposition, 1/11/19, p. 88). A rate of 36 incidents in two months equates to 54 incidents per quarter. That rate was equaled in the first quarter of 2015 and far exceeded in every other quarter, as shown by the dotted horizontal line in Figure 3. The majority of these incidents were Masturbation incidents which remained quite prevalent and began to decline in Q1 of 2018 (see Figure 4).

Figure 3



Sex-Related Incidents by Quarter
January 2015 - September 2018

Figure 4



Masturbation Incidents by Quarter

**UNDERREPORTING OF INCIDENTS**

25. The sexual misconduct incidents reported above are underestimates of the actual sexually harassing behavior experienced by female employees.  We found about 50 incidents which described verbal threats of sexual assault coded as Aggravated Threats (301), Disrespect to Staff (322) or Verbal Threat to Staff (320), with no indication in the incident coding of the sexual nature of the threat or disrespect.  Table 3 contains several examples of such cases.  It is evident from the cases in Table 3 that verbal sexual harassment and sexual threats occurred in many locations throughout the Jail and Courthouse, and the female victims of such behavior included corrections officers, medical personnel, courtroom personnel and social workers.   We also understand from the declarations that we reviewed that many, possibly a huge majority, of incidents of verbal sexual harassment were not reported at all under any codes.

Table 3
Sexual Misconduct Incidents Coded Using Non-Sexual Incident Codes

| Production Bates Begin | Production Bates End | Incident Report Number | Incident Date | Incident Location | Category of Victim | Charge(s) | Notes |
|---|---|---|---|---|---|---|---|
| CCSO_Howard_ 0247826 | CCSO_Howard_0 247826 | MW-2017-10291 | 6/20/2017 | Maywood COURTHOUSE | CCSO | 322 - Disrespect to Staff | Describes an incident which occurred in the courthouse when a detainee approached an officer and courthouse employee on two occasions, verbally harassing an officer and a female courtroom employee in a sexual manner. |
| CCSO_Howard_ 0195798 | CCSO_Howard_0 195798 | DIV11-2015-11052 | 8/6/2015 | Division 11 Dayroom | CCSO | 105 -Disorderly Conduct; 204 - Damage to CCSO Property (more than $50); 219 - Disobeying or Resisting Orders; 320 - Verbal Threat to Staff | Describes an incident which occurred in the dayroom in which the detainee threatened sexual assault of the female officer supervising him. |
| CCSO_Howard_ 0218214 | CCSO_Howard_0 218214 | DIV6-2016-20243 | 12/13/2016 | Division 6 In Cell | CCSO | 320 - Verbal Threat to Staff | Describes an incident which occurred in the inmate' s cell in which the inmate verbally threatened the female officer with sexual assault and other bodily harm. |
| CCSO_Howard_ 0280257 | CCSO_Howard_0 280257 | DIV11-2018-4979 | 4/15/2018 | Division 11 Dayroom | CCSO | 301 - Aggravated Verbal Threat | Describes an incident which occurred in Division 11 in which the inmate threatened to sexually assault a female officer. (Note: The bates Number of the document which describes this incident is CCSO_Howard_0280258). |
| CCSO_Howard_ 0188131 | CCSO_Howard_0 188131 | DIV10-2015-3834 | 1/19/2015 | DAYROOM | CCSO | 105 -Disorderly Conduct; 205 - Disrespect to Staff; 320 - Verbal Threat to Staff | Describes an incident which occurred in the Dayroom in which an inmate asked to see and smell an officer's underwear |

Table 3

Sexual Misconduct Incidents Coded Using Non-Sexual Incident Codes

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CCSO_Howard_0175120 | CCSO_Howard_0175120 | DIV08-2015-982 | 3/19/2015 | Division 8 RTU Male Holding | CCSO; Medical Personnel | 105 -Disorderly Conduct; 205 - Disrespect to Staff; 219 - Disobeying or Resisting Orders; 320 - Verbal Threat to Staff | Describes an incident which occurred in the Dayroom in which the inmate exposed himself to female mental health staff and threatened one of the staff members with physical harm. |
| CCSO_Howard_0186125 | CCSO_Howard_0186125 | DIV08-2018-4208 | 3/28/2018 | Div. 8 RTU In Cell | Medical Personnel | 322 - Disrespect to Staff | Describes an incident which occurred in an inmate' s cell in which an inmate exposed himself to a female medical staff member. (Note: This incident report is no labeled as indecent exposure in master spreadsheet bu is labeled as such on report). |
| CCSO_Howard_0189259 | CCSO_Howard_0189259 | DIV10-2016-12014 | 7/26/2016 | Div. 10 Male Holding | Medical Personnel | 105 -Disorderly Conduct; 205 - Disrespect to Staff; 301 - Aggravated Verbal Threat | Describes an incident which occurred in the male Holding facility in which an inmate threatened to sexually assault a female medical staff member. |
| CCSO_Howard_0182992 | CCSO_Howard_0182992 | DIV08-2017-18569 | 11/18/2017 | Div. 08 RTU DISPENSARY | Medical Personnel | 322 - Disrespect to Staff; 320 - Verbal Threat to Staff | Describes an incident which occurred in the Dispensary in which the inmate threatened to sexually assault a nurse. |
| CCSO_Howard_0221353 | CCSO_Howard_0221353 | DIV6-2017-15713 | 9/26/2017 | Div. 6 Dayroom | CCSO | 105 - Disorderly Conduct; 219 - Disobeying or Resisting Orders; 322 - Disrespect to Staff | Describes an incident which occurred in the Dayroom in which the an inmate threatened to sexually assault a female officer and other officers. |
| CCSO_Howard_0171243 | CCSO_Howard_0171243 | DIV08-2015-10946 | 8/5/2015 | Div. 08 Dayroom | CCSO | 105 - Disorderly Conduct; 320 - Verbal Threat to Staff | Describes an incident which occurred in the Dayroom in which the inmate threatened a psychological worker with sexual assault after being told to take his hand out of his pants. |

26. In addition, the lack of access to report incidents in CCOMS for employees in positions other than Corrections Officers is a systematic factor which contributes to underreporting of sexual misconduct incidents for these employees, especially when counts are based on CCOMS data. I understand that Cermak medical and mental health personnel were never themselves given access to CCOMS to submit incident reports that would trigger the disciplinary process, but rather had to rely on uniform staff to submit such reports for them (Patel deposition, pp. 86-87 and 102-104; Freeman deposition, pp. 116-117) Non-uniform staff and civilian personnel were able to submit written reports of inmate misconduct to their managers or to enter reports in the hospital reporting system, but such reports were not tracked in CCOMS and did not initiate the disciplinary process (Patel deposition, pp. 154-155). Court personnel were only permitted to enter incident reports in CCOMS beginning in November 2017 (Patel deposition, pp. 102-104). As a result, the frequency of incidents against female employees other than Corrections Officers when counted by CCOMS would be an underestimate. Also, the percentage representation of non-uniformed employees among the victims of sexual misconduct would be similarly affected.

27. Of the incidents reported in CCOMS as sexual misconduct, approximately 80% are committed by male inmates against female CCSO employees, an additional 17% are against female medical personnel, 2% are incidents against both CCSO and Medical personnel and a final 2% are against CCSO female employees and others (including APDs).

**CONCLUSION**

28. It is my professional opinion based on the data I analyzed that sexual misconduct against female employees was widespread throughout the Jail and Courthouse over the period of January 2015 through September 2018. This behavior increased dramatically in 2015 and remained at or above 150 reported incidents per quarter until the second quarter of 2018, after the TRO was issued in this case. Even in the third quarter of 2018 the rate was just below one reported incident per day and

17

far above the level of concern identified by CCSO's 30(b)(6) witness, Mr. Curry. Masturbation and Indecent Exposure were the most frequently reported incidents of sexual misconduct against female employees in various positions, including Corrections Officers, medical personnel and other staff at CCSO.

29. It is also my professional opinion that data used by Dr. Wilner to reach his conclusions are flawed and unreliable as a basis for his conclusions. Dr. Wilner failed to identify cases with relevant sexual misconduct codes (e.g., Sexual Assault cases and cases where incident descriptions included sexual threats) and included data for a large number of cases unrelated to the allegations in this case (incidents against APDs, against male employees and incidents occurring outside the Jail or Leighton Courthouse). Unfortunately, he also appears to have made calculation errors which distorted his findings.

I make this declaration under penalty of perjury, this 12th day of April 2019.

Kathleen K. Lundquist, Ph.D.

**ATTACHMENT A**

**KATHLEEN KAPPY LUNDQUIST**

APT*Metrics*, Inc.
One Thorndal Circle
Darien, CT  06820
Business: (203) 655-7779


**EDUCATION**

| | | | |
|---|---|---|---|
| Ph.D. | Psychometrics | Fordham University | 1979 |
| M.A. | Psychometrics | Fordham University | 1976 |
| B.A. summa cum laude | Psychology | College of Mt. St. Vincent | 1974 |


**PROFESSIONAL EXPERIENCE**

1995 to Present      **APT*Metrics*, Inc.**

*President and CEO.*  Founded and manages the firm, which provides consulting services in the design and validation of employee selection procedures, performance management, downsizing and executive assessment for Fortune 100 clients in the aerospace, banking, pharmaceutical, telecommunications, consulting and utility industries.  Project experience also includes a variety of public sector employers.  Conducts litigation support activities, including serving as an expert witness for both plaintiffs and defendants, and as a court-appointed expert and monitor in settlements of class action litigation.


1990 to 1995      ***HRStrategies***

1991 to 1995      *Vice President.*  Responsible for managing the New York Regional Office of HRStrategies, providing consulting services in skills assessment, survey design, test development, and validation projects for clients primarily in Fortune 100 companies.


1990 to 1991      *Managing Principal.*  Opened the New York Regional Office of HRStrategies.

| 1989 to 1990 | **HEWITT ASSOCIATES** |
|---|---|

*Consultant.*  Provided assistance to clients in the design and implementation of performance management and other human resource programs.  Special expertise in the areas of construction and validation of selection systems and management of large scale research projects.

| 1979 to 1989 | **SOUTHERN CALIFORNIA EDISON** |
|---|---|

| 1987 to 1989 | *Manager, Human Resources Measurement and Development.* Responsible for managing, promoting, and administering research and development programs related to selection, training, and organizational development.  Areas of responsibility included (1) internal management consulting, (2) development and validation of selection procedures, (3) design and administration of corporate training programs, and (4) employee development programs such as career counseling, performance management, and educational assistance.  Directed a professional staff of forty and administered a budget of $3.5 million.  Interfaced with all levels of management, legal counsel, and federal and state EEO compliance agencies. |
|---|---|

As the chief *Industrial Psychologist* for the corporation, responsibilities also included (1) managing the behavioral reliability and psychological assessment programs, (2) testifying at grievances, arbitrations, and trials, and (3) serving in an oversight capacity for Employee Assistance Program and certification of mental health provider network.

| 1985 to 1986 | *Manager, Human Resources Measurement.*  Responsible for all selection procedure development, test validation, and administration of testing program for over 15,000 people annually.  Directed a professional staff of seven psychologists and a total staff of 19. |
|---|---|

| 1983 to 1985 | *Project Administrator, Selection Task Force.*  Responsible for design and execution of company-wide studies to validate new selection procedures for major entry-level jobs.  Completed criterion-related and content validation studies covering 92 percent of entry-level hiring activity.  Directed a staff of 12 and administered a budget of $400,000. |
| --- | --- |
| 1979 to 1983 | *Industrial Psychologist.*  Responsible for test development, validation, and internal consulting on personnel research issues. |
| 1978 to 1979 | ***EDUCATIONAL TESTING SERVICE*** |
| | *Senior Research Assistant.*  Conducted special research studies involving item analysis and IRT calibration of large scale test databases.  Developed instructional workshops on the use of item response theory.  Provided technical assistance to state and local education agencies on program evaluation. |
| 1978 | ***NATIONAL ACADEMY OF SCIENCE*** |
| | *Research Associate to the Committee on Ability Testing.*  Provided staff assistance to the blue ribbon panel studying test bias.  Wrote position papers in the area of employment testing.  Represented the Committee at relevant meetings. |
| 1974 to 1975 | ***HARCOURT BRACE JOVANOVICH*** |
| | *Research Assistant.*  Participated in the development of the Metropolitan Achievement Test, including item writing and statistical analyses. |

**TEACHING**

| 1986 to 1989 | *California School for Professional Psychology.*  Graduate faculty. Taught Personnel Assessment, Statistics, and Advanced Multivariate Methods for doctoral candidates in Organizational Psychology. Mentored Doctoral dissertation. |
| --- | --- |
| 1980 to 1988 | *University of San Francisco.*  Graduate faculty.  Taught Statistics and Advanced Research Design for Human Resources & Organizational Behavior major.  Mentored Masters theses. |

| 1977 | *Long Island University.*  Adjunct Faculty.  Taught graduate courses in Statistics and Research Methodology. |
| 1976 to 1978 | *Mercy College.*  Adjunct Faculty.  Taught Introductory Psychology, Theories of Personality, Statistics and History of Psychology. |

## SPECIAL INTEREST AREAS

Pay Equity, Criminal Background Checks and Building Diversity in Leadership Pipelines.

## EDUCATIONAL FELLOWSHIPS

| 1976 to 1977 | *Fordham University.*  Teaching Fellowship.  Responsible for the development and evaluation of individualized, self-paced instruction in General Psychology, as well as courses in Statistics and Applied Psychology. |
| 1976 | *Educational Testing Service.*  Summer Research Fellowship.  Investigated gender and ethnic bias in testing methods. |
| 1975 to 1976 | *Fordham University.*  Graduate Research Assistant.  Assisted Drs. Anne Anastasi and John Walsh in graduate courses on Statistics and Computer Utilization. |
| 1974 to 1976 | *Harcourt Brace Jovanovich.*  Fellowship in Psychometrics.  Conducted a review of tests for gender bias in content.  Also participated in test administration and validation of a general intelligence test for minority group job applicants. |

## PUBLICATIONS

Lundquist, K. K., Locklear, T. S., & Lippstreu, M. (2017).  Using Your Data Wisely: Proactive Monitoring of Employment Disparities.  In S. B. Morris & E. M. Dunleavy (Eds.), Adverse Impact Analysis: Understanding Data, Statistics and Risk. (pp. 261-277).  New York: Routledge.

Ashe, R. L., & Lundquist, K. K. (2010).  The Legal Environment for Assessment.  In J. C. Scott & D. H. Reynolds (Eds.), Handbook of Workplace Assessment (pp. 643-669).  San Francisco: Jossey Bass.

Goldstein, I. L., & Lundquist, K. K. (2009).  A Five-Year Journey with Coca-Cola.  In J. Outtz (Ed.), Adverse Impact: Implications for organizational staffing and high stakes selection (pp. 473-501) .  New York: Routledge.

Lundquist, K. K. (2009).  *Validation of performance appraisals: Ongoing questions in a new light post Ricci and the FPA.*  Paper presented at the American Employment Law Conference, October 2009.

Lundquist, K. K. (2009).  Does affirmative action still work?  *Diversity Executive,* May 2009.

Lundquist, K. K. (2008).  Beyond affirmative action: The changing face of recruitment.  *Talent Management*, Vol. 4, No. 1, 18-23.

Lundquist, K. K., Scott, J. C., & Curtis, J. R. (1995).  Selection techniques for a diverse workforce. In American Bar Association (Eds.), *Equal Employment Opportunity Laws 30 Years Later*. Washington, D.C.: American Bar Association.

Lundquist, K. K., & Jones, D. P. (1992).  Skill-Based Job Analysis.  *Technical & Skills Training*, February/March1992, 7-12.

Jones, D. P. & Lundquist, K. K. (1991).  *Construction and skilled trades selection system:  Job analysis report.*  Washington, D.C.:  Edison Electric Institute.

Jones, D. P. & Kappy, K. A., (1990*).  Construction and skilled trades selection system:  Final technical report*.  Washington, D.C.:  Edison Electric Institute.

Kappy, K. A., (1979).  Differential effects of decreased testing time on the verbal and quantitative aptitude scores of males and females.  Unpublished doctoral dissertation, Fordham University, May 1979.  (Mentor:  Dr. Anne Anastasi)

**PRESENTATIONS**

| 2018 | Lundquist, K. K. "Criminal Background Checks: New Realities", National Society of Human Resource Management (SHRM) Webcast. November 2018. |
|------|----------------------------------------------------------------------------------------------------------------------------------------|
| 2018 | Lundquist, K. K., Kantrowitz, T., Knapp, D. & McHenry, J.  Panel discussion entitled "Gender Equity in I/O Practice: The Known and Unknown" at the annual meeting of the Society for Industrial and Organizational Psychology, Chicago, IL, April 2018. |

| 2017 | Gray, M., Sailer, W., & Lundquist, K. K.  Panel discussion entitled "Data Analytics in the Workplace" at the American Employment Law Conference, La Jolla, CA, October 2017. |

2017          Gray, M., Sailer, W., & Lundquist, K. K.  Panel discussion entitled "Data Analytics in the Workplace" at the American Employment Law Conference, La Jolla, CA, October 2017.

2017          Baffa, D., Tyman, A., Lundquist, K. K., & White, P.  Panel discussion entitled "Using Big Data to Make Employment Decisions.  Webinar conducted by Seyfarth Shaw, May 2017.

2016          Rafuse, N. E., Lundquist, K. K., & Bogan, L.  Panel discussion entitled "The Moneyball of Employment Decisions: Using People Analytics and Big Data as a Recruitment and Selection Device" at the Retail Industry Law Conference, Atlanta, GA, October 2016.

2016          Lundquist, K. K.  Validation Issues in the Use of Big Data.   Testimony at the U.S. Equal Employment Opportunity Commission meeting entitled "Big Data in the Workplace:  Examining Implications for Equal Employment Opportunity Law, Washington, D.C., October 13, 2016.

2016          Locklear, T. A., & Lundquist, K. K.  Prepare for the Future of Pay Equity. Webinar presented by the Society for Human Resource Management, September 22, 2016.

2016          Lundquist, K. K.  New Challenges from the Court Room.  Presentation at the Metropolitan New York Association of Applied Psychology, New York, June 2016.

2016          Lundquist, K. K., McLellan, J., & Reithel, S.  Financial Advisors: Capturing the Formula for Success.  Paper presented the annual Society for Industrial and Organizational Psychology conference, Anaheim, CA, April 2016.

2016          Lundquist, K. K., Ashe, R. L., Jr., & Dermody, K.  Legal Update: What's New and How it Affects You.  Workshop presented the annual Society for Industrial and Organizational Psychology conference, Anaheim, CA, April 2016.

2016          Lipnic, V, Lundquist, K. K., Morgan, H. A., & Webber, C. E.  Panel discussion entitled "21st Century Science Meets 20th Century Rules: Can Employers Make Effective Use of Big Data that Complies with UGESP" at the American Bar Association's National Conference on EEO Law, Austin, TX, March 2016.

2016      Lundquist, K. K. Assessing "Substantially Similar" Work.  Webinar presented by Davis, Wright, Tremaine entitled "The New Push for Pay Equity".  March 2016.

2016      Lundquist, K. K. Assessing "Substantially Similar" Work.  Webinar presented by Hunton & Williams entitled "Complying with California's New Fair Pay Act".  January 2016.

2015      King, A. G., Lundquist, K. K., & Morgan, H. A.  Finding a needle in a haystack or something more painful: The use of algorithms and big data in the hiring process. Presentation at the American Employment Law Conference, Ojai, CA, October 2015.

2015      Geier, J., Glasser, N., Holt, R., Lundquist, K. K., & Morgan, H. A.  Big data analytics and HR technology: Meeting emerging challenges in sourcing and selection.  Presentation at the annual conference of the National Industry Liaison Group, New York, July 2015.

2015      Lundquist, K. K. Legal update: What's new and how does it affect you!  Presentation at the Personnel Testing Council of Metropolitan Washington, Alexandria, VA, July 2015.

2015      Lundquist, K. K.  Big data and big challenges in managing the legal risk of your assessments.  Presentation at the annual conference of the International Personnel Assessment Council, Atlanta, GA, July 2015.

2015      Lundquist, K. K.  The current status, opportunities and challenges as we face discrimination in the 21st Century.  Testimony at the U.S. Equal Employment Opportunity Commission meeting on racial and ethnic discrimination in the 21st century workplace, Miami, FL, April 15, 2015.

2014      Lundquist, K. K.  A Primer on Performance Management.  Presentation at the American Bar Association's Eighth Annual Labor & Employment Conference, Los Angeles, CA, November 2014.

2014      Lundquist, K. K., & Fortney, D.  Criminal Background Checks.  Series of four podcasts presented by the Society for Human Resource Management, http://www.shrm.org/multimedia/podcast/pages/default.aspx, June 2014.

2014            Lundquist, K. K.  Working with Experts: What Lawyers Do Wrong (or Occasionally Right).  Panel discussion at the annual National Employment Law Association conference, Boston, MA, June 2014.

2013            Lundquist, K. K., & Fortney, D.  What to do when a Criminal Background Check Turns Up … Something.  Webinar presented by the Society for Human Resource Management, December 11, 2013.

2013            Lundquist, K. K., Ashe, R. L., Jr., Livingston, D., & Nordstrom, M.  The Latest Line of Attack: Performance Appraisals Revisited.  Panel discussion at the American Employment Law Conference, Santa Barbara, CA, October 2013.

2013            Lundquist, K. K., Ashe, R. L., Jr., Locklear, T.S., & Barsness, P.  Assessing the Legal Risks of your Assessments.  Workshop presented the annual Society for Industrial and Organizational Psychology conference, Houston, TX, April 2013.

2012            Lundquist, K. K.  Validation 101: Testing the test.  Panel discussion entitled "The Survivors post *Dukes* and Ricci: Cases about biased tests and job requirements that have not been validated" at the 6th Annual American Bar Association Labor and Employment Law Conference, Atlanta, GA, November 2012.

2012            Lundquist, K. K.  International Research on Alternative Selection Procedures.  Presentation at the annual conference of the Society for Industrial and Organizational Psychology, San Diego, CA, April 2012.

2011            Lundquist, K. K.  Diversity: Beyond the Requirements. Presentation at the Southern Connecticut Society for Human Resource Management, November 2011.

2011            Lundquist, K. K.  Addressing the subjectivity challenge.  Presentation at the American Employment Law Conference, Ojai, CA, October 2011.

2009            Lundquist, K. K., & Locklear, T. S.  What you don't know can hurt you: The value of an HR process audit.  Webinar presented for Southern Connecticut Society for Human Resource Management, March 2011.

| | |
|---|---|
| 2010 | The Power of Measurement: Evaluating your diversity success. Presentation at the annual conference of DiversityBusiness.com, Washington, D.C., April 2010. |
| 2010 | Lundquist, K. K., & Ashe, R. L., Jr.  Trends in Employment Law: *Ricci* and Beyond.  Workshop presented the annual Society for Industrial and Organizational Psychology conference, Atlanta, GA, April 2010. |
| 2009 | Lundquist, K. K.  Validating performance appraisals: Ongoing questions in a new light.  Presentation at the American Employment Law Conference, Dana Point, CA, October 2009. |
| 2009 | Lundquist, K. K., Scott, J. C., & Puma, M. J.  "How to make lemonade …": A recipe for moving forward after your corporate restructuring. Webinar presented by Talent Management Magazine, September 2009. |
| 2009 | Lundquist, K. K., Goldstein, H. & Perkins, W.  The *Ricci* case in a Nutshell.  Presentation at the Metropolitan Association of Applied Psychologists (METRO), New York, NY, September 2009. |
| 2009 | Dichter, M. S., Evans, P. C., Painter, A. M., Stillman, N. G., & Lundquist, K. K.  "Understanding *Ricci*, the New Haven Firefighters Case: Implications for your employment decisions and diversity practices.  Webinar presented by Morgan Lewis & Bockius LLP, August 2009. |
| 2009 | Lundquist, K. K., & Geier, J. A.  The *Ricci* case or How to test in turbulent times.  Presentation at the Northeast Region Corporate Industry Liaison Group, New York, NY, June 2009. |
| 2009 | Lundquist, K. K., & Scott, J. C.  Bulletproofing a reduction in force. Webinar presented for Southern Connecticut Society for Human Resource Management, May 2009. |
| 2009 | Lundquist, K. K., Goldstein, I. L., Mehri, C., Redwood, R., & Moan, J. Toward innovation: A five year journey with Coca-Cola.  Invited SIOP address at the annual convention of the Society for Industrial and Organizational Psychology, New Orleans, LA, April 2009. |
| 2008 | Lundquist, K. K., & Scott, J. C.  Testing the Test: Validation, Litigation & Risk Management.  Webinar presented by Talent Management Magazine, November 2008. |

| | |
|---|---|
| 2008 | Lundquist, K. K.  The Power of Measurement: Tracking your Diversity Success.  Invited presentation at Nyckeltalsinstitutet AB, Stockholm, Sweden, April 2008. |
| 2008 | Lundquist, K. K.  Making diversity work: How to measure and advance the impact of your internal inclusion initiatives.  Webinar presented for Southern Connecticut Society for Human Resource Management, April 2008. |
| 2007 | Lundquist, K. K.  The Power of Measurement: Evaluating your Diversity Success.  Presentation at the SHRM Workplace Diversity Conference, Philadelphia, PA, October 2007. |
| 2007 | Lundquist, K. K.  How to determine if your company's tests pass muster.  Presentation at the Workforce Opportunity Network sponsored by ORC, Dallas, TX, October 2007. |
| 2007 | Lundquist, K. K., Casellas, G. F., & Moan, J. P.  Toward Innovation: New Insights for the Multicultural Workplace.  Presentation at the Southern Connecticut Society for Human Resource Management, September 2007. |
| 2007 | Lundquist, K.  K.  Innovative approaches to testing.  Testimony at the U.S. Equal Employment Opportunity Commission meeting on employer testing and screening, Washington, D. C., May 16, 2007. |
| 2007 | Ashe, R. L., Jr., & Lundquist, K. K.  Building Legal Defensibility into your HR Processes.  Workshop presented the annual Society for Industrial and Organizational Psychology conference, New York, NY, April 2007. |
| 2007 | Lundquist, K. K. & Casellas, G. F.  Toward Innovation: Reflections on the Coca-Cola Experience.  Presentation at the Chief Diversity Officer Forum, Greensboro, NC, March 2007. |
| 2006 | Lundquist, K. K. & Casellas, G. F.  Human resource process audits: The whys, the hows and the wherefores.  E-seminar presented by Workforce Performance Solutions magazine, November 2006. |
| 2006 | Lundquist, K. K.  Latest issues in employment litigation. Presentation at the Middle Atlantic Personnel Assessment Council conference, Princeton, NJ, November 2006. |

| | |
|---|---|
| 2006 | Lundquist, K. K.  Latest issues in employment litigation.  Presentation at the Metropolitan New York Association of Applied Psychology, New York, June 2006. |
| 2006 | Lundquist, K. K.  Current areas of challenge in HR practices: How to avoid costly class action settlements.  Presentation at the Personnel Testing Council of Metropolitan Washington, Washington, D. C., June 2006. |
| 2006 | Casellas, G. F. & Lundquist, K. K.  Measuring progress in diversity: Practical and legal considerations for the journey.  Presentation at the annual Diversity Conference of The Conference Board, New York, May 2006. |
| 2006 | Lundquist, K. K.  Making your case: Judicious tips for communicating with judges, juries and attorneys.  Presentation at the Society for Industrial and Organizational Psychology conference, Dallas, April 2006. |
| 2006 | Lundquist, K. K.  Employee selection and testing: What you must know.  Presentation at the Pacific Employment Law Conference, Seattle, May 2006. |
| 2006 | Lundquist, K. K.  21st Century Employee Selection.  Presentation at the American Bar Association, Section of Labor and Employment Law, Equal Employment Opportunity Committee, La Jolla, California, April 2006. |
| 2005 | Lundquist, K. K.  Testing: What's New and What's Scary or How to Avoid the Snake Oil Salespeople.  Presentation at the 24th Annual Davis, Wright, Tremaine Employment Law Seminar, Seattle, October 2005. |
| 2005 | Lundquist, K. K.  Diversity Measurement in Organizations:  The changing challenge.  Presentation at the annual convention of the American Psychological Association, Washington, D. C., August 2005. |
| 2005 | Lundquist, K. K.  Recipe for Workplace Success:  Personality is the secret ingredient.  Presentation at the annual convention of the International Council on Hotel, Restaurant and Institutional Education, Las Vegas, July 2005. |

| | |
|---|---|
| 2005 | Testing: What's New and What's Scary or How to Avoid the Snake Oil Salespeople.  Presentation at the National Employment Law Council Conference, Chicago, April 2005. |
| 2005 | Lundquist, K. K., Curtis, J. C., & Snyder, D. W.  Blind Judgment: An attempt to reduce adverse impact in the interview.  Panel discussion at the Society for Industrial and Organizational Psychology conference, Los Angeles, April 2005. |
| 2004 | Put to the Test: The New Scrutiny of Employee Testing and Selection Procedures.  Presentation at The American Employment Law Council, Twelfth Annual Conference, Palm Beach, Florida, October 2004. |
| 2004 | Lundquist, K. K. & Scott, J. C.  Legal considerations when auditing your performance management system.  Panel discussion at the Society for Industrial and Organizational Psychology conference, Chicago, April 2004. |
| 2002 | The Evolving Definition of Work.  Presentation to the Connecticut Quality Improvement Association, Wallingford, CT, October 2002. |
| 2002 | In the Line of Fire: From the HR Process Design Perspective.  Presentation to the Equal Employment Advisory Council's Training Program on Employment Discrimination Class Actions, Alexandria, Virginia, April 2002. |
| 2002 | What I/Os Need to Know About the Skill Standards Movement.  Panel discussion at the Society for Industrial and Organizational Psychology conference, Toronto, April 2002. |
| 2001 | The Litigation Landscape: How it Affects our Role as I/O Psychologists.  Presentation to the Society for Industrial and Organizational Psychology Doctoral Consortium, San Diego, California, April 2001. |
| 2000 | Pay Equity: The New Discrimination Frontier.  Workshop presented by Economic Research Services, Atlanta, Georgia, October 2000. |
| 2000 | Use and Abuse of Experts.  The American Employment Law Council, Eighth Annual Conference, Hot Springs, Virginia, October 2000. |

| 1999 | Compensation Disparities and Organizational Realities.  American Bar Association, Section of Labor and Employment Law, Equal Employment Opportunity Committee, Boca Raton, Florida, March 1999. |
|---|---|
| 1997 | Downsizing: Lessons from the Firing Line.  Georgia State University, Human Resources Round Table, Atlanta, Georgia, January 1997. |
| 1997 | Recent developments in employment litigation.  Workshop presented with R. Lawrence Ashe, Jr., Esq. at the Society for Industrial and Organizational Psychology, St. Louis, Missouri, April, 1997. |
| 1996 | Success factors for I/O doctoral programs: Planning for the 21st century.  Panel discussion presented at the Society for Industrial and Organizational Psychology, San Diego, California, April 1996. |
| 1995 | Selection techniques for a diverse workforce.  Presented at the American Bar Association Section of Labor and Employment Law Anniversary Celebration, Washington, D.C., May 1995. |
| 1994 | Training to the top:  Workforce skills and global competitiveness.  Symposium presented at the Society for Industrial Organizational Psychology, Nashville, TN, April 1994. |
| 1992 | Attacking the skills gap:  A report from the firing line.  Symposium presented at the Society for Industrial and Organization Psychology, Montreal, Ontario, Canada, May 1992. |
| 1991 | Skill-based job analysis:  A strategy for closing the skills gap.  Paper presented with Michelle M. Crosby at the Society for Industrial and Organizational Psychology, St. Louis, MO, April 1991. |
| 1990 | The role of the analyst in the job analysis process.  Compiler or interpreter?  Paper presented at the annual conference of the International Personnel Management Association Assessment Council, San Diego, CA, June 1990. |
| 1990 | An overview of today's testing technology.  Paper presented at the Annual Labor and Employment Law Conference of Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, June 1990. |

| 1990 | Recent developments in EEO. Workshop presented with R. Lawrence Ashe, Jr. Esq., at the annual conference of the Society for Industrial and Organizational Psychology, Miami Beach, FL, April 1990. |
|------|------|
| 1990 | Technology, automation and their human resources implications. Paper presented the Local Government Personnel Association, Washington, D.C., March 1990. |
| 1989 | Employee selection systems: Interviews, written and physical tests, experience checks, differential scoring, and formal validation studies after *Hopkins, Atonio and Watson*. Workshop presented at the National Employment Law Institute Conference on EEO in Federal, State, and Local Government, Washington, D.C., September 1989. |
| 1989 | Designing and conducting large-scale research projects. Workshop presented with David P. Jones at the annual conference of the Society for Industrial and Organizational Psychology, Boston, MA, April 1989. |
| 1988 | Considerations in setting cutoff scores: Legal and professional standards. Workshop presented with David P. Jones at the annual Edison Electric Institute Test Users Conference, Dearborn, MI, October 1988. |
| 1983 | Employment selection and testing: A review of legal and practical considerations. Paper presented at the California Employment Law Conference, San Francisco, CA, November 1983. |
| 1980 | Achievement level testing effects on Rasch item difficulty estimates. Paper presented at the annual meeting of the American Educational Research Association, Boston, MA, April 1980. |
| 1979 | The impact of test speededness of Rasch item calibrations. Paper presented with A.S. Cohen at the annual meeting of the American Psychological Association, New York, NY, September 1979. |

## PROFESSIONAL AFFILIATIONS

American Psychological Association, Fellow
Society for Industrial and Organization Psychology, Fellow

Phi Beta Kappa
National Association of Women Business Owners
National Association of Female Executives

## LICENSES

Licensed as a Psychologist in the State of Connecticut, No. 001967

## AWARDS

Named one of "America's Top Diversity Champions for 2010" by DiversityBusiness.com.

Received the 2010 Diversity Policy/Advocacy Award from Hartford Business Journal.

Finalist in the 2009 Stevie Awards for Women in Business: Best Entrepreneur – Service Businesses - Up to 100 Employees - Business Services; APT wins Best Overall Company of the Year – Service Businesses – Up to 100 Employees – Business Services.

Human Resource Vendor of the Year 2009, Society for Human Resource Management, Southern Connecticut Chapter.

Finalist in the 2007 Ernst & Young Entrepreneur of the Year Award for Metropolitan New York Region.

Connecticut Woman Business Owner of the Year, 2002.

## BOARD MEMBERSHIPS

Board Member, Society for Industrial and Organizational Psychology, holding the position of Financial Officer/Secretary and ex officio Board Member of the SIOP Foundation, 2012 – 2015.

Board Member, National Council for Research on Women and member of the Advisory Board of the Council's Corporate Circle, 2010 – 2014.

Board Member, Connecticut Business & Industry Association, 2007 – 2012.

Board Member and Chair of Education Committee, Maritime Aquarium, 2007 – 2014.

Board Member, Volunteer Center of Southwestern Fairfield County, 2003 – 2007.

President, Wade Foundation, 2001 – present.

## APPOINTMENTS

Sworn member of the external advisory board for the U.S. Department of State's Foreign Service Officer Examination, 2013 – 2019.

Member of the expert panel on assessment for the National Skills Standards Board (NSSB) and chair of the Endorsement Review Panel for the NSSB, 1999 – 2003

**KATHLEEN KAPPY LUNDQUIST, Ph.D.**

**Testimony as an Expert in the Past Four Years**

2018 – present          <u>Chen-Oster, et al. v. Goldman Sachs</u>.  Case No. 10 Civ. 6950 (HT) (RWL) (USDC S. D. New York).

2014 – 2015              <u>Godfrey, et al. v. The City of Chicago</u>.  Case No. 12 C 08601 (USDC N. D. Illinois).

2013 – present          <u>Herman Brewer, *et al*. v. Holder. Case No. 1:08-cv-01747 (BJR) (USDC District of Columbia).</u>

2012 – 2016              <u>Houser, *et al.* v. Pritzker.</u> Case No. 10-cv-3105 (FM) (USDC S. D. New York).

2012 – present          <u>Laryssa Jock, *et al*. v. Sterling Jewelers Inc.</u>  AAA Case No. 11 160 00655 08

2012 – 2015              <u>Andrews, *et al.* v. City of New York. </u> Civil Action No. 10-cv-2426 (SHS) (MD).

**ATTACHMENT B**

**DOCUMENTS REVIEWED**

| Electronic File Name | Document Name or Description | Pages | Bates # |
|---|---|---|---|
| Howard v. Cook County Confidentiality Agreement.pdf | Sdahrie Howard, et al., v. Cook County Confidentiality Order | 15 | |
| Cook County Sheriff's Office's Rule 26(a)(2) Disclosures.pdf | Cook County Disclosure and Expert Report of Benjamin S. Wilner | 215 | |
| [143] Third Consolidated Complaint AMENDED complaint.pdf | 3rd Consolidated Complaint from Sdahrie Howard et al., dealing with sexual discrimination class action lawsuit | 35 | |
| 2019.1.14 Lakisha Macklin Declaration.pdf | Lakisha Macklin Declaration of Sexual Harassment | 8 | |
| Anderson, Tamara declaration.pdf | Tamara Anderson Declaration of Sexual Harassment | 7 | |
| Brown(2), Jacqueline.pdf | Jacqueline Brown Declaration of Sexual Harassment | 8 | |
| Lanier, Shonnita.pdf | Shonnita Lanier Declaration of Sexual Harassment | 7 | |
| Montgomery, Anntionettea.pdf | Anntionettea Montgomery Declaration of Sexual Harassment | 5 | |
| Washington-Farr, Hester declaration.pdf | Hester Washington-Farr Declaration of Sexual Harassment | 6 | |
| CCSO_HOWARD_0324281.xlsx | Chart and Graph of Indecent exposure related incidents reported April 2016-Sept 2018 | N/A | |
| CCSO_HOWARD_0324272.xlsx | Summary Table comparing General Population v High Security California Jails | N/A | |
| CCSO_HOWARD_0324273.xlsx | Summary of Annual PREA Rates per State | N/A | |
| CCSO_HOWARD_0324274.xlsx | List of Documents considered in Howard et al v Cook County | N/A | |
| CCSO_Howard_0321726.xlsx | Incidents Reported Table 2002-2018 Part 1 | N/A | |
| CCSO_Howard_0321727.xlsx | Incidents Reported Table with Inmate's Name Part 2 | N/A | |
| CCSO_Howard_0321728.xlsx | Incidents Reported Table Part 3 | N/A | |
| CCSO_HOWARD_0324282.xlsx | Cook County Summary of Incidents (Assault w Bodily Fluids) by month, Location, Location Categorization, and Adjudication by Inmate | N/A | |
| CCSO_HOWARD_0324283.xlsx | Cook County Summary of Incidents (Indecent Exposure) by month, Location, Location Categorization, and Adjudication by Inmate | N/A | |
| exhibit 6.pdf | Inmate Disciplinary Charge Codes and Penalties Dec 2013 | 7 | 0078544-0078550 |
| Change 2 to disciplinary code.pdf | Inmate Disciplinary Reports and Hearing Procedure Changes w/ Copies of Blank Reports | 11 | 0001676-0001686 |

| Electronic File Name | Document Name or Description | Pages | Bates # |
|---|---|---|---|
| exhibit 5.pdf | Inmate Disciplinary Charge Codes and Penalties Nov 2017 | 6 | 0078551-0078556 |
| CCSO_HOWARD_0324284.xlsx | Cook County Summary of 300 Level Benchmark Incidents (Battery, Verbal Threats, etc.) by month, Location, Location Categorization, and Adjudication by Inmate | N/A | |
| CCSO_Howard_0330678.pdf | General Population ADP at CIDOC by Division and Month 2015-2018 | 1 | |
| 1-14-19-Howard-Patel-Compressed(mw).pdf | Rule 30(b)(6) Deposition of Amar Patel, Jan 14, 2019 | 167 | |
| 1-16-19-Howard-Freeman-Compressed.pdf | Deposition of Dominique Karrion Freeman, Jan 16, 2019 | 218 | |
| Curry, Bradley - CT.pdf | Deposition of Bradley Curry, Jan 11, 2019 | 313 | |