Exhibit 25





# Teamsters Local 700
### Affiliated with the International Brotherhood of Teamsters

Phone: (847) 939-9700 • Fax: (847) 518-6495 • www.TeamstersLocal700.com
1300 W. Higgins Road • Suite 301 • Park Ridge, Illinois 60068

**BECKY STRZECHOWSKI**, PRESIDENT • **MICHAEL G. MELONE**, SECRETARY-TREASURER

June 23, 2016

Illinois Department of Labor
Illinois OSHA
160 N. LaSalle Street, C-1300
Chicago, Illinois 60601

RE: **Notice of Alleged Safety or Health Concerns**
**Cook County Department of Corrections**

Dear Illinois OSHA:

    Please accept this correspondence as a non-exhaustive description of the hazards and Occupational Safety and Health Act ("the Act") violations presently threatening employees at the Cook County Department of Corrections ("CCDOC"). This correspondence will only set forth information that our office reasonably believes to be true as it pertains to those employees serving as Correctional Officers, (a/k/a) Deputy Sheriffs, and Investigator IIs at the Cook County Department of Corrections (herein collectively referenced as "Officers"). While these conditions may well apply to other classifications of employees, we lack particular knowledge and/or authority to make representations on behalf of those employees at the present juncture.

    Pursuant to Section 20 of the Act, public employers, such as Cook County Sheriff Thomas J. Dart and his authorized agents/representatives (herein collectively referenced as "the Sheriff"), have a statutory obligation to provide, *inter alia*, reasonable protection to the lives, health, and safety of those in its employ. This section also obligates the Sheriff to furnish information to employees regarding workplace hazards. Despite the Sheriff's preexisting knowledge of, and our expressly notifying his office of the concerns articulated herein, he has continued to maintain practices, means, methods, operations, and processes in the workplace which have caused and exacerbated these conditions resulting in increased risk of and actually resulting injuries to our represented membership.

    By virtue of employment at a correctional facility, some unpleasant conditions may be presumed to exist for employees. However, the existing hazards referenced here far exceed any reasonable expectation for reasons that follow. Officers are exposed to acts of a physical, sexual, and degrading nature on a daily basis from the detainees that they monitor. This Complaint does not purport to be inclusive of all incidents, but rather, seeks to illustrate the daily hazards faced and the failure of the Sheriff to take reasonable measures to resolve these hazards.

    On a routine basis, officers are subject to physical violence and brutal attack by detainees including routine occurrences inflicted by those who craft weaponry out of materials they find in the CCDOC. These attacks have resulted in an inordinate number of injuries to staff, including multiple incidents from which officers had to be taken to the hospital by ambulance from

1

Plaintiffs00751

Divisions IX and X and at least two incidents in this past 1-2 months wherein officers in Division X required reconstructive surgery as a result of the injuries suffered. At present, there are approximately 324 officers staffed to Division IX. Out of those 324 officers, there are presently 50-60 officers who are out of the workplace due to injuries occurring during the performance of their employment duties. Some of these injuries include exposure to biohazardous human waste and disease, abrasions and wounds requiring stitches in the mouth and other body parts, broken bones (e.g., wrist, finger, nose), shoulder and back injuries, and concussions.

In a recent example, in Division X, a detainee slapped a female officer. The same detainee had also self-crafted a "shank," i.e., weapon. The Sheriff's supervisory staff responded by bribing the detainee to relinquish the shank in exchange for additional telephone time. They honored that promise. In Division IX, as early as yesterday (6/22/16), the Sheriff's administration eliminated post officers from areas of the Division including Central Holding. Division IX officers secured a group of segregation detainees in blueboxes (i.e., the most secure handcuffing device available), and the administration returned those detainees to Division IX officers in less secure handcuffs. These detainees were able to use the less secure handcuffs as weapons, and in so doing, attacked another detainee with blows to his head so violent that he could have easily lost his life. Since post officers were eliminated, the individual and his injuries were not immediately observed. Division IX officers who were passing by (incidental to the other duties they were performing) found the injured party by pure chance and were able to secure medical attention for him. This same type of attack could have easily, and has in the past, occurred against staff.

There has also been a rise in incidents relating to the intentional flinging of urine and feces as well as exposure to sexual advances from detainees. In Division IX, for example, detainees daily throw bodily fluids at officers. The detainees store and conceal receptacles during mealtimes (e.g., milk cartons and plastic bags), urinate or move their bowels into the receptacles, and intentionally fling the waste at on-duty officers. These incidents occur primarily in living units, (a/k/a, tiers) in the Divisions during meal times. The Sheriff does not conduct living unit searches or shakedowns, and indeed, officers are not permitted to perform such searches to eliminate the concealing of the receptacles (or even shanks/weaponry/contraband) being used in this fashion. Following an incident as described, the Sheriff does not provide any cleansing products for officer hygiene. That is to say, the Sheriff neither provides new or clean uniforms to the affected officers nor eye wash, HIPAA cleanse, or sterile saline. When officers are subjected to these attacks, they have been declined treatment at the Sheriff's medical facility at Cermak Hospital. They are directed simply to "wash it off," but no cleansing products are provided or available for so doing. The Sheriff also does not provide disinfecting cleanser for the timely cleanup of the affected area in the living unit. Instead, officers and detainees are required to remain in the soiled area with open exposure to the waste until the arrival of a Sanitation unit made up of detainee workers. Upon arrival, the Sanitation unit cleans the area, but such can take thirty (30) minutes or more.

Aside from the flinging of urine and feces, there has also been a new phenomenon that can only be described as sexual assault/degradation against officers. For example, on a daily basis in at least Division IX, detainees are sexually harassing female officers by way of explicit

verbal sexual propositions, exposing their genitalia, masturbating in close proximity up to and including ejaculation. In one recent incident last week in Division IX, one detainee attempted to force himself on a female officer to kiss her. In another recent incident occurring last week in Division IX, two different inmates masturbated and ejaculated at a female officer. The officer requested to work in a different tier/living unit where she would not have to monitor the same detainees. Instead of honoring the request and taking remedial measures, the supervisor continually placed the officer back on the same tiers to monitor the offending detainees.

Moreover, the Sheriff has failed to provide any general or particularized notice to officers as to whether they are being exposed to any known biohazards due to contact with urine, feces, blood, and/or semen.

Further, the reporting of these incidents is being suppressed. Officers are often discouraged from writing incident, officer battery, and/or inmate disciplinary reports on these occurrences. The supervising personnel, after being made aware, deter the officers from writing the reports and/or decline to assess digitally written reports so that the reports remain in the digital system as incomplete. In at least one other occasion occurring last week, an officer approached a supervisor with a report, and she was expressly told that the supervisor would not accept the report. Supervisory staff are responding by "talking" to the inmates and offering them incentives for refraining from the offending conduct. For example, the supervisory staff will offer detainees more time out of their cells, more food aside from that which is routinely provided, haircuts, new clothing and toiletries in addition to that which is provided on routine schedule, and increased telephone access, in order to refrain from throwing their waste and/or masturbating at officers. These responses are incentivizing the offending behavior to such an extent that detainees believe they will be able to garner benefits from misbehaving as described and ceasing the behavior to receive a benefit. The instances have increased in nature such that Division IX detainees now have access to their own barber in order that they can receive haircuts on a more frequent basis than detainees in other areas of the CCDOC.

This response is not only imputed to immediate supervisory staff. Indeed, the administrative staff has responded in a similar fashion. For example, one First Assistant Executive Director and the Chief of Operations at the CCDOC authorized the purchase of outside food – at least pizza and pop – for the offending detainees.

These issues have been occurring with an increased frequency and severity in Division IX of the CCDOC in recent months. However, the conditions and hazards do exist in alarming rates in other locations as well, including at least, Division X, Division XI, Division VIII/RTU, and Cermak. The incidents are occurring daily, resulting in frequent injury, and posing imminent threats. Union Representatives have presented concerns and express notifications of these issues to administration on multiple occasions and in multiple forums, but have been met with a steadfast refusal to implement any remedial measures for officer safety. Instead, the administration has continued to respond in a fashion that rewards and bribes detainee offenders. As a result, the officers face exposure to imminent danger and hazards by way of the violent and degrading acts described herein.

As indicated, the purpose of this report is not to provide an exhaustive description of every incident or occurrence, but rather, to provide a broad overview of the particular hazards posed for employees in the workplace at the CCDOC. Should further information, evidence of specific incidents, and/or notices previously given to the Sheriff regarding these matters be useful or requested in aid of your investigation, please feel free to reach out to me directly through the contact information appended below. Thank you in advance for your time and consideration to this matter.

Very truly yours,

Nicole L. Chaney
Staff Attorney
Teamsters Local 700
1300 W. Higgins Rd., Suite 301
Park Ridge, Illinois 60068
Phone: (847) 939-9709
Fax: (847) 518-6495
Email: nicolec@teamsterslocal700.com

cc: Illinois Department of Labor
Illinois OSHA
900 South Spring Street
Springfield, Illinois 62704

Plaintiffs00754