Exhibit 26

1  AMAR PATEL
2  IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF ILLINOIS
3  EASTERN DIVISION
4  SDAHRIE HOWARD, et al.,           )
                                     )
5          Plaintiffs,               )
                                     )
6     vs.                            ) Case No. 17-cv-8146
                                     )
7  COOK COUNTY SHERIFF'S             )
   OFFICE, et al.,                   )
8                                    )
           Defendants.               )
9
10
       RULE 30(B)(6) DEPOSITION OF AMAR PATEL
11              Chicago, Illinois
            Monday, January 14, 2019
12
13
14
15
16
17
18
19
20
21
22
23
24  Reported by:
    JANET L. ROBBINS, CSR, RPR
25  JOB NO. 154157

Page 86

AMAR PATEL

Q. You've got a lot of numbers on there like long character sets.
A. Yeah. Again, we didn't know -- we didn't know what to expect, so we did our best to pull as much as we could for things that probably aren't even related.
Q. Was that for all infractions as opposed to just sexual misconduct-related infractions?
A. We did a separate -- so we did a search on the infractions list, the charge list. We did a wild card on that.
And we also found that there were two charge code specific in the IMACS data set, and we pulled those incidents in addition to the narratives. We made this giant list of incidents based on wild card searches to find as much information as we could from the systems. We needed a starting point, so...
Q. Uh-huh. I want to go back to CCOMS for a minute.
Has it always been the case that only sworn personnel could file incident reports in CCOMS?

Page 87

AMAR PATEL

A. That's my understanding, is that there are roles within CCOMS and those roles are limited to like officers that wanted to fill out a report.
Q. Do you know when the system was made available to courthouse deputies?
A. Yes.
Q. When was that?
A. It began in -- don't quote me on the dates, but like around November of 2017 was when the criminal courts building started utilizing CCOMS for incidents involving a detainee.
Q. So prior to November 2017, courthouse deputies who witnessed sexual misconduct by inmates could not enter a report into CCOMS?
A. They couldn't enter it. They were using their different reports.
Q. UCR? What were they using?
A. Offense incident reports.
Q. On paper or on computers?
A. So by computer, it could be a fillable PDF. Or by paper, same thing, but not

Page 88

AMAR PATEL

in like a --
Q. Not data?
A. (Nodding.)
Q. And do you know, whether it's a fillable PDF or a piece of paper, how that information was put into CCOMS?
A. The information was not.
Q. Was not put into CCOMS?
A. Not from prior to them using CCOMS. How would they put it -- sorry, I'm confused now.
Q. Whatever system they were using was not talking to CCOMS?
A. Correct.
Q. So if we've seen reports analyzing the number of incidents of inmate sexual misconduct prior to November 2017, if that information came from CCOMS, it did not include incidents witnessed by courthouse deputies?
A. So to the best of my knowledge, anything that was queried from CCOMS in -- so CCOMS -- like I've seen reports in CCOMS from courthouses prior to 2017. And it could have been done by a correctional officer working at

Page 89

AMAR PATEL

the courthouse who put it in for them.
I'm not sure on -- if like a disciplinary ticket from courts made it into the CCOMS from another means. I didn't look at that data. But it's hard for me to answer that unless I look at the -- who entered what.
Does that make sense?
MS. WILLENSON: Could you read back that last answer.
(The reporter read the record as requested.)
BY MS. WILLENSON:
Q. My question is: When you refer to disciplinary ticket, are you talking about the OI report?
A. So -- no, I'm not.
Q. What do you mean?
A. I've seen OI reports and I've seen handwritten disciplinary ticket reports from courts. I think it was from courts.
Q. So what you meant is you don't know if those handwritten ticket reports were put into CCOMS?
A. Yeah, I don't want to give you a

Page 102

AMAR PATEL
AFTERNOON SESSION
AMAR PATEL,
was called for examination, and having been previously duly sworn, was examined and testified further as follows:
EXAMINATION (Resumed)
BY MS. WILLENSON:

Q. I want to backtrack to CCOMS for a moment.

Can you look at Exhibit 1, which is the notice, and look at the actual No. 2, the real No. 2, which is on Page 2 of the exhibit, (b), "The identities of individuals with access to CCOMS and ability to enter data."

I think I got this -- well, to the extent I really want the information, I think I have it. I just want to make sure we're on the same page.

So with respect to entering incident reports of inmate misconduct, up to November 2017 when the courthouse deputies started to be trained, it was only correctional officers who could enter incident reports, is that accurate, or sergeants and lieutenants?

Page 103

AMAR PATEL

A. Based on the role, right. So people who would have access to that to enter would be typically correctional staff.

Q. And courthouse deputies could not make incident reports directly into CCOMS?

A. Generally, no. I don't know if like maybe one slipped through and has access because of their specialty work assignment at CIID, right? So let's say a deputy worked at CIID. They might have had access to it, but generally, no.

Q. And at no time have civilian personnel, such as CRWs, law librarians or any of the Cermak medical staff, had access to CCOMS, is that correct?

A. That's not correct.

Q. Are CRWs able to make incident reports in CCOMS?

A. So to make incident reports, I don't believe so, but you said access.

Q. They have access to other information.

Okay. So limiting this to the ability to file an incident report of inmate

Page 104

AMAR PATEL

misconduct or disciplinary report, incident or disciplinary --

A. Uh-huh.

Q. -- Cermak medical personnel cannot do that?

A. My understanding is no.

Q. And civilian employees of the sheriff's such as correctional rehabilitation workers and law librarians cannot do that?

A. My understanding is no.

Q. Okay. Now let's go on to Exhibit 5.

I think what your counsel said is during lunch, you were able to ascertain that the information in this report related to courthouse incidents was compiled from the paper offense incident reports.

A. That's correct.

Q. And that was done by the Office of Research?

A. Correct.

Q. Do you know what the document retention policy is for the paper OI reports?

MR. LEISHMAN: I'll object. It's beyond the scope of the notice, but he can

Page 105

AMAR PATEL

answer.

MS. WILLENSON: I got it.
BY MS. WILLENSON:

Q. If you know. We won't hold you to it.

A. I'm not 100 percent sure.

Q. And you said courts keeps those, is that right?

A. Right. I remember asking for OIs. I don't remember if it was at the discretion or the instruction of counsel or if it was through like somebody asking me they need to do some analysis. I don't remember because it's been so long. But full disclosure, I'm going to tell you like I don't remember.

But I do remember asking for the OIs, and we got those from court services. And I don't remember if -- I remember we had to send them to outside counsel, but I don't remember if the analysis was done based on outside counsel. I just don't remember. It's been so long.

Q. Do you recall when Exhibit 5 was created?

27