Exhibit 44

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEASTERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SDAHRIE HOWARD, et al., | ) | |
| | ) | Case No. 17-cv-8146 |
| Plaintiffs, | ) | |
| | ) | Judge Matthew F. Kennelly |
| v. | ) | |
| | ) | |
| COOK COUNTY SHERIFF'S OFFICE et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF SHELLY B. KULWIN

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Shelly B. Kulwin and I am the founder and a partner of Kulwin, Masciopinto, & Kulwin, LLP.

2. I am submitting this declaration on behalf of myself and Kulwin, Masciopinto, & Kulwin, LLP in support of Plaintiffs' Motion for Class Certification and in support of appointment of Kulwin, Masciopinto & Kulwin, LLLP. as class counsel in this matter pursuant to Federal Rule of Civil Procedure 23(g) along with appointment of my co-counsel Noelle Brennan & Associates, Ltd., Willenson Law, LLC, Hughes Socol Piers Resnick & Dym, Ltd., and Mehri & Skalet, PLLC.

3. I have forty (40) years' experience representing individuals and companies in employment discrimination matters, including cases involving sex, age, race, and religious discrimination, in federal court litigation throughout the United States. In addition, during that time, I have tried numerous complex jury and bench trials in both federal and state court, including cases filed under, among other statutes, Title VII and § 1983. Further, I have represented numerous individuals and businesses in employment matters before the EEOC, the United States Merit Systems Protection Board, and the Illinois Human

Rights Commission.  My experience handling complex matters and expertise in employment discrimination law satisfy Rule 23(g)(1)(A)(ii)-(iii).

4.  Rule 23(g)(1)(A)(i) directs the Court to consider the "work counsel has done in identifying or investigating the potential claims." I was the attorney initially retained by various CCSO employees who later were class representatives in Wilson, et al. v. CCSO et al. 17 CV 8248, and who are now class representatives and class members in this case, which was consolidated with it. My firm has invested hundreds of hours identifying, investigating and pursuing the potential claims, including preparing and filing EEOC charges, meeting with dozens of women who work at the Jail and Courthouse, preparing an initial complaint, preparing for and defending depositions of named Plaintiffs, engaging in voluminous discovery and document review, working with expert witnesses, analyzing reports from Defendants' expert witnesses, conducting substantive and extensive interviews with various class members, and taking both Rule 30(b)(6) and expert depositions, as well as defending an expert deposition.

5.  Rule 23(g)(1)(A)(iv) directs the Court to consider the resources counsel will commit to representing the class. Our firm has invested approximately 1600 hours of attorney and paralegal time and thousands of dollars in legal costs, including retaining three expert witnesses. We commit to continuing to bring the resources necessary to bear to advance the interests of the class in this litigation and to make systemic change at the Cook County Jail and Leighton Courthouse.

6.  I have approximately four decades of experience in complex civil and criminal litigation, including employment litigation. I am the founder of, and a partner in Kulwin, Masciopinto, & Kulwin LLP, where we employ two associate attorneys and a paralegal. I was a founder of the firm's predecessor entities, the earliest of which was founded in 1985. In that regard, and by way of example only, I have tried numerous complex civil jury cases, including the following employment matters:

- Mora, et al v. Genova 97 C 7765 (§1983, three week retaliatory discharge jury trial representing multiple police officers - $5,000,000 verdict plus reinstatement.)

- Pilota et al. v. City of Chicago Heights 00 C 298 (§ 1983, two week retaliatory job assignments jury trial representing multiple police officers - $1,000,000 verdict plus reinstatement.)

- Kuzma vs. Yorkville National Bank, et al. 01 L 522 (one week defamation jury trial representing female attorney employed by village, defamed by bank/bankers who wrongfully accused her of seeking kickbacks for zoning approvals – verdict $2.2 million.)

- Ryan et al., vs. Advocate Hospital, et al., 14 L 9991, (two week invasion of privacy and assault jury trial representing multiple female nurses who were spied upon in locker room by doctor and representing female doctor who was assaulted and battered by male doctor outside operating room - $10,000,000 verdict.)

- Siljik vs. Ravenswood Disposal et al., 00 C 3405 (one week Title XII jury trial representing company and executive against sexual harassment claim – verdict – not liable.)

7. In addition to the above referenced employment matters, I have handled other complex litigation matters brought under the federal False Claims Act, ERISA and the federal RICO statute, as well as numerous federal and state contracts, intellectual property and common law fraud claims. I have also defended businesses in several class action matters, including ones involving employment matters. All of these matters, as well as the complex federal criminal matters that I have handled my entire career, involved reviewing thousands of documents, interviewing and/or deposing multiple individuals and working with experts in fields, such as forensic accounting, statistical analysis, sexual harassment, and standard of professionalism and best practices in the fields of law, medicine, architecture, and banking. This experience also makes me a particularly appropriate attorney to serve as class counsel in this fact intensive, voluminous document case.

Respectfully submitted,

Shelly B. Kulwin
*One of the Attorneys for Plaintiffs*

Shelly B. Kulwin
Jeffrey Kulwin
Rachel A. Katz
KULWIN, MASCIOPINTO & KULWIN, LLP
161 N. Clark Street, Suite 2500
Chicago, IL 60601
312.641.0300

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SDAHRIE HOWARD, et al., | ) | |
| | ) | Case No. 17-cv-8146 |
| Plaintiffs, | ) | |
| | ) | Judge Matthew F. Kennelly |
| v. | ) | |
| | ) | |
| COOK COUNTY SHERIFF'S OFFICE et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF NOELLE BRENNAN

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. My name is Noelle Brennan and I am the founder and partner of Noelle Brennan & Associates, Ltd.

2. I am submitting this declaration on behalf of myself and Noelle Brennan & Associates, Ltd. in support of Plaintiffs' Motion for Class Certification and in support of appointment of my firm along with my co-counsel, Kulwin, Masciopinto & Kulwin, LLP, Willenson Law, LLC, Hughes Socol Piers Resnick & Dym, Ltd., and Mehri & Skalet, PLLC, as class counsel in this matter pursuant to Federal Rule of Civil Procedure 23(g) along with appointment of my co-counsel.

3. In appointing class counsel, Rule 23(g) directs the Court to consider four factors. First, Rule 23 (g)(1)(A)(i) directs the Court to consider the "work counsel has done in identifying or investigating the potential claims." My firm has invested hundreds of hours identifying, investigating and pursuing the potential claims, including preparing and filing EEOC charges, meeting with dozens of women who work at the Jail and Courthouse, preparing an initial

complaint, taking Rule 30(b)(6) depositions, preparing for and defending depositions of named Plaintiffs, engaging in voluminous discovery and document review, working with expert witnesses, analyzing reports from Defendants' expert witnesses and conducting substantive and extensive interviews with more than 100 women.

4.      Second, under Rule 23(g)(1)(A)(ii), the Court considers counsel's experience handling class actions, other complex litigation, and the types of claims asserted in the action, and, third, under Rule 23(g)(1)(A)(iii), the Court considers counsel's knowledge of the applicable law. I have more than 20 years' experience representing workers in employment discrimination class and collective actions and significant expertise in representing women in sexual harassment matters, including class sexual harassment matters. My experience handling complex matters and expertise in sexual harassment law, as set forth below, satisfy Rule 23(g)(1)(A)(ii)-(iii).

5.      Finally, Rule 23(g)(1)(A)(iv) directs the Court to consider the resources counsel will commit to representing the class. Our firm has invested in excess of two thousand hours of attorney and paralegal time and thousands of dollars in legal costs, including retaining three expert witnesses. We commit to continuing to bring the resources necessary to bear to advance the interests of the class in this litigation and to make systemic change at the Cook County Jail and Leighton Courthouse.

6.      I have more than two decades of experience in complex employment litigation. I am the founder and partner of Noelle Brennan & Associates, Ltd., where I employ two associate attorneys. I was a co-founder in the firm's predecessor entities, the earliest of which was founded in 2004. I was appointed as class counsel in *Brand et al. v Comcast Corporation*, 11-cv-8471, which this Court certified as a race harassment class action. The case resulted in a settlement of $7.2 million for approximately 350 individuals and injunctive relief. Additionally, I was also

appointed class counsel in *Smith et al. v. Nike Retail Services*, 03-cv-9110, *appeal denied*, No. 06-8009 (7th Cir. 2006), a race discrimination class action which resulted in $7.6 million monetary award for approximately 300 individuals and substantial injunctive relief. In both cases, the settlement agreements included substantial injunctive relief to eradicate discrimination going forward.

7.      Prior to founding my firm, I worked for the U.S. Equal Employment Opportunity Commission for seven years as a trial lawyer, a supervisory attorney, and Acting Regional Attorney. While at the EEOC, I litigated large class wide sexual harassment cases, including *EEOC v. Mitsubishi Motors*, 96-cv-1192 ($34 million monetary award and injunctive relief); and, EEOC *v. Dial Corporation*, 99-cv-3356 ($10 million monetary award and injunctive relief).

8.      I litigated numerous other pattern and practice (class) cases, such as *EEOC v. Caterpillar*, 03-cv-5636 (class allegations of sexual harassment); *EEOC v. Custom Company*, 02-cv- 3768 (class allegations of sexual harassment); *EEOC v. Staffing Network*, 02-cv-1591 (class allegations of sex discrimination); *EEOC v. Servico Rolling*, 02-cv-3261 (class allegations of sex discrimination); *EEOC v. Dutch Farms, Inc.*, 02-cv-2964 (class allegations of race discrimination); *EEOC v. Sidley Austin Brown & Wood*, 05-cv-0208 (determining whether partners in name only were subject to Title VII). Before joining the EEOC, I worked as an associate attorney at Katten, Muchin & Zavis where I handled complex commercial litigation, class-action defense work, environmental litigation, securities fraud defense, and federal agency disputes.

9.      In 2005, I was appointed by United States District Court Judge Wayne Andersen in the Northern District of Illinois to monitor the City of Chicago's compliance with the Shakman Decree, which prohibits discrimination on the basis of political affiliation, in *Shakman, et al. v. Democratic Organization of Cook County, et al.*, No. 69 C 2145 (N.D. Ill.). In November of 2014,

I was appointed by U.S. Magistrate Judge Sidney Schenkier to monitor the Illinois Department of Transportation's compliance with the Shakman Decree, and later those duties were expanded to include all State agencies under the Jurisdiction of the Governor of Illinois.

10.     Noelle Brennan & Associates, Ltd. and co-counsel are well-suited to be appointed class counsel. We have invested significant effort in representing the putative class to date; we are committed to continuing to devote resources to representing the class; we have significant experience handling class actions as well as representing employees; and we have a breadth of knowledge regarding class action and sexual harassment law.


Dated this 2nd day of May 2019.              /s/Noelle Brennan
                                             One of Plaintiffs' Attorneys

                                             Noelle Brennan
                                             nbrennan@brennan-associates.com
                                             Kristin Carter
                                             kcarter@brennan-associates.com
                                             Naomi Frisch
                                             nfrisch@brennan-associates.com
                                             NOELLE BRENNAN & ASSOCIATES, LTD.
                                             20 S. Clark Street, Suite 1530
                                             Chicago, IL 60603
                                             312.422-0001

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SDAHRIE HOWARD, et al., | ) | |
| | ) | Case No. 17-cv-8146 |
| Plaintiffs, | ) | |
| | ) | Judge Matthew F. Kennelly |
| v. | ) | |
| | ) | |
| COOK COUNTY SHERIFF'S OFFICE et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF MARNI WILLENSON

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.     My name is Marni Willenson and I am the founder and principal of Willenson Law, LLC.

2.     For efficiency purposes, I am submitting this declaration on behalf of myself, Willenson Law, LLC, and my co-counsel, Hughes Socol Piers Resnick & Dym, Ltd., and Mehri & Skalet, PLLC, in support of Plaintiffs' Motion for Class Certification and in support of appointment of our three law firms, along with Noelle Brennan & Associates, Ltd. and Kulwin, Masciopinto & Kulwin, LLP,  as class counsel in this matter pursuant to Federal Rule of Civil Procedure 23(g).

3.     In appointing class counsel, Rule 23(g) directs the Court to consider four factors. First, the Court should consider the "work counsel has done in identifying or investigating the potential claims." Fed. R. Civ. P. 23(g)(1)(A)(i).  Our firms have invested hundreds of hours identifying, investigating and pursuing the potential claims, including preparing and filing EEOC charges, meeting dozens of women who work at the Jail, conducting an analytical online survey,

preparing the complaint and amended complaints, preparing for and defending depositions of named Plaintiffs, taking Rule 30(b)(6) depositions, engaging in voluminous discovery and document review, retaining and working with multiple expert witnesses, analyzing reports from Defendants' expert witnesses and deposing these witnesses, reviewing and analyzing hundreds of incident reports, and conducting substantive and extensive interviews with over 100 women.

4.      Second, under Rule 23(g)(1)(A)(ii), the Court considers counsel's experience handling class actions, other complex litigation, and the types of claims asserted in the action, and, third, under Rule 23(g)(1)(A)(iii), the Court considers counsel's knowledge of the applicable law. Collectively our firms have decades of experience representing workers in employment discrimination class and collective actions and significant expertise in representing women in sexual harassment matters, including class sexual harassment matters. Our experience handling complex matters and our expertise in sexual harassment law more than satisfy Rule 23(g)(1)(A)(ii)-(iii) and are described below.

5.      Finally, Rule 23(g)(1)(A)(iv) directs the Court to consider the resources counsel will commit to representing the class. Collectively our firms have invested thousands of hours of attorney time and thousands of dollars in legal costs, including retaining three expert witnesses and a consulting expert. We commit to continuing to bring the resources necessary to bear to advance the interests of the class in this litigation and to making systemic change at the Cook County Jail and Leighton Courthouse.

### Willenson Law, LLC

6.      I founded Willenson Law, LLC in 2010 and have over 22 years of experience litigating class action, civil rights, and other complex civil cases. I have litigated sexual harassment and gender violence cases and have served as lead or co-lead counsel in multi-

2

million dollar class action Title VII gender discrimination cases and class and collective action wage theft cases for migrant workers. The original three *Howard* plaintiffs sought out my representation on their sexual harassment claims based upon my reputation in representing women in public safety jobs in class action litigation. I am a Fellow of The College of Labor and Employment Lawyers. I have spoken extensively at employment law and class action conferences and seminars on topics including Title VII claims, programmatic relief in class actions, the use of expert testimony, and electronic discovery.

7. My firm, Willenson Law, is known nationally for its litigation on behalf of women employed in, and seeking employment in, first responder and public safety positions, and for its other class action and complex litigation, including under Title VII. The firm's successes include *Ernst v. City of Chicago*, 837 F.3d 788 (7th Cir. 2016) (Title VII, sex discrimination resulting in significant opinion from the Seventh Circuit applying disparate impact theory to pre-hire physical tests and over $10 million judgment in favor of five women denied positions as CFD paramedics); *Vasich v. City of Chicago*, Case No. 11-C-4843, 2013 WL 6730106 (N.D. Ill.) (Title VII, sex discrimination class action for women denied jobs as firefighters with the Chicago Fire Department, resulting in a $2.8 million dollar settlement, the hiring of 32 female firefighters, and elimination of the physical test); and *Godfrey v. City of Chicago*, 973 F.Supp.2d 883 (N.D. Ill. 2015) (Title VII, sex discrimination class action for women denied jobs as firefighters with the Chicago Fire Department, resulting in a settlement for $8 million in backpay, pension contributions, and attorney's fees, and the hiring of 12 female firefighters). Forty-four women have joined the Chicago Fire Department firefighter ranks as a result of the *Vasich* and *Godfrey* litigation, which we understand to be a 40-50% increase in female representation in the ranks.

**Hughes Socol Piers Resnick & Dym, Ltd.**

8.　　Hughes Socol Piers Resnick & Dym, Ltd. ("HSPRD") maintains a nationwide civil rights, employment, class action and complex litigation practice.  The firm's past successes include, among others, *Gecker v. Flynn*, 867 F.3d 743 (7th Cir. 2017) ($272 million breach of contract judgment, against six defendant directors and officers of the defunct Emerald Casino); *Lewis v. City of Chicago*, 130 S. Ct. 2191 (2010) (Title VII class action, resulting in 111 jobs and more than $70 million in retroactive pension contributions and backpay for a class of African Americans denied jobs as entry-level firefighters with the Chicago Fire Department); *Jones v. Walgreens Co.* No. 07 C 0036 (N.D. Ill.) (Title VII class action, resulting in $17 million for a nationwide class of women retail store management employees, plus injunctive relief requiring objective criteria for pay and promotions); *Bell v. Woodward Governor Co.*, No. 3 C 50190 (N.D. Ill.) (Title VII class action, resulting in a multi-million settlement and comprehensive injunctive relief for minority employees); *Trombetta v. Proviso School District 209*, No. 02 C 5895 (N.D. Ill.) (at the time, the highest-ever jury verdict in a single-plaintiff civil rights action in the Northern District of Illinois); *Ernst v. City of Chicago*, 837 F.3d 788 (Title VII, sex discrimination resulting in over $10 million judgment in favor of five women denied positions as CFD paramedics); *Haywood v. Chicago Housing Authority*, No. 15 CV 8317 (N.D. Ill.) ($6.65 million dollar settlement for public housing residents overcharged for rent).

9.　　Caryn Lederer is a partner at HSPRD. She maintains an active litigation practice with a concentration in labor and employment law, civil rights and constitutional law, and other complex litigation matters. Ms. Lederer's previous class action and complex civil rights cases include: *Rivera v. Peri & Sons Farms, Inc.*, No. 3:11-cv-00118 (D. Nev.) (Fair Labor Standards Act and breach of contract class and collective action on behalf of Mexican H-2A guest workers

that settled for $2.8 million); *Jimenez, et al. v. GLK Foods et al.* No. 12-cv-209 (E.D. Wis.) and *Ramirez et al. v. GLK Foods et al.*, No. 12-cv-2010 (E.D. Wis.) (class actions recovering $930,000 in unpaid wages and contractual damages for classes of Mexican H-2B guest workers against the world's largest sauerkraut producer); *Huitron et al. v. VPC Greektown Pizza, et al.*, No. 15-cv-01823 (N.D. Ill.) (successfully resolving Fair Labor Standards Act and Illinois Minimum Wage Law class and collective action claims); *Escobar, et al. v. Gaines, et. al.*, No. 3:11-cv-0994 (M.D. Tenn.) (representing victims of a warrantless raid against U.S. Immigration and Customs Enforcement, the Metropolitan Nashville Police Department, and private defendants, resulting in a monetary settlement and immigration relief); *Lopez, et al. v. Jimmy Carroll Fish, et al.*, No. 2:11-cv-113 (E.D. Tenn.) (obtaining settlement for workers bringing hostile work environment and retaliatory discharge claims against their employer); *Valdez Huerta, et al. v. L.T. West, Inc., et al.*, No. 6:11-CV-01589 (W.D. La.) (successfully resolving Thirteenth Amendment, trafficking, discrimination, and conspiracy claims on behalf of several female workers against their employer and police officers); and *Henderson v. City of Chicago et al.*, No. 2016 L 002448 (Cook. Co.) (litigated the first lawsuit under the Illinois Homeless Bill of Rights for the Homeless Act against the City of Chicago). These supplement other cases in which Ms. Lederer has successfully represented individual Plaintiffs pursuing Title VII sex discrimination and other employment discrimination claims. In 2018, Ms. Lederer, along with Ms. Schwartz, was recognized with the Justice Circle Award from the Chicago Coalition for the Homeless for their work on the *Henderson* litigation.

10.     Kate Schwartz is a partner at HSPRD. She focuses her practice on civil rights, constitutional law, and labor and employment litigation. Ms. Schwartz has successfully litigated class action and sexual harassment cases, including *Smith v. Naturescape*, No. 2017 CH 06652

(Cook Co.) (designating Ms. Schwartz class counsel and approving settlement of claims under the Illinois Wage Payment and Collection Act) and *Terry v. City of Berwyn*, No. 2017 L 011421 (Cook. Co.) (sexual harassment claim resulting in successful settlement), as well as other discrimination cases, such as *EEOC and Mercado Hernandez v. King Lar Co. et al.*, No. 15-CV-03238 (N.D. Ill.) (Title VII race discrimination) and *Henderson v. City of Chicago et al.*, No. 2016 L 002448 (Cook. Co.) (discrimination in violation of Illinois Bill of Rights for the Homeless Act). Ms. Schwartz also has prior experience assisting in class-action litigation while working as an associate at Arnold & Porter LLP in Washington, D.C.

### Mehri & Skalet, PLLC

11. Lawyers at Mehri & Skalet, PLLC, regularly represent workers in class and collective actions alleging discrimination and harassment and have been involved in some of the most significant race and gender civil rights matters in the last three decades. *See Roberts v. Texaco Inc.*, No. 94-CIV-2015 (S.D.N.Y. 1997) (settled for $176 million and broad programmatic relief on behalf of African American employees); *Abdallah, et. al. v. Coca-Cola Company*, No. 1:98-CV-3679 (N.D. Ga. 2000) (settled for $192 million and broad programmatic relief on behalf of salaried African-American employees); *Robinson v. Ford Motor Co.*, No. 1:02-CV-844 (S.D. Ohio Aug. 1, 2005) (settled for $10 million and creation of over 270 apprenticeship positions for African Americans); *Augst-Johnson v. Morgan Stanley & Co.*, No. 1:06-CV-01142 (D.D.C. Oct. 26, 2007) ($46 million settlement and programmatic relief on behalf of female financial advisors); *Amochaev v. Citigroup Global Markets d/b/a Smith Barney*, No. C-05-1298 (N.D. Cal. Aug. 13, 2008) ($33 million settlement and injunctive relief); *Norflet v. John Hancock Life Insurance*, 3:04CV1099 (D. Conn. Aug. 21, 2009) ($24.4 million settlement of behalf of African Americans denied equal opportunity in the sale of life insurance);

*Carter v. Wells Fargo Advisors, LLC*, No. 1:09-CV-01752 (D.D.C. June 9, 2011) ($32 million

settlement and injunctive relief); *Brown v. Medicis Pharmaceutical Corp.*, No. 1 : 13-cv-01345

(D.D.C. July 11, 2016) ($7.15 million settlement in gender discrimination class action, including

hostile work environment claims).

12.     Mehri & Skalet, PLLC has unparalleled experience in litigating the specific types

of hostile work environment claims asserted in this case. Mehri & Skalet filed, litigated and

recently prevailed in the single largest and most successful case in this area—against the Federal

Bureau of Prisons, for the Government's failure to take adequate timely steps to address inmate

sexual misconduct directed at female employees at the Agency's largest facility, in Coleman,

Florida. After an administrative judge certified the proposed class of women and granted most of

plaintiffs' motion for partial summary judgment on liability, Mehri & Skalet negotiated a

recovery of $20 million and extensive structural, systemic injunctive relief on behalf of a class of

over 500 women who worked at the facility between 2011 and 2017. *White v. Lynch*, EEOC No.

510-2012-00077X (EEOC Dec. 8, 2017) (granting final approval of class action settlement on

behalf of female federal corrections officers).

13.     Ellen Eardley is a partner at Mehri & Skalet. She played a key role in the *White*

matter, representing the class of women at the federal prison in Coleman, Florida, interviewed

dozens of women correctional officers who endured egregious sexual harassment by inmates,

and successfully briefed the motion for class certification. Ms. Eardley focuses her practice on

fighting race discrimination, gender discrimination, sexual harassment, and retaliation in the

workplace and at school. *See, e.g., Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005);

*Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170 (10th Cir. 2007); *Alexander v. City of Jackson*,

No. 04-cv-00614 (S.D. Miss.). She has served as class counsel in race and gender class actions.

*See, e.g., Norflet v. John Hancock Life Insurance*, 3:04CV1099 (D. Conn.); *Carter v. Wells Fargo Advisors, LLC*, No. 1:09-CV-01752 (D.D.C.); *Brown v. Medicis Pharmaceutical Corp.*, No. 1 : 13-cv-01345 (D.D.C.). Ms. Eardley was Assistant Vice Chancellor for Civil Rights & Title IX at the University of Missouri where she founded an institutional equity office that handled hundreds of reports of gender and race discrimination, including sexual harassment. She currently represents a putative class of women bringing pregnancy discrimination claims against their employer, *Borders v. Wal-Mart Stores, Inc.* No. 3:17-cv-0506 (S.D. Ill.).

14.　　Michael Lieder is of counsel at Mehri & Skalet. He played a lead role in the *White* matter as well, preparing case strategy after class certification, coordinating expert discovery, successfully briefing a motion for summary judgment, and settling the case. Mr. Lieder also played a key role in the settlement of the *Medicis* class action, which alleged gender discrimination and sexual harassment. Before coming to Mehri & Skalet, Mr. Lieder led a gender hostile environment, pay, and promotion case, *Carlson v. C.H. Robinson Worldwide, Inc.* No. 02-CV-3780 (D. Minn.), and had a role in the first successful sexual harassment class action in federal court, *Jenson v. Eveleth Taconite Co.,* 824 F. Supp. 847 (D. Minn. 1993). Mr. Lieder's other significant class action experience on behalf of workers, includes *Thornton v. Nat'l R.R. Passenger Corp.*, No. 1:98-cv-890 (D.D.C.) ($16 million plus broad injunctive relief in race discrimination class action); *McLaurin v. Nat'l R.R. Passenger Corp*, 1:98-cv-2019 (D.D.C.) ($8 million plus broad injunctive relief in race discrimination class action); *Hyman v. First Union Corp.*, No. 94-1043 (D.D.C.) ($58.5 million in age discrimination collective action); *In re PEPCO Employment Litig.*, No. 860603, 1993 U.S. Dist. LEXIS 7905 (D.D.C. June 8, 1993) ($38.4 million and broad injunctive relief); *In re TV Writers Cases*, No. 268836 (Cal. Sup Ct. (Los Angeles Cty. 2011).

15.     Cyrus Mehri is a co-founder of Mehri & Skalet. He has led and co-led some of the largest and most significant race and gender cases in U.S. history. *See* ¶¶11-2 *supra*. Mr. Mehri also launched a number of projects aimed at systematically remedying discrimination, improving opportunities, and bettering corporate behavior. These projects include "Women on Wall Street," which seeks to end discrimination against women in financial institutions and has resulted in historic settlements totaling $114 million and sweeping changes at Morgan Stanley, Smith Barney and Wachovia/Wells Fargo. Mr. Mehri also is the architect of the Rooney Rule in the National Football League, which requires league teams to interview minority candidates for head coaching and senior football operations jobs, and co-founded the Fritz Pollard Alliance, an affinity group for NFL minority coaches, front office and scouting personnel that has worked to dramatically change the face of NFL leadership, resulting in a record number of minority coaches and general managers. He also co-founded Working Ideal, a consulting firm that partners with organizations to improve workplace dynamics, implement new policies, and advance workplace inclusion, diversity, equity, and access.

## Conclusion

16.     Our three law firms are well suited to be appointed class counsel, along with Noelle Brennan & Associates, Ltd. and Kulwin, Masciopinto & Kulwin, LLP. We have invested significant effort in representing the putative class to date; we are committed to continuing to devote resources to representing the class; we have significant experience handling class actions as well as representing employees including women in public safety jobs; and we have a breadth of knowledge regarding class action and sexual harassment law.

Dated this 3rd day of May 2019.

_____
Marni Willenson

DECISION

| | |
|---|---|
| In the Complaint of Taronica White, Et al.,  ) | |
| ) | |
| v.                                                                  ) | EEOC Case No. |
| ) | 510-2012-00077X |
| Eric Holder, Attorney General,                ) | |
| U.S. Department of Justice,                     ) | AGENCY Case No. |
| Federal Bureau of Prisons.                      ) | BOP-2011-000528 |
| ) | |
| _____/ | |

| | |
|---|---|
| Complainant's Representative | Heidi R. Burakeiwicz, Esq. |
| Agency Representative | Angie Wiesman, Esq. |
| Nature of the Complaint | Discrimination: sexual harassment |
| Administrative Judge | Joy R. Helprin<br>U.S. Equal Employment Opportunity Commission<br>One Biscayne Tower<br>2 South Biscayne Boulevard<br>Suite 2700<br>Miami, Florida  33131 |
| Date of Hearing | Decision Rendered Without A Hearing |
| Date of Decision | April 9, 2013 |
| Place of Complaint | Coleman, Florida |

## I. Introduction

This proposed class complaint, filed by Taronica White, et. al.[1] ("Class Complainants" or "Complainants"), was originally submitted by the United States Department of Justice, Bureau of Prisons ("Agency") to the United Stated Equal Employment Opportunity Commission on December 2, 2011 for a decision by an Administrative Judge ("AJ") as to whether the class complaint should be accepted or dismissed.  *See* 29 CFR 1614.204(d).  The Complainant alleges the Agency created a hostile work environment when it failed to correct known egregious sexual harassment perpetrated by inmates at the Federal Correctional Complex ("FCC") Coleman since February 6, 2011[2].

## II. Background

FCC Coleman is comprised of four institutions, three of the four of which house exclusively male inmates.  At the time in question, there were approximately 363 women who were working at FCC Coleman.  More than 150 of those women initiated counseling with the Agency, alleging sexual harassment by inmates at FCC Coleman.  Two-hundred and five women have already retained counsel regarding the alleged sexual harassment, according to the Complainants.

The Class Complainants assert that, "regardless of the institution at FCC Coleman where a woman works, the Department to which a woman is assigned or the job title a woman holds, all women are subjected to the same sexual harassment when they come into contact with male inmates."  Complainant's Motion for Class Certification ("MFCC") at 6.  They allege that the environment is saturated with sexual abuse and assaults, including a barrage of gender-based epithets, crude comments, sexual threats, remarks about a woman's appearance, lewd sexual gestures, nudity, exhibitionist masturbation with and without clothes, and/or efforts to get women to look at them while they are naked or masturbating.  Female employees, they allege, have been groped or

---

[1]  Named class complainants in addition to Ms. White are Lena Londono, Tammy Padgett, Eva Ryals, and Carlissa Warren-Spurlock.

[2]  Preliminary discovery had been conducted in this case.  The undersigned conducted a pre-hearing conference subsequent to it being reassigned from the prior AJ.  At that time, the parties agreed there were still discovery requests by the Complainant that were outstanding, and a pending discovery motion regarding such.  However, they agreed that such disputes would be rendered moot by a determination that the class would be certified.  As such, those additional discovery requests will not be addressed in the certification phase of this process.

touched by inmates, had rape threats made against them, and have been used as "bait" by management to appease unruly inmates. They are called "bitch," "slut," "whore," and "cunt." The women allege that they are frequently threatened with violent sexual acts in the form of statements such as, "Suck my dick you fucking bitch. I'll bend you over;" and "I'm going to fuck you up, you cunt." They contend that they cannot walk from place to place inside the prison without inmates knocking on the windows of their cells in an effort to get their attention in connection with some type of sexual act or gesture.

Class Complainant Tammy Padgett stated she endures masturbatory behavior approximately once per week; for example, an inmate will approach her while rubbing or touching his penis. Class Complainant Eva Ryles reported that in February, 2011, an inmate in her classroom masturbated to the point of ejaculation. Inmates stick their penises through the food slots in the cell door. The Class Complainants assert that inmates knock on the windows and if the women look, they see inmates exposing their penises in the windows, masturbating or pretending to masturbate. They contend the inmates do not do this when male employees walk by. They assert inmates have placed sperm where women will come into contact with it, have stalked female employees, and made explicit rape threats. Class Complainant Padgett stated two inmates plotted to rape her.

Inmates have requested a female staff member come to their cell, ostensibly for legitimate purposes, but will instead harass the women or manipulate the situation to increase their time with the women. Women wear large smocks and jackets even in hot Florida weather in order to cover their bodies as much as possible in response to the harassment.

The Class Complainants acknowledge that while a prison is expected to be rough environment to work in, the Agency is aware of the inmates' behavior and has refused to take effective steps aimed at preventing or at least minimizing the harassment. They assert that Labor Management Relations meetings have been held in which the union has raised concerns about sexual harassment of female staff, inmate masturbation and the Agency's failure to adequately respond to sexual misconduct. The Class Complainants contend management has common policies and practices at the Coleman complex that enable the harassment. The female staff members are limited in the number of incident

reports that they are allowed to file. Class Complainant Ryals was instructed to stop writing so many incident reports about sexual acts. They contend managers have thrown away incident reports about sexual conduct by inmates, and coerced women into writing incident reports for lesser offenses even when the inmate has engaged in a sexual act. When incident reports are not forwarded to the Unit Disciplinary Team and Disciplinary Hearing Officer, the inmates cannot be disciplined.

The Class Complainants contend inmates are not disciplined for sexual harassment, or sanctions are shortened. When Wanda Rushing complained about inmates leering at her, a supervisor responded, "well look at you, I would look too if I was an inmate." A manager told Lorry Andrews, "If I was an inmate I would do the same thing." Complainants MFCC at 17.

Further, they allege that tools the Agency has at its disposal for preventing and correcting sexual harassment, such as semi-opaque or one-way windows, serious disciplinary measures, and working with district attorneys to prosecute repeat offenders, are not used. The Agency does not prevent inmates from having pockets as a deterrent. Inmates at the prison cut holes in their pockets so they can touch their genitals more easily and masturbate at female staff members. Inmates who repeatedly sexually harass women with vulgar comments or lewd sexual gestures, they contend, are not included in the "Posted Picture File" for identifying high accountability inmates.

In fact, the Class Complainants contend the Agency has not even adopted the recommendations of a Bureau of Prisons workgroup on the subject of inmate sexual harassment.

## III. Issue

Does the instant complaint satisfy the requirements of 29 CFR § 1614.204(d)(7) for acceptance as a class complaint?

## IV. Analysis

For a class complaint to be accepted, it must meet the following requirements:

1) the class is so numerous that a consolidated complaint of the members of the class is impractical;
2) there a questions of fact common to the class;
3) the claims of the agent of the class are typical of the claims of the class;
4) the agent of the class, or, if represented, the representative, will fairly and adequately protect the interests of the class.

See 29 C.F.R. § 1614.204(a)(2); *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982); *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 n. 8 (1977); *Goodman v. Justice*, EEOC Appeal No. 01995812 (March 25, 2002); *Starks v. Navy*, EEOC Appeal No. 01981476 (January 12, 2000); *Glover v. Treasury*, EEOC Appeal No. 01972950 (December 1, 1999). "In addressing a class complaint it is important to resolve the requirements of commonality and typicality prior to addressing numerosity in order to 'determine the appropriate parameters and the size of the membership of the resulting class.'" *Fusilier v. Treasury*, EEOC Appeal No. 01A14312 (February 22, 2002); *Glover*, EEOC Appeal No. 01972950.

The United States Supreme Court has held that an allegation of across-the-board discrimination is not, by itself, sufficient to justify its acceptance as a class claim. *See Falcon*, 457 U.S. at 157; *see also Myers v. Treasury*, EEOC Appeal No. 01952738 (Sept. 25, 1996); *Glover*, EEOC Appeal No. 01972950. A class complaint will not be approved merely because the class members share the same protected class. *See Falcon*, 457 U.S. at 157; *Glover*, EEOC Appeal No. 01972950. In *Falcon*, the Supreme Court held that evidence of a failure to promote an individual because of national origin does not necessarily mean that discrimination exists in other employment practices such as hiring. 457 U.S. at 158. Furthermore, the Commission has held that "[m]ere conclusory allegations, standing alone, do not show commonality." *See Glover*, EEOC Appeal No. 01972950.

After reviewing the formal complaint, the other documents contained in the materials provided by the Agency, and the briefs of the parties, I find that certification of this matter as a class complaint is appropriate. It is clear that rejection is proper if anyone criterion of a class complaint is not met. *Baldwin v. USPS*, EEOC No. 01890416 (1989); *Tillman v. Air Force*, EEOC No. 01890695 (1989) *McNeal v. Marsh Army*, EEOC No. 01890250 (1989); *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982). However, as more fully set forth below, I find that all of the necessary requirements for certification have been met.

A. Commonality and Typicality

The purpose of the commonality and typicality requirements is to ensure that class agents possess the same interests and suffer the same injury as the members of the proposed class. *See General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982); *Holmes v. USPS*, EEOC Appeal No. 07A20020 (Oct. 27, 2003). The existence of an alleged policy applied to the members of the class as a whole satisfies the requirement regarding the existence of common questions of law and fact. *See East Texas Motor Freight v.* Rodriguez, 431 U.S. 395 (1977). The Commission has recognized that in application commonality and typicality prerequisites tend to merge and are often "indistinguishable." *See Glover v. USPS*, EEOC Appeal No. 01A04428 (April 23, 2001). Typicality requires that the class agent has suffered the same injury as other class members and possesses substantially the same interest as the other class members. *Bowen v. Department of Agriculture*, EEOC Appeal No. 01920303 (Dec. 11, 1992) (citing *East Text Motor Freight*, 431 U.S. 395). Typicality exists where the class agent demonstrates some nexus with the claims of other class members, which can be shown by demonstrating the similarity between the agent's conditions of employment and those of other members, and the alleged discrimination affecting the agent and that affecting the class. *Id.*

The Complainants' allegations create clear common questions of fact regarding whether the Agency created a hostile work environment for women, management's knowledge of and tolerance for sexual harassment by inmates, and whether they took reasonable care to prevent and promptly correct sexually aggressive and threatening behaviors by inmates. Further, the claims of the class agents are typical of those alleged of the other class members.

The proposed class members are all women working at FCC Coleman, which has a common management structure. The Complainants allege that the female employees are subject to sexually aggressive conduct such as exhibitions of masturbation, rape threats, nudity, and groping--not simply because they are employees or because of the positions they hold, but because they are female. The sexual harassment of women, they contend, is so frequent, severe, and ever-present in Coleman as a whole that any reasonable woman would regard the environment as hostile. The Complainants provided

affidavits from numerous women at Coleman describing the conduct by inmates and the failure by management to act.

There are further common questions of law and fact regarding the policies of FCC Coleman regarding the actions taken by management in the face of this harassment. The class complainants allege the existence of an alleged policy applied to members of the class as a whole. *See East Texas Motor Freight*, 431 U.S. 395 (1977). The allegations by the Complainants are that management has been repeatedly made aware of the sexual harassment of female employees by inmates; there have been meetings with the union regarding such, numerous incident reports, observation by management officials of the harassment itself, and actions taken by women (and observed by management) in wearing large smocks and jackets to cover their bodies in an attempt to avoid the harassment.

The Complainants allege a pattern and practice by management of minimizing, deterring, and destroying incident reports when it comes to sexual offenses by inmates against female employees. There are common questions of law and fact regarding FCC Coleman managements' failure to implement any proactive measures to prevent or mitigate the sexual harassment, and its policy of not implementing workgroup recommendations of the Bureau of Prisons.

With respect to typicality, while each Class Complainant's "individual allegation may involve a unique combination of facts," the Class Complainants claims are typical in alleging they were subjected to severe and pervasive sexual harassment by inmates, and that management was aware of this harassment and failed to take steps to prevent it or discipline inmates who engaged in it. *See Wylie et al. v. Treasury*, EEOC Appeal No. 07A40012 (Dec. 21, 2004).

The Agency argues that "the subjective and objective experiences of Complainants would require individualized assessments." Agency Response to MFCC at 3-4. The Agency further contends that because the Class Complainants held different positions and had differing amounts of contact with inmates, this impacts the subjective and objective components of the sexual harassment claim.

Courts and the Commission have rejected the argument that individual differences in the circumstances of each class member somehow preclude certification of a sexual harassment class complaint. *See Markham v. White,* 171 FRD 217 (Jan. 28, 1997); *Wylie,*

EEOC Appeal No. 07A40012.  The question is whether there is are common questions of law and fact regarding whether the harassment occurred and the steps FCC Coleman management took in response.  The allegations are that all the Class Agents were in contact with inmates at FCC Coleman and were subjected to egregious sexually hostile conduct by inmates while management failed to take steps to correct this conduct.  The claims made by the Class Complainants are typical of those alleged for the class.

Because of the nature of hostile environment claims, the existence of individual factual diversity in both the type and degree of discriminatory conduct will not preclude a finding of commonality.  *See Warnell v. Ford Motor Co.,* 189 FRD 383 (ND Ill. 1999); *see also BreMiller v. Cleveland Psychiatric Institute*, 195 FRD 1 (ND OH 2000); *EEOC v. Mitsubishi Motor Mfg. of America, Inc.*, 75 FEP Cases 1379 (CL IL. 1998).

The Complainants have alleged that the total work environment as a whole was discriminatory and all the class members were subjected to a common policy which failed to take steps to minimize the inmate harassment in Coleman.  I therefore find they have established the elements of commonality and typicality.

B. Numerosity

I find the Complainants have established the element of numerosity.  While no fixed number is required to demonstrate numerosity, the general rule is that courts are reluctant to certify a class with fewer than thirty members.  *See Turner v. VA*, EEOC Appeal No. 01971966 (August 27, 2001); *Hines v. Air Force*, EEOC Appeal No. 01931776 (July 7, 1994).  In determining whether a class satisfies the numerosity requirement, courts look to the practicability of joinder.  *See Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980).  In order to make this determination, the factors that apply are: the size of the class; the ease of identifying class members and their addresses; the location and geographical dispersion of its members; and the nature of the action.  *See McKinnis v. Dep't of Veterans Affairs*, EEOC Appeal No. 01912332 (September 9, 1991); *Baldwin v. USPS*, EEOC Appeal No. 01890416 (June 6, 1989).

Based on the discovery to date, the Complainants stated that the class consists of at least 363 members; women working at Coleman at the time in question.  It is also noted that the Complainants contend more than 150 women have sought EEO counseling regarding the sexual harassment at Coleman, and over 200 women have sought legal

counsel regarding such. The complainants have submitted affidavits from over 60 women describing incidents of sexual harassment at Coleman and managements' lack of response to it. I find the proposed class is sufficiently numerous to render a consolidated complaint impractical.

C. Adequacy of Representation

"Adequacy of representation 'is perhaps the most crucial requirement because the judgment will determine the rights of the absent class members.'" *Fusilier*, EEOC Appeal No. 01A14312 (quoting *Bailey v. VA*, EEOC Appeal No. 05930156 (July 30, 1993)). "Adequacy of representation requires that (1) the class agent and class representative be qualified, experienced, and generally able to conduct the proposed litigation; and (2) the class agent and class representative must not have interest antagonistic to those of the class." *Goodman*, EEOC Appeal No. 10995812 (citing *Evans v. Treasury*, EEOC Appeal No. 01945396 (Dec. 11, 1995); *Martin v. Middendorf*, 420 F. Supp. 779 (D.D.C. 1976)). A class agent must demonstrate that he or she "has the necessary knowledge and skills to represent the class, or that he [or she] is able to insure adequate funding to procure adequate representation." *Fusilier*, EEOC Appeal No. 01A14312.

The Agency does not appear to dispute the element of adequacy of representation. The legal representative for the class, the law firm of Mehri & Skalet, PLLC, has experience and training in class actions, employment discrimination, and specifically federal employment issues. They assert that counsel has represented numerous women in class and individual sex discrimination matters, and Attorney Eardley teaches a course on sex discrimination at American University College of Law. I find the representatives in this case meet this element.

Further, it does not appear to be in dispute that the class agents are adequate to represent the class. There are no interests identified that would be considered antagonistic to the class, and, as stated above, I find their interests to be typical of those of the class. As such, they meet this element as well.

**V. Conclusion**

Based on the forgoing, I find the prerequisites of class certification have been met and class certification is warranted. The certified class shall include:

All female employees who have worked for the Department of Justice, Federal Bureau of Prisons, FCC Coleman since February 6, 2011 who were allegedly subjected to discriminatory sexual harassment.

## VI. Notice to the Agency

Within 40 days of receipt of the report of findings and recommendations issued under 29 CFR § 1614.204(i), the Agency shall issue a Final Decision, which shall accept, reject, or modify the findings and recommendations of the Administrative Judge. The Final Decision of the Agency shall be in writing and shall be transmitted to the Class Agent by certified mail, return receipt requested, along with a copy of the report of findings and recommendations of the Administrative Judge. When the Agency's Final Decision is to reject or modify the findings and recommendations of the Administrative Judge, the Decision shall contain specific reasons for the Agency's action. Also, if the Final Order does not fully implement the Decision of the Administrative Judge, the Agency shall simultaneously appeal the Administrative Judge's Decision in accordance with § 1614.403. If the Agency has not issued a Final Decision within 40 days of its receipt of the Administrative Judge's report of findings and recommendations, those findings and recommendations shall become the Final Decision, and the Agency shall transmit the Final Decision to the Class Agent within 5 days of the expiration of the 40 day period. The Final Decision shall inform the Class Agent of the right to appeal or to file a civil action in accordance with 29 CFR § 1614.204(d) and of the applicable time limits.

The Agency shall use all reasonable means to notify all class members of the acceptance of the class complaint within 20 days of receipt of the Administrative Judge's Decision.  29 CFR § 1614.204(e)(1); *see also* EEO MD-110, 8-5, 8-6 (November 9, 1999). The Agency may file a motion with the Administrative Judge seeking a stay in the distribution of the notice for the purpose of determining whether it will file an appeal of the Administrative Judge's Decision. EEO MD-110, 8-6 (November 9, 1999).

It is so ORDERED.

_____

Joy R. Helprin
Administrative Judge