IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SDAHRIE HOWARD, ELLENOR ALTMAN, DENISE HOBBS, TAVI BURROUGHS, BALVINA RANNEY, TAWANDA WILSON SUSANA PLASENCIA, ESTHER JONES KIMBERLY CRAWFORD-ALEXANDER and DOMINIQUE FREEMAN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>COOK COUNTY SHERIFF'S OFFICE and COUNTY OF COOK,<br><br>    Defendants. | Case No. 17 C 8146 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case are women employed as correctional officers, rehabilitation workers, medical professionals, and deputy sheriffs at the Cook County Jail and the adjoining criminal courthouse. They have sued Cook County and the Sheriff's Office (CCSO), which operates the jail, alleging that the defendants failed to curtail sexual harassment by male detainees—including sexual epithets, threats of sexual violence, and masturbation—in violation of Title VII, the Illinois Civil Rights Act, and the Equal Protection Clause of the U.S. Constitution's Fourteenth Amendment. This Court certified a class of similarly situated individuals, and the defendants appealed the certification order. The plaintiffs now move, pursuant to Federal Rule of

Civil Procedure 62.1, to modify the class and/or supplement the record.

## Background

The Court assumes familiarity with this case's factual and procedural background, which the Court has described in prior written opinions. *See Howard v. Cook Cty. Sheriff's Office*, No. 17 C 8146, 2019 WL 3776939, at *1–2 (N.D. Ill. Aug. 12, 2019) (class certification); *Brown v. Cook County*, No. 17 C 8085, 2018 WL 3122174, at *1, *12 (N.D. Ill. June 26, 2018) (motions to dismiss in this case and two related cases).

The Court summarizes the factual and procedural history relevant to the present motion as follows. In March 2018, the plaintiffs in this case and another related case jointly sent to the CCSO their first set of requests for the production of documents. Among other things, the plaintiffs requested "[p]osition descriptions, training materials and other manuals or guidelines describing job duties and responsibilities for all positions which a woman has held at the Jail," Requests for Production, Pls.' Ex. E, dkt. no. 245-5 at 17 ¶ 18, and "for all supervisory positions within the Jail," *id.* at 17 ¶ 19.

In October 2018, according to the defendants, the CCSO produced a large number of documents to the plaintiffs but also withheld many documents based on claims of privilege and/or attorney work product. In January 2019, fact discovery on class certification closed. By the close of discovery, according to the plaintiffs, the CCSO had produced over 70,000 pages of documents that described some, but not all, of the jail's jobs. The plaintiffs contend that the CSSO produced no document that provided a comprehensive overview of job assignments and duties by division and department, the number of employees in each position, or whether particular job assignments entailed contact with detainees.

In May 2019, the plaintiffs moved to certify a class. On August 8, 2019, after the parties had filed their briefs on class certification but before the Court had ruled on the motion, the CCSO produced around 20,000 pages of documents. The CCSO contends that it had withheld these documents from its October 2018 production based on claims of privilege and/or work product but, after conducting another review, recognized that they were not privileged or otherwise protected. The CCSO also contends that it had intended to produce the documents to the plaintiffs in April 2019 (after fact discovery had closed). But because of an oversight by its counsel, the CCSO did not produce the documents until four months later, in August, around a week after the date when the CCSO contends it learned of the oversight. In the e-mail producing the documents, a paralegal at a law firm representing the CCSO wrote, "Due to a glitch that we did not discover at the time, this production that was to have been delivered in April was inadvertently not delivered so we are sending it now." Aug. 8, 2019 e-mail, Pls.' Ex. C, dkt. no. 245-3, at 2.

At the time, neither party informed the Court of the new production. A few days later, the Court certified the following class:

> All women who have been employed by the Cook County Sheriff's Office at the Jail, or as Court Services deputies at the Leighton Courthouse, or by the County in positions with Cermak Health Services, at any time since April 23, 2015, except women who, during that period, have held the positions identified in Exhibit A to the complaint or who were employed in supervisory roles.

*Howard*, 2019 WL 3776939, at *11. The positions identified in Exhibit A included high-level management employees such as the executive director, chief financial officer, and superintendent of the Department of Corrections. *Id.* at *5 (citing Compl., Ex. A., dkt. no. 143, at 35).

3

As indicated, the defendants timely petitioned the Seventh Circuit under Federal Rule of Civil Procedure 23(f) for permission to appeal from the order granting class-action certification. In September 2019, the Seventh Circuit granted the defendants' petition.

Soon after, an attorney for the plaintiffs discovered among the previously withheld documents a spreadsheet that the plaintiffs contend is important to the issues raised in the class certification motions. Metadata from the spreadsheet indicates that the CCSO created it in April 2018. A special assistant at the CCSO attached the spreadsheet to an e-mail she sent to the CCSO's then-chief of staff in May 2018. The e-mail's subject line was "Staffing List." Defs.' Ex. 2, dkt. no. 249-1, at 3.

The spreadsheet provides information about different divisions in the CCSO. Specifically, it lists the number of individuals employed in the divisions and categorizes the positions they hold. It contains a brief description of each division. For each position in each division, the spreadsheet lists the total number of active employees, the number assigned per shift, and the position's "[j]ustification" and "[o]utput." Spreadsheet, Pls.' Ex. A, dkt. no. 245-1, at 10–43. The justification column describes each position's responsibilities. For example, for Division 6 of the jail, the justification for officers includes "[m]onitor[ing] the inmate population while on their living units" and the justification for the administrative assistant includes "[p]rovid[ing] administrative support for the Superintendent." *Id.* at 12. Positions in different divisions with the same responsibilities have the same justifications. The output column describes the metrics and general expectations for each position. For example, the outputs for officers in Division 6 include "[c]onduct approximately 420,480 security rounds per year on the

4

living units" and "[m]anage 1,600 inmates daily." *Id.* The spreadsheet provides similar information for various administrative roles. *Id.* at 3–9.

In October 2019, the plaintiffs filed a motion under Federal Rule of Civil Procedure 62.1 seeking to supplement the record and refine the class based on the newly discovered spreadsheet. On October 17, 2019 and November 26, 2019, the Court held hearings regarding the motion.

## Discussion

### A. Rule 62.1 motion

"The filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Federal Rule of Civil Procedure 62.1, however, provides a procedure by which a district court may indicate that it would modify an order that is on appeal. Under Rule 62.1, if a party makes a motion that the district court "lacks authority to grant" because of a pending appeal, "the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1. If a district court indicates that it would grant the motion or that the motion raises a substantial issue, the court of appeals may remand the case for further proceedings. Fed. R. App. P. 12.1(b).

To seek review under Rule 62.1, a party must request underlying relief that a district court cannot grant due to the pending appeal. *See, e.g.*, *Lawson v. Grubhub, Inc.*, No. 15-CV-05128-JSC, 2018 WL 6190316, at *2 (N.D. Cal. Nov. 28, 2018);

5

*Metalcraft of Mayville, Inc. v. Toro Co.*, No. 16-CV-544, 2016 WL 8737777, at *2 (E.D. Wis. Nov. 18, 2016). Although the plaintiffs have not filed a separate motion in this regard, their motion under Rule 62.1 makes clear their underlying request and the basis for the relief they seek—refining the scope of the certified class and/or supplementing the record with the newly discovered spreadsheet. *See LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933, 949–50 (7th Cir.), *cert. denied*, 140 S. Ct. 58 (2019) (discussing the merits of a request for relief underlying a Rule 62.1 motion even though the party seeking relief did not file a separate motion seeking that relief); *Metalcraft of Mayville*, 2016 WL 8737777, at *2 (party's request for relief was procedurally sufficient where its Rule 62.1 motion described the nature of the underlying relief it sought and why it requested that relief). The Court construes the plaintiffs' motion as a combined request to issue an indicative ruling under Rule 62.1 and to modify the defined class and/or supplement the record. The Court will focus first on the plaintiffs' request to modify the defined class, because granting that request would render moot their request to supplement the record.

The parties appear to agree that the purposes of Rule 62.1 include conserving judicial resources and avoiding unnecessary appeals, but they dispute whether the plaintiffs' motion serves those purposes. The plaintiffs argue that an indicative ruling based on the discovery of new evidence, particularly evidence that a party should have produced much sooner, promotes fairness and accuracy. They further contend that the issuance of an indicative ruling could save resources because, even without such a ruling, they intend to move to modify the class if the Seventh Circuit reverses or remands the case to this Court to reconsider the class certification order. The

defendants argue that the plaintiffs are trying to use Rule 62.1 to alter their litigation strategy and circumvent appellate review by negating the basis for the defendants' appeal, thereby wasting judicial resources to avoid scrutiny of their prior legal arguments.

A district court can issue an indicative ruling to modify a class's definition. *See Price v. Medicaid Dir., Ofc. of Med. Assistance*, No. 1:13-CV-74, 2016 WL 254976, at *3 (S.D. Ohio Jan. 20, 2016) (modifying a class definition where the court had inadvertently omitted a statute of limitations deadline that both parties had briefed). And a court can issue an indicative ruling under Rule 62.1 if it concludes that, because of newly discovered evidence, it would vacate or change an order that has already been appealed. *See Amarin Pharm. Ireland Ltd. v. FDA*, 139 F. Supp. 3d 437, 447 (D.D.C. 2015); *Ret. Bd. of Policemen's Annuity & Ben. Fund of City of Chi. v. Bank of N.Y. Mellon*, 297 F.R.D. 218, 221 (S.D.N.Y. 2013). A court's issuance of an indicative ruling in light of newly discovered evidence can "promote judicial efficiency or fairness," *Amarin Pharm. Ireland Ltd.*, 139 F. Supp. 3d at 447, particularly where, as here, that ruling would account for evidence that a party should have produced sooner. Indeed, by considering a more complete factual record, a district court can aid the court of appeals' consideration of a certified class's definition. *Cf. Ret. Bd. of Policemen's Annuity*, 297 F.R.D. at 222 (an indicative ruling based on additional facts "would do little to aid" the court of appeals where the issue on appeal was a question of law). In addition, an indicative ruling may save judicial resources, as well as those of the parties, by "obviating the need for the appeal," *Amarin Pharm. Ireland*, 139 F. Supp. 3d at 447, or for further proceedings after an appeal. The latter point may apply here: were the

7

court of appeals to overturn the certificate of the current class, plaintiffs likely would attempt to seek certification of a narrower class following remand based on the new evidence. Advancing that step likely would save significant resources of the parties and the courts that otherwise would be expended.

The defendants cite no authority to support their argument a motion under Rule 62.1 is improper if a ruling in favor of the moving party would negate the basis for the opposing party's pending appeal. Indeed, negating the basis for an appeal can serve a key purpose of Rule 62.1 by saving judicial resources. *Amarin Pharm. Ireland*, 139 F. Supp. 3d at 447. Nor do the defendants cite authority suggesting that a party cannot use Rule 62.1 in a way that would reflect a change in its litigation strategy, particularly where, as here, the moving party contends that a significant piece of evidence was withheld during discovery.

This is not a situation where the plaintiffs improperly seek an indicative ruling to request that a district court decide "the very issue on appeal" and thereby "interrupt[] the appellate process." *Ret. Bd. of Policemen's Annuity*, 297 F.R.D. at 221 (denying a Rule 62.1 motion to amend a complaint where the amendment would require the court to reverse its earlier decision on standing, and the issue of standing was before the court of appeals); *see also Amarin Pharm. Ireland*, 139 F. Supp. 3d at 447 ("Rule 62.1 was not meant to authorize the district court to provide unsolicited advice to the court of appeals on an issue of appellate jurisdiction."). The issue the plaintiffs raise in relation to their Rule 62.1 motion is whether the definition of the class should be modified—specifically, narrowed—based on information in the newly discovered spreadsheet. That is distinct from the issue before the court of appeals, which concerns the

8

appropriateness of the certified class, not how the information in the spreadsheet affects that class's definition.

The defendants also argue that the plaintiffs cannot seek to modify the class through their Rule 62.1 motion because, having prevailed on much of their prior class certification motion, they were not prejudiced by the defendants' failure to produce the spreadsheet during the relevant period of discovery. But the plaintiffs have argued credibly that they would have sought a different and narrower class definition if they had the spreadsheet. *See, e.g.*, Nov. 16, 2019 Hr'g Tr., dkt. no. 268, at 6:11–7:24. Having spent the time, effort, and resources to move for a broader class than they otherwise would have sought to certify, they have experienced prejudice. Regardless, neither Rule 62.1 nor Rule 23 requires that a party seeking an indicative ruling or modification to a class definition have experienced prejudice, and the defendants cite no authority suggesting that a party seeking such relief must show prejudice. Rather, as the Court will discuss momentarily, a district court has discretion to modify a class's definition. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

For these reasons, the Court concludes that if it determines that the plaintiffs' underlying request has merit, the Court may appropriately issue an indicative order under Rule 62.1 stating that it would grant the plaintiffs' request upon remand or that the motion raises a substantial issue.

## B. Modification of the certified class

The Court turns to the plaintiffs' underlying request to modify the certification class. A class certification order is "inherently tentative," and a district court "remains free to modify it in the light of subsequent developments in the litigation." *Id.*; *see also*

Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). "If the evidence calls into question the propriety of defining a class in a particular way, then the definition must be modified." *Fonder v. Sheriff of Kankakee Cty.*, 823 F.3d 1144, 1147 (7th Cir. 2016). The relevant issue here is thus whether the newly discovered spreadsheet shows that a narrower class is more appropriate than the presently certified class.

A certified class must meet the four requirements of Rule 23(a): "numerosity, typicality, commonality, and adequacy of representation." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 1465 (2019). And where, as here, a party seeks to certify a class under Rule 23(b)(3), "common questions of law or fact must predominate over individual inquiries, and class treatment must be the superior method of resolving the controversy." *Id.*; *see also* Fed. R. Civ. P. 23(b)(3). A party seeking to modify a class's definition need not raise new arguments or to identify a "new or independent basis" for certification, as the defendants (without citing to authority) contend. Defs.' Resp. Br., dkt. no. 249, at 7; *see, e.g.*, *Fonder*, 823 F.3d 1144 (new evidence can be the basis for modifying a class's definition).

The plaintiffs contend that the newly discovered spreadsheet, more than any evidence that the parties had produced when the Court certified the class, provides a comprehensive summary of which positions at the jail entail regular contact with male detainees and which positions do not. The plaintiffs thus argue that the spreadsheet demonstrates that a class that excludes certain positions that lack regular contact with male detainees is more appropriate than the broader class the Court certified. For their part, the defendants argue that the spreadsheet does not show which "posts or

assignments involve detainee contact" or how frequently particular jobs entail contact with detainees. Defs.' Resp. Br., dkt. no. 249, at 2. They also argue that modifying the class's definition would be inappropriate because the spreadsheet provides the same information as evidence they had already produced when the parties filed their briefs on the motion for class certification.

Although the parties do not frame their arguments in terms of Rule 23's requirements, their dispute over whether all class members had contact with male detainees concerns the commonality requirement of Rule 23(a) and the predominance requirement of Rule 23(b)(3). To satisfy the commonality requirement, the plaintiffs must identify at least one question common to all the class members whose answer is "apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). For the predominance requirement, the plaintiffs must show that "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (alterations in original).

In the prior certification order, this Court found that there is at least one common question whose answer will drive the resolution of the litigation: "whether the ambient harassment experienced by female employees at the jail and the courthouse is sufficiently severe and pervasive to support a Title VII hostile work environment claim." *Howard*, 2019 WL 3776939, at *7. The Court distinguished this case from *Bolden v. Walsh Construction Co.*, 688 F.3d 893 (7th Cir. 2012), "in which the Seventh Circuit held that employees of a construction company alleging a racially hostile work environment could not satisfy the commonality requirement because different worksites

11

within the company 'had materially different working conditions.'" *Howard*, 2019 WL 3776939, at *6 (quoting *id.* at 896). The Court found that a feature of this case that provides a "much stronger basis for class certification than *Bolden*" is that "the putative class members frequently occupy the same work environments, even if only briefly." *Id.* By contrast, the court in *Bolden* "emphasized that '[t]he 12 plaintiffs did not experience the working conditions at all 262 sites either individually or collectively.'" *Id.* (quoting *Bolden*, 688 F.3d at 898) (alteration in original).

This Court also found that several additional common questions are significant, including "whether the detainees' harassment occurred because of sex and whether there is a basis for employer liability based on the defendants' failure to adopt reasonable policies to combat the harassment." *Id.* at *9. With respect to "whether the putative class members are too differently situated to permit classwide resolution of the objective element of the hostile work environment claim," the Court found that "the fact that some of the putative class members may have experienced more direct or severe harassment does not defeat predominance under Rule 23(b)(3)." *Id.*

The newly discovered spreadsheet, however, provides evidence that *not* all of the certified class members frequently occupy the same work environments. Rather, the spreadsheet indicates that none of the individuals in the positions the plaintiffs now seek to exclude from the class—non-sworn (civilian) personnel in administration, inmate discipline, legal, or Records-Division 5—have any contact, even briefly, with male detainees. *See* Spreadsheet, Pls.' Ex. A, dkt. no. 245-1, at 3–9 (administration), 28 (inmate discipline), 39 (legal), 41 (Records-Division 5). Without work environments in which they have contact with male detainees, women in these positions do not share a

12

common question stemming from sexual harassment with the other class members. *See Bolden*, 688 F.3d at 898. And because these women lack contact with male detainees, common questions of law or fact relating to sexual harassment cannot be resolved for the whole class in a single adjudication. *Cf. Messner*, 669 F.3d at 819 ("The ability to use . . . common evidence . . . to prove a class's claims is sufficient to support a finding of predominance."). In other words, the spreadsheet shows that some members of the originally certified class are situated differently from the others in a material way. Therefore, a narrower class that excludes positions that lack contact with male detainees is more appropriate than the presently certified class.

To the extent the defendants argue that the spreadsheet does not show which positions involve contact with detainees or the frequency of such contact, that argument is negated by the substance of the spreadsheet itself. Nor is it dispositive that that the narrower class may still include some individuals who have not experienced sexual harassment by male detainees. "[A] class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable, given that a class can be certified yet fail to prove its case on the merits." *Lacy v. Cook County*, 897 F.3d 847, 864 (7th Cir. 2018) (internal quotation marks omitted). Thus, for example, the fact that some officers in the External Operations division may be assigned to patrol only the jail's exterior, away from male detainees, does not justify excluding them from the class. The spreadsheet states that officers in that division patrol "the exterior and interior property" of the CCSO's campus *and* provide "transportation and/or direct security for the detainee population"—an indication that at least some External Operations officers have contact with male detainees. Spreadsheet, Pls.' Ex. A, dkt. no. 245-1, at 20.

13

The defendants' argument that the spreadsheet is duplicative of other information they had already produced is also unavailing. The defendants point to no other piece of evidence that provides a comprehensive overview of the positions at the jail, the responsibilities of people who hold those positions, or the extent to which people in those positions encounter male detainees. Although the defendants suggest that the spreadsheet shows that class members encounter male detainees as they move throughout the jail, the defendants do not respond directly to the plaintiffs' argument that the spreadsheet shows that certain positions entail *no* contact with male detainees. To be sure, in opposing the plaintiffs' initial motion for class certification, the defendants put forth testimony from supervisors at the jail stating that particular jobs did not entail regular contact with male detainees. But because the supervisors made those statements in declarations that were not subject to cross-examination and were not corroborated by other evidence, those statements were entitled to less weight—and plaintiffs were justified in not taking them as gospel. The spreadsheet provides more definitive evidence of which positions do not involve contact with male detainees.

The defendants argue, however, that written job descriptions like those in the spreadsheet are not dispositive evidence of class members' actual duties. But the cases that the defendants cite to support that proposition are factually distinguishable. Both cases concerned whether companies properly classified particular employees as exempt from overtime requirements, an issue that depended upon whether the employees' primary duties fell within the scope covered by statutory exemptions. *See Schneider v. Ecolab, Inc.*, No. 14 C 01044, 2016 WL 7840218, at *1 (N.D. Ill. Sept. 2, 2016); *Rea v. Michaels Stores, Inc.*, No. SACV 13-455-GW-AGRX, 2014 WL 1921754,

14

at *3 (C.D. Cal. May 8, 2014).  In *Schneider* and *Rea*, the plaintiffs needed to show that the proposed class members shared primary duties, and the courts in both cases found that the job descriptions did not establish employees' primary duties.  *See Schneider*, 2016 WL 7840218, at *6; *Rea*, 2014 WL 1921754, at *4.  By contrast, whether the putative class members in this case have routine contact with male detainees relates to the members' *overall* duties, which job descriptions can demonstrate.  *See Schneider*, 2016 WL 7840218, at *6 (uniform job descriptions are "certainly relevant in determining the broad set of duties that [people in a certain position] must perform").  Nor is the Court suggesting that the spreadsheet, viewed alone, is dispositive; rather, the spreadsheet adds significant information and context to the record that the court considered in its prior class certification order.

In addition to proposing a modification of the class to exclude women in certain positions who have no contact with male detainees, in their newly proposed class definition the plaintiff seek to exclude "women who worked . . . as Sergeants, Lieutenants, or in a position identified in Exhibit B, Category 2."  Pls.' Br., dkt. no. 245, at 3 (referring to Pls.' Ex. B, dkt. no. 245-2, at 2).  The positions identified in Exhibit B are the same positions that the Court excluded in its prior class certification order.  *Compare* Pls.' Ex. B, dkt. no. 245-2, at 2 *with Howard*, 2019 WL 3776939, at *11 (citing Compl., Ex. A, dkt. no. 143, at 35); Ex. A to Compl., dkt. no. 143, at 35.  In its order, however, the Court also excluded women "who were employed in supervisory roles." *Howard*, 2019 WL 3776939, at *11.  The plaintiffs put forth no arguments regarding why they seek to modify the class definition from "women who were employed in supervisory roles," *id.*, to sergeants and lieutenants, and they do not explain whether there are

15

women employed in supervisory roles who would be included in their newly proposed class. Accordingly, the Court need not consider further modifying its order to narrow the definition of women excluded in supervisory roles.

Further, the Court's order on class certification indicated that one common characteristic of the class was "ambient harassment," which the plaintiffs' expert defined as "harassment that 'reaches beyond the focal individual to affect the entire workgroup.'" *Howard*, 2019 WL 3776939, at *7 (quoting Fitzgerald Rpt., Defs.' Ex. 54, dkt. no. 198–62, at 5). The parties dispute whether narrowing the class definition would remove the issue of ambient harassment from the case. In its prior order, the Court stated that the difference between direct harassment and ambient harassment is "a matter of degree rather than of kind." *Id.* The Court need not resolve at this time the parties' dispute over whether and the extent to which this will remain an issue, though it notes that at a minimum, narrowing the class is likely to significantly narrow any differences in this regard across the class.

For these reasons, the Court concludes that a refined class is more appropriate than the presently certified class. If the Seventh Circuit remanded this case pursuant to Rule 62.1, the Court would grant the plaintiffs' motion to modify the class. Because the Court has indicated that it would grant the plaintiffs' motion to refine the class, it need not address the plaintiff's alternative request to supplement the record.

**Conclusion**

For the foregoing reasons, if the Seventh Circuit remanded this case pursuant to Rule 62.1, the Court would grant the plaintiffs' motion for to modify the class [dkt. no. 243] and would enter an amended order containing the following class definition

(modifications in italics):

> All women who have been employed by the Cook County Sheriff's Office at the Jail, or as Court Services deputies at the Leighton Courthouse, or by the County in positions with Cermak Health Services, at any time since April 23, 2015, except women who, during that period, have held the positions identified *in Exhibit B to the plaintiffs' Rule 62.1 motion [dkt. no. 242-2 at 2]* or who were employed in supervisory roles.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 25, 2020